No. 22-4242

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**ZACKARY ELLIS SANDERS,**

*Defendant-Appellant*,

v.

**UNITED STATES OF AMERICA,**

*Plaintiff-Appellee.*

Appeal from the United States District Court
for the Eastern District of Virginia (No. 1:20-cr-00143-TSE)

## BRIEF FOR APPELLANT

Lawrence S. Robbins
Brandon L. Arnold
Leslie C. Esbrook
KRAMER LEVIN ROBBINS RUSSELL
2000 K Street NW, 4th Floor
Washington, D.C. 20006
Telephone: (202) 775-4500
Facsimile: (202) 775-4510
lrobbins@kramerlevin.com

*Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

Jurisdiction ............................................................................................1

Issues Presented ....................................................................................1

Introduction ...........................................................................................2

Statement Of The Case .........................................................................4

      A.  The Search ................................................................................4

      B.  Indictment, Trial, and Conviction ..........................................6

Summary Of Argument..........................................................................9

Standard Of Review .............................................................................11

Argument...............................................................................................12

I.    Appellant's Convictions Should Be Reversed Or, At Minimum, Remanded On Fourth Amendment Grounds..............................................12

      A.  The Affidavit Was Based On Stale Information. ...............................12

      B.  The Affidavit Misrepresented The Evidence, In Violation Of *Franks v. Delaware.* .........................................17

      C.  The Court Should At Least Remand For A *Franks* Hearing. ...........25

      D.  At A Bare Minimum, The Court Should Remand For Discovery In Aid Of A *Franks* Hearing. ......................26

II.   Appellant's Convictions Should Be Reversed Because The District Court Improperly Instructed The Jury And Excluded Highly Relevant Evidence And Expert Testimony ............................................32

      A.  The District Court Misconceived What It Means To "Use" A Minor Within The Meaning Of The Relevant Statutes.....................32

      B.  The District Court Wrongly Excluded Critical Evidence. .................39

      C.  The District Court Also Erred In Its Definition Of "Sexually Explicit Conduct."...........................................40

      D.  The District Court Erroneously Excluded ██ ████'s Expert Testimony. ...................................43

III.  Appellant's Production Convictions Should Be Reversed Because Of The Erroneous "Motivating Purpose" Instruction....................................47

i

IV.  Appellant's Possession Conviction Should Be Reversed Because It Was Based On His Involuntary Statements ...............................................50

Conclusion .....................................................................................................55

Statement Regarding Oral Argument .......................................................56

Certificate Of Compliance .........................................................................57

Certificate Of Service.................................................................................58

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bond v. United States*,
    572 U.S. 844 (2014)...................................................................36

*Borden v. United States*,
    141 S. Ct. 1817 (2021)...............................................................35

*Doe v. United States*,
    666 F.2d 43 (4th Cir. 1981) ......................................................40

*Edwards v. Arizona*,
    451 U.S. 477 (1981)...................................................................52

*Franks v. Delaware*,
    438 U.S. 154 (1978)............................................................*passim*

*Loughrin v. United States*,
    573 U.S. 351 (2014)..............................................................35, 36

*Love v. Johnson*,
    57 F.3d 1305 (4th Cir. 1995) ....................................................28

*Morissette v. United States*,
    342 U.S. 246 (1952)...................................................................44

*Orozco v. Texas*,
    394 U.S. 324 (1969)..............................................................50, 51

*Rehaif v. United States*,
    139 S. Ct. 2191 (2019)...............................................................44

*Schultz v. Butcher*,
    24 F.3d 626 (4th Cir. 1994) ......................................................40

*Sgro v. United States*,
    287 U.S. 206 (1932)...................................................................12

*United States v. Abdallah*,
    911 F.3d 201 (4th Cir. 2018) ....................................................54

*United States v. Abu Ali*,
    528 F.3d 210 (4th Cir. 2008) ...............................................................30

*United States v. Bass*,
    404 U.S. 336 (1971)............................................................................36

*United States v. Bosyk*,
    933 F.3d 319 (4th Cir. 2019) ......................................................*passim*

*United States v. Braxton*,
    112 F.3d 777 (4th Cir. 1997) ...............................................................53

*United States v. Budziak*,
    697 F.3d 1105 (9th Cir. 2012) ............................................................28

*United States v. Bynum*,
    604 F.3d 161 (4th Cir. 2010) ...............................................................24

*United States v. Cardwell*,
    433 F.3d 378 (4th Cir. 2005) .........................................................50, 52

*United States v. Caro*,
    597 F.3d 608 (4th Cir. 2010) ...............................................................11

*United States v. Clark*,
    668 F.3d 934 (7th Cir. 2012) ...............................................................13

*United States v. Colkley*,
    899 F.2d 297 (4th Cir. 1990) ...............................................................25

*United States v. Colonna*,
    511 F.3d 431 (4th Cir. 2007) ...............................................................52

*United States v. Coreas*,
    419 F.3d 151 (2d Cir. 2005) .................................................14, 21, 23

*United States v. Courtade*,
    929 F.3d 186 (4th Cir. 2019) ...............................................................41

*United States v. Cranson*,
    453 F.2d 123 (4th Cir. 1971) ...............................................................26

*United States v. Darby*,
  190 F. Supp. 3d 520 (E.D. Va. 2016),
  *aff'd*, 721 F. App'x 304 (4th Cir. 2018) ......................................................29, 30

*United States v. Dornhofer*,
  859 F.2d 1195 (4th Cir. 1988) ...........................................................................38

*United States v. Dost*,
  636 F. Supp. 828 (S.D. Cal. 1986)................................................................41, 42

*United States v. Doyle*,
  650 F.3d 460 (4th Cir. 2011) .............................................................................17

*United States v. Engle*,
  676 F.3d 405 (4th Cir. 2012) .............................................................................33

*United States v. Ford*,
  500 F. App'x 248 (4th Cir. 2012) ......................................................................38

*United States v. Gaines*,
  668 F.3d 170 (4th Cir. 2012) .............................................................................17

*United States v. George*,
  786 F. Supp. 56 (D.D.C. 1992)..........................................................................26

*United States v. Giddins*,
  858 F.3d 870 (4th Cir. 2017) ........................................................................53, 54

*United States v. Hashime*,
  734 F.3d 278 (4th Cir. 2013) ........................................................................51, 54

*United States v. Hillie*,
  14 F.4th 677 (D.C. Cir. 2021)............................................................................42

*United States v. Hite*,
  769 F.3d 1154 (D.C. Cir. 2014)..............................................................33, 45, 46

*United States v. Howard*,
  968 F.3d 717 (7th Cir. 2020) .............................................................................34

*United States v. Joseph*,
  542 F.3d 13 (2d Cir. 2008) ................................................................................46

*United States v. King*,
 628 F.3d 693 (4th Cir. 2011) ...............................................................28

*United States v. Landersman*,
 886 F.3d 393 (4th Cir. 2018) ...............................................................11

*United States v. Lull*,
 824 F.3d 109 (4th Cir. 2016) ...............................................................17

*United States v. Matish*,
 193 F. Supp. 3d 585 (E.D. Va. 2016) ..................................................30

*United States v. McCauley*,
 983 F.3d 690 (4th Cir. 2020) .......................................................*passim*

*United States v. McLamb*,
 880 F.3d 685 (4th Cir. 2018) ...............................................................25

*United States v. Mitchell*,
 495 F.2d 285 (4th Cir. 1974) ...............................................................39

*United States v. Mitrovich*,
 458 F. Supp. 3d 961 (N.D. Ill. 2020)...................................................30

*United States v. Pulley*,
 987 F.3d 370 (4th Cir. 2021) .........................................................11, 21

*United States v. Raymonda*,
 780 F.3d 105 (2d Cir. 2015) ...................................................12, 14, 16

*United States v. Ricks*,
 573 F.3d 198 (4th Cir. 2009) ...............................................................38

*United States v. Safavian*,
 528 F.3d 957 (D.C. Cir. 2008)..............................................................46

*United States v. Shields*,
 2004 WL 832937 (M.D. Pa. Apr. 14, 2004),
 *aff'd*, 458 F.3d 269 (3d Cir. 2006)......................................................25

*United States v. Steen*,
 634 F.3d 822 (5th Cir. 2011) ...............................................................42

*United States v. Tagg*,
886 F.3d 579 (6th Cir. 2018) ...............................................................25

*United States v. Tate*,
524 F.3d 449 (4th Cir. 2008) ...............................................................26

*United States v. Taylor*,
935 F.3d 1279 (11th Cir. 2019) ...........................................................29

*United States v. Torres*,
894 F.3d 305 (D.C. Cir. 2018) .............................................................49

*United States v. Vosburgh*,
602 F.3d 512 (3d Cir. 2010) ................................................................15

*United States v. Weber*,
923 F.2d 1338 (9th Cir. 1990) .............................................................14

*United States v. Williams*,
553 U.S. 285 (2008) .............................................................................34

*United States v. X-Citement Video, Inc.*,
513 U.S. 64 (1994) .........................................................................42, 43

*United States v. Zimmerman*,
277 F.3d 426 (3rd Cir. 2002) ..........................................................12, 17

*Wong Sun v. United States*,
371 U.S. 471 (1963) .............................................................................17

*Yates v. United States*,
574 U.S. 528 (2015) .............................................................................34

*Ysleta Del Sur Pueblo v. Texas*,
2022 WL 2135494 (U.S. June 15, 2022) .............................................35

**Constitution, Statutes, and Rules**

U.S. Const. amend. I ..............................................................................21

U.S. Const. amend. IV ....................................................................*passim*

U.S. Const. amend. V ...........................................................1, 11, 50, 52

18 U.S.C. § 2251 ...............................................................................*passim*

18 U.S.C. § 2251(a) ....................................................................6, 32, 40

18 U.S.C. § 2251(e) ..................................................................................35

18 U.S.C. § 2252 .......................................................................................39

18 U.S.C. § 2252(a)(2) ..........................................................6, 10, 35, 41

18 U.S.C. § 2252(a)(4)(B) .............................................................7, 35, 41

18 U.S.C. § 2256(2)(A) ............................................................................41

18 U.S.C. § 3231 .........................................................................................1

28 U.S.C. § 1291 .........................................................................................1

Ariz. Rev. Stat. § 8-309 ...........................................................................37

Neb. Rev. Stat. § 28-813.01(3) ...............................................................36

Fed. R. Crim. P. 16...........................................................................*passim*

Fed. R. Evid. 412 .....................................................................................40

## Other Authorities

Joseph Heller, *Catch 22* (S&S Classic ed. 1999) (1961).........................27

*Oxford English Dictionary* (1971) ..........................................................34

*Random House Unabridged Dictionary of the English Language* (2d
    ed. 1987) ......................................................................................34, 48

Jordan J. Szymialis, *Sexting: A Response to Prosecuting Those
    Growing Up With a Growing Trend*, 44 Ind. L. Rev. 301 (2010).....................36

Video - How to Download Browsers (Sept. 17, 2021),
    https://vimeo.com/607429883 ........................................................15

Video - How to Use Browsers (Sept. 17, 2021),
    https://vimeo.com/607431066 ........................................................15

*Webster's Second New Twentieth Century Dictionary* (1962) ................34

**JURISDICTION**

The district court had jurisdiction under 18 U.S.C. § 3231.  This Court's jurisdiction rests on 28 U.S.C. § 1291.  Judgment was entered on April 1, 2022, and the appeal was timely filed on April 13, 2022.  3-JA-1295, 3-JA-1306.[1]

**ISSUES PRESENTED**

1.      Whether Appellant's convictions on all counts should be vacated on Fourth Amendment grounds.

2.      Whether Appellant's convictions on all counts should be vacated because of instructional and evidentiary errors, including the erroneous preclusion of the defense's expert.

3.      Whether Appellant's production convictions should be vacated due to an erroneous "motivating purpose" instruction.

4.      Whether Appellant's possession conviction should be vacated because statements taken in violation of Appellant's Fifth Amendment rights were improperly admitted.

---

[1] "JA" refers to the Joint Appendix; "SJA" refers to the Sealed Joint Appendix. Citations to the appendix include the volume and page number (e.g., Volume-JA-Page).  "R." refers to citations to the district court docket.  All emphasis in the brief is added, unless otherwise noted.

## INTRODUCTION

Just before dawn on February 12, 2020, twenty-six agents stormed Zackary Sanders's home to execute a search warrant. The search warrant affidavit made only one specific allegation about Sanders: That some ███████████, the Sanders's IP address had ████████████████████████████████████████ ████████████████ 5-SJA-1914 (¶ 23).

That critical allegation, based on a tip from the ██████████████████ ████████████████████ was false. Read correctly, that ██████ tip stated only that the Sanders's IP address had accessed a *website*, not the pornographic materials *contained within* the website. And that makes all the difference: ████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████, none of which Appellant was shown (or even alleged) to have done.

Small wonder, then, that when the FBI agents executed the warrant they found nothing—not one morsel—showing that Sanders had ██████████████████ ████████████████████. The agents did, however, discover several graphic photos and videos that Sanders had received from teenagers who met him in adults-only online platforms. That is the principal evidence the government offered at trial.

2

The district court (Ellis, J.) gave all of this short shrift. The ████████ ██ allegation wasn't stale, the court held, because Appellant was a "collector" of child pornography, ████████████████████████████████ ████████████████████████████████████.[2] Nor, said the district court, did the FBI misrepresent the tip, declining even to entertain a *Franks* hearing or permit associated discovery.

Things got no better at trial. The district court precluded Appellant's expert from testifying, mis-instructed the jury on elements of the offenses, admitted statements Sanders had made during a coercive, custodial interrogation, and wrongfully excluded broad swaths of crucial evidence.

Start to finish, this case was riddled with reversible error. No matter how disturbing some of the images may be, the case should be dismissed on Fourth Amendment grounds or, at a minimum, remanded for further proceedings.

---

[2] Tor ("The Onion Router") is a free browser that can be downloaded from the internet (like Chrome or Firefox). 5-SJA-2013-16 (¶¶ 33, 35, 39-44). To shield user privacy, it routes internet communication through a series of randomly selected "intermediate relays" (commonly called the Tor Network). 5-SJA-2158 (¶ 20); 5-SJA-2118 (¶ 8). By routing internet traffic through intermediaries, Tor masks the IP address of a user such that ████████████████████████████████████████ ████████████████ 5-SJA-2118 (¶ 8). *See generally* 5-SJA-2158-60 (¶¶ 20-35) (providing additional details on Tor).

## STATEMENT OF THE CASE

### A.    The Search

The search of Sanders's devices originated from a "tip" ████████████

████████████████████████████████████████.  *See* 4-SJA-1524;

5-SJA-2073-74 (July 31, 2020 Hearing Tr.).



5-SJA-1994 (emphasis in original); *see* 4-SJA-1570 (confirming date of document).

████ 5-SJA-1996.

,5-SJA-1998,[3] ████

---

[3] ██████████████████████  *See* 5-SJA-1978 n.14 ████████████████
████████████████



████████. *See* 4-SJA-1571.  The report stated:

5-SJA-1998.

On February 10, 2020, having identified the Sanders family as the subscribers of the IP address, the government, through FBI Special Agent Ford, applied to search the Sanders's home in McLean, Virginia.  5-SJA-1899-1939.  Ford swore to but a single paragraph connecting Appellant to any unlawful activity:  ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ 5-SJA-1914 (¶ 23).[5]

---

[4] A "Tor hidden service" or "onion service" refers to a site that can be accessed only on the Tor network.  5-SJA-1910; *see* 6-SJA-2641 (¶ 6); 5-SJA-2159 (¶ 31).

[5] ████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████ 5-SJA-1914-15 (¶ 25).

Two days later, on February 12, 2020, twenty-six armed agents and officers arrived at Appellant's home at 6:05 am with guns drawn.  1-JA-149-51; 5-SJA-1941-43.  Agents detained the then-24-year-old Sanders in his bedroom, escorted him to a closed-door office, ignored his requests for an attorney, refused his repeated requests to talk with his parents, and interrogated him for more than three hours without providing *Miranda* warnings.    1-JA-164-204; *see* 1-JA-139.  ███

████████████████████████████████████████████████████████

████████████████████████████████████████. *See* 5-SJA-2321.

Tellingly, that exhaustive search uncovered no evidence that Appellant had ever ███████████████████████████████████████████████████

█████████ *See* 5-SJA-2067 (July 31, 2020 Hearing Tr.) ████████████████████

████████████████████████████████████████████████████████

████.  The search did, however, uncover some graphic photos and videos that Sanders had received from minors who contacted him on online message boards and dating services, as well as other illicit material unrelated to ████████.  1-JA-65-72 (¶¶ 13-22).

## B.    Indictment, Trial, and Conviction

1. Sanders was indicted on five counts of production of child pornography in violation of 18 U.S.C. § 2251(a); six counts of receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2); and one count of possession of child



pornography in violation of 18 U.S.C. § 2252(a)(4)(B). 1-JA-86-91. At trial, ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████. *E.g.*, 6-SJA-2780, 6-SJA-2886-95 (Oct. 20, 2021 Tr.);

7-SJA-3024-28 (Oct. 21, 2021 Tr.); 7-SJA-3432-33, 7-SJA-3446 (Oct. 25, 2021 Tr.).

2. For his part, Appellant presented three principal lines of defense. First,

Appellant maintained that he did not know or believe that any of the visual

depictions involved "sexually explicit conduct" because, in the BDSM community

that he and the minors inhabited, the depictions had little or nothing to do with sex

as conventionally understood.[6] *See, e.g.*, 2-JA-769-70 (Oct. 19, 2021 Tr.)

(contending that "it was not a sexual activity"); 8-SJA-3801-03 (Oct. 26, 2021 Tr.)

████████████████████████████████████████████████. To support

that defense, Appellant sought to ████████████████████████████████

████████████████████████████████████████████████████

---

[6] ████████████████████████████████████████████████████
██████████ *See* 6-SJA-2842-43 (Oct. 20, 2021 Tr.). ████████████████
████████████████████████████████████████████████████
████████████████████. 6-SJA-2699-703. ██████████████████
████████████████. *Id.*

████████████████████████████████████. *See* 6-SJA-2699-703. ███████████████

█████████████████████████████████████████. 6-SJA-2757-61.

Second, the defense contended that ███████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

*See, e.g.*, 6-SJA-2767, 2774-75 (Oct. 20, 2021 Tr.); 8-SJA-3791-97 (Oct. 26, 2021

Tr.).  To support that defense, Appellant proffered evidence showing that ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████    *E.g.*, 6-SJA-2832-35, 2854 (Oct. 20, 2021 Tr.) (proffers).   He also

submitted instructions consistent with that defense.  *See* 2-JA-483 (instruction on the

definition of "used"); 8-SJA-3731-32 (Oct. 26, 2021 Tr.).  Based on its conclusion

that ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████.  *See, e.g.*, 6-SJA-2467-69

(excluding evidence); 6-SJA-2861 (Oct. 20, 2021 Tr.); 7-SJA-3317 (Oct. 22, 2021

Tr.); 2-JA-577 (Oct. 27, 2021 Tr.) (instructions).

Finally, Appellant asserted that "producing [a] visual depiction" of the

juveniles was *not*, as the law requires, his principal purpose in interacting with the

minors.  Rather, as Sanders explained at trial, he was seeking to confirm that the

juveniles had fulfilled their agreed-upon role as submissive participants in a power-exchange relationship.  2-JA-769-70 (Oct. 19, 2021 Tr.); 8-SJA-3797-801 (Oct. 26, 2021 Tr.).  To support that defense, Appellant sought an instruction that "producing a visual depiction" must have been his principal purpose.  *See* 2-JA-474.  The district court instead instructed that "producing a visual depiction" need only have been a "motivating purpose" for Appellant's conduct.  8-SJA-3518-19 (Oct. 25, 2021 Tr.); 2-JA-573 (Oct. 27, 2021 Tr.).

3.  Sanders was convicted on all counts.  2-JA-605-08 (Oct. 27, 2021 Tr.).  He was sentenced to concurrent terms of 216 months (18 years) on the production and receipt counts and 120 months (10 years) on the possession count.  3-JA-1296.  Sanders timely appealed on April 13, 2022.  3-JA-1306.

## SUMMARY OF ARGUMENT

I.  Appellant's convictions should be vacated on Fourth Amendment grounds.  The only affidavit allegation specific to Sanders was that his IP address had made a single visit to ███████████████████████.  Because the affidavit failed to demonstrate that Appellant was a "collector," that allegation was too stale to justify searching a private home.  Moreover, Agent Ford misled the magistrate judge about the ███ tip, representing that Appellant had accessed illegal *content*, not merely the *website*.  The district court should at least have ordered a *Franks* hearing and discovery in aid of such a hearing.

9

II.  Appellant's convictions should be vacated on three independent grounds arising at trial.

A. Based on the premise (never contested) that "consent is not a defense," the district court instructed the jury to disregard any evidence of the minors' willing participation and excluded critical evidence for the same reason.  Those rulings misconceived what it means to "use" a minor within the meaning of § 2251 and § 2252.  The term "use," when read (as it must be) in light of the entire statutory structure, required the government to show that Appellant acted to overcome the will of the juveniles.

B.  The district court misinstructed the jury on the meaning of "sexually explicit conduct."  The court's freewheeling, multi-factor instruction on that term invited the jury to convict simply because the images contained nudity or could be seen subjectively as intended to elicit a sexual response.

C.  The district court excluded expert testimony ██████████████  ████████████  The proffered expert testimony went to the core of Appellant's scienter defense and provided critical context necessary for the jury to fairly assess whether ██████████████████████████████████████████, as the statutes required.

III.  Appellant's production convictions should be vacated because the district court wrongly instructed the jury that creating the videos need only have been a

"motivating purpose" for the sexual conduct. As this Court has made clear, creating a "visual depiction" must have been the "predominant" reason for the sexual conduct. *United States v. McCauley*, 983 F.3d 690, 695 (4th Cir. 2020).

IV. Appellant's possession conviction should be vacated because the district court admitted statements taken in violation of Appellant's Fifth Amendment rights. Those statements resulted from a coercive three-hour-long custodial interrogation that the FBI conducted without giving *Miranda* warnings. The agents also questioned Appellant even after he invoked his right to counsel.

## STANDARD OF REVIEW

This Court reviews legal rulings *de novo* and factual findings for clear error. *See United States v. Pulley*, 987 F.3d 370, 376 (4th Cir. 2021). Decisions whether to order discovery, admit evidence, or give an instruction are reviewed for abuse of discretion, but legal conclusions underlying such rulings are reviewed *de novo*. *See McCauley*, 983 F.3d at 694 (instruction); *United States v. Landersman*, 886 F.3d 393, 413 (4th Cir. 2018) (evidence); *United States v. Caro*, 597 F.3d 608, 616 (4th Cir. 2010) (discovery).

11

# ARGUMENT

## I. APPELLANT'S CONVICTIONS SHOULD BE REVERSED OR, AT MINIMUM, REMANDED ON FOURTH AMENDMENT GROUNDS

### A. The affidavit was based on stale information.

A search warrant may issue only upon allegations "so closely related to the time of the issue of the warrant as to justify a finding of probable cause *at that time*." *United States v. Bosyk*, 933 F.3d 319, 330 (4th Cir. 2019); *see also Sgro v. United States*, 287 U.S. 206, 210 (1932). Here, the only allegation ████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████. 5-SJA-1914 (¶ 23). Standing alone, that aged allegation could not support probable cause, and the district court did not suggest otherwise. *See, e.g.*, *United States v. Raymonda*, 780 F.3d 105, 117 (2d Cir. 2015) (nine-month-old evidence is stale); *United States v. Zimmerman*, 277 F.3d 426, 434 (3rd Cir. 2002) (similar).

The district court nevertheless rejected Sanders's staleness claim ████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████ 4-SJA-1669. There is, admittedly, such a "collector" exception to the staleness doctrine. *Bosyk*, 933 F.3d at 330. But not every person who visits a website containing child pornography is a "collector." Rather, as this Court has

emphasized, the government must allege *facts* showing that a suspect had a "preexisting predilection" or "willfully and deliberately" sought out child pornography. *See id.* at 331 & n.9. Without such facts, the government fails to "negate the possibility that a suspect's brush with child pornography was a purely negligent or inadvertent encounter, the residue of which was long ago expunged." *Id*. at 331.

So how, exactly, did the affidavit show that Appellant was a "collector"? It did not, for example, allege that Sanders ever "paid for access to child pornography, had a history of possessing pornographic images, was an admitted or convicted pedophile," or "distributed content to others." *Bosyk*, 933 F.3d at 331.[7] Nor does the affidavit anywhere allege that Sanders ever downloaded any file from (or uploaded any files to) ▮▮▮▮▮. *See* 5-SJA-1899-1939. And while the affidavit made generic claims about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ such "[b]oilerplate language" (▮▮▮▮▮▮▮▮▮▮▮▮▮, *see* 4-SJA-1669) is probative only where "the affidavit *also* includes facts that suggest the target of the search has the characteristics of a prototypical child pornography collector," *United States v. Clark*,

---

[7] Indeed, prior to swearing out the affidavit, Agent Ford confirmed that ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* 8-SJA-3955-57.

668 F.3d 934, 939 (7th Cir. 2012) (internal quotation marks omitted); *see United States v. Weber*, 923 F.2d 1338, 1345 (9th Cir. 1990) (similar).  Here, there are none.

The only allegation specific to Sanders— ██████████████████████ ███████████████████████████████████████ —cannot bridge that factual chasm.[8]  As this Court (and others) have emphasized, the government must allege "additional facts . . . over and above the single click of a URL."  *Bosyk*, 933 F.3d at 330 (alteration in original); *Raymonda*, 780 F.3d at 109 (requiring "other circumstances"); *see also United States v. Coreas*, 419 F.3d 151, 156 (2d Cir. 2005) (finding insufficient "mere act of responding affirmatively to the invitation to join" online bulletin board).  Were the rule otherwise, any wayward click online could justify dawn raids on private homes—a regime "utterly repellant to core purposes of the Fourth Amendment."  *Coreas*, 419 F.3d at 156.

Nor can a "collector" inference be drawn from the allegation that it supposedly ████████████████████████████████████████ .  According to the affidavit, all Sanders had to do ████████████████████████████████████████████ ██████████████████ 5-SJA-1915 (¶ 27).  ████████████████████

---

[8] The affidavit separately asserts, ████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████ 5-SJA-1916 (¶ 28).  But the government never alleged that Sanders ██████████████████████ , *see* 8-SJA-3938 ████████████████████████████████████████████ .

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████  *See* 5-SJA-2160 (¶ 36); 5-SJA-2019-22.[9]  Such humdrum

actions bear no resemblance to the "elaborate steps" justifying a "collector"

inference.  *Bosyk*, 933 F.3d at 331.

In *United States v. Vosburgh*, for example, the defendant manually decoded a

URL and then decrypted the material that he downloaded. 602 F.3d 512, 517 (3d

Cir. 2010).  By contrast, installing a free, publicly available browser like Tor—a

browser used by countless Americans every day—is downright pedestrian.  *See* 5-

SJA-1908 (¶¶ 8-9); 5-SJA-2160 (¶¶ 36-37); 5-SJA-2011.  And, while the affidavit

identified ███████████████████████████████████████████

██████████████████████████████████████.[10]

---

[9] A defense expert submitted short videos showing that installing and using Tor is as simple as any other aftermarket browser, and, once installed, a user may connect to the Tor browser automatically.  *See* https://vimeo.com/607429883 (installation); https://vimeo.com/607431066 (use); *see also* R. 464-1 (declaration with transcript of videos).

[10] The affidavit alleged that ████████████████████████████████ ████████████████████████████████ 5-SJA-1915-16 (¶ 27).  But that is transparently circular because it never alleges that Sanders was such a user.  And, as defense experts explained (without contradiction from the government), users can easily stumble onto sites like ████████ by searching for

Unless this Court is prepared to say that a "collector" includes *anyone* who allegedly accessed a website containing child pornography, the affidavit in this case was unconstitutionally stale. The Second Circuit made that precise point in *Raymonda*. There, the court held that nine-month-old allegations that an IP address had accessed dozens of child pornography images were too stale. 780 F.3d at 110, 117. It rejected the government's reliance on the collector inference because the "affidavit contained no evidence suggesting that the user had deliberately sought to view" child pornography, discovered the website "while searching for child pornography," or "saved the illicit [images] to his hard drive." *Id.* at 117. Whereas the defendant in *Raymonda* was alleged to have accessed dozens of child pornographic images, *id.* at 110, the government has never identified a single image (pornographic or not) that Appellant ever accessed on the ████████ site. 3-JA-1252 (government post-trial admission that it could not determine if Appellant ever viewed specific material on the site because it had no evidence that he ever registered an account); 8-SJA-3938. If *Raymonda* is right on staleness (and it is), this is an *a fortiori* case.

---

lawful content ████████████████████████████ using a Tor search engine or because such links are embedded in lawful sites lacking any indicia of their content. *See* 6-SJA-2650-53 (¶¶ 45-58); *see also Bosyk*, 933 F.3d at 343-45 (Wynn, J., dissenting) (discussing "myriad ways" that users can "*unintentionally navigate* to URLs because" links "frequently do not provide any external indication of the content to which they navigate") (emphasis in original).

Absent allegations that justify a "collector" inference, no reasonably trained officer could have believed that a ▆▆▆▆▆▆▆ tip gave rise to probable cause. *See United States v. Doyle*, 650 F.3d 460, 475-76 (4th Cir. 2011) (good-faith exception inapplicable where warrant lacked "necessary information" to show that "probable cause was not stale"); *see also Zimmerman*, 277 F.3d at 437-38 (good-faith exception will not save a "paltry showing" that any "reasonably well-trained officer" would know is insufficient to search a home).

Every morsel of evidence used at trial was the fruit of this unlawful search.[11] For that reason alone, Appellant's convictions should be reversed.

### B. The affidavit misrepresented the evidence, in violation of *Franks v. Delaware*.

When affiants falsely present the relevant facts, they "usurp[] the magistrate's role" to make an independent probable cause evaluation. *United States v. Lull*, 824 F.3d 109, 117 (4th Cir. 2016). Where a false representation is made at least recklessly, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

---

[11] That includes the statements that Sanders made during his interview by the agents. *See Wong Sun v. United States*, 371 U.S. 471, 484-87 (1963); *United States v. Gaines*, 668 F.3d 170, 173 (4th Cir. 2012).

1. Paragraph 23 baldly misrepresented the tip documents received by the FBI. According to Paragraph 23, ████████████████████████████████████ ████████████████████████████████████ 5-SJA-1914. Paragraph 23 told the magistrate judge that ████████████████████████ ████████████████████████████

That was a flatly misleading account of the tip documents.  To reiterate, the first tip document said:

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
██████████████████ ██████████████████
████████████████████████████████████

5-SJA-1994.  Even read in a vacuum, that report's reference to ██████████████ ████████████████████  could not mean specific images or videos.  No English speaker would say that an image ████████████ the sharing of itself.  The only sensible way to understand the initial tip is that it reported ██████████████ ████████████████████

That common-sense reading is confirmed beyond any plausible doubt by the third tip document.  This time, the ██████████████████████████████ ██████████████████████████████:

████████████████████████████████████
████████████████████████████████████
██████████████████████████ ██████████

███████████████████████████
███████████████

5-SJA-1998.  Reading this, any competent agent would have inferred only that someone using the Sanders's IP address had accessed the ████████ *website*, period.

If that weren't enough, the first and third tip documents emphasized that ████ ████████████████████████████████████ *See* 5-SJA-1994; 5-SJA-1998. *But neither the* ████ *nor the FBI ever alleged that Appellant was registered.  See* 3-JA-1252; 8-SJA-3938.  And although the ████ and FBI have acknowledged that they are able to track specific activity on the website, *see* 5-SJA-1998 ████████ ████████████████████████████████████, 3-JA-1252, neither has ever identified *anything* that Sanders accessed on that site.  Indeed, even after trial the government conceded that it cannot determine whether Appellant ever accessed any illicit material on the site because it does not know if he ever registered an account.  *See* 3-JA-1252; 8-SJA-3938 (acknowledging that ████ ████████████████████████████████████ *see also* 4-SJA-1733-34 (Sept. 11, 2020 Hearing Tr.).

Yet Paragraph 23 told the magistrate judge exactly the opposite.  By inserting the phrase ████████████ into his characterization of the tip, Agent Ford fundamentally altered its meaning.  5-SJA-1914.  The prosecutors ████████ ████████████████████████████████████ 5-SJA-2081

19

(July 31, 2020 Hearing Tr.).  The district court ███████████████████████████.

5-SJA-2082 (July 31, 2020 Hearing Tr.); *see also* 4-SJA-1671.

That misrepresentation matters.  If all Sanders ██████████ was the ██████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████, *see* 4-

SJA-1763-64):

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

4-SJA-1777. ████████████████████████████████████████████

██████ *See* ████████████████ Page (4-SJA-1788); ████████████ Page (5-SJA-2371);

20

███ Page (5-SJA-2372).[12] Alleging access to such innocuous content is obviously worlds apart from claiming that ███████████████████████

███████████

    2. To violate *Franks*, the agent must have "personally recognized the risk of making the affidavit misleading." *Pulley*, 987 F.3d at 377. Here, Agent Ford's own words show that he did. Just before he prepared his affidavit, Agent Ford drafted an FBI report where he correctly characterized the tip as conveying that ████████████

████████████████████████████ 4-SJA-1501.[13]

    But it gets worse. Whereas the first tip represented that ████████████

████████████████████████████████

████████████ Agent Ford did a sleight of hand when he recounted the tip in his affidavit. He split ██████████████ into two distinct paragraphs. In Paragraph 23, Ford swore that ██████████████

---

[12] Even once logged in, the site contained a mix of lawful and unlawful material. ████████████████████████████ ███████ 5-SJA-1911-12 (¶¶ 16-19), and "members' chatting with each other" is protected First Amendment speech, *Coreas*, 419 F.3d at 156-57. According to the affidavit, the site also contained ████████████ which is legal content. 5-SJA-1911-12 (¶¶ 17-19); *see* 4-SJA-1376 n.8; 5-SJA-1973-74.

[13] Similarly, the FBI's operational plan to execute the warrant—dated only four days before Agent Ford's affidavit—described the tip as ████████████ ██████████████ 8-SJA-3959. Even after the search, the FBI characterized the tip as reporting only that an individual "accessed a website." 1-JA-64.

5-SJA-1914.  But in Paragraph 24, Ford acknowledged that ████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████ *Id.*  Paragraph 24 confirms

what is obvious from the face of the ████ tip documents:  All the ████ told the FBI,

and all Agent Ford believed before executing his affidavit, was that ███████████

████████████████████████████████████ Paragraph 23's

representation about ███████████████████████ was flatly untrue, and

Agent Ford knew it.

3.    Without the misrepresentation in Paragraph 23, the affidavit comes

nowhere close to probable cause.  All that remains about Sanders in particular is a

tip ████████████████████████████████████████████████

██████████.[14]  It does not allege that Appellant ever viewed any illicit material

there.  Indeed, it strongly implies that he never viewed anything illegal ███████

██████████████████████, 5-SJA-1914, and, so far as

the affidavit is concerned, Sanders never registered an account.  Nor does the

affidavit allege that Sanders spent more than a single second on the site or that he

---

[14] This paucity of evidence distinguishes this case from virtually every other ████
██████████████████████████ *See* 8-SJA-3941-48; 8-SJA-3856-
58 (identifying numerous cases that arose from ███████████ where the
government provided more evidence to support a search-warrant request).

ever returned.  It is likewise silent about how Appellant came to the site, and it is completely devoid of any allegation that he ever visited any child-pornography directory.[15]  And the affidavit does not allege any criminal history whatsoever. While it does devote page after page to a generic disquisition on child pornography, Tor, and ███████, those "unparticularized allegations" cannot supply probable cause.  *Coreas*, 419 F.3d at 156.

The district court, however, held that nothing more was needed.  In its view, the affidavit established probable cause because it alleged that ████████████ ███████████████████████████████████████████████████████████ ██████████████████████████████████████████████ 4-SJA-1672.  It concluded that those steps showed that ████████████████ ███████████████████████████████████████████████████████████ █████████████████████████ 4-SJA-1667, 4-SJA-1672; *see also* 4-SJA-1834 n.1 (same).

That reasoning proves way too much.  As the defense experts explained (with no contrary evidence from the government), ████████████████████████ █████████████████████████

---

[15] ███████████████████████████████████████████████████ ███████████████████████████████████████████████ ██████████████████ 6-SJA-2651 (¶ 48); 5-SJA-2019. ██████ ███████████████████████████████████████████████ ████████████████ 6-SJA-2652; *see* 6-SJA-2640-53.

██████████████████. *See* 5-SJA-2010 (¶¶ 7-8); 5-SJA-2013-18 (¶¶ 32-47).  Nor does the fact that a user landed on a website for a split-second reveal anything about his intentions because "URLs frequently do not provide any external indication of the content to which they navigate." *Bosyk*, 933 F.3d at 344 (Wynn, J., dissenting); *see* 5-SJA-2019-20 (¶¶ 57-67) (describing how ███████████████████████ ████████████████████); *see also* Affidavit ¶ 6, *United States v. Bateman*, 1:20-cr-10012-IT (D. Mass. Apr. 26, 2022), Dkt. 126-13 (describing how Tor users can "easily find" and access Tor websites without knowledge of their content).

Bosyk* makes clear that probable cause requires "additional facts . . . over and above" one-time access to a Tor site containing illegal content.  933 F.3d at 330 (alteration in original).  The defendant in *Bosyk* "clicked [a] link" on a Tor onion service that was "dedicated to the advertisement, distribution and production of child pornography."  *Id*. at 322-23 & n.1.  But the fact that the site was "accessible only through an anonymous web browser that users must download" was scarcely dispositive.  *Id.*  Rather, the panel majority relied on the crucial *additional* fact that "the URL appeared in a post that described and depicted its contents on the same day that somebody clicked it."  *Id*. at 328; *see also id*. at 325 (holding that "timing" was the "critical fact" that decided the case).

Access to a website alone is never enough; something extra is required.  Sometimes the defendant has also uploaded illegal content.  *See, e.g.*, *United States*

*v. Bynum*, 604 F.3d 161, 165 (4th Cir. 2010). Sometimes the defendant will have "entered a username and password" to access child pornography on a Tor service. *See, e.g.*, *United States v. McLamb*, 880 F.3d 685, 689-90 (4th Cir. 2018) (finding that such actions provided at least some "indicia of probable cause"); *United States v. Shields*, 2004 WL 832937, at \*7 (M.D. Pa. Apr. 14, 2004), *aff'd*, 458 F.3d 269 (3d Cir. 2006) (similar). Other times the defendant will have spent hours on the site and clicked hundreds of links. *See, e.g.*, *United States v. Tagg*, 886 F.3d 579, 585-87 (6th Cir. 2018).[16]

████████████████████████████████████████████

Stripped of Paragraph 23's misrepresentation, Ford's affidavit could never have passed muster. The evidence seized from Appellant's home should be suppressed. *Franks*, 438 U.S. at 156; *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990).

## C.     The Court should at least remand for a *Franks* hearing.

Where a defendant makes a "substantial preliminary showing" of a *Franks* violation, he is entitled to a hearing to "challenge the veracity of a sworn statement used by police to procure a search warrant." *Franks*, 438 U.S. at 155-56. To make that showing, he must both "point out specifically the portion of the affidavit that is

---

[16] For the same reasons, the district court's fallback conclusion (4-SJA-1668-69; 4-SJA-1834 n.1)████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████ is incorrect.

claimed to be false and give reasons why it is false" and furnish "reliable statements of witnesses" to support his claims. *United States v. Tate*, 524 F.3d 449, 454 (4th Cir. 2008).

The district court denied a *Franks* hearing because, ███████████████. 4-SJA-1671 & n.9; *see also* 6-SJA-2664-66. That conclusion was erroneous for reasons already explained. And Appellant easily satisfied his burden of production by identifying the misleading portion of the affidavit (Paragraph 23), explaining why it was misleading, and providing "reliable statements" in support of his position, including ███████████████. That evidence at the very least provides the "substantial *preliminary* showing" needed to justify a *Franks* hearing.

### D.    At a bare minimum, the Court should remand for discovery in aid of a *Franks* hearing.

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure requires the government to turn over items in its possession if they are (a) requested; (b) possessed; and (c) "material to preparing the defense." *See United States v. Cranson*, 453 F.2d 123, 126 n.6 (4th Cir. 1971). This is "not a heavy burden" on defendants. *United States v. George*, 786 F. Supp. 56, 58 (D.D.C. 1992).

Appellant sought to compel discovery on (1) ███████████████ (Paragraph 23) and (2) the representation that ███████████████

████████████████████████████████████████ (Paragraph 25). *See* 4-SJA-1381, 4-SJA-1386-89; 4-SJA-1790-92; 4-SJA-1810-17.  The district court denied the motions, reasoning that ███████████████████████ ████████████████████████████████████████████████ ██. 4-SJA-1575-76; *see* 4-SJA-1658 (same); 1-JA-378-80 (same).  With respect to Paragraph 23, the district court █████████████████████████████ ████████████████████████████████████ 4-SJA-1576; 4-SJA-1654-55.  As for Paragraph 25, the court ruled that Appellant ███████████ ████████████████████████████████████████████████ ██████████ 4-SJA-1656; *see* 4-SJA-1578-79.

But if "certainty" were the test for Rule 16 discovery, only defendants with no need for discovery could ever get it—a rule that only Joseph Heller would appreciate.[17]  Where "an accused cannot possibly know, but may only suspect, that

---

[17] "What shall I say to the people who do come to see you while you're here?"
"Tell them I'm in and ask them to wait."
"Yes, sir. For how long?"
"Until I've left."
"And then what shall I do with them?"
"I don't care."
"May I send them in to see you after you've left?"
"Yes."
"But you won't be here then, will you?"
"No."
Joseph Heller, *Catch 22* 100 (S&S Classic ed. 1999) (1961).

particular information exists," "he is not required . . . to make a particular showing of the exact information sought." *Love v. Johnson*, 57 F.3d 1305, 1313 (4th Cir. 1995). All that is required is "some plausible showing" that the government has the requested material. *United States v. King*, 628 F.3d 693, 703-04 (4th Cir. 2011); *accord United States v. Budziak*, 697 F.3d 1105, 1112 (9th Cir. 2012) (discovery appropriate where defendant "presented evidence suggesting" the FBI "could have" had additional information on defendant's software usage).

Appellant more than met that burden.

*Paragraph 23*. As previously explained, Sanders provided significant evidence showing that ██████████████████████████████ ████████████████. *See supra* 17-22. Appellant supported that request with a declaration from ████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ █████████████████████ 6-SJA-2545-46. The government itself confirmed that █████████. To give just one example, ████████████ █████████████████████████████████ ████████████████, 4-SJA-1760-64, which, as previously explained, confirms that the ████ tip ████████████████████████ provided an insufficient basis for probable cause, *supra* 17-21. Appellant also submitted evidence ████████

██████████████████████████████████████████ showing that ████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████ *See* 8-SJA-3930-32 (¶¶ 10-13).  There

is every reason to believe that the government has more documents where these came

from.

  *Paragraph 25*.  Appellant provided ample reason to believe that ████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████.[18]  *See* 4-SJA-1385-86.  In support of Appellant's discovery requests,

defense counsel submitted affidavits of FBI agents stating that they were aware of

"*no other way*" to de-anonymize a Tor user and that other investigative procedures

are "unlikely to succeed if . . . tried."[19]  *See* 5-SJA-2096 (citing Affidavit ¶ 31,

---

  [18] A NIT is a generic law-enforcement term for malware or other computer code that interferes with a Tor user's computer and forces it to disclose its true IP address. *See United States v. Darby*, 190 F. Supp. 3d 520, 526, 530 (E.D. Va. 2016), *aff'd*, 721 F. App'x 304 (4th Cir. 2018).  The use of a NIT is a "Fourth Amendment search." *Id.*; *see United States v. Taylor*, 935 F.3d 1279, 1288 (11th Cir. 2019).

  [19] ██████████████████████████████████ Agent Ford hypothesized that ███████████████████████████████████████████ 5-SJA-2266-67. But Agent Ford never claimed that ████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████ That is

*United States v. Matish*, 193 F. Supp. 3d 585 (E.D. Va. Mar. 17, 2016), Dkt. 18-2; Affidavit ¶ 41, *United States v. Darby*, 190 F. Supp. 3d 520 (E.D. Va. May 9, 2016), Dkt. 23-1 (same)); *see also* 6-SJA-2683 (listing additional examples).  In addition, Appellant proffered ███████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████.  *See* 4-SJA-1398 (¶ 19); 4-SJA-1512-13; 6-SJA-2645 (¶ 23); 5-SJA-2003 (¶ 13); 5-SJA-2165 (¶ 76).   That far exceeds the limited showing that Rule 16 requires.

Appellant also made a more-than-sufficient showing that the United States was a joint venturer with the foreign agency that deployed the NIT.  *See United States v. Abu Ali*, 528 F.3d 210, 228 (4th Cir. 2008).  To install a NIT, ██████████ ███████████████████████.  6-SJA-2647 (¶ 28).  Here, Sanders showed that ███████████████████████████████████████████████████ █████████████████.  *See* 8-SJA-3975.  ███████████████████████ ████████████████████████████████.  It follows that ██████████████ ███████████████████████████████████████████████.  *See United*

―――――――――――――――――――

because, as Sanders's experts explained, ██████████████████████ ███████████████████████████████  6-SJA-2648 (¶¶ 34-37).

30

*States v. Mitrovich*, 458 F. Supp. 3d 961, 963, 967 (N.D. Ill. 2020) (authorizing discovery under similar circumstances).[20]

Notably, the government has *never* denied that it has additional documents responsive to Appellant's requests.[21]  It has instead resorted to mealy-mouthed statements dismissing the request ███████████████████████████████████ *See* 4-SJA-1528.  If the government's files truly contained nothing more than the three tip documents, it would have said so long ago.  Because Appellant made at least the modest prima facie showing required to obtain discovery, this case should—at minimum—be remanded for the government to produce all documents in its possession, custody, or control relevant to Paragraphs 23 and 25.

---

[20] Sanders also proffered evidence of a history of information sharing between the agencies, as well as the FBI's own statement that it worked "in conjunction" with other law enforcement in investigating ████████.  1-JA-64 (¶ 9); *see* 4-SJA1424; 5-SJA-2124-25 (¶ 25).  Other U.S. law enforcement has likewise stated that ███ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████ 6-SJA-2674 n.9.

[21] Any such denial would be absurd on its face.  The ████ "tip" documents identified by the government cannot possibly be the only back-and-forth between the ████ and the FBI. ██████████████████████████████████████ ███████████████████████████████████████████.  *See* 5-SJA-1994; 5-SJA-1996. ████████████████████████████████████ ███████████████████████████████████. 5-SJA-1998.  The FBI must have had something more to connect those dots.

II.   **APPELLANT'S CONVICTIONS SHOULD BE REVERSED BECAUSE THE DISTRICT COURT IMPROPERLY INSTRUCTED THE JURY AND EXCLUDED HIGHLY RELEVANT EVIDENCE AND EXPERT TESTIMONY**

A.   **The district court misconceived what it means to "use" a minor within the meaning of the relevant statutes.**

1.   The production statute, Section 2251(a), imposes stiff criminal penalties on "[a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct."  Appellant contended that each of these verbs, properly construed, required the government to prove that he had sought to overcome the will of the minor participants.  *See, e.g.*, 2-JA-518-23.  Sanders asserted that the government had failed to prove that essential element—namely, that he sought to overcome the will of a minor by supervisory or financial control ("employs"), exploitation or deceit ("uses"), reason ("persuades"), threats ("coerces"), rewards ("entices"), or influence ("induces").  *Id.*  Rather, Appellant insisted, each of the minors had voluntarily engaged in the conduct, in some instances even initiating it.

The district court held, however, that any effort to prove voluntary conduct by the minors would convey the misimpression that consent was a complete defense to the charges—a contention Appellant never advanced.  The court therefore repeatedly instructed the jury to disregard any evidence of the minors' willing participation.

32

During the testimony of the very first witness, the district court instructed the jury that ██████████████████████████████████████████████ ██████████████████████████████ 6-SJA-2861 (Oct. 20, 2021 Tr.).  Judge Ellis repeated that admonition throughout the trial (*see, e.g.*, 7-SJA-3317 (Oct. 22, 2021 Tr.)), and, in the final charge, he instructed the jury that ████████████████ ████████████████████████████████████████████, 2-JA-577 (Oct. 27, 2021 Tr.).

Those instructions fundamentally misinterpreted Section 2251.  A minor's desire to participate (in some cases even initiating the conduct) bears critically on whether a defendant acted to "persuade," "induce," "entice," or "coerce" a minor because all of those verbs describe an "attempt to achieve a *mental* state—a minor's assent." *United States v. Engle*, 676 F.3d 405, 419, 411 n.3 (4th Cir. 2012) (emphasis in original) (concluding that "the idea conveyed is of one person leading or moving another by persuasion or influence, as to some action [or] state of mind").  In determining whether a defendant has "transform[ed] or overcome the will of a minor" to achieve that end, a minor's desire to participate independent of the defendant obviously factors in.  *United States v. Hite*, 769 F.3d 1154, 1161 (D.C. Cir. 2014).

The verb "use" must be interpreted similarly.  While that word "is undoubtedly broad in the abstract, [] under the venerable doctrine of *noscitur a*

*sociis*, a word 'is known by the company it keeps,' and we must 'avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words.'" *United States v. Howard*, 968 F.3d 717, 722 (7th Cir. 2020) (quoting *Yates v. United States*, 574 U.S. 528, 543 (2015) (plurality opinion)). For purposes of Section 2251, the meaning of "use" should, therefore, be "narrowed" by the "neighboring words with which it is associated." *United States v. Williams*, 553 U.S. 285, 294 (2008); *see also Yates*, 574 U.S. at 543 (plurality opinion) ("[t]he words immediately surrounding" a word can "also cabin the contextual meaning of that term").

The word "use" must therefore be understood to require some action to achieve assent. One "uses" (in the narrower sense) when he "take[s] unfair advantage" or "exploit[s]," particularly when the object of the verb is a person. *Random House Unabridged Dictionary of the English Language* 2097 (2d ed. 1987); *see also, e.g.*, *Webster's Second New Twentieth Century Dictionary* 2012 (1962) ("[T]o exploit, as a person; to treat as a means to some selfish end."); *Oxford English Dictionary* 472 (1971) ("to dispose or 'make an end' of (a person)"). [22] For example, a person may say that he was "used" when he agrees to an action based on another's

---

[22] The same is true for "employ." While "employ" can have an expansive meaning ("to make use of"), here it most naturally means "to hire," *Random House Unabridged* at 638. Reading "employ" for all it's worth would both make it duplicative of "use" and leave the other four verbs with no work to do. Nothing in the record shows that Appellant "employed" any minor in the hiring sense, and the government has never claimed otherwise.

false pretenses (e.g., "I thought she was my friend, but she just used me to help her move"). But, absent some sort of manipulation or deception, no native English speaker would say that he was "used" when he volunteered to help.

Indeed, if "use" were satisfied merely by a minor's presence in an image or video, then the remaining verbs would be sapped of any independent function. The government would never set out to prove that a minor was "coerced," "enticed," "employed," "induced," or "persuaded," if the minor's presence alone were enough to secure a conviction. As a result, "use" would be the only one of the six Section 2251 verbs that would ever do any work, and such a reading is plainly wrong. *See Ysleta Del Sur Pueblo v. Texas*, 2022 WL 2135494, at *8 (U.S. June 15, 2022); *Loughrin v. United States*, 573 U.S. 351, 359 (2014).[23]

2. The same holds true for the receipt and possession counts. Although Sections 2252(a)(2)(A) and (a)(4)(B)(i) do not surround the word "use" with a narrowing string of verbs, their structure makes clear that there, too, the word "use" must be given a narrowing construction. The receipt and possession provisions apply only if the relevant acts "involves the use of a minor engaging in sexually explicit conduct." If "use" is given its broadest possible meaning, then the phrase

---

[23] A narrower conception of "use" is also consistent with the statute's draconian penalties—including a 15-year mandatory-minimum sentence. *See* 18 U.S.C. § 2251(e). *See Borden v. United States*, 141 S. Ct. 1817, 1822 (2021) (adopting narrow reading of Armed Career Criminal Act for the same reason).

"the use of a" becomes utterly superfluous.  Excising the phrase "the use of a" would leave the remaining sentence with no change in meaning, thereby violating the basic canon that courts should give effect to every word of a statute.  *Loughrin*, 573 U.S. at 357-58.

3.     A more expansive interpretation of "use" would also "dramatically intrude[] upon traditional state criminal jurisdiction."  *Bond v. United States*, 572 U.S. 844, 857 (2014) (quoting *United States v. Bass*, 404 U.S. 336, 350 (1971)).  As the Supreme Court has explained, absent a clear statement to the contrary, courts should not interpret federal criminal statutes such that they upset the "usual constitutional balance of federal and state powers" or "radically readjust[] the balance of state and national authority."  *Id.* at 858.

Protection of children is primarily an area for state, not federal, regulation.  Because the Constitution "reserve[es] the general police power for the States," it is no surprise that "state laws criminalizing sexual activity with minors would encompass a broader range of conduct than federal laws."  *McCauley*, 983 F.3d at 696.  And, in recent years, the states have charted their own paths to deal with the growing prevalence of sexting as a form of teenage sexual experimentation.  *See generally* Jordan J. Szymialis, *Sexting: A Response to Prosecuting Those Growing Up With a Growing Trend*, 44 Ind. L. Rev. 301, 314-22 (2010).  Some states, for example, have criminal carve-outs for voluntary teen sexting.  *See, e.g.*, Neb. Rev.

Stat. § 28-813.01(3) (no criminal liability under certain circumstances). Others have opted to keep that conduct criminal but treat it much less harshly than mine-run child pornography. *See, e.g.*, Ariz. Rev. Stat. § 8-309 (treating teen sexting as a petty offense in some circumstances and a low-level misdemeanor in others).

4. By instructing the jury to disregard any evidence of voluntary conduct by the juveniles, the district court all but gutted Sanders's core defense, i.e., that he had not sought to overcome the will of a minor. The district court repeatedly told the jury to pay no mind to evidence of willing participation. It even ███████████ ███████████████████████████████████████████████████████████ ████████████████████████████████ 8-SJA-3789-91 (Oct. 26, 2021 Tr.).

The government then piled on. ████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████. 8-SJA-3829, 8-SJA-3839 (Oct. 26, 2021 Tr.). ██████████████████████████ ███████████████████████████████████████████████████████████ █████████████████████████████████ 8-SJA-3766-67 (Oct. 26, 2021 Tr.).

5. In a final effort to mitigate the prejudice from the district court's erroneous instruction and preclusion of evidence, Appellant asked the district court to charge the jury on his theory of defense: that (1) "use" should be interpreted narrowly, 2-

JA-483, and (2) that the jury could ████████████████████████████

████████████████████████████ 8-SJA-3731-32 (Oct. 26, 2021

Tr.).  The district court rejected those instructions.  *See* 8-SJA-3732, 2-JA-577 (Oct.

27, 2021 Tr.).

That was error.  This Court has made clear that, so long as the proposed

instructions have "an evidentiary foundation and are accurate statements of the law,

the district court should include instructions 'to instruct the jury in the defendant's

theory of defense.'"  *United States v. Dornhofer*, 859 F.2d 1195, 1199 (4th Cir. 1988)

(quoting *United States v. Mitchell*, 495 F.2d 285, 287-88 (4th Cir. 1974)).  Here, the

instructions that Sanders sought accurately reflected the law, for the reasons

explained above.  *See supra* 31-36.  And, while the district court wrongly excluded

wide swaths of evidence ████████████████████████, *see infra* 39-

40, it admitted at least some evidence that, when viewed in the light "most favorable"

to Appellant, provided substantial evidentiary basis for the requested instruction.

*See United States v. Ricks*, 573 F.3d 198, 199 (4th Cir. 2009).

Nor was this a case where the substance of Sanders's proposed instructions

was "covered by the other instructions provided by the [district] court."  *United*

*States v. Ford*, 500 F. App'x 248, 251-52 (4th Cir. 2012) (per curiam).  To the

contrary, the district court repeatedly told the jury that assent and voluntariness could

*not* be considered—full stop.  *See infra* 39.  Because Appellant nowhere "receive[d]

the precise and specific charge to which he was entitled," the district court's refusal of those theory-of-the-defense instructions "constituted reversible error." *Mitchell*, 495 F.2d at 288.

### B.    The district court wrongly excluded critical evidence.

Based on the (unchallenged) bromide that ███████████████ the district court excluded large swaths ███████████████████ ███ showing that Sanders did not seek to overcome or transform their wills. *See, e.g.*, 6-SJA-2832-35 (Oct. 20, 2021 Tr.) ████████████████ ████████████████████████████ ████████████████. Because the government often focused on out-of-context snippets of those messages, that evidence was critical to dispel any notion that the relationship ran afoul of the verbs in Section 2251 or "use" in Section 2252. But the district court repeatedly excluded evidence of ██████████████ *See, e.g.*, 6-SJA-2467-68 (granting government motion in limine); 7-SJA-3285-88 (Oct. 22, 2021 Tr.) ████████████████████████ ████████████████████[24]

---

[24] Similar rulings abound in the trial record. *See, e.g.*, 6-SJA-2792 (Oct. 20, 2021 Tr.) ████████████████████████ ██████ ██████ ████████████ ███ ███ 6-SJA-2832-35 (Oct. 20, 2021 Tr.) (similar); 8-SJA-3610-12 (Oct. 26, 2021 Tr.) (similar); 8-SJA-3731-32 (Oct. 26, 2021 Tr.) (similar).

Those evidentiary rulings hobbled the defense. The government introduced



████████████. *See, e.g.*, 7-SJA-3369-70 (Oct. 22, 2021 Tr.) ████████

█████████████████████████████████████. And during closing, the

government argued that ███████████████████████████████

████████████████ 8-SJA-3832-33 (Oct. 26, 2021 Tr.) ████████████

██████████████████████ The district

court's evidentiary rulings disarmed the defense, leaving Appellant unable to

effectively counter such claims or introduce evidence showing ████████████

████████. Because those erroneous exclusions "prevented [Sanders] from fully

developing evidence relevant to a material issue," reversal is required. *See Schultz

v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994).[25]

**C.    The district court also erred in its definition of "sexually explicit conduct."**

Each of the charges also required the government to prove that the materials

in question depicted "sexually explicit conduct." 18 U.S.C. § 2251(a) (production);

---

[25] The district court cited Rule 412 as an alternative basis to exclude this evidence. *E.g.*, 2-JA-525. But Rule 412(b)(1)(C) expressly *permits* the admission of evidence that cannot be constitutionally excluded—like evidence of Appellant's knowledge of voluntary behavior that is directly probative to whether he acted to overcome the will of the purported victims. *See Doe v. United States*, 666 F.2d 43, 48 (4th Cir. 1981).

*id.* § 2252(a)(2) (receipt); *id.* § 2252(a)(4)(B) (possession). Section 2256(2)(A) defines the term "sexually explicit conduct" to include, among other things, a "lascivious exhibition of the anus, genitals, or pubic area of any person."

Over Appellant's objection, the district court instructed the jury that it could consider six factors in determining whether exhibition was "lascivious," including: (a) "whether the minor is fully or partially clothed or nude; and (b) "whether the visual depiction is intended or designed to elicit a sexual response in the viewer." 2-JA-584-85 (Oct. 27, 2021 Tr.).[26] It further instructed that an image "*need not* involve all of these factors," and that the jury could "decide the weight or lack of weight to be given to any of these factors." 2-JA-585 (Oct. 27, 2021 Tr.).

That freewheeling instruction invited the jury to convict based on nothing more than simple nudity or a finding that the material was designed to elicit a sexual response in the viewer. This Court (and others) have correctly held that neither of those factors, standing alone, amounts to "lascivious exhibition."

*Nudity*. Because the statute defines sexually explicit conduct to include only *lascivious* exhibitions of the genitals, nudity alone "cannot suffice." *United States*

---

[26] The district court drew those factors from *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986). The *Dost* factors have been subject to withering "criticism over the years" for precisely the reasons identified below, and this Court has never adopted them. *See United States v. Courtade*, 929 F.3d 186, 192 (4th Cir. 2019) (summarizing criticism and declining to consider factors from *Dost*).

*v. Courtade*, 929 F.3d 186, 191 (4th Cir. 2019) (concluding that otherwise "the word lascivious would become superfluous"); *see also United States v. X-Citement Video, Inc.*, 513 U.S. 64, 84 (1994) (Scalia, J., dissenting) ("Sexually explicit conduct, as defined in the statute, does not include mere nudity." (internal quotation and alteration marks omitted)). That narrowly circumscribed definition does not reach "the clinical, the artistic, nor even the risqué, but *hard-core* pornography." *X-Citement Video*, 513 U.S. at 84 (Scalia, J., dissenting).

*Intended to elicit a sexual response*. "Lascivious exhibition" invites an *objective* inquiry—it cannot suffice that the picture "elicit[s] a sexual response in the viewer." *United States v. Hillie*, 14 F.4th 677, 689 (D.C. Cir. 2021). "[A] harmless picture of a child in a bathtub" does not become a lascivious exhibition merely because a particular defendant may find it titillating. *See id*. at 691; *see also United States v. Steen*, 634 F.3d 822, 829 (5th Cir. 2011) (Higginbotham, J., concurring) ("A pedophile may be aroused by photos of children at a bus stop wearing winter coats, but these are not pornographic.").

The district court's unguided, multi-factor inquiry—which authorized the jury to convict based on any single one of the "*Dost* factors"—is plainly unsustainable. To make matters worse, the district court then refused to apprise the jury that (i) ███

███████████████████████████ ; (ii) ███████████████████████

███████████████████ ; and (iii) ███████████████

████████████████████████████████████████ 8-SJA-

3753-56 (Oct. 26, 2021 Tr.).

And the government took full advantage.  It repeatedly ██████████

████████████████████████████████████████

███████  *See, e.g.*, 7-SJA-3003, 3009 (same), 3042 (same), 3076-77 (same)

(Oct. 21, 2021 Tr.).  It then urged the jury ████████████████████

████████████████.  It stressed that Appellant had ████████████████

████████  *E.g.*, 8-SJA-3764 (Oct. 26, 2021 Tr.).  It asked the jury to consider

████████████████████████████████████████

8-SJA-3772 (Oct. 26, 2021 Tr.).  And, in rebuttal, the government argued that

████████████████████████████████████████

████████████████████████████████████████

████████████  8-SJA-3834 (Oct. 26, 2021 Tr.).

**D.    The district court erroneously excluded ██  ████████  expert testimony.**

Each charge in this case required the government to prove that Appellant *knew*

that the videos in question depicted "sexually explicit conduct."  To convict on the

possession and receipt charges, the jury had to find that Appellant knew the

"sexually explicit nature of the material and [] the age of the performers."  *X-*

*Citement Video*, 513 U.S. at 78.  For the production charges, the government had to

show that Appellant knew and intended that a "minor engage in . . . sexually explicit

43

conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251; *see also Rehaif v. United States*, 139 S. Ct. 2191, 2195 (2019) (*mens rea* requirement, whether express or unstated, extends to "each of the statutory elements that criminalize otherwise innocent conduct"); *Morissette v. United States*, 342 U.S. 246, 248 n.2, 271 (1952).

Appellant asserted that he had no such knowledge or intent. To support that core defense, Sanders proffered ███████ expert testimony. *See* 6-SJA-2699-704 (Rule 16 notice). ███████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████. 6-SJA-2700-03. ██████ also would have testified about ██

███████████████████████████████████

███████████████████████████████████

████████ 6-SJA-2700.

The district court excluded ██████ testimony █████████ because, in its view, such expert testimony might ███████████████████ ██████████████████████████ 6-SJA-2758-60. It also found that ████████████████████████████

████████████████████████████████████████████████████. *See id.* In

precluding that testimony, the district court stated that ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████ 8-SJA-3610 (Oct. 25, 2021 Tr.);

*see also* 6-SJA-2758 (similar). But far from ████████████████████

would have educated the jury about a world it likely had never encountered.[27]

Without ████████ expert assistance on ████████████████████, the jury was

far more likely to infer that ████████████████████████████████

████████████████████ as opposed simply to ████████████████████████

████████████████████████████

It is precisely to acclimate lay jurors to an unfamiliar subculture that expert

testimony is essential. *Hite*, 769 F.3d at 1168-70, makes the point in a closely related

context. Based on online chats with an undercover officer, the government charged

Hite with attempting to persuade a minor to engage in sexual activity. *Id*. at 1168-

70. To show that the chats were only "fantasy and role-play," the defendant ████████

proffered the testimony of Dr. Berlin. *Id*. at 1159, 1168. Reversing the district court

on this point, the court of appeals explained that Berlin's testimony would have

---

[27] The district court was in exactly the same boat. ████████████████████████

████████████████████████████████████, the judge himself

acknowledged that, despite having "lived nine [decades] on this planet," he had

"never run across [BDSM]." 2-JA-800 (Oct. 15, 2021 Tr.).

"shed light on what may be an unfamiliar topic to most jurors:  sexual fantasy involving children, particular the kind that unfolds in the virtual realm of the internet." *Id*. at 1170.  The D.C. Circuit thereby joined the "[n]umerous other courts [that] have upheld the admission of expert testimony to explain conduct not normally familiar to most jurors." *United States v. Joseph*, 542 F.3d 13, 22 (2d Cir. 2008) (online fantasy roleplay).

████████ testimony would also have undercut any suggestion that Appellant had sought to overcome the will of the minor participants, as all of the relevant statutes required.  *See supra* 31-36.  Without the benefit of ████████ testimony, the jury would inevitably have understood ████████████████████

████████████████████████████████████████████

████████████████████████████████, but the jury would never have known that.  *See United States v. Safavian*, 528 F.3d 957, 966 (D.C. Cir. 2008) (precluding expert testimony about the meaning of certain terms, based on court's view that the terms had an "common" meaning familiar to jurors, "usurped the jury's role").

Exploiting that informational gap to full advantage, the government told the jury ████████████████████████████████████

████████████████████████████████████.  It argued that ████████████████████████████████

████████████████████████████ 8-SJA-3839 (Oct. 26, 2021 Tr.). And

it asked the jury to ████████████████████████████████████

████████████████████████████ *Id*. That was nothing more than

an invitation for the jury to shoot in the dark.

## III. APPELLANT'S PRODUCTION CONVICTIONS SHOULD BE REVERSED BECAUSE OF THE ERRONEOUS "MOTIVATING PURPOSE" INSTRUCTION

Section 2251 requires the government to prove that the accused acted to have

a minor engage in sexually explicit conduct for "*the* purpose of producing any visual

depiction of such conduct." Over Appellant's objection, 8-SJA-3518-19 (Oct. 25,

2021 Tr.), the district court told the jury that the government would satisfy that

element if "[t]he production of a visual depiction of sexually explicit conduct" was

"*a* significant or *motivating* purpose of the defendant, and not merely incidental to

engaging in the sexually explicit conduct," 2-JA-573 (Oct. 27, 2021 Tr.). The

district court further instructed that "[i]t is not necessary . . . for the Government to

prove" that it was the defendant's "primary purpose." *Id*.

Those instructions "fundamentally misconstrued the statute." *McCauley*, 983

F.3d at 695. While the government need not prove that the recording was the

defendant's "sole" purpose, the statute mandates that the jury "find some

*predominance* of purpose consistent with Congress's choice to employ the phrase

'the purpose' rather than 'a purpose.'" *Id.* at 697, 695 (rejecting the government's

argument that the purpose could be "one among many, potentially much more significant purposes"); *see also id.* at 695 (a predominance finding respects the "fundamental difference between the definite and indefinite article")

Rather than requiring the "predominance" that *McCauley* demands, the district court permitted the jury to convict if it found that producing a visual depiction was merely a "motivating purpose." 2-JA-573 (Oct. 27, 2021 Tr.).  That cannot be correct: *Every* "purpose" is a "motivating purpose"; that's what "purpose" means.  *See Random House Unabridged* at 1570 (defining "purpose" as "the reason for which something exists or is done"); *see also id*. at 1254 (defining "motivating" as providing "something that causes a person to act in a certain way").  Qualifying the word "purpose" with "motivating" is rather like modifying "ice" with "frozen."[28] Doubling down on that error, the district court also told the jury that the government need not show "primary purpose."  2-JA-573 (Oct. 27, 2021 Tr.).  The jury was therefore free to convict based on *any* motivating purpose—no matter how peripheral.[29]  Those instructions, read together, are indistinguishable from the charge

---

[28] While *McCauley* noted in dicta that "[w]hether an instruction reads 'the purpose,' 'the dominant purpose,' 'a motivating purpose'—or some other equivalent variation—*may* not be crucial," 983 F.3d at 697, that does not mean "motivating purpose" necessarily passes muster.  This Court always reads instructions "in the context of the overall charge" and the "whole trial."  *Id*. at 694-95.

[29] Indeed, the district court candidly acknowledged as much, stating ████████

████████████████████████████████████████████████████

that *McCauley* found to be "fundamentally" flawed. 983 F.3d at 695; *accord United States v. Torres*, 894 F.3d 305, 312 (D.C. Cir. 2018) (holding the purpose must be a "dominant motive").

That error "went to the absolute heart of the defense," requiring reversal. *McCauley*, 983 F.3d at 695. From start to finish, Appellant asserted that ███ ██████████████████████████████████████████████████████ ████████████████████████████. *See, e.g.*, 8-SJA-3510-11 (Oct. 25, 2021 Tr.). Sanders explained that ██████████████████████████████████ ██████████████████████████████████████████████████████ ████████████ 8-SJA-3604 (Oct. 25, 2021 Tr.). █████████████████ ███████████████████████████████████, and Sanders testified that ██████████████████████████████████████████████████████ █████████. And, in closing, the defense argued at length that ███████████ ██████████████████████████████████████████████████████ █████████████ *See* 8-SJA-3786-87 (Oct. 26, 2021 Tr.); *see also* 8-SJA-3797-803 (Oct. 26, 2021 Tr.) (similar).

_____

██████████████████████████████████████████████████ 6-SJA-2772 (Oct. 20, 2021 Tr.); *see also* 7-SJA-3224 (Oct. 22, 2021 Tr.)███████████ ██████████████████████████████████████████████████. Is there such a thing as an "un-motivating purpose"?

Had the jury been properly instructed, it might well have reached a different

outcome on that hard-fought issue.  Indeed, in rejecting Appellant's argument ▐

████████████████████████████████, the district court acknowledged that ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ 8-SJA-3518-19 (Oct. 25, 2021

Tr.).  That is precisely what this Court should do.

## IV.  APPELLANT'S POSSESSION CONVICTION SHOULD BE REVERSED BECAUSE IT WAS BASED ON HIS INVOLUNTARY STATEMENTS

"Statements obtained from the defendant during custodial interrogation are

presumptively compelled in violation of the Fifth Amendment's Self-Incrimination

Clause and are therefore inadmissible in the Government's case-in-chief," unless the

government provides *Miranda* warnings and obtains a waiver.  *United States v.

Cardwell*, 433 F.3d 378, 388-89 (4th Cir. 2005).  The "use of [] admissions obtained

in the absence of the required warnings [is] a flat violation of the Self-Incrimination

Clause of the Fifth Amendment."  *Orozco v. Texas*, 394 U.S. 324, 326 (1969).

After the government gave notice that it intended to introduce statements that

Sanders made during his lengthy custodial interrogation, Appellant moved to

preclude the statements.  1-JA-127-45; *see also* 1-JA313-16 (motion for leave to

file); 1-JA-385-88 (renewed motion).  The district court denied the motions—

███████████████████████████████████████

██████████████████████████████████. 6-SJA-2726 n.13. Focusing on

███████████████████████████████████████

███████████████████████████████, the district court concluded that

████████████████████████████████ *Id.* That determination

is flawed at every turn.

For one thing, the district court utterly failed to consider that Appellant never received *Miranda* warnings. Appellant's interrogation was plainly custodial. Sanders was ████████████████████████████████████████

███. 5-SJA-1941-43. He was rousted from his bed at gunpoint by agents screaming "don't fucking move" and was made to get on his knees. *See* 1-JA-167-68; 7-SJA-3463 (Oct. 25, 2021 Tr.). The agents segregated him from his parents and moved him to a separate room, with an agent parked outside the door to prevent his parents from entering. 1-JA-155. Agents then interrogated Sanders, behind closed doors, for more than three hours. 1-JA-139. The agents refused or ignored Sanders' repeated requests to consult with his parents or an attorney. *E.g.*, 1-JA-168-69, 1-JA-184-188. And while the agents finally permitted Sanders to talk briefly with his mother, the agents refused to allow them to move to a private location or to stop the recording. *See* 1-JA-157. It beggars belief that anyone would think himself free to leave under those circumstances. *See United States v. Hashime*,

734 F.3d 278, 285 (4th Cir. 2013) (finding *Miranda* violation based on virtually identical facts); *United States v. Colonna*, 511 F.3d 431, 435 (4th Cir. 2007) (similar). Accordingly, the statements were presumptively coerced and, given the absence of cautionary warnings, should not have been admitted. *See Cardwell*, 433 F.3d at 388-89.

Making matters worse, the district court ignored the agents' obvious strong-arm tactics. Whenever Sanders hesitated (or indicated that he would like to consult with a lawyer, *see* 1-JA-165, 1-JA-169),[30] the agents tightened the screws by threatening to seize the devices that he and his parents—a clinical psychologist and leading telemedicine doctor—relied upon for their livelihoods (and which contained highly confidential patient files). *See* 1-JA-141, 143-44, 153-56, 195-96. The agents made the connection explicit, threatening that "if you're not truthful with us, we're going to have to take all your stuff and then that's potentially going to affect your business." 1-JA-177. And again: "[i]f you just give me the log[in ] to your phone, I can go in, I can clear it . . . but if not, we're taking your phone, we're taking all the devices in your house . . . . [W]e don't want to take your parents' stuff, we don't

---

[30] Even after Sanders repeatedly told the agents that he wanted to have "[a] lawyer with [him]" and "have the advice of a lawyer," 1-JA-169, the agents continued to interrogate him without providing counsel or advising him of his rights. That, too, violated Appellant's Fifth Amendment rights. *Edwards v. Arizona*, 451 U.S. 477, 486-87 (1981).

want to take your stuff, but that's on you."  1-JA-178; 1-JA-195-96 ("we're not trying to take everything because that's just a burden on everybody.").  See also 1-JA-183, 1-JA-201-02 (telling Appellant that, if he did not provide passwords to his accounts, he "might not see" his devices "for a—a long time").]  Those transparent efforts to extract statements using the threat of "adverse economic consequences" rendered Sanders's statements inadmissible.  *See United States v. Giddins*, 858 F.3d 870, 881 (4th Cir. 2017); *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir. 1997) (en banc) (barring statements "extracted by any sort of threats").

Far from being harmless, the government principally relied on those statements to undermine the defense.  By introducing those statements, the government painted Appellant as someone with a history of seeking out child pornography and sought to imply that he knew that he had illegal material on his electronic devices.  *See* 3-JA-1322-32; 8-SJA-3647 (Oct. 26, 2021 Tr.) ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  The government also used those statements as a cudgel in closing, arguing that the jury should ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  8-SJA-3758-59 (Oct. 26, 2021 Tr.); *see* 8-SJA-3628, 3778 (Oct. 26, 2021 Tr.) (similar).

Sanders's coerced and involuntary statements went to the heart of the possession charge. During his interrogation, Sanders told the agents that he had downloaded child pornography and showed them where to find materials. *See, e.g.*, 1-JA-65; 1-JA-232; 7-SJA-3440-42, 7-SJA-3446 (Oct. 25, 2021 Tr.) ████████ ███████████████████ After admitting those statements into evidence, over Appellant's objection, the government used them both to show that the materials were Sanders's and that he possessed them knowingly. *See* 2-JA-703 (Oct. 19, 2021 Tr.); 7-SJA-3432-33, 3446 (Oct. 25, 2021 Tr.). And, during closing, the government argued that ██████████████████████████████ ██████████████████████████████ 8-SJA-3779-80, *see* 8-SJA-3758 (Oct. 26, 2021 Tr.) █████████████████████ ████████████████████ 8-SJA-3782 (Oct. 26, 2021 Tr.) (similar).

The "seriousness and extent of [the] incriminating statements," along with the "important role they played at trial," confirms that the admission of those statements plainly prejudiced Appellant's defense. *Hashime*, 734 F.3d at 285 n.2. So, too, does the fact that the statements "damaged [defendant's] credibility before the jury." *Giddins*, 858 F.3d at 886; *see United States v. Abdallah*, 911 F.3d 201, 217 (4th Cir. 2018) (statements that "demonstrate Defendant's consciousness of guilt" and "destroy Defendant's credibility" not harmless).

# CONCLUSION

The judgment of the district court should be reversed or, at a minimum, Appellant's conviction and sentence should be vacated and remanded for a new trial.

Dated: June 16, 2022    Respectfully submitted,

/s/ Lawrence S. Robbins

Lawrence S. Robbins
Brandon L. Arnold
Leslie C. Esbrook
KRAMER LEVIN ROBBINS RUSSELL
2000 K Street NW, 4th Floor
Washington, D.C. 20006
Telephone: (202) 775-4500
Facsimile: (202) 775-4510
lrobbins@kramerlevin.com

*Counsel for Defendant-Appellant Zackary Ellis Sanders*

## STATEMENT REGARDING ORAL ARGUMENT

Under Federal Rule of Appellate Procedure 34(a) and Fourth Circuit Rule 34(a), Appellant respectfully requests that the Court hold oral argument in this appeal. In light of the number of issues that have been raised by Appellant, Appellant submits that oral argument would aid the Court in its decisional process.

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that, pursuant to Fed. R. App. P. 32(g)(1), this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i).

1.      Exclusive of the portions of the brief exempted by Fed. R. App. P. 32(f), this brief contains 12,995 words.

2.      This brief has been prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.  I have relied upon the word count feature of this word processing system in preparing this certificate.

Dated:  June 16, 2022                    /s/ Brandon L. Arnold____
                                                      Brandon L. Arnold

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2022, I will electronically file the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system.  Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system. I will also serve a copy of the unsealed brief on counsel for Appellee via mail and email at the following:

William G. Clayman
United States Attorney's Office for the
   Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
william.clayman@usdoj.gov

Dated:  June 16, 2022            /s/ Brandon L. Arnold
                             Brandon L. Arnold