No. 22-4242

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

### ZACKARY ELLIS SANDERS,

*Defendant-Appellant*,

v.

### UNITED STATES OF AMERICA,

*Plaintiff-Appellee.*

Appeal from the United States District Court
for the Eastern District of Virginia (No. 1:20-cr-00143-TSE)

### JOINT APPENDIX VOLUME 1 OF 8 (JA1–JA457)

William G. Clayman
Aidan Taft Grano-Mickelsen
UNITED STATES ATTORNEY'S OFFICE
FOR THE EASTERN DISTRICT OF VIRGINIA
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3744
william.clayman@usdoj.gov

*Counsel for Appellee*

Lawrence S. Robbins
Brandon L. Arnold
Leslie C. Esbrook
KRAMER LEVIN ROBBINS RUSSELL
2000 K Street NW, 4th Floor
Washington, D.C. 20006
Telephone: (202) 775-4500
lrobbins@kramerlevin.com

*Counsel for Appellant*

# TABLE OF CONTENTS

## VOLUME 1

E.D. Va. Docket Sheet (No. 1:20-cr-00143-TSE) ..................................................JA1

Affidavit in Support of a Criminal Complaint and an Arrest Warrant
(March 19, 2020) (Dkt. 4).............................................................................JA61

Government's Response in Opposition to Defendant's Motion for
Revocation of Detention Order (April 1, 2020) (Dkt. 15)............................JA74

Indictment (June 24, 2020) (Dkt. 29) ..................................................................JA86

Order (August 21, 2020) (Dkt. 74) ......................................................................JA92

Exhibit 1 to [Dkt. 97] Government's Omnibus Response in Opposition
to Defendant's Motions to Suppress: Cox Communications' response
(Dkt. 97-1).....................................................................................................JA93

Exhibit 2: Transcript of motion hearing, *United States v. Bosyk*, 1:17-
cr-302 (E.D. Va. Feb. 2, 2018) (Dkt. 97-2) ..................................................JA97

Order (October 26, 2020) (Dkt. 114)..................................................................JA104

Unopposed Motion to Continue Trial and Waiver of Speedy Trial Rights
(October 28, 2020) (Dkt. 116) ....................................................................JA105

Renewed Unopposed Motion to Continue Trial and Waiver of Speedy
Trial Rights (October 30, 2020) (Dkt. 124)................................................JA109

Government's Notice of Intent to Present Evidence Under Federal Rule
of Evidence 414 (November 2, 2020) (Dkt. 127)........................................JA115

Government's Amended Notice of Intent to Present Evidence Under
Federal Rule of Evidence 414 (November 17, 2020) (Dkt. 133) ...............JA121

Memorandum in Support of Motion to Suppress Statements (December
17, 2020) (Dkt. 150) ...................................................................................JA127

Exhibit 1: February 14, 2020 FD-302 Report (Dkt. 150-1) ........................JA148

Exhibit 2: Declaration of Dr. Risa Sanders (Dkt. 150-2) ...........................JA152

Exhibit 3: Excerpts of Transcript of Zackary Sanders's February 12,
2020 Recorded Statement (Dkt. 150-3)......................................................JA162

Order (December 18, 2020) (Dkt. 152) ..............................................................JA205

i

Memorandum in Support of Motion in Limine in Opposition to
   Government's Amended Notice of Intent to Present Evidence Under
   Federal Rule of Evidence 414 (December 18, 2020) (Dkt. 154)................JA207

Government's Motion *in Limine* to Exclude and Limit Certain
   Arguments, Lines of Questioning, and Evidence at Trial
   (December 18, 2020) (Dkt. 163)..................................................................JA215

Government's Motion *in Limine* to Introduce Certain Evidence Pursuant
   to Federal Rules of Evidence 404(b) and 414 (December 18, 2020)
   (Dkt. 165)....................................................................................................JA231

Government's Response in Opposition to Defendant's Motion to
   Compel (December 18, 2020) (Dkt. 167)....................................................JA248

Defendant's Response to Show Cause Order (December 23, 2020)
   (Dkt. 177)....................................................................................................JA269

Government's Position on the Court's Order to Show Cause (December
   29, 2020) (Dkt. 179) ..................................................................................JA278

Order (January 7, 2021) (Dkt. 196) ..................................................................JA288

United States' Response to Defendant's Motion *in Limine* in Opposition
   to Notice Pursuant to Federal Rule of Evidence 414 (January 8, 2021)
   (Dkt. 201)....................................................................................................JA295

Opposition to Government's Motion in Limine to Introduce Evidence
   Pursuant to Federal Rules of Evidence 404(b) and 414 (January 8,
   2021) (Dkt. 207).........................................................................................JA304

Defendant's Renewed Motion for Leave for this Court to Consider His
   Motion to Suppress Statements as Timely Filed (January 13, 2021)
   (Dkt. 213)....................................................................................................JA313

Order (January 14, 2021) (Dkt. 214) ................................................................JA319

Reply to Government's Response to Mr. Sanders's Opposition to 414
   Notice (January 14, 2021) (Dkt. 216)........................................................JA320

Reply to Defendant's Response to Motion *in Limine* to Admit Certain
   Evidence Pursuant to Federal Rules of Evidence 404(b) and 414
   (January 15, 2021) (Dkt. 223)....................................................................JA327

Reply to Defendant's Response to Motion *in Limine* to Exclude and
   Limit Certain Arguments, Lines of Questioning, and Evidence at
   Trial (January 15, 2021) (Dkt. 224)...........................................................JA332

Mr. Zackary Ellis Sanders's Notice of Supplemental Authority in
    Support of His Opposition to Government's Motion *in Limine* to
    Exclude and Limit Certain Arguments, Lines of Questioning, and
    Evidence at Trial (January 18, 2021) (Dkt. 225).........................................JA338

Notice of Correction (January 21, 2021) (Dkt. 232) ........................................JA342

Government's Response to Defendant's Motion for Leave to File
    Untimely Fifth Motion to Suppress (January 22, 2021) (Dkt. 235) ............JA345

Defendant's Reply to Government's Opposition to His Renewed Motion
    for this Court to Consider His Motion to Suppress Statements as
    Timely Filed (January 29, 2021) (Dkt. 243)................................................JA354

Order (February 4, 2021) (Dkt. 245) ................................................................JA361

Defendant's Notice of Objection to Rule 404 and 414 Ruling
    (May 10, 2021) (Dkt. 337)...........................................................................JA364

Government's Response in Opposition to the Defendant's Fourth
    Motion to Compel (May 14, 2021) (Dkt. 350).............................................JA368

Order (May 26, 2021) (Dkt. 369)......................................................................JA374

Zackary Ellis Sanders's Renewed Motion to Suppress Statements Taken
    in Violation of *Miranda v. Arizona* (August 19, 2021) (Dkt. 429) ............JA382

Memorandum in Support of Renewed Motion to Suppress Statements
    Taken in Violation of *Miranda v. Arizona* (August 19, 2021) (Dkt.
    430) ..............................................................................................................JA385

Government's Response in Opposition to Defendant's Second Renewed
    Motion to Reconsider His Motion to Compel (August 19, 2021)
    (Dkt. 432)......................................................................................................JA390

Order (August 25, 2021) (Dkt. 442) .................................................................JA399

Government's Response in Opposition to Defendant's Second Renewed
    Motion to Reconsider the Court's Denial of Defendant's Fifth
    Motion to Suppress as Untimely (August 30, 2021) (Dkt. 446) .................JA401

Order (September 8, 2021) (Dkt. 457)...............................................................JA409

*Curriculum vitae* of Dr. Fred S. Berlin (October 4, 2021) (Dkt. 480-1)..........JA411

Government's Response in Opposition to Defendant's Motion to
    Reconsider His Motion to Suppress (October 8, 2021) (Dkt. 490).............JA448

# VOLUME 2

Reply to the Government's Opposition to Mr. Sanders's Renewed
Motion to Suppress Based on the Warrantless Use of a Network
Investigative Technique and False Material Information in Affidavit
Paragraph 25 (October 12, 2021) (Dkt. 491)...............................................JA458

Defendant Zackary Ellis Sanders's Supplemental Proposed Jury
Instructions (October 14, 2021) (Dkt. 500) .................................................JA464

Order (October 13, 2021) (Dkt. 501)................................................................JA512

Order (October 21, 2021) (Dkt. 522)................................................................JA515

Defendant's Objection to Court's Jury Instruction Regarding "Consent
Is Not a Defense" and the Exclusion of Evidence Demonstrating
Assent (October 25, 2021) (Dkt. 529) ........................................................JA518

Order (October 25, 2021) (Dkt. 530)................................................................JA525

Defendant's Notice of Filing of Objection to Jury Instruction Regarding
His Purpose (October 25, 2021) (Dkt. 534)................................................JA529

Government's Revised Trial Exhibit List (October 27, 2021)
(Dkt. 539-2).................................................................................................JA534

Motion for Enlargement of Time in Which to File Motion for a New
Trial Under Federal Rule of Criminal Procedure 33 and/or Motion for
Judgment of Acquittal Under Rule 29 and Memorandum in Support
(November 4, 2021) (Dkt. 543) ...................................................................JA547

Transcript of Trial Day 7 (October 27, 2021)[1] (Dkt. 551) ..............................JA550

Transcript of Trial Day 1 (October 19, 2021) (Dkt. 552).................................JA616

Transcript of Pretrial Conference (October 15, 2021) (Dkt. 555)....................JA774

Public Exhibits to [Dkt. 586] Memorandum in Support of Motion for
New Trial

Exhibit 6: Motion to Suppress Evidence, *United States v. Bateman*,
No. 1:20-cr-10012-IT (D. Mass. Dec. 27, 2021) (Dkt. 586-6)...................JA839

---

[1] The captions of the trial transcripts incorrectly show the trial dates as having occurred in November 2021.

iv

# VOLUME 3

Exhibit 9: Application for a Search Warrant, *In the Matter of the Search of Property of* ███████████, *Pleasant Garden, NC 27313*, No. 1:20-mj-243-LPA (M.D.N.C. Aug. 18, 2020) (Dkt. 586-9) ................................................................. JA892

Exhibit 10: Application for a Search Warrant, *In the Matter of the Search of* ███████████, *Burlington, VT*, No. 2:20-mj-00143-KJD (D. Vt. Dec. 4, 2020) (Dkt. 586-10) ........................ JA976

Exhibit 11: Application for a Search Warrant, *In the Matter of Search of Premises Located at* ███████████, *Barnhart Missouri, 63012*, No. 4:20-MJ-3301-NCC (E.D. Mo. Nov. 12, 2020) (Dkt. 586-11) ............................................................... JA1021

Exhibit 12: Affidavit in Support of Search Warrant, *In the Matter of the Search of* ███████████, *Chipley, Florida 32428*, No. 5:20-mj-44-MJF (N.D. Fla. May 6, 2020) (Dkt. 586-12) ........................ JA1058

Exhibit 13: Application for a Search Warrant, *In the Matter of the Search of Entire property located at* ███████████ *., Gardiner, Maine 04345*, No. 1:20-mj-00255-JCN (D. Me. Sept. 8, 2020) (Dkt. 586-13) ............................................ JA1122

Exhibit 14: Application for a Search Warrant, *In the Matter of the Search of the premises known as* ███████████, *Rochester, NH*, No. 1:21-mj-00146-AJ (D.N.H. June 4, 2021) (Dkt. 586-14) .................. JA1163

Exhibit 15: Affidavit in Support of Search Warrant, *In the Matter of Search at* ███████████, *Lansing, Michigan 48912*, No. 1:20-mj-00481-SJB (W.D. Mich. Nov. 19, 2020) (Dkt. 586-15) ....... JA1196

Exhibit 17: 01/13/2017 FD-302 (Dkt. 586-17) ........................ JA1230

Exhibit 39: Operation H Statistics (Dkt. 586-39) .................... JA1232

Exhibit 41: 03/02/2022 Press Release (Dkt. 586-41) ............... JA1236

Exhibit 42: 03/01/2022 Press Release (Dkt. 586-42) ............... JA1241

Exhibit 43: 03/02/2022 Press Release (Dkt. 586-43) ............... JA1247

Government's Response in Opposition to Defendant's Motion for New Trial and to Reconsider Motions to Compel and Suppress (March 18, 2022) (Dkt. 593) .......................................................... JA1251

v

Exhibit 1: Order on Motion for Discovery, *United States v. Kiejzo*, No. 20-40036 (D. Mass. Oct. 4, 2021) (Dkt. 593-1) .................................JA1266

Notice of Filing of Supplemental Exhibits (March 22, 2022) (Dkt. 599) ......JA1278

Exhibit 1: Affidavit in Support of Application for Issuance of a Criminal Complaint, *United States v. Holmstedt*, No. 2:21-cr-00004 (E.D. Va. Dec. 8, 2020) (Dkt. 599-1) ........................................................JA1283

Exhibit 2: Statement of Facts, *United States v. Holmstedt*, No. 2:21-cr-00004 (E.D. Va. Feb. 4, 2021) (Dkt. 599-2) .........................................JA1289

Judgment (April 1, 2022) (Dkt. 621) ............................................................JA1295

United States' Notice of Filing of Redacted Memorandum Opinion and Proposed Restitution Order (April 8, 2022) (Dkt. 627)............................JA1302

Notice of Appeal (April 13, 2022) (Dkt. 636) .................................................JA1306

Government Trial Exhibits 102A, 103A, 104A, 105A, and 106A: Redacted Transcript of Interview of Zackary Ellis Sanders (February 12, 2020) .....................................................................................JA1309

Government Trial Exhibits 201 to 235: Photographs .....................................JA1337

## VOLUME 4

### FILED UNDER SEAL

Motion to Compel Discovery (July 13, 2020) (Dkt. 38) ..............................SJA1372

Exhibit 1: Declaration of Dr. Matthew Miller (July 12, 2020) ..............SJA1393

Exhibit 2: FLA Intelligence Report .........................................................SJA1405

Exhibit 3: FLA Letter ...............................................................................SJA1407

Government's Response in Opposition to Defendant's Motion to Compel Discovery (July 27, 2020) (Dkt. 43) ..........................................SJA1409

Exhibit 1: Search Warrant Affidavit (Dkt. 43-1).....................................SJA1431

Reply to Government's Opposition to Motion to Compel Discovery (Dkt. 48) (July 30, 2020) ........................................................................SJA1473

Exhibit 1: 1/17/2020 FD-1057 Form (Dkt. 48-1)....................................SJA1499

Exhibit 2: Second Declaration of Dr. Miller (Dkt. 48-2) ........................SJA1504

Exhibit 3: Screenshot Taken by FBI of Posting on Page of Target Website (Dkt. 48-3) .................................................................................SJA1508

Exhibit 4: Declaration of Matthew Ryder, QC (Dkt. 48-4)....................SJA1510

Government's Supplemental Brief in Opposition to Defendant's Motion
   to Compel Discovery (August 10, 2020) (Dkt. 57) ................................SJA1523

Supplemental Brief on Defendant's Motion to Compel Discovery
   (August 10, 2020) (Dkt. 58) ....................................................................SJA1531

Exhibit 1 to [Dkt. 57] Government's Supplemental Brief in Opposition:
   FLA – Intelligence Report (Dkt. 59) .....................................................SJA1543

Exhibit 2: Declaration of Special Agent Christopher A. Ford
   (Dkt. 59-1)..................................................................................................SJA1545

Response to Government's Supplemental Brief on Defendant's Motion
   to Compel Discovery (Dkt. 65) (August 12, 2020) ................................SJA1551

Exhibit 1: Third Declaration of Dr. Matthew Miller (Dkt. 65-1)............SJA1560

Reply to Defendant's Response to Government's Supplemental Brief in
   Opposition to Defendant's Motion to Compel Discovery (Dkt. 70)
   (August 19, 2020) ......................................................................................SJA1563

Memorandum Opinion (August 21, 2020) (Dkt. 73)....................................SJA1568

Government's Response in Opposition to Defendant's Motion for
   Reconsideration of His Motion to Compel (September 9, 2020)
   (Dkt. 100)....................................................................................................SJA1582

Government's Omnibus Response in Opposition to Defendant's Motions
   to Suppress (September 9, 2020) (Dkt. 101) ............................................SJA1590

Mr. Zackary Ellis Sanders's Reply to the Government's Opposition to
   His Renewed Motion to Compel (September 10, 2020) (Dkt. 105)........SJA1621

Mr. Zackary Ellis Sanders's Reply to the Government's Omnibus
   Opposition to Mr. Sanders's Motions to Suppress (September 10,
   2020) (Dkt. 106)........................................................................................SJA1628

Order (September 10, 2020) (Dkt. 107).........................................................SJA1650

Memorandum Opinion (October 26, 2020) (Dkt. 113) ...............................SJA1660

Memorandum in Support of United States' Motion to Seal, Keep
   Memorandum Opinion Under Seal, and File Redacted Memorandum
   Opinion (October 29, 2020) (Dkt. 121)...................................................SJA1678

Mr. Zackary Ellis Sanders's Motion to Compel the Government to
   Produce Material, or, in the Alternative, to Submit Material for *In
   Camera* Inspection (November 27, 2020) (Dkt. 137) .............................SJA1685

Exhibit 1: Transcript of September 11, 2020 Hearing (Dkt. 137-1) .......SJA1709

Supplement to Motion to Compel (December 5, 2020) (Dkt. 140)..............SJA1745

Defendant's Reply to the Government's Opposition to Motion to
Compel the Government to Produce Material, or, in the Alternative,
to Submit Material for *in Camera* Inspection (December 23, 2020)
(Dkt. 176)......................................................................................SJA1753

Exhibit 1: Target Website Homepage (Dkt. 176-1) ................................SJA1776

Exhibit 2: Fifth Declaration of Dr. Matthew Miller (Dkt. 176-2)...........SJA1778

Exhibit 3: Third Declaration of Matthew Ryder QC (Dkt. 176-3)..........SJA1781

Exhibit 4: Target Website Page (Dkt. 176-4).........................................SJA1787

Exhibit 5: May 8, 2020 Letter (Dkt. 176-5) ...........................................SJA1789

Exhibit 6: June 8, 2020 Letter (Dkt. 176-6) ...........................................SJA1793

Exhibit 7: June 22, 2020 Letter (Dkt. 176-7) .........................................SJA1809

Exhibit 8: July 7, 2020 Letter (Dkt. 176-8) ............................................SJA1818

Exhibit 9: July 27, 2020 Email (Dkt. 176-9) ..........................................SJA1824

Defendant's Reply to Government's Position on Order to Show Cause
(January 4, 2021) (Dkt. 185)...................................................................SJA1827

Order (January 26, 2021) (Dkt. 236) ...........................................................SJA1833

Supplement to Defendant's Motion to Compel the Government to
Produce Material, or, in the Alternative, to Submit Material for *in
Camera* Inspection (January 26, 2021) (Dkt. 241)..................................SJA1841

Exhibit 1: Target Website Page (Dkt. 241-1).........................................SJA1851

Exhibit 2: Target Website Page (Dkt. 241-2).........................................SJA1853

Exhibit 3: January 22, 2021 Discovery Letter (Dkt. 241-3)....................SJA1855

Exhibit 4: January 25, 2021 Email (Dkt. 241-4) ....................................SJA1878

Memorandum in Support of Mr. Zackary Ellis Sanders's Motion to
Suppress Due to Lack of Probable Cause (Motion to Suppress No. 1)
(September 2, 2020) (Dkt. 252)...............................................................SJA1880

# VOLUME 5

### FILED UNDER SEAL

Exhibit 1: Affidavit in Support of Application for Search Warrant
(Dkt. 252-1)..................................................................................SJA1898

Exhibit 2: List of FBI Agents Executing Warrant (Dkt. 252-2)..............SJA1940

Exhibit 3: Description of 427 Photos Taken of Sanders Home
(Dkt. 252-3)..................................................................................SJA1944

Memorandum in Support of Mr. Zackary Ellis Sanders's Motion to
Suppress Based on False and Misleading Material Information in
Affidavit Paragraph 23 (Motion to Suppress No. 2) (September 2,
2020) (Dkt. 253)..........................................................................SJA1959

Exhibit 1: FLA Intelligence Report (Dkt. 253-1)...................................SJA1993

Exhibit 2: September 16, 2019 FLA Letter (Dkt. 253-2).......................SJA1995

Exhibit 3: FLA Intelligence Report (Dkt. 253-3)...................................SJA1997

Exhibit 7: Fourth Declaration of Dr. Matthew Miller (Dkt. 253-6)........SJA1999

Exhibit 8: Declaration of Seth Schoen (Dkt. 253-7) ..............................SJA2009

Exhibit 9: Screenshot of Post Described in Paragraph 16 Taken by
FBI in January 2019 (Dkt. 253-8)..............................................SJA2034

Exhibit 10: Additional Screenshots Taken by FBI in January 2019
(Dkt. 253-9)..................................................................................SJA2036

Exhibit 11: Search Warrant (Dkt. 253-10) ............................................SJA2040

Exhibit 13: July 31, 2020 Hearing Transcript (Dkt. 253-12) .................SJA2048

Memorandum in Support of Mr. Zackary Ellis Sanders's Motion to
Suppress Based on False and Misleading Material Information in
Affidavit Paragraph 25 (Motion to Suppress No. 4) (September 2,
2020) (Dkt. 254)..........................................................................SJA2084

Exhibit 3: Affidavit in Support of Application for Search Warrant
(Dkt. 254-3)..................................................................................SJA2108

Exhibit 8: Second Declaration of Matthew Ryder QC (Dkt. 254-8).......SJA2150

Exhibit 9: Declaration of Dr. Richard Clayton (Dkt. 254-9)..................SJA2155

Exhibit 10: Affidavit in Support of Application for Search Warrant, *In the Matter of the Search of Computers that Access upf45jv3bziuctml.onion*, No. 1:15-SW-89 (E.D. Va. Feb. 20, 2015) (Dkt. 254-10)..................................................................SJA2173

Exhibit 11: Comparison Report of *Matish* Affidavit and *Sanders* Affidavit (Dkt. 254-11 to Dkt. 254-12) ...................................SJA2208

Exhibit 12: Declaration of Special Agent Christopher A. Ford (Dkt. 254-13)..................................................................SJA2262

Memorandum in Support of Mr. Zackary Ellis Sanders's Renewed Motion to Compel Discovery or in the Alternative for Reconsideration of the Court's Order Denying His Motion to Compel (September 2, 2020) (Dkt. 255)...............................................SJA2268

Mr. Zackary Ellis Sanders's Memorandum in Support of Motion to Suppress Based on Materially Misleading Statements and Omissions Regarding Tor, the Target Website, and the Subject Premises (Motion to Suppress No. 3) (September 2, 2020) (Dkt. 256)...............SJA2279

Exhibit 5: Second Declaration of Dr. Matthew Miller (Dkt. 256-5).......SJA2309

Exhibit 9: Screenshot of Target Website (Dkt. 256-9)...........................SJA2313

Exhibit 10: Additional Screenshots Taken by FBI in January 2019 (Dkt. 256-10)..................................................................SJA2315

Corrected Memorandum in Support of Defendant's Motion to Continue Trial, and Waiver of Speedy Trial Rights (March 24, 2021) (Dkt. 270)..................................................................SJA2319

Defendant's Second Supplement to Corrected Motion to Continue Trial, and Waiver of Speedy Trial Rights (April 1, 2021) (Dkt. 282) ..............SJA2333

Memorandum in Support of Defendant's Motion for Leave to File Rule 12.2(b) Notice of Expert Evidence of a Mental Condition Bearing on Lack of Guilt (April 26, 2021) (Dkt. 305)................................................SJA2337

Government's Response to the Defendant's Motion for Leave to File Rule 12.2(b) Notice (May 5, 2021) (Dkt. 314)........................................SJA2342

Exhibit 1: March 30, 2021 Email (Dkt. 314-1) .......................................SJA2349

Defendant's Memorandum in Support of Motion to Compel, or, in the Alternative, to Submit Material for *In Camera* Inspection (May 6, 2021) (Dkt. 335)..................................................................SJA2352

Defendant's Reply to Government Opposition (May 19, 2021)
(Dkt. 354)........................................................................SJA2360

    Exhibit 1: Later Produced Screenshots of Target Website
(Dkt. 354-1)....................................................................SJA2368

Transcript of Proceedings held on May 7, 2021 (May 20, 2021)
(Dkt. 355) (Pages 1-60) ..................................................SJA2373

## VOLUME 6

### FILED UNDER SEAL

*Continued from previous volume:*
    Transcript of Proceedings held on May 7, 2021 (May 20, 2021)
(Dkt. 355) (Pages 61-85) ................................................SJA2433

Order (May 20, 2021) (Dkt. 363)......................................SJA2459

Order (May 20, 2021) (Dkt. 364)......................................SJA2466

Order (June 14, 2021) (Dkt. 402).....................................SJA2475

Defendant's Memorandum on Admissibility of Rule 12.2(b) Evidence
(June 21, 2021) (Dkt. 413).............................................SJA2483

Order (June 23, 2021) (Dkt. 418)......................................SJA2503

Defendant's Memorandum in Support of Motion to Supplement the
Record and Renew His Motion to Compel Exculpatory Material or,
in the Alternative, to Submit Exculpatory Material for *in Camera*
Review (August 6, 2021) (Dkt. 427) .................................SJA2507

    Exhibit 1: 03/15/21 Discovery Letter (Dkt. 427-1) ...............SJA2527

    Exhibit 2: 03/15/21 Email (Dkt. 427-2)................................SJA2535

    Exhibit 3: 04/21/21 Discovery Letter (Dkt. 427-3) ...............SJA2537

    Exhibit 4: 04/21/21 Email (Dkt. 427-4)................................SJA2540

    Exhibit 5: Second Declaration of Anthony J. Ferrante (Dkt. 427-5).......SJA2542

Reply to the Government's Opposition to Mr. Sanders's Motion to
Supplement the Record and Renew His Motion to Compel
Exculpatory Material or, in the Alternative, to Submit Exculpatory
Material for *In Camera* Review (August 23, 2021) (Dkt. 443)..............SJA2559

United States' Response in Opposition to Defendant's Memorandum on Admissibility of Evidence Regarding a Mental Condition (September 3, 2021) (Dkt. 459) ..............................................................................SJA2576

Memorandum in Support of Mr. Zackary Ellis Sanders's Renewed Motion to Suppress Based on Lack of Probable Cause and False and Misleading Statements and for a *Franks* Hearing (September 17, 2021) (Dkt. 467).....................................................................................SJA2607

   Exhibit 2: Declaration of Professor Steven Murdoch (Dkt. 467-1).........SJA2639

Order (September 21, 2021) (Dkt. 468)........................................................SJA2664

Memorandum in Support of Renewed Motion to Suppress Based on Warrantless Use of a Network Investigative Technique and False Material Information in Affidavit Paragraph 25 (September 24, 2021) (Dkt. 476)...................................................................................................SJA2667

Zackary Sanders's Rule 16(b)(1)(C) Notice Regarding Dr. Fred S. Berlin (October 4, 2021) (Dkt. 481) .............................................................SJA2699

Memorandum Opinion (October 12, 2021) (Dkt. 492) ...............................SJA2705

United States' Motion *in Limine* to Exclude the Testimony of Dr. Frederick S. Berlin (October 13, 2021) (Dkt. 498) ................................SJA2730

Defendant's Opposition to the Government's Motion *in Limine* to Exclude the Testimony of Dr. Frederick S. Berlin (October 14, 2021) (Dkt. 511)...................................................................................................SJA2730

Order (October 15, 2021) (Dkt. 512)...........................................................SJA2745

Order (October 22, 2021) (Dkt. 525)...........................................................SJA2749

Order (October 25, 2021) (Dkt. 533)...........................................................SJA2757

Transcript of Trial Day 2 (October 20, 2021) [2] (Dkt. 556)..........................SJA2762

## VOLUME 7

### FILED UNDER SEAL

Transcript of Trial Day 3 (October 21, 2021) (Dkt. 557).............................SJA2967

---

[2] The captions of the trial transcripts incorrectly show the trial dates as having occurred in November 2021.

Transcript of Trial Day 4 (October 22, 2021) (Dkt. 558) ............................ SJA3203

Transcript of Trial Day 5 (October 25, 2021) (Dkt. 559) (Pages 1-94) ....... SJA3408

## VOLUME 8

### FILED UNDER SEAL

*Continued from previous volume:*
    Transcript of Trial Day 5 (October 25, 2021) (Dkt. 559)
    (Pages 95-210) ........................................................................... SJA3502

Transcript of Trial Day 6 (October 26, 2021) (Dkt. 560) ............................ SJA3618

Memorandum in Support of Motion for New Trial and to Reconsider
    Motions to Compel and Motions to Suppress (March 14, 2022)
    (Dkt. 588) ................................................................................... SJA3845

    Exhibit 1: Transcript of Motion Hearing, *United States v. Kiejzo*, No.
    20-cr-40036-TSH (D. Mass. Sept. 17, 2021) (Dkt. 588-1) .................... SJA3875

    Exhibit 5: Complaint, *United States v. Zachary M. Stauffer*, No. 4:20-
    mj-04005-RJD (S.D. Ill. Jan. 28, 2020) (Dkt. 588-2) ............................ SJA3925

    Exhibit 8: 03/04/2022 Government Email (Dkt. 588-3) ........................ SJA3935

    Exhibit 20: Case Comparison Chart (Dkt. 588-4) ................................. SJA3940

    Exhibit 44: FBI Operational Plan for Execution of Search Warrant
    (Dkt. 588-5) ................................................................................ SJA3949

Notice of Filing of Two Supplemental Exhibits (March 17, 2022)
    (Dkt. 592) ................................................................................... SJA3964

    Exhibit 1: 3/23/2018 Report to Crown Counsel, *Regina v. Tyler
    David Walker* (Dkt. 592-1) ............................................................ SJA3970

Reply to the Government's Response to Motion for New Trial and to
    Reconsider Motions to Compel and Motions to Suppress (Dkt. 600) ..... SJA4004

Memorandum Opinion (March 31, 2022) (Dkt. 615) .................................. SJA4026

**Query   Reports   Utilities   Help   Log Out**

APPEAL,CLOSED

# U.S. District Court
## Eastern District of Virginia - (Alexandria)
## CRIMINAL DOCKET FOR CASE #: 1:20-cr-00143-TSE All Defendants

Case title: USA v. Sanders                    Date Filed: 06/24/2020
Magistrate judge case number: 1:20-mj-00114-JFA-LMB      Date Terminated: 04/01/2022

---

Assigned to: District Judge T. S. Ellis, III

Appeals court case number: 22-4242 4th
Circuit

**Defendant (1)**

**Zackary Ellis Sanders**
*TERMINATED: 04/01/2022*

represented by **Jonathan Stuart Jeffress**
KaiserDillon PLLC
1099 14th Street NW
8th Floor West
Washington, DC 20005
202-640-2850
Fax: 202-280-1034
Email: jjeffress@kaiserdillon.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Joseph McCool**
McCool Law PLLC
1776 K St NW
Suite 200
Washington, DC 20006
202-450-3370
Fax: 202-450-3346
Email: smccool@mccoollawpllc.com
*TERMINATED: 04/07/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Christopher Bryan Amolsch**
Law Office of Christopher Amolsch
12005 Sunrise Valley Drive
Suite 200
Reston, VA 20191
703-969-2214
Fax: 703-774-1201
Email: chrisamolsch@yahoo.com

**JA1**

*ATTORNEY TO BE NOTICED*

**Emily Anne Voshell**
KaiserDillon PLLC
1099 14th Street NW
8th Floor West
Washington, DC 20005
202-640-2850
Fax: 202-280-1034
Email: evoshell@kaiserdillon.com
*ATTORNEY TO BE NOTICED*

**Henry Louis Sirkin**
Santen & Hughes LPA (NA/OH)
600 Vine St
Suite 2700
Cincinnati, OH 45202
**NA**
513-721-4450
Fax: 513-852-5994
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Mark John Mahoney**
Harrington & Mahoney (NY-NA)
70 Nigagara Street
3rd Floor
Buffalo, NY 14202
**NA**
716-853-3700
Fax: 716-853-3710
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Nina J. Ginsberg**
DiMuroGinsberg PC
1101 King Street
Suite 610
Alexandria, VA 22314-2956
(703) 684-4333
Fax: 703-548-3181
Email: nginsberg@dimuro.com
*ATTORNEY TO BE NOTICED*

**Zachary Andrew Deubler**
DiMuroGinsberg PC
1101 King Street
Suite 610
Alexandria, VA 22314-2956
703-684-4333
Fax: 703-548-3181

Email: zdeubler@dimuro.com
*ATTORNEY TO BE NOTICED*

| **Pending Counts** | **Disposition** |
|---|---|
| 18:2251(a) and (e) Production of Child Pornography FORFEITURE (1) | 216 months w/Lifetime SR Term w/special conditions; $6,000 Restitution; $60,000 JVTA SA; $1,200 SA |
| 18:2251(a) and (e) Production of Child Pornography FORFEITURE (2) | 216 months w/Lifetime SR Term w/special conditions; $6,000 Restitution; $60,000 JVTA SA; $1,200 SA |
| 18:2251(a) and (e) Production of Child Pornography FORFEITURE (3) | 216 months w/Lifetime SR Term w/special conditions; $6,000 Restitution; $60,000 JVTA SA; $1,200 SA |
| 18:2251(a) and (e) Production of Child Pornography FORFEITURE (4) | 216 months w/Lifetime SR Term w/special conditions; $6,000 Restitution; $60,000 JVTA SA; $1,200 SA |
| 18:2251(a) and (e) Production of Child Pornography FORFEITURE (5) | 216 months w/Lifetime SR Term w/special conditions; $6,000 Restitution; $60,000 JVTA SA; $1,200 SA |
| 21:2252(a)(2) and (b)(I) Receipt of Child Pornography FORFEITURE (6) | 216 months w/Lifetime SR Term w/special conditions; $6,000 Restitution; $60,000 JVTA SA; $1,200 SA |
| 21:2252(a)(2) and (b)(I) Receipt of Child Pornography FORFEITURE (7) | 216 months w/Lifetime SR Term w/special conditions; $6,000 Restitution; $60,000 JVTA SA; $1,200 SA |
| 21:2252(a)(2) and (b)(I) Receipt of Child Pornography FORFEITURE (8) | 216 months w/Lifetime SR Term w/special conditions; $6,000 Restitution; $60,000 JVTA SA; $1,200 SA |
| 21:2252(a)(2) and (b)(I) Receipt of Child Pornography FORFEITURE (9) | 216 months w/Lifetime SR Term w/special conditions; $6,000 Restitution; $60,000 JVTA SA; $1,200 SA |
| 21:2252(a)(2) and (b)(I) Receipt of Child Pornography FORFEITURE (10) | 216 months w/Lifetime SR Term w/special conditions; $6,000 Restitution; $60,000 JVTA SA; $1,200 SA |
| 21:2252(a)(2) and (b)(I) Receipt of Child Pornography FORFEITURE (11) | 216 months w/Lifetime SR Term w/special conditions; $6,000 Restitution; $60,000 JVTA SA; $1,200 SA |
| 21:2252(a)(4)(B) and (b)(2) Possession of Child Pornography FORFEITURE (12) | 216 months w/Lifetime SR Term w/special conditions; $6,000 Restitution; $60,000 JVTA SA; $1,200 SA |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**JA3**

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| 18 U.S.C. § 2251(a), (e) Production of Child Pornography | 216 months w/Lifetime SR Term w/special conditions; $6,000 Restitution; $60,000 JVTA SA; $1,200 SA |

**Plaintiff**

**USA**                                    represented by **Jay V Prabhu**
                                           US Attorney's Office (Alexandria)
                                           2100 Jamieson Avenue
                                           Alexandria, VA 22314
                                           **NA**
                                           (703) 299-3700
                                           Fax: (703) 299-3981
                                           Email: jay.prabhu@usdoj.gov
                                           *LEAD ATTORNEY*
                                           *ATTORNEY TO BE NOTICED*
                                           *Designation: US Attorney*

                                           **William Clayman**
                                           US Attorney's Office (Alexandria)
                                           2100 Jamieson Avenue
                                           Alexandria, VA 22314
                                           **NA**
                                           703-299-3700
                                           Email: william.g.clayman@usdoj.gov
                                           *LEAD ATTORNEY*
                                           *ATTORNEY TO BE NOTICED*
                                           *Designation: US Attorney*

                                           **Annie Zanobini**
                                           US Attorney's Office (Alexandria)
                                           2100 Jamieson Avenue
                                           Alexandria, VA 22314
                                           NA
                                           703-299-3700
                                           Email: annie.zanobini2@usdoj.gov
                                           *ATTORNEY TO BE NOTICED*

                                           **Seth Schlessinger**
                                           US Attorney's Office (Alexandria)
                                           2100 Jamieson Avenue
                                           Alexandria, VA 22314
                                           NA
                                           703-299-3700
                                           Email: seth.schlessinger@usdoj.gov
                                           *ATTORNEY TO BE NOTICED*

**JA4**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/19/2020 | 1 | COMPLAINT as to Zackary Ellis Sanders (1). (rban, ) [1:20-mj-00114-JFA-LMB] (Entered: 03/20/2020) |
| 03/19/2020 | 3 | Redacted Criminal Case Cover Sheet (rban, ) [1:20-mj-00114-JFA-LMB] (Entered: 03/20/2020) |
| 03/19/2020 | 4 | AFFIDAVIT by USA as to Zackary Ellis Sanders 1 Complaint (rban, ) [1:20-mj-00114-JFA-LMB] (Entered: 03/20/2020) |
| 03/19/2020 | 5 | Arrest Warrant Issued by Magistrate Judge Ivan D. Davis in case as to Zackary Ellis Sanders. (rban, ) [1:20-mj-00114-JFA-LMB] (Entered: 03/20/2020) |
| 03/19/2020 | 6 | MOTION to Seal by USA as to Zackary Ellis Sanders. (rban, ) [1:20-mj-00114-JFA-LMB] (Entered: 03/20/2020) |
| 03/19/2020 | 7 | ORDER granting 6 Motion to Seal as to Zackary Ellis Sanders (1). ORDERED that the complaint and affidavit in support of the complaint, Motion to seal, and this Order be SEALED until the defendant is arrested. Signed by Magistrate Judge Ivan D. Davis on 3/19/2020. (rban, ) [1:20-mj-00114-JFA-LMB] (Entered: 03/20/2020) |
| 03/20/2020 | 8 | Arrest Warrant Returned Executed on 3/20/2020 in case as to Zackary Ellis Sanders. (lgue, ) [1:20-mj-00114-JFA-LMB] (Entered: 03/20/2020) |
| 03/20/2020 | 9 | Minute Entry for proceedings held before Magistrate Judge John F. Anderson:Initial Appearance as to Zackary Ellis Sanders held on 3/20/2020. US appeared through: Bill Clayman. Deft appeared with counsel: Steven McCool. Deft informed of rights, charges, and penalties. Deft requests PH/DH - GRANTED. Preliminary Hearing as to Zackary Ellis Sanders held on 3/20/2020. Gov't adduced evidence and rests. Affidavit admitted into evidence as gov't exhibit number one. Court finds PC. Matter continued for further proceedings before the Grand Jury. Detention Hearing as to Zackary Ellis Sanders held on 3/20/2020. Govt is seeking detention. Deft argues for release with conditions - DENIED. Deft remanded to the custody of the USMS. (Tape #FTR.) (lgue, ) [1:20-mj-00114-JFA-LMB] (Entered: 03/20/2020) |
| 03/20/2020 | 10 | NOTICE OF ATTORNEY APPEARANCE: Steven Joseph McCool appearing for Zackary Ellis Sanders (lgue, ) [1:20-mj-00114-JFA-LMB] (Entered: 03/20/2020) |
| 03/20/2020 | 11 | ORDER OF DETENTION as to Zackary Ellis Sanders. Signed by Magistrate Judge John F. Anderson on 3/20/2020. (lgue, ) [1:20-mj-00114-JFA-LMB] (Entered: 03/20/2020) |
| 03/25/2020 | 12 | TRANSCRIPT of Proceedings held on 3/20/2020, before Judge John F. Anderson. Transcriber Anneliese Thomson, Telephone number 703-299-8595. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 4/24/2020. Redacted Transcript Deadline set for 5/26/2020. Release of Transcript Restriction set for 6/23/2020.(thomson, anneliese) [1:20-mj-00114-JFA-LMB] (Entered: 03/25/2020)** |
|  |  |  |

| 03/27/2020 | 13 | MOTION to Revoke *Detention Order and Request for Expedited Hearing* by Zackary Ellis Sanders. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Proposed Order)(McCool, Steven) [1:20-mj-00114-JFA-LMB] (Entered: 03/27/2020) |
| 03/27/2020 | 14 | Notice of Hearing Date set for April 3, 2020 re 13 MOTION to Revoke *Detention Order and Request for Expedited Hearing* (McCool, Steven) [1:20-mj-00114-JFA-LMB] (Entered: 03/27/2020) |
| 03/30/2020 | | Set Deadlines re Motion or Report and Recommendation in case as to Zackary Ellis Sanders 13 MOTION to Revoke *Detention Order and Request for Expedited Hearing*. Motion Hearing set for 4/3/2020 at 09:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (clar, ) [1:20-mj-00114-JFA-LMB] (Entered: 03/30/2020) |
| 03/31/2020 | | Per LMB chambers motions set for 4/3/2020 are on the pleading (clar, ) [1:20-mj-00114-JFA-LMB] (Entered: 03/31/2020) |
| 03/31/2020 | | Deadlines Terminated - Per LMB chambers motion set for 4/3/2020 are on the pleading (Per BR) (clar, ) [1:20-mj-00114-JFA-LMB] (Entered: 03/31/2020) |
| 04/01/2020 | 15 | RESPONSE in Opposition by USA as to Zackary Ellis Sanders re 13 MOTION to Revoke *Detention Order and Request for Expedited Hearing* (Attachments: # 1 Exhibit)(Clayman, William) [1:20-mj-00114-JFA-LMB] (Entered: 04/01/2020) |
| 04/01/2020 | 16 | REPLY TO RESPONSE to by Zackary Ellis Sanders re 15 Response in Opposition *to the Defendant's Motion for Revocation of Detention Order and Request for Expedited Hearing* (McCool, Steven) [1:20-mj-00114-JFA-LMB] (Entered: 04/01/2020) |
| 04/02/2020 | 17 | ORDER as to Zackary Ellis Sanders (1): For all these reasons, the Court finds that clear and convincing evidence supports theconclusion that defendant has failed to rebut the presumption under 18 U.S.C. § 3142(e)(3)(E) that there is no condition or combination of conditions that will reasonably assure the safety of the community. Accordingly, it is herebyORDERED that defendant's Motion for Revocation of Detention Order and Request for Expedited Hearing [Dkt. No. 13] be and is DENIED; and it is further ORDERED that the hearing scheduled for Friday, April 3, 2020 be and is CANCELLED.(see order for details). Signed by District Judge Leonie M. Brinkema on 4/2/20. (yguy) [1:20-mj-00114-JFA-LMB] (Entered: 04/02/2020) |
| 04/07/2020 | 18 | NOTICE OF ATTORNEY APPEARANCE: Emily Anne Voshell appearing for Zackary Ellis Sanders (Voshell, Emily) [1:20-mj-00114-JFA-LMB] (Entered: 04/07/2020) |
| 04/07/2020 | 19 | MOTION to Withdraw as Attorney by Steven J. McCool. by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(McCool, Steven) [1:20-mj-00114-JFA-LMB] (Entered: 04/07/2020) |
| 04/07/2020 | 20 | ORDER granting 19 Motion to Withdraw as Attorney. Steven Joseph McCool withdrawn from case as to Zackary Ellis Sanders (1). Signed by District Judge Leonie M. Brinkema on 4/7/2020. (lcre, ) [1:20-mj-00114-JFA-LMB] (Entered: 04/07/2020) |
| 04/07/2020 | 21 | NOTICE OF ATTORNEY APPEARANCE: Jonathan Stuart Jeffress appearing for Zackary Ellis Sanders (Jeffress, Jonathan) [1:20-mj-00114-JFA-LMB] (Entered: 04/07/2020) |
| 04/09/2020 | 22 | MOTION for Extension of Time to Indict by USA as to Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Clayman, William) [1:20-mj-00114-JFA-LMB] |

| | | (Entered: 04/09/2020) |
|---|---|---|
| 04/09/2020 | 23 | ORDER granting **up to and including June 25, 2020** 22 Motion for Extension of Time to Indictment as to Zackary Ellis Sanders (1). Signed by District Judge Leonie M. Brinkema on 4/9/2020. (lcre, ) [1:20-mj-00114-JFA-LMB] (Entered: 04/09/2020) |
| 04/13/2020 | 24 | MOTION for Speedy Trial *Objections*, MOTION for Release from Custody by Zackary Ellis Sanders. (Attachments: # 1 Exhibit 1 Dr. Williams Affidavit, # 2 Exhibit 2 Inova Visit Summary, # 3 Exhibit 3A Inova Admission Summary, # 4 Exhibit 3B Inova Admission Summary, # 5 Exhibit 4 Letter from Dr. Dave, # 6 Exhibit 5 Drs. Sanders Declaration)(Voshell, Emily) [1:20-mj-00114-JFA-LMB] (Entered: 04/13/2020) |
| 04/23/2020 | 25 | ORDERED that the re re 24 MOTION for Speedy Trial *Objections* MOTION for Release from Custody is DENIED. ORDERED that the government advise the Court and defense counsel by Monday, April 27, 2020 as to whether the defendant is still being held under those conditions and if so, why. Signed by Magistrate Judge John F. Anderson on 4/23/2020. (lcre, )(c/s per ORDER) [1:20-mj-00114-JFA-LMB] (Entered: 04/23/2020) |
| 04/27/2020 | 26 | Memorandum by USA as to Zackary Ellis Sanders re 25 Order, (Clayman, William) [1:20-mj-00114-JFA-LMB] (Entered: 04/27/2020) |
| 04/27/2020 | 27 | Consent MOTION for Protective Order by USA as to Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Clayman, William) [1:20-mj-00114-JFA-LMB] (Entered: 04/27/2020) |
| 04/27/2020 | 28 | Protective Order as to Zackary Ellis Sanders re 27 Consent MOTION for Protective Order filed by USA. Signed by District Judge Leonie M. Brinkema on 4/27/2020. (lcre, ) [1:20-mj-00114-JFA-LMB] (Entered: 04/27/2020) |
| 06/24/2020 | 29 | INDICTMENT as to Zackary Ellis Sanders (1) count(s) 1-5, 6-11, 12. (jlan) (Entered: 06/25/2020) |
| 06/24/2020 | 32 | Redacted Criminal Case Cover Sheet (jlan) (Entered: 06/25/2020) |
| 06/24/2020 | | Set Hearings as to Zackary Ellis Sanders: Arraignment set for 7/10/2020 at 09:00 AM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (jlan) (Entered: 06/25/2020) |
| 07/09/2020 | 33 | Motion to appear Pro Hac Vice by Jade Chong-Smith and Certification of Local Counsel Emily Voshell (Filing fee $ 75 receipt number 0422-7293443.) by Zackary Ellis Sanders. (Voshell, Emily) (Entered: 07/09/2020) |
| 07/10/2020 | 34 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Arraignment as to Zackary Ellis Sanders (1) Count 1-5,6-11,12 held on 7/10/2020. USA appeared through William Clayman and Raj Parekh. Defendant appeared with counsel Emily Voshell and Jade Chong-Smith. Deft. WFA, PNG, and demands trial by jury. Motions to be filed by 8/20/2020 with **Motion Hearing set for 9/11/2020 at 09:00 AM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. **Jury Trial set for 11/17/2020 at 10:00 AM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. Defense advised the court that a Motion to Compel Discovery will be filed and request a hearing on the motion to be set for July 31, 2020 GRANTED - **Motion Hearing (defense motion to compel discovery) set for 7/31/2020 at 09:00 AM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. Discovery Order. |

|  |  | Defendant remanded. Court Reporter: P. Kaneshiro-Miller (tran) Modified on 7/10/2020 (tran). Modified on 7/20/2020 (tran). Modified on 7/30/2020 (tran). (Entered: 07/10/2020) |
|---|---|---|
| 07/10/2020 | 35 | ORDER granting 33 Motion for Pro hac vice for Jade Chong-Smith as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 7/10/2020. (dest, ) (Entered: 07/10/2020) |
| 07/13/2020 | 36 | Consent MOTION to Seal *Portions of Motion to Compel and Exhibits* by Zackary Ellis Sanders. (Voshell, Emily) (Entered: 07/13/2020) |
| 07/13/2020 | 37 | MOTION to Compel *Discovery* by Zackary Ellis Sanders. (Voshell, Emily) (Entered: 07/13/2020) |
| 07/13/2020 | 38 | Sealed Motion to Compel Discovery by Zackary Ellis Sanders. (dest, ) (Entered: 07/14/2020) |
| 07/14/2020 | 39 | ORDERED that the consent motion for leave to file under seal Dkt. 36 is **GRANTED**. It is further **ORDERED** that the sealed motion to compel and exhibits 1-3 of the motion to compel shall remain UNDER SEAL as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 7/14/2020. (dest, ) (Entered: 07/14/2020) |
| 07/15/2020 | 40 | ORDERED that the period of delay resulting from the suspension of jury trials in the Eastern District of Virginia - the period of June 24, 2020 through September 13, 2020 shall be excluded in computing the time within which the trial must commence under the Speedy Trial Act. It is further ORDERED that the period of delay resulting from defendant's pretrial Motion to Compel Discovery - the period of July 13, 2020 through at least July 31, 2020, the date of the motion hearing, and continuing until the disposition of that motion - shall also be excluded in computing the time within which the trial must commence under the Speedy Trial Act. Signed by District Judge T. S. Ellis, III on 07/15/2020. (jlan) (Entered: 07/15/2020) |
| 07/27/2020 | 41 | RESPONSE in Opposition by USA as to Zackary Ellis Sanders re 37 MOTION to Compel *Discovery* (Clayman, William) (Entered: 07/27/2020) |
| 07/27/2020 | 42 | MOTION to Seal *Government's Response in Opposition* by USA as to Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Clayman, William) (Entered: 07/27/2020) |
| 07/28/2020 | 43 | Sealed *Response in Opposition* by USA (Attachments: # 1 Sealed Response- Part 2, # 2 Sealed Response- Part 3)(dest, ) (Entered: 07/28/2020) |
| 07/29/2020 | 44 | ORDER granting 42 Motion to Seal as to Zackary Ellis Sanders (1). ORDERED that the government's opposition to the Defendant's motion to compel discovery be, sealed until further order of the Court. Signed by District Judge T. S. Ellis, III on 7/29/2020. (dest, ) (Entered: 07/29/2020) |
| 07/30/2020 | 45 | REPLY TO RESPONSE to by Zackary Ellis Sanders (Voshell, Emily) (Entered: 07/30/2020) |
| 07/30/2020 | 46 | Consent MOTION to Seal *Reply to Government Opposition to Motion to Compel* by Zackary Ellis Sanders. (Voshell, Emily) (Entered: 07/30/2020) |
| 07/30/2020 | 47 | ORDER granting 46 Consent MOTION to Seal *Reply to Government Opposition to Motion to Compel* as to Zackary Ellis Sanders (1). It is further **ORDERED** that defendant's reply brief in support of defendant's Motion to Compel Discovery and the |

**JA8**

| | | |
|---|---|---|
| | | exhibits thereto must remain **UNDER SEAL** until further Order of the Court. Signed by District Judge T. S. Ellis, III on 20-143. (dest, ) (Entered: 07/30/2020) |
| 07/30/2020 | 48 | Sealed Reply to Government Opposition to Motion to Compel 43 (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(dest, ) (Entered: 07/30/2020) |
| 07/31/2020 | 49 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Motion Hearing as to Zackary Ellis Sanders held on 7/31/2020 re 37 MOTION to Compel *Discovery* filed by Zackary Ellis Sanders<br>USA appeared through William Clayman and Tony Roberts. Defendant appeared with counsels, Jonathan Jeffress and Jade Chong-Smith.<br>Matter argued and taken under advisement. Parties to file simultaneous pleadings of no more than 10 pages within 10 days. Order to follow.<br>Defendant remanded.<br>Court Reporter: P. Kaneshiro-Miller<br>(tran) (Entered: 07/31/2020) |
| 08/06/2020 | 50 | ORDERED that counsel for defendant may obtain a copy of the July 31 2020 hearing transcript from the Court Reporter. It is further ORDERED that the July 31, 2020 hearing transcript remains **UNDER SEAL** and is subject to the protective order entered in this case. Signed by District Judge T. S. Ellis, III on 8/6/2020. (dest, ) (Entered: 08/06/2020) |
| 08/10/2020 | 51 | Supplemental Memorandum by Zackary Ellis Sanders re 37 MOTION to Compel *Discovery* (Attachments: # 1 Exhibit 2)(Voshell, Emily) (Entered: 08/10/2020) |
| 08/10/2020 | 52 | Consent MOTION to Seal *Supplemental Brief on Defendant's Motion to Compel* by Zackary Ellis Sanders. (Voshell, Emily) (Entered: 08/10/2020) |
| 08/10/2020 | 53 | Supplemental Memorandum by USA as to Zackary Ellis Sanders re 37 MOTION to Compel *Discovery* (Clayman, William) (Entered: 08/10/2020) |
| 08/10/2020 | 54 | MOTION to Seal *Supplemental Memorandum* by USA as to Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Clayman, William) (Entered: 08/10/2020) |
| 08/11/2020 | 55 | ORDER granting 52 Consent MOTION to Seal *Supplemental Brief on Defendant's Motion to Compel* as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 8/11/2020. (dest, ) (Entered: 08/11/2020) |
| 08/11/2020 | 56 | ORDER granting 54 Motion to Seal *Supplemental Memorandum* as to Zackary Ellis Sanders (1). ORDERED that the government supplemental' s brief in opposition to the defendant's motion to compel discovery and exhibits 1 and 2 be sealed until further order of the Court. Signed by District Judge T. S. Ellis, III on 8/11/2020. (dest, ) (Entered: 08/11/2020) |
| 08/11/2020 | 57 | Sealed Supplemental Brief in Opposition filed by USA to 38 Sealed Motion filed by Zackary Ellis Sanders (dest, ) (Entered: 08/11/2020) |
| 08/11/2020 | 58 | Sealed Supplemental Brief re 38 Sealed Motion filed by Zackary Ellis Sanders (dest, ) (Entered: 08/11/2020) |
| 08/11/2020 | 59 | SEALED EXHIBIT 1 (Attachments: # 1 Sealed Exhibit 2)(dest, ) (Entered: 08/11/2020) |
| 08/12/2020 | 60 | MOTION for Leave to File *Response to Government's Supplemental Brief on Defendant's Motion to Compel Discovery* by Zackary Ellis Sanders. (Attachments: # 1 Supplement Response to Government's Supplemental Brief on Defendant's Motion to Compel Discovery)(Voshell, Emily) (Entered: 08/12/2020) |

**JA9**

| 08/12/2020 | 61 | Consent MOTION to Seal *Response to Government's Supplemental Brief on Defendant's Motion to Compel Discovery* by Zackary Ellis Sanders. (Voshell, Emily) (Entered: 08/12/2020) |
|---|---|---|
| 08/12/2020 | 62 | **ORDERED** that defendant's Motion for Leave to File Response to Government's Supplemental Brief on Defendant's Motion to Compel Discovery 60 is **GRANTED**. It is further **ORDERED** that the government may file a response to defendant's Response to Government's Supplemental Brief on Defendant's Motion to Compel Discovery on or before **Wednesday, August 19, 2020 at 5:00 p.m.**. Signed by District Judge T. S. Ellis, III on 08/12/2020. (tran) (Entered: 08/12/2020) |
| 08/12/2020 | 63 | SEALING ORDER -Accordingly, for good cause shown, the Motion for Leave to File Under Seal is granted. Signed by District Judge T. S. Ellis, III on 08/12/2020. (tran) (Entered: 08/12/2020) |
| 08/12/2020 | 64 | Supplement Response (*REDACTED*) to 57 Sealed Supplemental Brief in Opposition (dest, ) (Entered: 08/13/2020) |
| 08/12/2020 | 65 | Sealed Response to 57 Sealed Supplemental Brief in Opposition(Attachments: # 1 Exhibit 1) (dest, ) (Entered: 08/13/2020) |
| 08/17/2020 | 66 | MOTION for Extension *of Briefing Schedule Governing Defendant's Motion to Suppress* by Zackary Ellis Sanders. (Voshell, Emily) (Entered: 08/17/2020) |
| 08/19/2020 | 67 | Reply by USA as to Zackary Ellis Sanders re 64 Response *(Redacted)* (Clayman, William) (Entered: 08/19/2020) |
| 08/19/2020 | 68 | MOTION to Seal *Reply to Response to Government's Supplemental Brief* by USA as to Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Clayman, William) (Entered: 08/19/2020) |
| 08/19/2020 | 69 | ORDER granting 68 Motion to Seal *Reply to Response to Government's Supplemental Brief* as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 8/19/2020. (see Order for further details) (dest, ) (Entered: 08/19/2020) |
| 08/19/2020 | 70 | Sealed Reply to 65 Sealed Response to Government's Supplemental Brief (dest, ) (Entered: 08/19/2020) |
| 08/19/2020 | 71 | RESPONSE in Opposition by USA as to Zackary Ellis Sanders re 66 MOTION for Extension *of Briefing Schedule Governing Defendant's Motion to Suppress* (Clayman, William) (Entered: 08/19/2020) |
| 08/20/2020 | 72 | **ORDERED** that defendant's Motion for Extension of Briefing Schedule 66 is **GRANTED IN PART** insofar as defendant must file any pretrial motions on or before Thursday, August 27, 2020 at 5:00 p.m. and the government's response brief or briefs must be filed on or before Wednesday, September 9, 2020 at 5:00 p.m. Defendant's Motion for Extension of Briefing Schedule is **DENIED** in all other respects. Signed by District Judge T. S. Ellis, III on 08/20/2020. (tran) (Entered: 08/20/2020) |
| 08/21/2020 | 73 | SEALED MEMORANDUM OPINION. Signed by District Judge T. S. Ellis, III on 08/21/2020. (tran, c/m on 08/21/20) (Entered: 08/21/2020) |
| 08/21/2020 | 74 | **ORDERED** that defendant's Motion to Compel Discovery 37 and 38 is **DENIED**. Signed by District Judge T. S. Ellis, III on 08/21/2020. (tran) (Entered: 08/21/2020) |
| 08/27/2020 | 75 | MOTION to Suppress *and For Reconsideration of His Motion to Compel Discovery* (*Redacted*) by Zackary Ellis Sanders. (Voshell, Emily) Modified on 8/28/2020 (dest, ). (Entered: 08/27/2020) |

**JA10**

| | | |
|---|---|---|
| 08/27/2020 | 76 | Consent MOTION to Seal *Motion to Suppress* by Zackary Ellis Sanders. (Voshell, Emily) (Entered: 08/27/2020) |
| 08/27/2020 | 77 | MOTION for Leave to File Excess Pages *in Motion to Suppress* by Zackary Ellis Sanders. (Voshell, Emily) (Entered: 08/27/2020) |
| 08/28/2020 | 78 | ORDER granting 76 Consent MOTION to Seal *Motion to Suppress* as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 8/28/2020. (see Order for details) (dest, ) (Entered: 08/28/2020) |
| 08/28/2020 | 79 | Sealed MOTION to Suppress *and For Reconsideration of His Motion to Compel Discovery* by Zackary Ellis Sanders. (Attachments: # 1 Sealed Motion- Part -2, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Exhibit 20, # 22 Exhibit 21, # 23 Exhibit 22 Part-1, # 24 Exhibit 22 Part-2, # 25 Exhibit 23, # 26 Exhibit 24, # 27 Proposed Order) (dest, ) (Entered: 08/28/2020) |
| 08/28/2020 | 80 | **ORDERED** that Defendant's Motion for Leave to File Motion to Suppress in Excess of Thirty Page Limit under Local Rule 47(F)(3) is **GRANTED IN PART** and **DENIED IN PART**. The Motion for Leave to File Motion to Suppress in Excess of Thirty Page Limit is granted insofar as Defendant is **GRANTED** leave to file a memorandum in support of a motion to suppress not exceeding thirty pages. The motion is **DENIED** in all other respects.<br>It is further **ORDERED** that Defendant's Motion to Suppress and for Reconsideration of his Motion to Compel Discovery filed August 27, 2020 75 is **STRICKEN WITHOUT PREJUDICE** because it exceeds eighty pages and was filed without first receiving permission of the Court.<br>It is further **ORDERED** that Defendant is **DIRECTED** to file a memorandum in support of his motion to suppress within the forty-page limit on or before Wednesday, September 2, 2020 at 5:00 p.m.<br>It is further **ORDERED** that Defendant is **DIRECTED** to file a separate motion for reconsideration and supporting memorandum that complies with the limits set by Local Rule 47(F)(3) and with the established requirements for a motion for reconsideration. Signed by District Judge T. S. Ellis, III on 08/28/2020. (tran) (Entered: 08/31/2020) |
| 09/02/2020 | 81 | MOTION to Suppress *Due to Lack of Probable Cause (Motion to Suppress No. 1)* by Zackary Ellis Sanders. (Jeffress, Jonathan) (Entered: 09/02/2020) |
| 09/02/2020 | 82 | Memorandum in Support by Zackary Ellis Sanders re 81 MOTION to Suppress *Due to Lack of Probable Cause (Motion to Suppress No. 1) (REDACTED VERSION)* (Jeffress, Jonathan) (Entered: 09/02/2020) |
| 09/02/2020 | 83 | MOTION to Suppress *Based on Materially Misleading Statements and Omissions Regarding TOR, The Target Website, and the Subject Premises* by Zackary Ellis Sanders. (Jeffress, Jonathan) (Entered: 09/02/2020) |
| 09/02/2020 | 84 | Memorandum in Support by Zackary Ellis Sanders re 83 MOTION to Suppress *Based on Materially Misleading Statements and Omissions Regarding TOR, The Target Website, and the Subject Premises (Motion to Suppress No. 3)* (Jeffress, Jonathan) (Entered: 09/02/2020) |
| 09/02/2020 | 85 | MOTION to Suppress *Based on False and Misleading Material Information in Affidavit Paragraph 23 (Motion to Suppress No. 2)* by Zackary Ellis Sanders. |

**JA11**

| | | (Jeffress, Jonathan) (Entered: 09/02/2020) |
|---|---|---|
| 09/02/2020 | 86 | Memorandum in Support by Zackary Ellis Sanders re 85 MOTION to Suppress *Based on False and Misleading Material Information in Affidavit Paragraph 23 (Motion to Suppress No. 2)* (Jeffress, Jonathan) (Entered: 09/02/2020) |
| 09/02/2020 | 87 | MOTION to Seal *Motions to Suppress and Renewed Motion to Compel* by Zackary Ellis Sanders. (Jeffress, Jonathan) (Entered: 09/02/2020) |
| 09/02/2020 | 88 | MOTION to Compel *Discovery (Renewed) or in the Alternative Motion for Reconsideration of Court's Order Denying Motion to Compel Discovery* by Zackary Ellis Sanders. (Jeffress, Jonathan) (Entered: 09/02/2020) |
| 09/02/2020 | 89 | Memorandum in Support by Zackary Ellis Sanders re 88 MOTION to Compel *Discovery (Renewed) or in the Alternative Motion for Reconsideration of Court's Order Denying Motion to Compel Discovery (REDACTED VERSION)* (Jeffress, Jonathan) (Entered: 09/02/2020) |
| 09/02/2020 | 90 | MOTION to Suppress *Based on False and Misleading Material Information in Affidavit Paragraph 25 (Motion to Suppress No. 4)* by Zackary Ellis Sanders. (Jeffress, Jonathan) (Entered: 09/02/2020) |
| 09/02/2020 | 91 | Memorandum in Support by Zackary Ellis Sanders re 90 MOTION to Suppress *Based on False and Misleading Material Information in Affidavit Paragraph 25 (Motion to Suppress No. 4) (REDACTED VERSION)* (Jeffress, Jonathan) (Entered: 09/02/2020) |
| 09/02/2020 | 92 | ORDER granting 87 Motion to Seal *Motions to Suppress and Renewed Motion to Compel* as to Zackary Ellis Sanders (1). It is further **ORDERED** that portions of defendant's memoranda in support of motions to suppress and renewed motion to compel and attached exhibits shall be maintained **UNDER SEALED** by the Clerk until otherwise directed. Signed by District Judge T. S. Ellis, III on 9/2/2020. (dest, ) (Entered: 09/03/2020) |
| 09/08/2020 | 93 | NOTICE by Zackary Ellis Sanders re 81 MOTION to Suppress *Due to Lack of Probable Cause (Motion to Suppress No. 1)* (Attachments: # 1 Exhibit ORDER from United States v. Reece, 16-CR-104 (E.D. Va. 2017))(Jeffress, Jonathan) (Entered: 09/08/2020) |
| 09/09/2020 | 94 | RESPONSE in Opposition by USA as to Zackary Ellis Sanders re 88 MOTION to Compel *Discovery (Renewed) or in the Alternative Motion for Reconsideration of Court's Order Denying Motion to Compel Discovery* (Clayman, William) (Entered: 09/09/2020) |
| 09/09/2020 | 95 | MOTION to Seal *94 Response in Opposition to Motion for Reconsideration* by USA as to Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Clayman, William) (Entered: 09/09/2020) |
| 09/09/2020 | 96 | ORDER granting 95 Motion to Seal as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 9/9/2020. (rban, ) (Entered: 09/09/2020) |
| 09/09/2020 | 97 | RESPONSE in Opposition by USA as to Zackary Ellis Sanders re 83 MOTION to Suppress *Based on Materially Misleading Statements and Omissions Regarding TOR, The Target Website, and the Subject Premises*, 85 MOTION to Suppress *Based on False and Misleading Material Information in Affidavit Paragraph 23 (Motion to Suppress No. 2)*, 81 MOTION to Suppress *Due to Lack of Probable Cause (Motion to Suppress No. 1)*, 90 MOTION to Suppress *Based on False and Misleading Material* |

**JA12**

| | | |
|---|---|---|
| | | *Information in Affidavit Paragraph 25 (Motion to Suppress No. 4)* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Clayman, William) (Entered: 09/09/2020) |
| 09/09/2020 | 98 | MOTION to Seal 97 *Government's Omnibus Response in Opposition To Defendant's Motions to Suppress* by USA as to Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Clayman, William) (Entered: 09/09/2020) |
| 09/09/2020 | 99 | ORDER granting 98 *Government's Omnibus Response in Opposition To Defendant's Motions to Suppress* as to Zackary Ellis Sanders (1). ORDERED that the government's omnibus response in opposition to the defendant's motions to suppress and exhibit 1 be sealed until further order of the Court. Signed by District Judge T. S. Ellis, III on 9/9/2020. (dest, ) (Entered: 09/10/2020) |
| 09/10/2020 | 100 | Sealed Response in Opposition by USA re 88 MOTION to Compel *Discovery (Renewed) or in the Alternative Motion for Reconsideration of Court's Order Denying Motion to Compel Discovery* filed by Zackary Ellis Sanders (dest, ) (Entered: 09/10/2020) |
| 09/10/2020 | 101 | Sealed Response in Opposition by USA re 83 MOTION to Suppress *Based on Materially Misleading Statements and Omissions Regarding TOR, The Target Website, and the Subject Premises* filed by Zackary Ellis Sanders, re 81 MOTION to Suppress *Due to Lack of Probable Cause (Motion to Suppress No. 1) by Zackary Ellis Sanders*, re 85 MOTION to Suppress *Based on False and Misleading Material Information in Affidavit Paragraph 23 (Motion to Suppress No. 2)* by Zackary Ellis Sanders, re 90 MOTION to Suppress *Based on False and Misleading Material Information in Affidavit Paragraph 25 (Motion to Suppress No. 4)* by Zackary Ellis Sanders (dest, ) (Entered: 09/10/2020) |
| 09/10/2020 | 102 | REPLY TO RESPONSE to by Zackary Ellis Sanders re 100 Sealed Document (Voshell, Emily) (Entered: 09/10/2020) |
| 09/10/2020 | 103 | Consent MOTION to Seal by Zackary Ellis Sanders. (Voshell, Emily) (Entered: 09/10/2020) |
| 09/10/2020 | 104 | REPLY TO RESPONSE to by Zackary Ellis Sanders re 101 Sealed Document,, (Voshell, Emily) (Entered: 09/10/2020) |
| 09/10/2020 | 105 | Sealed Document re: 102 Reply to Response filed by Zackary Ellis Sanders (rban, ) (Entered: 09/10/2020) |
| 09/10/2020 | 106 | Sealed Document re: 105 Sealed Document filed by Zackary Ellis Sanders (rban, ) (Entered: 09/10/2020) |
| 09/10/2020 | 107 | SEALED ORDER as to Zackary Ellis Sanders. Signed by District Judge T. S. Ellis, III on 09/10/2020. (tran, c/m on 09/10/20) (Entered: 09/10/2020) |
| 09/11/2020 | 108 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Sealed Minutes held on 9/11/2020.<br>Court Reporter: P. Kaneshiro-Miller.<br>(tran) (Entered: 09/11/2020) |
| 09/14/2020 | 109 | NOTICE *of Filing of Defense Exhibit* by Zackary Ellis Sanders re 81 MOTION to Suppress *Due to Lack of Probable Cause (Motion to Suppress No. 1)* (Attachments: # 1 Exhibit A)(Jeffress, Jonathan) (Entered: 09/14/2020) |
| 09/28/2020 | 110 | Subpoena issued for Jury Trial set for 11/17/2020 at 10:00 a.m. (dest, ) (Entered: 09/28/2020) |

| 10/19/2020 | 111 | ORDER granting 103 Motion to Seal as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 10/19/2020. (jlan) (Entered: 10/19/2020) |
| 10/26/2020 | 112 | NOTICE *OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF HIS MOTIONS TO SUPPRESS NO.1 AND NO.3* by Zackary Ellis Sanders (Attachments: # 1 Exhibit A) (Voshell, Emily) (Entered: 10/26/2020) |
| 10/26/2020 | 113 | SEALED MEMORANDUM OPINION (tran, c/m on 10/26/20) (Entered: 10/26/2020) |
| 10/26/2020 | 114 | **ORDERED** that defendant's Motions to Suppress 81 , 83 , 85 , and 90 are **DENIED**. It is **FURTHER ORDERED** that the Memorandum Opinion issued alongside this Order will be **UNSEALED** on **Thursday, October 29, 2020,** unless a party submits a motion establishing good cause to keep the Memorandum Opinion under seal. Signed by District Judge T. S. Ellis, III on 10/26/2020. (tran) (Entered: 10/26/2020) |
| 10/26/2020 | 115 | **ORDERED** that any motions *in limine* must be submitted on or before Friday, November 6, 2020 at 5:00 p.m.<br>It is further **ORDERED** that each party **SHALL** submit (1) proposed jury instructions and (2) proposed *voir dire* no later than **Friday, November 6, 2020 at 5:00 p.m.**<br>It is further **ORDERED** that each party **SHALL** submit any objections to the opposing party's motions *in limine*, proposed jury instructions, and/or proposed *voir dire* no later than **Wednesday, November 11, 2020 at 5:00 p.m.**<br>It is further **ORDERED** that, on or before **Wednesday, November 11, 2020 at 5:00 p.m.**, the government **SHALL** submit the government's witness list and exhibit list and defendant **SHALL** submit a list of potential witnesses.<br>It is further **ORDERED** that a final pretrial conference is **SCHEDULED** for **Friday, November 13, 2020 at 11:00 a.m.** Signed by District Judge T. S. Ellis, III on 10/26/2020. (tran) (Entered: 10/26/2020) |
| 10/26/2020 |  | Set Hearings as to Zackary Ellis Sanders: **Final Pretrial Conference set for 11/13/2020 at 11:00 AM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (tran) (Entered: 10/26/2020) |
| 10/28/2020 | 116 | Consent MOTION to Continue *Trial Date* by Zackary Ellis Sanders. (Jeffress, Jonathan) (Entered: 10/28/2020) |
| 10/28/2020 | 117 | MOTION to Seal *113 SEALED MEMORANDUM OPINION* by USA as to Zackary Ellis Sanders. (Attachments: # 1 Proposed Order, # 2 Exhibit 1)(Clayman, William) (Entered: 10/28/2020) |
| 10/28/2020 | 118 | Memorandum in Support by USA as to Zackary Ellis Sanders re 117 MOTION to Seal *113 SEALED MEMORANDUM OPINION* (Clayman, William) (Entered: 10/28/2020) |
| 10/29/2020 | 119 | **ORDERED** that defendant's Motion to Continue 116 is **DENIED**. Signed by District Judge T. S. Ellis, III on 10/29/2020. (tran) (Entered: 10/29/2020) |
| 10/29/2020 | 120 | Sealed Motion to Seal by USA as to Zackary Ellis Sanders. (dest, ) (Attachment(s): # 1 Exhibit 1) (dest, ). (Entered: 10/29/2020) |
| 10/29/2020 | 121 | Sealed Memorandum re 120 Sealed Motion to Seal filed by USA (dest, ) (Entered: 10/29/2020) |
| 10/29/2020 | 122 | Redacted version of 113 Sealed Memorandum Opinion.(rban, ) (Entered: 10/30/2020) |
| 10/29/2020 | 123 | ORDERED that the Court's sealed Memorandum Opinion 113 be kept under seal until further order of the court; that the copy of the Court's sealed Memorandum Opinion with the government's proposed redactions, attached to the government's motion as |

| | | Exhibit 1, be filed on the public docket and made part of the record in this matter. Signed by District Judge T. S. Ellis, III on 10/29/2020. (rban, ) (Entered: 10/30/2020) |
|---|---|---|
| 10/30/2020 | 124 | Consent MOTION to Continue *Trial (Renewed)* by Zackary Ellis Sanders. (Jeffress, Jonathan) (Entered: 10/30/2020) |
| 10/30/2020 | 125 | **ORDERED** that oral argument on the renewed motion to continue 124 is **SCHEDULED** for **Friday, November 6, 2020 at 1:00 p.m.** Signed by District Judge T. S. Ellis, III on 10/30/2020. (tran) (Entered: 10/30/2020) |
| 10/30/2020 | | Set Deadlines re Motion in case as to Zackary Ellis Sanders 124 Consent MOTION to Continue *Trial (Renewed)*. **Motion Hearing set for 11/6/2020 at 01:00 PM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (tran) (Entered: 10/30/2020) |
| 11/02/2020 | 126 | NOTICE *Government's Rule 16(a)(1)(G) Notice* by USA as to Zackary Ellis Sanders (Clayman, William) (Entered: 11/02/2020) |
| 11/02/2020 | 127 | NOTICE *of Intent to Introduce Certain Evidence Pursuant to Federal Rule of Evidence 414* by USA as to Zackary Ellis Sanders (Clayman, William) (Entered: 11/02/2020) |
| 11/06/2020 | 128 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Motion Hearing as to Zackary Ellis Sanders held on 11/6/2020 re 124 Consent MOTION to Continue *Trial (Renewed)* filed by Zackary Ellis Sanders. USA appeared through Jay Prabhu and William Clayman. Defendant appeared with counsel, Jonathan Jeffress and Jade Chong-Smith. Motion 124 -GRANTED. Parties to collaborate on an order that case is a complex matter, delay resulted in parties given adequate opportunity to prepare for trial and that COVID-19 presented it difficult for defense to communicate with his client. **Jury Trial reset for 2/9/2021 at 10:00 AM (1 week)** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. Order to follow. Defendant remanded. Court Reporter: P. Kaneshiro-Miller (tran) (Entered: 11/06/2020) |
| 11/06/2020 | | Terminate Hearings as to Zackary Ellis Sanders: Final Pretrial Conference set for Friday, November 13, 2020 at 11:00 a.m. (tran) (Entered: 11/06/2020) |
| 11/09/2020 | 129 | NOTICE by USA as to Zackary Ellis Sanders (Attachments: # 1 Proposed Order re: Speedy Trial Act)(Clayman, William) (Entered: 11/09/2020) |
| 11/09/2020 | 130 | ORDERED that the period of delay resulting from the Court's continuance upon the defendant's motion-the period from November 17, 2020, to February 9, 2021-shall be executed in computing the time within which the trial must commence under the Speedy Trial Act. Signed by District Judge T. S. Ellis, III on 11/09/2020. (tran) (Entered: 11/09/2020) |
| 11/09/2020 | 131 | **ORDERED** that defendant's Renewed Unopposed Motion to Continue Trial 124 is **GRANTED**. The trial currently set for November 17, 2020 is **CONTINUED** until **Tuesday, February 9, 2021 at 9:00 a.m.** It is further **ORDERED** that any motions *in limine* must be submitted on or before **Friday, December 18, 2020 at 5:00 p.m.** It is further **ORDERED** that each party **SHALL** submit (1) proposed jury instructions and (2) proposed *voir dire* no later than **Friday, December 18, 2020 at 5:00 p.m.** It is further **ORDERED** that each party **SHALL** submit any objections to the opposing party's motions *in limine*, proposed jury instructions, and/or proposed *voir* |

| | | |
|---|---|---|
| | | *dire* no later than **Friday, January 8, 2021 at 5:00 p.m.**<br>It is further **ORDERED** that, on or before **Friday, January 8, 2021 at 5:00 p.m.**, the government **SHALL** submit the government's witness list and exhibit list and defendant **SHALL** submit a list of potential witnesses.<br>It is further **ORDERED** that a final pretrial conference is **SCHEDULED** for **Friday, January 15, 2021 at 10:00 a.m.** Signed by District Judge T. S. Ellis, III on 11/09/2020. (tran) (Entered: 11/09/2020) |
| 11/09/2020 | | Set Hearings as to Zackary Ellis Sanders **Final Pretrial Conference set for 1/15/2021 at 10:00 AM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (tran) (Entered: 11/09/2020) |
| 11/17/2020 | 132 | Sealed Document (dest, ) (Entered: 11/17/2020) |
| 11/17/2020 | 133 | NOTICE *Amended Notice of Intent to Introduce Certain Evidence Pursuant to Federal Rule of Evidence 414* by USA as to Zackary Ellis Sanders (Clayman, William) (Entered: 11/17/2020) |
| 11/27/2020 | 134 | CONSENT MOTION to Seal , MOTION for Release of Brady Materials by Zackary Ellis Sanders. (Jeffress, Jonathan) Modified on 12/12/2020 to correct docket event (dest, ). (Entered: 11/27/2020) |
| 11/27/2020 | 135 | MOTION to Compel *or in the Alternative for In Camera Inspection* by Zackary Ellis Sanders. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Jeffress, Jonathan) (Entered: 11/27/2020) |
| 11/27/2020 | 136 | MOTION to Seal by Zackary Ellis Sanders. (Jeffress, Jonathan) (Entered: 11/27/2020) |
| 11/30/2020 | 137 | Sealed MOTION to Compel *or in the Alternative for In Camera Inspection* by Zackary Ellis Sanders. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Proposed Order)(dest, ) (Entered: 11/30/2020) |
| 12/05/2020 | 138 | Supplemental Memorandum by Zackary Ellis Sanders re 137 Sealed Motion (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit) (Jeffress, Jonathan) (Entered: 12/05/2020) |
| 12/05/2020 | 139 | MOTION to Seal *Supplement to Motion to Compel or for In Camera Inspection* by Zackary Ellis Sanders. (Jeffress, Jonathan) (Entered: 12/05/2020) |
| 12/07/2020 | 140 | Sealed Supplement to Motion to Compel by Zackary Ellis Sanders. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8 Part-1, # 9 Exhibit 8 Part-2, # 10 Exhibit 8 Part-3, # 11 Exhibit 8 Part-4, # 12 Exhibit 9, # 13 Exhibit 10, # 14 Exhibit 11, # 15 Exhibit 12) (dest, ) Modified on 12/8/2020 to correct docket event(dest, ).(Attachment 3 replaced on 12/9/2020) (dest, ). (Entered: 12/08/2020) |
| 12/08/2020 | 141 | ORDER granting 139 Motion to Seal *Supplement to Motion to Compel or for In Camera Inspection* as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 12/8/2020. (dest, ) (Entered: 12/08/2020) |
| 12/10/2020 | 142 | MOTION for Extension of Time to File Response/Reply *to 137 Motion to Compel* by USA as to Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Clayman, William) (Entered: 12/10/2020) |
| 12/11/2020 | 143 | ORDER granting 142 Motion for Extension of Time; ORDERED that the government shall file its response to the defendant's motion to compel [Dkt. No. 137] and supplement to his motion (Dkt. No. 140] on or before December 18, 2020 as to |

| | | Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 12/11/2020. (jlan) (Entered: 12/11/2020) |
|---|---|---|
| 12/17/2020 | 144 | MOTION to Seal *73 Memorandum Opinion* and *107 Order* by USA as to Zackary Ellis Sanders. (Attachments: # 1 Proposed Order, # 2 Exhibit 1, # 3 Exhibit 2) (Clayman, William) (Entered: 12/17/2020) |
| 12/17/2020 | 145 | Consent MOTION to Continue *Deadline for Motions in Limine related to the Defense's Forensic Review of Seized Devices* by Zackary Ellis Sanders. (Jeffress, Jonathan) (Entered: 12/17/2020) |
| 12/17/2020 | 146 | *Exhibits 1 and 2 (Redacted Version)* re 144 MOTION to Seal *73 Memorandum Opinion* and *107 Order* filed by USA (Attachments: # 1 Exhibit 2)(dest, ) Modified on 2/11/2021 to make exhibits available for public view, per TSE chambers (DK) and Order [Dkt. 147](dest, ). (Entered: 12/17/2020) |
| 12/17/2020 | 147 | ORDER granting 144 MOTION to Seal as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 12/17/2020. (see Order for details) (dest, ) (Entered: 12/17/2020) |
| 12/17/2020 | 148 | **ORDERED** that defendant's Motion to Extend Deadlines 145 is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted insofar as the motion *in limine* deadline for defense motions related to issues raised by forensic examination of evidence by defense experts and continued in-person review of evidence from seized devices is **EXTENDED** to **Friday, January 8, 2021 at 5:00 p.m.** The motion is denied in all other respects. Signed by District Judge T. S. Ellis, III on 12/17/2020. (tran) (Entered: 12/17/2020) |
| 12/17/2020 | 149 | MOTION to Suppress *Statements* by Zackary Ellis Sanders. (Voshell, Emily) (Entered: 12/17/2020) |
| 12/17/2020 | 150 | Memorandum in Support by Zackary Ellis Sanders re 149 MOTION to Suppress *Statements* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 5) (Voshell, Emily) (Entered: 12/17/2020) |
| 12/17/2020 | 151 | MOTION to Seal by Zackary Ellis Sanders. (Voshell, Emily) (Entered: 12/17/2020) |
| 12/18/2020 | 152 | ORDER re 149 MOTION to Suppress *Statements* filed by Zackary Ellis Sanders. It is hereby **ORDERED** that defendant shall **SHOW CAUSE** by **5:00 p.m. on Monday December 28, 2020** as to why defendant filed a Motion to Suppress on December 17, 2020, one hundred and twelve (112) days after the deadline. Signed by District Judge T. S. Ellis, III on 12/18/2020. (see Order for further details) (dest, ) (Entered: 12/18/2020) |
| 12/18/2020 | 153 | MOTION in Limine *in Opposition to the Governments Amended Notice of Intent to Present Evidence Under Federal Rule of Evidence 414* by Zackary Ellis Sanders. (Voshell, Emily) (Entered: 12/18/2020) |
| 12/18/2020 | 154 | Memorandum in Support by Zackary Ellis Sanders re 153 MOTION in Limine *in Opposition to the Governments Amended Notice of Intent to Present Evidence Under Federal Rule of Evidence 414* (Voshell, Emily) (Entered: 12/18/2020) |
| 12/18/2020 | 155 | MOTION in Limine *to Exclude Chat Transcripts and Related Testimony from Non-Testifying Persons* by Zackary Ellis Sanders. (Voshell, Emily) (Entered: 12/18/2020) |
| 12/18/2020 | 156 | Memorandum in Support by Zackary Ellis Sanders re 155 MOTION in Limine *to Exclude Chat Transcripts and Related Testimony from Non-Testifying Persons* (Voshell, Emily) (Entered: 12/18/2020) |

**JA17**

| 12/18/2020 | 157 | Proposed Voir Dire by Zackary Ellis Sanders (Voshell, Emily) (Entered: 12/18/2020) |
|---|---|---|
| 12/18/2020 | 158 | Proposed Voir Dire by USA as to Zackary Ellis Sanders (Clayman, William) (Entered: 12/18/2020) |
| 12/18/2020 | 159 | Proposed Jury Instructions by USA as to Zackary Ellis Sanders (Clayman, William) (Entered: 12/18/2020) |
| 12/18/2020 | 160 | MOTION in Limine *to Preclude Lay Opinion Testimony About Forensic Examinations* by Zackary Ellis Sanders. (Voshell, Emily) (Entered: 12/18/2020) |
| 12/18/2020 | 161 | Memorandum in Support by Zackary Ellis Sanders re 160 MOTION in Limine *to Preclude Lay Opinion Testimony About Forensic Examinations* (Voshell, Emily) (Entered: 12/18/2020) |
| 12/18/2020 | 162 | MOTION in Limine *to Publish Certain Recordings to the Jury* by USA as to Zackary Ellis Sanders. (Clayman, William) (Entered: 12/18/2020) |
| 12/18/2020 | 163 | MOTION in Limine *to Exclude and Limit Certain Arguments, Lines of Questioning, and Evidence at Trial* by USA as to Zackary Ellis Sanders. (Clayman, William) (Entered: 12/18/2020) |
| 12/18/2020 | 164 | MOTION in Limine *to Admit Certain Records* by USA as to Zackary Ellis Sanders. (Clayman, William) (Entered: 12/18/2020) |
| 12/18/2020 | 165 | MOTION in Limine *to Introduce Certain Evidence Pursuant to Federal Rule of Evidence 404(b)* by USA as to Zackary Ellis Sanders. (Clayman, William) (Entered: 12/18/2020) |
| 12/18/2020 | 166 | Proposed Jury Instructions by Zackary Ellis Sanders (Voshell, Emily) (Entered: 12/18/2020) |
| 12/18/2020 | 167 | RESPONSE in Opposition by USA as to Zackary Ellis Sanders re 135 MOTION to Compel *or in the Alternative for In Camera Inspection* (Clayman, William) (Entered: 12/18/2020) |
| 12/18/2020 | 168 | ORDER granting 151 Motion to Seal as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 12/18/2020. (dest, ) (Entered: 12/18/2020) |
| 12/18/2020 | 169 | SEALED EXHIBIT *4* re 150 Memorandum in Support of Motion filed by Zackary Ellis Sanders (dest, ) (Entered: 12/18/2020) |
| 12/18/2020 | 170 | MOTION for Order to Show Cause *and to Seal* by USA as to Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Clayman, William) (Entered: 12/18/2020) |
| 12/18/2020 | 171 | Consent MOTION to Seal *Exhibits* by Zackary Ellis Sanders. (Jeffress, Jonathan) (Entered: 12/18/2020) |
| 12/21/2020 | 172 | ORDER granting 170 Motion for Order to Show Cause as to Zackary Ellis Sanders (1); granting 171 Motion to Seal as to Zackary Ellis Sanders (1). It is hereby **ORDERED** that the memorandum in support of the government's instant motion Dkt. 170 and Exhibit 1 be **SEALED** until further Order of the Court. It is further **ORDERED** that Dkt. 135-4, 138-1. 138-2, 138-3, 138-8, and 138-11 be **SEALED** until further Order of the Court. Signed by District Judge T. S. Ellis, III on 12/21/2020. (see Order for further details) (dest, ) (Entered: 12/21/2020) |
| 12/21/2020 | 173 | SEALED Memorandum in Support re 170 MOTION for Order to Show Cause *and to Seal* filed by USA (Attachments: # 1 Exhibit 1)(dest, ) (Entered: 12/21/2020) |

**JA18**

| 12/23/2020 | 174 | REPLY TO RESPONSE to by Zackary Ellis Sanders *to the Government's Opposition to Motion to Compel the Government to Produce Material, or, in the Alternative, to Submit Material for In Camera Inspection* (Attachments: # 1 Exhibit 2, # 2 Exhibit 3, # 3 Exhibit 5, # 4 Exhibit 6, # 5 Exhibit 7, # 6 Exhibit 8, # 7 Exhibit 9)(Voshell, Emily) (Entered: 12/23/2020) |
| 12/23/2020 | 175 | Consent MOTION to Seal by Zackary Ellis Sanders. (Voshell, Emily) (Entered: 12/23/2020) |
| 12/23/2020 | 176 | SEALED RESPONSE by Zackary Ellis Sanders to 167 Response in Opposition filed by USA (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9)(dest, ) (Main Document 176 replaced on 12/28/2020) (dest, ). (Entered: 12/23/2020) |
| 12/23/2020 | 177 | RESPONSE TO ORDER TO SHOW CAUSE by Zackary Ellis Sanders (Voshell, Emily) (Entered: 12/23/2020) |
| 12/28/2020 | 178 | ORDER granting 175 Consent MOTION to Seal as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 12/28/2020. (dest, ) (Entered: 12/28/2020) |
| 12/29/2020 | 179 | Position on *152 ORDER to Show Cause* by USA as to Zackary Ellis Sanders *152 ORDER to Show Cause* (Clayman, William) (Entered: 12/29/2020) |
| 12/30/2020 | 180 | MOTION for Extension of Time to File Response/Reply as to 149 MOTION to Suppress *Statements* by USA as to Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Clayman, William) (Entered: 12/30/2020) |
| 12/30/2020 | 181 | Opposition by Zackary Ellis Sanders re 170 MOTION for Order to Show Cause *and to Seal* (Jeffress, Jonathan) (Entered: 12/30/2020) |
| 12/30/2020 | 182 | NOTICE *of Filing Regarding Lack of Client Contact* by Zackary Ellis Sanders (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Jeffress, Jonathan) (Entered: 12/30/2020) |
| 12/30/2020 | 183 | MOTION to Seal by Zackary Ellis Sanders. (Jeffress, Jonathan) (Entered: 12/30/2020) |
| 01/04/2021 | 184 | Sealed Document (choy, ) (Entered: 01/04/2021) |
| 01/04/2021 | 185 | Sealed Document (choy, ) (Entered: 01/04/2021) |
| 01/04/2021 | 186 | RESPONSE by Zackary Ellis Sanders re 179 Position on *Show Cause by Government* (Jeffress, Jonathan) (Entered: 01/04/2021) |
| 01/04/2021 | 187 | MOTION to Seal *response to Government's Position on Show Cause* by Zackary Ellis Sanders. (Jeffress, Jonathan) (Entered: 01/04/2021) |
| 01/04/2021 | 188 | ORDERED that, if the Court determines that the defendant has shown good cause for his untimely motion to suppress 149 under Fed.R.Crim.P.21(c)(3), the government shall file its response to the defendant's motion on or before 01/14/2021. Signed by District Judge T. S. Ellis, III on 01/04/2021. (choy, ) (Entered: 01/04/2021) |
| 01/04/2021 | 189 | ORDER Granting 183 187 Motion to Seal; that defendant's motions are GRANTED insofar as to portions of defendant's Opposition to the Government's Motion for an Order to Show Cause and to Seal 181 and defendant's Reply to Government's Position on Order to Show Cause 186 that refer to or disclose matters that are protected by the Protective Order in this case 28 shall be FILED UNDER SEAL. Signed by District Judge T. S. Ellis, III on 01/04/2021. (choy, )(copies sent on 01/04/2021) (Entered: 01/04/2021) |

**JA19**

| 01/06/2021 | 190 | Reply by USA as to Zackary Ellis Sanders re 181 Opposition to 170 MOTION for Order to Show Cause and to Seal (Clayman, William) (Entered: 01/06/2021) |
| 01/06/2021 | 191 | MOTION to Seal 190 Reply by USA as to Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Clayman, William) (Entered: 01/06/2021) |
| 01/06/2021 | 192 | Consent MOTION to Continue Trial and Extend Deadline by Zackary Ellis Sanders. (Attachments: # 1 Exhibit)(Jeffress, Jonathan) (Entered: 01/06/2021) |
| 01/07/2021 | 193 | Sealed Reply by USA 181 Opposition filed by Zackary Ellis Sanders (dest, ) (Entered: 01/07/2021) |
| 01/07/2021 | 194 | Supplemental Memorandum by Zackary Ellis Sanders re 192 Consent MOTION to Continue Trial and Extend Deadline (Jeffress, Jonathan) (Entered: 01/07/2021) |
| 01/07/2021 | 195 | ORDER granting 191 Motion to Seal as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 1/7/2021. (see Order for details) (dest, ) (Entered: 01/07/2021) |
| 01/07/2021 | 196 | ORDERED that defendant's Motion to Supress Dkt. 149 is **DENIED AS UNTIMELY** as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 1/7/2021. (dest, ) (Entered: 01/07/2021) |
| 01/08/2021 | 197 | Objection by USA as to Zackary Ellis Sanders re 157 Proposed Voir Dire (Clayman, William) (Entered: 01/08/2021) |
| 01/08/2021 | 198 | Objection by USA as to Zackary Ellis Sanders re 166 Proposed Jury Instructions (Clayman, William) (Entered: 01/08/2021) |
| 01/08/2021 | 199 | RESPONSE in Opposition by USA as to Zackary Ellis Sanders re 155 MOTION in Limine to Exclude Chat Transcripts and Related Testimony from Non-Testifying Persons (Clayman, William) (Entered: 01/08/2021) |
| 01/08/2021 | 200 | RESPONSE in Opposition by USA as to Zackary Ellis Sanders re 160 MOTION in Limine to Preclude Lay Opinion Testimony About Forensic Examinations (Clayman, William) (Entered: 01/08/2021) |
| 01/08/2021 | 201 | RESPONSE in Opposition by USA as to Zackary Ellis Sanders re 153 MOTION in Limine in Opposition to the Governments Amended Notice of Intent to Present Evidence Under Federal Rule of Evidence 414 (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Clayman, William) (Entered: 01/08/2021) |
| 01/08/2021 | 202 | RESPONSE to Motion by Zackary Ellis Sanders re 164 MOTION in Limine to Admit Certain Records and Evidence (Voshell, Emily) (Entered: 01/08/2021) |
| 01/08/2021 | 203 | RESPONSE in Opposition by Zackary Ellis Sanders re 162 MOTION in Limine to Publish Certain Recordings to the Jury (Voshell, Emily) (Entered: 01/08/2021) |
| 01/08/2021 | 204 | ORDER granting 192 Consent MOTION to Continue Trial and Extend Deadline as to Zackary Ellis Sanders (1). The trial date in this matter is **CONTINUED** from February 9, 2021, at 9:00 a.m. to Monday, April 26, 2021 at 9:00 a.m. It is **FURTHER ORDERED** that the motion in limine deadline for defense motions related to issues raised by forensic examination of evidence by defense experts and continued in-person review of evidence from seized devices is EXTENDED to Friday, February 12, 2021 at 5:00 p.m. It is further **ORDERED** that the final pretrial conference scheduled for January 15, 2021, is vacated and rescheduled for Friday. April 9, 2021 at 10:00 a.m. It is further **ORDERED** that the period of delay resulting from the Court's continuance upon the consent motion-the period from February 9, |

| | | |
|---|---|---|
| | | 2021, to April 26, 2021-shall be excluded in computing the time within which the trial must commence under the Speedy Trial Act. Signed by District Judge T. S. Ellis, III on 1/8/2021. (see Order for further details) (dest, ) (Entered: 01/08/2021) |
| 01/08/2021 | 205 | WITNESS LIST by USA as to Zackary Ellis Sanders (Clayman, William) (Entered: 01/08/2021) |
| 01/08/2021 | | Reset Deadlines/Hearings as to Zackary Ellis Sanders: **Jury Trial reset for 4/26/2021 at 09:00 AM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (dest, ) (Entered: 01/08/2021) |
| 01/08/2021 | | Reset Deadlines/Hearings as to Zackary Ellis Sanders: **Final Pretrial Conference set for 4/9/2021 at 10:00 AM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (dest, ) (Entered: 01/08/2021) |
| 01/08/2021 | 206 | EXHIBIT LIST by USA as to Zackary Ellis Sanders (Clayman, William) (Entered: 01/08/2021) |
| 01/08/2021 | 207 | RESPONSE in Opposition by Zackary Ellis Sanders re 165 MOTION in Limine *to Introduce Certain Evidence Pursuant to Federal Rule of Evidence 404(b)* (Voshell, Emily) (Entered: 01/08/2021) |
| 01/08/2021 | 208 | WITNESS LIST by Zackary Ellis Sanders (Voshell, Emily) (Entered: 01/08/2021) |
| 01/08/2021 | 209 | RESPONSE in Opposition by Zackary Ellis Sanders re 163 MOTION in Limine *to Exclude and Limit Certain Arguments, Lines of Questioning, and Evidence at Trial* (Voshell, Emily) (Entered: 01/08/2021) |
| 01/08/2021 | 210 | RESPONSE by Zackary Ellis Sanders re 158 Proposed Voir Dire (Voshell, Emily) (Entered: 01/08/2021) |
| 01/08/2021 | 211 | RESPONSE by Zackary Ellis Sanders re 159 Proposed Jury Instructions (Voshell, Emily) (Entered: 01/08/2021) |
| 01/13/2021 | 212 | NOTICE *of Correction* by Zackary Ellis Sanders (Jeffress, Jonathan) (Entered: 01/13/2021) |
| 01/13/2021 | 213 | MOTION for Leave to File *Motion to Suppress Statements*, MOTION to Suppress by Zackary Ellis Sanders. (Jeffress, Jonathan) (Entered: 01/13/2021) |
| 01/14/2021 | 214 | **ORDERED** that the government is **DIRECTED** to file a response brief on or before **Friday, January 22, 2021 at 5:00 p.m.**<br>It is further **ORDERED** that defendant may file a reply in support of his motion on or before **Friday, January 29, 2021 at 5:00 p.m.** Signed by District Judge T. S. Ellis, III on 01/14/2021. (tran) (Entered: 01/14/2021) |
| 01/14/2021 | 215 | Reply by Zackary Ellis Sanders re 200 Response in Opposition *to Motion to Preclude Lay Opinion Testimony About Forensic Examinations* (Jeffress, Jonathan) (Entered: 01/14/2021) |
| 01/14/2021 | 216 | REPLY TO RESPONSE to by Zackary Ellis Sanders re 201 Response in Opposition, (Voshell, Emily) (Entered: 01/14/2021) |
| 01/14/2021 | 217 | REPLY TO RESPONSE to by Zackary Ellis Sanders re 197 Objection *to Voir Dire* (Voshell, Emily) (Entered: 01/14/2021) |
| 01/14/2021 | 218 | REPLY TO RESPONSE to by Zackary Ellis Sanders re 199 Response in Opposition (Attachments: # 1 Exhibit 1)(Voshell, Emily) (Entered: 01/14/2021) |
| | | |

**JA21**

| 01/14/2021 | 219 | NOTICE *of Request for Hearing on 170 Motion for Order to Show Cause* by USA as to Zackary Ellis Sanders (Clayman, William) (Entered: 01/14/2021) |
| --- | --- | --- |
| 01/14/2021 | 220 | REPLY TO RESPONSE to by Zackary Ellis Sanders re 198 Objection *to Jury Instructions* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Voshell, Emily) (Entered: 01/14/2021) |
| 01/15/2021 | 221 | Reply by USA as to Zackary Ellis Sanders re 202 Response to Motion *in Limine to Admit Certain Records* (Clayman, William) (Entered: 01/15/2021) |
| 01/15/2021 | 222 | Reply by USA as to Zackary Ellis Sanders re 203 Response in Opposition *to 162 Motion in Limine to Publish Certain Recordings to the Jury* (Clayman, William) (Entered: 01/15/2021) |
| 01/15/2021 | 223 | Reply by USA as to Zackary Ellis Sanders re 207 Response in Opposition *to 165 Motion in Limine to Introduce Certain Evidence Pursuant to Federal Rule of Evidence 404(b)* (Clayman, William) (Entered: 01/15/2021) |
| 01/15/2021 | 224 | Reply by USA as to Zackary Ellis Sanders re 209 Response in Opposition *163 Motion in Limine to Exclude and Limit Certain Arguments, Lines of Questioning, and Evidence at Trial* (Clayman, William) (Entered: 01/15/2021) |
| 01/18/2021 | 225 | NOTICE *of Supplemental Authority* by Zackary Ellis Sanders re 209 Response in Opposition (Attachments: # 1 Exhibit)(Jeffress, Jonathan) (Entered: 01/18/2021) |
| 01/19/2021 | 226 | *First Amended* WITNESS LIST by Zackary Ellis Sanders (Jeffress, Jonathan) (Entered: 01/19/2021) |
| 01/19/2021 | 227 | Sealed Order as to Zackary Ellis Sanders. Signed by District Judge T. S. Ellis, III on 01/19/2021. (c/s pursuant to order) (jlan) (Entered: 01/19/2021) |
| 01/19/2021 | 228 | **ORDERED** that the government's Motion for Order to Show Cause and to Seal 170 is **GRANTED IN PART** and **DENIED IN PART**. Signed by District Judge T. S. Ellis, III on 01/19/2021. (SEE ORDER FOR FURTHER DETAILS) (tran) (Entered: 01/19/2021) |
| 01/20/2021 | 229 | MOTION for Protective Order *Modification* by Zackary Ellis Sanders. (Attachments: # 1 Exhibit, # 2 Exhibit)(Jeffress, Jonathan) (Entered: 01/20/2021) |
| 01/20/2021 | 230 | Memorandum in Support by Zackary Ellis Sanders re 229 MOTION for Protective Order *Modification* (Jeffress, Jonathan) (Entered: 01/20/2021) |
| 01/20/2021 | 231 | MOTION to Seal *Motion to Modify Protective Order and Memorandum in Support Thereof* by Zackary Ellis Sanders. (Jeffress, Jonathan) (Entered: 01/20/2021) |
| 01/21/2021 | 232 | NOTICE *of Correction* by Zackary Ellis Sanders re 216 Reply to Response (Jeffress, Jonathan) (Entered: 01/21/2021) |
| 01/21/2021 | 233 | ORDER granting 231 Motion to Seal as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 01/21/2021. (jlan) (Entered: 01/21/2021) |
| 01/21/2021 | 234 | Sealed Document in re 229 MOTION for Protective Order filed by Zackary Ellis Sanders. (jlan) (Entered: 01/21/2021) |
| 01/22/2021 | 235 | RESPONSE to Motion by USA as to Zackary Ellis Sanders re 213 MOTION for Leave to File *Motion to Suppress Statements* MOTION to Suppress (Clayman, William) (Entered: 01/22/2021) |
| 01/26/2021 | 236 | SEALED ORDER re 135 MOTION to Compel *or in the Alternative for In Camera* |

| | | |
|---|---|---|
| | | *Inspection* as to Zackary Ellis Sanders. Signed by District Judge T. S. Ellis, III on 1/26/2021. (dest, )(c/s) (Entered: 01/26/2021) |
| 01/26/2021 | 237 | REDACTED ORDER denying 135 Motion to Compel *or in the Alternative for In Camera Inspection* as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 1/26/2021. (dest, ) (Entered: 01/26/2021) |
| 01/26/2021 | 238 | Supplemental Memorandum by Zackary Ellis Sanders re 137 Sealed Motion (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Jeffress, Jonathan) (Entered: 01/26/2021) |
| 01/26/2021 | 239 | MOTION to Seal *Supplement to Motion to Compel or for In Camera Inspection* by Zackary Ellis Sanders. (Jeffress, Jonathan) (Entered: 01/26/2021) |
| 01/26/2021 | 240 | ORDERED that defendant's motion to seal (Dkt. 239) is GRANTED insofar as the portions of defendant's Supplement to his Motion to Compel that refer to or disclose matters that are protected by the Protective Order in this case (Dkt. 28) shall be FILED UNDER SEAL as to Zackary Ellis Sanders. Signed by District Judge T. S. Ellis, III on 01/26/2021. (jlan) (Entered: 01/26/2021) |
| 01/27/2021 | 241 | Sealed Supplement to 135 MOTION to Compel *or in the Alternative for In Camera Inspection* filed by Zackary Ellis Sanders (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(dest, ) (Entered: 01/27/2021) |
| 01/29/2021 | 242 | Sealed Document (lber) (Entered: 01/29/2021) |
| 01/29/2021 | 243 | REPLY TO RESPONSE to by Zackary Ellis Sanders re 235 Response to Motion (Voshell, Emily) (Entered: 01/29/2021) |
| 02/03/2021 | 244 | RESPONSE in Opposition by USA as to Zackary Ellis Sanders re 229 MOTION for Protective Order *Modification* (Clayman, William) (Entered: 02/03/2021) |
| 02/04/2021 | 245 | ORDERED that defendant's Renewed Motion for Leave for this Court to Consider His Motion to Suppress Statements as Timely Filed Dkt. 213 is **DENIED** as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 2/4/2021. (See Order for further details) (dest, )(copy sent as directed) (Entered: 02/04/2021) |
| 02/08/2021 | 246 | NOTICE OF ATTORNEY APPEARANCE: Nina J. Ginsberg appearing for Zackary Ellis Sanders (Ginsberg, Nina) (Entered: 02/08/2021) |
| 02/08/2021 | 247 | NOTICE OF ATTORNEY APPEARANCE: Zachary Andrew Deubler appearing for Zackary Ellis Sanders (Deubler, Zachary) (Entered: 02/08/2021) |
| 02/08/2021 | 248 | Reply by Zackary Ellis Sanders re 244 Response in Opposition (Jeffress, Jonathan) (Entered: 02/08/2021) |
| 02/08/2021 | 249 | MOTION to Seal *Reply re: Motion to Modify Protective Order* by Zackary Ellis Sanders. (Jeffress, Jonathan) (Entered: 02/08/2021) |
| 02/09/2021 | 250 | Sealed Reply in Opposition by Zackary Ellis Sanders re 244 Response in Opposition filed by USA (dest, ) (Entered: 02/09/2021) |
| 02/09/2021 | 251 | ORDER re 249 MOTION to Seal Reply *re: Motion to Modify Protective Order* as to Zackary Ellis Sanders (1). **ORDERED** that defendant's motion to seal (Dkt. 249) is **GRANTED** insofar as the portions of defendant's Reply to Government Opposition to Motion to Modify Protective Order that refer to or disclose matters that are protected by the Protective Order in this case (Dkt. 28) shall be **FILED UNDER SEAL**. Signed by District Judge T. S. Ellis, III on 2/9/2021. (see Order for further details) (dest, ) (Entered: 02/09/2021) |

**JA23**

| 02/10/2021 | 252 | Sealed Memorandum in Support 81 MOTION to Suppress *Due to Lack of Probable Cause (Motion to Suppress No. 1)* filed by Zackary Ellis Sanders (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(dest, ) (Entered: 02/11/2021) |
|---|---|---|
| 02/10/2021 | 253 | Sealed Memorandum in Support 85 MOTION to Suppress *Based on False and Misleading Material Information in Affidavit Paragraph 23 (Motion to Suppress No. 2)* filed by Zackary Ellis Sanders (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 6, # 6 Exhibit 7, # 7 Exhibit 8, # 8 Exhibit 9, # 9 Exhibit 10, # 10 Exhibit 11, # 11 Exhibit 12, # 12 Exhibit 13)(dest, )(**Exhibit 5 not submitted**) (Entered: 02/11/2021) |
| 02/10/2021 | 254 | Sealed Memorandum in Support 90 MOTION to Suppress *Based on False and Misleading Material Information in Affidavit Paragraph 25 (Motion to Suppress No. 4)* filed by Zackary Ellis Sanders (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11- Part 1, # 12 Exhibit 11- Part 2, # 13 Exhibit 12)(dest, ) (Entered: 02/11/2021) |
| 02/10/2021 | 255 | Sealed Memorandum in Support 88 MOTION to Compel *Discovery (Renewed) or in the Alternative Motion for Reconsideration of Court's Order Denying Motion to Compel Discovery* filed by Zackary Ellis Sanders (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 11, # 7 Exhibit 14, # 8 Exhibit 20)(dest, ) (Entered: 02/11/2021) |
| 02/12/2021 | 256 | Sealed Memorandum in Support 83 MOTION to Suppress *Based on Materially Misleading Statements and Omissions Regarding TOR, The Target Website, and the Subject Premises* filed by Zackary Ellis Sanders (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10)(dest, ) (Entered: 02/12/2021) |
| 02/16/2021 | 257 | ORDER denying 229 Motion for Protective Order (see order for further details) as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 02/16/2021. (jlan) (Entered: 02/16/2021) |
| 03/23/2021 | 258 | MOTION *to File Redacted Versions of Transcripts and Exhibits on the Public Docket* by Zackary Ellis Sanders. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit)(Jeffress, Jonathan) (Entered: 03/23/2021) |
| 03/24/2021 | 259 | MOTION to Continue *Trial* by Zackary Ellis Sanders. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit)(Jeffress, Jonathan) (Entered: 03/24/2021) |
| 03/24/2021 | 260 | Memorandum in Support by Zackary Ellis Sanders re 259 MOTION to Continue *Trial* (Jeffress, Jonathan) (Entered: 03/24/2021) |
| 03/24/2021 | 261 | MOTION to Seal *Partially Motion to Continue Trial* by Zackary Ellis Sanders. (Attachments: # 1 Exhibit)(Jeffress, Jonathan) (Entered: 03/24/2021) |
| 03/24/2021 | | Notice of Correction re 261 MOTION to Seal *Partially Motion to Continue Trial*. Unfortunately, document number 261 contains more than one pleading. The filing user has been notified to file the document again separately as a Memorandum in Support. (dest, ) (Entered: 03/24/2021) |
| 03/24/2021 | 262 | MOTION to Partially Seal Memorandum in Support of Motion to Continue Trial by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Ginsberg, Nina) (Entered: |

**JA24**

| | | 03/24/2021) |
|---|---|---|
| 03/24/2021 | 263 | Memorandum in Support by Zackary Ellis Sanders re 262 MOTION to Partially Seal Memorandum in Support of Motion to Continue Trial *(Corrected)* (Ginsberg, Nina) (Entered: 03/24/2021) |
| 03/24/2021 | 264 | MOTION to Continue Trial, and Waiver of Speedy Trial Rights *(Corrected)* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Ginsberg, Nina) (Entered: 03/24/2021) |
| 03/24/2021 | 265 | Memorandum in Support by Zackary Ellis Sanders re 264 MOTION to Continue Trial, and Waiver of Speedy Trial Rights *(Corrected) (Corrected)* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 2A, # 4 Exhibit 3, # 5 Exhibit 3A)(Ginsberg, Nina) (Entered: 03/24/2021) |
| 03/24/2021 | 266 | Notice of Hearing Date set for April 9, 2021 re 264 MOTION to Continue Trial, and Waiver of Speedy Trial Rights *(Corrected)* (Ginsberg, Nina) (Entered: 03/24/2021) |
| 03/24/2021 | 267 | **ORDERED** that the hearing on defendant's Motion to Continue Trial 265 is **RESCHEDULED** for **Friday, April 2, 2021 at 11:00 a.m.** It is further **ORDERED** that the government shall file any opposition to defendant's motion by **Wednesday, March 31 at 5:00 p.m.** Signed by District Judge T. S. Ellis, III on 03/24/2021. (tran) (Entered: 03/24/2021) |
| 03/24/2021 | | Set Hearing re Motion in case as to Zackary Ellis Sanders 264 MOTION to Continue Trial, and Waiver of Speedy Trial Rights *(Corrected)*. **Motion Hearing set for 4/2/2021 at 11:00 AM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (tran) (Entered: 03/24/2021) |
| 03/24/2021 | 268 | Notice of Hearing Date set for April 9, 2021 @ 10:00 a.m. re 207 Response in Opposition, 153 MOTION in Limine *in Opposition to the Governments Amended Notice of Intent to Present Evidence Under Federal Rule of Evidence 414*, 211 Response, 225 Notice (Other), 210 Response, 209 Response in Opposition, 202 Response to Motion, 155 MOTION in Limine *to Exclude Chat Transcripts and Related Testimony from Non-Testifying Persons*, 166 Proposed Jury Instructions, 203 Response in Opposition, 160 MOTION in Limine *to Preclude Lay Opinion Testimony About Forensic Examinations*, 157 Proposed Voir Dire (Ginsberg, Nina) (Entered: 03/24/2021) |
| 03/24/2021 | 269 | ORDERED that defendant's motion to seal partially (Dkt. 262) is GRANTED insofar as the portion of defendant's Memorandum in Support of his Corrected Motion to Continue Trial (Dkt. 265) that contains private medical information shall be FILED UNDER SEAL as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 03/24/2021. (jlan) (Entered: 03/24/2021) |
| 03/24/2021 | 270 | Sealed Memorandum in Support *(Corrected)* re 264 MOTION to Continue Trial, and Waiver of Speedy Trial Rights *(Corrected)* filed by Zackary Ellis Sanders (dest) (Entered: 03/25/2021) |
| 03/24/2021 | 271 | SEALED EXHIBITS A through G re 258 MOTION *to File Redacted Versions of Transcripts and Exhibits on the Public Docket* filed by Zackary Ellis Sanders. (Attachments: # 1 Exhibit B, # 2 Exhibit C, # 3 Exhibit D- Part 1, # 4 Exhibit D- Part 2, # 5 Exhibit E- Part 1, # 6 Exhibit E- Part 2, # 7 Exhibit F- Part 1, # 8 Exhibit F- Part 2, # 9 Exhibit F- Part 3, # 10 Exhibit G)(dest ) (Entered: 03/25/2021) |
| 03/25/2021 | | Set Deadlines re Motion or Report and Recommendation in case as to Zackary Ellis Sanders 160 MOTION in Limine *to Preclude Lay Opinion Testimony About Forensic* |

| | | |
|---|---|---|
| | | *Examinations*, 153 MOTION in Limine *in Opposition to the Governments Amended Notice of Intent to Present Evidence Under Federal Rule of Evidence 414*, 155 MOTION in Limine *to Exclude Chat Transcripts and Related Testimony from Non-Testifying Persons*. Motion Hearing set for 4/9/2021 at 10:00 AM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (clar, ) (Entered: 03/25/2021) |
| 03/31/2021 | 272 | RESPONSE to Motion by USA as to Zackary Ellis Sanders re 264 MOTION to Continue Trial, and Waiver of Speedy Trial Rights *(Corrected)* (Clayman, William) (Entered: 03/31/2021) |
| 03/31/2021 | 273 | MOTION to Seal *Supplement to Corrected Motion to Continue Trial and Waiver of Speedy Trial Rights* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order) (Ginsberg, Nina) (Entered: 03/31/2021) |
| 03/31/2021 | 274 | Memorandum in Support by Zackary Ellis Sanders re 273 MOTION to Seal *Supplement to Corrected Motion to Continue Trial and Waiver of Speedy Trial Rights* (Ginsberg, Nina) (Entered: 03/31/2021) |
| 04/01/2021 | 275 | SEALED Supplement to Corrected Motion *to Continue Trial and Waiver of Speedy Trial Rights* filed by Zackary Ellis Sanders. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (dest, ) (Entered: 04/01/2021) |
| 04/01/2021 | 276 | MOTION to Seal *Defendant's Second Supplement to Corrected Motion to Continue Trial and Waiver of Speedy Trial Rights* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Ginsberg, Nina) (Entered: 04/01/2021) |
| 04/01/2021 | 277 | Memorandum in Support by Zackary Ellis Sanders re 276 MOTION to Seal *Defendant's Second Supplement to Corrected Motion to Continue Trial and Waiver of Speedy Trial Rights* (Ginsberg, Nina) (Entered: 04/01/2021) |
| 04/01/2021 | 278 | MOTION to Seal by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order) (Jeffress, Jonathan) (Entered: 04/01/2021) |
| 04/01/2021 | 279 | Memorandum in Support by Zackary Ellis Sanders re 278 MOTION to Seal (Jeffress, Jonathan) (Entered: 04/01/2021) |
| 04/01/2021 | 280 | ORDER granting 276 Motion to Seal *Defendant's Second Supplement to Corrected Motion to Continue Trial and Waiver of Speedy Trial Rights* as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 4/1/2021. (see Order for further details) (dest, ) (Entered: 04/02/2021) |
| 04/01/2021 | 281 | ORDER granting 273 Motion to Seal *Supplement to Corrected Motion to Continue Trial and Waiver of Speedy Trial Rights* as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 4/1/2021. (see Order for further details) (dest, ) (Entered: 04/02/2021) |
| 04/02/2021 | 282 | Sealed Second Supplement *to Corrected Motion to Continue Trial and Waiver of Speedy Trial Rights* filed by Zackary Ellis Sanders (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(dest ) (Entered: 04/02/2021) |
| 04/02/2021 | 283 | Sealed Motion for an Order by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(dest, ) (Entered: 04/02/2021) |
| 04/02/2021 | 284 | Sealed Memorandum in Support 283 Sealed Motion for an Order filed by Zackary Ellis Sanders (Attachments: # 1 Exhibit 1)(dest, ) (Entered: 04/02/2021) |
| 04/02/2021 | 285 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Motion Hearing as to Zackary Ellis Sanders held on 4/2/2021 re 264 MOTION to Continue |

|  |  | Trial, and Waiver of Speedy Trial Rights *(Corrected)* filed by Zackary Ellis Sanders. USA appeared through Jay Prabhu and William Clayman. Defendant appeared with counsels, Nina Ginsburg, Jonathan Jeffress and Jade Chong-Smith. Matter argued. Motion [264](#) -GRANTED and DENIED in all other respects. **Jury Trial reset for 7/12/2021 at 10:00 AM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. Court to issue an order that facilitates defendant's treatment. Order to follow. Defendant remanded. Court Reporter: P. Kaneshiro-Miller (tran) (Entered: 04/02/2021) |
|---|---|---|
| 04/02/2021 | 286 | Sealed Order as to Zackary Ellis Sanders. Signed by District Judge T. S. Ellis, III on 04/02/2021. (tran, c/m on 04/02/21) (Entered: 04/02/2021) |
| 04/02/2021 | 287 | **ORDERED** that defendant's unopposed Motion to Continue Trial [264](#) is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted insofar as the trial date in this matter is **CONTINUED** from Monday, April 26, 2021 at 9:00 a.m. to July 12, 2021, at 10:00 a.m. It is further **ORDERED** that the period of delay resulting from the Court's continuance upon the unopposed motion-the period from April 26, 2021 to July 12, 2021-shall be excluded in computing the time within which the trial must commence under the Speedy Trial Act. Signed by District Judge T. S. Ellis, III on 04/02/2021. (tran) (Entered: 04/02/2021) |
| 04/02/2021 | 288 | ORDER granting [278](#) Motion to Seal as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 4/2/2021. (see Order for details) (dest, ) (Entered: 04/05/2021) |
| 04/05/2021 | 289 | Consent MOTION to Continue *Pretrial Conference and Motions Hearing* by Zackary Ellis Sanders. (Attachments: # [1](#) Proposed Order)(Ginsberg, Nina) (Entered: 04/05/2021) |
| 04/05/2021 | 290 | Memorandum in Support by Zackary Ellis Sanders re [289](#) Consent MOTION to Continue *Pretrial Conference and Motions Hearing* (Ginsberg, Nina) (Entered: 04/05/2021) |
| 04/05/2021 | 291 | Consent MOTION for Extension of Time to File Response/Reply as to [258](#) MOTION *to File Redacted Versions of Transcripts and Exhibits on the Public Docket* by USA as to Zackary Ellis Sanders. (Attachments: # [1](#) Proposed Order)(Clayman, William) (Entered: 04/05/2021) |
| 04/05/2021 | 292 | **ORDERED** that defendant's Consent Motion is **GRANTED**. The pretrial conference and motions hearing in this matter is **CONTINUED** from April 9, 2021 at 10:00 a.m. to May 7, 2021 at 10:00 a.m. Signed by District Judge T. S. Ellis, III on 04/05/2021. (tran) (Entered: 04/06/2021) |
| 04/06/2021 |  | Reset Hearings as to Zackary Ellis Sanders: Pretrial Conference and Motions in case as to Zackary Ellis Sanders [160](#) MOTION in Limine *to Preclude Lay Opinion Testimony About Forensic Examinations*, [153](#) MOTION in Limine *in Opposition to the Governments Amended Notice of Intent to Present Evidence Under Federal Rule of Evidence 414*, [155](#) MOTION in Limine *to Exclude Chat Transcripts and Related Testimony from Non-Testifying Persons*. **Pretrial Conference & Motion Hearing reset for 5/7/2021 at 10:00 AM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (tran) (Entered: 04/06/2021) |
| 04/06/2021 | 293 | ORDERED that the government shall file its response to the defendant's motion to file |

| | | |
|---|---|---|
| | | redacted versions of transcripts and exhibits on the public docket Dkt. No. 258 on or before April 20, 2021. Signed by District Judge T. S. Ellis, III on 4/6/2021. (dest, ) (Entered: 04/06/2021) |
| 04/20/2021 | 294 | RESPONSE to Motion by USA as to Zackary Ellis Sanders re 258 MOTION *to File Redacted Versions of Transcripts and Exhibits on the Public Docket* (Clayman, William) (Entered: 04/20/2021) |
| 04/20/2021 | 295 | MOTION to Seal *Exhibits to 294 Government's Response to Defendant's Motion* by USA as to Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Clayman, William) (Entered: 04/20/2021) |
| 04/21/2021 | 296 | ORDER granting 295 MOTION to Seal *Exhibits* as to Zackary Ellis Sanders (1). ORDERED that exhibits 1 through 6 to the government's response to the defendant's motion to file redacted versions of transcripts and exhibits shall be FILED UNDER SEAL until further Order of the Court. Signed by District Judge T. S. Ellis, III on 4/21/2021. (dest, ) (Entered: 04/21/2021) |
| 04/21/2021 | 297 | Sealed Exhibits *1 through 6* re 294 Response to Motion filed by USA (Attachments: # 1 Exhibit 2, # 2 Exhibit 3, # 3 Exhibit 4, # 4 Exhibit 5, # 5 Exhibit 6)(dest) (Entered: 04/21/2021) |
| 04/21/2021 | 298 | NOTICE OF ATTORNEY APPEARANCE Seth Schlessinger appearing for USA. (Schlessinger, Seth) (Entered: 04/21/2021) |
| 04/26/2021 | 299 | MOTION for Leave to File *Rule 12.2(B) Notice of Expert Evidence of a Mental Condition Bearing on Lack of Guilt* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order, # 2 Exhibit 1)(Ginsberg, Nina) (Entered: 04/26/2021) |
| 04/26/2021 | 300 | MOTION to Seal *Defendants Memorandum in Support of his Motion for Leave to File 12.2(B) Notice of Expert Evidence of a Mental Condition Bearing on Lack of Guilt* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Ginsberg, Nina) (Entered: 04/26/2021) |
| 04/26/2021 | 301 | Memorandum in Support by Zackary Ellis Sanders re 300 MOTION to Seal *Defendants Memorandum in Support of his Motion for Leave to File 12.2(B) Notice of Expert Evidence of a Mental Condition Bearing on Lack of Guilt* (Ginsberg, Nina) (Entered: 04/26/2021) |
| 04/26/2021 | 302 | MOTION *for Entry of Order and to Modify Protective Order* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Jeffress, Jonathan) (Entered: 04/26/2021) |
| 04/26/2021 | 303 | Memorandum in Support by Zackary Ellis Sanders re 302 MOTION *for Entry of Order and to Modify Protective Order* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit)(Jeffress, Jonathan) (Entered: 04/26/2021) |
| 04/26/2021 | 304 | Notice of Hearing Date *May 7, 2021 at 10:00 am* re 303 Memorandum in Support of Motion, 302 MOTION *for Entry of Order and to Modify Protective Order* (Jeffress, Jonathan) (Entered: 04/26/2021) |
| 04/27/2021 | | Set Deadlines re Motion or Report and Recommendation in case as to Zackary Ellis Sanders 302 MOTION *for Entry of Order and to Modify Protective Order*. Motion Hearing set for 5/7/2021 at 10:00 AM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (clar, ) (Entered: 04/27/2021) |
| 04/27/2021 | 305 | Sealed Memorandum in Support of Defendant's 299 MOTION for Leave to File *Rule 12.2(B) Notice of Expert Evidence of a Mental Condition Bearing on Lack of Guilt* |

JA28

| | | filed by Zackary Ellis Sanders (kgall) (Entered: 04/27/2021) |
|---|---|---|
| 04/30/2021 | 306 | Sealed Order signed by Theresa Carroll Buchanan on 4/30/2021. (kgall) (Entered: 04/30/2021) |
| 04/30/2021 | 307 | ORDERED that the Final Pretrial Conference and Motion Hearing is RESCHEDULED to May 7, 2021 at 2:00pm. Signed by District Judge T. S. Ellis, III on 4/30/2021. (kgall) (Entered: 04/30/2021) |
| 04/30/2021 | | Reset Hearing in re 302 Motion in case as to Zackary Ellis Sanders: Motion Hearing set for 5/7/2021 at 02:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. Final Pretrial Conference set for 5/7/2021 at 02:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (kgall) (Entered: 04/30/2021) |
| 05/04/2021 | 308 | RESPONSE in Opposition by USA as to Zackary Ellis Sanders re 302 MOTION *for Entry of Order and to Modify Protective Order* (Attachments: # 1 Exhibit 1)(Clayman, William) (Entered: 05/04/2021) |
| 05/05/2021 | 309 | REPLY TO RESPONSE to by Zackary Ellis Sanders re 294 MOTION *for Entry of Order and to Modify Protective Order* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit)(Jeffress, Jonathan) (Entered: 05/05/2021) |
| 05/05/2021 | 310 | MOTION to Seal *Reply in Support of Defendant's Motion to File Redacted Versions of Transcripts and Exhibits on the Public Record* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Jeffress, Jonathan) (Entered: 05/05/2021) |
| 05/05/2021 | 311 | Memorandum in Support by Zackary Ellis Sanders re 310 MOTION to Seal *Reply in Support of Defendant's Motion to File Redacted Versions of Transcripts and Exhibits on the Public Record* (Jeffress, Jonathan) (Entered: 05/05/2021) |
| 05/05/2021 | 312 | RESPONSE to Motion by USA as to Zackary Ellis Sanders re 299 MOTION for Leave to File *Rule 12.2(B) Notice of Expert Evidence of a Mental Condition Bearing on Lack of Guilt* (Attachments: # 1 Exhibit)(Clayman, William) (Entered: 05/05/2021) |
| 05/05/2021 | 313 | MOTION to Seal *312 Government's Response to Defendant's Motion for Leave to File Rule 12.2(B) Notice* by USA as to Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Clayman, William) (Entered: 05/05/2021) |
| 05/06/2021 | 314 | Sealed Response. (Attachments: # 1 Exhibit 1) (lber) (Entered: 05/06/2021) |
| 05/06/2021 | 315 | MOTION to Compel *Production of Warrant* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Jeffress, Jonathan) Modified on 5/7/2021 (dest, ). (Entered: 05/06/2021) |
| 05/06/2021 | 316 | Memorandum in Support by Zackary Ellis Sanders re 315 MOTION to Compel *Production of Warrant* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit)(Jeffress, Jonathan) (Entered: 05/06/2021) |
| 05/06/2021 | 317 | Notice of Hearing Date set for May 28, 2021 re 316 Memorandum in Support of Motion, 315 MOTION to Compel *Production of Warrant* (Jeffress, Jonathan) (Entered: 05/06/2021) |
| 05/06/2021 | 318 | MOTION to Seal *Supplement to Mr. Zackary Ellis Sanders Proposed Voir Dire* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Ginsberg, Nina) (Entered: 05/06/2021) |
| 05/06/2021 | 319 | Memorandum in Support by Zackary Ellis Sanders re 318 MOTION to Seal *Supplement to Mr. Zackary Ellis Sanders Proposed Voir Dire* (Ginsberg, Nina) |

| | | (Entered: 05/06/2021) |
|---|---|---|
| 05/06/2021 | 320 | Consent MOTION to Seal re 316 Memorandum in Support of Motion *to Compel, or, in the alternative, to Submit Material for in camera Inspection* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Ginsberg, Nina) (Entered: 05/06/2021) |
| 05/06/2021 | 321 | Sealed Document (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7)(kgall) (Entered: 05/06/2021) |
| 05/06/2021 | 322 | MOTION to Seal *Supplement to Motions In Limine (ECF Nos. 153 and 207) and Motion To Suppress Statements (ECF No. 149), and accompanying Exhibit* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Ginsberg, Nina) (Entered: 05/06/2021) |
| 05/06/2021 | 323 | Memorandum in Support by Zackary Ellis Sanders re 322 MOTION to Seal *Supplement to Motions In Limine (ECF Nos. 153 and 207) and Motion To Suppress Statements (ECF No. 149), and accompanying Exhibit* (Ginsberg, Nina) (Entered: 05/06/2021) |
| 05/06/2021 | 324 | Order in re 310 Motion to Seal. The Court FINDS and ORDERS that less drastic alternatives to sealing portions of the Reply and the entirety of exhibits is not feasible and, therefore, orders portions of Defendant's Reply and the entirety of exhibits be filed under seal and remain under seal until further order ofthis Court. Signed by District Judge T. S. Ellis, III on 5/6/2021. (kgall) (Entered: 05/06/2021) |
| 05/06/2021 | 325 | ORDER in 318 Motion to Seal. The Court FINDS and ORDERS that less drastic alternatives to sealing the Motion is not feasible and, therefore, orders Defendant's Motion be filed under seal and remain under seal until further order of this Court. Signed by District Judge T. S. Ellis, III on 5/5/2021. (kgall) (Entered: 05/06/2021) |
| 05/06/2021 | 326 | ORDER granting 313 Motion to Seal as to Zackary Ellis Sanders (1). ORDERED that the government's response to the defendant's motion for leave to file rule 12.2(b) notice and exhibit 1 attached to that response be sealed until further order of the Court. Signed by District Judge T. S. Ellis, III on 5/6/2021. (kgall) (Entered: 05/06/2021) |
| 05/06/2021 | 327 | MOTION to Seal re 209 Response in Opposition by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Ginsberg, Nina) (Entered: 05/06/2021) |
| 05/06/2021 | 328 | Memorandum in Support by Zackary Ellis Sanders re 327 MOTION to Seal re 209 Response in Opposition (Ginsberg, Nina) (Entered: 05/06/2021) |
| 05/06/2021 | 329 | NOTICE *of Supplement* by Zackary Ellis Sanders re 299 MOTION for Leave to File *Rule 12.2(B) Notice of Expert Evidence of a Mental Condition Bearing on Lack of Guilt* (Attachments: # 1 Exhibit 1 filed under seal, # 2 Exhibit 2)(Ginsberg, Nina) (Entered: 05/06/2021) |
| 05/06/2021 | 330 | MOTION to Seal re 329 Notice (Other), by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Ginsberg, Nina) (Entered: 05/06/2021) |
| 05/06/2021 | 331 | Memorandum by Zackary Ellis Sanders re 329 Notice (Other), (Ginsberg, Nina) (Entered: 05/06/2021) |
| 05/06/2021 | 332 | Reply to Motion by Zackary Ellis Sanders re 302 MOTION *for Entry of Order and to Modify Protective Order* (Attachments: # 1 Exhibit 1)(Ginsberg, Nina) (Entered: 05/06/2021) |
| 05/07/2021 | 333 | ORDER granting 320 Consent MOTION to Seal as to Zackary Ellis Sanders (1). Defendant may file under seal portions of his Memorandum in Support of Motion to |

| | | |
|---|---|---|
| | | Motion to Compel, and accompanying exhibits. Signed by District Judge T. S. Ellis, III on 5/6/2021. (kgall) Modified on 5/7/2021 (dest ). (Entered: 05/07/2021) |
| 05/07/2021 | | Set Deadlines re Motion or Report and Recommendation in case as to Zackary Ellis Sanders 315 MOTION to Compel *Production of Warrant*. Motion Hearing set for 5/28/2021 at 09:00 AM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (clar, ) (Entered: 05/07/2021) |
| 05/07/2021 | 334 | SEALED SUPPLEMENT by Zackary Ellis Sanders re 209 Response in Opposition filed by Zackary Ellis Sanders (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(dest) (Entered: 05/07/2021) |
| 05/07/2021 | 335 | Sealed Memorandum in Support 315 MOTION to Compel *Production of Warrant* filed by Zackary Ellis Sanders (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6)(dest ) (Entered: 05/07/2021) |
| 05/07/2021 | 336 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Pretrial Conference and Motion Hearing as to Zackary Ellis Sanders held on 5/7/2021 re 153 MOTION in Limine *in Opposition to the Governments Amended Notice of Intent to Present Evidence Under Federal Rule of Evidence 414* filed by Zackary Ellis Sanders, 164 MOTION in Limine *to Admit Certain Records* filed by USA, 163 MOTION in Limine *to Exclude and Limit Certain Arguments, Lines of Questioning, and Evidence at Trial* filed by USA, 162 MOTION in Limine *to Publish Certain Recordings to the Jury* filed by USA, 299 MOTION for Leave to File *Rule 12.2(B) Notice of Expert Evidence of a Mental Condition Bearing on Lack of Guilt* filed by Zackary Ellis Sanders, 258 MOTION *to File Redacted Versions of Transcripts and Exhibits on the Public Docket* filed by Zackary Ellis Sanders, 302 MOTION *for Entry of Order and to Modify Protective Order* filed by Zackary Ellis Sanders, 155 MOTION in Limine *to Exclude Chat Transcripts and Related Testimony from Non-Testifying Persons* filed by Zackary Ellis Sanders, 160 MOTION in Limine *to Preclude Lay Opinion Testimony About Forensic Examinations* filed by Zackary Ellis Sanders, 165 MOTION in Limine *to Introduce Certain Evidence Pursuant to Federal Rule of Evidence 404(b)* filed by USA. <br> USA appeared through William Clayman, Jay Prabhu and Seth Schlessinger. Defendant appeared with counsels, Nina Ginsburg, Jade Chong-Smith and Jonathan Jeffress. <br> Matter argued. [ 163 ], [ 164 ] -Granted. [ 153 ] -Granted in Part and Denied in Part. [ 155 ], [ 160 ], [ 302 ] - Denied. [ 299 ] - Denied Without Prejudice with leave to renew. [ 258 ] will not be addressed at this time. Order to follow. **Status Conference set for 5/21/2021 at 09:00 AM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. Jury Trial remain set for Monday, July 12, 2021 at 10:00 a.m. Defendant remanded. <br> Court Reporter: T. Harris <br> (tran) (Entered: 05/07/2021) |
| 05/07/2021 | 339 | ORDER granting 327 Motion to Seal as to Zackary Ellis Sanders (1). See Order for details. Signed by District Judge T. S. Ellis, III on 5/7/2021. (kgall) (Entered: 05/10/2021) |
| 05/07/2021 | 340 | ORDER granting 330 Motion to Seal as to Zackary Ellis Sanders (1). See Order for details. Signed by District Judge T. S. Ellis, III on 5/7/2021. (kgall) (Entered: 05/10/2021) |
| 05/07/2021 | 341 | ORDER granting 322 Motion to Seal *Supplement to Motions In Limine (ECF Nos. 153 and 207) and Motion To Suppress Statements (ECF No. 149), and accompanying* |

**JA31**

| | | |
|---|---|---|
| | | *Exhibit* as to Zackary Ellis Sanders (1). See Order for detail. Signed by District Judge T. S. Ellis, III on 5/7/2021. (kgall) (Entered: 05/10/2021) |
| 05/07/2021 | 342 | ORDER granting 300 Motion to Seal Defendant's Memorandum in *Support of his Motion for Leave to File 12.2(B) Notice of Expert Evidence of a Mental Condition Bearing on Lack of Guilt* as to Zackary Ellis Sanders (1). See Order for details. Signed by District Judge T. S. Ellis, III on 5/7/2021. (kgall) (Entered: 05/10/2021) |
| 05/07/2021 | 343 | Sealed Exhibit 1 in re 299 MOTION for Leave to File *Rule 12.2(B) Notice of Expert Evidence of a Mental Condition Bearing on Lack of Guilt* filed by Zackary Ellis Sanders (kgall) (Entered: 05/10/2021) |
| 05/07/2021 | 344 | Sealed Supplement in re 207 Response in Opposition filed by Zackary Ellis Sanders, 153 MOTION in Limine *in Opposition to the Governments Amended Notice of Intent to Present Evidence Under Federal Rule of Evidence 414* filed by Zackary Ellis Sanders, 149 MOTION to Suppress *Statements* filed by Zackary Ellis Sanders (Attachments: # 1 Exhibit)(kgall) (Entered: 05/10/2021) |
| 05/07/2021 | 345 | Sealed Supplement in re 157 Proposed Voir Dire filed by Zackary Ellis Sanders (Attachments: # 1 Exhibit)(kgall) (Entered: 05/10/2021) |
| 05/10/2021 | 337 | Objection by Zackary Ellis Sanders *to Court's Rule 404 and 414 Ruling* (Jeffress, Jonathan) (Entered: 05/10/2021) |
| 05/10/2021 | 338 | Objection by Zackary Ellis Sanders re 336 Pretrial Conference,,,,,,,,, Motion Hearing,,,,,,,,, Set Hearings,,,,,,, */Notice of Objection to Ruling on Motion in Limine to Exclude Chat Transcripts and Related Testimony from Non-Testifying Persons* (Attachments: # 1 Exhibit Exhibit 1)(Ginsberg, Nina) (Entered: 05/10/2021) |
| 05/10/2021 | 346 | **ORDERED** that Defendant Zackary Sanders' Motion to Modify the Protective Order and for Entry of Discovery Order 302 is **DENIED**.<br>It is further **ORDERED** that the U.S. Marshal's Service is **DIRECTED** to schedule appointments with defense counsel for defense counsel to meet with Defendant Zackary Sanders in the U.S. Marshal's interview rooms of the courthouse in order to review discovery materials with defendant. The U.S. Marshal's Service is further **DIRECTED** to allow defense counsel to bring an iPad that is disconnected from the internet containing non-contraband digital discovery materials with them to the interview room.<br>It is further **ORDERED** that, if necessary, a status hearing will be held on **May 21, 2021 at 9:00 a.m.** to address any concerns about the adequacy of the arrangement once it is implemented. Signed by District Judge T. S. Ellis, III on 05/10/2021. (tran, c/m on 05/10/21) Modified on 5/10/2021 (tran, ). (Entered: 05/10/2021) |
| 05/10/2021 | 347 | Sealed Order as to Zackary Ellis Sanders. Signed by District Judge T. S. Ellis, III on 5/10/2021. (kgall) (C/S to counsel) (Entered: 05/11/2021) |
| 05/11/2021 | 348 | Motion to appear Pro Hac Vice by Mark John Mahoney and Certification of Local Counsel Nina Jean Ginsberg (Filing fee $ 75 receipt number AVAEDC-7782124.) by Zackary Ellis Sanders. (Ginsberg, Nina) (Entered: 05/11/2021) |
| 05/13/2021 | 349 | ORDER granting 348 Motion for Pro hac vice Appointed Mark John Mahoney for Zackary Ellis Sanders as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 05/12/2021. (clar, ) (Entered: 05/13/2021) |
| 05/14/2021 | 350 | RESPONSE in Opposition by USA as to Zackary Ellis Sanders re 315 MOTION to Compel *Production of Warrant* (Clayman, William) (Entered: 05/14/2021) |
| | | |

**JA32**

| 05/19/2021 | 351 | MOTION to Seal *Reply to Government's Opposition to Motion to Compel* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order Proposed Order to Seal Reply) (Jeffress, Jonathan) (Entered: 05/19/2021) |
| 05/19/2021 | 352 | Memorandum in Support by Zackary Ellis Sanders re 351 MOTION to Seal *Reply to Government's Opposition to Motion to Compel* (Jeffress, Jonathan) (Entered: 05/19/2021) |
| 05/19/2021 | 353 | Reply by Zackary Ellis Sanders re 350 Response in Opposition (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9)(Jeffress, Jonathan) (Entered: 05/19/2021) |
| 05/19/2021 | 354 | Sealed Document in re 351 MOTION to Seal *Reply to Government's Opposition to Motion to Compel* and 353 Reply, filed by Zackary Ellis Sanders (Attachments: # 1 Exhibit 1, # 2 Exhibit 9)(kgall) (Entered: 05/19/2021) |
| 05/20/2021 | 355 | Sealed Transcript of Proceeding before Judge Ellis on May 7, 2021. (aott) (Entered: 05/20/2021) |
| 05/20/2021 | 356 | STATUS REPORT by Zackary Ellis Sanders (Attachments: # 1 Exhibit 1 filed under seal)(Ginsberg, Nina) (Entered: 05/20/2021) |
| 05/20/2021 | 357 | MOTION to Seal *Exhibit 1 to Defendant's Status Update* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Ginsberg, Nina) (Entered: 05/20/2021) |
| 05/20/2021 | 358 | Memorandum in Support by Zackary Ellis Sanders re 357 MOTION to Seal *Exhibit 1 to Defendant's Status Update* (Ginsberg, Nina) (Entered: 05/20/2021) |
| 05/20/2021 | 359 | ORDER granting 164 Motion in Limine *in Limine to Admit Certain Records* as to Zackary Ellis Sanders. See Order for details. Signed by District Judge T. S. Ellis, III on 5/20/2021. (kgall) (Entered: 05/20/2021) |
| 05/20/2021 | 360 | ORDER denying 160 Motion in Limine *to Preclude Lay Opinion Testimony About Forensic Examinations* as to Zackary Ellis Sanders. See Order for details. Signed by District Judge T. S. Ellis, III on 5/20/2021. (kgall) (Entered: 05/20/2021) |
| 05/20/2021 | 361 | ORDER denying 155 Motion in Limine *to Exclude Chat Transcripts and Related Testimony from Non-Testifying Persons* as to Zackary Ellis Sanders. See Order for details. Signed by District Judge T. S. Ellis, III on 5/20/2021. (kgall) (Entered: 05/20/2021) |
| 05/20/2021 | 362 | ORDER granting 162 Motion in Limine *to Publish Certain Recordings to the Jury* as to Zackary Ellis Sanders. See Order for details. Signed by District Judge T. S. Ellis, III on 5/20/2021. (kgall) (Entered: 05/20/2021) |
| 05/20/2021 | 363 | Under Seal Order. Signed by District Judge T. S. Ellis, III on 5/20/2021. (kgall) (Entered: 05/20/2021) |
| 05/20/2021 | 364 | SEALED Order as to Zackary Ellis Sanders. Signed by District Judge T. S. Ellis, III on 05/20/2021. (tran, c/m on 05/20/21) (Entered: 05/20/2021) |
| 05/20/2021 | 365 | MOTION for Reconsideration re 302 MOTION *for Entry of Order and to Modify Protective Order* filed by Zackary Ellis Sanders by Zackary Ellis Sanders. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Jeffress, Jonathan) (Entered: 05/20/2021) |
| 05/20/2021 | 366 | ORDER granting 357 Motion to Seal *Exhibit 1 to Defendant's Status Update* as to Zackary Ellis Sanders. See Order for details. Signed by District Judge T. S. Ellis, III on 5/20/2021. (kgall) (Entered: 05/21/2021) |

| 05/21/2021 | 367 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Status Conference as to Zackary Ellis Sanders held on 5/21/2021.<br>USA appeared through William Clayman and Seth Schlessinger. Defendant appeared with counsels Nina Ginsburg, Jade Chong-Smith and Jonathan Jeffress.<br>Matter argued. Court rules defendant will be allowed to be given a device that is not connected to the internet with chats that do not include personal information such as school information etc. The defendant will not have the device overnight but instead will hand the device to the detention center personnel. The defendant can review the information by himself or with counsel. No other things other than the chats should be on the device.<br>Order to follow.<br>Defendant remanded.<br>Court Reporter: R. Stonestreet<br>(tran) Modified on 5/21/2021 (tran). (Entered: 05/21/2021) |
| 05/25/2021 | 368 | ORDER granting in part and denying in part 365 Motion for Reconsideration as to Zackary Ellis Sanders. See Order for details. Signed by District Judge T. S. Ellis, III on 5/24/2021. (kgall) (Entered: 05/25/2021) |
| 05/26/2021 | 369 | **ORDERED** that defendant's Motion to Compel 315 is **DENIED**. Signed by District Judge T. S. Ellis, III on 05/26/2021. (See Order for further details) (tran) (Entered: 05/26/2021) |
| 05/27/2021 | 370 | ORDER granting 351 Motion to Seal *Reply to Government's Opposition to Motion to Compel* as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 5/27/2021. (kgall) (Entered: 05/27/2021) |
| 05/28/2021 | 371 | MOTION *to Exclude Evidence at Trial or, in the Alternative, to Continue the Trial* by USA as to Zackary Ellis Sanders. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (Clayman, William) (Entered: 05/28/2021) |
| 05/28/2021 | 372 | MOTION to Seal *371 MOTION to Exclude Evidence at Trial or, in the Alternative, to Continue the Trial* by USA as to Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Clayman, William) (Entered: 05/28/2021) |
| 06/01/2021 | 373 | Sealed Documents in re 371 MOTION *to Exclude Evidence at Trial or, in the Alternative, to Continue the Trial* filed by USA (Attachments: # 1 Exhibit 2)(kgall) (Entered: 06/01/2021) |
| 06/01/2021 | 374 | ORDER granting 372 Motion to Seal as to Zackary Ellis Sanders. See Order for details. Signed by District Judge T. S. Ellis, III on 6/1/2021. (kgall) (Entered: 06/01/2021) |
| 06/01/2021 | 375 | Sealed Order re 371 MOTION *to Exclude Evidence at Trial or, in the Alternative, to Continue the Trial by USA as to Zackary Ellis Sanders.* Signed by District Judge T. S. Ellis, III on 6/1/2021. (dest)(c/s) (Entered: 06/01/2021) |
| 06/01/2021 | | Set Deadlines re Motion or Report and Recommendation in case as to Zackary Ellis Sanders 371 MOTION *to Exclude Evidence at Trial or, in the Alternative, to Continue the Trial*. Motion Hearing set for 6/11/2021 at 09:00 AM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (dest) (Entered: 06/01/2021) |
| 06/02/2021 | | Set Deadlines re Motion or Report and Recommendation in case as to Zackary Ellis Sanders 371 MOTION *to Exclude Evidence at Trial or, in the Alternative, to Continue the Trial*. Motion Hearing reset for 6/11/2021 at 11:00 AM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (dest) (Entered: 06/02/2021) |

**JA34**

| 06/04/2021 | 376 | MOTION for Protective Order by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Jeffress, Jonathan) (Entered: 06/04/2021) |
|---|---|---|
| 06/04/2021 | 377 | Memorandum in Support by Zackary Ellis Sanders re 376 MOTION for Protective Order (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Jeffress, Jonathan) (Entered: 06/04/2021) |
| 06/07/2021 | 378 | ORDER granting 376 Motion for Protective Order as to Zackary Ellis Sanders. See Order for details. Signed by District Judge T. S. Ellis, III on 6/7/2021. (kgall) (Entered: 06/07/2021) |
| 06/09/2021 | 379 | MOTION to Seal *Portions of Defendant's Opposition to Government's Motion to Exclude Evidence at Trial and Consent to Government's Motion to Continue Trial* by Zackary Ellis Sanders. (Ginsberg, Nina) (Entered: 06/09/2021) |
| 06/09/2021 | 380 | Memorandum in Support by Zackary Ellis Sanders re 379 MOTION to Seal *Portions of Defendant's Opposition to Government's Motion to Exclude Evidence at Trial and Consent to Government's Motion to Continue Trial* (Attachments: # 1 Proposed Order) (Ginsberg, Nina) (Entered: 06/09/2021) |
| 06/09/2021 | 381 | Opposition by Zackary Ellis Sanders re 371 MOTION *to Exclude Evidence at Trial or, in the Alternative, to Continue the Trial* (Jeffress, Jonathan) (Entered: 06/09/2021) |
| 06/10/2021 | 382 | Sealed Document in re 379 MOTION to Seal *Portions of Defendant's Opposition to Government's Motion to Exclude Evidence at Trial and Consent to Government's Motion to Continue Trial* filed by Zackary Ellis Sanders (kgall) (Entered: 06/10/2021) |
| 06/10/2021 | 383 | Reply by USA as to Zackary Ellis Sanders re 381 Opposition *to 371 Government's MOTION to Exclude Evidence at Trial or, in the Alternative, to Continue the Trial* (Clayman, William) (Entered: 06/10/2021) |
| 06/10/2021 | 384 | MOTION to Seal *383 Reply by USA* by USA as to Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Clayman, William) (Entered: 06/10/2021) |
| 06/10/2021 | 385 | Sealed Reply by USA in re 384 MOTION to Seal *383 Reply by USA* filed by USA (kgall) Modified on 6/11/2021 (dest, ). (Entered: 06/10/2021) |
| 06/10/2021 | 386 | ORDER granting 379 MOTION to Seal *Portions of Defendant's Opposition to Government's Motion to Exclude Evidence at Trial and Consent to Government's Motion to Continue Trial* as to Zackary Ellis Sanders (1). The Court FINDS and ORDERS that the defendant be allowed to file a redacted version of his opposition on the public docket, and that an unredacted versions shall be provided to the counsel of record for the Government and the Clerk of Court. Signed by District Judge T. S. Ellis, III on 6/10/2021. (dest) (Entered: 06/10/2021) |
| 06/10/2021 | 387 | ORDER granting 384 Motion to Seal as to Zackary Ellis Sanders (1). It is hereby ORDERED that the un-redacted version of the government's reply to the defendant's opposition to the government's motion to exclude evidence at trial or, in the alternative, to continue the trial, be sealed until further order of the Court. Signed by District Judge T. S. Ellis, III on 6/10/2021. (dest ) (Entered: 06/10/2021) |
| 06/10/2021 | 388 | MOTION to Seal *Memorandum in Support of Motion for an Order* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Jeffress, Jonathan) (Entered: 06/10/2021) |
| 06/10/2021 | 389 | Memorandum in Support by Zackary Ellis Sanders re 388 MOTION to Seal *Memorandum in Support of Motion for an Order* (Jeffress, Jonathan) (Entered: 06/10/2021) |

**JA35**

| 06/10/2021 | 390 | MOTION for Medical Treatment by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Jeffress, Jonathan) (Entered: 06/10/2021) |
| 06/10/2021 | 391 | Memorandum in Support by Zackary Ellis Sanders re 390 MOTION for Medical Treatment (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Jeffress, Jonathan) (Entered: 06/10/2021) |
| 06/11/2021 | 392 | MOTION to Seal *Portions of Response to Reply to Opposition to Government Motion* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Jeffress, Jonathan) (Entered: 06/11/2021) |
| 06/11/2021 | 393 | Memorandum in Support by Zackary Ellis Sanders re 392 MOTION to Seal *Portions of Response to Reply to Opposition to Government Motion* (Jeffress, Jonathan) (Entered: 06/11/2021) |
| 06/11/2021 | 394 | REPLY TO RESPONSE to by Zackary Ellis Sanders re 383 Reply (Jeffress, Jonathan) (Entered: 06/11/2021) |
| 06/11/2021 | 395 | MOTION to Seal *Document No. 394 (Response to Government's Reply to Defendant's Opposition)* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Ginsberg, Nina) (Entered: 06/11/2021) |
| 06/11/2021 | 396 | REPLY TO RESPONSE to by Zackary Ellis Sanders re 383 Reply (Ginsberg, Nina) (Entered: 06/11/2021) |
| 06/11/2021 | 397 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Sealed Minutes held on 6/11/2021.<br>Court Reporter: R. Stonestreet<br>(tran) (Entered: 06/11/2021) |
| 06/11/2021 | 398 | Sealed Order as to Zackary Ellis Sanders. Signed by District Judge T. S. Ellis, III on 06/11/2021. (tran, c/m on 06/11/21) (Entered: 06/11/2021) |
| 06/11/2021 | 399 | **ORDERED** that the May 24, 2021 Order and the Protective Order are **AMENDED** to allow defendant to review his chats with the alleged minor victims on a password-protected iPad furnished by defense counsel that is not and cannot be connected to the internet when defendant is in the law library. The iPad will be collected by ADC staff at all other times and will ultimately be returned to defense counsel. The chats on the iPad must be redacted to remove any of the alleged minor victims' identifying information. A separate device may be prepared for defendant to review non-chat discovery, which must be similarly redacted. Signed by District Judge T. S. Ellis, III on 06/11/2021. (tran, c/m on 06/11/21) (Entered: 06/11/2021) |
| 06/11/2021 | 400 | Under Sealed Memorandum in Support 390 MOTION for Medical Treatment filed by Zackary Ellis Sanders (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(dest) (Entered: 06/11/2021) |
| 06/11/2021 | 401 | Under Seal Response to 385 Sealed Reply filed by USA (dest ) (Entered: 06/11/2021) |
| 06/14/2021 | 402 | Sealed Order as to Zackary Ellis Sanders. Signed by District Judge T. S. Ellis, III on 06/14/2021. (tran, c/m on 06/14/21) (Entered: 06/14/2021) |
| 06/18/2021 | 403 | MOTION to Seal *Expert Report* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Jeffress, Jonathan) (Entered: 06/18/2021) |
| 06/18/2021 | 404 | Memorandum in Support by Zackary Ellis Sanders re 403 MOTION to Seal *Expert Report* (Attachments: # 1 Exhibit 1)(Jeffress, Jonathan) (Entered: 06/18/2021) |
| 06/18/2021 | 405 | NOTICE of Filing of Expert Report by Zackary Ellis Sanders (Attachments: # 1 |

| | | Exhibit 1)(Jeffress, Jonathan) (Entered: 06/18/2021) |
|---|---|---|
| 06/18/2021 | 406 | MOTION to Seal *Motion to Extend Briefing Schedule* by USA as to Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Schlessinger, Seth) (Entered: 06/18/2021) |
| 06/21/2021 | 407 | ORDER granting 403 Motion to Seal *Expert Report* as to Zackary Ellis Sanders. See Order for details. Signed by District Judge T. S. Ellis, III on 6/21/2021. (kgall) (Entered: 06/21/2021) |
| 06/21/2021 | 408 | Sealing ORDER granting 406 Motion to Seal *Motion to Extend Briefing Schedule* as to Zackary Ellis Sanders. Signed by District Judge T. S. Ellis, III on 6/21/2021. (kgall) (Entered: 06/21/2021) |
| 06/21/2021 | 409 | Under Seal Motion to Extend Briefing Schedule and Continue the Trial by USA as to Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(kgall) (Entered: 06/21/2021) |
| 06/21/2021 | 410 | MOTION to Seal *Portions of Memorandum* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Jeffress, Jonathan) (Entered: 06/21/2021) |
| 06/21/2021 | 411 | Memorandum in Support by Zackary Ellis Sanders re 410 MOTION to Seal *Portions of Memorandum* (Jeffress, Jonathan) (Entered: 06/21/2021) |
| 06/21/2021 | 412 | Memorandum by Zackary Ellis Sanders re 405 Notice (Other), 371 MOTION *to Exclude Evidence at Trial or, in the Alternative, to Continue the Trial* (Jeffress, Jonathan) (Entered: 06/21/2021) |
| 06/21/2021 | 413 | Sealed Document in re 410 MOTION to Seal *Portions of Memorandum* filed by Zackary Ellis Sanders (kgall) (Entered: 06/21/2021) |
| 06/21/2021 | 414 | Sealed Document in re 403 MOTION to Seal *Expert Report* filed by Zackary Ellis Sanders. (kgall) (Entered: 06/21/2021) |
| 06/21/2021 | 415 | ORDER granting 410 Motion to Seal *Portions of Memorandum* as to Zackary Ellis Sanders. See Order for details. Signed by District Judge T. S. Ellis, III on 6/21/2021. (kgall) (Entered: 06/22/2021) |
| 06/23/2021 | 416 | Subpoenas issued for trial on July 12, 2021 at 10 am. (kgall) (Entered: 06/23/2021) |
| 06/23/2021 | 417 | ORDERED that defendant's motions to seal 388 , 392 , 395 are GRANTED insofar as defendant's Memorandum in Support of his Motion for an Order Requiring Alexandria Adult Detention Center to Provide Medical Treatment Prescribed by Treating Neurologist shall be **FILED UNDER SEAL.** ORDERED that defendant is DIRECTED to file a properly redacted version of his Response to the government's Reply on the public docket. See Order for details. Signed by District Judge T. S. Ellis, III on 6/23/2021. (kgall) (Entered: 06/23/2021) |
| 06/23/2021 | 418 | Sealed Order as to Zackary Ellis Sanders. Signed by District Judge T. S. Ellis, III on 06/23/2021. (tran, c/m on 06/23/21) (Entered: 06/23/2021) |
| 06/23/2021 | | Reset Hearings as to Zackary Ellis Sanders: **Jury Trial reset for 10/19/2021 at 10:00 AM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (tran) (Entered: 06/23/2021) |
| 06/24/2021 | 419 | NOTICE by Zackary Ellis Sanders re 396 Reply to Response, 417 Order on Motion to Seal,,,,,,,, (Ginsberg, Nina) (Entered: 06/24/2021) |
| 06/25/2021 | 420 | Sealed Transcript prepared by R. Stonestreet, Official Court Reporter. (aott) (Entered: |

**JA37**

| | | 06/25/2021) |
|---|---|---|
| 07/21/2021 | 421 | Motion to appear Pro Hac Vice by Henry Louis Sirkin and Certification of Local Counsel Nina Jean Ginsberg (Filing fee $ 75 receipt number AVAEDC-7903205.) by Zackary Ellis Sanders. (Ginsberg, Nina) (Entered: 07/21/2021) |
| 08/05/2021 | 422 | MOTION to Compel *Exculpatory Material Or, In The Alternative, To Submit Exculpatory Material For In Camera Review (Renewed)* by Zackary Ellis Sanders. (Jeffress, Jonathan) (Entered: 08/05/2021) |
| 08/05/2021 | 423 | Filed in error and documents removed<br>Memorandum in Support by Zackary Ellis Sanders re 422 MOTION to Compel *Exculpatory Material Or, In The Alternative, To Submit Exculpatory Material For In Camera Review (Renewed)* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9) (Jeffress, Jonathan) Modified on 8/6/2021 (kgall) (Entered: 08/05/2021) |
| 08/05/2021 | 424 | MOTION to Seal by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order) (Jeffress, Jonathan) (Entered: 08/05/2021) |
| 08/06/2021 | 425 | NOTICE by Zackary Ellis Sanders re 423 Memorandum in Support of Motion, (Ginsberg, Nina) (Entered: 08/06/2021) |
| 08/06/2021 | 426 | Memorandum in Support by Zackary Ellis Sanders re 422 MOTION to Compel *Exculpatory Material Or, In The Alternative, To Submit Exculpatory Material For In Camera Review (Renewed)* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9) (Jeffress, Jonathan) (Attachment 5 replaced on 8/20/2021) (dvanm, ). (Entered: 08/06/2021) |
| 08/06/2021 | 427 | Sealed Document in 424 MOTION to Seal filed by Zackary Ellis Sanders (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9)(kgall) (Entered: 08/06/2021) |
| 08/17/2021 | 428 | Notice of Hearing Date set for August 27, 2021 re 422 MOTION to Compel *Exculpatory Material Or, In The Alternative, To Submit Exculpatory Material For In Camera Review (Renewed)* (Jeffress, Jonathan) (Entered: 08/17/2021) |
| 08/17/2021 | | Set Deadlines re Motion or Report and Recommendation in case as to Zackary Ellis Sanders 422 MOTION to Compel *Exculpatory Material Or, In The Alternative, To Submit Exculpatory Material For In Camera Review (Renewed)*. Motion Hearing set for 8/27/2021 at 10:00 AM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (clar, ) (Entered: 08/18/2021) |
| 08/19/2021 | 429 | MOTION to Suppress *Statements Taken in Violation of Miranda v. Arizona* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Jeffress, Jonathan) (Entered: 08/19/2021) |
| 08/19/2021 | 430 | Memorandum in Support by Zackary Ellis Sanders re 429 MOTION to Suppress *Statements Taken in Violation of Miranda v. Arizona* (Jeffress, Jonathan) (Entered: 08/19/2021) |
| 08/19/2021 | 431 | Notice of Hearing Date set for September 10, 2021 re 429 MOTION to Suppress *Statements Taken in Violation of Miranda v. Arizona* (Jeffress, Jonathan) (Entered: 08/19/2021) |
| 08/19/2021 | 432 | RESPONSE in Opposition by USA as to Zackary Ellis Sanders re 422 MOTION to Compel *Exculpatory Material Or, In The Alternative, To Submit Exculpatory Material* |

**JA38**

| | | |
|---|---|---|
| | | *For In Camera Review (Renewed)* (Clayman, William) (Entered: 08/19/2021) |
| 08/19/2021 | | Set Deadlines re Motion or Report and Recommendation in case as to Zackary Ellis Sanders 429 MOTION to Suppress *Statements Taken in Violation of Miranda v. Arizona*. Motion Hearing set for 9/10/2021 at 09:00 AM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (clar, ) (Entered: 08/20/2021) |
| 08/20/2021 | 433 | Consent MOTION to Seal *Portions Of and Replace Exhibit on the Docket* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Jeffress, Jonathan) (Entered: 08/20/2021) |
| 08/20/2021 | 434 | Consent MOTION to Seal *Portions Of and Replace Exhibit on the Docket (Corrected)* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Jeffress, Jonathan) (Entered: 08/20/2021) |
| 08/20/2021 | 435 | Memorandum in Support by Zackary Ellis Sanders re 434 Consent MOTION to Seal *Portions Of and Replace Exhibit on the Docket (Corrected)* (Attachments: # 1 Exhibit l)(Jeffress, Jonathan) (Entered: 08/20/2021) |
| 08/20/2021 | 436 | ORDER granting 424 Motion to Seal as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 08/20/2021. (dvanm, ) (Entered: 08/20/2021) |
| 08/20/2021 | 437 | ORDER granting 434 Motion to Seal as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 08/20/2021. (dvanm, ) (Entered: 08/20/2021) |
| 08/23/2021 | 438 | MOTION to Seal *Portions of Reply to Government Opposition* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Jeffress, Jonathan) (Entered: 08/23/2021) |
| 08/23/2021 | 439 | Memorandum in Support by Zackary Ellis Sanders re 438 MOTION to Seal *Portions of Reply to Government Opposition* (Jeffress, Jonathan) (Entered: 08/23/2021) |
| 08/23/2021 | 440 | REPLY TO RESPONSE to by Zackary Ellis Sanders re 432 Response in Opposition *to Motion to Compel Exculpatory Material Or, In The Alternative, To Submit Exculpatory Material For In Camera Review (Renewed)* (Attachments: # 1 Exhibit 1) (Jeffress, Jonathan) (Entered: 08/23/2021) |
| 08/24/2021 | 441 | ORDER granting 438 Motion to Seal as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 08/24/2021. (dvanm, ) (Entered: 08/24/2021) |
| 08/25/2021 | 442 | ORDERED that defendant's Second Renewed Motion to Reconsider his Motion to Compel 422 is DENIED. It is further ORDERED that the hearing in this matter scheduled for August 27, 2021 is CANCELLED. Signed by District Judge T. S. Ellis, III on 08/25/2021. (dvanm, ) (Entered: 08/25/2021) |
| 08/25/2021 | 443 | Sealed Reply (dvanm, ) (Main Document 443 replaced on 8/26/2021) (dzir, ). (Entered: 08/25/2021) |
| 08/25/2021 | 444 | Sealed Document 443 Sealed Reply filed by Zackary Ellis Sanders (dvanm, ) (Entered: 08/25/2021) |
| 08/27/2021 | 445 | MOTION to Seal *Government's Expert Report* by USA as to Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Clayman, William) (Entered: 08/27/2021) |
| 08/30/2021 | 446 | RESPONSE in Opposition by USA as to Zackary Ellis Sanders re 429 MOTION to Suppress *Statements Taken in Violation of Miranda v. Arizona* (Clayman, William) (Entered: 08/30/2021) |
| 08/30/2021 | 447 | Sealed Document re evaluation (dvanm, ) (Entered: 08/30/2021) |
| | | |

| 08/30/2021 | 448 | ORDER granting 445 Motion to Seal as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 08/30/2021. (dvanm, ) (Entered: 08/30/2021) |
| 09/02/2021 | 449 | MOTION to Seal *Memorandum in Support of his Motion for Leave to File Response, Request for Appointment of Independent Expert to Conduct Independent Evaluation and Determine Whether Dr. Montalbanos Methodology Comports with Accepted Psychological Practice, and for Oral Argument* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Jeffress, Jonathan) (Entered: 09/02/2021) |
| 09/02/2021 | 450 | Memorandum in Support by Zackary Ellis Sanders re 449 Motion to Seal *Memorandum in Support of his Motion for Leave to File Response, Request for Appointment of Independent Expert to Conduct Independent Evaluation and Determine Whether Dr. Montalbanos Methodology Comports with Accepted Psychological Pr (Jeffress, Jonathan) (Entered: 09/02/2021)* |
| 09/02/2021 | 451 | MOTION for Leave to File *Response, Request for Appointment of Independent Expert to Conduct Independent Evaluation and Determine Whether Dr. Montalbanos Methodology Comports with Accepted Psychological Practice, and for Oral Argument* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Jeffress, Jonathan) (Entered: 09/02/2021) |
| 09/02/2021 | 452 | Memorandum in Support by Zackary Ellis Sanders re 451 MOTION for Leave to File *Response, Request for Appointment of Independent Expert to Conduct Independent Evaluation and Determine Whether Dr. Montalbanos Methodology Comports with Accepted Psychological Practice, and for Oral Argument* (Jeffress, Jonathan) (Entered: 09/02/2021) |
| 09/03/2021 | 453 | MOTION to Seal *Government's Response to Defendant's Memorandum Regarding Admissibility of Evidence* by USA as to Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Schlessinger, Seth) (Entered: 09/03/2021) |
| 09/03/2021 | 454 | ORDER granting 451 Motion for Leave to File as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 09/03/2021. (dvanm, ) (Entered: 09/03/2021) |
| 09/03/2021 | 455 | Under Seal Memorandum in Support re 451 MOTION for Leave to File *Response, Request for Appointment of Independent Expert to Conduct Independent Evaluation and Determine Whether Dr. Montalbanos Methodology Comports with Accepted Psychological Practice, and for Oral Argument* filed by Zackary Ellis Sanders (dest, ) (Entered: 09/03/2021) |
| 09/03/2021 | 456 | ORDER granting 453 Motion to Seal as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 09/03/2021. (dvanm, ) (Entered: 09/03/2021) |
| 09/07/2021 | 459 | Sealed Response to 455 Sealed Document, filed by Zackary Ellis Sanders (Attachments: # 1 Exhibit)(dvanm, ) (Entered: 09/07/2021) |
| 09/08/2021 | 457 | **ORDERED** that defendant's Motion to Suppress Statements Taken in Violation of *Miranda v. Arizona* 429 is **DENIED AS UNTIMELY**. It is further **ORDERED** that the hearing set for **Friday, September 10 at 9:00 a.m.** is **CANCELLED**. Signed by District Judge T. S. Ellis, III on 09/08/2021. (tran) (Entered: 09/08/2021) |
| 09/08/2021 | | Terminate Hearing as to Zackary Ellis Sanders: Motion Hearing set for Friday, September 10, 2021 at 9:00 a.m. (tran) (Entered: 09/08/2021) |
| 09/09/2021 | 458 | MOTION to Seal Response by USA as to Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(dvanm, ) (Entered: 09/09/2021) |
| 09/16/2021 | 460 | MOTION to Seal *Government's Response in Opposition to 451 Defendant's Motion* by |

| | | |
|---|---|---|
| | | USA as to Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Clayman, William) (Entered: 09/16/2021) |
| 09/16/2021 | 465 | Sealed Response re 449 MOTION to Seal *Memorandum in Support of his Motion for Leave to File Response, Request for Appointment of Independent Expert to Conduct Independent Evaluation and Determine Whether Dr. Montalbanos Methodology Comports with Accepted Psychological Pr filed by Zackary Ellis Sanders (Attachments: # 1 Exhibit 1)(dvanm, ) (Entered: 09/17/2021)* |
| 09/16/2021 | 466 | Subpoena issued for trial on 10/19/2021 at 10:00. 20 sets (40 blanks) (dvanm, ) (Entered: 09/20/2021) |
| 09/17/2021 | 461 | MOTION to Seal *Portions of Memorandum and Exhibit 2* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Jeffress, Jonathan) (Entered: 09/17/2021) |
| 09/17/2021 | 462 | Memorandum in Support by Zackary Ellis Sanders re 461 MOTION to Seal *Portions of Memorandum and Exhibit 2* (Jeffress, Jonathan) (Entered: 09/17/2021) |
| 09/17/2021 | 463 | MOTION to Suppress *(Renewed) Based on Lack of Probable Cause and False and Misleading Statements and for a Franks Hearing* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Jeffress, Jonathan) (Entered: 09/17/2021) |
| 09/17/2021 | 464 | Memorandum in Support by Zackary Ellis Sanders re 463 MOTION to Suppress *(Renewed) Based on Lack of Probable Cause and False and Misleading Statements and for a Franks Hearing* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Jeffress, Jonathan) (Entered: 09/17/2021) |
| 09/17/2021 | 467 | Sealed Document 464 Memorandum in Support of Motion, filed by Zackary Ellis Sanders (Attachments: # 1 Exhibit)(dvanm, ) (Entered: 09/20/2021) |
| 09/21/2021 | 468 | Sealed Order as to Zackary Ellis Sanders. Signed by District Judge T. S. Ellis, III on 09/21/2021. (tran, c/m on 09/21/21) (Entered: 09/21/2021) |
| 09/24/2021 | 469 | MOTION to Seal *Portions of Defendant's Memorandum and Entirety of Exhibits Three to Six* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Jeffress, Jonathan) (Entered: 09/24/2021) |
| 09/24/2021 | 470 | Memorandum in Support by Zackary Ellis Sanders re 469 MOTION to Seal *Portions of Defendant's Memorandum and Entirety of Exhibits Three to Six* (Jeffress, Jonathan) (Entered: 09/24/2021) |
| 09/24/2021 | 471 | MOTION to Suppress *(Renewed) Based on Warrantless Use of a Network Investigative Technique and False Material Information in Affidavit Paragraph 25* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Jeffress, Jonathan) (Entered: 09/24/2021) |
| 09/24/2021 | 472 | Memorandum by Zackary Ellis Sanders , Memorandum in Support by Zackary Ellis Sanders re 471 MOTION to Suppress *(Renewed) Based on Warrantless Use of a Network Investigative Technique and False Material Information in Affidavit Paragraph 25* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9)(Jeffress, Jonathan) (Entered: 09/24/2021) |
| 09/24/2021 | 473 | ORDER granting 449 Motion to Seal as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 09/24/2021. (dvanm, ) (Entered: 09/27/2021) |
| 09/24/2021 | 474 | ORDER granting 460 Motion to Seal as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 09/24/2021. (dvanm, ) (Entered: 09/27/2021) |
| | | |

**JA41**

| 09/24/2021 | 475 | ORDER granting 461 Motion to Seal as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 09/24/2021. (dvanm, ) (Entered: 09/27/2021) |
| 09/27/2021 | 476 | Sealed Document re 471 MOTION to Suppress *(Renewed) Based on Warrantless Use of a Network Investigative Technique and False Material Information in Affidavit Paragraph 25* filed by Zackary Ellis Sanders (Attachments: # 1 Exhibit 3-6)(dvanm, ) (Entered: 09/27/2021) |
| 10/04/2021 | 477 | NOTICE *of Intent Under Rule 16(b)(1)(C) to Introduce Expert Testimony from Philip DePue* by Zackary Ellis Sanders (Attachments: # 1 Exhibit 1)(Jeffress, Jonathan) (Entered: 10/04/2021) |
| 10/04/2021 | 478 | MOTION to Seal *Expert Notice Regarding Dr. Fred S. Berlin* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Jeffress, Jonathan) (Entered: 10/04/2021) |
| 10/04/2021 | 479 | Memorandum in Support by Zackary Ellis Sanders re 478 MOTION to Seal *Expert Notice Regarding Dr. Fred S. Berlin* (Jeffress, Jonathan) (Entered: 10/04/2021) |
| 10/04/2021 | 480 | NOTICE *of Intent Under Rule 16(b)(1)(C) to Introduce Expert Testimony from Dr. Fred S. Berlin* by Zackary Ellis Sanders (Attachments: # 1 Exhibit 1)(Jeffress, Jonathan) (Entered: 10/04/2021) |
| 10/05/2021 | 481 | Sealed Document re 478 MOTION to Seal *Expert Notice Regarding Dr. Fred S. Berlin* filed by Zackary Ellis Sanders (dvanm, ) (Entered: 10/05/2021) |
| 10/05/2021 | 482 | NOTICE *Government's Rule 16(a)(1)(G) Notice* by Zackary Ellis Sanders (Clayman, William) (Entered: 10/05/2021) |
| 10/05/2021 | 483 | NOTICE *of Intent Under Rule 16(b)(1)(C) to Introduce Expert Testimony from Dr. Tyler Whitney* by Zackary Ellis Sanders (Jeffress, Jonathan) (Entered: 10/05/2021) |
| 10/06/2021 | 484 | MOTION for Electronic Device Application by USA as to Zackary Ellis Sanders. (Clayman, William) (Entered: 10/06/2021) |
| 10/06/2021 | 485 | NOTICE *of Filing to Supplement the Record* by Zackary Ellis Sanders re 463 MOTION to Suppress *(Renewed) Based on Lack of Probable Cause and False and Misleading Statements and for a Franks Hearing*, 422 MOTION to Compel *Exculpatory Material Or, In The Alternative, To Submit Exculpatory Material For In Camera Review (Renewed)*, 471 MOTION to Suppress *(Renewed) Based on Warrantless Use of a Network Investigative Technique and False Material Information in Affidavit Paragraph 25* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Jeffress, Jonathan) (Entered: 10/06/2021) |
| 10/06/2021 | 486 | MOTION for Electronic Device Application by Zackary Ellis Sanders. (Jeffress, Jonathan) (Entered: 10/06/2021) |
| 10/06/2021 | 487 | ORDER granting 486 Motion for Electronic Device Application as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 10/6/2021. (dvanm, ) (Entered: 10/07/2021) |
| 10/06/2021 | 488 | ORDER granting 484 Motion for Electronic Device Application as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 10/6/2021. (dvanm, ) (Entered: 10/07/2021) |
| 10/08/2021 | 489 | ORDERED that the parties must appear for a final pretrial conference on Friday, October 15, 2021 at 11:30 a.m. It is further ORDERED that any amended proposed voir dire and jury instructions should be submitted no later than 12:00pm on Thursday, |

|  |  | October 14, 2021. Signed by District Judge T. S. Ellis, III on 10/8/2021. (dvanm, ) (Entered: 10/08/2021) |
|---|---|---|
| 10/08/2021 |  | Set Hearings as to Zackary Ellis Sanders: Final Pretrial Conference set for 10/15/2021 at 11:30 AM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (dvanm, ) (Entered: 10/08/2021) |
| 10/08/2021 | 490 | RESPONSE in Opposition by USA as to Zackary Ellis Sanders re 471 MOTION to Suppress *(Renewed) Based on Warrantless Use of a Network Investigative Technique and False Material Information in Affidavit Paragraph 25* (Clayman, William) (Entered: 10/08/2021) |
| 10/12/2021 | 491 | Reply by Zackary Ellis Sanders re 490 Response in Opposition, *to his Renewed Motion to Suppress Based on Warrantless Use of a Network Investigative Technique and False Material Information in Affidavit Paragraph 25* (Jeffress, Jonathan) (Entered: 10/12/2021) |
| 10/12/2021 | 492 | SEALED MEMORANDUM OPINION (tran, c/m on 10/12/21) (Entered: 10/12/2021) |
| 10/12/2021 | 493 | SEALED ORDER as to Zackary Ellis Sanders. Signed by District Judge T. S. Ellis, III on 10/12/2021. (tran, c/m on 10/12/21) (Entered: 10/12/2021) |
| 10/12/2021 | 494 | *Revised* WITNESS LIST by USA as to Zackary Ellis Sanders (Clayman, William) (Entered: 10/12/2021) |
| 10/12/2021 | 495 | *Revised* EXHIBIT LIST by USA as to Zackary Ellis Sanders (Clayman, William) (Entered: 10/12/2021) |
| 10/12/2021 | 497 | Trial Exhibits Received (dvanm, ) (Entered: 10/13/2021) |
| 10/13/2021 | 496 | MOTION to Seal *Motion to Exclude Proposed Expert Testimony* by USA as to Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Schlessinger, Seth) (Entered: 10/13/2021) |
| 10/13/2021 | 498 | Sealed Motion In Limine to Exclude Testimonyby USA as to Zackary Ellis Sanders. (dvanm, ) (Entered: 10/13/2021) |
| 10/13/2021 | 501 | ORDER denying 471 Motion to Suppress as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 10/13/2021. (dvanm, ) (Entered: 10/14/2021) |
| 10/14/2021 |  | Reset Hearings as to Zackary Ellis Sanders: **Pretrial Conference reset for 10/15/2021 at 11:00 AM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (tran) (Entered: 10/14/2021) |
| 10/14/2021 | 499 | Proposed Voir Dire by Zackary Ellis Sanders (Jeffress, Jonathan) (Entered: 10/14/2021) |
| 10/14/2021 | 500 | Proposed Jury Instructions by Zackary Ellis Sanders (Jeffress, Jonathan) (Entered: 10/14/2021) |
| 10/14/2021 | 502 | Proposed Voir Dire by Zackary Ellis Sanders (Ginsberg, Nina) (Entered: 10/14/2021) |
| 10/14/2021 | 503 | MOTION to Seal *Portions of Defendant's Opposition* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Jeffress, Jonathan) (Entered: 10/14/2021) |
| 10/14/2021 | 504 | Memorandum in Support by Zackary Ellis Sanders re 503 MOTION to Seal *Portions of Defendant's Opposition* (Jeffress, Jonathan) (Entered: 10/14/2021) |
| 10/14/2021 | 505 | Opposition by Zackary Ellis Sanders re 498 Sealed Motion (Jeffress, Jonathan) (Entered: 10/14/2021) |

| 10/14/2021 | 506 | ORDER granting 469 Motion to Seal as to Zackary Ellis Sanders (see order for details). Signed by District Judge T. S. Ellis, III on 10/14/2021. (jlan) (Entered: 10/14/2021) |
| 10/14/2021 | 507 | ORDER granting 478 Motion to Seal as to Zackary Ellis Sanders (see order for details). Signed by District Judge T. S. Ellis, III on 10/14/2021. (jlan) (Entered: 10/14/2021) |
| 10/14/2021 | 508 | ORDER granting 496 Motion to Seal as to Zackary Ellis Sanders (see order for details). Signed by District Judge T. S. Ellis, III on 10/14/2021. (jlan) (Entered: 10/14/2021) |
| 10/14/2021 | 509 | NOTICE *of Filing of Corrected Revised Jury Instruction No. 23* by Zackary Ellis Sanders re 500 Proposed Jury Instructions (Jeffress, Jonathan) (Entered: 10/14/2021) |
| 10/14/2021 | 515 | Subpoenas issued 15 sets (30 blank) (dvanm, ) (Entered: 10/19/2021) |
| 10/15/2021 | 510 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Pretrial Conference as to Zackary Ellis Sanders held on 10/15/2021.<br>USA appeared through William Clayman, Jay Prabhu and Seth Schlessinger.<br>Defendant appeared with counsels, Jonathan Jeffress, Jade Chong-Smith, Nina Ginsberg and Henry Sirkin.<br>Trial procedures discussed. Court advised the parties 14 jurors will be selected with the alternates identified. Jury Selection will begin at 9:00 a.m. on Tuesday, October 19, 2021. Government will have 7 strikes and defendant will have 11 strikes. Court heard argument on 498 Sealed Motion in Limine to Exclude Testimony by USA. Order to follow.<br>Defendant remanded.<br>Court Reporter: R. Stonestreet<br>(tran) (Main Document 510 replaced on 10/15/2021) (tran, ). (Entered: 10/15/2021) |
| 10/15/2021 | 511 | Sealed Opposition 498 Sealed Motion In Limine to Exclude Testimony filed by USA (dvanm, ) (Entered: 10/15/2021) |
| 10/15/2021 | 512 | Sealed Order as to Zackary Ellis Sanders. Signed by District Judge T. S. Ellis, III on 10/15/2021. (tran, c/m on 10/15/21) (Entered: 10/15/2021) |
| 10/18/2021 | | Reset Hearings as to Zackary Ellis Sanders: **Jury Trial set for 10/19/2021 at 09:00 AM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (tran) (Entered: 10/18/2021) |
| 10/18/2021 | 513 | *Second Revised* WITNESS LIST by Zackary Ellis Sanders (Jeffress, Jonathan) (Entered: 10/18/2021) |
| 10/18/2021 | 516 | ORDER granting 421 Motion for Pro hac vice Appointed Henry Louis Sirkin for Zackary Ellis Sanders. Signed by District Judge T. S. Ellis, III on 10/18/2021. (kgall) (Entered: 10/19/2021) |
| 10/19/2021 | 514 | ORDER: The court has determined an emergency hardship situation is present where accommodations are needed to be taken by the court to protect the health and safety of jurors and minimize exposure to the virus in order for them to be able to serve. Accordingly, jurors are to remain within the courthouse once they report each day and the Clerk is to procure juror meals as necessary. Signed by District Judge T. S. Ellis, III on 10/19/2021. (tran) (Entered: 10/19/2021) |
| 10/19/2021 | 517 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Jury Trial (Day 1) as to Zackary Ellis Sanders held on 10/19/2021. |

**JA44**

| | | |
|---|---|---|
| | | USA appeared through Sech Schlessinger, Jay Prabhu, William Clayman, Christopher Ford (Special Agent), and Loraine McNeill (Paralegal). Defendant appeared with counsels, Nina Ginsberg, Jade Chong Smith, Jonathan Jeffress and Henry Sirkin and Leanna Feinleib (Paralegal). Preliminary matters discussed. The jurors appeared as summoned and were examined on voir dire. 14 jurors were selected and sworn to try the issues. Jury List provided to jury clerk. Opening statements made by both parties. Juror excused at 04:24 p.m. **Jury Trial set for 10/20/2021 at 09:30 AM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. Defendant remanded. Court Reporter: R. Stonestreet (tran) (Main Document 517 replaced on 10/19/2021) (tran, ). Modified on 10/22/2021 (tran). (Entered: 10/19/2021) |
| 10/20/2021 | 518 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Jury Trial (Day 2) as to Zackary Ellis Sanders held on 10/20/2021. USA appeared through Sech Schlessinger, Jay Prabhu, William Clayman, Christopher Ford (Special Agent), and Loraine McNeill (Paralegal). Defendant appeared with counsels, Nina Ginsberg, Jade Chong Smith, Jonathan Jeffress and Henry Sirkin and Leanna Feinleib (Paralegal). Preliminary matters discussed. Rule on witnesses. Gov't adduced evidence. Jurors excused at 04:24 p.m. **Jury Trial set for 10/21/2021 at 09:30 AM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. Defendant remanded. Court Reporter: R. Stonestreet (tran) Modified on 10/22/2021 (tran). (Entered: 10/20/2021) |
| 10/20/2021 | 519 | MOTION to Seal *Memorandum in Support of Motion to Reconsider the Exclusion of the Testimony of Dr. Tyler Whitney* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Jeffress, Jonathan) (Entered: 10/20/2021) |
| 10/20/2021 | 520 | Memorandum in Support by Zackary Ellis Sanders re 519 MOTION to Seal *Memorandum in Support of Motion to Reconsider the Exclusion of the Testimony of Dr. Tyler Whitney* (Jeffress, Jonathan) (Entered: 10/20/2021) |
| 10/20/2021 | 521 | MOTION for Reconsideration re 493 Sealed Order *regarding the Exclusion of the Testimony of Dr. Tyler Whitney* by Zackary Ellis Sanders. (Jeffress, Jonathan) (Entered: 10/20/2021) |
| 10/21/2021 | 522 | **ORDERED** that the government's objection is **SUSTAINED IN PART** and **OVERRULED IN PART**. The government's objection is sustained with respect to evidence of other sexual images or chats involving the alleged minor victim, that are not the subject of the indictment. The government's objection is overruled with respect to any evidence that the defendant may have that shows that the images of the minor victim that are the subject of the indictment existed prior to defendant's chats with the alleged minor victim. Signed by District Judge T. S. Ellis, III on 10/21/2021. (tran) (Entered: 10/21/2021) |
| 10/21/2021 | 523 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Jury Trial (Day 3) as to Zackary Ellis Sanders held on 10/21/2021. USA appeared through Sech Schlessinger, Jay Prabhu, William Clayman, Christopher Ford (Special Agent), and Loraine McNeill (Paralegal). Defendant appeared with counsels, Nina Ginsberg, Jade Chong Smith, Jonathan Jeffress and Henry Sirkin and Leanna Feinleib (Paralegal), Diana Castillo (Paralegal), and Katie Ehrenfeld (Paralegal). |

|  |  | Jury Roll Call. Gov't continued to adduce evidence. Jurors excused at 04:45 p.m. **Jury Trial set for 10/22/2021 at 09:30 AM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III.<br>Defendant remanded.<br>Court Reporter: R. Stonestreet<br>(tran) (Entered: 10/21/2021) |
|---|---|---|
| 10/21/2021 | 524 | Sealed Memorandum in Support of Motion to Reconsider the Exclusion of the Testimony of Dr. Tyler Whitney 519 MOTION to Seal *Memorandum in Support of Motion to Reconsider the Exclusion of the Testimony of Dr. Tyler Whitney* filed by Zackary Ellis Sanders (Attachments: # 1 Exhibit)(dvanm, ) (Entered: 10/22/2021) |
| 10/22/2021 | 525 | Sealed Order as to Zackary Ellis Sanders. Signed by District Judge T. S. Ellis, III on 10/22/2021. (tran, c/m on 10/22/21) (Entered: 10/22/2021) |
| 10/22/2021 | 526 | NOTICE *of Filing* by Zackary Ellis Sanders (Jeffress, Jonathan) (Entered: 10/22/2021) |
| 10/22/2021 | 527 | ORDER granting Motion for Electronic Device Application as to Zackary Ellis Sanders. (tran) (Entered: 10/22/2021) |
| 10/22/2021 | 528 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Jury Trial (Day 4) as to Zackary Ellis Sanders held on 10/22/2021.<br>USA appeared through Sech Schlessinger, Jay Prabhu, William Clayman, Christopher Ford (Special Agent), and Loraine McNeill (Paralegal).<br>Defendant appeared with counsels, Nina Ginsberg, Jade Chong Smith, Jonathan Jeffress and Henry Sirkin and Leanna Feinleib (Paralegal), Diana Castillo (Paralegal), and Katie Ehrenfeld (Paralegal).<br>Jury Roll Call. Govt continued to adduce evidence. Jurors excused at 05:30 p.m. **Jury Trial set for 10/25/2021 at 09:30 AM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III.<br>Defendant remanded.<br>Court Reporter: R. Stonestreet<br>(tran) (Entered: 10/22/2021) |
| 10/25/2021 | 529 | NOTICE *of Objection and Request for Curative Instruction* by Zackary Ellis Sanders (Jeffress, Jonathan) (Entered: 10/25/2021) |
| 10/25/2021 | 530 | **ORDERED** that defendant's objection to the Court's jury instructions given in the course of the trial that "consent is not a defense to the production of child pornography" is **OVERRULED** because that instruction is correct. It is further **ORDERED** that defendant's objection to the exclusion of evidence suggesting that defendant's minor victims consented to engage in sexually explicit acts is also **OVERRULED**. That consent is irrelevant. Defendant will have an opportunity to re-argue this issue at the final jury instructions conference, but the ultimate instruction is unlikely to differ from the conclusion contained here. Signed by District Judge T. S. Ellis, III on 10/25/2021. (tran) (Entered: 10/25/2021) |
| 10/25/2021 | 531 | Proposed Jury Instructions by USA as to Zackary Ellis Sanders (Schlessinger, Seth) (Entered: 10/25/2021) |
| 10/25/2021 | 532 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Jury Trial (Day 5) as to Zackary Ellis Sanders held on 10/25/2021.<br>USA appeared through Seth Schlessinger, Jay Prabhu, William Clayman, Christopher Ford (Special Agent), and Loraine McNeill (Paralegal).<br>Defendant appeared with counsels, Nina Ginsberg, Jade Chong Smith, Jonathan |

**JA46**

| | | |
|---|---|---|
| | | Jeffress and Henry Sirkin and Diana Castillo (Paralegal), and Katie Ehrenfeld (Paralegal).<br>Jury Roll Call. Gov't continued to adduce evidence and Rests. Court heard oral arguments on Defendant's Rule 29 Judgment of Acquittal on All Counts - DENIED. Defendant adduced evidence. Jurors excused at 04:50 p.m. **Jury Trial set for 10/26/2021 at 09:30 AM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III.<br>Defendant remanded.<br>Court Reporter: R. Stonestreet<br>(tran) Modified on 10/26/2021 (tran). (Entered: 10/25/2021) |
| 10/25/2021 | 533 | Sealed Order as to Zackary Ellis Sanders. Signed by District Judge T. S. Ellis, III on 10/25/2021. (tran, c/m on 10/25/21) (Entered: 10/25/2021) |
| 10/25/2021 | 534 | NOTICE *of Filing of Objection to Jury Instruction Regarding His Purpose* by Zackary Ellis Sanders (Jeffress, Jonathan) (Entered: 10/25/2021) |
| 10/26/2021 | 535 | NOTICE *of Filing of Proposed Verdict Form* by Zackary Ellis Sanders (Jeffress, Jonathan) (Entered: 10/26/2021) |
| 10/26/2021 | 536 | NOTICE *of Filing of Defendant's Revised Proposed Verdict Form* by Zackary Ellis Sanders (Jeffress, Jonathan) (Entered: 10/26/2021) |
| 10/26/2021 | 537 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Jury Trial (Day 6) as to Zackary Ellis Sanders held on 10/26/2021.<br>USA appeared through Sech Schlessinger, Jay Prabhu, William Clayman, Christopher Ford (Special Agent), and Loraine McNeill (Paralegal).<br>Defendant appeared with counsels, Nina Ginsberg, Jade Chong Smith, Jonathan Jeffress and Henry Sirkin and Diana Castillo (Paralegal), and Katie Ehrenfeld (Paralegal).<br>Jury Roll Call. Defendant continued to adduce evidence and Rests. Defendant's Renewed Moton for Rule 29 - DENIED. Jury Instructions Conference held. Closing arguments made by both parties. Jurors excused at 06:28 p.m. **Jury Trial set for 10/27/2021 at 09:30 AM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III.<br>Defendant remanded.<br>Court Reporter: R. Stonestreet<br>(tran) (Entered: 10/26/2021) |
| 10/27/2021 | 538 | **ORDERED** that defendant's request to send an iPhone charger to the jury for use in their deliberations is **DENIED**. Signed by District Judge T. S. Ellis, III on 10/27/2021. (tran) (Entered: 10/27/2021) |
| 10/27/2021 | 539 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Jury Trial (Day 7) as to Zackary Ellis Sanders held on 10/27/2021.<br>USA appeared through Sech Schlessinger, Jay Prabhu, William Clayman, Christopher Ford (Special Agent), and Loraine McNeill (Paralegal).<br>Defendant appeared with counsels, Nina Ginsberg, Jonathan Jeffress and Henry Sirkin.<br>Jury Roll Call. Jury charged and alternates released. Jurors retired to deliberate at 11:05 a.m. Jury verdict filed in open court and jurors individually polled Defendant found guilty on all Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12. Defendant's request to have the defendant retained at Alexandria Detention Center for ongoing medical issues -GRANTED. **Sentencing set for 3/4/2022 at 09:00 AM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III.<br>Defendant remanded. |

| | | (Attachments: # 1 Govt Witness List, # 2 Govt Exhibit List, # 3 Deft Witness List, # 4 Deft Exhibit List, # 5 Trial Exhibit Certificate of Review) Court Reporter: R. Stonestreet (tran) (Entered: 10/27/2021) |
|---|---|---|
| 10/27/2021 | 540 | REDACTED Jury Note as to Zackary Ellis Sanders (tran) (Additional attachment(s) added on 10/27/2021: # 1 Unredacted Jury Note) (tran, ). (Entered: 10/27/2021) |
| 10/27/2021 | 541 | REDACTED JURY VERDICT as to Zackary Ellis Sanders (1) Guilty on Counts 1-5,6-11,12. (tran) (Additional attachment(s) added on 10/27/2021: # 1 Unredacted Jury Verdict) (tran, ). (Entered: 10/27/2021) |
| 10/27/2021 | 542 | TRIAL EXHIBIT CUSTODY FORM (tran) (Entered: 10/27/2021) |
| 11/04/2021 | 543 | MOTION to Continue *Time for Filing of Motions for a New Trial and/or a Judgment of Acquittal* by Zackary Ellis Sanders. (Jeffress, Jonathan) (Entered: 11/04/2021) |
| 11/04/2021 | 544 | **ORDERED** that defendant's motion for an extension of time to file post-trial motions 543 is **GRANTED IN PART and DENIED IN PART**. Defendant will be given until **Monday, December 27, 2021 at 5:00 p.m.** to file post-trial motions under Rule 29 and 33. Signed by District Judge T. S. Ellis, III on 11/04/2021. (tran) (Entered: 11/04/2021) |
| 11/19/2021 | 545 | ORDER: Accordingly, defendant, defendant's family members, and defense counsel are directed to refrain from contacting the court reporter and to avoid attempts to avoid attempts to influence the content of the final transcripts. Defendant, defendant's family members, and defense counsel should limit contact with the court reporter to requests relating to when transcripts of proceedings in this case will be available to the public and to cease further requests for audio recordings of the proceedings. Signed by District Judge T. S. Ellis, III on 11/19/2021. (See Order for further details). (tran) (Entered: 11/19/2021) |
| 12/05/2021 | 546 | TRANSCRIPT of Proceedings held on October 20, 2021, before Judge T.S. Ellis, III. Court reporter/transcriber Rebecca Stonestreet, Telephone number 240-426-7767. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript** may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 1/4/2022. Redacted Transcript Deadline set for 2/4/2022. Release of Transcript Restriction set for 3/7/2022.(stonestreet, rachel) (Entered: 12/05/2021) |
| 12/05/2021 | 547 | TRANSCRIPT of Proceedings held on October 21, 2021, before Judge T.S. Ellis, III. Court reporter/transcriber Rebecca Stonestreet, Telephone number 240-426-7767. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript** may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due |

| | | |
|---|---|---|
| | | 1/4/2022. Redacted Transcript Deadline set for 2/4/2022. Release of Transcript Restriction set for 3/7/2022.(stonestreet, rachel) (Entered: 12/05/2021) |
| 12/05/2021 | 548 | TRANSCRIPT of Proceedings held on October 22, 2021, before Judge T.S. Ellis, III. Court reporter/transcriber Rebecca Stonestreet, Telephone number 240-426-7767. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript** may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 1/4/2022. Redacted Transcript Deadline set for 2/4/2022. Release of Transcript Restriction set for 3/7/2022.(stonestreet, rachel) (Entered: 12/05/2021) |
| 12/05/2021 | 549 | TRANSCRIPT of Proceedings held on October 25, 2021, before Judge T.S. Ellis, III. Court reporter/transcriber Rebecca Stonestreet, Telephone number 240-426-7767. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript** may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 1/4/2022. Redacted Transcript Deadline set for 2/4/2022. Release of Transcript Restriction set for 3/7/2022.(stonestreet, rachel) (Entered: 12/05/2021) |
| 12/05/2021 | 550 | TRANSCRIPT of Proceedings held on October 26, 2021, before Judge T.S. Ellis, III. Court reporter/transcriber Rebecca Stonestreet, Telephone number 240-426-7767. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript** may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 1/4/2022. Redacted Transcript Deadline set for 2/4/2022. Release of Transcript Restriction set for 3/7/2022.(stonestreet, rachel) (Entered: 12/05/2021) |
| 12/05/2021 | 551 | TRANSCRIPT of Proceedings held on October 27, 2021, before Judge T.S. Ellis, III. Court reporter/transcriber Rebecca Stonestreet, Telephone number 240-426-7767. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript** may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 1/4/2022. Redacted Transcript Deadline set for 2/4/2022. Release of Transcript Restriction set for 3/7/2022.(stonestreet, rachel) (Entered: 12/05/2021) |

| | | |
|---|---|---|
| 12/09/2021 | 552 | TRANSCRIPT of Proceedings held on October 19, 2021, before Judge T.S. Ellis, III. Court reporter/transcriber Rebecca Stonestreet, Telephone number 240-426-7767. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript** may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 1/10/2022. Redacted Transcript Deadline set for 2/8/2022. Release of Transcript Restriction set for 3/9/2022.(stonestreet, rachel) (Entered: 12/09/2021) |
| 12/09/2021 | 553 | TRANSCRIPT of Proceedings held on 07/10/2020, before Judge T. S. Ellis, III. Court reporter/transcriber Patricia A. Kaneshiro-Miller. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript** may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 1/10/2022. Redacted Transcript Deadline set for 2/8/2022. Release of Transcript Restriction set for 3/9/2022. (jlan) (Entered: 12/10/2021) |
| 12/09/2021 | 554 | TRANSCRIPT of Proceedings held on 11/06/2020, before Judge T. S. Ellis, III. Court reporter/transcriber Patricia A. Kaneshiro-Miller. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript** may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 1/10/2022. Redacted Transcript Deadline set for 2/8/2022. Release of Transcript Restriction set for 3/9/2022. (jlan) (Entered: 12/10/2021) |
| 12/21/2021 | 555 | TRANSCRIPT of Proceedings held on October 15, 2021, before Judge T.S. Ellis, III. Court reporter/transcriber Rebecca Stonestreet, Telephone number 240-426-7767. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript** may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 1/20/2022. Redacted Transcript Deadline set for 2/21/2022. Release of Transcript Restriction set for 3/21/2022.(stonestreet, rachel) (Entered: 12/21/2021) |
| 01/06/2022 | 556 | Redaction Transcript re 546 Transcript,,, in case as to Zackary Ellis Sanders(stonestreet, rachel) (Entered: 01/06/2022) |
| 01/06/2022 | 557 | Redaction Transcript re 547 Transcript,,, in case as to Zackary Ellis Sanders(stonestreet, rachel) (Entered: 01/06/2022) |

| 01/06/2022 | 558 | Redaction Transcript re 548 Transcript,,, in case as to Zackary Ellis Sanders(stonestreet, rachel) (Entered: 01/06/2022) |
|---|---|---|
| 01/06/2022 | 559 | Redaction Transcript re 549 Transcript,,, in case as to Zackary Ellis Sanders(stonestreet, rachel) (Entered: 01/06/2022) |
| 01/06/2022 | 560 | Redaction Transcript re 550 Transcript,,, in case as to Zackary Ellis Sanders(stonestreet, rachel) (Entered: 01/06/2022) |
| 01/15/2022 | 561 | Emergency MOTION for Medical Treatment by Zackary Ellis Sanders. (Deubler, Zachary) (Entered: 01/15/2022) |
| 01/15/2022 | 562 | MOTION to Seal *Memorandum and Exhibits attached to Emergency Motion for Medical Treatment* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order) (Deubler, Zachary) (Entered: 01/15/2022) |
| 01/15/2022 | | Set Hearings as to Zackary Ellis Sanders: **Emergency Phone Hearing set for 1/15/2022 at 05:15 PM** in Alexandria Telephonically before District Judge T. S. Ellis III. (tran) (Entered: 01/15/2022) |
| 01/15/2022 | 563 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Phone Hearing on as to Zackary Ellis Sanders held on 1/15/2022 Re: 561 Emergency Motion for an Order Requiring Alexandria Adult Detention Center to Provide Medical Treatment filed by Zackary Ellis Sanders.<br>USA appeared through Jay Prabhu. Defendant appeared through counsels, Nina Ginsberg and Henry Sirkin. Sean McCaffrey from the USMS was present for this hearing.<br>Defendant was not present for this hearing. Defense to submit doctor's declaration under oath by Thursday, January 20, 2022. Parties to reconvene for a phone hearing on Tuesday, January 18, 2022. Order to follow.<br>Defendant remanded.<br>Court Reporter: R. Stonestreet<br>(tran) (Entered: 01/15/2022) |
| 01/15/2022 | 564 | Sealed Order as to Zackary Ellis Sanders. Signed by District Judge T. S. Ellis, III on 01/15/2022. (tran, c/m on 01/15/22) (Entered: 01/15/2022) |
| 01/15/2022 | | Set Hearings as to Zackary Ellis Sanders: **Status Conference set for 1/18/2022 at 04:00 PM** in Alexandria Telephonically before District Judge T. S. Ellis III. (tran) (Entered: 01/15/2022) |
| 01/18/2022 | | Status Conference set for Tuesday, January 18, 2022 at 4:00 p.m. as to Zackary Ellis Sanders: -TERMINATED, As per TSE Chambers. (tran) (Entered: 01/18/2022) |
| 01/18/2022 | 565 | Sealed Order as to Zackary Ellis Sanders. Signed by District Judge T. S. Ellis, III on 01/18/2022. (tran, c/m on 01/18/22) (Entered: 01/18/2022) |
| 01/20/2022 | 566 | NOTICE OF ATTORNEY APPEARANCE: Christopher Bryan Amolsch appearing for Zackary Ellis Sanders (Amolsch, Christopher) (Entered: 01/20/2022) |
| 01/20/2022 | 567 | MOTION to Continue *Sentencing* by Zackary Ellis Sanders. (Amolsch, Christopher) (Entered: 01/20/2022) |
| 01/20/2022 | 568 | Notice of Hearing Date re 567 MOTION to Continue *Sentencing* (Amolsch, Christopher) (Entered: 01/20/2022) |
| 01/20/2022 | | Set Deadlines re Motion or Report and Recommendation in case as to Zackary Ellis Sanders 567 MOTION to Continue *Sentencing*. Motion Hearing set for 1/28/2022 at |

| | | 09:00 AM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (clar, ) (Entered: 01/21/2022) |
|---|---|---|
| 01/25/2022 | 570 | Sealed Motion by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(dvanm) (Entered: 01/26/2022) |
| 01/26/2022 | 569 | RESPONSE to Motion by USA as to Zackary Ellis Sanders re 567 MOTION to Continue *Sentencing* (Clayman, William) (Entered: 01/26/2022) |
| 01/28/2022 | 571 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Motion Hearing as to Zackary Ellis Sanders held on 1/28/2022 re 567 MOTION to Continue *Sentencing* filed by Zackary Ellis Sanders, 570 Sealed Motion filed by Zackary Ellis Sanders. USA appeared through William Clayman and Seth Schlessinger. Defendant appeared with counsels, Nina Ginsberg and Christopher Amolsch. Matter argued. 567 Motion to Continue Sentencing DENIED. Court will proceed with the existing schedule. 570 Motion -GRANTED IN PART. Order to follow. Defendant remanded. Court Reporter: R. Stonestreet (tran) (Entered: 01/28/2022) |
| 01/28/2022 | 572 | **ORDERED** that defendant's motion to continue sentencing 567 is **DENIED**. It is further **ORDERED** that officials at the Alexandria Detention Center are **DIRECTED** to arranged for meetings between defendant and his doctors so that defendant may prepare for his sentencing. It is further **ORDERED** that defendant's motion to redact the trial transcript 570 is **GRANTED IN PART AND DENIED IN PART**. The motion to redact is granted insofar as defendant seeks to redact home addresses which appear in the trial transcript. It is further **ORDERED** that the trial transcripts in this case are to be placed under seal. Signed by District Judge T. S. Ellis, III on 01/28/2022. (tran) (Entered: 01/28/2022) |
| 01/31/2022 | 573 | PRESENTENCE INVESTIGATION REPORT (Disclosed Presentence Investigation Report) (SEALED - government and defense counsel) as to Zackary Ellis Sanders. Objections to PSI due 02/17/2022. (penn, carrie) (Entered: 01/31/2022) |
| 02/02/2022 | 574 | ORDERED that defense counsel are DIRECTED to provide Deputy Marshal McCaffrey with the names of the expert with whom defendant wants to meet to prepare for defendant's sentencing so that Deputy Marshal Mccaffrey may provide those names to officials at ADC. Signed by District Judge T. S. Ellis, III on 02/02/2022. (dvanm) (Entered: 02/02/2022) |
| 02/03/2022 | 575 | MOTION to Seal *Motion for Clarification* by USA as to Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Schlessinger, Seth) (Entered: 02/03/2022) |
| 02/03/2022 | 576 | Sealed Motion by USA as to Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(dvanm, ) (Entered: 02/03/2022) |
| 02/03/2022 | 577 | ORDER granting 575 Motion to Seal as to Zackary Ellis Sanders (1). Signed by District Judge T. S. Ellis, III on 02/03/2022. (dvanm) (Entered: 02/03/2022) |
| 02/03/2022 | 578 | Sealed Order as to Zackary Ellis Sanders. Signed by District Judge T. S. Ellis, III on 02/03/2022. (dvanm) (Entered: 02/03/2022) |
| 02/04/2022 | 579 | MOTION for Reconsideration re 572 Order on Motion to Continue,, by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Amolsch, Christopher) (Entered: 02/04/2022) |

**JA52**

| 02/18/2022 | 580 | RESPONSE in Opposition by USA as to Zackary Ellis Sanders re 579 MOTION for Reconsideration re 572 Order on Motion to Continue,, (Schlessinger, Seth) (Entered: 02/18/2022) |
|---|---|---|
| 02/22/2022 | 581 | ORDERED that defendant's motion for reconsideration regarding defendant's prior motion to continue his sentencing (Dkt. 579) is GRANTED and the sentencing scheduled for March 4, 2022 is POSTPONED until Friday, April 1, 2022 at 10:00 a.m. Signed by District Judge T. S. Ellis, III on 2/22/2022. (lber) (Entered: 02/23/2022) |
| 02/22/2022 | | Reset Hearings as to Zackary Ellis Sanders: Sentencing set for 4/1/2022 at 10:00 AM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (lber) (Entered: 02/23/2022) |
| 02/23/2022 | 582 | AMENDED ORDER as to Zackary Ellis Sanders: **ORDERED** that the sentencing for April 1, 2022 at 10:00 a.m. is **RESCHEDULED** to **Friday, April 1, 2022 at 8:00 a.m.** Signed by District Judge T. S. Ellis, III on 02/23/2022. (tran) (Entered: 02/23/2022) |
| 02/23/2022 | | Reset Hearings as to Zackary Ellis Sanders: **Sentencing reset for 4/1/2022 at 08:00 AM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (tran) (Entered: 02/23/2022) |
| 03/14/2022 | 583 | MOTION to Seal by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order) (Jeffress, Jonathan) (Entered: 03/14/2022) |
| 03/14/2022 | 584 | Memorandum by Zackary Ellis Sanders re 583 MOTION to Seal (Jeffress, Jonathan) (Entered: 03/14/2022) |
| 03/14/2022 | 585 | MOTION for New Trial *and to Reconsider Motions to Compel and Motions to Suppress* by Zackary Ellis Sanders. (Jeffress, Jonathan) (Entered: 03/14/2022) |
| 03/14/2022 | 586 | Memorandum by Zackary Ellis Sanders re 585 MOTION for New Trial *and to Reconsider Motions to Compel and Motions to Suppress* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38, # 39 Exhibit 39, # 40 Exhibit 40, # 41 Exhibit 41, # 42 Exhibit 42, # 43 Exhibit 43, # 44 Exhibit 44, # 45 Exhibit 45)(Jeffress, Jonathan) (Entered: 03/14/2022) |
| 03/15/2022 | 587 | ORDERED that the government should file its response to defendant's motion for a new trial no later than Friday, March 18, 2022 at 5:00 p.m. as to Zackary Ellis Sanders. Signed by District Judge T. S. Ellis, III on 3/15/2022. (swil) (Entered: 03/15/2022) |
| 03/15/2022 | 588 | Sealed Memorandum in Support re 585 MOTION for New Trial *and to Reconsider Motions to Compel and Motions to Suppress* filed by Zackary Ellis Sanders. (Attachments: # 1 Exhibit 1, # 2 Exhibit 5, # 3 Exhibit 8, # 4 Exhibit 20, # 5 Exhibit 44, # 6 Exhibit 45) (lber) (Entered: 03/16/2022) |
| 03/17/2022 | 589 | MOTION to Seal *Portions of Notice of Filing and Entirety of Exhibits 1 and 2* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Jeffress, Jonathan) (Entered: 03/17/2022) |

| 03/17/2022 | 590 | Memorandum by Zackary Ellis Sanders re 589 MOTION to Seal *Portions of Notice of Filing and Entirety of Exhibits 1 and 2* (Jeffress, Jonathan) (Entered: 03/17/2022) |
| 03/17/2022 | 591 | NOTICE *of Filing of Two Supplemental Exhibits* by Zackary Ellis Sanders re 585 MOTION for New Trial *and to Reconsider Motions to Compel and Motions to Suppress* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Jeffress, Jonathan) (Entered: 03/17/2022) |
| 03/17/2022 | 592 | Sealed Notice of Filing Two Supplemental Exhibits re 585 MOTION for New Trial *and to Reconsider Motions to Compel and Motions to Suppress* filed by Zackary Ellis Sanders (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (lber) (Attachment 1 replaced on 3/21/2022) (lber, ). (Entered: 03/18/2022) |
| 03/18/2022 | 593 | RESPONSE in Opposition by USA as to Zackary Ellis Sanders re 585 MOTION for New Trial *and to Reconsider Motions to Compel and Motions to Suppress* (Attachments: # 1 Exhibit 1)(Clayman, William) (Entered: 03/18/2022) |
| 03/21/2022 | 594 | MOTION to Seal *Portions of Reply to the Governments Response to his Motion for New Trial and to Reconsider Motions to Compel and Motions to Suppress* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Jeffress, Jonathan) (Entered: 03/21/2022) |
| 03/21/2022 | 595 | Memorandum by Zackary Ellis Sanders re 594 MOTION to Seal *Portions of Reply to the Governments Response to his Motion for New Trial and to Reconsider Motions to Compel and Motions to Suppress* (Jeffress, Jonathan) (Entered: 03/21/2022) |
| 03/21/2022 | 596 | Reply by Zackary Ellis Sanders re 593 Response in Opposition *to the Motion for New Trial and to Reconsider Motions to Compel and Motions to Suppress* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7)(Jeffress, Jonathan) (Entered: 03/21/2022) |
| 03/22/2022 | 597 | MOTION to Seal by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order) (Jeffress, Jonathan) (Entered: 03/22/2022) |
| 03/22/2022 | 598 | Memorandum by Zackary Ellis Sanders re 597 MOTION to Seal (Jeffress, Jonathan) (Entered: 03/22/2022) |
| 03/22/2022 | 599 | NOTICE *of Filing of Supplemental Exhibits* by Zackary Ellis Sanders re 585 MOTION for New Trial *and to Reconsider Motions to Compel and Motions to Suppress* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit)(Jeffress, Jonathan) (Entered: 03/22/2022) |
| 03/22/2022 | 600 | Reply in re 593 Response in Opposition filed by USA. (lber) (Entered: 03/23/2022) |
| 03/23/2022 | 601 | SEALED Notice of Filing Sealed Exhibit 7 599 NOTICE of Filing of Supplemental Exhibits by Zackary Ellis Sanders (Attachments: # 1 Sealed Exhibit 7) (lber) (Entered: 03/24/2022) |
| 03/24/2022 | 602 | PRESENTENCE INVESTIGATION REPORT (Sentencing Presentence Investigation Report) (SEALED - government and defense counsel) as to Zackary Ellis Sanders. (Attachments: # 1 Letter Attorney)(penn, carrie) (Entered: 03/24/2022) |
| 03/25/2022 | 604 | Position on Sentencing by USA as to Zackary Ellis Sanders (Clayman, William) (Entered: 03/25/2022) |
| 03/25/2022 | 605 | MOTION to Seal *604 Position on Sentencing* by USA as to Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Clayman, William) (Entered: 03/25/2022) |
| 03/25/2022 | 606 | Sealed Document re 604 Position on Sentencing filed by USA. (lber) (Entered: |

| | | 03/28/2022) |
|---|---|---|
| 03/28/2022 | 607 | MOTION for Return of Non-Contraband Seized Property and, Alternatively, Objection to Entry of Preliminary Order of Forfeiture by Zackary Ellis Sanders. (Ginsberg, Nina) (Entered: 03/28/2022) |
| 03/28/2022 | 608 | Memorandum in Support by Zackary Ellis Sanders re 607 MOTION for Return of Non-Contraband Seized Property and, Alternatively, Objection to Entry of Preliminary Order of Forfeiture (Ginsberg, Nina) (Entered: 03/28/2022) |
| 03/29/2022 | 609 | NOTICE OF ATTORNEY APPEARANCE Annie Zanobini appearing for USA. (Zanobini, Annie) (Entered: 03/29/2022) |
| 03/29/2022 | 610 | MOTION for Forfeiture of Property --*Entry of Preliminary Order of Forfeiture and Response in Opposition to Defendant's Motion for Return of Property* by USA as to Zackary Ellis Sanders. (Attachments: # 1 Exhibit, # 2 Proposed Order)(Zanobini, Annie) (Entered: 03/29/2022) |
| 03/30/2022 | 611 | ORDERED that the government's motion to seal the government's response in opposition to defendant's motion (Dkt. 458) is GRANTED and the government's response will be SEALED until further Order of the Court (See Order for Details). Signed by District Judge T. S. Ellis, III on 3/30/2022. (lber) (Entered: 03/30/2022) |
| 03/31/2022 | 612 | RESPONSE in Opposition by Zackary Ellis Sanders re 610 MOTION for Forfeiture of Property --*Entry of Preliminary Order of Forfeiture and Response in Opposition to Defendant's Motion for Return of Property* (Jeffress, Jonathan) (Entered: 03/31/2022) |
| 03/31/2022 | 613 | MOTION to Seal *Portions of Third Supplement to Motion for New Trial and to Reconsider Motions to Compel and Motions to Suppress* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Jeffress, Jonathan) (Entered: 03/31/2022) |
| 03/31/2022 | 614 | Memorandum by Zackary Ellis Sanders re 613 MOTION to Seal *Portions of Third Supplement to Motion for New Trial and to Reconsider Motions to Compel and Motions to Suppress* (Jeffress, Jonathan) (Entered: 03/31/2022) |
| 03/31/2022 | 615 | SEALED MEMORANDUM OPINION as to Zackary Ellis Sanders (tran, c/m on 03/31/22) (Entered: 03/31/2022) |
| 03/31/2022 | 616 | **ORDERED** that the parties are **DIRECTED** to meet and confer regarding what redactions, if any at all, are necessary to the Sealed Memorandum Opinion so that a public version may be filed. The parties are **DIRECTED** to submit any proposed redactions on or before **Friday, April 8, 2022**. Signed by District Judge T. S. Ellis, III on 03/31/2022. (tran) (Entered: 03/31/2022) |
| 03/31/2022 | 617 | NOTICE *of Filing of Third Supplement to Motion for a New Trial and to Reconsider Motions to Compel and Motions to Suppress* by Zackary Ellis Sanders re 591 Notice (Other), 585 MOTION for New Trial *and to Reconsider Motions to Compel and Motions to Suppress* (Attachments: # 1 Exhibit 1)(Jeffress, Jonathan) (Entered: 03/31/2022) |
| 04/01/2022 | 618 | Under Seal Supplemental Objection re 602 Presentence Investigation Report filed by Zackary Ellis Sanders. (lber) (Entered: 04/01/2022) |
| 04/01/2022 | 619 | Under Seal Position on Sentencing filed by Zackary Ellis Sanders. (lber) (Entered: 04/01/2022) |
| 04/01/2022 | 620 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Sentencing held on 4/1/2022 for Zackary Ellis Sanders (1). |

USA appeared through William Clayman, Annie Zanobini, Seth Schlessinger and Jay Prabhu.

Deft appeared with counsels, Christopher Amolsch and Nina Ginsberg.

Gov't argues for a substantial g/l sentence with lifetime SR. Defense objects to Paragraphs 8 57, 60 62, the PO's application of the 4-level enhancement pursuant to USSG §2G2.1(b)(4)(A), 2-level enhancement pursuant to USSG §2G2.1(b)(6)(B) and the 5-level enhancement pursuant to USSG §4B1.5(b)(1) and request designation at FCI Butner-Low in North Carolina. Defense objections to paragraphs 60-62 in the PSR -overruled. Deft's objection to the PSR calculation, pursuant to USSG §2G2.1(b)(4)(A) -overruled; (2) objection to the PSR calculation, pursuant to USSG §2G2.1(b)(6)(B) -overruled; (3) objection to the PSR calculation, pursuant to USSG §4B1.5(b)(1) -overruled. COURT adopts the PSR with a change directing the PO to add to the PSR that the deft denies the actions mentioned in paragraphs 23, 24, 42, 45, 51, and 55 as this information was retrieved either from an FBI Agent or another law enforcement agent outside of the United States. Awards, letters from relatives and physicians submitted to the Court by the deft to be made part of the PSR. The Court permits MV1s mother to speak. COURT sentences deft to:

**216 months total BOP** with credit for time served as computed by the BOP pursuant to statute.

216 months on Counts 1, 2, 3, 4, 5, 6, 7, 8 9, 10, and 11 (concurrent)

120 months on Count 12 (concurrent with counts 1 through 11)

**Lifetime total SR Term** w/special conditions

Lifetime Term on Counts 1, 2, 3, 4, 5 (concurrent)

5 years on Counts 6, 7, 8 9, 10, and 11 (concurrent to counts 1 through 5)

5 years on Count 12 (concurrent to counts 1 through 5)

$6,000 Restitution due immediately/mthly installments of $100 to begin w/n 60 days of release from custody; Interest waived. Parties to submit agreed upon Restitution Order.

$60,000 SA under 18 U.S.C. §3014 based on future earnings ability with penalty and interest waived.

Court finds deft indigent and imposes a zero amount on Special Assessment under 18 U.S.C. §2259A(a)(3).

$1200 SA ($100 on each count).

Forfeiture to be determined at a later date. Defense to file brief by April 8, 2022 and government will have until April 15, 2022 to file a response. Court to rule on the papers if oral arguments is not needed. Deft orally noted appeal. Defense to submit financial information to the PO.

Court recommends deft be housed at ADC and not be removed until BOP designates a specific facility where the deft will be transported directly to serve his sentence. The Court further notes that the deft hired an expert who recommended deft be designated to FCI Butner, Low in NC. The Court furthermore recommends that the deft's medication, Kesimpta, be administered as prescribed by the deft's doctors.

Deft remanded.

Court Reporter: R. Stonestreet

(tran) (Entered: 04/01/2022)

| 04/01/2022 | 621 | JUDGMENT as to Zackary Ellis Sanders (1): **216 months total BOP** |
|---|---|---|
| | | 216 months on Counts 1, 2, 3, 4, 5, 6, 7, 8 9, 10, and 11 (concurrent) |
| | | 120 months on Count 12 (concurrent with counts 1 through 11) |
| | | **Lifetime total SR Term** w/special conditions |
| | | Lifetime Term on Counts 1, 2, 3, 4, 5 (concurrent) |
| | | 5 years on Counts 6, 7, 8 9, 10, 11, 12 (concurrent to counts 1 through 5) |
| | | Restitution: $6,000 |

**JA56**

|  |  | SA JVTA: $60,000<br>SA: $1200 ($100 on each count). Signed by District Judge T. S. Ellis, III on 04/01/2022. (tran, ) (Entered: 04/01/2022) |
|---|---|---|
| 04/01/2022 | 622 | Sealed Statement of Reasons as to Zackary Ellis Sanders. (tran) (Entered: 04/01/2022) |
| 04/01/2022 | 623 | Confidential Information Page re: Judgment as to Zackary Ellis Sanders. (tran) (Entered: 04/01/2022) |
| 04/01/2022 | 625 | Under Seal Third Supplemental re 585 MOTION for New Trial *and to Reconsider Motions to Compel and Motions to Suppress* filed by Zackary Ellis Sanders. (lber) (Entered: 04/04/2022) |
| 04/04/2022 | 624 | OBJECTIONS TO THE SPECIAL CONDITIONS OF SUPERVISION re 621 JUDGMENT filed by Zackary Ellis Sanders. (Amolsch, Christopher) Modified on 4/4/2022 (lber). (Entered: 04/04/2022) |
| 04/04/2022 |  | Notice of Correction re 624 MOTION to Modify Conditions of Release. The filing user has been notified the incorrect docket event was used. (lber) (Entered: 04/04/2022) |
| 04/06/2022 | 626 | TRANSCRIPT of Proceedings held on April 1, 2022, before Judge T.S. Ellis, III. Court reporter/transcriber Rebecca Stonestreet, Telephone number 240-426-7767. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 5/6/2022. Redacted Transcript Deadline set for 6/6/2022. Release of Transcript Restriction set for 7/5/2022.(stonestreet, rachel) (Entered: 04/06/2022)** |
| 04/08/2022 | 627 | NOTICE *of Filing of Redacted Memorandum Opinion and Proposed Restitution Order* by USA as to Zackary Ellis Sanders re 616 Order, (Attachments: # 1 Exhibit 2 - Proposed Restitution Order)(Clayman, William) (Entered: 04/08/2022) |
| 04/08/2022 | 628 | FILED IN ERROR - MOTION to Seal *Portions of his Response to the March 31, 2022 Order* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Jeffress, Jonathan) Modified on 4/8/2022 (dvanm, ). (Entered: 04/08/2022) |
| 04/08/2022 | 629 | MOTION to Seal *Portions of his Response to the March 31, 2022 Order* by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Jeffress, Jonathan) (Entered: 04/08/2022) |
| 04/08/2022 | 630 | Memorandum by Zackary Ellis Sanders re 629 MOTION to Seal *Portions of his Response to the March 31, 2022 Order* (Jeffress, Jonathan) (Entered: 04/08/2022) |
| 04/08/2022 | 631 | RESPONSE by Zackary Ellis Sanders re 616 Order, *Objecting to Government's Proposed Redactions* (Jeffress, Jonathan) (Entered: 04/08/2022) |
| 04/08/2022 | 632 | Supplemental Memorandum by Zackary Ellis Sanders re 607 MOTION for Return of Non-Contraband Seized Property and, Alternatively, Objection to Entry of Preliminary Order of Forfeiture (Jeffress, Jonathan) (Entered: 04/08/2022) |
| 04/11/2022 | 633 | NOTICE *of Filing of Request for Hearing* by Zackary Ellis Sanders re 632 Supplemental Memorandum (Jeffress, Jonathan) (Entered: 04/11/2022) |

| 04/11/2022 | 635 | Under Seal Response in re 616 Order filed by Zachary Ellis Sanders. (lber) (Entered: 04/12/2022) |
|---|---|---|
| 04/12/2022 |  | Notice of Correction re 633 Notice (Other). The filing user has been notified to refile the Notice as a Notice of Hearing. (lber) (Entered: 04/12/2022) |
| 04/13/2022 | 636 | NOTICE OF APPEAL re 621 JUDGMENT by Zackary Ellis Sanders Filing fee $ 505, receipt number AVAEDC-8342682. (Jeffress, Jonathan) Modified text on 4/14/2022 (lber). (Entered: 04/13/2022) |
| 04/13/2022 | 637 | Notice of Hearing Date set for April 22, 2022 re 632 Supplemental Memorandum, 607 MOTION for Return of Non-Contraband Seized Property and, Alternatively, Objection to Entry of Preliminary Order of Forfeiture (Jeffress, Jonathan) (Entered: 04/13/2022) |
| 04/13/2022 |  | Set/Reset Deadlines re Motion or Report and Recommendation in case as to Zackary Ellis Sanders 607 MOTION for Return of Non-Contraband Seized Property and, Alternatively, Objection to Entry of Preliminary Order of Forfeiture . Motion Hearing set for 4/22/2022 at 10:00 AM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (clar, ) (Entered: 04/13/2022) |
| 04/13/2022 | 638 | ORDER as to Zackary Ellis Sanders: **ORDERED** that the hearing on defendant's objections to the government's forfeiture order is **CONTINUED** until **Thursday, April 28, 2022 at 1:00 p.m.** Signed by District Judge T. S. Ellis, III on 04/13/2022. (tran) (Entered: 04/13/2022) |
| 04/13/2022 |  | Reset Motion in case as to Zackary Ellis Sanders 610 MOTION for Forfeiture of Property --*Entry of Preliminary Order of Forfeiture and Response in Opposition to Defendant's Motion for Return of Property*, 607 MOTION for Return of Non-Contraband Seized Property and, Alternatively, Objection to Entry of Preliminary Order of Forfeiture . **Motion Hearing reset for 4/28/2022 at 01:00 PM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (tran) (Entered: 04/13/2022) |
| 04/14/2022 | 639 | Transmission of Notice of Appeal to 4CCA as to Zackary Ellis Sanders to US Court of Appeals re 636 Notice of Appeal (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov). (lber) (Main Document 639 replaced on 4/14/2022) (lber). (Entered: 04/14/2022) |
| 04/14/2022 | 640 | Letter to the Court from the USCA. (lber) (Entered: 04/14/2022) |
| 04/15/2022 | 641 | Reply by USA as to Zackary Ellis Sanders re 632 Supplemental Memorandum (Zanobini, Annie) (Entered: 04/15/2022) |
| 04/15/2022 | 642 | Sealed Order. Signed by District Judge T. S. Ellis, III on 4/15/2022. (lber c/s to counsel for deft, USAO, USPO) (Entered: 04/15/2022) |
| 04/19/2022 | 643 | RESPONSE in Opposition by Zackary Ellis Sanders re 610 MOTION for Forfeiture of Property --*Entry of Preliminary Order of Forfeiture and Response in Opposition to Defendant's Motion for Return of Property* (Attachments: # 1 Exhibit Order, US v. Reaid, # 2 Exhibit Order, US v. Conrad, # 3 Exhibit Griffeye website)(Jeffress, Jonathan) (Entered: 04/19/2022) |
| 04/21/2022 | 644 | USCA Case Number 22-4242 4th Circuit, case manager Anisha Walker, for 636 Notice of Appeal filed by Zackary Ellis Sanders. (lber) (Entered: 04/22/2022) |
| 04/26/2022 | 645 | Transcript Redaction Request in case as to Zackary Ellis Sanders re 626 Transcript,,, filed by attorney William Clayman (Clayman, William) (Entered: 04/26/2022) |

| 04/26/2022 | 646 | ORDER in re 645 Transcript Redaction Request. ORDERED that the government's motion (Dkt. 645) is GRANTED and the redaction proposed in the government's motion will be made to redact identifying information concerning one of the minor victims in this case. Signed by District Judge T. S. Ellis, III on 4/26/2022. (swil) (Entered: 04/26/2022) |
|---|---|---|
| 04/26/2022 | 647 | Sealed Motion by Zackary Ellis Sanders. (kgall) (Entered: 04/26/2022) |
| 04/27/2022 | 648 | ORDERED that if defendant, by counsel, waives his right to appear at the forfeiture hearing, then the forfeiture hearing will occur as scheduled at 1:00 p.m. at Thursday, April 28, 2022. If defendant does not waive his right to appear at the forfeiture hearing, then the hearing will be POSTPONED until Friday, April 29, 2022 at 3:30 p.m. Signed by District Judge T. S. Ellis, III on 4/27/2022. (kgall) (Entered: 04/27/2022) |
| 04/27/2022 |  | Reset Hearing re Motion in case as to Zackary Ellis Sanders 610 MOTION for Forfeiture of Property --*Entry of Preliminary Order of Forfeiture and Response in Opposition to Defendant's Motion for Return of Property*, 607 MOTION for Return of Non-Contraband Seized Property and, Alternatively, Objection to Entry of Preliminary Order of Forfeiture . **Motion Hearing reset for 4/29/2022 at 03:30 PM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (tran) (Entered: 04/27/2022) |
| 04/28/2022 | 649 | Sealed Order as to Zackary Ellis Sanders. Signed by District Judge T. S. Ellis, III on 04/28/2022. (tran, c/m on 04/28/22) (Entered: 04/28/2022) |
| 04/29/2022 | 650 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Motion Hearing as to Zackary Ellis Sanders held on 4/29/2022 re 610 MOTION for Forfeiture of Property --*Entry of Preliminary Order of Forfeiture and Response in Opposition to Defendant's Motion for Return of Property* filed by USA, 607 MOTION for Return of Non-Contraband Seized Property and, Alternatively, Objection to Entry of Preliminary Order of Forfeiture filed by Zackary Ellis Sanders.<br>USA appeared by Annie Zanobini and Seth Schlessinger. Defendant appeared with counsel Nina Ginsberg.<br>Matter argued and taken under advisement. Order to follow.<br>Defendant remanded.<br>Court Reporter: R. Stonestreet<br>(tran) (Main Document 650 replaced on 4/29/2022) (tran). Modified on 4/29/2022 (tran). (Entered: 04/29/2022) |
| 04/29/2022 | 651 | DOCUMENT REMOVED as per TSE Chambers instructions. Modified on 4/29/2022 (tran). (Entered: 04/29/2022) |
| 05/02/2022 | 652 | Redaction Transcript re 626 Transcript in case as to Zackary Ellis Sanders(stonestreet, rachel) (Entered: 05/02/2022) |
| 05/10/2022 | 653 | Supplemental Memorandum by Zackary Ellis Sanders re 607 MOTION for Return of Non-Contraband Seized Property and, Alternatively, Objection to Entry of Preliminary Order of Forfeiture (Deubler, Zachary) (Entered: 05/10/2022) |
| 05/12/2022 | 654 | ORDER re 649 Sealed Order (see Order for details). Signed by District Judge T. S. Ellis, III on 5/12/2022. (nneb) (Entered: 05/12/2022) |
| 05/18/2022 | 655 | MOTION to Withdraw as Attorney by Jade Chong-Smith. by Zackary Ellis Sanders. (Attachments: # 1 Proposed Order)(Jeffress, Jonathan) (Entered: 05/18/2022) |
| 05/18/2022 | 656 | ORDER granting 655 Motion to Withdraw Jade Chong-Smith as Attorney. Signed by District Judge T. S. Ellis, III on 5/18/2022. (dvanm) (Entered: 05/18/2022) |

| **PACER Service Center** |
|:---:|
| **Transaction Receipt** |
| 06/09/2022 10:17:26 |

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:20-MJ-114 |
| | ) | |
| ZACKARY ELLIS SANDERS, | ) | **UNDER SEAL** |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**AFFIDAVIT IN SUPPORT OF A
CRIMINAL COMPLAINT AND AN ARREST WARRANT**

I, Jeremy Obie, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1.      I have been employed as a Special Agent by the Federal Bureau of Investigation

("FBI") since March 2016, and I am currently assigned to the FBI Washington Field Office's Child

Exploitation and Human Trafficking Taskforce.  While employed by the FBI, I have investigated

federal criminal violations related to counterterrorism, violent crime, high technology or cyber-

crime, missing persons, child exploitation, and child pornography.  I have gained experience in

these violations by conducting investigations into the sexual exploitation of children, as well as

the distribution and receipt of child pornography.  I have received training in the area of child

pornography and child exploitation.  Additionally, I have investigated and assisted in the

investigation of criminal matters involving: the sex trafficking of children, in violation of 18

U.S.C. § 1591; and the sexual exploitation of children, in violation of 18 U.S.C. §§ 2251, 2252,

2252A, and 2422.  Moreover, I am a federal law enforcement officer authorized by the Attorney

General to enforce violations of the laws of the United States, including but not limited to 18

U.S.C. §§ 1591, 2251, 2252, 2252A, 2422, and 2423.  Prior to this assignment, I worked for the

**JA61**

Department of Defense as an Electrical Engineer. I have a Bachelor's of Science and a Master's of Science in Electrical Engineering.

2.      The statements contained in this affidavit are based in part on information provided by U.S. federal law enforcement agents; written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents; information gathered from the service of administrative subpoenas; the results of physical and electronic surveillance conducted by law enforcement agents; independent investigation and analysis by law enforcement agents/analysts and computer forensic professionals; and my experience, training, and background as a Special Agent. This affidavit contains information necessary to support probable cause for this application. Because this affidavit is being submitted for the limited purpose of establishing probable cause for this application, I have not included every detail known to the government. Rather, I have set forth only those facts that I believe are necessary to establish probable cause.

3.      I submit this affidavit in support of a criminal complaint and arrest warrant charging ZACKARY ELLIS SANDERS ("SANDERS"), of McLean, Virginia, which is within the Eastern District of Virginia, with the production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e). For the reasons set forth below, I submit that probable cause exists to believe that in at least or about November 2019, SANDERS knowingly employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, or attempted to do so, and the visual depiction was transported or transmitted using any means or facility of interstate or foreign commerce.

**STATUTORY AUTHORITY AND DEFINITIONS**

4.      Title 18, U.S. Code, Section 2251(a) prohibits a person from employing, using, persuading, inducing, enticing, or coercing any minor to engage in any sexually explicit conduct

for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting

a live visual depiction of such conduct, if such person knows or has reason to know that such visual

depiction will be transported or transmitted using any means or facility of interstate or foreign

commerce, or if such visual depiction has actually been transported or transmitted using any means

or facility of interstate or foreign commerce.

5.      The term "minor," as defined in 18 U.S.C. § 2256(1), means any person under the

age of 18 years.

6.      The term "sexually explicit conduct," as defined in 18 U.S.C. § 2256(2)(A)(i)–(v),

means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal

genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c)

masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic

area of any person.

7.      The term "visual depiction," as defined in 18 U.S.C. § 2256(5), includes

undeveloped film and videotape, data stored on computer disc or other electronic means which is

capable of conversion into a visual image, and data that is capable of conversion into a visual

image that has been transmitted by any means, whether or not stored in a permanent format.

8.      The term "child pornography," as defined in 18 U.S.C. § 2256(8), is any visual

depiction, including any photograph, film, video, picture, or computer or computer-generated

image or picture, whether made or produced by electronic, mechanical or other means, of sexually

explicit conduct, where (a) the production of the visual depiction involved the use of a minor

engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image,

or computer-generated image that is, or is indistinguishable from, that of a minor engaged in

3

sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

## SUMMARY OF PROBABLE CAUSE

9.     The FBI, in conjunction with other law enforcement entities, is investigating websites on which visitors can access and view child sexual abuse material.  Through this investigation, the FBI received information that on or about May 23, 2019, an individual connected to the internet through a specific Internet Protocol ("IP") address[1] and accessed a website that is known to law enforcement to advertise child pornography.  Law enforcement determined through publicly available information that this IP address was issued by Cox Communications.  Records obtained from Cox Communications revealed that, on or about May 23, 2019, this IP address was assigned to a relative of SANDERS at a residential address in McLean, Virginia, (the "SUBJECT PREMISES").

10.     On or about February 12, 2020, law enforcement agents executed a federal search warrant, which had been issued by the U.S. District Court for the Eastern District of Virginia, to search the SUBJECT PREMISES for child-pornography-related evidence.  During the search of the SUBJECT PREMISES, law enforcement determined that its only occupants were SANDERS and his parents.

---

[1] Based on my training and experience, I know that an "Internet Protocol address" is a unique numeric or alphanumeric string used by a computer or other digital device to access the internet. Every computer or device accessing the internet must be assigned an IP address so that internet traffic sent from and directed to that computer or device may be directed properly from its source to its destination. Most Internet Service Providers ("ISPs") control a range of IP addresses. ISPs typically maintain logs of the subscribers to whom IP addresses are assigned on particular dates and times.

4

**JA64**

11.     SANDERS voluntarily agreed to be interviewed by law enforcement during the search of the SUBJECT PREMISES. In this interview, SANDERS admitted to law enforcement that he accessed and received child pornography through websites on the Tor network.[2] SANDERS also stated that he transferred child-pornography material that he downloaded over the internet from his laptop to external media storage devices.

12.     Law enforcement seized a number of electronic devices from the SUBJECT PREMISES pursuant to the search warrant, including an Apple iPhone from SANDERS's person and multiple electronic devices from SANDERS's bedroom in the residence. The devices seized from SANDERS's bedroom include several thumb drives, an Apple iPad, and an HP laptop.

13.     Law enforcement personnel conducted a forensic examination of the seized devices. The forensic examination of the Apple iPad uncovered personal and professional documents and communications indicating that the device belonged to SANDERS. Additionally, the forensic examination uncovered numerous conversations on Kik Messenger ("Kik"), a mobile messaging application,[3] in which SANDERS, using the Kik username "DCSir" with a display name that includes the phrase "Sir Zack," knowingly persuaded and attempted to persuade purported minors to produce images and videos of themselves engaging in sexually explicit conduct and to send those images and videos to SANDERS over the internet.

---

[2] Based on my training and experience, I know that the "Tor network" is a computer network available to internet users that is designed specifically to facilitate anonymous communication over the internet.

[3] Based on my training and experience, I know that Kik Messenger is a mobile application designed for chatting or messaging. To use this application, a user downloads the application to a mobile phone or digital device via a service such as the iOS App Store or Apple iTunes. Once the application is installed, a user is prompted to create an account and username, as well as a display name that is seen by other users when transmitting messages back and forth.

14.    Specifically, after learning that SANDERS's iPad had been used to communicate with others on Kik using the Kik username DCSir, I conducted a search of the internet for information related to the DCSir account and discovered multiple similar postings on an online "sexting" forum made on various dates in 2018 and 2019 in which the individual who wrote the posting stated that he was looking for "boys" and advertised the Kik username DCSir.    For example, in a posting dated February 3, 2019, an individual wrote the following:

> Dominant Sir looking for boys who are in Virginia, Washington DC, Maryland, or New York City to meet. I expect you to do as you're told, be obedient, and respectful. Open to one-time meets, but would prefer a boy who truly desires to become my sub or slave long-term, eventually being collared and owned permanently.

> For those elsewhere in the country/world other than the areas I've listed, I'm looking for boys who want to be blackmailed.  This will be real, not a game. Make sure you understand this before messaging. Send a full body nude photo of yourself, as well as your age and where you are from.

> Kik: DCSir

15.    The forensic examination of SANDERS's iPad revealed that, on or about November 10, 2019, a Kik user ("MINOR-1")[4] contacted SANDERS on his DCSir Kik account and said "Hello sir zack," "I am 14 m uk".  Based on my training and experience, I know that MINOR-1's statement was intended to convey that he was a 14-year-old male from the United Kingdom.  In response, SANDERS asked MINOR-1 to send him "a live full body pic".  MINOR-1 then sent SANDERS an image that MINOR-1 appears to have taken of himself and that depicts an approximately 14-year-old boy, who is standing fully nude and posing to expose his penis. SANDERS asked MINOR-1 how MINOR-1 found him, and MINOR-1 responded that he found

---

[4] This Kik user's username and display name are known to law enforcement but are not included here to protect victim privacy.  *See* 18 U.S.C. § 3509.

6

SANDERS's Kik information on an online forum that MINOR-1 referred to as the "[s]ex chat"

forum.

      16.     SANDERS then had the following exchange with MINOR-1:[5]

SANDERS:    Okay. Before we begin, are you sure you fully read, understand, and accept what was written in the post on that site?

MINOR-1:    Yes sir

SANDERS:    Good. You are to record a video. You will show me your entire body, state your full name, and tell me both why you want to become a slave and why you feel you would be a good slave.

MINOR-1:    Can I message u it i'm at my nans atm

SANDERS:    When would you be home and able to record the video?

SANDERS:    ?

MINOR-1:    tomorrow sir?

SANDERS:    Alright. Send me the video tomorrow. We will talk and begin once I have received the video.

MINOR-1:    okay sir

SANDERS:    Do not forget.

MINOR-1:    sir what does this training entail

SANDERS:    What is it that you're worried about?

MINOR-1:    Nothing i just want to know like what ima do

SANDERS:    Okay. Once you send me the video I will answer that. I don't want my answer to that question to influence what you say in the video. So once you do that, I'll answer your question.

. . .

MINOR-1:    if i send u a vid of me naked and then i message why i want to be ur slave

---

[5] All text abbreviations and typographical errors included in the excerpted text language are original.

7

MINOR-1 :    does that work

SANDERS:    Why don't you want to talk?

MINOR-1 :    Because my nan may hear

MINOR-1 :    sir?

MINOR-1 :    Can i just send u some pics and tell u why i won't let u down master

MINOR-1 :    and i'll do anything for u

MINOR-1 :    ...

SANDERS:    I want you to speak, so either go to a room where she won't hear, or send it tomorrow.

17.    The following day, on or about November 11, 2019, MINOR-1 sent SANDERS a video depicting what appears to be a nude, young male from below the chest, fully exposing his penis and testicles while manipulating his penis in his hand. An individual can be heard in the video identifying himself by name. SANDERS told MINOR-1 to send another video where SANDERS can see MINOR-1's full body, including his "face, ass, everything". MINOR-1 then sent SANDERS a 14-second video depicting what appears to be the same minor male depicted in the image that MINOR-1 sent the day before, fully nude. In the video, the minor sets the video recording device down, takes a few steps back, and then turns in a circle, pausing at each 90-degree interval so that his penis and buttocks are fully exposed.

18.    In response, SANDERS told MINOR-1: "You're a cute little faggot. You will always do as I say. From this point forward I am going to train you. You will learn to become a perfect slave. As soon as you are old enough you will come here and permanently serve me as my slave." When MINOR-1 asked SANDERS what he will do in his training, SANDERS replied:

And you will be taught how I expect you to act, speak, look, dress. You will be given tasks, assignments, orders, and punishments all to prepare both your mind

8

**JA68**

and your body. You will learn you are my property, that you belong to me, and that your sole purpose is to serve me.

19.     After MINOR-1 informed SANDERS that his birthday had recently passed, SANDERS and MINOR-1 had the following exchange:

SANDERS:    So you just turned 14 then? And I just wanted to know when you might be able to come here.

MINOR-1:    ye

SANDERS:    Oh you are young. Okay. I want you to shave your entire body, except for your head.

MINOR-1:    I've never shaved

SANDERS:    I can see that.

MINOR-1:    dunno how to

MINOR-1:    i'm dumb

SANDERS:    I'm sure you can figure it out.

MINOR-1:    Do i ahev to shave master

SANDERS:    Yes.

MINOR-1:    what if i don't

MINOR-1:    what is the punishment

MINOR-1:    ?

SANDERS:    If you don't do something when I tell you to you'll be punished but you'll still have to do it…

SANDERS:    You need to answer me boy.

MINOR-1:    Okay

MINOR-1:    but i don't wnat to shave

MINOR-1:    sur

9

**JA69**

SANDERS:    I don't care. It's not all about what you want.

MINOR-1:    Yes sir

SANDERS:    Now you're going to shave, and then we'll discuss you punishment for not doing
            what I said the first few times I told you.

MINOR-1:    okay sir

MINOR-1:    but my mum doesn't want me to shave

MINOR-1:    what do i do

SANDERS:    What did she say? Why did you even talk to her about it?

MINOR-1:    I didn't

MINOR-1:    she doesn't wnat me to shave until i'm older

SANDERS:    How do you know?

MINOR-1:    she's told me

MINOR-1:    do all my pubes all ahve to be gone

SANDERS:    Yes.

MINOR-1:    Please sir

MINOR-1:    i don't wnat to

MINOR-1:    shave

MINOR-1:    Anything else

MINOR-1:    I'll do anything else

MINOR-1:    Litter play anything u desire

MINOR-1:    literally

MINOR-1:    Please sir

MINOR-1:    ?

MINOR-1:    I wnat this i just can't shave yet

10

**JA70**

MINOR-1:    master?

SANDERS:    No. And every time I have to tell you again the punishment is getting worse.

20.    On or about November 14, 2019, after agreeing to shave, MINOR-1 sent SANDERS an image focused on what appears to be his erect penis with his pubic hair partially shaven off. In response, SANDERS wrote "I'm sure you can get a little more." MINOR-1 then sent SANDERS a different image focused on what appears to be his erect penis with his pubic hair partially shaven off. After receiving this image, SANDERS wrote "Better, but you still need to do a little more" and "Make it so I can't see any hair." MINOR-1 then sent SANDERS an image focused on what appears to be his erect penis with his pubic hair completely shaven off. In response, SANDERS wrote "Okay, now send me a full body pic," and MINOR-1 then sent SANDERS an image of the same fully nude male described above with his erect penis exposed.

21.    After receiving the "full body pic," SANDERS sent MINOR-1 the following message: "Good boy. Now for your punishment. You're going to slap yourself on your balls as hard as you can 40 times. You will record yourself doing this and then send me the video." MINOR-1 then sent SANDERS a 49-second video of what appears to be the same fully nude minor boy clutching his penis with one hand to expose his testicles and slapping his testicles with the other hand approximately 40 times while wincing at various points. After sending the video, MINOR-1 wrote "that's hurt". SANDERS replied "Good. Now if you ever disobey me again the punishment will be worse next time."

22.    The forensic examination of SANDERS's iPad uncovered other sexually explicit chats from in or around October 2019 to in or around February 10, 2020, that SANDERS had on Kik with individuals who identified themselves as minors, including chats where SANDERS instructed the purported minors to send nude images or videos of themselves. A forensic

examination of the Apple iPhone seized from SANDERS's person during the search of the SUBJECT PREMISES similarly uncovered online chats from various mobile messaging platforms in which SANDERS appears to have asked purported minors in the Virginia area and elsewhere to take and send him nude images and videos of themselves, including at least one other chat from in which SANDERS instructed an individual who identified himself as a minor to take and send SANDERS a video of the purported minor repeatedly slapping his testicles as punishment.

23.    A forensic examination of the HP laptop seized from SANDERS's bedroom in the SUBJECT PREMISES uncovered multiple videos and images depicting minors engaged in sexually explicit conduct. For example, law enforcement found an approximately 19-minute video on the laptop that is a compilation of footage depicting what appears to be multiple adult men engaging in oral and anal sex with the same approximately 11-year-old boy, and at one point whipping the nude child with what appears to be a belt. At various points in the footage, the minor has his limbs bound with rope, is gagged with a cloth, and/or has a rope tied around his neck.

//

//

//

//

//

//

//

//

//

//

12

**JA72**

## CONCLUSION

24.    Based on the foregoing, I submit that there is probable cause to believe that in at

least or about November 2019, ZACKARY ELLIS SANDERS, of McLean, Virginia, knowingly

produced and attempted to produce child pornography, in violation of 18 U.S.C. § 2251(a) and (e),

and respectfully request that a criminal complaint and arrest warrant be issued for SANDERS.

Respectfully submitted,

_____
Jeremy Obie, Special Agent
Federal Bureau of Investigation

Sworn and subscribed to by telephone
this 19th day of March, 2020.

_____
The Honorable Ivan D. Davis
United States Magistrate Judge

13

**JA73**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:20-MJ-114 |
| | ) | |
| ZACKARY ELLIS SANDERS, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR**
**REVOCATION OF DETENTION ORDER**

The United States of America, by and through its attorneys, G. Zachary Terwilliger, United

States Attorney for the Eastern District of Virginia, and William G. Clayman, Special Assistant

United States Attorney (LT), files this response in opposition to the defendant's Motion for

Revocation of Detention Order.

The defendant has been charged by criminal complaint with production of child

pornography, which carries a mandatory minimum term of imprisonment of 15 years and a

presumption that the defendant is both a danger to the community and a risk of nonappearance

warranting pretrial detention. On March 20, 2020, the defendant appeared for a preliminary and

detention hearing before the Honorable John F. Anderson, during which the Court found probable

cause to support the criminal complaint. The Court also found that the defendant had failed to

rebut the presumption in favor of detention and that, even if he had, the government had proven

by clear and convincing evidence that no condition or combination of conditions of release in this

case will reasonably assure the safety of any other person and the community. In making this

finding, the Court specifically cited the "disturbing" nature and scope of the charged conduct.

The defendant now moves to revoke the Court's Order of Detention, proffering additional information about his community involvement and medical history and reiterating his claims before Judge Anderson that he should be released to the custody of his parents because of his personal history and the public health crisis posed by the outbreak of the novel coronavirus ("COVID-19"). Based on the nature and seriousness of the charged conduct, the weight of the evidence, the defendant's personal history and characteristics, and the screening procedures in place at the Alexandria Adult Detention Center ("ADC"), the United States submits that the defendant cannot rebut the presumption that no condition or combination of conditions will reasonably assure his appearance and the safety of the community and respectfully requests that the Court order him detained pending trial pursuant to 18 U.S.C. § 3142(e)(1).

## I.      FACTUAL SUMMARY AND PROCEDURAL HISTORY

On March 19, 2020, the defendant was charged by criminal complaint with production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e). The defendant came to the government's attention after an investigation conducted by the Federal Bureau of Investigation ("FBI") and other law enforcement entities revealed that an individual accessed a website that advertises child pornography using an IP address associated with the defendant's residence in McLean, Virginia. The FBI obtained a warrant to search this residence and executed it on February 12, 2020. During the search, the defendant told law enforcement in a voluntary interview that he accessed and downloaded child pornography using the Tor network, which is an internet network designed to facilitate anonymous communication over the internet. The defendant also told law enforcement that he operated his own food vending business that provided food and drinks at local youth sporting events, among other events, and that he employed high school students from his community.

**JA75**

The FBI seized a number of the defendant's electronic devices pursuant to the search warrant, including a laptop, an Apple iPad, and an Apple iPhone. Given the storage capacity of these items and the amount of data stored on them, law enforcement's forensic analysis of the defendant's electronic devices is ongoing. At the time the United States presented the criminal complaint to the Court on March 19, 2020, however, the FBI had uncovered significant and compelling forensic evidence establishing that the defendant committed a range of offenses involving the sexual exploitation of children. A forensic examination of the defendant's laptop, for example, uncovered multiple images and videos depicting child pornography, including a 19-minute video that depicts adult men performing violent, sadomasochistic sex acts on an approximately 11-year-old boy.

A forensic examination of the defendant's iPad similarly revealed that the defendant used the device to have sexually explicit conversations with minors over Kik Messenger ("Kik"), a mobile messaging application, using the Kik username "DCSir". The FBI searched the internet for information related to the DCSir username and discovered multiple postings on an online "sexting" forum from 2018 and 2019 in which a poster who indicated that they were using the DCSir account stated that they were looking for a boy to become a sexual slave.[1] In a posting from October 2019, for example, an individual wrote that they were "looking for true slave boys"

---

[1] Based on the defendant's motion and the transcript of the detention hearing, it appears that the defendant is referring to the "sexting" forum as the website referenced in Paragraph 9 of the affidavit in support of the criminal complaint. *See* Dkt. 13 at 7; *see also* Dkt. 4 at ¶ 9 ("Through this investigation, the FBI received information that on or about May 23, 2020, an individual connected to the internet through a specific [IP] address and accessed a website that is known to law enforcement to advertise child pornography."). The "sexting" forum is not the website described in Paragraph 9, although the defendant is correct that the "sexting" forum currently advises visitors that they must be over the age of 18 years. It appears from the transcript of the detention hearing that this confusion is the result of a misunderstanding about the multiple websites referenced in the affidavit during the cross-examination of the government's witness.

**JA76**

and that this was "not a fantasy or play", and provided the Kik username DCSir with instructions for those interested to send their age, sex, and location, and "a live full body photo" of themselves. And, in November 2019, a minor boy did just that, writing to the defendant over Kik that he was a 14-year-old boy from the United Kingdom and sending him an image of what appears to be a nude minor male with his penis exposed.[2]

The bulk of the defendant's Kik chat with this minor is excerpted in the affidavit in support of the criminal complaint. At no point during the conversation does the minor indicate that he is an adult who is pretending to be a minor, nor has the government found any evidence indicating that the minor communicated that to the defendant outside of Kik. In fact, the defendant asked the minor in the Kik chat when his birthday was and confirmed with him that he only recent turned 14 years old. The defendant then repeatedly ordered the minor to take and send him nude images and videos, including multiple images of the minor's genitals after commanding the minor to shave his pubic hair and a video of the minor slapping himself in the testicles "as hard as [he] can" 40 times as "punishment" for resisting the defendant's previous demands.

Additional sexually explicit chats with and about minors were recovered from the defendant's Kik account on his iPad, including group chats that appear to be administered by the defendant and geared towards teenaged males and master-slave sexual relationships. A forensic examination of the defendant's iPhone likewise uncovered chats from various mobile messaging applications in which the defendant asked individuals who identified themselves as minors to send him sexually explicit images and videos of themselves. In at least one of these chats, the defendant

---

[2] The FBI believes that it has identified the minor victim through additional investigation. While the response to the global spread of COVID-19 has complicated law enforcement's investigation and its ability to make contact with the minor's family, the FBI's additional investigation appears to confirm that this victim is, as stated in the Kik message, a minor living in the United Kingdom.

**JA77**

instructed an individual who identified himself as a minor to take and send the defendant a video of the minor slapping his testicles as a form of punishment for not promptly complying with the defendant's orders. The defendant also demanded that some of these individuals provide him with personally identifying information about themselves.

The defendant was arrested and made his initial appearance in this Court before the Honorable John F. Anderson on March 20, 2020, during which the government requested that the defendant be detained pending trial. At the defendant's request, the Court held the defendant's preliminary hearing and detention hearing that same day. During the detention hearing, the defendant's mother testified that the defendant had lived with her and his father in McLean, Virginia, since he graduated college in 2017 and that they would be willing to serve as third-party custodians if he is released. The defendant's mother also testified that they had several electronic devices in their home for work. At the end of the hearing, the Court denied the defendant's request to be released to the custody of his parents and ordered him detained, finding that he had failed to rebut the applicable presumption in favor of detention and that, even if he had, the "disturbing" and serious nature of the allegations against him provided clear and convincing evidence to believe that no condition or combination of conditions would reasonably assure the safety of any other person and the community if he were released.

## II.    LEGAL STANDARD

The defendant now moves to revoke Judge Anderson's Order of Detention pursuant to 18 U.S.C. § 3145(b), which provides the Court with the authority to review a detention order by a Magistrate Judge. This review is conducted *de novo*. *See United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989). Further, because Judge Anderson found probable cause to believe that the defendant engaged in the production of child pornography, in violation of 18 U.S.C. § 2251(a) and

(e), "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community[.]" 18 U.S.C. § 3142(e)(3)(E). The defendant bears the burden of rebutting this presumption. *Id.*

"For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance or the safety of others or the community, is sufficient; both are not required." *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001). In determining whether there are conditions of release that will reasonably ensure the defendant's appearance at trial and pretrial hearings and that will protect the safety of the community, a court must consider: (1) "the nature and circumstances of the offense charged," including whether the offense is a "crime of violence" or "involves a minor victim"; (2) "the weight of the evidence against" the defendant; (3) "the history and characteristics of" the defendant, including the defendant's physical and mental condition; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by" the defendant's release. 18 U.S.C. § 3142(g).

## III.    ARGUMENT FOR DETENTION

The defendant has failed to present sufficient evidence to rebut the presumption in favor of detention triggered by the charged offense. Indeed, the defendant's rebuttal relies primarily on the fact that he did not flee after the search of his residence, proffered information about his community involvement, and the availability of his parents to serve as third-party custodians. As Judge Anderson noted at the detention hearing, however, the defendant was living with his parents—and was presumably involved with his community—when he engaged in the charged conduct. In fact, during the search of his home, the defendant told the FBI that he sought out minors in his community to work for him. Further, while it is true that the defendant did not flee following the execution of the search warrant, the defendant was also not aware of the nature of

6

**JA79**

the charge against him and the penalty he will face if convicted until his arrest, which occurred only about a month after the search. And even assuming *arguendo* that the presumption in favor of detention does not apply here, the facts contained in the affidavit in support of the criminal complaint provide ample reason to conclude that pretrial detention is appropriate under 18 U.S.C. § 3142(e)(1).

### A.    The Nature and Circumstances of the Charged Offense

The defendant has engaged in serious criminal conduct that involves at least one minor victim, and likely many more. The information contained in the affidavit in support of the criminal complaint establishes that the defendant had a video file on his laptop depicting the sadomasochistic sexual abuse of a child while he was simultaneously exploiting and abusing a minor through online chats for his own sexual gratification. Notably, the defendant's pattern of abuse included demands that minor engage in painful and embarrassing sexual conduct as punishment for disobeying him. Where, as here, the victims of a defendant's conduct are minors, the danger posed by the defendant should he be released falls heaviest on society's most vulnerable and defenseless victims.

It is therefore no surprise that the Bail Reform Act designates crimes against children as a special category of offenses that is particularly deserving of the protections afforded by pretrial detention. As noted above, the Bail Reform Act instructs courts to presume that defendants accused of certain crimes against children, including violations of 18 U.S.C. § 2251(a) and (e), pose a specific danger to the community and a risk of flight. *See* 18 U.S.C. § 3142(e)(3)(E). It also designates such crimes as "crimes of violence," which is a factor that courts must consider when assessing whether pretrial detention is appropriate. *See* 18 U.S.C. §§ 3142(g)(1), 3156(a)(4)(C).

**JA80**

In this case, not only is the defendant's charged offense categorically more serious than certain other crimes that carry a presumption in favor of detention under the Bail Reform Act, but the defendant's conduct is particularly aggravated. Indeed, the child pornography found on the defendant's laptop and his Kik chat with the minor victim indicate that the defendant has a particular interest in the violent or sadomasochistic sexual abuse of children. The defendant was aware of the age of the minor when he ordered him to engage in the conduct described above, and the FBI's investigation has uncovered additional forensic evidence—including other chats, images, and videos on the defendant's iPad and iPhone—to establish that this Kik conversation was not an isolated incident or a one-time fantasy. Rather, it was part of a broader pattern of sexual misconduct with minors on the part of the defendant. Given the ubiquity of electronic devices capable of accessing the internet and the information contained in the affidavit in support of the criminal complaint, the government believes that no condition or combination of conditions of release will ensure that the defendant does not continue to engage in similar conduct or contact minors who he has previously communicated with if he is released. Detention is therefore appropriate.[3]

**B.    The Weight of the Evidence Against the Defendant**

The evidence against the defendant is strong. The defendant does not appear to deny that he had the chat giving rise to the charged offense, but rather claims that he was role-playing and

---

[3] In his motion, the defendant notes that the Court has previously ordered a defendant released after he was charged with production of child pornography. Dkt. 13 at 5 (citing *United States v. McCauley*, 1:18-cr-330). While there are a number of aggravating factors here not present in *McCauley* based on the complaint affidavits—including, for example, the fact that the defendant engaged in sexually explicit chats with multiple minors, ordered multiple purported minors to engage in painful sexual conduct for his own gratification, and had child pornography depicting adults performing violent sex acts on minors—it is worth noting that, based on the government's understanding, McCauley was already being supervised locally at the time of his federal arrest and was never released from custody because he could not identify a suitable third-party custodian.

8

that the minor's pubic hair led the defendant to believe that the minor was an adult. This assertion, however, is belied by the defendant's only known chat with the minor, in which both the minor and the defendant acknowledge that the minor only recently turned 14 years old, and the images and videos that the minor sent the defendant, which an FBI Special Agent who specializes in investigating federal crimes against children viewed and concluded depict a minor male. The defendant's claim of fantasy is further contradicted by the multiple other chats with and about minors that were recovered from the defendant's iPad and iPhone and the child pornography recovered from the defendant's electronic devices, all of which indicate that the defendant was an active and willing participant in a community of offenders interested in the sexual exploitation of children. Given the strength of the government's case, the nature of the allegations, and the significant sentence the defendant faces if convicted, the government believes that there is a substantial concern of his non-appearance should he be released and submits that detention is therefore appropriate.

### C.    The History and Characteristics of the Defendant

Because the defendant's detention hearing occurred on the same day as his initial appearance, the pretrial services office was unable to prepare a report addressing the defendant's history and characteristics. During the search of his home, however, law enforcement learned that the defendant employed local high school students and provided food and drink services to local youth events, indicating that he has positioned himself to have contact with minors beyond the communications described in the affidavit in support of the criminal complaint. Additionally, in his motion, the defendant proffers information regarding his mental health that raises concerns of non-appearance. Dkt. 13 at 8. Taken together, this information counsels in favor of detention.

9

**JA82**

The defendant also asserts that his parents are well situated to serve as third-party custodians because they have supported and lived with him for most of his life. *Id.* at 9. To the contrary, that is exactly why neither individual is an appropriate third-party custodian. The defendant engaged in the conduct described above while living with his parents in McLean, Virginia, and they were presumably unaware of or unable to prevent this criminal behavior. Additionally, at the detention hearing-–over a month after the search warrant was executed and the defendant and his parents learned that he was the subject of a federal investigation involving child pornography—the defendant's mother testified that the defendant was still using his own smartphone, which further indicates a lack of concern or control on the part of the defendant's parents regarding his access to the internet to engage in this sort of criminal conduct. As such, neither of the defendant's parents are appropriate third-party custodians.

**D.     Concerns Related to COVID-19**

In support of his motion to revoke the Court's Order of Detention, the defendant also asserts that he faces a heightened risk of contracting COVID-19 at ADC. While the government is mindful of the significant complications and dangers associated with the COVID-19 pandemic, the government is not aware of any reported cases of infection at ADC nor has the defendant presented any non-speculative evidence that he is at a higher risk of contracting COVID-19 while incarcerated at ADC than he would be in the community (particularly if he has to comply with the various registration and reporting requirements associated with conditions of pretrial release required by the Adam Walsh Act). Moreover, on March 18, 2020, Alexandria Sheriff Dana Lawhorne issued a 13-page memorandum detailing the many steps that the Sheriff's Office has taken to prevent the virus from entering and spreading within the facility. *See* Exhibit A. These protocols limit contact in the facility and provide for extensive screening and cleaning procedures.

10

**JA83**

As another member of this Court has recognized, these protocols will minimize a detainee's potential exposure to COVID-19 at ADC and ensure that a detainee's continued confinement will not put him at an increased risk of infection. *See United States v. Lewis*, 1:20-CR-06, Order [Dkt. 85] (E.D. Va. March 26, 2020) (denying release for defendant reportedly suffering from a number of cardiac conditions). In short, the speculative concern of a COVID-19 outbreak at the Alexandria ADC does not diminish the public's interest in keeping the defendant detained pending trial based on the danger he poses to other and his risk of non-appearance. Accordingly, the government respectfully requests that the Court deny the defendant's motion.[4]

Respectfully submitted,

G. ZACHARY TERWILLIGER
United States Attorney

By:    _____/s/_____
William G. Clayman
Special Assistant United States Attorney (LT)
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700
william.g.clayman@usdoj.gov

---

[4] If the Court is inclined to release the defendant pending trial, the Adam Walsh Act requires that the conditions of his release include: electronic monitoring; travel and housing restrictions; no contact with any alleged victim or potential witness; limited access to firearms; and compliance with a curfew. *See* 18 U.S.C. § 3142(c)(1)(B). The government respectfully requests that the defendant be detained until all of these conditions can be satisfied by pretrial services. The government also requests that the Court order the defendant to have no contact with minors in general and no access to the internet or unapproved electronic devices, and also require that he live with an approved third-party custodian. As noted above, the government believes that the defendant's parents are inappropriate third-party custodians given that they lived with him during the offense conduct and have multiple electronic devices in their home as part of their professions.

11

**JA84**

CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which automatically generated a Notice of Electronic Filing to the counsels of record for the defendant.


_____/s/_____
William G. Clayman
Special Assistant United States Attorney (LT)
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700
william.g.clayman@usdoj.gov

12

**JA85**

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

FILED
IN OPEN COURT

JUN 24 20

CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA | )  Criminal No. 1:20-CR-143 |
| | ) |
| v. | )  Counts 1–5: 18 U.S.C. § 2251(a) & (e) |
| | )  Production of Child Pornography |
| ZACKARY ELLIS SANDERS, | ) |
| | )  Counts 6–11: 18 U.S.C. § 2252(a)(2) & (b)(1) |
| *Defendant.* | )  Receipt of Child Pornography |
| | ) |
| | )  Count 12: 18 U.S.C. § 2252(a)(4)(B) & (b)(2) |
| | )  Possession of Child Pornography |
| | ) |
| | )  Forfeiture Notice: 18 U.S.C. § 2253(a) |

**INDICTMENT**

June 2020 Term—at Alexandria, Virginia

**COUNTS ONE THROUGH FIVE**
**(Production of Child Pornography)**

THE GRAND JURY CHARGES THAT:

In separate instances on or about the dates set forth below, within the Eastern District of Virginia, the defendant, ZACKARY ELLIS SANDERS, attempted to and did employ, use, persuade, induce, entice, and coerce a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, knowing and having reason to know that such visual depiction would be transported or transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce and mailed, and which visual depiction was actually transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce and mailed, and which visual depiction was produced using materials that have been mailed, shipped, and transported in

1

**JA86**

and affecting interstate and foreign commerce, by any means, including by computer, to wit: digital

visual depictions of different minors engaged in sexually explicit conduct on the following dates:

| Count | Date | Minor |
|-------|------|-------|
| 1 | Between or about November 20, 2019 and on or about November 25, 2019 | MINOR VICTIM 1 |
| 2 | Between on or about November 10, 2019, and on or about November 14, 2019 | MINOR VICTIM 2 |
| 3 | Between on or about September 17, 2017, and on or about April 14, 2018 | MINOR VICITM 3 |
| 4 | Between on or about November 29, 2017, and on or about December 11, 2017 | MINOR VICTIM 4 |
| 5 | Between on or about May 8, 2017, and on or about October 21, 2017 | MINOR VICTIM 5 |

(In violation of Title 18, United States Code, Section 2251(a) and (e).)

2

**JA87**

## COUNT SIX THROUGH ELEVEN
### (Receipt of Child Pornography)

THE GRAND JURY FURTHER CHARGES THAT:

In separate instances on or about the dates set forth below, within the Eastern District of Virginia, the defendant, ZACKARY ELLIS SANDERS, attempted to and did receive a visual depiction using any means and facility of interstate and foreign commerce and that had been mailed, and had been shipped and transported in and affecting interstate and foreign commerce, and which contained materials which had been mailed and so shipped and transported, by any means, including by computer, and the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and the visual depiction was of such conduct, to wit: digital visual depictions of different minors engaged in sexually explicit conduct on the following dates:

| Count | Date | Minor |
|-------|------|-------|
| 6 | On or about January 16, 2020 | MINOR VICTIM 6 |
| 7 | Between or about November 20, 2019 and on or about November 25, 2019 | MINOR VICTIM 1 |
| 8 | Between on or about November 10, 2019, and on or about November 14, 2019 | MINOR VICTIM 2 |
| 9 | Between on or about September 17, 2017, and on or about April 14, 2018 | MINOR VICITM 3 |
| 10 | Between on or about November 29, 2017, and on or about December 11, 2017 | MINOR VICTIM 4 |
| 11 | Between on or about May 8, 2017, and on or about October 21, 2017 | MINOR VICTIM 5 |

(In violation of Title 18, United States Code, Section 2252(a)(2) and (b)(1).)

3

**JA88**

## COUNT TWELVE
### (Possession of Child Pornography)

THE GRAND JURY FURTHER CHARGES THAT:

In or about February 2020, within the Eastern District of Virginia, the defendant, ZACKARY ELLIS SANDERS, knowingly possessed at least one matter which contained a visual depiction that that had been mailed, or had been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which had been mailed or so shipped or transported, by any means including by computer, and the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct, and such visual depiction was of such conduct, to wit: digital visual depictions of minors, including prepubescent minors and minors who had not attained 12 years of age, engaged in sexually explicit conduct stored on a Sandisk Cruzer Edge thumb drive, an HP Elite Book 755 laptop, a Lexar thumb drive, an HP laptop (S/N: 5CH1262Y5Y), and an HP laptop (S/N: CNF8255WH5).

(In violation of Title 18, United States Code, Section 2252(a)(4)(B) and (b)(2).)

4

**JA89**

## FORFEITURE NOTICE

THE GRAND JURY HEREBY FINDS THAT:

The defendant, ZACKARY ELLIS SANDERS, upon conviction on any Count of this Indictment, and as part of the defendant's sentencing under Federal Rule of Criminal Procedure 32.2, shall forfeit to the United States any and all matters that contain visual depictions of minors engaged in sexually explicit conduct in violation of the charged offenses; any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from such offenses; and any property, real or personal, used or intended to be used to commit or promote the commission of such offenses or property traceable to such property, including:

1.    A Sandisk Cruzer Edge thumb drive;

2.    An HP Elite Book 755 laptop;

3.    A Lexar thumb drive;

4.    An HP laptop (S/N: 5CH1262Y5Y);

5.    An HP laptop (S/N: CNF8255WH5);

6.    An Apple iPad (S/N: DMPVGGCPHDDV);

7.    An Apple iPad (S/N: DMPHM3K7DVGF); and

8.    An Apple iPhone (S/N: C39VJ0XDJCL6).

5

**JA90**

If property subject to forfeiture is not available, the government may seek an order forfeiting substitute assets.

(In accordance with Title 18, United States Code, Section 2253(a).)

A TRUE BILL
Pursuant to the E-Government Act.,
The original of this page has been filed
under seal in the Clerk's Office

FOREPERSON

G. Zachary Terwilliger
United States Attorney

By:

William G. Clayman
Special Assistant United States Attorney (LT)

Jay V. Prabhu
Assistant United States Attorney

6

**JA91**

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 1:20-cr-143** |
| | ) | |
| **ZACKARY ELLIS SANDERS,** | ) | |
| **Defendant.** | ) | |

## ORDER

This matter is before the Court on defendant's Motion to Compel Discovery.

For the reasons stated in the Sealed Memorandum Opinion issued this same day,

It is hereby **ORDERED** that defendant's Motion to Compel Discovery (Dkts. 37 and 38) is **DENIED**.

The Clerk is directed to send a copy of this Order to all counsel of record.

Alexandria, Virginia
August 21, 2020

/s/
T. S. Ellis, III
United States District Judge

1

**JA92**

# EXHIBIT 1

**Responsive Records:**

| Search By | Search For | Max Results Limit (Optional) |
|---|---|---|
| ⦿ IP Address | 98.169.118.39 | 5,000 |
| ☐ CM MAC | **Start Date (Optional)\*\*\*** | ☑ Search Archives (ALL data)\*\*\*\* |
| ☐ CPE MAC\* | 2019-05-23 02:06:48 (UTC) | ☐ CSV Output (Excel) |
| ☐ Client ID\*\* | **End Date (Optional)\*\*\*** | ☐ Expand IPv6 Addresses |
| | | ☐ Real-time Query in [ at ▾ ] RDC |
| | | Submit     Clear Dates |

*DHCP leases are stored in GMT.*

**1 DHCP lease record(s) found for 98.169.118.39**
**on 2019-05-23 02:06:48 GMT**

| IP Address | RDC | CM MAC\*\*\*\*\* | CPE MAC | Client ID | Host name | Starts (GMT) | Ends (GMT) |
|---|---|---|---|---|---|---|---|
| 98.169.118.39 | dc | 2C:95:69:5F:C3:E0 | 2C:95:69:5F:C3:E2 | FF695FC3E2000300012C95695FC3E2 | | 2018-07-30 19:27:09 | 2020-02-16 13:14:01 |

| Subscriber info for 477042290101 | |
|---|---|
| Market | Northern VA |
| ICOMS ID | 477042290101 |
| Cox Email | |
| Preferred Email | |
| Alternate Email | |
| Name | Risa Sanders |
| Address | ███████████ Mclean, VA 22102-1452 |
| Home Phone | ████████ 🕾 |
| Work Phone | ████████ 🕾 |
| Other Phone | ████████ 🕾 |
| Comment | |
| Cust Type | |
| Cust Category | |
| Cust Status | A (Active) |
| Node | |
| Modem Cfg | |
| VoIP | |
| Cox Homelife | |
| Language | |
| Static IPs | |

| Account Lookup | | |
|---|---|---|
| IP Address, Src Port | | |
| Date/Time | | |
| CM MAC | 2C:95:69:5F:C3:E0 | |
| CM Serial | | |
| ICOMS ID | | |
| Cox Provisioned Email | | |
| Preferred/Alternate Email | | |
| GUID | | |
| Phone Number | | |
| Property ID | | |
| AP MAC | | |
| Submit Query | | |

| Modem | Serial | MAC | Occ | VoIP? | Tools | | |
|---|---|---|---|---|---|---|---|
| ARRIS | 8492C26C2C37902 | 2C:95:69:5F:C3:E0 | 1 | | DHCP | CMTS | Modem |

**JA94**





DATA2 - Customer Maintenance - Site 477

File Edit Billing Services Customer Information Order Entry PPV Financial History HSD Help

ICOMS

OK
Exit
Marketing IDs
Rate Centers
Exit and Retain
Menu
Dsp Log
All Bill Days
More Keys

Acct Nbr 422901-01
Risa Sanders
Task
Status A ACTV 3/28/06 Cust Info
Co/Dv/Frn 01 1 857

Title | First Name | Last Name
Risa | Sanders

[redacted]
MCLEAN, VA 22102-1452

Home Phone [redacted]
Business Pho
Other Phone
SSN

Customer Comment

PIN Number Video Rtg
PIN Entry Date 11/12/06
Tax ID Exempt
Customer Type DEFAULT
Category PERMANENT
Language Preference ENGL English
Channel Lineup Ovr
Old Acct Nbr 477

COX
Bringing us closer

DATA2 - Customer Ledger - Site 477

File Edit Billing Services Customer Information Order Entry PPV Financial History HSD Help

ICOMS

OK
Exit
Print
View 2
Menu
Pending Adj
Spread Charges
Current Trans
AR/Stmt
Unapp Bchs
Adj by Svc
Pnd Pmnts
Cust Dep Hstry

Acct Nbr 422901-01
Risa Sanders
[redacted]
Task
Status A ACTV 3/28/06 Cust Info
Co/Dv/Frn 1 1 857

Addtl Comment
Expiration Date

Account Aging
Current .00
1-30 455.40
31-60 .00
61-90 .00
Over 90 .00
Total 455.40

Dep Amt .00
Dep Intr .00
Dep Due .00
Mthly Rate 455.40
Pnd Pmt .00
Connect Date 3/28/06

Credit Information
Write Off .00
Unapp Pmt .00
Unapp Adj .00
NMC Amt .00
Ext Credit Score
Ctg PERMANENT RESIDENT

Aging Graph

| Stmt | Date | Cy | Balance | Attr | Prt | Freq | Cls | MOP | Process |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 1/29/20 | 28 | 455.40 | 001 | Y | M | R | 507 | 20302 |
| 1 | 12/28/19 | 27 | 436.86 | 001 | Y | M | R | 507 | 20144 |
| 1 | 11/28/19 | 28 | 436.86 | 001 | Y | M | R | 507 | 19997 |
| 1 | 10/28/19 | 28 | 436.86 | 001 | Y | M | R | 507 | 19846 |
| 1 | 9/28/19 | 27 | 436.86 | 001 | Y | M | R | 507 | 19695 |
| 1 | 8/28/19 | 28 | 436.86 | 001 | Y | M | R | 507 | 19542 |

Select Display All Print Display with Totals
Stmt Image Stmt Image Dtls Taxes

COX
Bringing us closer

IP Logs:

### 3 DHCP lease record(s) found for 2C:95:69:5F:C3:E0

| IP Address | RDC | CM MAC**** * | CPE MAC | Client ID | Host name | Starts (GMT) | Ends (GMT) |
|---|---|---|---|---|---|---|---|
| 98.169.118.39 | d c | 2C:95:69:5F:C3:E0 | 2C:95:69:5F:C3:E2 | FF695FC3E2000300012C95695FC3E2 | | 2018-07-30 19:27:09 | 2020-02-16 13:14:01 |
| 2600:8806:6100:6bd:: - 2600:8806:6100:6bd:ffff:ffff:ffff:ffff | d c | 2C:95:69:5F:C3:E0 | 2C:95:69:5F:C3:E2 | 000300012C95695FC3E2 | | 2019-04-24 08:41:39 | 2020-02-16 09:09:48 |
| 2600:8806:7f07:100:e5ee:30d5:7ae:14e7 | d c | 2C:95:69:5F:C3:E0 | 2C:95:69:5F:C3:E2 | 000300012C95695FC3E2 | | 2019-04-24 08:41:39 | 2020-02-16 09:09:45 |

**JA96**

# EXHIBIT 2

1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA    .    Criminal No. 1:17cr302
                            .
    vs.                     .    Alexandria, Virginia
                            .    February 2, 2018
NIKOLAI BOSYK,              .    10:30 a.m.
                            .
            Defendant.      .
                            .
.  .  .  .  .  .  .  .  .  .  .

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:          NATHANIEL SMITH, III, AUSA
                             United States Attorney's Office
                             2100 Jamieson Avenue
                             Alexandria, VA 22314
                               and
                             LAUREN BRITSCH, ESQ.
                             U.S. Department of Justice
                             Criminal Division
                             Child Exploitation and Obscenity
                             Section
                             1400 New York Avenue, N.W.
                             6th Floor
                             Washington, D.C. 20530

FOR THE DEFENDANT:           MARK B. WILLIAMS, ESQ.
                             WILLIAM D. ASHWELL, ESQ.
                             Mark B. Williams &
                             Associates, PLC
                             27 Culpeper Street
                             Warrenton, VA 22186

OFFICIAL COURT REPORTER:     ANNELIESE J. THOMSON, RDR, CRR
                             U.S. District Court, Fifth Floor
                             401 Courthouse Square
                             Alexandria, VA 22314
                             (703)299-8595

(Pages 1 - 6)

COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

2

1                    P R O C E E D I N G S

2                    (Defendant present.)

3              THE CLERK:  Criminal Case 17-302, United States of

4    America v. Nikolai Bosyk.  Would counsel please note their

5    appearances for the record.

6              MR. SMITH:  Good morning, Your Honor.  Nathaniel

7    Smith and Lauren Britsch for the United States.

8              MS. BRITSCH:  Good morning.

9              THE COURT:  Good morning.

10             MR. ASHWELL:  Good morning, Your Honor.  William

11   Ashwell and cocounsel, Mark Williams, here for the defendant,

12   Nikolai Bosyk.

13             MR. WILLIAMS:  Good morning.

14             THE COURT:  Good morning.

15             All right, what's before the Court today is the

16   defendant's motion to suppress, which has been extensively

17   briefed, and the Court has had a chance to not only read over

18   the briefs, but obviously, I've read the affidavit for the

19   search warrant.

20             I don't need to hear any further argument from

21   counsel.  I'm just going to announce to you what my ruling is

22   in this case.

23             First of all, despite the defendant's argument and

24   despite the fact that there is some authority from one of our

25   Norfolk colleagues in the *Reece* case that a similar but not

3

```
 1    exactly the same affidavit was insufficient to establish

 2    probable cause, I disagree with that position, although I do

 3    disagree with the defense that the government in its motion put

 4    more evidence before the Court that was, that was in the

 5    affidavit, and it would have been a stronger and better

 6    affidavit if the background, the TOR discussion and how one

 7    gets on to this type of bulletin board should have been in the

 8    affidavit.

 9              But the fact that not everything that could have been

10    in an affidavit was in it does not mean that there was not

11    sufficient probable cause.

12              What is clearly in the affidavit is that Bulletin

13    Board A is a dedicated bulletin board to advertising

14    distribution and production of child pornography and that it

15    therefore, already anybody who might be on that site, there

16    would be a reasonable belief that that person was interested in

17    accessing that kind of information.

18              Then there was the posting of that particular section

19    that was clearly advertising video clips of what would

20    absolutely be unequivocally child pornography, and the critical

21    fact that I think makes the difference between this affidavit

22    and the other one is that the same day that posting went up,

23    the URL that is linked -- or the IP address that is linked to a

24    computer in the defendant's home, not to the defendant

25    necessarily but to somebody in that home, attempts to or at
```

Anneliese J. Thomson OCR-USDC/EDVA (703)299-8595

**JA100**

4

```
 1    least shows an interest in that particular site.
 2            In my view, that's enough for probable cause to
 3    believe that there would be a computer in that residence that
 4    would have child pornography on it.
 5            Now, the other argument that is made in the
 6    defendant's papers is that this is a staleness issue because
 7    there is approximately a five-month time period between the
 8    time of that contact with the URL and the obtaining of the
 9    search warrant.  Again, in these types of cases, that is, cases
10    involving child pornography, it's well established in the
11    Fourth Circuit under the Davis case that as much as a one-year
12    time period is not excessive, and it is true, the Court has had
13    itself great experience with child pornography cases.  It's
14    very unusual to see people who, who do look at child
15    pornography not hold it for extensive periods of time.  It's
16    not the kind of material that dissipates, like a drug that
17    could be flushed down the toilet, and so I believe that there
18    was enough probable cause and that the -- it was not stale.
19            However, even if there were a defect, and I don't
20    think there was, but even if there were a defect, under the
21    Leon good faith exception or doctrine, there is nothing in this
22    record that in my view would support a finding that the officer
23    who swore out the affidavit or that the magistrate judge were
24    not acting in complete good faith and that there was any
25    intentional misleading of the magistrate judge, and so Leon in
```

5

1    my view would save this.

2            Now, I understand that, as I said, that the *Reece*

3    court looked at it differently, but I disagree with that

4    reasoning, and so I am going to deny the motion to suppress.

5    So that's my reasoning for that, and I think that was the only

6    issue that we had on in this case.

7            If there are going to be any motions in limine or

8    other motions connected with this case, obviously, we take

9    those up well before the trial, so you need to make sure that

10   they get noticed for any resolution well ahead of that time,

11   all right?

12           All right, anything further on this case?

13           MR. SMITH:  Nothing from the government, Your Honor.

14           THE COURT:  How about from defense counsel?

15           MR. ASHWELL:  Nothing from defense counsel.  If the

16   Court would just note our exception to the Court's opinion?

17           THE COURT:  And as I said, you wrote a good brief,

18   and you had authority for it.  I just think that it's -- we

19   differ on this.

20           MR. ASHWELL:  Thank you, Your Honor.

21           THE COURT:  All right, you're all free to go.

22           MS. BRITSCH:  Thank you, Your Honor.

23                           (Which were all the proceedings

24                            had at this time.)

25

6

1                    CERTIFICATE OF THE REPORTER

2        I certify that the foregoing is a correct transcript of

3    the record of proceedings in the above-entitled matter.

4

5

6                              _____/s/_____
                               Anneliese J. Thomson

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:20-cr-143 |
| | ) | |
| ZACKARY ELLIS SANDERS, | ) | |
| Defendant. | ) | |

## ORDER

This matter is before the Court of defendant's Motions to Suppress.

For the reasons stated in the Sealed Memorandum Opinion issued this same day,

It is hereby **ORDERED** that defendant's Motions to Suppress (Dkt. 81, 83, 85, and 90) are **DENIED.**

It is **FURTHER ORDERED** that the Memorandum Opinion issued alongside this Order will be **UNSEALED** on **Thursday, October 29, 2020,** unless a party submits a motion establishing good cause to keep the Memorandum Opinion under seal.

The Clerk is directed to provide a copy of this Order to all counsel of record.

Alexandria, Virginia
October 26, 2020

/s/

T. S. Ellis, III
United States District Judge

**JA104**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 1:20-cr-00143 |
| | The Honorable Judge Ellis |
| ZACKARY ELLIS SANDERS, | Trial: November 17, 2020 |
| Defendant. | |

**UNOPPOSED MOTION TO CONTINUE TRIAL**
**AND WAIVER OF SPEEDY TRIAL RIGHTS**

Zackary Ellis Sanders, by and through undersigned counsel, respectfully submits this

Unopposed Motion to Continue his Trial, currently set for November 17, 2020, to a date that is

convenient for the Court in January[1] or February 2021. Mr. Sanders agrees to a waiver of his

right to speedy trial up to and including his new trial date. The government does not oppose this

Motion and defers to the Court.

1.  On July 10, 2020, Mr. Sanders was arraigned and trial was scheduled for November 17,

    2020.

2.  This is the first trial setting and Mr. Sanders waives his Speedy Trial Rights between the

    date of this motion and a subsequent trial date in January or February 2021.

3.  Mr. Sanders respectfully submits that a continuance of the trial is necessary for several

    reasons. First, Mr. Sanders and the defense received the Court's Memorandum opinion

    the morning of October 27, 2020, denying Mr. Sanders's Motion to Suppress and Motion

---

[1] The defense is in trial in another case in the Eastern District of Virginia from January 19 to 22,
2021.

**JA105**

for a *Franks* Hearing. Additional time is required for the defense to explore plea

negotiations and to advise Mr. Sanders accordingly.

4.   Second, Mr. Sanders could not be prepared to proceed to trial on November 17, 2020, as

that would have unfairly required him to invest significant financial resources preparing

for trial when a dispositive motion was pending.

5.   The Government, through Assistant United States Attorneys Jay Prabhu and William

Clayman, graciously do not oppose the requested continuance.

Dated: October 28, 2020.

Respectfully submitted,

*/s/ Jonathan Jeffress*

Jonathan Jeffress (#42884)
Emily Voshell (#92997)
Jade Chong-Smith (admitted *pro hac vice*)
KaiserDillon PLLC
1099 Fourteenth St., N.W.; 8th Floor—West
Washington, D.C. 20005
Telephone: (202) 683-6150
Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: evoshell@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com

*Counsel for Defendant Zackary Ellis Sanders*

2

**JA106**

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of October 2020, the foregoing was served electronically on the counsel of record through the U.S. District Court for the Eastern District of Virginia Electronic Document Filing System (ECF) and the document is available on the ECF system.

*/s/ Emily Voshell*
Emily Voshell

3

**JA107**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

UNITED STATES OF AMERICA,

               Plaintiff,

     v.

ZACKARY ELLIS SANDERS,

               Defendant.

Case No. 1:20-cr-00143
The Honorable Judge Ellis
Trial: November 17, 2020

**[PROPOSED] ORDER TO CONTINUE TRIAL**

This matter is before the Court on Mr. Sanders's Unopposed Motion to Continue Trial.

Based on the reasons stated therein, the lack of any opposition from the Government, and for

good cause shown, the Motion to Continue Trial is **GRANTED**; and it is further

**ORDERED** that the trial currently set for November 17, 2020, is hereby continued until:

_____, 2021.


_____

THE HONORABLE JUDGE ELLIS

UNITED STATES DISTRICT COURT JUDGE

Date: _____

4

**JA108**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ZACKARY ELLIS SANDERS,<br><br>Defendant. | Case No. 1:20-cr-00143<br>The Honorable Judge Ellis<br>Trial: November 17, 2020 |

**RENEWED UNOPPOSED MOTION TO CONTINUE
TRIAL AND WAIVER OF SPEEDY TRIAL RIGHTS**

Zackary Ellis Sanders, by and through undersigned counsel, respectfully submits this Renewed Unopposed Motion to Continue his Trial, currently set for November 17, 2020, to a date that is convenient for the Court in March, April, or May 2021. By this motion, Mr. Sanders respectfully submits greater detail in support of the requested continuance, which, for the reasons stated below, is necessitated by the Sixth Amendment and the Due Process Clause of the United States Constitution. Mr. Sanders agrees to a waiver of his right to a speedy trial up to and including his new trial date. The government again does not oppose this Motion.

1. The first basis for the requested continuance is that the defense needs additional time to review discovery and consult with Mr. Sanders so that he can make a knowing and intelligent decision about whether to accept the government's plea offer or proceed to trial. As discussed in greater detail below, this is a complicated case—the Indictment contains twelve counts—that involves thousands of pages of electronic communications. To make matters much more difficult, the COVID-19 pandemic has imposed numerous barriers that have hampered counsel in being able to work with, prepare, and advise Mr.

**JA109**

Sanders regarding his defenses at trial. Due to restrictions imposed because of COVID-19, the defense has not been permitted in-person visits with Mr. Sanders at the Alexandria Detention Center (ADC) for the duration of the case; counsel have never been permitted to see Mr. Sanders in person except in Court. Instead, the defense is limited to communicating with Mr. Sanders by video call once per day, at most. These video calls are frequently cut out due to the poor Internet connection at ADC. Both the defense and Mr. Sanders spend a significant portion of the calls waiting for the Internet connection to resume or repeating what was said during a lost connection. The program function that allows the defense to share documents with Mr. Sanders-—documents that the protective order in this case does not permit Mr. Sanders to possess himself at ADC—was disabled nearly all of this past month. Defense counsel is not permitted to provide Mr. Sanders with a copy of the discovery and other evidence against him. While the screen-sharing function was disabled, counsel was required to read Mr. Sanders documents, which was painstakingly laborious and time-consuming. Furthermore, due to short-staffing at the facility and the additional demands on staff due to COVID-19, the attorney calls are sometimes cut short. As a result, defense counsel has had inadequate time to discuss Mr. Sanders's case with him and advise him such that he can make a knowing and voluntary decision about whether to plead guilty or exercise his right to trial.

2. In addition to the above, the decision Mr. Sanders needs to make regarding his plea is completely life-altering, both for Mr. Sanders and his parents. Mr. Sanders is twenty-five years old; this is the first time he has ever been arrested let alone charged with any crime. Mr. Sanders's father is 83 years old, and Mr. Sanders's 63-year-old mother has breast cancer; if Mr. Sanders accepts the Government's current plea offer, he will likely never

**JA110**

see his parents again outside of prison.  That prospect (among the other dire consequences of a conviction, especially for a sex offense) is a lot for a young man to absorb.

3.  Given the number of counts and the volume of evidence that the Government has in its possession for viewing by defense counsel—but not Mr. Sanders—only at FBI headquarters and at the U.S. Attorneys' Office, the logistical issues and concerns associated with COVID-19, including the fact that one of the defense attorneys is currently pregnant and is at heightened vulnerability to COVID-19, the defense is not sufficiently familiar with the Government's evidence and cannot be on this schedule. Indeed, the foregoing issues, which are extraordinary to say the least, have prevented the defense team from viewing *the majority* of the Government's evidence.  The defense team obviously needs to review all of that evidence in order to advise effectively Mr. Sanders about the Government's plea offer, and the defense does not have sufficient time to do so and safely prepare for trial on November 17, 2020.  Furthermore, a jury trial may unduly risk the health of the pregnant member of Mr. Sanders's defense team.[1]

4.  The Government and defense agree that is it in the public's interest to avoid rushing to a trial that will not necessarily need to take place if additional time is provided for plea negotiations and for the defense to advise Mr. Sanders, a first-time defendant, accordingly. This will also avoid unnecessarily exposing prospective jury members to

---

[1] COVID-19 cases are continuing to rise suddenly in Virginia: cases have increased by over 1,000 cases per day in the past seven days; there are more than 174,000 cases reported in Virginia, deaths have increased by 46% in the past 14 days, and cases and hospitalizations have increased by six percent in the 14 days. *Virginia Covid Map and Case Count*, New York Times (Oct. 27, 2020, 8:12AM), https://www.nytimes.com/interactive/2020/us/virginia-coronavirus-cases.html (last visited Oct. 27, 2020, 11:12AM), attached as Exhibit A. Given these conditions, a trial could not be conducted safely, a representative jury could not be assembled, and the safety precautions that would need to be taken—including the wearing of masks inside the courtroom that would obscure Mr. Sanders's face—would prevent a fair trial.

3

**JA111**

COVID-19.  Mr. Sanders is incarcerated and poses no risk to any member of the

community.

5.  This is the first trial setting and Mr. Sanders waives his Speedy Trial Rights between the

date of this motion and a subsequent trial date in March, April, or May 2021.

6.  On October 28, 2020, Mr. Sanders filed an unopposed motion for a continuance, which

this Court denied:  Mr. Sanders has now made the requisite showing for why it is in the

public's interest, as well as additional grounds for the Court to make the findings required

for a continuance.

7.  The Government, through Assistant United States Attorneys Jay Prabhu and William

Clayman, do not oppose the requested continuance.

Dated: October 30, 2020.

Respectfully submitted,

*/s/ Jonathan Jeffress*

Jonathan Jeffress (#42884)
Emily Voshell (#92997)
Jade Chong-Smith (admitted *pro hac vice*)
KaiserDillon PLLC
1099 Fourteenth St., N.W.; 8th Floor—West
Washington, D.C.  20005
Telephone: (202) 683-6150
Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: evoshell@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com

*Counsel for Defendant Zackary Ellis Sanders*

4

**JA112**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of October 2020, the foregoing was served

electronically on the counsel of record through the U.S. District Court for the Eastern District of

Virginia Electronic Document Filing System (ECF) and the document is available on the ECF

system.

*/s/ Jonathan Jeffress*
Jonathan Jeffress

5

**JA113**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 1:20-cr-00143 |
| | The Honorable Judge Ellis |
| ZACKARY ELLIS SANDERS, | Trial: November 17, 2020 |
| Defendant. | |

## [PROPOSED] ORDER TO CONTINUE TRIAL

This matter is before the Court on Mr. Sanders's Renewed Unopposed Motion to Continue Trial.  Based on the reasons stated therein, the lack of any opposition from the Government, and for good cause shown, the Motion to Continue Trial is **GRANTED**; and it is further

**ORDERED** that the trial currently set for November 17, 2020, is hereby continued until: _____, 2021.


_____

THE HONORABLE JUDGE ELLIS

UNITED STATES DISTRICT COURT JUDGE


Date: _____

6

**JA114**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:20-CR-143 |
| v. | ) | |
| | ) | Honorable T.S. Ellis, III |
| ZACKARY ELLIS SANDERS, | ) | |
| | ) | Trial: November 17, 2020 |
| *Defendant.* | ) | |
| | ) | |

**GOVERNMENT'S NOTICE OF INTENT TO PRESENT
EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 414**

The United States, through G. Zachary Terwilliger, U.S. Attorney for the Eastern District

of Virginia, William G. Clayman, Special Assistant U.S. Attorney (LT), and Jay V. Prabhu,

Assistant United States Attorney, notices its intent to present evidence under Federal Rule of

Evidence 414.

**LEGAL BACKGROUND**

Enacted as part of the Violent Crime Control and Law Enforcement Act of 1994, Federal

Rule of Evidence 414 governs the admission of evidence of similar crimes in child sex offense

cases.  Rule 414(a) provides, in pertinent part, that "[i]n a criminal case in which the defendant is

accused of an offense of child molestation, the court may admit evidence that the defendant

committed any other child molestation.  The evidence may be considered on any matter to which

it is relevant."  Rule 414 broadly defines the term "child molestation" to encompass not only

physical contact between an adult and a child that constitutes a crime under state or federal law,

but also conduct that constitutes the federal crimes of production, receipt, and possession of child

pornography.  *See* Fed. R. Evid. 414(d)(2)(B) (defining "child molestation" as a state or federal

crime "involving . . . any conduct prohibited by 18 U.S.C. chapter 110").  The upshot of Rule

**JA115**

414 is that evidence of a defendant's other acts of child molestation is presumptively admissible to establish the defendant's propensity to commit the charged child sex offense. Rule 414 thus stands in contrast to Federal Rule of Evidence 404(b). Although ordinarily "evidence of past crimes may not be used 'to prove the character of a person in order to show action in conformity therewith,'" *United States v. Kelly*, 510 F.3d 433, 436 (4th Cir. 2007), Rule 414 expressly permits the admission of such propensity evidence.

In addition to the plain text of Rule 414, its legislative history shows that Congress intended Rule 414 to be an exception to the ordinary exclusion on propensity evidence. *See, e.g.*, *United States v. Mercer*, 653 F. App'x 622, 630 (10th Cir. 2016) (citing 140 Cong. Rec. H8991-92 (1994) ("[The Rule] is critical to the protection of the public . . . [a]nd is is justified by the distinctive characteristics of the cases to which it applies. In child molestation cases, for example, a history of similar acts tends to be exceptionally probative because it shows an unusual disposition of the defendant—a sexual or sado-sexual interest in children—that simply does not exist in ordinary people.")). Rule 414, in other words, reflects Congress's judgment that evidence of prior acts of child molestation are "'typically relevant and probative'" in child sex offense cases. *Kelly*, 510 F.3d at 436. (quoting 140 Cong. Rec. S12990 (daily ed. Sept. 20, 1994) (statement of Sen. Dole))).

In considering the admission of such evidence, a court is not required to make a threshold finding that the defendant actually committed the proffered child molestation offense supported by the Rule 414 evidence. The applicable standard is Rule 104(b)'s conditional relevance (which also governs the admission of Rule 404(b) evidence). *See United States v. Norris*, 428 F.3d 907, 914 (9th Cir. 2005) (finding that Rule 104(b) governs the admissibility of Rule 414 evidence); *see also Johnson v. Elk Lake School Dist.*, 283 F.3d 138, 152 (3d Cir. 2002) (finding

**JA116**

same).  Under Rule 104(b), a court need only examine the evidence in a case and decide whether the factfinder could reasonably find that the defendant committed the proffered prior acts by a preponderance of the evidence.  *Johnson*, 283 F.3d at 152.  Thus, it matters not that the prior offenses were uncharged—indeed, under Rule 414, courts are to "liberally admit evidence of prior uncharged sex offense[s]."  *United States v. Mann*, 193 F.3d 1172, 1173 (10th Cir. 1999) (quotation marks omitted).

### THE DEFENDANT'S OTHER CHILD MOLESTATION OFFENSE

The government may present evidence at trial of a child molestation offense committed by the defendant that constitutes "any conduct prohibited by 18 U.S.C. chapter 110."  Fed. R. Evid. 414 (d)(2)(B).  Specifically, the United States may introduce evidence that the defendant accessed a hidden service on The Onion Router ("Tor") with the intent to view child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).  The government may introduce testimony that the Federal Bureau of Investigation ("FBI") executed a warrant to search the defendant's residence in February 2020 based on information that someone using an IP address associated with the defendant's residence accessed child exploitation material on a Tor hidden service dedicated to child pornography in May 2019.  The United States may also introduce testimony that, during the search of his home, the defendant voluntarily agreed to be interviewed by law enforcement and admitted that he accessed hidden service websites on Tor and viewed child pornography on them.  The government anticipates that it will introduce such evidence through the testimony of an FBI Special Agent and excerpts from a recorded interview of the defendant conducted during the search of his home.

The United States anticipates that an FBI Special Agent will testify that the FBI received information that an IP address associated with the defendant's residence in McLean, Virginia,

3

**JA117**

within the Eastern District of Virginia, was used to access child exploitation material on Tor in or around May 2019. The United States anticipates that a Special Agent will provide a brief explanation of the Tor network and of the type of child exploitation material found on the hidden service the defendant's IP address was used to access. Additionally, the United States anticipates that a Special Agent will explain that the FBI used this information to apply for a warrant in the U.S. District Court for the Eastern District of Virginia to search the defendant's residence for evidence of child-pornography-related activity.

The United States further anticipates that an FBI Special Agent will testify that during the search, the defendant voluntarily agreed to participate in an interview with two FBI Special Agents. The United States anticipates that a Special Agent will testify that this interview was recorded, and the United States will seek to introduce excerpts of this recorded interview at trial. Specifically, the United States anticipates seeking to introduce excerpts of this recorded interview in which the defendant discusses the process by which he found hidden services on Tor on which there was child pornography, the process he followed to register an account on at least one of these hidden services, and the process of downloading and storing material from these hidden services.

Notwithstanding the above disclosure, the United States may seek to admit some of the above evidence under Federal Rule of Evidence 404(b), for which it will provide separate notice.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

Date: November 2, 2020    By: _____/s/_____

William G. Clayman
Special Assistant United States Attorney (LT)

4

**JA118**

Jay V. Prabhu
Assistant United States Attorney
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: 703-299-3700
Fax: 703-299-3981
Email: william.g.clayman@usdoj.gov

**JA119**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 2, 2020, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which automatically generated a Notice of Electronic

Filing to the parties of record.

By:     _____/s/_____
William G. Clayman
Special Assistant United States Attorney (LT)
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: 703-299-3700
Fax: 703-299-3981
Email: william.g.clayman@usdoj.gov

6

**JA120**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:20-CR-143 |
| v. | ) | |
| | ) | Honorable T.S. Ellis, III |
| ZACKARY ELLIS SANDERS, | ) | |
| | ) | Trial: February 9, 2021 |
| *Defendant.* | ) | |
| | ) | |

**GOVERNMENT'S AMENDED NOTICE OF INTENT TO PRESENT
EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 414**

The United States, through G. Zachary Terwilliger, U.S. Attorney for the Eastern District

of Virginia, William G. Clayman, Special Assistant U.S. Attorney (LT), and Jay V. Prabhu,

Assistant United States Attorney, hereby withdraws it prior notice of intent to present evidence

under Federal Rule of Evidence 414 (Dkt. No. 127) and files this amended notice of its intent to

present evidence under Federal Rule of Evidence 414.

**LEGAL BACKGROUND**

Enacted as part of the Violent Crime Control and Law Enforcement Act of 1994, Federal

Rule of Evidence 414 governs the admission of evidence of similar crimes in child sex offense

cases.  Rule 414(a) provides, in pertinent part, that "[i]n a criminal case in which the defendant is

accused of an offense of child molestation, the court may admit evidence that the defendant

committed any other child molestation.  The evidence may be considered on any matter to which

it is relevant."  Rule 414 broadly defines the term "child molestation" to encompass not only

physical contact between an adult and a child that constitutes a crime under state or federal law,

but also conduct that constitutes the federal crimes of production, receipt, and possession of child

pornography.  *See* Fed. R. Evid. 414(d)(2)(B) (defining "child molestation" as a state or federal

**JA121**

crime "involving . . . any conduct prohibited by 18 U.S.C. chapter 110"). The upshot of Rule

414 is that evidence of a defendant's other acts of child molestation is presumptively admissible

to establish the defendant's propensity to commit the charged child sex offense. Rule 414 thus

stands in contrast to Federal Rule of Evidence 404(b). Although ordinarily "evidence of past

crimes may not be used 'to prove the character of a person in order to show action in conformity

therewith,'" *United States v. Kelly*, 510 F.3d 433, 436 (4th Cir. 2007), Rule 414 expressly

permits the admission of such propensity evidence.

      In addition to the plain text of Rule 414, its legislative history shows that Congress

intended Rule 414 to be an exception to the ordinary exclusion on propensity evidence. *See, e.g.*,

*United States v. Mercer*, 653 F. App'x 622, 630 (10th Cir. 2016) (citing 140 Cong. Rec. H8991-

92 (1994) ("[The Rule] is critical to the protection of the public . . . [a]nd is is justified by the

distinctive characteristics of the cases to which it applies. In child molestation cases, for

example, a history of similar acts tends to be exceptionally probative because it shows an

unusual disposition of the defendant—a sexual or sado-sexual interest in children—that simply

does not exist in ordinary people.")). Rule 414, in other words, reflects Congress's judgment

that evidence of prior acts of child molestation are "'typically relevant and probative'" in child

sex offense cases. *Kelly*, 510 F.3d at 436. (quoting 140 Cong. Rec. S12990 (daily ed. Sept. 20,

1994) (statement of Sen. Dole))).

      In considering the admission of such evidence, a court is not required to make a threshold

finding that the defendant actually committed the proffered child molestation offense supported

by the Rule 414 evidence. The applicable standard is Rule 104(b)'s conditional relevance

(which also governs the admission of Rule 404(b) evidence). *See United States v. Norris*, 428

F.3d 907, 914 (9th Cir. 2005) (finding that Rule 104(b) governs the admissibility of Rule 414

**JA122**

evidence); *see also Johnson v. Elk Lake School Dist.*, 283 F.3d 138, 152 (3d Cir. 2002) (finding same). Under Rule 104(b), a court need only examine the evidence in a case and decide whether the factfinder could reasonably find that the defendant committed the proffered prior acts by a preponderance of the evidence. *Johnson*, 283 F.3d at 152. Thus, it matters not that the prior offenses were uncharged—indeed, under Rule 414, courts are to "liberally admit evidence of prior uncharged sex offense[s]." *United States v. Mann*, 193 F.3d 1172, 1173 (10th Cir. 1999) (quotation marks omitted).

## THE DEFENDANT'S OTHER CHILD MOLESTATION OFFENSES

On November 2, 2020, in advance of the trial previously scheduled to begin on November 17, 2020, the government filed a notice of its intent to introduce certain evidence pursuant to Federal Rule of Evidence 414. Dkt. No. 127. In this initial filing, the government noticed its intent to introduce as evidence at trial, among other things, background information related to the investigation that resulted in the search of the defendant's home. *Id.* at 3–4. After further review, the government does not intend to introduce such evidence at trial as it is not a pertinent part of the government's case-in-chief. Additionally, after further review, the government may seek to introduce additional evidence related to the interview of the defendant at the trial now scheduled to begin on February 9, 2021, that it did not notice in its prior filing. Accordingly, by this filing, the government withdraws its initial notice and provides this amended notice of its intent to introduce certain evidence at trial pursuant to Federal Rule of Evidence 414.

The government may present evidence at trial of a child molestation offense committed by the defendant that constitutes "any conduct prohibited by 18 U.S.C. chapter 110"—that is, evidence that the defendant engaged in other conduct constituting receipt of child pornography,

**JA123**

in violation of 18 U.S.C. § 2252(a)(2), and that he accessed material with the intent to view child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). Fed. R. Evid. 414 (d)(2)(B). Specifically, the government may introduce testimony that, during the search of his home, the defendant voluntarily agreed to be interviewed by law enforcement and admitted that he previously received child pornography using a mobile messaging application and that he accessed and downloaded child pornography from websites on a dark web network known as The Onion Router ("Tor").

The government anticipates that it will introduce such evidence through the testimony of a Special Agent with the Federal Bureau of Investigation ("FBI") and excerpts from a recorded interview of the defendant conducted during the search of his home. The United States anticipates that an FBI Special Agent will testify that during the search, the defendant voluntarily agreed to participate in an interview with two Special Agents. The United States anticipates that a Special Agent will testify that this interview was recorded, and the United States will seek to introduce excerpts of this recorded interview at trial. A copy of this recording has been provided to the defendant. Specifically, the United States anticipates seeking to introduce testimony about and excerpts of this recorded interview in which the defendant discussed receiving child pornography and accessing websites containing child pornography, including: (1) other prior instances in which he received child pornography using a mobile messaging application; (2) the process by which he found hidden services on Tor on which there was child pornography; and (3) other prior instances in which he downloaded and stored child pornography material from these hidden services.

4

**JA124**

Notwithstanding the above disclosure, the United States may seek to admit some of the

above evidence under Federal Rule of Evidence 404(b), for which it will provide separate notice.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

Date: November 17, 2020          By:      _____/s/_____
                                          William G. Clayman
                                          Special Assistant United States Attorney (LT)
                                          Jay V. Prabhu
                                          Assistant United States Attorney
                                          U.S. Attorney's Office
                                          2100 Jamieson Avenue
                                          Alexandria, Virginia 22314
                                          Tel: 703-299-3700
                                          Fax: 703-299-3981
                                          Email: william.g.clayman@usdoj.gov

5

**JA125**

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2020, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which automatically generated a Notice of Electronic

Filing to the parties of record.


By:    _____/s/_____

William G. Clayman
Special Assistant United States Attorney (LT)
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: 703-299-3700
Fax: 703-299-3981
Email: william.g.clayman@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 1:20-cr-00143 |
| | The Honorable Judge Ellis |
| v. | |
| | Pretrial Conference: January 15, 2021 |
| ZACKARY ELLIS SANDERS, | Trial Date: February 9, 2021 |
| Defendant. | **EVIDENTIARY HEARING** |
| | **REQUESTED** |

**MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS STATEMENTS**

Zackary Ellis Sanders, by and through undersigned counsel, respectfully moves the Court

to suppress any statements taken from him by law enforcement in violation of the United States

Constitution.    The motion to suppress is made pursuant to Fed. R. Crim. P. 12(b)(3).    An

evidentiary hearing on this motion is respectfully requested.

Mr. Sanders moves to suppress statements that the Government intends to introduce from

February 12, 2020, the date the search warrant was executed at the Sanders' family home.    The

statements must be suppressed for two reasons.    First, law enforcement never gave Mr. Sanders

*Miranda* warnings, despite the clearly custodial environment of the interrogation.    *Miranda v.*

*Arizona*, 384 U.S. 436, 444 (1966).    Specifically, twenty-six armed agents and officers arrived at

Mr. Sanders' home at 6:05 a.m., banged on the door, pointed guns at his parents, yelled an

obscenity and pointed a gun at Mr. Sanders (who was naked and sleeping when they arrived),

separated Mr. Sanders from his parents, and interrogated him for at least three hours and

eighteen minutes.    The facts here are nearly identical to those in *United States v. Hashime*, 734

**JA127**

F.3d 278 (4th Cir. 2013), in which the Fourth Circuit found that an individual was in custody

when he underwent an hours-long interrogation during the execution of a search warrant in his

home under similar circumstances.  Second, the interrogation was coercive and thus involuntary.

The agents repeatedly threatened to take away the entire family's electronic devices—on which

they all relied for work—unless Mr. Sanders provided them information and passwords.

Additionally, Mr. Sanders' characteristics—he had slept for less than two hours, he had no prior

experience with law enforcement, and he had recently been treated with extremely powerful

steroids that can interfere with cognition, behavior, and mood—contribute to a finding that his

statement was not voluntarily made.  Mr. Sanders's statements should be suppressed and he

respectfully requests a hearing to show the same.

## PROCEDURAL BACKGROUND

Mr. Sanders was indicted on June 24, 2020. The Government, in its November 2, 2020

Notice of Intent to Present Evidence Under Federal Rule of Evidence 414 (ECF No. 127), provided

Mr. Sanders with notice, for the first time, of its intent to use portions of his statement at trial.  On

November 17, 2020, the Government withdrew its November 2, 2020 notice and filed an Amended

Notice of Intent to Present Evidence Under Federal Rule of Evidence 414 (ECF No. 133).

In its Amended Notice, the Government wrote that it:

> may introduce testimony that, during the search of his home, the defendant voluntarily
> agreed to be interviewed by law enforcement and admitted that he previously received
> child pornography using a mobile messaging application and that he accessed and
> downloaded child pornography from websites on a dark web network known as
> The Onion Router ("Tor").

Amended Notice (ECF No. 133) at 4.  The Government went on to provide notice that it hopes

to introduce "testimony about and excerpts of this recorded interview" regarding "(1) other prior

instances in which he received child pornography using a mobile messaging application; (2) the process by which he found hidden services on Tor on which there was child pornography; and (3) other prior instances in which he downloaded and stored child pornography material from these hidden services." *Id*. The Government concluded its 414 notice by stating that it "may seek to admit some of the above evidence under Federal Rule of Evidence 404(b), for which it will provide separate notice." *Id*. at 5.

Prior to the Government's 414 Notices (and prior to the initial Motions deadline), Mr. Sanders was not on notice that the Government intended to introduce his statements as evidence at trial. Now that notice has been provided (and in advance of the Motions in Limine deadline), Mr. Sanders respectfully moves this Court to suppress those statements.

## FACTUAL BACKGROUND[1]

On February 12, 2020, at 6:05 a.m., twenty-six FBI Washington Field Office and task force members arrived, in the dark, at the home of Zackary Sanders and his parents to execute a search warrant. Ex. 1 (February 14, 2020 FD-302 Report) at 1. They banged on the door and started repeatedly ringing the doorbell. Ex. 2 (Declaration of Dr. Risa Sanders) at 1. Mr. Sanders's parents (Dr. Risa Sanders, age 62, a psychologist, and Dr. Jay Sanders, age 82, a medical doctor) came to the door, in their pajamas, fearing a possible home invasion. Dr. Risa Sanders was so sure that there was a home invasion that she yelled to her husband multiple times not to open the door. *Id*. at 1. Instead, they found over two dozen law enforcement officers on their lawn-–enough to fill their entire driveway. *Id*. Multiple officers had their guns drawn. *Id*. One in particular had a "long gun" pointed at the Sanders. *Id*.

---

[1] Mr. Sanders reserves the right to supplement the factual record, including with any evidence and testimony from the evidentiary hearing on this Motion.

**JA129**

Dr. Jay Sanders opened the door and the home's alarm system started blaring. *Id*. Dr. Risa Sanders writes, in her attached declaration, that she had never been around guns and that she "was scared for [her] life." Ex. 2 at 2.

The FBI asked the Sanders who else was in the home. *Id*. Dr. Risa Sanders replied that their son, Zackary Sanders, was inside. The FBI then rushed inside. The FBI asked where Zackary's room was. Risa Sanders, "so frightened she could barely speak," motioned towards Zackary's room. *Id*. Multiple agents then ran upstairs. One shouted "don't fucking move" to Zackary, who was 24 years old at the time and had never had any prior dealing with law enforcement. Ex. 3 (Excerpts of Transcript of Zackary Sanders's February 12, 2020 recoded statement) at 6. At least one had a gun drawn. *Id*. Risa Sanders writes that she "was scared to death they were going to shoot Zack." Ex. 2 at 2. They then went into Zackary's room, shone lights in Zackary's eyes, and tackled Zackary, who had been asleep and naked. They told Zackary to get on his knees. *See* Ex. 3 at 7. Zackary pleaded that he needed his pants and his contacts. Ex. 2 at 2. Zackary cannot see without his contacts, and was extremely disoriented. *Id*. Before the agents reached for his pants, Zackary explained there was a pocketknife in the pocket. *See* Ex. 3 at 7. After what felt like several minutes, Mr. Sanders was given his pants and allowed to get off his knees.

Meanwhile, Dr. Jay and Dr. Risa Sanders, still in their pajamas, were moved by law enforcement to the living room. Ex. 2 at 3. Law enforcement led Zackary downstairs to the dining room. *Id*. A few minutes later, law enforcement took Zackary to his mother's office, where they began interrogating him. They closed the doors to the office and one agent stood outside, blocking the door from being able to be opened outwards. Despite displaying their weapons, separating him from his parents, and restricting his ability to move freely in his home,

4

**JA130**

which was swarming with law enforcement officers, Special Agents Jeremy Obie and

Christopher Ford chose not to read him *Miranda* warnings.

Before the agents started recording the interrogation, they told Mr. Sanders that they were

could take every single electronic device in the home, including the router, cable box, all phones,

all iPads, and all computers. They then began recording. Within seconds of the recording's

start, Mr. Sanders said that he did not want to talk—"I—I don't think I want to talk. I mean, you

guys just barged into my house"—and asked if he needed a lawyer—"Like you just barged in. I

mean, should I have a—like a—don't I need like a lawyer or something before I answer?" Ex. 3

at 3-4. Special Agent Obie said that he was not there to provide legal advice, that Zackary was

not under arrest, and that Zackary "can do whatever you want to do," but told Zackary that "the

faster we can talk, the faster we can get to the—the bottom of the truth, the sooner we get out."

*Id.* at 4, 7. At no point during the interrogation did the agents tell Zackary that he was free to

leave.

Zackary then asked if his mother could be in the room with him. *Id.* at 7. Special Agent

Ford replied, "[n]ah, nah, no." *Id.* Zackary brought up an attorney again, "Um, yeah. I mean, I

feel, though, if any of these questions are like leading to like incriminating to any thorough --

any like law breaking, I should have-- … A lawyer with me." *Id.* at 8. He continued, "I mean, I

don't know what the questions are, but like, if any of it like is related to doing anything wrong.

Obviously, I feel like I should have the advice of a lawyer." *Id.* Again, rather than inform Mr.

Sanders that he had the right to an attorney, the agents said that they could not give him legal

advice and that he could stop at "some point" if he wanted. *Id.* at 9.

Throughout the interview, the agents' words and actions made it clear that a person in

Zackary Sanders's position would not feel free to leave. The agents told Zackary multiple times

5

**JA131**

that if he did not give them truthful information, they were going to take all of the devices in the
home.  This was particularly coercive because, as the agents knew, Zackary ran his business
using his electronic devices, and both of his parents practiced out of their home and also
depended on their electronic devices for work.  Those statements included the following:

- o "but if you're not truthful with us, we're going to have to take all your stuff and
  then that's potentially going to affect your business." *Id*. at 76.

- o "So we – I'm just trying to give you the opportunity -- same with your phone. If
  you just give me the log[in] []to your phone, I can go in, I can clear it and s- --
  you can keep your phone, but if not, we're taking your phone, we're taking all the
  devices in your house, unless you can be like, nope, here's the password to this so
  we can keep it here. So it's up -- that completely up to you, but it's – we're going
  to take it regardless. Not regardless, but if we'd be clear it, we're not going to take
  it. Like, we don't want to take your parents' stuff, we don't want to take your
  stuff, but that's on you." *Id*.

- o "We take all your stuff and you're not being truthful with us, it's going to be—it's
  –it's an issue." *Id*. at 87.

- o "So basically we look and see what's on the devices. And if you're like truthful
  with us and help us and say, hey, yeah, this stuff in my room -- we can just focus
  on your room so we don't have to take your routers. We don't have to take all
  your stuff." *Id*. at 90.

- o In response to Zackary's question about what would happen if he did not provide
  his passwords to his devices, "We take it" and "And it—you might not see it for
  a—a long time." *Id*. at 145-46.

Additionally, the agents confronted Zackary with evidence throughout the interrogation.
The agents told Zackary, "your IP address came back to a website that was advertising child
pornography."  *Id*. at 86.  The agents also said that with "certain technologies" they had traced
activity on Tor "back to this residence." *Id*. at 110.[2]  They told him that they found a thumb

---

[2] Notably—and contrary to what Special Agent Ford averred in the search warrant affidavit
submitted to the Magistrate—the agents stated that "*we*" (meaning the FBI, and not the Foreign
Law Enforcement Agency), "with certain technologies," "traced" activity on Tor "back to his
residence." (at 110).

drive with child pornography in his room. *Id*. at 87. A few minutes later, he said that "you are making a claim that you found something" and the agents replied "There's no claim. It's fact." *Id*. at 93.

The agents also kept urging Zackary to be honest, alleged that he was not being truthful, and told him that it was a crime to lie to a federal agent. They told him, "there's certain things I can tell that you are keeping from us, but we're going to find that end of the day." *Id*. at 77. They scolded him "[b]e honest" about Tor. *Id*. at 86. They warned him, "[a]nd also just—just to be perfectly clear; right? So it is a crime to lie to a federal agent—like—that—that is actual crime." When Zackary replied that he had not lied, Special Agent Ford said "well—" and Special Agent Obie said, "[l]ike I said, it is a crime. So we're asking you to be honest." *Id*. at 91. Mr. Sanders replied, "Yeah" and Special Agent Obie warned, "Crime can give jail time if needed-- if need be; right? This is why we're saying honesty is key because you don't want that on top of everything." *Id*. Later in the interrogation, Special Agent Ford interrupted Zackary and said, "But let's go back to being honest; okay?" *Id*. at 129. Zackary replied, "Back to being?" *Id*.

Zackary also asked three times more for his mother to be allowed in the room during the interrogation. *Id*. at 8, 88, 92. The agents denied his requests to see his mother twice before agreeing to allow Dr. Risa Sanders to come into the room. However, the agents would not let them speak alone without being recorded. Instead, the Special Agents Ford and Obie kept the recorder running and stood directly outside the glass-paned doors of the office, along with multiple other agents, watching Zackary and his mother. Ex. 2 at 5.

Further, when Mr. Sanders's mother first came into the room, she, too, inquired about a lawyer, saying "maybe we should get a lawyer rather than continuing to—because if they're

**JA133**

saying they found something bad, then probably we should get a lawyer[.]" Ex. 3 at 106. The agents ignored her. She also mentioned that both she and Zackary had been hospitalized recently. The agents asked no follow-up questions regarding the hospitalization. Had they done so, they would have learned that Zackary had recently been diagnosed with a rare condition, optic neuritis, and that he had been receiving heavy doses of a steroid, solu-medrol, throughout the month of January. Ex. 4 (Excerpts of Zackary Sanders's January 2020 medical records); *see also* Ex. 2 at 2-3 (explaining that Zackary received steroids throughout the month of January, including on January 28-31, 2020). That steroid can cause disturbances of mood, behavior, and cognition. Ex. 5 (Article entitled *Psychiatric Adverse Effects of Corticosteroids*). They would have also learned that Dr. Risa Sanders had recently undergone a mastectomy and, a few weeks prior, had been rushed to the hospital by ambulance in the middle of a chemotherapy session because she became so ill. Ex. 2 at 5. Instead, the agents proceeded to threaten to take the entire family's electronic devices, pointing out that all three family members needed those devices for business, unless Zackary continued speaking with the agents. Ex. 3 at 108-09.

Throughout the interrogation, it was clear that Zackary was extremely nervous and uncomfortable. He said the following to the agents:

- o "I'm very uncomfortable with probably answering anything." *Id*. at 10.

- o He told the agents twice that he was "nervous." *Id*. at 79, 88.

- o "Every time you make a noise or give me a look like that--.. make me very uncomfortable." *Id*. at 87.

- o "[T]his is kind of scary[.]" *Id*. at 89.

- o "I'm very stressed right now and I haven't even slept since yesterday" *Id*. at 95-96.

- o "You're scaring me a little" *Id*. at 97.

8

**JA134**

After three hours and eighteen minutes of interrogation, the agents completed their search and left. From the moment they arrived to the moment they left, they commandeered the Sanders's family home. None of the Sanders were free to move around the house. At least two armed agents stayed with Dr. Risa and Dr. Jay Sanders in the living room, watching over them, as the twenty-six members of law enforcement took over the home. Ex. 2 at 3, 6. Dr. Risa Sanders explains that she was not allowed to change her clothes or use the bathroom without an agent accompanying her and commanding her to leave the door open. *Id.* at 3. When Dr. Risa Sanders came to her home office, where Zackary was being interrogated, she "was bothered to see the agents in my office, treating it like it was their own, because I have confidential patient information in there." *Id.* at 4. She writes, "[t]hey just took over my desk without asking me." *Id.* She also asked the agents if she could get Zackary a soda (the agents did not ask Zackary if he needed anything to eat or drink at any point in the interrogation) and the agents went to get it themselves. Ex. 3 at 115-16. She explains, "[t]hat really bothered me, that I couldn't go by myself to get a coke for my own son in my own house." Ex. 2 at 5-6. She describes the scene: "Law enforcement camped out in every room on the main floor of our house. It was like they had commandeered my home. I did not feel like I was free to move around in my own house. I did not feel like I was free to leave." *Id.* at 6.

Zackary Sanders was also in the presence of armed agents the entire time, from the moment he was confronted, naked, at gunpoint, to the moment the agents left. He did not leave his mother's office once during the hours-long interrogation. The only "break" he received was to talk to his mother for several minutes while agents watched and recorded them.

When the agents left, the Sanders family was surprised to see that most of the house looked untouched, except for Zackary's room, which had been ransacked. *See* Ex. 2, Attachment

9

**JA135**

A (Photo attachment to Dr. Risa Sanders's Declaration).  As Dr. Risa Sanders explained, "[i]t

was very clear to me that law enforcement was there for Zack. … It seemed very targeted."  Ex.

2 at 3.

## ARGUMENT

## I.    MR. SANDERS'S STATEMENTS WERE OBTAINED IN VIOLATION OF HIS *MIRANDA* RIGHTS.

*Miranda* requires suppression of Mr. Sanders's statements during the government's case-

in-chief because he was not apprised of his right against self-incrimination prior to undergoing

custodial interrogation. *See, e.g., Pennsylvania v. Muniz*, 496 U.S. 582, 110 S. Ct. 2638, 2643-44

(1990).  A person is in "custody" under *Miranda* when he "has been . . . deprived of his freedom

of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  Whether a

person is in custody depends upon "how a reasonable man in the suspect's position would have

understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).  "The operative

question is whether, viewed objectively, 'a reasonable man in the suspect's position would have

understood his situation' to be one of custody." *United States v. Colonna*, 511 F.3d 431, 435 (4th

Cir. 2007) (quoting *Berkemer*, 468 U.S. at 422).  In other words, a court must decide "whether 'a

reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and

leave.'" *United States v. Jamison*, 509 F.3d 623, 628 (4th Cir. 2007) (quoting *Thompson v.

Keohane*, 516 U.S. 99, 112 (1995)) (alteration in original).

As the Fourth Circuit explained in *Hashime*, 734 F.3d at 283, relevant facts to the

custodial inquiry include, but are not limited to, "the time, place and purpose of the encounter,

the words used by the officer, the officer's tone of voice and general demeanor, the presence of

multiple officers, the potential display of a weapon by an officer, and whether there was any

physical contact between the officer and the defendant," as well as the "suspect's isolation and

separation from family" and "physical restrictions." *Id.* (finding defendant in custody and suppressing statement) (internal citations and quotations omitted). The "ultimate inquiry" looks at the "totality of the circumstances to determine whether they indicate an individual's freedom of action is curtailed to a degree associated with formal arrest." *United States v. Colonna*, 511 F.3d 431, 435 (4th Cir. 2007) (finding defendant in custody and suppressing statement).

### A. The totality of the circumstances show that Mr. Sanders was in custody.

As in *Hashime*, 734 F.3d 278, and *Colonna*, 511 F.3d 431, the totality of the circumstances here makes clear that Mr. Sanders, though not subject to formal arrest, was in custody. No reasonable person in Mr. Sanders's position would have felt free to terminate the encounter. Mr. Sanders, as in *Hashime*, "had awoken at gunpoint to a harrowing scene: his house was occupied by a flood of armed officers" who restricted his and his parents' movements. *Hashime*, 734 F.3d at 284. Twenty-six officers commandeered the home and controlled the Sanders' every movement within it. *See Colonna*, 511 F.3d at 435. (the "home was inundated with approximately 24 officers who gave Colonna and his family members instructions; that is, they told them where to sit and restricted their access to the home.") Risa Sanders was not even allowed to use the bathroom or change her clothes without an agent following her, demanding that the door stay open. Decl. at 3.

The agent's initial coercive and terrifying approach of Mr. Sanders in his bedroom was also similar to *Hashime*. Agents woke Mr. Sanders, who had been in bed asleep and naked after working until 4:00 a.m. Ex. 3 at 23-24; *Hashime*, 734 F.3d at 280 ("An officer entered Hashime's bedroom and pointed a gun at him. Hashime was in bed, naked and asleep, having gone to bed at 5 AM that morning."). One officer approached Mr. Sanders with "his gun out" and was "shouting—don't fucking move." Ex. 3 at 6. *See Hashime*, 734 F.3d at 280 (officer

11

**JA137**

entered Hashime's bedroom, pointed a gun at him, and ordered him to get up). As Mr. Sanders explained in the interrogation, "[t]hat really freaked me out." Ex. 3 at 6. Mr. Sanders was tackled to the ground and then put on his knees, still naked. Several other agents then came behind the first and found Mr. Sanders's pants and got him off his knees. *Id.* at 6-7.

Armed agents then brought Mr. Sanders downstairs and isolated him from his parents. *See Hashime*, 734 F.3d at 284 (noting that defendant was isolated from his family members throughout the interrogation); *see also United States v. Freeman*, 61 F. Supp. 3d 534, 544-46 (E.D. Va. 2014) (finding interrogation by two agents in separate room from family, where defendant was not "freely moving around," deprived defendant "of his freedom of action in a significant way.") (internal citation and quotation omitted). Though the agents told Mr. Sanders that he was not under arrest, he was never told that he was free to leave and he was never read *Miranda* warnings. *See Colonna*, 511 F.3d at 435 ("at no time was he given *Miranda* warnings or informed that he was free to leave.") Meanwhile, Mr. Sanders's parents were in the living room, being guarded by at least two agents at all times. Dr. Risa Sanders was not even allowed to use the bathroom without being followed and told to leave the door open. *See Hashime*, 734 F.3d at 284 (noting "the suspect and his family's loss of control over their home" as factor weighing in favor of custody).

Mr. Sanders asked multiple times to see his mother—a request the agents repeatedly denied. Ex. 3 at 8, 88, 92. Though his mother was eventually allowed in the room for about nine minutes of the three-hour-plus interrogation, that encounter, too, was coercive. When she came in the room, Risa Sanders almost immediately mentioned an attorney, saying "maybe we should get a lawyer rather than continuing to—because if they're saying they found something bad, then probably we should get a lawyer[.]" *Id.* at 106. The agents ignored her. Mr. Sanders then asked

12

**JA138**

if the two could speak privately. *Id*. at 107. The agents told him no. Risa Sanders asked why and said that they had both been hospitalized in the last couple of months. *Id*. The agents ignored her again, and proceeded to discuss their investigation and threatened to take all of the electronic devices in the home, claiming that they did not want to do that because it would be a "burden," especially because all three of the Sanders "have your businesses here." *Id*. at 108-09. The agents eventually agreed to leave the room, but stood immediately outside the glass doors, watching Zackary and his mother, with the recorder running. As Risa Sanders writes in her declaration, "we did not really have any privacy, because the agents were watching us and they were still recording us." Ex. 2 at 5. This brief encounter, which the agents used as an opportunity to bully both Risa and Zackary Sanders into Zackary continuing to talk to the agents by holding their electronic devices that they used for business hostage, did not lessen the custodial nature of the interrogation.

The length of the interrogation, too, weighs in favor of finding that Mr. Sanders was in custody. Agents interrogated Mr. Sanders for at least three hours and eighteen minutes. As the Fourth Circuit explained in *Hashime*, "the sheer length" of three hours of questioning (which "the government would prefer to characterize as an 'interview,' but which was plainly an hours-long interrogation") was an objective consideration weighing in favor of a finding of custody. 734 F.3d at 285. *See also Colonna*, 511 F.3d at 435 (three-hour interview characterized as "full-fledged interrogation"); *United States v. Knowles*, No. 2:15-875-RMG, 2016 WL 6952107, at *2–3 (D.S.C. Nov. 28, 2016) (finding defendant in custody where interview was "well over one hour long").

During the interrogation, the agents repeatedly made comments communicating to Mr. Sanders that he was not free to leave. The agents confronted Mr. Sanders with a thumb drive

**JA139**

they said contained child pornography that they found in his room and told him that his "IP address came back to a website that was advertising child pornography." Ex. 3 at 86, 87. *See United States v. Martin*, No. CR RDB-17-0069, 2018 WL 6606232, at *7 (D. Md. Dec. 17, 2018 ("During the interrogation, the agents confronted the Defendant with incriminating evidence discovered on his property, which may certainly cause a reasonable person to feel compelled to cooperate with the police.").

The agents also told Mr. Sanders multiple times to be honest and stated or implied that he was lying. Special Agent Ford told him, "And there's certain things I can tell that you are keeping from us, but we're going to find that end of the day." Ex. 3 at 77. Special Agent Ford later warned, "We take all your stuff and you're not being truthful with us, it's going to be—it's –it's an issue." *Id.* at 87. *See Hashime*, 734 F.3d at 283 (finding that the following statement "undercut the government's claim that Hashime was consistently told that he could leave at any time and did not need to answer any questions": "During the interrogation, one of the officers told Hashime that, with respect to his prior sexual history with minors, 'I need to know, and I need you to be completely honest with me here even if you're afraid, I don't care if you say I don't want to answer that or I'm afraid to answer it, but I need to know the truth.'").

At one point, immediately after Special Agent Ford told Mr. Sanders that the FBI would seize all of the family's electronic devices if Mr. Sanders withheld information, Special Agent Obie told Mr. Sanders three times that it was a crime to lie to a federal agent; the third time he added in "[c]rime can give jail time if needed." Ex. 3 at 90-91. *See Colonna*, 511 F.3d at 435 ("Although Colonna was not placed under formal arrest, he was told twice that lying to a federal agent was a federal offense.").

14

**JA140**

Perhaps most critically, the agents told Mr. Sanders multiple times that they would take all of the family's electronic devices—on which the agents knew each family member depended for business—if Mr. Sanders did not give them the information they wanted. *See* Ex. 3 at 75 ("So -- but if you're not truthful with us, we're going to have to take all your stuff and then that's potentially going to affect your business."). This is key because, as the Fourth Circuit recognized in *Hashime*, a "suspect may not feel that he can successfully terminate the interrogation if he knows that he cannot empty his home of his interrogators until they have completed their search." *Hashime*, 734 F.3d at 284 (internal quotations and citations omitted). Any reasonable person in Mr. Sanders's position—who not only depended on his electronic devices for his business, but knew that both his mother (for her psychology practice) and his father (for his telemedicine consulting practice) depended on theirs—would have felt that he could not end the interrogation until satisfying the agents' demands. This is all the more egregious considering that the agents, unlike in *Hashime*, never told Mr. Sanders that he was free to leave.

**B. The agents' statements that Mr. Sanders was not under arrest and did not have to answer questions do not negate the custodial nature of the interrogation.**

Though the agents told Mr. Sanders at the beginning of the interrogation that he was not under arrest and told him several times that he did not have to talk, the Fourth Circuit has made clear that such warnings are not dispositive of the custody question. "Indeed, there is no precedent for the contention that a law enforcement officer simply stating to a suspect that he is 'not under arrest' is sufficient to end the inquiry into whether the suspect was "in custody" during an interrogation." *Colonna*, 511 F.3d at 435. Nor is the fact that the interrogation took place in Mr. Sanders's home dispositive. *Hashime*, 734 F.3d at 2984 (finding that though courts

**JA141**

are "less likely" to consider the home custodial, "the particular facts" of that case, which are strikingly similar to those here, show that Hashime was in custody).

Rather, this Court must look at the totality of the circumstances to determine custody. *Id.* For the reasons stated above, the time (6:05 a.m.), location (in a separate room from his family), the words used by the officer (confrontation with evidence, multiple warnings not to lie and threat of a criminal charge if he did, and the threat to take all electronic devices), presence of multiple officers (twenty-six), display of a weapon (gun pointed at Mr. Sanders), the isolation from his family, and the law enforcement commandeering of the home, all weigh in favor of finding Mr. Sanders was in custody.  Further, though Mr. Sanders was told he was not under arrest, he was never told that he was free to leave.  These circumstances, taken together, undermine any claim that the agents' statements were enough to make a person in Mr. Sander's circumstances feel free to leave.

Because the agents failed to give Mr. Sanders *Miranda* warnings and because he was in custody, his statements must be suppressed.

## II.    MR. SANDERS'S STATEMENTS WERE INVOLUNTARY.

Mr. Sanders's statements should also be suppressed because they were not voluntarily made.  "The test for determining whether a statement is voluntary under the Due Process Clause is whether the confession was extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir. 1997).  The inquiry is "whether the defendant's will has been 'overborne' or his 'capacity for self-determination critically impaired.'" *United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir.1987).  A statement is only admissible if it is given "freely and voluntarily." *Braxton*, 112 F.3d at 780.  It is the

16

**JA142**

Government's burden to prove by a preponderance of the evidence that a statement was voluntary. *Id.* This, too, is determined by looking at the totality of the circumstances. *Id.* at 781. Those circumstances include the "characteristics of the defendant, the setting of the interview, and the details of the interrogation." *Pelton,* 835 F.2d at 1071 (internal quotation and citation omitted).

The circumstances of the interrogation were clearly coercive. "[C]oercion can be mental as well as physical, and the blood of the accused is not the only hallmark of an unconstitutional inquisition." *Arizona v. Fulminante*, 499 U.S. 279, 287, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (quoting *Blackburn v. Alabama*, 361 U.S. 199, 206, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960)) (internal quotation marks and alterations omitted). Here, the agents used the threat of taking all of the Sanders's electronic devices to get Mr. Sanders to talk and to provide them with passwords. The agents were aware that Mr. Sanders used his electronic devices to run his food and beverage business and that he did not have his business information stored elsewhere. *See* Ex. 3 at 16, 218. They were aware that his mother was a psychologist, who kept confidential client information on her devices. They were aware that his father invented telemedicine and used electronic devices for his work. *See id.* at 108-09 (agents claiming they were not trying to take all of the devices if they did not have to because it would be a "burden" on all three of the Sanders because they have their businesses there). As Risa Sanders avers in her declaration, it would be "ruinous" if the agents took all of the devices and Zackary "very much knew" that. Ex. 2. at 5.

The Fourth Circuit found a *Miranda* waiver unduly coercive, and thus involuntary in *United States v. Giddins*, 858 F.3d 870 (4th Cir. 2017), where the officers forced the defendant to choose between giving up his Fifth Amendment rights or "incurring adverse economic

17

**JA143**

consequences." *Id*. at 881. There, law enforcement threatened to "indefinitely retain" the car the defendant used to get to work unless he signed a *Miranda* waiver and answered their questions. *Id*. at 882. The Fourth Circuit found law enforcement's actions "unduly coercive," noting the economic consequences: "Giddins relied on his car to get him to his job, and it was the means of maintaining his livelihood." *Id*. at 883.

The consequences Mr. Sanders faced if forced to give up his electronic devices were similarly devastating. Mr. Sanders runs a small business by himself. He kept the entirety of his business information, including contracts and vendor information, on his electronic devices. Ex. 2 at 4. He was also aware of the severe economic and professional consequences that his parents would face if their devices were seized. It would be devastating for his mother's devices to be seized, which he knew contained confidential patient information. It would be devastating for his father's devices to be seized, which he knew his father used to run his entire telemedicine consulting business. The agents not only knew that, they used it to their advantage as they manipulated Mr. Sanders into talking to them and giving up his passwords.

Mr. Sanders's personal characteristics also weigh in favor of finding his statement involuntary. Mr. Sanders was 24 years old at the time of the execution of the search warrant and had never had any encounters with law enforcement before. As Mr. Sanders told the agents, he went upstairs to bed after working until 4:00 a.m.—the agents arrived at 6:05 a.m. Ex. 3 at 23-24, Ex. 1 at 1. He was thus operating on less than two hours of sleep. He repeatedly told the agents that he was nervous, "freaked out," scared, and uncomfortable. *See* p. X, *supra*. Further, as Mr. Sanders told the agents, Ex. 3 at 67-68, he was hospitalized twice in January and received IV steroids. His most recent treatment was at the Fairfax Inova Schar Cancer Institute, where he received 1000 mg. of Solu-Medrol through an IV on January 30th and 31st, 2020—less than two

18

**JA144**

weeks before the warrant was executed.  Research has found side effects such as mood disturbances, cognitive disturbances, and behavioral disturbances for patients given much lower doses.  Ex. 5.[3]  Taken together, Mr. Sanders's personal characteristics also contribute to finding his statement involuntary.

Finally, for the reasons stated above, the setting of the interview was also coercive.  The Sanders' family home was commandeered by law enforcement for hours.  He was isolated from his parents and interrogated for over three hours without being given *Miranda* warnings, even after he mentioned a lawyer and said that he did not want to talk.  Taken together, the economic coercion, Mr. Sanders's personal characteristics, and the custodial setting of the interrogation, render Mr. Sanders's statements involuntary.  His statements should be suppressed for that reason too.

## CONCLUSION

For the foregoing reasons, Mr. Sanders respectfully requests that this Court suppress the statements taken during the February 12, 2020 interrogation and that the Court hold an evidentiary hearing on this motion.

Respectfully submitted,

*/s/ Jonathan Jeffress*

Jonathan Jeffress (#42884)
Emily Voshell (#92997)
Jade Chong-Smith (admitted *pro hac vice*)
KaiserDillon PLLC
1099 Fourteenth St., N.W.; 8th Floor—West

---

[3] The attached article, *Psychiatric Adverse Effects of Corticosteroids*, discusses the effects of corticosteroids.  Solu-Medrol is a systemic corticosteroid.  *See* Prescriber's Digital Reference, available at https://www.pdr.net/drug-summary/Solu-Medrol-methylprednisolone-sodium-succinate-1881.

19

**JA145**

Washington, D.C.  20005
Telephone: (202) 683-6150
Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: evoshell@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com

*Counsel for Defendant Zackary Ellis Sanders*

20

**JA146**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of December, 2020, the foregoing was served electronically on the counsel of record through the U.S. District Court for the Eastern District of Virginia Electronic Document Filing System (ECF) and the document is available on the ECF system.

*/s/ Emily Voshell*
Emily Voshell

**JA147**

# Exhibit 1

- 1 of 3 -

FD-302 (Rev. 5-8-10)

**UNCLASSIFIED//FOUO**

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry      02/14/2020

A search warrant, issued by United States Magistrate Judge John F. Anderson on 02/10/2020, was executed at ███████████, McLean VA 22102 on 02/12/2020. The search warrant was issued subsequent to a violation of 18 U.S.C. 2252(a)(2), Distribution of Child Pornography.

The search warrant was executed at approximately 6:05 a.m. by members of FBI Washington Field Office as well as Task Force Officers assigned to the FBI.

The following people were inside of the residence, ███████████████, McLean VA 22102, at the time the search warrant was executed:


Name:  ZACHARY SANDERS

DOB:   ████/1995


Name:  RISA SANDERS

DOB:   ████/1957


Name:  JAY SANDERS

DOB:   ████/1937


The following personnel participated in the execution of the search warrant:

**UNCLASSIFIED//FOUO**

---

Investigation on  02/12/2020  at  Washington, District Of Columbia, United States (In Person)

File #  305I-WF-3222401                                    Date drafted  02/14/2020

by  FORD CHRISTOPHER A

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

**JA149**

FD-302a (Rev. 5-8-10)

**UNCLASSIFIED//FOUO**

305I-WF-3222401

Continuation of FD-302 of (U) Execution of search at ▓▓▓▓
Lane, McLean VA                                      , On 02/12/2020 , Page 2 of 3

| Name |
| --- |
| SA Christopher Ford |
| SA Jeremy Obie |
| SA Atraue Brown |
| SA Nicole Ewing |
| TFO Thomas Sullivan |
| TFO Chris Rekas |
| TFO John Spata |
| OST David Mizrahi |
| SA Lisa Franklin |
| SA Danielle Schnur |
| SA Alix Skelton |
| SA Tonya Griffith |
| TFO Blake Allbritton |
| SA Ed Moschella |
| SA Victoria Marsh |
| SA Danielle Lockridge |
| SA Emily Eckert |
| SA Brian Kaiser |
| SA Sean Clark |
| SA Laura Calvillo |
| SA Clark Burns |
| SA Brian Costella |
| SA Dylan Spinks |
| TFO Nelson Rhone |
| TFO Tim Palchak |
| SA Nash Graham |
| |
| |
| |
| |

A copy of the warrant and a property receipt were left on the basement table with a copy of the FD-597 (Property Receipt). The evidence items were seized by SA Tonya Griffith. Investigating agents left the search location

**UNCLASSIFIED//FOUO**

**JA150**

FD-302a (Rev. 5-8-10)

**UNCLASSIFIED//FOUO**

305I-WF-3222401

(U) Execution of search at ████████

Continuation of FD-302 of Lane, McLean VA _____ , On 02/12/2020 , Page 3 of 3

at approximately 7:45 A.M.


Digital 1-As contains the following:

Search Warrant, FD-597 property receipt documenting seized items, sketch, and photo logs (both cards) for ████████████ , McLean VA 22102.


Physical 1-As contain the following:

All of the above to include copies of both search warrant photos and consent to search for ZACHARY SANDERS' work vehicle,.

**UNCLASSIFIED//FOUO**

**JA151**

# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

UNITED STATES OF AMERICA,

                Plaintiff,

    v.                                Case No. 1:20-cr-00143

ZACKARY ELLIS SANDERS,

                Defendant.

## <u>Declaration of Dr. Risa Sanders</u>

I, Dr. Risa Sanders, Declare under the penalty of perjury that:

1. My name is Risa Sanders. I live in McLean, VA. Zackary Ellis Sanders ("Zack") is my son. Jay Sanders is my husband and Zack's father.

2. I am a psychologist. I have a Ph.D. in Psychology. I keep my patient's hard copy files in my home and I also keep privileged client information on my electronic devices (phone, laptop, and iPad).

3. On February 12, 2020, I was woken by a loud pounding and yelling at my front door just after 6:00 a.m. My husband and I had both been asleep. Then someone kept ringing the bell. I thought that my home was being invaded and that it was a robbery. I was screaming, "Don't open the door, it's a home invasion." My husband Jay went downstairs. I ran after him. I told Jay again not to open the door. My husband Jay yelled back that they were pointing guns at us. Jay then opened the door and my home security alarm started going off. Jay and I were both still in our pajamas. It felt terrorizing.

1

**JA153**

4. When we opened the door, we saw many—probably at least 20—law enforcement officers, many with their guns drawn. There were so many officers that they filled the whole driveway in front of our house. I remember very distinctly that one had a long weapon that was pointed at us. I was focused on the guns. I've never been around guns and I was scared for my life. I was just staring at the long part of this giant weapon. I was also worried about my husband, who was 82 at the time, having a heart attack, because we were both so frightened.

5. They asked us who else was in the house. I said my son. They said what's his name. I said Zack. They asked where he was. I turned and raised my hand towards his room. I was so frightened I could barely speak.

6. Multiple law enforcement officers then went inside and started shouting Zack's name. After a few moments, some of the officers moved us into the foyer.

7. I remember very distinctly that one large officer was on the stairs with a gun pointing at Zack's room and shouting at Zack. I remember Zack pleading that he needed his contacts because he cannot see without them and also begging for his pants. Zack does not have glasses, so he couldn't have seen at all without his contacts. I was scared to death they were going to shoot Zack.

8. Zack had been going through a lot of medical issues recently. He was diagnosed with a rare condition called optic neuritis. Because of that, he received extraordinarily high doses of IV steroids during his January 2-4, 2020 hospitalization. He received oral steroids in mid-January and then was hospitalized again at the end of January, on January 28-29, 2020, and received IV steroids during that hospitalization. He received extremely high doses of IV steroids again outpatient on January 30-31, 2020. Zack has also

2

experienced severe bullying in the past, which I know makes him feel extremely
frightened in confrontational situations.

9.  Law enforcement moved me and my husband to the living room. We were still in our
    pajamas. Law enforcement stayed with us there, watching us, as other members of law
    enforcement moved all over the house.

10. Law enforcement took Zack to the dining room at first.  From where Jay and I were in the
    living room, we could see law enforcement lead Zack into the dining room and then we
    could not see Zack anymore.

11. It was very clear to me that law enforcement was there for Zack. They did not seem very
    interested in me or Jay or our belongings. Jay and I both had electronic devices and they
    only gave a very cursory look at our devices. They also only really searched Zack's room
    and did not search other parts of the house. I took two photographs of Zack's room that
    shows how they ransacked his room, which I'm attaching. The rest of the house looked
    essentially untouched. It seemed very targeted.

12. I stayed in the living room during most of the time that law enforcement was in my home.
    Jay was with me most of that time. There were at least two agents with us, watching over
    us in the living room. I did not feel like I could move freely around the house.

13. At some point, I asked if I could get dressed. I was not allowed to go get dressed by
    myself. A female agent followed me and stood outside the door. I was told that I had to
    leave the door open while I got dressed.

14. Multiple times, I asked if I could use the bathroom. I was never allowed to go to the
    bathroom by myself. A female agent followed me each time and stood outside the door.

If there wasn't a female agent in the living room at the time, I had to wait until they called for one. I was told that I had to leave the door open while I used the bathroom.

15. Jay and I asked multiple times if we could see the warrant. Law enforcement told us that we couldn't see it until they were done.

16. I asked multiple times if I could see Zack. I was worried about my son. I also asked at least three times for a lawyer. I said that I wasn't comfortable without one. The agents did not take me to see Zack when I asked. The agents did not stop what they were doing to let me get a lawyer. Instead, they told me that if I got an attorney, they would take all of the electronic devices in the whole house and then leave. I felt pressured not to get an attorney because I have confidential client information on my electronic devices from my practice as a psychologist and so I did not want them to take the devices. I was also scared that Jay would not be able to continue his business without his electronic devices, because his work is in consulting and all of his work is on his electronic devices. Zack also relies entirely on his electronic devices to operate his businesses. He keeps all of his contracts, his vendor information, his contacts, and his employee information for his food and beverage business on his electronic devices. He is the owner of his food and beverage business and he ran his business by himself. His entire lighting design portfolio for his theatrical productions is also on those devices, as well as all of our vacation photos.

17. Eventually, an agent came and got me and let me go to where Zack was in my office. No one had ever asked me if they could use my office. I was bothered to see the agents in my office, treating it like it was their own, because I have confidential patient information in there. They just took over my desk without asking me.

4

18. When I came in the room, Zack told me that the agents had said they were going to take all of the electronic devices and asked me if he should talk to the agents. I responded by saying that maybe we should get a lawyer, rather than continuing to talk. The agents ignored that comment entirely. The agents never told Zack that he had a right to a lawyer in my presence.

19. Zack and I then both asked if we could meet alone, without being recorded. The agents told us no. I explained that both Zack and I had been hospitalized in the last couple months. They did not ask why we had been hospitalized or ask any follow up questions. If the agents asked, I would have told them that I had been in the hospital because I had a mastectomy four months earlier and I had just finished a round of chemotherapy a few weeks prior, and I became so ill at my oncologist's office that I needed to be rushed to the hospital by ambulance. Instead, they again mentioned taking all of the devices in the house, and told us that would affect our (my and Zack's and Jay's) businesses. To me, this implied that if Zack did not agree to talk to them, they were going to take devices that had my confidential client information, Jay's devices that he needed for his business, and devices that Zack needed to run his business. That would be ruinous for all of us. Zack very much knew just how ruinous that would be.

20. The agents did not want to leave the room at all. Eventually, they agreed to leave. But they kept the recorder running and they stood right outside the doors to my office. The doors to my office are glass, so we did not really have any privacy, because the agents were watching us and they were still recording us.

21. After talking to Zack for a little bit, the agents came back into the room. I asked if I could get Zack a coke from the refrigerator. The agents went to get it themselves. That really

5

bothered me, that I couldn't go by myself to get a coke for my own son in my own house. One agent then accompanied me to make sure I made it back to the living room. Zack stayed in the office for a long time after I left.

22. From the moment law enforcement arrived to the moment they left, I was always in the presence of at least one officer or agent. From what I could tell, the same was also true for Zack and Jay. Law enforcement was all over our house. There were members of both the FBI and Fairfax County police. Law enforcement camped out in every room on the main floor of our house. It was like they had commandeered my home. I did not feel like I was free to move around in my own house. I did not feel like I was free to leave.

DONE this 17th day of December 2020.

Dr. Risa Sanders

6

# Attachment A



**JA160**



**JA161**

# Exhibit 3



# Transcript of Zackary Ellis Sanders

**Date:** February 12, 2020
**Case:** United States -v- Sanders

**Planet Depos**
**Phone:** 888.433.3767
**Email::** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                              3

```
 1                      P R O C E E D I N G S
 2              S.A. FORD:  [inaudible]
 3              MR. SANDERS:  Okay.
 4              S.A. FORD:  So, like I said, my name is Chris
 5      Ford. Special Agent with the FBI. This is Jeremy Obie,
 6      also Special Agent with the FBI. Do you have any idea
 7      why we're here?
 8              MR. SANDERS:  No.
 9              S.A. OBIE:  No idea whatsoever. Okay. First
10      off of this -- make sure got the right person before we
11      get going. Like I said, you don't have to -- you don't
12      have to talk to us. You're not under arrest.
13              We just want to get some questions from you
14      and we have just -- just some questions we just want to
15      talk to you and if you don't want to talk to us, that's
16      -- that's on you, but the quicker we get stuff done,
17      the quicker we can get out of your house and out your
18      way. But just want to start with just your name.
19              MR. SANDERS:  I -- I don't think I want to
20      talk. I mean, you guys just barged into my house.
21              S.A. FORD:  Well, we have a -- we have -- we
22      have a search warrant for your residence, so it was not
```

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020      4

1   like we just came here and -- oh, that's a nice house -

2   - we're just going to come in and walk in. So --

3       MR. SANDERS: Yeah.

4       S.A. OBIE: Signed off by a federal judge.

5       MR. SANDERS: But I mean, I think you -- you

6   know what I'm saying. Like, you just barged in. I mean,

7   should I have a -- like a -- don't I need like a lawyer

8   or something before I answer?

9       S.A. OBIE: Well, you're not -- you're not

10   under arrest. You're not -- anything like that; right?

11   We're just here to sit down and talk to you. You can do

12   whatever you want to do, but we're not here to give you

13   legal advice either way -- but you're not under arrest.

14       MR. SANDERS: If I'm not under arrest why

15   would you --

16       S.A. OBIE: Because we have a -- we have a

17   search warrant. That's --

18       MR. SANDERS: What does that mean?

19       S.A. OBIE: So a search warrant means that we

20   -- we're given the legal right by a federal judge,

21   which was approved through many au- -- many

22   prosecutors, supervisors, etc. They had to read all

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                    5

 1    through the, you know, probable cause of why we're

 2    here.

 3              And then at the end all be all is the federal

 4    judge. And that federal judge basically says, yes, I

 5    agree with everything and every other stamp of approval

 6    that's been on this -- I'm going to sign this.

 7              Therefore, that gives us reason to come in

 8    here and look in your house for a certain contraband,

 9    etc. And in that, so there's -- there's multiple ways

10    to be able to conduct a search warrant.

11              Given that we are who we are, we try to do it

12    with a little bit more respect; right? When it comes to

13    -- we didn't knock down your door, we knocked, we rung

14    your -- rang the doorbell.

15              We have knocked down doors in the past because

16    people wouldn't cooperate -- they wouldn't come to the

17    door; right?

18              The only reason why at the top of the steps

19    you were yelling through the door; right? Our training;

20    right? We don't know what's on the other side of that

21    door. So --

22              MR. SANDERS:  Yeah. I -- I mean, I -- I

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                          6

1    understand -- I watch the tv shows. Yeah. I know you're

2    --

3            S.A. OBIE:  Right. Right. So -- so it's no ill

4    intent. No --

5            MR. SANDERS:  Yeah. Well, I mean, the guy with

6    the cop shows already outside filming out of the room

7    when he was shouting -- don't fucking move --

8            S.A. FORD:  Right.

9            MR. SANDERS:  Might've been a little --

10           S.A. FORD:  Yeah.

11           MR. SANDERS:  A little power hungry.

12           S.A. OBIE:  That's --

13           MR. SANDERS:  With his gun out.

14           S.A. OBIE:  I -- I --

15           MR. SANDERS:  That really freaked me out.

16           S.A. OBIE:  Think that is probably is

17   [inaudible] with that. Yeah. But as you saw, I came up

18   right behind him.

19           MR. SANDERS:  Yes. The rest of you were

20   censored.

21           S.A. FORD:   [laughing]

22           S.A. OBIE:  Came up right behind him, you

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                    7

1    know, we went and found your pants. You were open with

2    us and there was a knife in your pants, etc.; right? So

3    we checked, it, went through it, got you off your

4    knees, sat you down, calmed you down; right?

5            MR. SANDERS:  Yes.

6            S.A. OBIE:  So basically all we're trying to

7    do right now is just talk.

8            S.A. FORD:  Yeah.

9            S.A. OBIE:  Right? So the faster we can talk,

10   the faster we can get to the -- the bottom of the

11   truth, the sooner we get out.

12           S.A. FORD:  Right. And then like, they're

13   going to -- everybody's -- people are going to talk to

14   your parents as well. So your mom and your father --

15   and your father and your mother as well. So not just

16   you, that's going to be, you know, people going to talk

17   to you. So other people are going to be talking to as

18   well, but --

19           MR. SANDERS:  Okay. I can't have my mom in

20   here with me?

21           S.A. FORD:  Nah, nah, no. Because we want it -

22   - because we want to get like your story. We don't want

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                    8

```
 1   her to have like an influence on your story and vice

 2   versa.

 3           S.A. OBIE:  Right.

 4           S.A. FORD:  But that's, you know, so -- oh,

 5   man.

 6           MR. SANDERS:  Careful.

 7           S.A. FORD:  Yeah. That was about to be really

 8   bad. About to be really bad.

 9           MR. SANDERS:  Um, yeah. I mean, I feel,

10   though, if any of these questions are like leading to

11   like incriminating to any thorough -- any like law

12   breaking, I should have --

13           S.A. OBIE:  Right.

14           MR. SANDERS:  A lawyer with me.

15           S.A. OBIE:  And that's -- that's completely

16   your choice; right. So --

17           MR. SANDERS:  I mean, I don't know what the

18   questions are, but like, if any of it like is related

19   to doing anything wrong. Obviously, I feel like I

20   should have the advice of a lawyer.

21           S.A. FORD:  That's -- we -- we can't give you

22   legal advice.
```

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                                         9

```
1              MR. SANDERS:  Depending on what the questions
2    are.
3              S.A. OBIE:  Yeah. We can't give you legal
4    advice, but if you feel like at some point you just
5    want to stop and that's fine; right? We're -- we're not
6    here to, you know, force you to do what -- anything;
7    right? This is just us having a conversation.
8              S.A. FORD:  Mm-hmm.
9              S.A. OBIE:  At the end of the day; right? So -
10   -
11             MR. SANDERS:  Yeah. But you understand my
12   concern.
13             S.A. OBIE:  I -- I understand. I'd be in the
14   exact same situation if --
15             MR. SANDERS:  Yeah.
16             S.A. OBIE:  You know, I was on the outside.
17             S.A. FORD:  And -- and our purpose here is --
18   is not to make you uncomfortable or anything. We just
19   want -- we just have questions and I mean, this is
20   something that we do all the time.
21             MR. SANDERS:  Mm-hmm.
22             S.A. FORD:  And we've had people in your
```

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                    10

1    position where they are completely oblivious to what's

2    going on. And after conversations, it makes sense to

3    them. And then clear -- everything's clear and then we

4    -- we roll out.

5          MR. SANDERS:  I mean, I really don't know if

6    I'm answering any of this, but can I see a list of

7    questions or --

8          S.A. FORD:  No. It's just --

9          MR. SANDERS:  Stuff you're going to --

10          S.A. OBIE:  [inaudible]

11          MR. SANDERS:  Okay.

12          S.A. FORD:  Unless you want to open my brain

13    and take my brain out and it projected on here

14    [laughing] other than -- I don't think -- I don't think

15    you want to do that.

16          MR. SANDERS:  I mean, if -- if there's

17    something that I'm just going to, you know, if I feel

18    like any of it relates to -- I'm very uncomfortable

19    with probably answering anything --

20          S.A. FORD:  Okay.

21          MR. SANDERS:  But if you want to try asking

22    something or two, well --

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                              16

```
1          MR. SANDERS:  I mean, still occasionally, but
2   I also like just got out of the hospital for a vision
3   issue.
4          S.A. FORD:  Oh.
5          MR. SANDERS:  So that was a little hard, but -
6   - been out for a bit.
7          S.A. FORD:  Sorry about that.
8          MR. SANDERS:  Thanks. But I have a food and
9   beverage business down here, which is something I
10  actually started technically in elementary school with
11  like a red flash, you guys saw that; right?
12         S.A. FORD:  Yeah. It's taking a picture.
13         MR. SANDERS:  I just wanted to make sure it's
14  not -- it's my eye just one of the bright flash --
15         S.A. FORD:  Oh, okay.
16         MR. SANDERS:  Dust in my eye --
17         S.A. FORD:  Dust. Yeah.
18         MR. SANDERS:  But, you know, I started
19  actually the -- yeah, I started really young with the
20  lemonade stand, but then I turned it into like a --
21  like a snow cone machine -- snow cones -- and then went
22  from there and bought some more equipment.
```

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

**JA172**

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                         23

```
 1              MR. SANDERS:  Yeah.

 2              S.A. FORD:  I gave you the estimate you were

 3    talking about proposals and all this --

 4              MR. SANDERS:  Yeah.

 5              S.A. FORD:  I used to be -- I used to do IT

 6    work --

 7              MR. SANDERS:  Okay.

 8              S.A. FORD:  And I just remember writing

 9    proposals and just my little piece was so many

10    different pages and that just can't imagine all the

11    other stuff that you had to do. So congrats. That's --

12    that's good stuff.

13              MR. SANDERS:  Thank you.

14              S.A. FORD:  Now are you -- are you busy now?

15    Like how's it?

16              MR. SANDERS:  I mean, right now I'm getting

17    ready for the season -- so the season start in March --

18              S.A. FORD:  Okay.

19              MR. SANDERS:  So like right now, like I just

20    finished posting, like hiring ads, you know, couple

21    hours before you guys got here.

22              S.A. FORD:  Oh, man, early bird.
```

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                                    24

```
 1            MR. SANDERS:  And then Facebook. Yeah. I was

 2   just going to sleep so --

 3            S.A. OBIE:  Sounds like a true entrepreneur.

 4            S.A. FORD:  Yeah. Right. Yeah. That's true. It

 5   is true.

 6            MR. SANDERS:  Go upstairs at like 4:00 a.m. So

 7   yeah, so doing -- doing all that and then, you know,

 8   getting -- getting everything ready just to go for new

 9   buildings. So right now I'm getting all the equipment

10   in there and getting all the plumbing an electrical

11   done.

12            S.A. FORD:  Wow. Man.

13            S.A. OBIE:  So what -- what are you doing with

14   that building or whatever the building is?

15            MR. SANDERS:  That one it's going to be a

16   concession stand. So, you know, I just finished getting

17   all the equipment, but now I've got to do all the water

18   connections, all the, you know, electrical connections,

19   all the --

20            S.A. OBIE:  Seems like you see employees.

21            S.A. FORD:  Yeah.

22            S.A. OBIE:  That's what it seems like.
```

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                                    67

1    something pound refrigerator --

2           S.A. FORD:  Oof.

3           MR. SANDERS:  By myself and I hurt my back.

4    And then like, I was in a lot of pain from that. So

5    hurt my back, but, you know, survived, even though I've

6    got like a couple like bulging discs that --

7           S.A. FORD:  Ugh.

8           MR. SANDERS:  I still need to see a specialist

9    about, but so there's that then I had to go out of town

10   for an annual conference and trade show. Then when I

11   got back, I got sick like end of November -- it was

12   kind of like a cold at first. But then it got worse --

13          S.A. FORD:  Hmm.

14          MR. SANDERS:  And then they said it was a

15   sinus infection, started taking some medicine for that,

16   and then there's very rare eye condition -- which they

17   still haven't figured out.

18          So then that was going on now through the

19   beginning of January. And then I was in the hospital

20   for like a week. Well, three days at first and then

21   took more tests.

22          And then was back in the hospital for a few

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                              68

1    days, then getting an IV and then just trying to get

2    back into getting all the old work caught up on. So

3    it's been -- it's been -- it's been rough.

4              S.A. OBIE:  Okay.

5              S.A. FORD:  Hey, real quick, Zack, we -- the

6    keys for your Jeep -- where are they at?

7              MR. SANDERS:  They were on my pants. On my

8    keychain.

9              S.A. OBIE:  Yeah. So they should be in that

10   room.

11             S.A. FORD:  In his room?

12             S.A. OBIE:  His -- his room.

13             S.A. FORD:  Okay.

14             S.A. OBIE:  I think somebody took them off the

15   pants -- if I remember.

16             S.A. FORD:  Okay. The pants that you have on?

17             MR. SANDERS:  Yeah.

18             S.A. FORD:  Okay.

19             MR. SANDERS:  It was on the -- on the belt

20   there's a key ring with like 3,000 keys on it.

21             S.A. FORD:  With bunch of keys. Okay.

22             S.A. OBIE:  Should be like on the floor or on

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                          75

```
1    going to basically go through everything in your house.

2    And we don't want to go through every single piece of

3    media. So hard drives, thumb drives, computers,

4    laptops, phones -- we don't want to do all that.

5              MR. SANDERS:  Yeah.

6              S.A. FORD:  So we just want to eliminate stuff

7    so we don't have to take -- we don't want to take all

8    your stuff.

9              MR. SANDERS:  Sure.

10             S.A. FORD:  So -- but if you're not truthful

11   with us, we're going to have to take all your stuff and

12   then that's potentially going to affect your business.

13             S.A. OBIE:  W- -- he's -- he's --

14             S.A. FORD:  Let me talk to him. So that's the

15   hypothetic -- so I'm asking you, I'm going to ask you

16   if you can give me -- so they found a laptop and a -- a

17   tablet under your bed.

18             MR. SANDERS:  Okay.

19             S.A. FORD:  Are you willing to give us the

20   password so we can just eliminate that so we don't take

21   it? Because they said there's one -- an iPad with like

22   six -- like a six digit password on there.
```

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                        76

```
 1          MR. SANDERS:  I mean, you're making me kind of

 2   --

 3          S.A. FORD:  No. You -- you can say -- you

 4   don't have to say, yeah. If you say no, we're going to

 5   take it. So we -- I'm just trying to give you the

 6   opportunity -- same with your phone.

 7          If you just give me the log into your phone, I

 8   can go in, I can clear it and s- -- you can keep your

 9   phone, but if not, we're taking your phone, we're

10   taking all the devices in your house, unless you can be

11   like, nope, here's the password to this so we can keep

12   it here.

13          So it's up -- that completely up to you, but

14   it's -- we're going to take it regardless. Not

15   regardless, but if we'd be clear it, we're not going to

16   take it. Like, we don't want to take your parents'

17   stuff, we don't want to take your stuff, but that's on

18   you.

19          MR. SANDERS:  What -- I mean, I guess -- I --

20   I just still wondering why you guys are here.

21          S.A. FORD:  Okay. You have no -- you have

22   absolutely no idea? Because even -- even a couple of
```

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                77

```
 1   times I caught you saying, I have s- -- ah, never mind,
 2   but you would stop saying certain things. So --
 3           MR. SANDERS:  What -- all right.
 4           S.A. FORD:  So I can -- just listen -- just
 5   listen to me. I just want --
 6           MR. SANDERS:  I'm just trying to phrase, s- --
 7           S.A. FORD:  No. I don't want you to phrase.
 8   There's no -- I want you to be honest with me, because
 9   I'm being honest with you. I -- and I don't need you to
10   like, try to -- I just want you to just be straight up
11   with me.
12           S.A. OBIE:  True. Yeah.
13           S.A. FORD:  Because they've already talked to
14   your parents, so your parents know what's going on, and
15   I'm trying to give you opportunity to clear your name,
16   because I'll be honest with you -- and like, we tried
17   to give you time to talk --
18           MR. SANDERS:  Yeah.
19           S.A. FORD:  And there's certain things I can
20   tell that you are keeping from us, but we're going to
21   find that end of the day. So --
22           MR. SANDERS:  I --
```

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                          78

```
1              S.A. FORD:  Listen, listen, listen, listen

2      Zack, listen. So like I said, we went in your room and

3      the per- -- the person that knows the best about your

4      room is you.

5              MR. SANDERS:  Yeah.

6              S.A. FORD:  So is there a reason why you're

7      kind of thinking about your computer or your tablet? Is

8      there a reason? Is there a reason why we shouldn't go

9      in there?

10             MR. SANDERS:  I mean, there's -- I guess the

11     main reason is like, there's some like nude photos of

12     myself.

13             S.A. FORD:  Okay.

14             MR. SANDERS:  Of some, you know, guys I've

15     been with.

16             S.A. FORD:  Okay.

17             MR. SANDERS:  I --

18             S.A. FORD:  But do you realize that we're all

19     -- we're all adults here; right? We don't care about

20     that. That's not going to -- that's not a reason for

21     you not to give us your passwords.

22             MR. SANDERS:  Okay.
```

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

**JA180**

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                           79

```
1              S.A. FORD:  I know -- I know it -- it can be

2      uncomfortable, but we're trying to clear your name.

3              MR. SANDERS:  I guess -- and I don't

4      understand like what it is you're like look- -- like I

5      don't -- I don't know why you guys are here.

6              S.A. FORD:  Okay.

7              MR. SANDERS:  So I'm like nervous about like

8      the whole situation.

9              S.A. FORD:  Okay.

10             MR. SANDERS:  Like, I don't -- I --

11             S.A. FORD:  So -- let me -- okay.

12             MR. SANDERS:  I'm --

13             S.A. FORD:  I'm going to ask you one question.

14             MR. SANDERS:  Let me just say one thing.

15             S.A. FORD:  Okay.

16             MR. SANDERS:  Because I just want to explain.

17             S.A. FORD:  Okay.

18             MR. SANDERS:  Like -- I'm -- I'd say like

19     pretty guarded with information --

20             S.A. FORD:  Okay.

21             MR. SANDERS:  Because people have tried to

22     like use things against me in the past --
```

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                    86

```
1              MR. SANDERS:  Okay.

2              S.A. FORD:  Dark net, Tor investigations. And

3     we have your Cox IP address came back to a Tor website

4     that we know fac- -- facilitates child pornography.

5              So before you -- before you even say anything,

6     think before you -- think, before you speak; okay? So

7     your IP address came back to a website that was

8     advertising child pornography.

9              And I asked you -- we just asked you have you

10    been -- I mean, you've been on -- you said you've been

11    on Tor.

12             MR. SANDERS:  Mm-hmm.

13             S.A. FORD:  You haven't been on there for

14    drugs. You haven't been on there for fake IDs. You were

15    just browsing. So where -- where else would you have

16    gone on Tor?

17             S.A. OBIE:  Be honest.

18             MR. SANDERS:  I don't really --

19             S.A. FORD:  Okay.

20             MR. SANDERS:  I -- every time you make a noise

21    or give me like a look like that  --

22             S.A. FORD:  Yeah. Because I don't  --
```

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                    87

```
 1              MR. SANDERS:  Make me very uncomfortable.

 2              S.A. FORD:  No, that's fine. Because you know

 3  what? Because I feel like the wheel -- I could see the

 4  wheels spinning. Like I said, we've been doing this for

 5  a while. I can see the wheels spinning in your head and

 6  you know -- you know why we're here. Because I even

 7  asked you -- I can -- I saw that.

 8              Why would we find a thumb drive with child

 9  porn in your room? And -- before you speak, this is the

10  opportunity for you to be just completely honest with

11  us, because once we walk out those doors and if -- like

12  --

13              S.A. OBIE:  Just get done.

14              S.A. FORD:  We take all your stuff before you

15  speak --

16              MR. SANDERS:  Sure.

17              S.A. FORD:  We take all your stuff and you're

18  not being truthful with us, it's going to be -- it's --

19  it's an issue.

20              MR. SANDERS:  Okay.

21              S.A. FORD:  So I want to give you the

22  opportunity now --
```

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

**JA183**

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                           88

```
1              MR. SANDERS:  Yep.

2              S.A. FORD:  To kind of clear your name so we

3    can get in and get out and then we can work -- and work

4    with you and, you know, do all that.

5              MR. SANDERS:  You make me a little bit

6    nervous. Can I have -- can I speak to my mother for one

7    moment or have her in here just as a witness?

8              S.A. OBIE:  Witness to what? We have -- it's -

9    - it's right here.

10             S.A. FORD:  Yeah.

11             S.A. OBIE:  There's -- there's no need --

12   you're an adult; correct?

13             S.A. FORD:  Yeah.

14             S.A. OBIE:  Right. She's busy in her own

15   interview right now. So all we're asking from you is

16   the truth.

17             MR. SANDERS:  Well --

18             S.A. OBIE:  We're not asking --

19             MR. SANDERS:  I mean, you're making claims and

20   you -- you just said that you said me answering these

21   questions would be -- would help me.

22             S.A. FORD:  It -- it very well could help. It
```

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

**JA184**

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                    89

```
1    can help you a lot. Actually. If you be -- if you're

2    truthful with us --

3              MR. SANDERS:  You -- you couldn't just tell me

4    how so because it would make me feel --

5              S.A. FORD:  Because this -- this is --

6              MR. SANDERS:  I don't know how this --

7              S.A. FORD:  Okay. I'm going to tell you, Zack

8    --

9              MR. SANDERS:  This is kind of scary.

10             S.A. FORD:  This is what is going to happen.

11   So we have a search warrant for your residence.

12             MR. SANDERS:  Okay.

13             S.A. FORD:  So for the search warrant -- and

14   that can show you this -- the search warrant, it covers

15   all of the electronic devices. So if I wanted to, I can

16   take whatever -- this router, I can take anything in

17   his house. That's what I'm talking about.

18             MR. SANDERS:  I -- I -- I understand that.

19             S.A. FORD:  And that would completely disturb

20   everything in the house and not do not want to do that.

21   That's not my intention. So after we do the search

22   warrant, we go back and we do a -- a forensic check.
```

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                          90

```
1            So basically we look and see what's on the
2    devices. And if you're like truthful with us and help
3    us and say, hey, yeah, this stuff in my room -- we can
4    just focus on your room so we don't have to take your
5    routers. We don't have to take all your stuff.
6            So -- and after that, we talked to our
7    prosecutor and say, hey, this is -- you know, this guy
8    has been truthful with us. He's been willing to work
9    with us. He's answering our questions. Can we help him
10   out?
11           But if not, and if you with information from
12   us, then that's when we're like, well, he wasn't really
13   cooperative and I'm not going to say like, it's going
14   to help your -- this is going to help or not help, but
15   the more information we have, the better we can focus
16   on stuff so we can get in and get out and then get your
17   life going and be done with it.
18           But if you withhold information, we're taking
19   everything and I don't want to take everything.
20           S.A. OBIE:  And also just -- just to be
21   perfectly clear; right? So it is a crime to lie to a
22   federal agent like -- that -- that is actual crime.
```

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                    91

```
1              MR. SANDERS:  I haven't -- I haven't lied
2     about anything.
3              S.A. FORD:  Well --
4              S.A. OBIE:  Like I said, it is a crime. So
5     we're asking you to be honest; right?
6              MR. SANDERS:  Yeah.
7              S.A. OBIE:  Crime can give jail time if needed
8     -- if need be; right? This is why we're saying honesty
9     is key because you don't want that on top of
10    everything.
11             MR. SANDERS:  So I -- I haven't lied about --
12             S.A. OBIE:  I mean, we -- we realize that.
13             MR. SANDERS:  Okay. Because he said he thought
14    I was --
15             S.A. FORD:  No. No. I -- no, no, I was --
16             MR. SANDERS:  Not being truthful.
17             S.A. OBIE:  So --
18             S.A. FORD:  No.
19             S.A. OBIE:  So we're giving you the stage
20    right now. We're giving you the stage. We have -- we
21    have the thumb drive; right? We already had a dumb
22    drive and you know which thumb drive that is. So the
```

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                    92

```
1    stage is yours.
2             MR. SANDERS:  Could I just speak to my mom for
3    one moment?
4             S.A. OBIE:  Your mom is an interview right
5    now.
6             MR. SANDERS:  Okay. Okay. I need -- can't they
7    pause for --
8             S.A. OBIE:  Why -- why do you -- why do you
9    need to speak to your mom right now.
10            MR. SANDERS:  I -- we're just -- we're just --
11            S.A. OBIE:  She's -- she's the one doing it?
12   Like does she go on Tor and do all the?
13            S.A. FORD:  And --
14            MR. SANDERS:  I don't think she knows how to
15   use, to be honest.
16            S.A. FORD:  Right. So do you -- do you want
17   your parents to know to the extent -- I mean, they're
18   going to know why -- they're probably asking, why are
19   you guys in my house?
20            MR. SANDERS:  Mm-hmm.
21            S.A. FORD:  So they're going to know to an
22   extent, but once again, you're an adult, so you don't
```

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                    93

1   have to tell them everything. That's --

2           MR. SANDERS:  And just like we're close and I

3   usually like talk to her before, like --

4           S.A. OBIE:  Before what?

5           MR. SANDERS:  Like making the decisions about

6   --

7           S.A. OBIE:  About truth? About honesty?

8           MR. SANDERS:  I have not, not been honest,

9   like I've been fully honest with every single thing

10  I've said.

11          S.A. OBIE:  Right. And we're asking you a

12  question and we're putting it to you.

13          MR. SANDERS:  But you're -- well, I guess what

14  I'm -- what I'm saying here is you are making a claim

15  that you found something.

16          S.A. FORD:  No this --

17          S.A. OBIE:  There's no claim --

18          S.A. FORD:  There's no claim. It's fact.

19          MR. SANDERS:  Okay. Yeah, but I mean, like,

20  you're saying you f- -- you're saying you found

21  something.

22          S.A. FORD:  We found something. We found a

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                              95

```
1              MR. SANDERS:  Okay.

2              S.A. FORD:  Because I don't want to, like I

3    said --

4              MR. SANDERS:  I -- yeah, you're right.

5              S.A. FORD:  I don't want to take all your

6    stuff. And at this point I feel like I'm thinking this

7    is going to go with me unless --

8              MR. SANDERS:  What I -- what I -- what I --

9    what I mean by help you is like, make this go faster.

10   But that helps me by keeping this -- like, I fully

11   understand that you're trying to help me as well. Like,

12   I appreciate --

13             S.A. FORD:  Do you want to give me -- do you

14   want to give me the passwords to your -- to your laptop

15   and your iPad so I can just clear that so you can have

16   that and your phone or you want me to just take it?

17             MR. SANDERS:  That's what I'd like to -- can I

18   just --

19             S.A. FORD:  N- -- it's your priv- -- it's your

20   stuff.

21             MR. SANDERS:  I understand. But I'm very

22   stressed right now and I haven't even slept since
```

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                               96

```
 1   yesterday.

 2            S.A. FORD:  I -- I can't --

 3            MR. SANDERS:  As I was trying to explain -- I

 4   was, like, woken up like this.

 5            S.A. OBIE:  Right.

 6            S.A. FORD:  It would just --

 7            MR. SANDERS:  Could I -- could I please --

 8   could I just --

 9            S.A. OBIE:  Let me go get her real quick.

10            MR. SANDERS:  Thank you.

11            S.A. OBIE:  All right?

12            MR. SANDERS:  Thank you. I -- just like, I

13   usually like -- like take like a good amount of time to

14   make decisions.

15            S.A. FORD:  Okay.

16            MR. SANDERS:  So this is just really --

17            S.A. FORD:  This is --

18            MR. SANDERS:  For me.

19            S.A. FORD:  This is -- I -- I get it and this

20   is the golden opportunity for you while we're here

21   because when that -- when we leave, that's --

22            MR. SANDERS:  I understand. I really -- like,
```

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                          97

```
1    I really --

2            S.A. FORD:  Okay.

3            MR. SANDERS:  I want to be honest and open,

4    but also --

5            S.A. FORD:  I want you to be honest and open.

6            MR. SANDERS:  F- -- and I haven't lied about

7    anything.

8            S.A. FORD:  Okay.

9            MR. SANDERS:  Everything I said's been a

10   hundred percent truthful.

11           S.A. FORD:  Okay.

12           MR. SANDERS:  It's just -- you're scaring me a

13   little.

14           I don't -- and my intention is not to scare

15   you. My intention is have a conversation and I don't

16   want to -- like, we gave you an opportunity just to

17   talk to us. And I don't -- like I said, I don't think

18   you lied to me, I hope you didn't lie to me.

19           MR. SANDERS:  Okay.

20           S.A. FORD:  I don't like to be lied to, and I

21   don't want to lie to you. I don't want --

22           MR. SANDERS:  Well, you said that it seemed
```

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                                      106

```
1            S.A. FORD:  Mm-hmm.

2            MRS. SANDERS:  On the premises.

3            S.A. FORD:  Yep.

4            MRS. SANDERS:  And if you can leave it because

5    I explained, I'm a psychologist --

6            S.A. FORD:  Yeah.

7            MRS. SANDERS:  I -- all my stuff that I need

8    for my office --

9            S.A. FORD:  Yeah. And that is not our

10   intention to take everything out of your house.

11           MRS. SANDERS:  Yeah.

12           S.A. FORD:  Do not want to do that.

13           MRS. SANDERS:  But if they can preview and

14   clear things they leave it and if they can't, then they

15   take it with them.

16           MR. SANDERS:  So -- yeah.

17           MRS. SANDERS:  So I think -- I said to dad, I

18   mean, they -- maybe -- maybe I watch too much TV, but

19   that maybe we should get a lawyer rather than

20   continuing to -- because if they're saying they found

21   something bad, then probably we should get a lawyer

22   because that's just bizarre.
```

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                              107

```
1              MR. SANDERS:  But I just don't know -- could I
2     speak to her in -- in private?
3              MRS. SANDERS:  Yeah.
4              S.A. FORD:  Hmm-mm.
5              MRS. SANDERS:  Really? I was allowed to speak
6     to my husband.
7              S.A. FORD:  Yeah. But --
8              MRS. SANDERS:  I can talk to him.
9              S.A. FORD:  Yeah. But we were talking to him.
10             MR. SANDERS:  Okay. Can you just be right
11    outside the door? I mean, I'm -- I can't go anywhere.
12    Like what -- seriously like is -- what --
13             S.A. FORD:  You want to --
14             MR. SANDERS:  What difference does it possibly
15    make?
16             MRS. SANDERS:  We've both had medical issues.
17             S.A. FORD:  I understand.
18             MRS. SANDERS:  We've both been hospitalized in
19    the last couple of months.
20             S.A. FORD:  I -- yeah.
21             MRS. SANDERS:  So this is --
22             S.A. OBIE:  I guess, ma'am --
```

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020　　　　　　108

```
 1              MRS. SANDERS:  Very --

 2              S.A. OBIE:  What -- so see it from our

 3    perspective is -- so if we have something -- child

 4    pornography, for instance, they're real victims on the

 5    other side.

 6              MRS. SANDERS:  Mm-hmm. Of course.

 7              S.A. OBIE:  Right. And our job is to save

 8    those victims --

 9              MRS. SANDERS:  Mm-hmm.

10              S.A. OBIE:  First by identifying those

11    victims; you know? So that's what we do day in, day

12    out, we save kids.

13              MRS. SANDERS:  Right.

14              S.A. OBIE:  And so that is why we're here.

15    That is why we're trying to be as cordial and open as

16    possible.

17              MRS. SANDERS:  Yeah. I totally get that.

18              S.A. OBIE:  And why also, we're not trying to

19    take everything because that's just a burden on

20    everybody, especially because both of you have your

21    businesses here.

22              MRS. SANDERS:  Mm-hmm.
```

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                           109

```
 1              S.A. OBIE:  So it's -- all three of you
 2    really.
 3              MRS. SANDERS:  Well, I mean, I have -- I have
 4    my own office.
 5              S.A. OBIE:  Okay.
 6              MRS. SANDERS:  But I know what you're saying.
 7              S.A. OBIE:  But, so basically from that that's
 8    -- so all we asked for it was if he doesn't want us to
 9    take the laptop and the tablet that was tucked
10    underneath his bed, just to provide a passcode so we
11    can clear it, go through it, or whatever. Up until this
12    point he's been, you know, we -- we talked about --
13              MRS. SANDERS:  Mm-hmm.
14              S.A. OBIE:  We talked about his history, his
15    concession stand --
16              MRS. SANDERS:  Mm-hmm.
17              S.A. OBIE:  Lemonade stand back in the day --
18              S.A. FORD:  Mm-hmm.
19              S.A. OBIE:  All that stuff; right? And he's
20    been up front and we asked him to, you know, just talk
21    about where he went on Tor.
22              Because he already said that he had Tor on his
```

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                        110

```
1    laptop, which is -- I don't know if you know what Tor

2    is -- so -- so Tor is -- is like a anonymous browsing

3    software, etc. However, with certain technologies, we

4    traced it back to this residence. You don't know what

5    Tor is?

6              MRS. SANDERS:  I --

7              S.A. OBIE:  Pretty sure your husband doesn't

8    know what Tor is. And he said that to Tor was on his

9    laptop. So all we're asking is where he navigated from.

10   And then what -- and then we'll kind of go from there.

11             So, I mean, the decision is yours, but I'm

12   just trying to give you our perspective on -- on where

13   we're coming from.

14             MRS. SANDERS:  Yeah. No. I totally -- I

15   totally empathize and I understand that. But if you're

16   saying that you found something, then I feel like the

17   prudent thing to do is to probably --

18             MR. SANDERS:  Can I just talk to --

19             MRS. SANDERS:  Yeah. Okay.

20             MR. SANDERS:  Maybe like five -- like --

21             MRS. SANDERS:  Maybe we can work this out and

22   make it easier.
```

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020         115

```
1              MRS. SANDERS:  [whispering, inaudible]

2              MR. SANDERS:  So you think that -- I mean,

3        that's reasonable; right?

4              MRS. SANDERS:  Yes.

5              MR. SANDERS:  That's so simple. [whispering,

6        inaudible] okay. Okay. Okay.

7              MRS. SANDERS:  Yeah.

8              MR. SANDERS:  Okay.

9              MRS. SANDERS:  Because -- because --

10             MR. SANDERS:  Yeah. Okay. Tell him I'll see

11       him. Could I -- can I have a Coke? Can I ask him if I

12       can get a Coke?

13             MRS. SANDERS:  Can you bring him a soda and do

14       you want --

15             MR. SANDERS:  Yeah. So I'll -- I'll give you

16       it. I'll tell you what -- what you want.

17             S.A. FORD:  Okay.

18             MR. SANDERS:  Can I grab a Coke from the

19       fridge?

20             S.A. FORD:  What kind do you want?

21             MR. SANDERS:  Because I'm -- I'm very thirsty.

22             S.A. FORD:  [inaudible]
```

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                              116

```
 1              MRS. SANDERS:  Yeah.

 2              S.A. FORD:  A Coke. Okay. I didn't know if you

 3    guys had any like a different kind --

 4              MRS. SANDERS:  No. Is it in a bottle, Zack?

 5              MR. SANDERS:  You know the glass bottles?

 6              MRS. SANDERS:  Yeah.

 7              MR. SANDERS:  If that's okay with them.

 8              S.A. OBIE:  Yeah. We'll get it for you.

 9              MR. SANDERS:  Okay.

10              S.A. OBIE:  Be right back.

11              MR. SANDERS:  Thank you.

12              MRS. SANDERS:  You're welcome.

13              MR. SANDERS:  Okay. Thanks.

14              MRS. SANDERS:  Okay.

15              MR. SANDERS:  Do you want me to finish showing

16    you on the --

17              S.A. FORD:  Oh

18              MR. SANDERS:  Telegram -- sorry, I don't --

19              S.A. FORD:  Yeah.

20              MR. SANDERS:  You're not which -- who was I

21    talking to you.

22              S.A. FORD:  You're talking to me. Yeah. About
```

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                    129

```
1    ago, like middle school, early high school, very long

2    time ago.

3              S.A. FORD:  Hey, Zack -- Zack --

4              MR. SANDERS:  At some point.

5              S.A. FORD:  Let me pause you real quick,

6              MR. SANDERS:  Okay.

7              S.A. FORD:  Remember --

8              MR. SANDERS:  Because I was getting onto the

9    Tor stuff, but okay.

10             S.A. FORD:  No. That's -- that's fine. And I

11   appreciate it. But let's go back to being honest; okay?

12             MR. SANDERS:  Back to being?

13             S.A. FORD:  Yes.

14             MR. SANDERS:  I haven't been hon-

15             S.A. FORD:  Yeah. So you told us you were on

16   Kik when you were 14?

17             MR. SANDERS:  Yeah.

18             S.A. FORD:  Okay. I just saw on there that you

19   were active on -- so unless you had a different

20   account. Did you have a different account or if you --

21   have you always had this acc- --

22             MR. SANDERS:  As I just said, it might have
```

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                        145

```
 1   stuff at?
 2              MR. SANDERS:  I believe it all will be on that
 3   flash drive.
 4              S.A. OBIE:  What about the --
 5              S.A. FORD:  Okay.
 6              MR. SANDERS:  To -- to the -- to my best
 7   recollection.
 8              S.A. FORD:  Okay.
 9              S.A. OBIE:  Password?
10              MR. SANDERS:  Can --
11              S.A. OBIE:  I can't let you type it in because
12   don't know if you're going to manipulate. So that's
13   just from stuff we did in the past.
14              S.A. FORD:  We try --
15              S.A. OBIE:  We're just trying to cover our
16   asses. So --
17              MR. SANDERS:  Okay. And just -- just a
18   question.
19              S.A. OBIE:  Yes.
20              MR. SANDERS:  Not saying I'm going to try --
21   I'm just curious. If I refuse to give like a password
22   to get into any of this --
```

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                                    146

```
1              S.A. OBIE:  Mm-hmm.

2              MR. SANDERS:  What -- what happens?

3              S.A. FORD:  We take it.

4              S.A. OBIE:  Take it.

5              MR. SANDERS:  So you take it --

6              S.A. FORD:  And it -- you might not see it for

7    a -- a long time.

8              MR. SANDERS:  Okay. And then --

9              S.A. FORD:  Even -- just so even if we take it

10   and we clear it -- like there's nothing on there, you

11   still won't get it for --

12             MR. SANDERS:  But like -- I have -- my

13   question is if you take it and there's like a password.

14   Do you -- do you got like --

15             S.A. OBIE:  We have tech- --

16             S.A. FORD:  Oh, so you -- you want to know

17   about the FBI secrets; huh?

18             MR. SANDERS:  I was just curious.

19             S.A. FORD:  Just so you know --

20             MR. SANDERS:  This is my chance. At least give

21   me -- give me something. I'm being honest with you,

22   give me something.
```

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                                    218

1    You're going to clear it manually.

2          But if there's a lot of content -- a lot of

3    years, a lot of time put into that phone, we have to

4    actually look into the architecture of the phone in

5    order to be able to extract the true information from

6    it.

7          We're not going to be able to do that

8    manually. It takes devices, which also takes hours in

9    order to like process. It's almost like the internet;

10   right?

11         MR. SANDERS:  And then --

12         S.A. OBIE:  Something occasionally --

13         MR. SANDERS:  Aren't you guys probably like a

14   little backed up with stuff to do because --

15         S.A. OBIE:  Not actually, because every single

16   person -- every single person here, they have their

17   sets of cases; right? And so this is priority right

18   now, this is the focus right now. That's just a general

19   explanation of --

20         MR. SANDERS:  I just need my phone.

21         S.A. OBIE:  Why? Which is why I was surprised

22   you didn't have your business backed up on anything.

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

**JA203**

Transcript of Zackary Ellis Sanders
Conducted on February 12, 2020                            253

```
1              CERTIFICATE OF TRANSCRIBER

2        I, Chris Naaden, a transcriber, hereby declare

3    under penalty of perjury that to the best of my ability

4    from the audio recordings and supporting information;

5    and that I am neither counsel for, related to, nor

6    employed by any of the parties to this case and have no

7    interest, financial or otherwise, in its outcome, the

8    above 252 pages contain a full, true and correct

9    transcription of the tape-recording that I received

10   regarding the event listed on the caption on page 1.

11

12        I further declare that I have no interest in

13   the event of the action.

14

15        December 7, 2020

16

17   _____

18        Chris Naaden

19

20   (339280, Statement in re: USA v. Sanders, 2-12-20)

21

22
```

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

**JA204**

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **Criminal Action No. 1:20-cr-143** |
| | ) | |
| **ZACKARY ELLIS SANDERS,** | ) | |
| **Defendant.** | ) | |

### ORDER

This matter is before the Court on Defendant Zackary Sanders' Motion to Suppress and Memorandum in Support to his motion (Dkt. 149, 150). The pre-trial motion deadline in this case was originally set for August 20, 2020. Minute Entry, July 10, 2020, Dkt. 34. On defendant's motion, the motion deadline was extended to August 27, 2020. *United States v. Sanders*, No. 1:20-cv-143 (E.D. Va. Aug. 20, 2020) (Order). On August 27, 2020, defendant filed a seventy-nine (79) page brief in support of his motion to suppress (Dkt. 75), which was later refiled as four separate motions to suppress, totaling ninety-one (91) pages of briefing (Dkt. 81, 83, 85, 90). Defendant's motions to suppress were denied on October 26, 2020.

On October 30, 2020, defendant filed a consent motion to continue trial. At a hearing on the motion, defense counsel agreed that they would be prepared to go to trial on February 9, 2021, and trial was continued to that date. On December 17, 2020, one hundred and twelve (112) days after the extended pre-trial motion deadline in this case, defendant filed his fifth motion to suppress, in which he requested an evidentiary hearing.

Given the substantial delay in defendant's filing, it is appropriate for defendant to show cause as to why defendant failed to file this motion to suppress—his fifth—within the pre-trial motion deadline.

Accordingly,

**JA205**

It is hereby **ORDERED** that defendant shall **SHOW CAUSE** by **5:00 p.m. on Monday,**

**December 28, 2020** as to why defendant filed a Motion to Suppress on December 17, 2020, one

hundred and twelve (112) days after the deadline for pretrial motions.

The Clerk is directed to provide a copy of this Order to all counsel of record.

Alexandria, Virginia
December 18, 2020

_____
/s/
T. S. Ellis, III
United States District Judge

**JA206**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

UNITED STATES OF AMERICA,

                Plaintiff,

   v.

ZACKARY ELLIS SANDERS,

                Defendant.

Case No. 1:20-cr-00143
The Honorable Judge Ellis

Pretrial Conference: January 15, 2021
Trial Date: February 9, 2021

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE IN**
**OPPOSITION TO GOVERNMENT'S AMENDED NOTICE OF INTENT**
**TO PRESENT EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 414**

Zackary Ellis Sanders, by and through undersigned counsel, respectfully submits this

Memorandum in Support of Motion in Limine in Opposition to the Government's Amended Notice

of Intent to Present Evidence Under Federal Rule of Evidence 414.

On November 17, 2020, the Government filed an Amended Notice of Intent to Present

Evidence Under Federal Rule of Evidence 414 (ECF No. 133) ("Amended Notice").[1] Specifically,

the Government noticed its intent to introduce testimony regarding Mr. Sanders's recorded

interview with law enforcement from February 12, 2020, the date agents executed a search warrant

at the Sanders' family home.[2] Though the taped portion of Mr. Sanders's statement was over three

---

[1] In its Amended Notice, the Government withdrew its previous 414 Notice, filed on November 2, 2020.

[2] In addition to the objections outlined in this Memorandum, Mr. Sanders objects to the introduction of his statement on constitutional grounds because law enforcement failed to give him *Miranda* warnings, despite the custodial setting, and because his statement was involuntarily given. Mr. Sanders is simultaneously filing a separate Motion to Suppress his statements on those grounds.

hours long, the Government has not identified which portions of the statement it intends to introduce at trial.

The Government's Amended Notice is too general for this Court to assess adequately the admissibility of the evidence and this Court should reject the notice on that basis alone. Further, this Court should deny the Government's request because the evidence fails the Rule 403 balancing test, as set out in *United States v. Kelly*, 510 F.3d 433 (4th Cir. 2007); the evidence is more prejudicial than probative; and the government cannot prove the other acts by a preponderance.

## **ARGUMENT**

### I.      **The Government's 414 request should be denied because it fails to identify what evidence the government intends to admit pursuant to Rule 414.**

The Government's 414 notice fails to identify with specificity what evidence— specifically, what portions of Mr. Sanders's statements—the Government intends to introduce. In order for this Court to assess whether the Government's Amended Notice meets the requirements of the Rule 403 balancing test, the Government would have had to have provided more evidence than it did here. Specifically, "[i]n applying the Rule 403 balancing test to prior offenses admissible under Rule 414, a district court should consider a number of factors" which include: "(i) the similarity between the previous offense and the charged crime, (ii) the temporal proximity between the two crimes, (iii) the frequency of the prior acts, (iv) the presence or absence of any intervening acts, and (v) the reliability of the evidence of the past offense." *Kelly*, 510 F.3d at 437.

The Government's Amended Notice fails to describe Mr. Sanders's alleged conduct with enough specificity to enable this Court to make this required assessment under Rule 403, as set forth in *Kelly*. Mr. Sanders's taped statement to law enforcement is three hours and eighteen minutes long. The Government failed to provide the defense or this Court with any notice of what specific portions of that statement it intends to introduce. Because the Government's vague notice

**JA208**

does not allow this Court to make the type of assessment the Fourth Circuit requires, the evidence should be excluded.

**II.    The Government's 414 request should be denied because it fails to meet the Rule 414 balancing test under Rule 403.**

As an initial matter, "[t]he facts here are different than in the cases in which evidence of other acts evidence has been admitted under Fed. R. Evid. 414." *United States v. Haas*, No. 3:16-CR-139, 2018 WL 4374168, at *4 (E.D. Va. Sept. 13, 2018). That is because Mr. Sanders has not been *convicted* of the Rule 414 allegations, unlike in *Kelly* or *United States v. Mason*, 532 Fed.Appx. 432, 437 (4th Cir. 2013). For that reason, as well as an analysis under the *Kelly* Rule 403 balancing test, the government's request should be denied.

The government has failed to meet the requirements under *Kelly* for admissibility. <u>First,</u> based on the limited representations contained in the Amended Notice, the Rule 414 material is not similar enough to the charged crime to be admissible. The Government notes its intent to introduce Mr. Sanders's statements about "(1) other prior instances in which he received child pornography using a mobile messaging application; (2) the process by which he found hidden services on Tor on which there was child pornography; and (3) other prior instances in which he downloaded and stored child pornography material from these hidden services." Amended Notice (ECF No. 133) at 4.

As to "(1) other prior instances in which he received child pornography using a mobile messaging application," there is insufficient detail to show that the prior material Mr. Sanders allegedly received was similar enough to the material he allegedly possessed here, or similar enough to the other charged counts in the indictment to be admissible.

Additionally, accessing the Tor network or "these hidden services" is not relevant to any issue the jury needs to decide. The indictment does not allege, and the defense is aware of no

3

**JA209**

evidence, that use of the Tor network has anything to do with the alleged charges. As the government explained at the hearing on the Motion to Suppress:

> [T]he search warrant is **unrelated** to anything he has been charged with. The evidence we found in the search warrant is what the basis for all the charges are. So **he hasn't been charged with accessing child sexual abuse material on this TOR site**. He has been charged with **entirely different conduct** related to chats that we uncovered with various minors in which he had them produce child pornography.

7/31/20 Tr. at 19 (emphases added).

Mr. Sanders is not alleged to have contacted or communicated with any of the various minors through the Tor network. Thus, there is insufficient similarity between Mr. Sanders's past alleged use of the Tor network and "these hidden services" and the instant charges.

Second, the temporal proximity does not warrant admissibility. The vague timeline Mr. Sanders gave in his statement is not of sufficiently close proximity to the time frames alleged in the indictment. Additionally Mr. Sanders told the agents at one point that he received material over Kik (a messaging application) when he was a juvenile—13 or 14 years old himself. This is surely not temporally proximate enough to the current charges to warrant admissibility. And to the extent to which this Court finds that the Rule 414 alleged acts are temporally close, this factor is insufficient to overcome the government's failure to meet the other *Kelly* factors.

Third, the Government's Amended Notice fails to state any frequency with which Mr. Sanders told law enforcement he used the Tor network or received messages over applications.

Fourth, there are no "intervening acts" that the government has identified, which makes this factor neutral. *See Haas*, 2018 WL 4374168, at *4 (finding the "intervening acts" to be neutral where the parties did not raise any intervening acts).

Fifth, the evidence supporting the Government's 414 allegations is not reliable. There is no certified prior conviction. *See Mason*, 532 Fed. Appx. at 437-38 (finding that, where

4

**JA210**

prosecution introduced certified documents and testimony from an investigator personally

involved in the earlier case, the evidence of prior conviction was "eminently reliable").  There is

no prior jury finding or guilty plea establishing beyond a reasonable doubt that Mr. Sanders

engaged in any of the activity discussed in his statement.  There is no technological evidence that

the government plans to introduce to show that someone with Mr. Sanders's IP address did, in

fact, visit Tor.  *See, e.g., Haas*, 2018 WL 4374168, at *4 (finding that DNA evidence on item in

defendant's possession made fifth factor "likely" met).  Indeed, the Government fails to identify

any evidence, other than Mr. Sanders's statements themselves, that it intends to introduce to

show that Mr. Sanders's statements are reliable.

Taken together, analysis under the *Kelly* factors shows that Mr. Sanders's alleged

statements are not similar enough, do not show enough frequency of conduct, and are not

sufficiently reliable evidence to be admitted.

**III.    The Government's 414 request should be denied because no reasonable jury could find by a preponderance of the evidence that Mr. Sanders committed the acts described in the notice.**

The Government's Rule 414 request should additionally be denied because no jury could

reasonably find by a preponderance of the evidence that Mr. Sanders committed the acts

described in his statements to law enforcement.  *See United States v. Eiker*, No. 2:17CR72, 2017

WL 6459510, at *2 (E.D. Va. Dec. 18, 2017) ("In addition, because Rule 414 evidence is a type

of prior act evidence, a district court considering whether to admit such evidence must heed the

Supreme Court's instruction in *Huddleston* to first determine that a reasonable jury could find by

a preponderance of the evidence that the defendant committed the prior act.") (citing *Huddleston*

*v. United States*, 485 U.S. 681, 690 (1988)).  The Government has no proof beyond Mr.

Sanders's own statements that he engaged in that activity; indeed, the Government has

**JA211**

steadfastly—and erroneously—refused to produce any meaningful discovery on this subject.
The government's notice should thus be rejected on this additional ground.

## IV.    The Government's 414 request should be denied under Rule 403 because it is more prejudicial than probative.

The Government's request should also be denied because Mr. Sanders's statements are
more prejudicial than probative.  The introduction of testimony regarding Tor and "these hidden
services" is likely to confuse and inflame the jury.  The defense is not aware of any forensic
evidence in the Government's possession, custody, or control showing that Mr. Sanders visited,
clicked on, or downloaded content from the target website or any particular Tor Onion Service
website.  Yet based on its Amended Notice, it appears the government will try to introduce
evidence of egregious content allegedly derived from such websites.  This will only serve to
inflame the jury. *See Haas*, 2018 WL 4374168, at *4-5 (finding that jury would likely give
"undue weight" to "egregious and offensive" 414 evidence and was more prejudicial than
probative).  And it is not probative of the other charged offenses, for the reasons stated above at
3-5, *supra*, regarding the first *Kelly* prong.  The evidence proferred in the Amended Notice
should thus be excluded on this ground as well.

### CONCLUSION

For the foregoing reasons, Mr. Sanders respectfully requests that this Court deny the
Government's request to introduce evidence of uncharged conduct under Federal Rule of Evidence
414(d)(2)(B).

Respectfully submitted,

_/s/_

Jonathan Jeffress (#42884)
Emily Voshell (#92997)
Jade Chong-Smith (admitted *pro hac vice*)

6

**JA212**

KaiserDillon PLLC
1099 Fourteenth St., N.W.; 8th Floor—West
Washington, D.C.  20005
Telephone: (202) 683-6150
Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: evoshell@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com

*Counsel for Defendant Zackary Ellis Sanders*

**JA213**

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of December, 2020, the foregoing was served electronically on the counsel of record through the U.S. District Court for the Eastern District of Virginia Electronic Document Filing System (ECF) and the document is available on the ECF system.

*/s/ Emily Voshell*
Emily Voshell

8

**JA214**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:20-CR-143 |
| v. | ) | |
| | ) | Honorable T.S. Ellis, III |
| ZACKARY ELLIS SANDERS, | ) | |
| | ) | Trial: February 9, 2021 |
| *Defendant.* | ) | |
| | ) | |

**GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE AND LIMIT
CERTAIN ARGUMENTS, LINES OF QUESTIONING, AND EVIDENCE AT TRIAL**

The United States of America, by and through the undersigned counsel, respectfully moves

this Court *in limine* for an order excluding arguments, lines of questioning, and evidence at trial

related to the following: (1) the victims' alleged voluntary participation in the offense conduct

referenced in Counts 1 through 11 of the indictment; (2) the victims' alleged sexual behavior or

sexual predisposition; (3) any mistake-of-age defense with respect to the completed offenses

charged in Counts 1 through 5; (4) the identity of and investigation conducted by the foreign law

enforcement agency that led to the search of the defendant's home; (5) specific-instance character

evidence regarding the defendant; (6) the defendant's health; and (7) the potential penalty or

punishment the defendant will face if convicted.  Each of these categories of information should

be excluded at trial because they are irrelevant to the charges against the defendant and, even if

relevant, would be unduly prejudicial.

**BACKGROUND**

The charges against the defendant are based on evidence the Federal Bureau of

Investigation ("FBI") obtained during the execution of a search warrant for child-pornography-

related evidence at the defendant's residence in February 2020.

Pursuant to the warrant, law enforcement seized multiple electronic devices from the defendant and the defendant's bedroom. A forensic examination of one set of the devices, which includes the defendant's Apple iPhone and Apple iPads, uncovered online chats between the defendant and MINOR VICTIMS 1, 2, 3, 4, 5, and 6 referenced in Counts 1 through 11 of the indictment. For Counts 1 through 5 and 7 through 11, the defendant persuaded, induced, and coerced these minor victims to produce and send to him visual depictions of themselves engaging in sexually explicit conduct, or attempted to do so believing they were minors. Many of these visual depictions depict the minors engaged in sexually degrading conduct or inflicting pain on themselves. For MINOR VICTIM 6 referenced in Count 6, the defendant knowingly received a visual depiction of this individual engaged in sexually explicit conduct, with the belief that this individual was a minor in the video depiction.

A forensic examination of other devices referenced in Count 12 of the indictment uncovered image and video files depicting minors engaged in sexually explicit conduct, including anal and oral sex and sadistic or masochistic abuse. Many of these files have titles that are clearly indicative of child pornography.

The defendant was indicted in June 2020 for producing, receiving, and possessing child pornography. A jury trial is currently scheduled for February 9, 2021.

## ARGUMENT

The government seeks to exclude evidence that is irrelevant to the issues before the jury at trial and that is therefore inadmissible under the Federal Rules of Evidence. In other words, the categories of evidence at issue in this motion—(1) the victims' alleged voluntary participation in the offense conduct referenced in Counts 1 through 11 of the indictment; (2) the victims' alleged sexual behavior or sexual predisposition; (3) any mistake-of-age defense with respect to the completed offenses charged in Counts 1 through 5; (4) the identity of and investigation conducted

2

by the foreign law enforcement agency that led to the search of the defendant's home; (5) specific-instance character evidence regarding the defendant; (6) the defendant's health; and (7) the potential penalty or punishment the defendant will face if convicted—do not satisfy the most basic rule of evidence: Federal Rule of Evidence 402's requirement that proffered evidence must be relevant.

Evidence is relevant only if it tends to "make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. In guiding this analysis, the Court should look at the elements of the charged offense. To convict under 18 U.S.C. § 2251(a) and (e), the jury must find: (1) that the victim was less than 18 years old; (2) that the defendant used, employed, persuaded, induced, enticed, or coerced the minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct; and (3) that the visual depiction was produced using materials that had been transported in interstate or foreign commerce, or that the visual depiction was actually transported or transmitted using any means or facility of interstate or foreign commerce. Similarly, in order to convict under an attempt theory of 18 U.S.C. § 2251(a) and (e), the jury must find that the defendant (1) specifically intended to produce child pornography and (2) took a substantial steps towards the creation of child pornography. *United States v. Sims*, 708 F.3d 832, 835 (6th Cir. 2013); *see also United States v. Isabella*, 918 F.3d 816, 848 (10th Cir. 2019); *United States v. Schwarte*, 645 F.3d 1022, 1030 (8th Cir. 2011).

A conviction under 18 U.S.C. § 2252(a)(2) and (b)(1) requires the jury to find (1) that the defendant knowingly received a visual depiction of a minor engaging in sexually explicit conduct; (2) that defendant received this visual depiction using any means or facility of interstate commerce or using any device or instrumentality that has been shipped or transported in or affecting interstate

3

**JA217**

commerce; and (3) that defendant knew that the production of this visual depiction involved the use of a minor engaging in sexually explicit conduct and that the visual depiction was of a minor engaging in sexually explicit conduct. Likewise, in order to convict under an attempt theory of 18 U.S.C. § 2252(a)(2) and (b)(1), the jury must find that the defendant (1) specifically intended to commit the underlying offense of receipt of child pornography and (2) took a substantial step towards the commission of that crime that strongly corroborates that intent. *United States v. Eychaner*, 326 F. Supp. 3d 76, 85 (E.D. Va. 2018). Evidence that does not assist the jury in making a determination regarding one of those considerations should be excluded. As set forth more fully below, each of the categories of evidence at issue in this motion will not assist the jury as factfinder.

Furthermore, even if the Court were to find that any of the categories of information addressed in this motion were relevant, that information may still properly be excluded if the dangers associated with its introduction outweigh any probity. Rule 403 allows the exclusion of evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Fed. R. Evid. 403. Trial judges also have "wide latitude" to restrict cross-examination of witnesses for reasons beyond those outlined in Rule 403, including "concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Relevant evidence should be excluded "when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence." *United States v. Siegel*, 536 F.3d 306, 319 (4th Cir. 2008) (quoting *United States v. Williams*, 445 F.3d 724, 730 (4th Cir. 2006)). As explained in further detail below, the evidence at issue in this motion, even if admissible, would primarily serve only these impermissible purposes.

I.    **Alleged Consent or Voluntariness Evidence Related to the MINOR VICTIMS**

Evidence that MINOR VICTIMS 1 through 5 consented to the production of visual depictions of themselves engaged in sexually explicit conduct, or that MINOR VICTIMS 1 through 6 voluntarily sent such visual depictions to the defendant has no bearing on the defendant's guilt under 18 U.S.C. § 2251(a) or § 2252(a)(2).   Therefore, the United States requests that any such evidence, argumentation, or questioning be prohibited at trial.

With respect to Counts 1 through 5, the elements of 18 U.S.C. § 2251(a) plainly do not require that a child's exploitation be non-consensual.   Nor is the notion that a child can consent to sexual exploitation a permissible defense to a charge of producing child pornography.   18 U.S.C. § 2251(a); *see also United States v. Sibley*, 681 F. App'x 457, 461 (6th Cir. 2017) (holding that the victim's "consent is irrelevant to the question whether [the defendant] used her for the purposes of 18 U.S.C. § 2251(a)"); *United States v. Wells*, 843 F.3d 1251, 1255 (10th Cir. 2016) ("[O]f course, a minor cannot consent to production of child pornography."); *Ortiz-Graulau v. United States*, 756 F.3d 12, 21–22 (1st Cir. 2014) (concluding that the consensual nature of the relationship was irrelevant); *Malloy*, 568 F.3d at 175 ("[T]he State may legitimately protect children from self-destructive decisions reflecting the youthful poor judgment that makes them, in the eyes of the law, 'beneath the age of consent.'" (quoting *Gilmour v. Rogerson*, 117 F.3d 368, 372 (8th Cir. 1997))); *United States v. Street*, 531 F.3d 703, 708 (8th Cir. 2008) ("[T]he district court properly concluded consent was not a defense and . . . [the victim's] willingness to engage in acts was irrelevant."); *accord United States v. Abad*, 350 F.3d 793, 798 (8th Cir. 2003) (holding that consent is not a defense to sexual assaults committed against children and noting "[t]he law assumes a 26-year old has the maturity and self-control to say 'no' to a willing or even solicitous 13-year old").   Similarly, a victim's purportedly voluntary participation in the photographing or

5

recording of the visual depiction is not a defense, and any evidence to that effect is irrelevant.  *See Ortiz-Graulau*, 756 F.3d at 19 (finding "facts about the consensual and allegedly non-exploitative nature of the relationship between [the defendant and the minor victim] or about the circumstances in which the photographs were taken could not have supported a legally permissible defense").  As this Court has previously observed,

> information regarding the minor's state of mind, *i.e.* whether she wanted to have sex with the defendant or to be filmed by the defendant, in no way informs the jury about defendant's state of mind . . . . More specifically, whether the minor consented to sex or to filming the sexual activity makes it no more or less probable that defendant engaged in sexual activity with the minor victim and that at least one of defendant's purposes in doing so was to produce a visual depiction of the sexual activity.

*United States v. McCauley*, Case No. 1:18-cr-330-TSE, ECF No. 77, at 5 (E.D. Va. Jan. 25, 2019) ("*McCauley* Opinion").  Similarly, that the minor victims purportedly consented to sending the defendant the visual depictions of themselves engaging in sexually explicit conduct is not a defense to the charge of receipt of child pornography, which also focuses on the state of mind of the person receiving the visual depiction.

At trial, the government will seek to introduce the online chats between the defendant and MINOR VICTIMS 1, 2, 3, 4, 5, and 6, which contain evidence related to the production and receipt of child pornography alleged in Counts 1 through 11 of the indictment.  These chats provide context to the circumstances in which the visual depictions were produced, the manner in which the defendant received them and the defendant's state of mind when requesting them.  The government will also seek to introduce the visual depictions that the defendant received, which speak for themselves.  Any further evidence of the victims' alleged consent or any suggestion that the minors allegedly consented to engage in this conduct is wholly irrelevant to the defendant's

6

**JA220**

culpability.  In light of the considerable weight of case law, any such arguments or evidence should be excluded from trial under Federal Rule of Evidence 402.

Even if the Court were to determine that evidence of a minor victim's consent to record himself engaged in sexually explicit conduct or to send a visual depiction of himself engaging in sexually explicit conduct to a defendant is somehow relevant, that evidence is still inadmissible under Rule 403.  Allowing this evidence would unfairly shift the burden to victims to prove their innocence and purity, and would confuse the issues and mislead the jury.  Moreover, such a result would cause undue prejudice by implying that minors are at fault for their own sexual victimization.

## II.    Alleged Sexual History, Conduct, or Predisposition Evidence Related to the MINOR VICTIMS

The United States further moves the Court to exclude at trial any argument, questioning, or evidence regarding the sexual history, conduct, or predisposition of MINOR VICTIMS 1, 2, 3, 4, 5, and 6, whether before or after the time of the offense here.  Federal Rule of Evidence 412 forbids the admission of evidence of a victim's sexual behavior or sexual predisposition in criminal proceedings involving sexual misconduct allegations except under three narrow exceptions.  These exceptions are limited to instances in which (1) the evidence is offered to prove someone other than the defendant was the source of physical evidence (*e.g.*, semen), (2) the victim's behavior with respect to the defendant is offered by the government or to prove consent, or (3) excluding the evidence would violate the defendant's constitutional rights. *See* Fed. R. Evid. 412.  The aim of this rule is "to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process."  Advisory Committee's Notes on Fed. R. Evid. 412.  Sexual behavior includes "all activities that involve actual physical

7

**JA221**

conduct, *i.e.* sexual intercourse or sexual contact" or that include "activities of the mind, such as fantasies or dreams." *Id.* With respect to sexual predisposition, Rule 412 is "designed to exclude evidence . . . the proponent believes may have a sexual connotation for the factfinder," including "the alleged victim's mode of dress, speech, or life-style." *Id.*

Here, the defendant may attempt to introduce evidence or argument that the minor victims had a history of engaging in behaviors that could be viewed by the factfinder as sexual in nature, either with the defendant or with others. None of the exceptions to Rule 412 apply in this case, however, and thus any such evidence must be excluded. There is no semen, injury, or other similar physical evidence for which there could be a second contributor. Further, as established previously, consent is not a defense to the charged conduct, and there is no basis to conclude that the defendant's constitutional rights would be infringed if evidence regarding the victim's sexual history, conduct, or predisposition were excluded. Accordingly, such evidence or argument should be excluded.

### III.    Mistake-of-Age Evidence

The United States moves the Court to preclude the defendant from arguing with respect to the completed offenses charged in Counts 1 through 5 that he mistakenly believed MINOR VICTIMS 1 through 5 were adults at the time he persuaded, induced, and coerced them to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct. It is well established that mistake-of-age is not a defense to the substantive offense of production of child pornography. *See United States v. Malloy*, 568 F.3d 166, 171 (4th Cir. 2009) ("[K]nowledge of the victim's age is neither an element of the offense [under 18 U.S.C. § 2251(a)] nor textually available as an affirmative defense."); *see also United States v. Henry*, 827 F.3d 16, 23 (1st Cir. 2016) (finding the statutory text "plainly does not require that a person convicted of violating

8

**JA222**

[§ 2251(a)] needs to know the actual age of the minor victim" and declining to impose such a requirement); *United States v. Fletcher*, 634 F.3d 395 (7th Cir. 2011) (similar); *United States v. Humphrey*, 608 F.3d 955 (6th Cir. 2010) (similar); *United States v. Wilson*, 565 F.3d 1059 (8th Cir. 2009) (similar); *United States v. Deverso*, 518 F.3d 1250 (11th Cir. 2008) (similar); *United States v. Griffith*, 284 F.3d 338 (2d Cir. 2002) (similar); *United States v. Crow*, 164 F.3d 229 (5th Cir. 1999) (similar).[1]  As this Court has previously noted "the victim's age is not relevant to any element of [the production of child pornography] and . . . mistake of age is not an affirmative defense to the charged conduct." *McCauley* Opinion, at 4.  To be sure, however, at least one court of appeals has noted that a conviction for the *attempted* production of child pornography—as opposed to the completed offense—requires proof of specific intent to commit the crime—that is, proof that the defendant believed that the individual he used or persuaded to engage in sexually explicit for the purpose of producing a visual depiction of that conduct was a minor.  *See United States v. Johnson*, 376 F.3d 689, 693 (7th Cir. 2004).

Because mistake-of-age is not an affirmative defense to the completed offense of production of child pornography, the Court should preclude the defendant from arguing to the

---

[1] The only court of appeals to hold otherwise, the Ninth Circuit, created a limited mistake-of-age defense that requires a defendant to show by clear and convincing evidence that he did not know and could not reasonably have learned that the individual was a minor. *United States v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 858 F.2d 534, 543 (9th Cir. 1988).  The Ninth Circuit's holding, however, is a product of the facts of that case.  The defendants, who had produced a pornographic film featuring a 16-year-old minor, sought to present a mistake-of-age defense because the 16-year-old minor had presented falsified identification, had appeared in widely-released adult magazines with a reputation for reliably investigating the age of their models and in adult films and materials with no one suggesting that she was a minor, and had been represented by others as being an adult. *Id.* at 540.  The Ninth Circuit read a "reasonable mistake of age defense" into § 2251(a), observing that the production of adult pornography would be chilled otherwise because individuals who "produce and distribute adult films" have "no way of being absolutely sure that an actor or actress who is youthful in appearance is not a minor[,] [e]ven after taking the most elaborate steps to determine how old the subject is . . . ." *Id.*

**JA223**

contrary with respect to the substantive offenses alleged in Counts 1 through 5.[2]  It is the United

States' burden with respect to Counts 6 through 11, on the other hand, to show that the defendant

knew or believed at the time that he received the visual depiction that it involved the use of a minor

engaging in sexually explicit conduct.  Accordingly, the defendant is entitled to advance a mistake-

of-age defense with respect to Counts 6 through 11.  Should the defendant introduce such evidence,

the government requests that a limiting instruction be given to the jury clearly instructing that any

such evidence is only to be considered with respect to Counts 6 through 12, and, to the extent

applicable, the attempted production of child pornography alleged in Count 2.

## IV.    The Foreign Law Enforcement Agency

The United States also moves the Court to prohibit the defendant from seeking to introduce

at trial evidence, arguments, or questions regarding the identity of and the investigation conducted

by the foreign law enforcement agency ("FLA") that provided the information that led to the search

of his home.  The affidavit in support of the search warrant in this matter is based in part on

information provided by the FLA that an Internet Protocol address associated with the defendant's

home was used to access child sexual abuse material.  In pretrial litigation, the defendant

---

[2] The United States anticipates offering proof at trial of the minor status of MINOR VICTIMS 1, 3, 4, and 5 at the times alleged in the indictment.  MINOR VICTIM 2 is located abroad, which may present difficulties with establishing proof of his minor status beyond his very young appearance in the multiple visual depictions he recorded of himself engaging in very specific instances of sexually explicit conduct based on the defendant's instructions.  While the government believes that the extremely youthful appearance of MINOR VICTIM 2 in these multiple visual depictions is sufficient to establish that he was a minor at the time alleged in the indictment, the evidence will also show that the defendant believed that MINOR VICTIM 2 was a minor when the defendant persuaded and coerced him to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct, which is sufficient to sustain a conviction for the attempted production of child pornography.  Specifically, the evidence will show that on multiple occasions in the online conversation between the defendant and MINOR VICTIM 2, the victim represented and the defendant confirmed that the victim is a minor.  Accordingly, to the extent the defendant is permitted to raise a mistake-of-age defense with respect to the attempted production of child pornography charged in Count 2 of the indictment, it will not be successful.

10

unsuccessfully moved to suppress all evidence obtained during the search by arguing that the affidavit lacked probable cause and contained material and deliberate falsehoods and omissions. Many of these arguments were based on the defendant's unsupported theories about the FLA's investigation and the website it investigated.

Neither the identity of the FLA nor any details of its investigation—including, for example, the defendant's speculation about its investigative techniques or the website it investigated—are relevant to the defendant's guilt in this matter. None of the charges in the indictment are based on the FLA's tip, which has already been the subject of significant litigation. Instead, the charges against the defendant are based on evidence obtained during the search of his home, which shows that: he induced and coerced five minors to engage in sexually explicit conduct for the purpose of producing visual depictions of themselves engaged in such conduct, or attempted to do so; he received sexually explicit images and videos depicting those five minors and one additional minor, or attempted to do so; and he possessed child pornography. And even if the Court were to find evidence about the FLA relevant, it should nevertheless be excluded under Rule 403 because any probative value it has is substantially outweighed by the danger of confusing the issues for the jury. Indeed, references to the identity of the FLA, its investigation, or the defendant's theories about the investigation would inevitably result in a mini-trial over issues the Court has already resolved in its memorandum opinion denying the defendant's suppression motions. Accordingly, evidence, argument, and questions related to the identity of the FLA and its investigation should be deemed inadmissible under Federal Rules of Evidence 401, 402, and 403.

## V.    Specific-Instance Character Evidence

Regarding evidence of the defendant's conduct, testimony as to instances of his good conduct would violate Federal Rule of Evidence 405(a), and the United States accordingly moves

11

**JA225**

to preclude any such evidence.  *See, e.g., United States v. Gravely*, 840 F.2d 1156, 1164 (4th Cir. 1988) (finding testimony of specific activities with March of Dimes inadmissible to show good character); *United States v. Barry*, 814 F.2d 1400, 1403 (9th Cir. 1987); *Government of Virgin Islands v. Grant*, 775 F.2d 508, 512 (3d Cir. 1985).  Federal Rule of Evidence 404(a)(1) further states that evidence of a person's character is not admissible for the purpose of proving a person's actions on a particular occasion except when evidence of a pertinent trait of character is offered by an accused or by the prosecution to rebut the same.  Thus, a character witness may not offer specific instances of conduct by the defendant that would tend to support the reputation of the defendant. *See, e.g., United States v. Giese*, 597 F.2d 1170, 1188–94 (9th Cir. 1979) (holding that character witnesses must restrict their direct testimony to appraisals of defendant's reputation); *United States v. Hedgcorth*, 873 F.2d 1307, 1313 (9th Cir. 1989) ("While a defendant may show a characteristic for lawfulness through opinion or reputation testimony, evidence of specific acts is generally inadmissible." (internal citation omitted)); *McCauley* Opinion, at 8 ("[W]hile defendant is entitled to offer reputation or opinion evidence of a pertinent character trait, defendant may not seek to prove his good character through testimony regarding specific instances of defendant's good behavior.").  To the extent the defendant intends to offer evidence of specific instances of his good conduct, such as specific evidence of non-criminal interactions with minors, he should be prohibited from doing so.

VI.    **References to the Defendant's Present Health or to COVID-19**

The United States also respectfully moves to preclude the defendant from introducing any evidence, making any statement, or asking any questions regarding the defendant's current physical or mental health, including, without limitation, current diseases, traumas, illnesses, attacks, and medical or psychological conditions.  This includes any reference to how his potential

12

**JA226**

conviction or continued detention could intersect with the ongoing COVID-19 pandemic.  Though the defendant's health at the time of the offenses may be relevant, information regarding his current condition is irrelevant.  Additionally, because it serves only to appeal to the sympathies of the jury, it would be highly prejudicial.  *See Old Chief v. United States*, 519 U.S. 172, 180 (1997) (explaining that unfairly prejudicial evidence is evidence that has an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one" (quoting Advisory Committee's Notes on Fed. R. Evid. 403)); *McCauley* Opinion, at 9 ("The only purpose for introducing [the current state of defendant's health] is to appeal to the jury's sympathy, and this evidence is therefore unfairly prejudicial and impermissible under Rule 403").  Accordingly, any evidence of the defendant's current physical or mental state is not a proper concern for the jury.  *See* Fed. R. Evid. 401, 402, and 403.

**VII.   Reference to Penalty or Punishment**

Finally, the United States moves to prohibit the defendant, his attorney, or any witness from making any comment or reference, whether direct or indirect, to the penalty or punishment the defendant faces if convicted of the charged conduct.

It is "well established that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed." *Shannon v. United States*, 512 U.S. 573, 579 (1994) (footnote and citation omitted).  A jury's task is to "find the facts and decide whether, on those facts, the defendant is guilty of the crime charged," while a judge "imposes sentence on the defendant after the jury has arrived at a guilty verdict." *Id.*  The Supreme Court has recognized that presenting jurors with information regarding the consequences of their verdict "invites them to ponder matters that are not within their province, distracts them from their fact finding responsibilities, and creates a strong possibility of confusion." *Id.*  Evidence or

13

**JA227**

argument relating to a potential sentence, or any other punishment, is "irrelevant to the jury's task" of determining if the defendant is guilty of the crimes charged. *Id*; *see also Rogers v. United States*, 422 U.S. 35, 40 (1975) (stating that "the jury ha[s] no sentencing function and should reach its verdict without regard to what sentence might be imposed."); *McCauley* Opinion, at 10 (holding that "evidence concerning the sentence the defendant may receive if convicted is of no concern to the jury"). Accordingly, the defendant should be prohibited from making any comment or reference, whether direct or indirect, to the penalty or punishment in this case as to the charges the defendant faces.

## CONCLUSION

For the reasons stated above, the government respectfully requests the entry of an order prohibiting the defendant from making any argument, soliciting any questions, or introducing any evidence at trial regarding: (1) the victims' voluntary participation in the offense conduct referenced in Counts 1 through 11 of the indictment; (2) the victims' alleged sexual behavior or sexual predisposition; (3) any mistake-of-age defense with respect to the completed offenses charged in Counts 1 through 5; (4) the identity of and investigation conducted by the FLA that led to the search of the defendant's home; (5) specific-instance character evidence regarding the defendant; (6) the defendant's present health; and (7) the potential penalty or punishment the defendant will face if convicted.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:    _____/s/_____
       William G. Clayman
       Special Assistant United States Attorney (LT)
       Jay V. Prabhu
       Assistant United States Attorney

14

**JA228**

U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: 703-299-3700
Fax: 703-299-3981
Email: william.g.clayman@usdoj.gov

**JA229**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 18, 2020, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which automatically generated a Notice of Electronic

Filing to the parties of record.


By:  _____/s/_____
William G. Clayman
Special Assistant United States Attorney (LT)
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: 703-299-3700
Fax: 703-299-3981
Email: william.g.clayman@usdoj.gov

16

**JA230**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:20-CR-143 |
| v. ) | |
| ) | Honorable T.S. Ellis, III |
| ZACKARY ELLIS SANDERS, ) | |
| ) | Trial: February 9, 2021 |
| *Defendant.* ) | |
| _____) | |

**GOVERNMENT'S MOTION *IN LIMINE* TO INTRODUCE CERTAIN EVIDENCE
PURSUANT TO FEDERAL RULES OF EVIDENCE 404(b) AND 414**

The United States of America, by and through the undersigned counsel, respectfully moves

this Court *in limine* for an order on the admissibility of evidence pursuant to Federal Rules of

Evidence 404(b) and 414, specifically the defendant's statements that he previously received child

pornography using a mobile messaging application and that he accessed and downloaded child

pornography from websites on a dark web network.

**BACKGROUND**

The charges against the defendant are based on evidence the Federal Bureau of

Investigation ("FBI") obtained during the execution of a search warrant for child-pornography-

related evidence at the defendant's residence in February 2020.  At the search, the defendant

voluntarily agreed to speak to two FBI special agents in a recorded interview.  During the

interview, the defendant admitted to accessing material that depicts the sexual abuse of children

online using multiple means.  The defendant admitted to receiving child pornography using a

mobile messaging application and to downloading child pornography from websites on a dark web

network known as The Onion Router ("Tor").  He described the websites he found on Tor, the

**JA231**

process by which he found those websites, and how he accessed the child pornography stored there.

Based on evidence obtained from devices seized during the search of his home, the defendant was charged in a twelve-count indictment alleging violations of federal law related to the production, receipt, and possession of child pornography. A jury trial is currently scheduled for February 9, 2021.

## ARGUMENT

Out of an abundance of caution, the government provided notice under Rule 414 of the Federal Rules of Evidence that it intends to admit at trial testimony about and excerpts of this recorded interview in which the defendant discussed receiving child pornography and accessing websites containing child pornography, including: (1) other prior instances in which he received child pornography using a mobile messaging application; (2) the process by which he found hidden services on Tor on which there was child pornography; and (3) other prior instances in which he downloaded and stored child pornography material from these hidden services.   Dkt. No. 133. The government incorporates by reference its notice pursuant to Federal Rule of Evidence 414, which was timely filed on November 17, 2020. *Id.* At this time, the government now moves for a ruling from the Court that the defendant's admissions outlined above are admissible as intrinsic evidence, or alternatively under either Federal Rule of Evidence 414 or 404(b).

**I.    The Defendant's Various Means of Collecting Child Pornography Should Be Admitted as Intrinsic Evidence of the Charged Conduct**

The Fourth Circuit has instructed that evidence is intrinsic, and therefore not subject to Rule 404, if it is "an essential part of the crimes on trial, or . . . furnishes part of the context of the crime." *United States v. Queen,* 132 F.3d 991, 998 (4th Cir. 1997); *cf. United States v. Basham,* 561 F.3d 302, 326 (4th Cir. 2009) (internal citations omitted) (noting that "[e]vidence of uncharged

2

**JA232**

conduct is not 'other crimes' evidence subject to Rule 404 if the uncharged conduct 'arose out of the same series of transactions as the charged offense, or if [evidence of the uncharged conduct] is necessary to complete the story of the crime on trial.'").   Here, the defendant is charged with knowingly possessing child pornography on various electronic storage media. Dkt. 29, at 4. This charge is not limited to any particular file or means and method of acquisition.   As part of the government's evidence showing that the defendant's possession of this illegal material was knowing, the government intends to introduce evidence showing the various means that he defendant obtained child pornography, including the means that the defendant admitted in his statements to law enforcement during this investigation. Thus, the uncharged conduct provides context that is "intrinsic to the story of the crime" and should be admitted as such. *United States v. Cooper*, 482 F.3d 658, 663 (4th Cir. 2007).

**II.    Evidence of the Defendant's Prior Child Pornography Offenses Is Also Admissible Pursuant to Federal Rule of Evidence 414**

Enacted as part of the Violent Crime Control and Law Enforcement Act of 1994, Federal Rule of Evidence 414 governs the admission of evidence of similar crimes in child sex offense cases.  Rule 414(a) provides, in pertinent part, that "[i]n a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant."   Rule 414 broadly defines the term "child molestation" to encompass not only physical contact between an adult and a child that constitutes a crime under state or federal law, but also conduct that constitutes the federal crimes of distribution, receipt, and possession of child pornography. *See* Fed. R. Evid. 414(d)(2)(B) (defining "child molestation" as a state or federal crime "involving . . . any conduct prohibited by 18 U.S.C. chapter 110").  The upshot of Rule 414 is that evidence of a defendant's prior acts of child molestation is presumptively

3

**JA233**

admissible to establish the defendant's propensity to commit the charged child sex offense.  Rule 414 thus stands in contrast to Federal Rule of Evidence 404(b).  Although ordinarily "evidence of past crimes may not be used 'to prove the character of a person in order to show action in conformity therewith,'" *United States v. Kelly*, 510 F.3d 433, 436 (4th Cir. 2007), Rule 414 expressly permits the admission of such propensity evidence.

In addition to the plain text of Rule 414, its legislative history shows that Congress intended Rule 414 to be an exception to the ordinary exclusion on propensity evidence.  *See, e.g.*, *United States v. Mercer*, 653 F. App'x 622, 630 (10th Cir. 2016) (citing 140 Cong. Rec. H8991-92 (1994) ("[The Rule] is critical to the protection of the public . . . [a]nd is is justified by the distinctive characteristics of the cases to which it applies.  In child molestation cases, for example, a history of similar acts tends to be exceptionally probative because it shows an unusual disposition of the defendant—a sexual or sado-sexual interest in children—that simply does not exist in ordinary people.")).  Rule 414, in other words, reflects Congress's judgment that evidence of prior acts of child molestation are "'typically relevant and probative'" in child sex offense cases.  *Kelly*, 510 F.3d at 436. (quoting 140 Cong. Rec. S12990 (daily ed. Sept. 20, 1994) (statement of Sen. Dole))).

## A.    Rule 414's Prerequisites for Admitting Evidence of Prior Acts of Child Molestation Are Met Here

In order to introduce at trial evidence that the defendant possessed child pornography on prior occasions, the government must make three showings.  First, the government must establish that the defendant is accused of a child molestation offense.  Second, the government must show that the evidence to be admitted concerns other acts of child molestation committed by the defendant.  And, third, that the evidence of the defendant's prior acts of child molestation is relevant to a matter at trial.  Each of these prongs is met here.

4

**JA234**

First, the Indictment charges the defendant with production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e), receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1), and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).  Because these offenses are federal crimes set forth in Chapter 110 of Title 18 of the U.S. Code, they qualify as a "child molestation" offenses for purposes of Rule 414. *See* Fed. R. Evid. 414(d)(2)(B).

Second, the proffered Rule 414 evidence qualifies as a "child molestation" offense as that term is defined in the rule.  The government intends to admit at trial evidence based on his statements to law enforcement that, on occasions other than the charged instances of receipt of child pornography, he accessed and received child pornography using a mobile messaging application and that he accessed and downloaded stored child pornography material from hidden services websites on Tor.  Such conduct constitutes a crime under Chapter 110 of Title 18 of the U.S. Code and therefore prior acts of "child molestation" under Rule 414.[1]

---

[1] The fact that the defendant was not charged or convicted for this earlier conduct is not an impediment to the introduction of this evidence under Rule 414.  As numerous courts have recognized, Rule 414 permits the admission of relevant, uncharged sexual offenses.  *See, e.g.*, *United States v. Lewis*, No. 07-3143, 2009 WL 377302, at *2 (D.C. Cir. Jan. 23, 2009) (defendant's uncharged possession of child pornography admissible under Rule 414 in prosecution for attempted coercion and enticement of a minor); *United States v. Seymour*, 468 F.3d 378, 384–86 (6th Cir. 2006) (defendant's prior, uncharged sexual assaults of adult females admissible under Rule 414 in case charging child molestation offenses); *United States v. Norris*, 428 F.3d 907, 913–14 (9th Cir. 2005) (defendant's uncharged molestation of victim's sister admissible under Rule 414).  Moreover, permitting the introduction of uncharged conduct pursuant to Rule 414 accords with the Rule's legislative history.  *See* 140 Cong. Rec. H8992 (1994) (Statements by Rep. Molinari and Senator Dole) ("Evidence of offenses for which the defendant has not previously been prosecuted or convicted will be admissible . . . ."); *see also United States v. Guidry*, 456 F.3d 493, 502–03 (5th Cir. 2006) ("Because sexual assault allegations are often reduced to a swearing match, Congress aimed to assist the fact finder's assessment of credibility through allowing evidence of the defendant's extrinsic sexual misconduct as character or propensity evidence."); *Johnson v. Elk Lake School Dist.*, 283 F.3d 138, 151 (3d Cir. 2002) ("Congress intended to allow admission not only of prior convictions of sexual offenses, but also of uncharged conduct"); *United*

5

**JA235**

Third, the proffered evidence of prior child molestation offenses is relevant to the charged

conduct.  Evidence is relevant "if (a) it has any tendency to make a fact more or less probable than

it would be without the evidence; and (b) the fact is of consequence in determining the action."

Fed. R. Evid. 401.  Here, the defendant's prior conduct and the connection to the charged conduct

is relevant to the charged offenses in two regards.  First, the prior conduct provides context for

how the defendant amassed the child pornography that he is charged with possessing.  In addition,

the defendant's long-standing interest in child pornography and his various means of satisfying

this interest, further underscores that it was the defendant who intentionally produced, received,

and possessed child pornography during the charged timeframe, and that he did so knowingly.

Thus, the proffered evidence is "exceptionally probative and will certainly shed some light on the

credibility of the charge and any denial by the defense."  140 Cong. Rec. S12990 (statement of

Sen. Dole) (1994).  Indeed, such similarities between the current and prior conduct give rise to a

presumption of admissibility.  *See Johnson*, 84 F.3d at 155 ("Where the government can show a

past offense with specificity and the act is sufficiently similar to the act with which the defendant

is charged, there is a presumption in favor of admissibility.").

---

*States v. Mann*, 193 F.3d 1172, 1173 (10th Cir. 1999) ("[C]ourts are to 'liberally' admit evidence
of prior uncharged sex offense . . . .").

Relatedly, the Court is not required to make a preliminary finding that the defendant
actually committed the offenses supported by the proffered Rule 414 evidence.  The question of
the defendant's commission of the conduct is one of conditional relevance under Rule of Evidence
104(b), not a preliminary question of admissibility under Rule 104(a).  *See Norris*, 428 F.3d at 914
(finding that Rule 104(b) governs the admissibility of Rule 414 evidence in light of the holding in
*Huddleston v. United States*, 485 U.S. 681, 689 (1988), that Rule 104(b) controls the admission of
Rule 404(b) evidence); *Johnson*, 283 F.3d at 152 (same); *United States v. Reynolds*, No. 3:11-CR-
42, 2012 WL 12895042, at *3 (S.D. Iowa Mar. 15, 2012) (same).  As a result, the Court needs only
to "examine[] all the evidence in the case and decide[] whether the jury [or, here, the Court as
factfinder] could reasonably find the conditional[—*i.e.*, whether the [d]efendant committed the
proffered prior acts—] by a preponderance of the evidence."  *Johnson*, 283 F.3d at 152.

6

**JA236**

**B.    The Probative Value of the Proffered Rule 414 Evidence Is Not Substantially Outweighed by the Danger of Unfair Prejudice.**

Although Rule 414 supersedes Rule 404's general prohibition of evidence of character or propensity, it does not supplant other general standards under the rules of evidence. Evidence admitted under Rule 414 is therefore subject to the balancing test imposed by Rule 403. *Kelly*, 510 F.3d at 437. As a result, even if proffered evidence satisfies all of the elements for admission under Rule 414, the evidence "may nonetheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant." *Id.* (internal quotations and citations omitted).

Yet, as several courts have recognized, Rule 414 necessarily alters the typical operation of Rule 403. "[N]early all evidence admissible under Rule 414 will be highly prejudicial." *United States v. Sanchez*, 440 F. App'x 436, 439 (6th Cir. 2011). Congress nonetheless made the legislative determination that propensity evidence is critical evidence that ordinarily should be admitted in child sex offense cases. *See* 140 Cong. Rec. H8991-92 ("The presumption is in favor of admission. The underlying legislative judgment is that the evidence admissible pursuant to [Rule 414] is typically relevant and probative, and that its probative value is normally not outweighed by any risk of prejudice or other adverse effects.). Courts thus are reluctant to apply Rule 403 stringently to Rule 414 evidence. *See Sanchez*, 440 F. App'x at 439 (warning that Rule 403 should not be used to "gut[]" Rule 414); *United States v. Meacham*, 115 F.3d 1488, 1492 (10th Cir. 1997) ("Rule 403 balancing is still applicable . . . but clearly under Rule 414 the courts are to 'liberally' admit evidence of prior uncharged sex offenses").

In the Fourth Circuit, courts are to engage in a specialized Rule 403 analysis of Rule 414 evidence. They are to apply Rule 403's balancing test by considering at least the following five factors: "(i) the similarity between the previous offense and the charged crime, (ii) the temporal

7

**JA237**

proximity between the two crimes, (iii) the frequency of the prior acts, (iv) the presence or absence of any intervening acts, and (v) the reliability of the evidence of the past offense." *Kelly*, 510 F.4d at 437. Here, the *Kelly* factors overwhelmingly support admitting evidence related to the defendant's prior child-pornography-related activity found not to be intrinsic to the charged conduct.

First, the only difference between the charged conduct and prior conduct is that rather than soliciting images of children engaging in sexually explicit conduct from the children themselves— conduct with which he is now charged—he previously sought out pre-existing images of children engaging in sexually explicit conduct, such as the images he is charged with possessing. Thus, "the similarity between the previous offense and the charged crime," *Kelly*, 510 F.3d at 437, weighs heavily in favor of admission, *see United States v. Rice*, 347 F. App'x 904, 906 (4th Cir. 2009) (holding that prior acts evidence was similar enough for admission in child pornography trial where prior acts involved "showing [a victim] child pornography, as well as taking pictures of [the victim's] genitalia"); *United States v. Majeroni*, 784 F.3d 72, 75–77 (1st Cir. 2015) ("The fact that the prior conduct was similar to the charged conduct enhanced its presumed probativeness.") (collecting cases admitting evidence under Rule 414).

Second, to the extent the defendant's prior child-pornography-related activity can be separated from the charged possession, the temporal proximity between is small in that this was a continuing course of conduct. The defendant is charged with receiving child pornography on various dates from May 8, 2017 through January 16, 2020, and possessing child pornography in February 2020. Dkt. 29, at 3-4. The defendant admitted in his interview that he received child pornography through mobile messaging applications when he was a minor, possibly when he was 14 years' old, and that he had moved the child pornography he obtained from Tor on his laptop to

8

**JA238**

an external drive as recently as a month before the interview, which was in February 2020.  Thus, his conduct spans as much as twelve years all the way through and including the charged timeframe.  This gap is particularly narrow when compared to other cases in which the Fourth Circuit has affirmed admitting Rule 414 evidence that occurred decades before the charged crimes.  *See United States v. Mason*, 532 F. App'x 432, 434 (4th Cir. 2013) (admitting decades-old evidence of molestation in child pornography trial); *Kelly*, 510 F.3d at 437 (finding a twenty-two year intervening period did not render the prior acts inadmissible); *United States v. Emmert*, 825 F.3d 906, 909 (8th Cir. 2016) (finding a twenty year intervening period to be acceptable); *United States v. Carino*, 368 F. App'x 929, 929 (11th Cir. 2010) (admitting, in child pornography trial, decades-old evidence that the defendant molested his younger sister when he was sixteen); *United States v. Eiker*, 2:17-CR-72 (MSD) 2017 WL 6459510, at *1–6 (noting that "the intervening period between alleged prior acts and the instant charges—somewhere between eleven and twenty-one years-—does not render the prior acts inadmissible").

Third and fourth, "the frequency of the prior acts," and "the presence or absence of any intervening acts" cut in favor of admission.  There is no evidence of intervening acts that would render this evidence less probative or reliable.  And although the frequency of the prior acts is hard to pinpoint, even if these were only occasional instances of prior conduct on the part of the defendant, that does not undercut the probity of the evidence.

Finally, the evidence of the defendant's prior child-pornography-related activity is reliable.  The defendant himself admitted to these acts.  He also showed the agents during the interview how he accessed one of the Tor sites and provided his log in credentials to access it.  That the forensic examination corroborated that the defendant did indeed have a collection of child pornography underscores the reliability of the defendant's admissions.

9

**JA239**

As the cases cited above demonstrate, courts typically find that the 403-balancing test favors admissibility of Rule 414 evidence, even if the Rule 414 evidence is decades-old. *See, e.g.*, *Rice*, 347 F. App'x at 906 (admitting in child pornography trial testimony of live victim regarding decades-old abuse involving distribution and production of child pornography). This trend is not surprising since "'Rule 414 reflects Congress's view that,'" when it comes to sexual offenses, "'propensity evidence is typically relevant and probative.'" *United States v. Haney*, 693 F. App'x 213, 214 (4th Cir. 2017) (quoting *Kelly*, 510 F.3d at 437). While all Rule 414 evidence carries some inherent prejudice, courts have repeatedly held that it is the type of prejudice contemplated by Congress and thus should not be considered unfair prejudice under Rule 403. *See Rice*, 347 F. App'x at 906 (noting that "past 'sexual abuse [evidence] was certainly prejudicial to Rice's defense, it was not *unfairly* prejudicial.' Instead, 'it was prejudicial for the same reason it is probative' it tends to prove that Rice has a deviant sexual attraction towards children" (quoting *Kelly*, 510 F.3d at 438) (emphasis in original)). Moreover, where, as here, the Rule 414 evidence is similar to the crimes charged, courts have found that the evidence adds little marginal prejudice. *See Eiker*, 2017 WL 6459510, at *3 (noting that "while the prior acts here are clearly disturbing, they do not have a strong danger of causing unfair prejudice because they concern similar types of sexual exploitation to those for which Defendant has been charged").

## III.     The Prior Child Pornography Offenses Are Admissible Under Rule 404(b) to Show Identity, Knowledge, Opportunity, Intent, and Lack of Mistake

Even if this evidence was not intrinsic to the government's charges, and even if Rule 414 did not apply, the defendant's admissions to engaging in prior child pornography offenses are nevertheless admissible under Rule 404(b) as "relevant to an issue other than character, such as identity or motive." *United States v. Blauvelt*, 638 F.3d 281, 292 (4th Cir. 2011). Rule 404(b)'s prohibition on the introduction of "[e]vidence of a crime, wrong, or other act" applies only where

10

**JA240**

the purpose of such evidence is "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." For Rule 404(b) to apply, the other acts evidence must be "extrinsic to the [conduct] charged." *United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009) (internal quotations and citation omitted). That is, prior bad acts "intrinsic to the alleged crime do not fall under Rule 404(b)'s limitations on admissible evidence." *Id.* (internal quotation and citation omitted). Rule 404(b) thus has no application to evidence of uncharged conduct that "arose out of the same series of transactions as the charged offense," "is necessary to complete the story of the crime on trial," or "is necessary to provide context relevant to the criminal charges." *Id.* (internal quotations and citation omitted). Likewise, Rule 404(b)'s limitations do not apply to evidence of uncharged conduct that is "inextricably intertwined," "part of a single criminal episode," or "were necessary preliminaries to the crime charged." *United States v. Chin*, 83 F.3d 83, 88 (4th Cir. 1996).

Even if other acts evidence is "extrinsic" to the crime charged, such evidence may still be admitted consistent with Rule 404(b). As the Fourth Court has observed, Rule 404(b) is "an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." *Basham*, 561 F.3d at 326 (internal quotations and citation omitted). So long as the proffered bad acts are relevant to an issue other than the defendant's character—such as "'proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident,'" *Basham*, 561 F.3d at 326 (quoting Fed. R. Evid. 404(b))—and the threshold requirements of Rule 404(b) are met, then evidence of the other bad acts is admissible. *Morgan*, 846 F.2d at 944.

The Fourth Circuit has developed a four-pronged test to protect against the dangers Rule 404(b) is intended to address. *See United States v. Johnson*, 617 F.3d 286, 296–97 (4th Cir. 2010).

11

**JA241**

Evidence of prior bad acts becomes admissible under Rule 404(b) and Rule 403 if it meets the following criteria:

> (1) The evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes. (2) The act must be necessary in the sense that it is probative of an essential claim or an element of the offense. (3) The evidence must be reliable. And (4) the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process.

*Id.* (quoting *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997)). The threshold for relevancy and necessity are not high. Relevancy requires only that the evidence be "worth consideration by the jury" or have a "plus value" to be admissible. *Queen*, 132 F.3d at 998. As for necessity, prior acts evidence is considered necessary where, "considered in the light of other evidence available to the government, it is an essential part of the crimes on trial, or it furnishes part of the context of the crime." *Id.* (internal quotations and citation omitted). Where intent is at issue and the Rule 404(b) evidence is important to the proof of intent, the evidence may be considered necessary. *Id.* The proffered evidence satisfies this four-part test.

**A.**   **The Prior Child Pornography Offenses are Relevant, Necessary, and Reliable.**

All extrinsic evidence of prior child pornography offenses is highly relevant to the charged conduct because they show motive (that the defendant had an intense desire to receive and possess child pornography), and hence identity (that it was likely the defendant and not anyone else who engaged in the charged conduct). *See United States v. Sebolt,* 460 F.3d 910, 917 (7th Cir. 2006) ("Prior instances of sexual misconduct with a child victim may establish a defendant's sexual interest in children and thereby serve as evidence of the defendant's motive to commit a charged offense involving the sexual exploitation of children."); *Eiker*, 2017 WL 6459510, at *3

12

**JA242**

("Defendant's prior acts demonstrate an interest in prepubescent girls, and the images described as forming the basis for Counts 1–3 show victims engaged in sexual conduct similar to that of the prior acts."). Motive to obtain child pornography is especially relevant because such a desire does not exist in the overwhelming majority of the population. *See United States v. Hawpetoss*, 478 F.3d 820, 824 (7th Cir. 2007) ("In child molestation cases, for example, a history of similar acts tends to be exceptionally probative because it shows an unusual disposition of the defendant ... that simply does not exist in ordinary people."). Any extrinsic evidence of prior child pornography offenses combined with other evidence the government intends to offer at trial, will show that the defendant was the only person with the motive and opportunity to commit the charged crimes. *See United States v. Siegel*, 536 F.3d 306, 317–18 (4th Cir.2008) (admitting evidence of past crimes to show motive for murder).

Evidence of the prior child pornography offenses and his admissions regarding how the obtained child pornography in the past are also highly relevant to show that the defendant received and possessed the charged child pornography knowingly and not by mistake. "A not-guilty plea puts one's intent at issue and thereby makes relevant evidence of similar prior crimes when that evidence proves criminal intent." *United States v. Sanchez*, 118 F.3d 192, 196 (4th Cir. 1997). Thus, even outside the child pornography context, courts routinely admit similar prior bad acts to show that the charged conduct was committed intentionally. *See, e.g.*, *id.* at 195–96 (evidence of prior drug dealing admissible to show defendant was an "intentional, rather than unwitting, participant in the conspiracy"); *United States v. Ford,* 88 F.3d 1350, 1362 (4th Cir. 1996) (prior drug arrest admissible to show intent to distribute narcotics); *United States v. Tanner*, 61 F.3d 231, 237 (4th Cir. 1995) (same); *United States v. Aguilar-Aranceta*, 58 F.3d 796, 799 (1st Cir. 1995) ("Where the evidence is susceptible to the explanation that the acts alleged to constitute the crime

13

**JA243**

were innocently performed and the crucial issues of intent and knowledge are keenly disputed, . . . the government [may] introduce evidence of prior or similar offenses . . . .").

The relevancy analysis also shows that this evidence is necessary. Because this conduct both "furnishes part of the context of the crime" and is relevant to the defendant's intent, which "is an essential part of the crimes on trial," the proffered evidence is necessary for the purposes of 404(b). *See Queen*, 132 F.3d at 998 (internal quotations and citation omitted).

Last, the evidence is sufficiently reliable. "Evidence is reliable for purposes of Rule 404(b) 'unless it is so preposterous that it could not be believed by a rational and properly instructed juror.'" *United States v. Siegel*, 536 F.3d 306, 319 (4th Cir. 2008) (quoting *United States v. Aramony,* 88 F.3d 1369, 1378 (4th Cir. 1996)). Here, the source for the proffered evidence is the defendant's own statements, which, as discussed above, are far from preposterous and were confirmed by the forensic examination in this case.

**B.      The Probative Value of the Proffered Rule 404(b) Evidence Is Not Substantially Outweighed by the Danger of Unfair Prejudice.**

Incriminating evidence is inherently prejudicial. *United States v. Haney*, 914 F.2d 602, 607 (4th Cir. 1990). The necessary question under Rule 403 therefore is whether the evidence has the potential to cause unfair prejudice, and whether the danger of such prejudice substantially outweighs any probative value that the evidence might have. *See United States v. Mark*, 943 F.2d 444, 449 (4th Cir. 1991). Unfair prejudice does not include "damage to a defendant's case that results from the legitimate probative force of the evidence." *Basham*, 561 F.3d at 327 (internal quotations and citation omitted). Rather, "Rule 403 'only requires suppression of evidence that results in unfair prejudice—prejudice that damages an opponent for reasons other than its probative value, for instance, an appeal to emotion, and only when that unfair prejudice *substantially*

14

**JA244**

outweighs the probative value of the evidence." *Id.* (quoting *United States v. Mohr*, 318 F.3d 613, 619–20 (4th Cir. 2003)).

To the extent the proffered Rule 404(b) evidence is prejudicial to the Defendant, it is not unfairly prejudicial. The defendant's uncharged conduct and the charged offense are sufficiently similar so as to negate an improper appeal to emotion that may otherwise be present if he were not already charged with a child sex offense. *See United States v. Byers*, 649 F.3d 197, 210 (4th Cir. 2011) ("Generally speaking, 'bad acts' evidence, admissible under Rule 404, is not barred by Rule 403 where such evidence 'did not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged.'" (quoting *United States v. Boyd*, 53 F.3d 631, 637 (4th Cir. 1995))). In other words, the potential prejudice already is present in this case given the nature of the charge, and it will not be exacerbated by admitting evidence that the defendant also obtained child pornography through Tor and through instances other than the charged instances on mobile messaging applications, particularly where the government is only seeking to introduce the defendant's statements on that conduct and not any additional images of child pornography. If anything, the uncharged conduct is less prejudicial than the charged conduct— which involves the defendant communicating with actual minors and persuading them to produce child pornography for him. In any event, the Court can mitigate the risk of unfair prejudice or confusion by providing a limiting instruction to the jury that specifies how the jury may properly consider the proffered evidence. *See United States v. White*, 405 F.3d 208, 213 (4th Cir. 2005) ("[A]ny risk of [unfair] prejudice was mitigated by a limiting instruction from the district court clarifying the issues for which the jury could properly consider this evidence.").

15

**JA245**

**CONCLUSION**

For the reasons stated above, the United States respectfully requests that the Court find that the proffered evidence is intrinsic to the charged conduct or, in the alternative, that the evidence is admissible under Federal Rule of Evidence 414 and 404(b).

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:      /s/
William G. Clayman
Special Assistant United States Attorney (LT)
Jay V. Prabhu
Assistant United States Attorney
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: 703-299-3700
Fax: 703-299-3981
Email: william.g.clayman@usdoj.gov

16

**JA246**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 18, 2020, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which automatically generated a Notice of Electronic

Filing to the parties of record.


By:      _____/s/_____
         William G. Clayman
         Special Assistant United States Attorney (LT)
         U.S. Attorney's Office
         2100 Jamieson Avenue
         Alexandria, Virginia 22314
         Tel: 703-299-3700
         Fax: 703-299-3981
         Email: william.g.clayman@usdoj.gov

17

**JA247**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:20-CR-143 |
| v. | ) | |
| | ) | Honorable T.S. Ellis, III |
| ZACKARY ELLIS SANDERS, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL**

The United States of America, by and through its attorneys, G. Zachary Terwilliger, United

States Attorney for the Eastern District of Virginia, William G. Clayman, Special Assistant United

States Attorney (LT), and Jay V. Prabhu, Assistant United States Attorney, files this response in

opposition to the defendant's motion.  Dkt. No. 137 ("Mot.").  For the reasons stated below, his

motion should be denied.  Further, given the Court's familiarity with the facts and the defendant's

arguments, a hearing on his motion is not necessary.

**INTRODUCTION**

In February 2020, Special Agent ("SA") Christopher Ford of the Federal Bureau of

Investigation ("FBI") applied for a warrant to search the defendant's home based on a tip from a

reliable foreign law enforcement agency ("FLA").  The tip is straight-forward: an Internet Protocol

address later tied to the defendant's home (the "Target IP") was used to access online child sexual

abuse material on a known hidden service dedicated to child sexual abuse material (the "Target

Website") on The Onion Router ("Tor") network.  The government has provided the defendant

with the FLA's tip, the affidavit in support of the warrant ("Affidavit"), and SA Ford's reports.

Since receiving discovery, the defendant has insisted, without evidence, that the tip is false, that SA Ford knew this, and that he is entitled to fish for materials in the government's files that might substantiate his suspicion. After having his request to do so denied and denied again, he now seeks a third bite at the apple, repackaging his failed discovery motions with references to the government's notice under Federal Rule of Evidence 414, *Giglio*, and material he found online. But, at base, his claims are the same as before: he does not think the Target IP accessed the Target Website (or perhaps only accessed its homepage) and believes he is entitled to access to the government's files to find support for this unfounded claim. The problem for the defendant is that the Court has already ruled that the FBI properly relied on the tip, that the Affidavit accurately conveys the tip, and that it is pure speculation that SA Ford knew the tip was false. To the extent the defendant has provided relevant, new information to consider—which he has not—nothing in his latest filings shows that the Court erred or that he is entitled to review any additional information under any applicable discovery standard. Instead, he is again relying on hopeful speculation that the Affidavit is false as a basis to engage in a groundless fishing expedition for evidence that would support that very claim. This backwards approach to discovery, wherein the mere suspicion about a presumptively true statement in the Affidavit entitles him to access to all materials related to that statement in the hopes of finding something impeaching it, is inconsistent with the rules of discovery and controlling precedent. Accordingly, his motion should be denied.

## BACKGROUND

The facts of this case are well-documented. Dkt. No. 43 at 3–5; Dkt. No. 97 at 3–7. In August 2019, the FLA notified the FBI that the Target IP was used in May 2019 to access online child sexual abuse and exploitation material, the majority of which was only accessible to individuals with a username and password and which depicted a specific type of content. Dkt. No.

2

**JA249**

86, Ex. 1. The FBI determined that the Target IP was registered to the defendant's mother at their home in McLean, Virginia. Dkt. No. 86, Ex. 4 at 2. As part of the tip, the FLA also provided a letter stating that the data had been obtained through a lawful investigation, Dkt. No. 86, Ex. 2, and a report identifying the Target Website and describing it as a website dedicated to specific child pornography in exactly the same language used in the FLA's first letter, Dkt. No. 86, Ex.3.

Based on this tip, SA Ford applied for a warrant to search the defendant's home. In paragraph 23 of the Affidavit, SA Ford averred that a reliable FLA notified the FBI that, "on May 23, 2019, a user of the [Target IP] accessed online child sexual abuse and exploitation material via a website that the FLA named and described as the [Target Website]." Dkt. No. 86, Ex. 5 at ¶ 23. Magistrate Judge John F. Anderson authorized the warrant, and law enforcement executed it in February 2020. During the search, law enforcement seized electronic devices from the defendant and his bedroom. An examination of these devices uncovered online chats in which the defendant persuaded minors to produce and send him images and videos of themselves engaging in degrading and sexually explicit conduct. The examination also uncovered additional files depicting minors engaged in sexually explicit conduct stored on various electronic devices. On June 24, 2020, a federal grand jury returned a 12-count indictment charging the defendant with production, receipt, and possession of child pornography. Dkt. No. 29. The government has produced comprehensive discovery, including the FLA's documents, the Affidavit, and SA Ford's reports.

## I.    The Defendant's First Motion to Compel and Supplemental Briefing

On July 13, 2020, three days after his arraignment, the defendant filed a motion to compel pursuant to Federal Rule of Criminal Procedure 16, *Brady*, and the Sixth Amendment, arguing that he was entitled to all materials related to whether the Target IP "accessed online child exploitation

3

**JA250**

material via a website," as described in paragraph 23 of the Affidavit.[1]  Dkt. No. 38 at 2–3, 1 2–

14.  Seizing on a semantic difference in SA Ford's descriptions of the tip in the Affidavit and in a

report, the defendant hypothesized that the Target IP only accessed the homepage of the Target

Website and not any child sexual abuse material.  *Id.* at 16–17.  He also claimed that paragraph 23

did not accurately convey the tip and that the Target Website was not dedicated to child

pornography.  *Id.* at 6.  Accordingly, the defendant argued, he was entitled to search the

government's files to find support for his belief that the Affidavit was misleading.

   After holding a hearing on July 31, 2020, the Court gave the parties ten days to file

supplemental briefs.  In his supplemental brief, the defendant reiterated his claim that paragraph

23 did not correctly convey the FLA's tip and that, based on a meaningless difference in SA Ford's

descriptions of the tip, the government knew the tip was false and the Target IP only accessed the

homepage of the Target Website "for a single second."  Dkt. No. 48 at 8–13.  The defendant then

sought leave to respond to the government's supplemental brief.  Dkt. No. 60.  In his response, he

again argued that paragraph 23 overstated the tip.  Dkt. No. 65 at 2–3.

   In an August 21, 2020, Memorandum Opinion, the Court denied the defendant's motion

and found that paragraph 23 of the Affidavit accurately conveyed the FLA's tip.  Dkt. No. 73 at

9–10.  The Opinion states that "[t]here is no evidence—either in documents generated by the FLA

or by the FBI—that Special Agent Ford thought defendant merely visited [the Target Website's]

homepage and did not view child sexual abuse and exploitation material," and that the "defendant's

repeated incantation that the government misrepresented the FLA's tip does not make it so where,

---

[1] The defendant also sought material related to the FLA's investigation.  Dkt. No. 38 at 3.  While
he continues to insist without evidence that the FLA used a network investigative technique that
interfered with his computer, *see* Dkt. No. 140 at 6, he is not seeking discovery related to this
speculative claim in his renewed motion to reconsider his motion to compel.  Accordingly, that
claim will not be addressed here.

4

**JA251**

as here, every description of the FLA's tip is consistent." *Id.* at 11. The Opinion concludes that the defendant was simply seeking "to engage in a fishing expedition for evidence that would support [his] speculative theories that the search warrant affidavit contains intentional misrepresentations material to a finding of probable cause." *Id.* at 13.

## II.    The Defendant's Motion for Reconsideration and Motions to Suppress

On August 20, 2020, the Court extended the deadline to file pretrial motions in this matter from August 20, 2020, to August 27, 2020. Dkt. No. 72. On August 27, 2020, the defendant filed an over-80-page motion seeking various forms of relief. Dkt. No. 79. After the Court struck this motion for exceeding the permitted page limit, Dkt. No. 80, he refiled it as four motions to suppress and a motion to reconsider his motion to compel, Dkt. Nos. 81, 83, 85, 88, & 90. In his motion to reconsider, the defendant claimed that the Court's denial of his original motion fundamentally misunderstood his argument—that SA Ford knew the tip and Affidavit were misleading—and that the Opinion erred in describing the FLA's documents and in finding that the Affidavit correctly conveyed the tip. Dkt. No. 89 at 6–9. Likewise, in a motion to suppress, he again claimed that paragraph 23 of the Affidavit was misleading, and the warrant was thus invalid, because it did not correctly describe the tip and because SA Ford knew the tip was false and misleading. Dkt. No. 86 at 20–29.

The Court denied all five motions. Dkt. Nos. 107 & 113. In an Order denying his motion to reconsider, the Court found that the defendant failed to establish a basis for reconsideration. Dkt. No. 107 at 3–4. The Order notes that the Court did not misunderstand his core argument, which it describes as "pure speculation" and entirely unsupported by the evidence, and confirms that the FLA's tip consists of the three documents identified above and that paragraph 23 accurately stated the tip. *Id.* at 5–6. The Court also found that, even if he had met the requirements

5

**JA252**

for reconsideration, his arguments regarding paragraph 23 fail on the merits. *Id.* at 8–9. The Order explains that his "conclusory allegation about Special Agent Ford's thought process at the time he wrote his affidavit" is "rank speculation." *Id.* at 9. "There is simply no evidence," the Order states, "to suggest that Special Agent Ford knew the language of the tip was materially misleading at the time he wrote his affidavit. Indeed, there is no persuasive reason to conclude that it was materially misleading, or indeed misleading at all." *Id.*

Similarly, in a Memorandum Opinion denying the defendant's motion to suppress based on paragraph 23, the Court dismissed his claim that the paragraph is misleading and confirmed that it "simply repeats, essentially verbatim," the tip. Dkt. No. 113 at 12. The Opinion rejects the defendant's "unwarranted conclusion" that the tip only establishes that the Target IP visited the Target Website's homepage for one second, explaining that the tip "clearly invites and warrants the reasonable inference that the IP address user was purposeful in his efforts to reach the [Target Website] and its illegal content," and that the timestamp in the tip "far more likely" reflects when the Target IP accessed the Target Website and not how much time the user spent accessing child sexual abuse material. *Id.* at 13, 13 n.10. "Given the involved set of steps necessary to access the [Target Website]" on Tor, the Opinion finds that "the Magistrate Judge clearly had a substantial basis to conclude that there was a fair probability of finding contraband—child pornography—at the target residence," and denies the defendant's request for a *Franks* hearing. *Id.*

**III.    The Defendant's Instant Motion to Compel and Supplement to his Motion**

Fifteen days in advance of the previously-scheduled November 17, 2020, trial, the government disclosed to the defendant that it may seek to introduce certain evidence at trial related to his other child molestation offenses consistent with Federal Rule of Evidence 414. Dkt. No. 127. On November 9, 2020, the Court continued the trial until February 9, 2021, at the defendant's

6

**JA253**

request. Dkt. No. 131. Well in advance of the new trial, and consistent with the well-established rule "that the prosecution is entitled to prove its case by evidence of its own choice," *Old Chief v. United States*, 519 U.S. 172, 186–87 (1997), the government withdrew its prior Rule 414 notice and filed an amended notice, disclosing to the defendant that the government may seek to introduce at trial evidence that he engaged in additional child molestation offenses based on statements he made to law enforcement during the search of his home. Dkt. No. 133. The amended notice also discloses that the government does not intend to introduce evidence at trial of the defendant's activity on the Target Website based on the FLA's tip under Rule 414. *Id.* at 3.

On November 27, 2020, three months after the pretrial motions deadline in this case, the defendant filed the instant motion to compel pursuant to *Brady*, *Giglio*, and Federal Rule of Criminal Procedure 16. In it, he argues that he is entitled to essentially the same material he sought in his first motion to compel and his motion to reconsider, namely: (1) material beyond the discovery already provided showing that the Target IP accessed child sexual abuse material on the Target Website, as described in paragraph 23 of the Affidavit; (2) a screenshot of the homepage of the Target Website; and (3) material that captures SA Ford's "state of mind" as it relates to paragraph 23. Mot. at 13–17. The defendant asserts that, within these materials, he will find confirmation of his belief that the tip is misleading and that SA Ford knew this. Over a week later, on December 5, 2020, the defendant filed a "supplement" to his motion, reiterating his claim and attaching to it assorted documents he found online. Dkt. No. 140 ("Supp."). Prior to filing this response, undersigned counsel obtained and provided the defendant with additional screenshots of the Target Website as it appeared on January 16, 2019, including a screenshot of its homepage.[2]

---

[2] The screenshot of the homepage is not Rule 16, *Giglio*, or *Brady* material. The Affidavit does not describe the homepage and the defendant's insistence that the tip is referring to it is "pure speculation." Dkt. No. 107 at 5. But even if this atextual reading of the tip is correct, "the fact

Accordingly, the only outstanding issue is whether the defendant is entitled to additional material regarding paragraph 23 of the Affidavit and SA Ford's "state of mind" with respect to that information.

## ARGUMENT

"Generally, criminal defendants do not have a constitutional right to discovery absent a statute, rule of criminal procedure, or some other entitlement." *United States v. Palacios*, 677 F.3d 234, 246 (4th Cir. 2012) (internal citations omitted). The government is aware of its Rule 16, *Brady*, *Giglio*, and other discovery obligations and has complied with and will continue to comply with both the letter and spirit of those obligations.

In his latest motion, however, the defendant simply repackages his failed motion to compel in an effort to have the Court again reconsider his request for more information that it has determined is immaterial. It is, in other words, a renewed motion to reconsider his motion to compel. Indeed, while framed as two new requests—one for additional material related to the Target IP accessing child sexual abuse material on the Target Website and the other for additional material that reflects SA Ford's "state of mind" with respect to this information, Mot. at 13–18—

---

that the FLA informed the FBI that defendant's IP address accessed [the Target Website] clearly invites and warrants the reasonable inference that the IP address user was purposeful in his effort to reach the [Target Website] and its illegal content." Dkt. No. 113 at 13. To be sure, the "Announcements" page on the site, accessible to both registered and unregistered users directly from the homepage, makes clear that the site advertises and is dedicated to illegal content. Dkt. No. 84, Exs. 9 & 10. But the homepage, the screenshot of which was taken before the date the tip reported the Target IP accessed the Target Website, is immaterial because the steps the user took to navigate to the Target Website provided probable cause to believe that he did so "to access the website and its illegal content." Dkt. No. 113 at 9–10. This, in turn, provided "a substantial basis to conclude that there was a fair probability of finding contraband—child pornography—at the target residence." *Id.* Thus, while the defendant has repeatedly argued that the warrant is invalid because "neither the name of the site nor the landing page indicated that the website contained any illegal contact at all," and he only accessed the homepage—*see* Dkt. Nos. 38 at 5, 17; 48 at 2, 10; 58 at 9; 84 at 18, 21; 86 at 7—the content on the homepage has no bearing on the Court's probable cause finding or the validity of any statements in the Affidavit.

8

the defendant is seeking the same category of discovery he sought before: material in the government's possession substantiating his wishful belief that, contrary to the tip and paragraph 23 of the Affidavit, the Target IP did not access child sexual abuse material on the Target Website.[3] The Court has repeatedly rejected this theory, explaining that the Affidavit "clearly communicates the same information contained in the FLA's tip" that the Target IP accessed child sexual abuse material on the Target Website, that there is no evidence SA Ford thought the Target IP "merely visited" the site's homepage, and that the defendant's "repeated incantation that the government misrepresented the FLA's tip does not make it so[.]" Dkt. No. 73 at 10–11.[4] Nothing in his latest filings is sufficient to support his request for the Court to revisit this issue yet again.

Even assuming *arguendo* that the defendant has met the requirements for this Court to reconsider his motion to compel—which he has not—his motion fails on the merits. He is once again engaged in "hopeful speculation," Dkt. No. 73 at 13, imagining ways in which the reliable tip and SA Ford's description of it might be misleading, repeating those suspicions as fact while referencing a patchwork of irrelevant documents, and then asserting a right to search the government's files for actual corroboration. This sort of conjecture "is insufficient to support a motion to compel under Rule 16," and fails to provide any "non-conclusory arguments as to why the requested discovery would be helpful to the defense" under *Brady* and *Giglio*. Dkt. No. 73 at 9, 13. This is particularly so given that navigating to the Target Website's homepage—one of the

---

[3] The defendant does not explain nor does the government know what kind of additional material he believes would reflect SA Ford's "state of mind." He has already received SA Ford's reports, the Affidavit, and the tip.

[4] *See also* Dkt. No. 107 at 6 ("[T]there is 'no meaningful difference between the [FLA's] tip and the Search Warrant Affidavit's language.'" (quoting Dkt. No. 73)); Dkt. No. 113 at 12 ("Paragraph 23 contains no material misrepresentations or omissions, intentional or otherwise. Rather, the paragraph simply repeats, essentially verbatim, the tip from [the FLA].").

9

defendant's theories of what the tip might mean—still "clearly invites and warrants the reasonable inference that the IP address user was purposeful in his efforts to reach the [Target Website] and its illegal content." Dkt. No. 113 at 13. In other words, even if his atextual reading of the tip is correct, the tip would still provide probable cause to search his home and he would not be entitled to a *Franks* hearing. *Id.* Accordingly, his motion for material that he falsely asserts might invalidate SA Ford's Affidavit or the Court's probable cause finding should be denied.

**I.    The Defendant Has Not Provided a Sufficient Basis to Renew his Motion to Reconsider his Failed Motion to Compel**

When, as here, a defendant moves to have a court reconsider a failed motion to compel, reconsideration cannot be granted if the defendant is simply asking the Court "rethink what the Court ha[s] already thought through[.]" *United States v. Dickerson*, 971 F. Supp. 1023, 1024 (E.D. Va. 1997) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). Instead, such a motion "can be successful in only three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007); *see also United States v. Young*, 260 F. Supp. 3d 530, 555 (E.D. Va. 2017) (noting that, in the context of motions to reconsider in criminal cases, "courts are guided by analogy to the standards established by the civil rules."). To support a motion for reconsideration based on new evidence, "the movant is obliged to show not only that . . . evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered or produced such evidence at the hearing." *Dickerson*, 971 F. Supp. at 1024 (quoting *Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989)).

Here, the Court has considered and rejected the defendant's discovery request and arguments regarding paragraph 23 of the Affidavit and SA Ford's understanding of it on multiple

10

**JA257**

occasions. Dkt. No. 73 at 10–11; Dkt. No. 107 at 6; Dkt. No. 113 at 12. Seeking to avoid that result again, the defendant has included allegedly new information in his motion and supplement. Specifically, he points to the government's amended Rule 414 notice and documents he found through keyword searches online to assert that it is now "beyond question" that the government possesses evidence to substantiate the claims in his failed discovery and suppression motions. Mot. at 1–3, 13–14, 22; *see also* Supp. But neither the withdrawn Rule 414 notice nor the current Rule 414 notice make reference to information beyond what was contained in the tip. Indeed, they do not even identify the Target Website or reference the FLA. In any event, the government does not intend to introduce evidence at trial of the defendant's activity on the Target Website based on the FLA's tip under Rule 414, rendering his speculative theories about the validity of the Affidavit wholly irrelevant. *See* Dkt. No. 133. It is undisputed that the government "is entitled to fashion its own case" and present evidence in the manner of its choosing. *United States v. Basham*, 789 F.3d 358, 386 (4th Cir. 2015) (citing *Old Chief*, 519 U.S. at 189). The defendant's speculative claim that the amended Rule 414 notice is designed to conceal *Brady* material as opposed to, for example, streamline testimony in the interest of judicial economy, is not new evidence that justifies reconsideration of his motion to compel. It is rank speculation.

The assorted documents the defendant has compiled in his motion and supplement similarly fail to warrant reconsideration of his request to compel discovery related to paragraph 23. The defendant suggests that only one of these documents—what appears to be notes from a March 2020 meeting held by a regional police department (not the FLA) abroad—was perhaps unavailable when he filed his motion in July 2020 because "it is a PDF document, not an HTML document," and might not have been indexed by Google. Mot. at 14 n.6; *id.*, Ex. 4. He otherwise offers no explanation or evidence as to why the documents attached to his motion and supplement

11

**JA258**

were not included in his prior motion to compel and additional filings or produced at any prior hearing. Without some showing that these other documents were "newly discovered" *and* could not have been discovered or produced "with reasonable diligence" previously, the defendant cannot obtain reconsideration of his motion to compel. *See Dickerson*, 971 F. Supp. at 1024.

## II. The Defendant Is Not Entitled to the Requested Material Under Rule 16

Even if the defendant has met the requirements for this Court to reevaluate the merits of his renewed motion to reconsider based on his internet research, he has again failed to establish that the requested information is material under Federal Rule of Criminal Procedure 16. Mot. at 18–20. Under Fed. R. Crim. P. 16(a)(1)(E), a defendant has a right to inspect an item "if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." With respect to the materiality prong, the defendant bears the burden of proving that the information sought "would . . . actually help[] prove his defense." *United States v. Caro*, 597 F.3d 608, 621 (4th Cir. 2010) (internal citations omitted). A defendant can satisfy this burden by showing that "there is a strong indication that [the disputed evidence] will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Id.* (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)). That is, the defendant must provide "some indication that the pretrial disclosure of the disputed evidence would . . . enable[] the defendant significantly to alter the quantum of proof in his favor." *Id.* (quoting *United States v. Ross*, 511 F.2d 757, 763 (5th Cir. 1975), *cert. denied* 423 U.S. 836)).

To satisfy the materiality requirement, a defendant cannot rely on "general description[s] or "conclusory allegations" and instead "must present facts which would tend to show that the

12

**JA259**

Government is in possession of information helpful to the defense." *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990). Indeed, "ordering production by the government without any preliminary showing of materiality is inconsistent with Rule 16." *Id.* Doing so would allow a defendant "to carry out an impermissible 'fishing expedition,'" in which he does not know what evidence he is looking for until he finds it. *United States v. McLamb*, 220 F. Supp. 3d 663, 676 (E.D. Va. 2016) (denying motion to compel where defendant's requests were based on "mere speculation" of materiality); *see also United States v. Maranzino*, 860 F.2d 981, 985–86 (10th Cir. 1988) (explaining that "Rule 16 does not authorize a blanket request to see the prosecution's file" or a "fishing expedition" by the defense) (citing *Jencks v. United States*, 353 U.S. 657, 667 (1957)); *United States v. Delacruz*, No. Case 14 Cr. 815 (KBF), 2015 WL 2211943, at *1 (S.D.N.Y. May 12, 2015) ("Rule 16 does not entitle a criminal defendant to a broad and blind fishing expedition among [items] possessed by the Government on the chance that something impeaching might turn up." (internal citations and quotation marks omitted)).

Here, as he did before, the defendant argues that the requested information regarding paragraph 23 of the Affidavit is material under Rule 16 because it might confirm his belief that SA Ford "made obviously reckless or knowingly false statements" in the Affidavit and provide grounds to impeach him and the Affidavit. Mot. at 18–20. The "obviously" false statements he identifies are the same statements the Court has consistently deemed to be accurate and supported by the evidence.[5] *See* Dkt. Nos. 73, 107, 113. In an effort to get the Court to reconsider its conclusion, the defendant attaches a host of exhibits to his filings, none of which suggest, let alone prove "beyond question," that the FLA's tip was unreliable, that the Target IP did not access child

---

[5] The defendant claims the requested information might undermine paragraphs 23 and 25 of the Affidavit, as well as the Affidavit's description of the Target Website and how and why and individual would navigate to the Target Website on Tor. Mot. at 19–20.

sexual abuse material or the Target Website as reported, or that SA Ford shared or should have shared his unfounded suspicions about the tip. Mot. at 22. These exhibits consist of: (1) documents that appear to be from various foreign organizations or individuals, none of which are from the FLA or provide any meaningful insight into the FLA's investigation, *see* Mot., Ex. 4, Supp., Exs. 1–3, 8; and (2) older documents that appear to be from law enforcement in the United States, none of which are related to this case or corroborate his speculative claims that the FBI knew the tip was unreliable or collaborated with the FLA to search his computer, *see* Supp. Exs. 4–7, 9–10.

With respect to the first category of documents—random documents found on the internet that appear to be from outside the United States—the government's understanding of the sources of this information is limited to what the defendant proffers in his filings. He provides no reason to think that SA Ford or the FBI should have been aware of them or should afford any weight to the information contained in them. None of them appear to be from the FLA or any similar organization involved in international criminal investigations and none of them make more than a passing reference to what appears to be the FLA's investigation. And to the extent they might refer to the FLA's investigation and contain reliable information, none of them actually address or cast doubt on the tip the FLA provided to the FBI. If anything, these materials, if taken at face value, appear to confirm that the FLA's investigation that generated the tip was solely focused on child pornography hidden services on Tor and that this investigation "demonstrate[d] a welcome improvement in the quality of intelligence distributed to [the FLA's] partner agencies." Supp., Ex. 1 at 11. The statements contained in the documents thus confirm that the FLA's tip was about the Target IP accessing child sexual abuse material on a Tor hidden service dedicated to that content (as opposed to accessing it on a mobile messaging application, as the defendant suggests), and belie his suggestion that the FLA mistakenly provided a document identifying the Target Website

14

**JA261**

as the hidden service on which the Target IP accessed child sexual abuse material in its tip related to the defendant.[6]  *See* Mot. at 7 n.3, 13–14; Supp. at 4 n.3.

The other category of exhibits—documents that appear to be from the United States related to other investigations—also fails to establish the materiality of the information the defendant requests under Rule 16.  None of these documents are related to this investigation.  Supp. at 3, 5–6 (citing Exs. 4–7, 9–10).  Instead, the defendant appears to argue, as he did previously regarding the FBI's use of a network investigative technique, that because law enforcement did something in a prior investigation, they necessarily did the same thing here.  But despite the defendant's months of digging for information, he has found no evidence, let alone a suggestion, that the United States was involved in the FLA's investigation beyond what was accurately stated in the Affidavit.  All he has managed to cobble together are press releases and documents related to other, older investigations, in which both the United States and foreign agencies acknowledged some collaboration.  That the United States successfully worked with foreign law enforcement agencies in the past to take down websites dedicated to child pornography provides no support for his current speculation regarding the origins of the FLA's tip in this case.[7]

---

[6] Conversely, none of the alleged "quality" concerns the defendant highlights actually address the tip.  Supp. at 4–5 (citing Exs. 1–3).  Indeed, the "accuracy" concerns in Exhibit 2 appear to be related to a regional foreign law enforcement agency's data and have nothing to do with the FLA's tip or investigation.  Supp., Ex. 2 at 2.  Relatedly, the defendant's suggestion that the tip's reference to child sexual abuse material might cover legal content in the United States is simply misplaced.  *See* Supp. at 3 (citing Ex. 8).  Images of clothed children or children who are not explicitly posed in a sexual manner can still depict children engaged in sexually explicit conduct under 18 U.S.C. § 2256(2).  *See, e.g.*, *United States v. Knox*, 32 F.3d 733, 748–52 (3d Cir. 1994).  And while the tip does not specifically describe the material the Target IP accessed—a fact the government has noted from the outset—it makes clear that the Target Website hosted undeniably illegal material, which provides context and support for the reasonable inference that the Target IP's user navigated to the Target Website on Tor with the intent to access that material.

[7] Additionally, contrary to the defendant's suggestion, *see* Supp. at 3 (citing Ex. 10), the government has never claimed that there are no legitimate uses of Tor.  Rather, the government

15

Put simply, the defendant has failed to present any facts or evidence in his motion and supplement to suggest that the government is in possession of information helpful to his defense with respect to paragraph 23 of the Affidavit. He has already received the FLA's tip, the Affidavit, and SA Ford's reports. His continued belief that the Affidavit did not establish probable cause to search his home does not entitle him to fish through the government's files to substantiate his unsupported assertion that the tip is somehow false or misleading. Accordingly, his motion to compel pursuant to Rule 16 should be denied.

## III.    The Defendant Is Not Entitled to the Requested Material Under *Brady* or *Giglio*

The defendant also frames his motion as a request for *Brady* and *Giglio* materials related to paragraph 23 of the Affidavit. *See* Mot. at 10–17  "In *Brady*, the Supreme Court announced that the Due Process Clause requires the government to disclose 'evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment.'" *Caro*, 597 F.3d at 619 (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). Evidence that can be used to impeach a government witness "falls within the *Brady* rule." *United States v. Bagley*, 473 U.S. 667, 676 (1985) (citing *Giglio v. United States*, 405 U. 150, 154 (1972)). Favorable evidence is material if there exists a reasonable probability "that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682. A "reasonable probability," exists if there "is a probability sufficient to undermine confidence in the outcome" of a case. *Caro*, 597 F.3d 619 (quoting *Bagley*, 473 U.S. at 682). "*Brady* requests," however, "cannot be used as discovery devices to obtain evidence the defendant believes would be helpful." *United States v. Ducore*, 309 F. Supp. 3d 436, 440 (E.D. Va.) (internal citations and quotation marks omitted).

has argued that an internet user accessing child sexual abuse material on the Target Website on Tor, as the tip states, provides probable cause to search the user's home based on the reasonable inference that they accessed that material intentionally.

16

**JA263**

Accordingly, when a defendant "can only speculate as to what the requested information might reveal, he cannot satisfy *Brady*'s requirement of showing that the requested evidence would be favorable to the accused." *Caro*, 597 F.3d at 619 (internal citation and quotation marks omitted); *see also United States v. Agurs*, 427 U.S. 97, 109–10 (1976) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."); *United States v. Horvwalt*, 64 F.3d 660 (Table), at *2 (4th Cir. 1995) ("[W]e recognize that [defendant] must first make at least a preliminary showing that these documents contain exculpatory or impeaching information in order to compel production under *Brady* or *Giglio*.").

Applying the above principles here, the defendant's motion should be denied. The government has complied with and will continue to comply with its obligations under *Brady* and *Giglio*. To date, the defendant has received extensive discovery from the government. Critically, he has the FLA's tip, the Affidavit, and SA Ford's reports. That he hopes the government has some additional, unspecified material in its possession contradicting these documents does not make it so, and his repeated requests for information that will support his baseless theories does not mean he has "identified information favorable" to his defense in the government's possession. Dkt. No. 137 at 21. Indeed, he has not identified with any specificity what material he is seeking. He has simply identified a statement in the Affidavit that he wishes was false, asserted without any relevant evidence that the government must be withholding information showing it is false, and asked the Court to compel the government to produce all material related to that statement in the hopes of finding some document that proves it to be false. In other words, he is only guessing as to what other material exists, and this guesswork is based on his wishful thinking and a handful of irrelevant documents he found online. For the reasons outlined above, his suspicions about the tip

17

**JA264**

and the Affidavit fail to meet the threshold *Brady* requirement that a defendant provide more than mere speculation as to what favorable evidence the requested information might reveal. *Caro*, 597 F.3d at 619. Since he has "not put forward any non-conclusory arguments as to why the requested discovery would be helpful to the defense," Dkt. No. 73 at 13, his motion should be denied.

**IV.    The Court Does Not Need to Conduct an *In Camera* Review**

The defendant alternatively asks the Court to conduct an *in camera* inspection of any information that falls within his request for discovery related to paragraph 23 of the Affidavit to determine if it includes *Brady* material. Dkt. No. 137 at 20–21 (citing *United States v. Abdallah*, 911 F.3d 201 (4th Cir. 2018)). The Fourth Circuit has explained that in order to trigger an *in camera* review of alleged *Brady* material, a defendant must make a plausible showing that exculpatory material exists and "must identify the requested confidential material [in the government's possession] with some degree of specificity." *Abdallah*, 911 F.3d at 217–18 (internal quotations and citations omitted). In *Abdallah*, the court ordered an *in camera* review because the defendant "identifie[d] specific evidence that could plausibly be favorable to his defense," namely, a specific "email exchange among the law enforcement officers attending Defendant's interrogation, which culminated in the final interrogation report" with substantial inconsistencies. *Id.*; *see also United States v. King*, 628 F.3d 693, 703 (4th Cir. 2011) (discussing *in camera* inspection of grand jury transcript of key witness); *United States v. Trevino*, 89 F.3d 187, 192–93 (4th Cir. 1996) (questioning *in camera* inspection of presentence investigations reports of specific members of conspiracy who testified against defendant); *Love v. Johnson*, 57 F.3d 1305, 1313–15 (4th Cir. 1995) (discussing *in camera* inspection of victim's file maintained by department of social services in rape case). This specificity requirement "ensures that the government's *Brady* obligations do not become unduly burdensome and that the defendant does

18

**JA265**

not conscript the court for a groundless fishing expedition." *Abdallah*, 911 F.3d at 218 (internal quotations and citations omitted); *see also United States v. Zolin*, 491 U.S. 554, (1989) ("There is no reason to permit opponents of the privilege to engage in groundless fishing expeditions, with the district courts as their unwitting (and perhaps unwilling) agents.").

Here, the defendant has made no showing—let alone a plausible one—that his discovery request would uncover exculpatory information. He has provided no facts or evidence to show that the government is in possession of material establishing that the Target IP never accessed child sexual abuse material on the Target Website contrary to the tip. All he has done is speculate. But even if he had made this threshold showing, his motion fails to identify with any degree of specificity what he seeks. He has not identified a specific transcript or file. Instead, and as noted above, he has simply identified a statement in the Affidavit that he wishes was false and has asked the Court to compel the production of all material related to that statement—including, without explanation, unspecified material that would reflect SA Ford's "state of mind"—in the hopes of finding something that proves the tip, the Affidavit, and SA Ford's reports to be false. This request is insufficiently specific to warrant an *in camera* review under controlling precedent, and the defendant's efforts to now conscript the Court to assist in his ongoing fishing expedition for evidence to support his failed challenges to the warrant should be denied.

//

//

//

//

//

//

19

**JA266**

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court deny the

defendant's renewed motion to reconsider is motion to compel discovery.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:    _____/s/_____
William G. Clayman
Special Assistant United States Attorney (LT)
Jay V. Prabhu
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703-299-3700
Fax: 703-299-3981
Email: William.G.Clayman@usdoj.gov

20

**JA267**

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2020, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which automatically generated a Notice of Electronic

Filing to the parties of record.


By:    _____/s/_____
       William G. Clayman
       Special Assistant United States Attorney (LT)
       United States Attorney's Office
       Eastern District of Virginia
       2100 Jamieson Avenue
       Alexandria, Virginia 22314
       (703) 299-3700
       Email: william.g.clayman@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 1:20-cr-00143 |
| | The Honorable Judge Ellis |
| v. | |
| | Pretrial Conference: January 15, 2021 |
| ZACKARY ELLIS SANDERS, | Trial Date: February 9, 2021 |
| Defendant. | |

## RESPONSE TO SHOW CAUSE ORDER

Zackary Ellis Sanders, by and through undersigned counsel, respectfully responds to this Court's Order (ECF No. 152) that he show cause as to why he filed his motion to suppress after the general motions deadline.

Mr. Sanders respectfully submits that there is good cause for the Court to rule on his Motion to Suppress Statements (ECF Nos. 149) on the merits. Most importantly, the Government is not prejudiced by Mr. Sanders's filing—Mr. Sanders's Motion was filed 53 days before the currently scheduled trial date and prior to the motions in limine deadline. There is ample time for Mr. Sanders's Motion to be litigated and ruled upon in advance of trial. Moreover, the Government did not give Mr. Sanders notice of its intent to introduce his statements until it filed its Notice and Amended Notice under Rule 414, which was well after the initial motions deadline. Mr. Sanders then filed his Motion prior to the motions in limine deadline.

Additionally, the interests of justice weigh in favor of permitting Mr. Sanders's Motion to be heard on the merits. This is a very serious case for Mr. Sanders and those who love him, including his parents. Mr. Sanders is just 25 years old. The Government's current plea offer

involves a 15-year mandatory minimum, a sentence that would virtually guarantee that Mr. Sanders would never again see his father (who is 82) except during prison visits, and could very well mean the same for his 63-year-old mother, who is recovering from breast cancer. Given the very serious consequences at stake here, the interests of justice weigh in favor of addressing the violation of Mr. Sanders's constitutional rights, as asserted in his Motion.

In the alternative, Mr. Sanders respectfully requests that the Court construe his Motion, together with his Motion in Limine in Opposition to Government's Amended Notice of Intent to Present Evidence Under Federal Rule of Evidence 414 and the accompanying memorandum (ECF Nos. 153, 154) as a Motion in Limine to Exclude 414 Evidence on Constitutional Grounds. Mr. Sanders is happy to refile his Motion in this fashion.

### PROCEDURAL BACKGROUND

Mr. Sanders was arraigned in this case on July 10, 2020. Minute Entry, July 10, 2020, Dkt. 34. At his arraignment, his counsel noted that Mr. Sanders had a meritorious motion to suppress evidence based on materially misleading statements in the Affidavit in support of the search warrant and requested a briefing schedule on a motion to compel discovery, which this Court granted.

The parties then engaged in extensive briefing on Mr. Sanders's Motion to Compel, which sought material from the Government relevant to the FBI's application for the search warrant for the Sanders' family home. Mr. Sanders filed his Motion to Compel on July 13, 2020. The Government filed its Opposition on July 27, 2020 (ECF No. 41). The defense filed a Reply to the Government's Opposition on July 30, 2020 (ECF No. 45). On July 31, 2020, the Court ordered supplemental briefing from the defense and the Government to be filed on August 10, 2020. Both the defense and the Government submitted supplemental briefing on August 10,

**JA270**

2020 (ECF Nos. 51, 53, 57, 58). On August 12, 2020, the defense filed a Response to the Government's Supplemental Brief (ECF Nos. 60-1, 64). That same day, this Court ordered that the Government could file a response to Mr. Sanders's Response on or before Wednesday, August 19, 2020, at 5:00 p.m. (ECF No. 60).

On August 17, 2020, Mr. Sanders submitted a Motion to Extend Briefing Schedule concerning Defendant's motion to suppress evidence and motion for a *Franks* hearing (ECF No. 66). In that motion, Mr. Sanders noted that the material he sought related to the search warrant for his home was critical for his forthcoming Motion to Suppress and for a *Franks* hearing. The Court granted that motion in part (ECF No. 72). This Court denied Mr. Sanders's Motion to Compel on August 21, 2020, in a sealed Memorandum Opinion (ECF No. 73).

On August 27, 2020, Mr. Sanders filed a Motion to Suppress and for Reconsideration of his Motion to Compel Discovery (ECF No. 75), which was again focused on the suppression of evidence seized from the Sanders' home. The indictment in this case is based entirely on that evidence and subsequent investigation. Pursuant to this Court's Order on his Motion for Leave to File Motion to Suppress in Excess of Thirty Page Limit Under Local Rule 47(F)(3), Mr. Sanders later filed four separate motions with accompanying memoranda to suppress evidence seized from his home, alleging various issues with the search warrant in this case (ECF Nos. 81, 82, 83, 84, 85, 86, 90, 91).

On October 26, 2020, this Court issued a Memorandum Opinion (ECF No. 113) denying Mr. Sanders's Motions to Suppress. That same day, the Court ordered that motions in limine be submitted by November 6, 2020 at 5:00 p.m. (ECF No. 115). On October 28, 2020, Mr. Sanders moved to continue the trial (ECF No. 116), which was set for November 17, 2020. On October 29, 2020, this Court denied that Motion (ECF No. 119). On October 30, 2020, Mr. Sanders filed

3

**JA271**

a renewed unopposed motion to continue the trial (ECF No. 124). That same day, this Court ordered oral argument on the motion to continue for November 6, 2020 (ECF No. 125).

On November 2, 2020, the Government provided Mr. Sanders with notice, for the first time, of its intent to use portions of his statement at trial, by filing its Notice of Intent to Present Evidence Under Federal Rule of Evidence 414 (ECF No. 127). At the November 6, 2020 hearing on the motion to continue, this Court stated that it would continue the trial and extend the motions in limine deadline. This Court further instructed the parties to draft an order reflecting the reasons for the continuance and addressing the Speedy Trial Act. On November 9, 2020, this Court signed an order granting Mr. Sanders's motion to continue the trial and reset the motions in limine deadline to December 18, 2020. ECF No. 131. On November 17, 2020, the Government withdrew its November 2, 2020 notice and filed an Amended Notice of Intent to Present Evidence Under Federal Rule of Evidence 414 (ECF No. 133).

Prior to the Government's Rule 414 notices, the Government had not, in any filing, letter, or otherwise, indicated to Mr. Sanders that it intended to use any portion of his recorded statement at trial.

In advance of this Court's December 18, 2020 deadline for motions in limine, and in opposition to the Government's Amended 414 Notice, Mr. Sanders filed a Motion to Suppress Statements on December 17, 2020. On December 18, 2020, this Court issued an Order (ECF No. 152) that Mr. Sanders show cause by December 28, 2020 by 5:00 p.m. why his counsel filed a Motion to Suppress one hundred and twelve (112) days after the deadline for pretrial motions. This Response timely follows.

4

**JA272**

## ARGUMENT

### I.    There is Good Cause to Consider Mr. Sanders's Motion to Suppress Statements

Mr. Sanders respectfully submits that there is good cause to hear his Motion to Suppress

Statements on the merits, notwithstanding the timing of his motion.  As this Court has

recognized, "[a]lthough motions to suppress must be raised in a timely manner, an untimely

motion may also be considered if the moving party shows good cause."  *United States v. Samuel*,

No. 1:14-CR-351, 2015 WL 1442884, at *3 (E.D. Va. Mar. 26, 2015), *aff'd*, 674 F. App'x 322

(4th Cir. 2017) (citing Fed. R. Crim. P. 12(c)(3)).  *See also United States v. Chavez*, 902 F.2d

259, 262–64 (4th Cir. 1990).

Courts consider the following in determining the existence of good cause: "i) the extent

of the untimeliness, (ii) the reason for late filing, (iii) prejudice to the other party, and (iv)

whether the receipt of additional information after the filing deadline 'alerted defendant to facts

on which a motion to suppress might be based.'"  *Samuel*, No. 1:14-CR-351, 2015 WL 1442884,

at *3 (quoting *United States v. Cross,* 256 F. App'x 623, 627 (4th Cir.2007)).

All of the above factors weigh in favor of finding that there is good cause for the Court to

hear Mr. Sanders's Motion to Suppress Statements.  Though the Motion was filed well after the

motions deadline, it was filed well in advance of the current trial date (53 days) and prior to the

deadline for motions in limine.  In *Chavez*, 902 F.2d 259, the Fourth Circuit found that the

district court abused its discretion in denying the defendant's request for a suppression hearing

just 11 days before trial.  *Id*. at 263-64.  In so doing, the Court stated that it was "not unmindful

of the pressures of pretrial activity, or of the importance of court-imposed deadlines[.]"  *Id*. at

264.

5

**JA273**

The reason for the late filing also weighs in favor of permitting the Motion. The Government did not provide Mr. Sanders with notice that it intended to use any portion of his taped statement until it filed its 414 Notices—well after the motions deadline passed and Mr. Sanders's other Motions to Suppress had been ruled upon. Mr. Sanders then filed his Motion to Suppress Statements on December 17, 2020, in advance of the next court-imposed deadline, which was for motions in limine. In Mr. Sanders's Motion to Suppress Statements, he informed the Court that the Government had not, prior to the 414 notices, given him notice that it intended to use portions of his taped statement, and wrote, "Now that notice has been provided (and in advance of the Motions in Limine deadline), Mr. Sanders respectfully moves this Court to suppress those statements." *See* ECF No. 150 at 2-3.

The Government is not prejudiced by the late filing. Mr. Sanders's Motion was filed 53 days before the current trial date and in advance of the motions in limine deadline. Responses to motions in limine are due on January 8, 2020. This leaves ample time before the February 8, 2020 trial to litigate his Motion. *See Samuel*, No. 1:14-CR-351, 2015 WL 1442884, at *3 ("Most importantly, however, no prejudice to the government resulted from the late filing as it was filed well in advance of the scheduled trial.").

Finally, Mr. Sanders received additional information, in the form of the Government's 414 Notices, between the initial motions deadline and his filing. This, too, weighs in favor of considering Mr. Sanders's Motion on the merits.

The Court should also consider that the equities weigh in favor of addressing Mr. Sanders's Motion on its merits. This case is one with extremely serious potential consequences for Mr. Sanders and his family. Under the Government's proposed plea offer—which necessitates a plea to the lead count, Production of Child Pornography, 18 U.S.C. 2251(A) —Mr.

6

**JA274**

Sanders will spend a mandatory minimum of 15 years in federal prison.  Mr. Sanders is now 25 years old (and was even younger (21 to 23 years old) during the time of the alleged offenses) and has never been *arrested* prior to this case.  His parents, Drs. Jay and Risa Sanders, are 82 and 63 years old, respectively.  If Mr. Sanders were either to accept the Government's plea offer (which the Government has adamantly refused to change) or be convicted at trial, he will likely never see his parents on the outside again.  In addition, a 15-year sentence for a person as young as Mr. Sanders is devastating in other respects, including the inevitable institutionalization that will follow.

The Court's resolution of Mr. Sanders's Motion to Suppress Statements on its merits is especially critical given the clear violation of Mr. Sanders's Fifth Amendment rights.  Law enforcement chose not to read Mr. Sanders his *Miranda* rights before interrogating him for over three hours, under circumstances that are nearly identical to those in *United States v. Hashime*, 734 F.3d 278 (4th Cir. 2013), in which the Fourth Circuit suppressed the defendant's statement and overturned his conviction.

**II.     In the Alternative, Mr. Sanders's Motion to Suppress Statements Should be Construed as a Motion in Opposition to the 414 Notice.**

Alternatively, Mr. Sanders respectfully requests that this Court construe his Motion to Suppress Statements as a Motion in Opposition to the Government's Amended 414 Notice on Constitutional Grounds.  Mr. Sanders is entitled to object to the Government's Rule 414 and Rule 404 notices on constitutional grounds.  *See, e.g., United States v. Jones*, No. 13-30046, 2014 WL 4287279, at *9–10 (C.D. Ill. Aug. 29, 2014) (finding that defendant's agreement not to object to evidence under Rule 404 (b) did not waive any objection on constitutional grounds).  The Government would suffer no prejudice from Mr. Sanders's Motion being construed in this fashion.  Mr. Sanders is happy to re-file his Motion as this Court might direct, if necessary.  He

also consents to an extension of time for the Government to respond, should the Government so request.

## CONCLUSION

For the foregoing reasons, Mr. Sanders respectfully requests that this Court consider his Motion to Suppress Statements on its merits.

Respectfully submitted,

_____/s/_____

Jonathan Jeffress (#42884)

Emily Voshell (#92997)
Jade Chong-Smith (admitted *pro hac vice*)
KaiserDillon PLLC
1099 Fourteenth St., N.W.; 8th Floor—West
Washington, D.C. 20005
Telephone: (202) 683-6150
Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: evoshell@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com

*Counsel for Defendant Zackary Ellis Sanders*

8

**JA276**

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of December, 2020, the foregoing was served electronically on the counsel of record through the U.S. District Court for the Eastern District of Virginia Electronic Document Filing System (ECF) and the document is available on the ECF system.

*/s/ Emily Voshell*
Emily Voshell

9

**JA277**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:20-CR-143 |
| v. | ) | |
| | ) | Honorable T.S. Ellis, III |
| ZACKARY ELLIS SANDERS, | ) | |
| | ) | Trial: February 9, 2021 |
| *Defendant.* | ) | |
| | ) | |

## GOVERNMENT'S POSITION ON THE COURT'S ORDER TO SHOW CAUSE

The United States of America, by and through its attorneys, G. Zachary Terwilliger, United States Attorney for the Eastern District of Virginia, William G. Clayman, Special Assistant United States Attorney (LT), and Jay V. Prabhu, Assistant United States Attorney, hereby submits this filing in response to the Court's Order to Show Cause, Dkt. No. 152, instructing the defendant to show cause as to why he filed his fifth motion to suppress over 100 days after the Court's deadline for filing pretrial motions.   Based on the additional information set forth below, the defendant's response to the Court's Order, Dkt. No. 177, fails to demonstrate good cause as to why he ignored this Court's pretrial motions deadline and the Court should strike the defendant's motion with prejudice as untimely filed.

## BACKGROUND

On February 12, 2020, law enforcement executed a federal warrant to search the defendant's home in McLean, Virginia.   The defendant was interviewed in his home by two law enforcement agents during the search and, after consulting with his mother during the interview, made admissions regarding his online child-pornography-related activity.   Based on the evidence obtained during the search, the defendant was charged by criminal complaint with production of

**JA278**

child pornography on March 19, 2020. The affidavit in support of the complaint references the defendant's statements during his interview with law enforcement regarding his child-pornography-related activity on the dark web and his possession of such material on external storage devices. Dkt. No. 4 at ¶ 11. Following his arrest, the government provided the defendant with discovery materials. Specifically, on April 29, 2020, the government shared with the defendant a copy of the search warrant materials and a recording of his interview with law enforcement during the search of his home.

A federal grand jury in the Eastern District of Virginia returned a 12-count indictment against the defendant on June 24, 2020, charging him with production, receipt, and possession of child pornography. Dkt. No. 29. On July 7, 2020, the government produced additional discovery material to the defendant, including reports and documents prepared by the Federal Bureau of Investigation related to the search, as well as an additional copy of the defendant's recorded interview. At his arraignment on July 10, 2020, the defendant advised the Court that he intended to file a motion to compel and asked the Court to set a hearing on that motion for July 31, 2020. The Court granted the defendant's request, and set the deadline to file all other pretrial motions as August 20, 2020, with a hearing on any pretrial motions scheduled for September 11, 2020, and a trial date set for November 17, 2020. Dkt. No. 34.

The defendant filed a motion to compel discovery on July 13, 2020. Dkt. No. 37. After the motion was fully briefed, the Court heard argument on July 31, 2020. Dkt. No. 49. Then, after receiving simultaneously filed supplemental briefing on the motion and granting the defendant's request to file a response to the government's supplemental brief, the Court denied his motion to compel on August 21, 2020. Dkt. No. 74. Additionally, shortly before ruling on the motion, the

**JA279**

Court granted in part the defendant's motion to extend the deadline to file pretrial motions, extending that deadline from August 20, 2020, to August 27, 2020.  Dkt. No. 72.

On August 27, 2020, the defendant simultaneously filed an approximately 80-page motion to suppress and a motion for leave to exceed the 30-page limit set in Local Rule 47(F)(3) in his motion to suppress.  Dkt. Nos. 75 & 77.  The Court struck the defendant's motion to suppress for exceeding the page limit set by the local rules but granted in part his motion for leave to exceed the 30-page limit, allowing him to refile his motion with a 40-page limit on or before September 2, 2020.  Dkt. No. 80.  On September 2, 2020, the defendant filed four separate motions to suppress, totaling over 90 pages of briefing, as well as a motion to reconsider his motion to compel.  Dkt. Nos. 81, 83, 85, 88, & 90.  Despite having already received the recording of his interview and the reports and documents regarding the search of his home, at no point in his stricken motion or his four refiled motions to suppress did the defendant argue that his interview was custodial or that his statements to law enforcement were made involuntarily.  Instead, his motions focused on the validity of the search warrant.

Following extensive briefing and a motions hearing, the Court denied the defendant's motions to suppress on October 26, 2020.  Dkt. Nos. 113 & 114.  Two days later, the defendant filed a motion to continue the November 17, 2020, trial date, representing that he could not prepare for trial while his suppression motions were pending.  Dkt. No. 116.  After the Court denied this motion, Dkt. No. 199, the defendant refiled his motion to continue the trial date, representing that he needed additional time to review discovery and prepare for trial in light of complications caused by COVID-19.  Dkt. No. 124.  On November 2, 2020, the government filed its expert notice and its notice pursuant to Federal Rule of Evidence 414 in advance of the November 17, 2020, trial date.  Dkt. Nos. 126 & 127.  The Court granted the defendant's motion to continue the trial date

3

**JA280**

on November 6, 2020, finding that a continuance was warranted given the amount of contraband forensic evidence in this case and the defendant's difficulties meeting with his counsel because of COVID-19, and rescheduled the trial for February 9, 2021. Dkt. No. 128; *see also* Dkt. No. 130.

After the Court continued the trial to allow the defendant additional time to review evidence and consult with counsel, the defendant filed a renewed motion to compel on November 27, 2020, Dkt. No. 135, and a supplement to the motion on December 5, 2020. Dkt. No. 138. Then, on December 17, 2020, one day before the deadline to file motions *in limine*, he filed his fifth motion to suppress, arguing for the first time that the statements he made to law enforcement during the search of his home should be suppressed. Dkt. Nos. 149 & 150. Although the pretrial motions deadline had lapsed months prior after being twice continued to accommodate the defendant, he did not seek leave of the Court to file this untimely motion. On December 18, 2020, the Court filed an Order, instructing the defendant to show cause by December 28, 2020, as to why he filed his motion to suppress 112 days after the deadline to file pretrial motions. Dkt. No. 152.

On December 23, 2020, the defendant filed a response to the Court's Order, alleging that he was not aware of the government's intent to use his statements until it filed its notice under Federal Rule of Evidence 414 and arguing that he believed the motion could be resolved in advance of the trial date. Dkt. No. 177. Alternatively, the defendant requests that the Court construe his untimely motion to suppress as an opposition to the government's notice pursuant to Rule 414. *Id.*

## ARGUMENT

"Under Fed. R. of Crim. P. 12, motions to suppress must be filed prior to trial or by the deadline established by the court." *United States v. Lester*, 311 F. App'x 660, 660 (4th Cir. 2009) (unpublished per curiam); *see* Fed. R. Crim. P. 12(b)(3)(C), 12(c). "A defendant waives the right to file a suppression motion if he fails to file the motion prior to the time set by the district court,

4

**JA281**

unless he can establish good cause for the waiver." *Lester*, 311 F. App'x at 600 (citing Fed. R. Crim. P. 12(e)). Factors this Court and others have considered in determining whether a defendant has shown good cause for filing an untimely motion to suppress include "the extent of the untimeliness," "the reason for the late filing," the prejudice caused by the late filing, and whether information after the filing deadline alerted the defendant to facts on which a motion to suppress might be based. *United States v. Samuels*, 1:14-cr-351 (E.D. Va.), 2015 WL 1442884, at *3 (E.D. Va. March 26, 2015) (citing *United States v. Cross*, 265 F. App'x 623, 627 (4th Cir. 2007)). Importantly, however, "[e]ven if the defendant did not know all of the information establishing the basis for a claim, the court will not excuse a forfeiture if the defendant, by due diligence, could have or should have discovered the basis for the claim." *United States v. Ruhe*, 191 F.3d 376, 386 (4th Cir. 1999).

Here, the defendant cannot show good cause to excuse his over-100-day delay in moving to suppress his statements. As the memorandum in support of his untimely motion makes clear, both the defendant and his mother have been intimately familiar with the circumstances surrounding his interview with law enforcement since it occurred in February 2020. *See* Dkt. No. 150. The fact that he was interviewed by law enforcement and the substance of some of the inculpatory statements he made during the interview were included in the affidavit in support of the criminal complaint, and a recording of this interview was provided to defense counsel in April as part of the government's discovery materials. Another copy of the recording was provided to defense counsel in July as part of a post-indictment discovery production, along with documents and reports related to the search and interview. In other words, since the very early stages of this case, he has possessed all the information and evidence needed to move to suppress his statements prior to the Court's extended pretrial motions deadline. He did not do so, choosing instead to

5

**JA282**

prioritize his challenges to the affidavit in support of the search warrant in pretrial litigation.[1] Accordingly, the arguments in the defendant's fifth, untimely motion to suppress should be treated as waived and the Court should strike his motion with prejudice.

Importantly, the defendant does not—and cannot—claim that the government withheld his statements to law enforcement or any evidence that prevented him from filing his fifth motion to suppress. Instead, he advances two theories to justify the months-long delay in his filing: (1) despite the government repeatedly producing the interview to him and relying on it in the affidavit in support of the criminal complaint, he did not realize the government intended to rely on his statements to law enforcement until the government filed its notice pursuant to Rule 414; and (2) he filed his untimely motion prior to the trial date, which was moved at his request to February 9, 2021. Dkt. No. 177 at 6.[2] Neither of these arguments establish good cause for his failure to comply with the Court's pretrial motions deadline, which the Court already extended to accommodate him.

The defendant's suggestion that he was unaware of the government's intention to rely on his statements to law enforcement until the filing of the Rule 414 notice is belied by the background above, which shows that the government repeatedly produced discovery related to the defendant's interview well in advance of the pretrial motions deadline and described the inculpatory nature of the statements he made in the affidavit in support of the criminal complaint. In any event, as the Fourth Circuit has explained, "[d]efendants are subject to a due diligence standard" when

---

[1] To be sure, after the Court struck the defendant's approximately 80-page motion to suppress and instructed him to file a motion that does not exceed 40 pages, the defendant filed four separate motions to suppress that resulted in more than twice the permitted page limit in total briefing. Despite greatly exceeding the permitted page limit, the defendant did not raise any of the suppression arguments now raised in his fifth, untimely suppression motion.

[2] The defendant's response to the Court's Order also discusses the sentence he will face if convicted and his family life, neither of which explain nor justify his failure to comply with the Court's pretrial motions deadline. *See* Dkt. No. 177.

6

determining whether to file a pretrial motion to suppress. *United States v. Ruhe*, 191 F.3d 376, 386 (4th Cir. 1999). This means that "[e]ven if the defendant did not know all of the information establishing the basis for a claim, the court will not excuse a forfeiture if the defendant, by due diligence, could have or should have discovered the basis for a claim." *Id.* Thus, his suggestion that he simply did not realize that his recorded statements to law enforcement regarding his child-pornography-related activity could be used at trial is insufficient to establish good cause for his now months-late motion to suppress those statements.

Particularly instructive on this point is *United States v. Chavez*, 902 F.2d 259, 263 (4th Cir. 1990), which the defendant cites on page five of his response to the Court's Order. Dkt. No. 177 at 5. In *Chavez*, 902 F.2d at 261, the defendant was prevented from questioning a search warrant affiant about the reliability of an informant at a pretrial hearing. Eleven days before trial, the defendant received a copy of the affiant's grand jury testimony that provided a basis to question the informant's reliability. *Id.* at 262. Based on this newly produced testimony, the defendant immediately requested leave to file an untimely motion to suppress. *Id.* The Fourth Circuit found that the defendant should have been permitted to file his untimely motion because the "tardiness was due . . . to the fact that the government did not turn over the grand jury transcript . . . until one day before the filing." *Id.* at 263–64. Here, unlike in *Chavez*, the defendant had all the information needed to file his fifth motion to suppress in a timely manner but failed to do so. *See Cross*, 256 F. App'x at 628 (distinguishing *Chavez* on similar grounds); *Ruhe*, 191 F.3d at 386–87 (same). The defendant has not identified any case, nor is the government aware of one, in which a defendant in his position—a defendant who had all the relevant discovery needed for a potential motion to suppress upwards of four months before the pretrial motions deadline—was permitted to file a motion to suppress over 100 days after the pretrial motions deadline.

**JA284**

Last, the defendant asserts that this Court should consider his untimely motion because he filed it before the trial.  Dkt. No. 177 at 6.  As an initial matter, it is worth noting that the Court continued the November 2020 trial date to February 9, 2021, based on the defendant's representations that his ability to prepare for trial had been hampered by his difficulty meeting with defense counsel at the Alexandria Detention Center and reviewing evidence due to COVID-19.  Dkt. No. 124.  Since the Court granted his request for a continuance, the defendant has filed, among other things, a renewed motion to reconsider his motion to compel and an untimely motion to suppress, both of which could have been filed moths prior.  Moreover, he filed his untimely motion to suppress the day before the Court's deadline to file motions *in limine* and other trial-related materials.  The government is now in the process of responding to the defendant's motions *in limine* and is engaged in trial preparation involving multiple out-of-state witnesses and victims during an unprecedented pandemic.  Accordingly, and contrary to his claims in his response to the Court's Order, permitting the defendant to flout the Court's twice-extended pretrial motions deadline to litigate yet another motion to suppress that he should have filed months ago would indeed prejudice the government.

//

//

//

//

//

//

//

//

8

**JA285**

## **CONCLUSION**

For the foregoing reasons, the government submits that the defendant has not demonstrated

good cause as to why he failed to file his fifth motion to suppress before this Court's pretrial

motions deadline and respectfully requests that the Court strike the defendant's untimely motion.


Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:        /s/
     William G. Clayman
     Special Assistant United States Attorney (LT)
     Jay V. Prabhu
     Assistant United States Attorney
     United States Attorney's Office
     2100 Jamieson Avenue
     Alexandria, Virginia 22314
     Phone: 703-299-3700
     Fax: 703-299-3981
     Email: William.G.Clayman@usdoj.gov

9

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 29, 2020, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which automatically generated a Notice of Electronic

Filing to the parties of record.

By: _____/s/_____
    William G. Clayman
    Special Assistant United States Attorney (LT)
    United States Attorney's Office
    Eastern District of Virginia
    2100 Jamieson Avenue
    Alexandria, Virginia 22314
    (703) 299-3700
    Email: william.g.clayman@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | **Criminal Action No. 1:20-cr-143** |
| | ) | |
| **ZACKARY ELLIS SANDERS,** | ) | |
| Defendant. | ) | |

**ORDER**

At issue pretrial in this twelve-count criminal prosecution for production, receipt, and possession of child pornography is whether defendant has shown good cause to excuse the late filing of his fifth motion to suppress, which was late by more than one hundred days after the deadline for filing such motions. Given the extreme tardiness of the motion, an Order to show cause for the delay was issued. Defendant filed briefing in response, and the government filed a reply. Because the matter has been fully briefed and because the facts and legal contentions are clear from the record, oral argument is unnecessary and would not aid the decisional process. Accordingly, the matter is ripe for disposition. For the reasons that follow, defendant has failed to show good cause for his tardy motion, and defendant's motion to suppress must therefore be denied.

**I.**

On February 10, 2020, Magistrate Judge John F. Anderson authorized a search warrant for defendant's residence. Two days later, on February 12, 2020, law enforcement agents executed the search warrant. During the execution of the search warrant, defendant spoke with law enforcement in a recorded interview. On March 19, 2020, the government filed a criminal complaint charging defendant with production of child pornography and used defendant's statements in his February 12 interview as part of the affidavit in support of the criminal complaint. In April 2020, the

1

**JA288**

government provided the recording of the interview, along with other discovery, to defense counsel. On June 24, 2020, a twelve-count indictment was returned, charging defendant with:

> (i) five counts of production of child pornography, in violation of 18 U.S.C. § 2251(a) and § 2251(e),
>
> (ii) six counts of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2) and § 2252(b)(1), and
>
> (iii) one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and § 2252(b)(2).

Indictment, at 2-4 (Dkt. 29).

On July 10, 2020, defendant appeared with counsel before the Court for his arraignment. At the time of arraignment, the deadline for pretrial motions was originally set for August 20, 2020. On August 20, 2020, the Court granted in part defendant's motion for extension of briefing schedule, extending the deadline for pretrial motions to August 27, 2020. *See United States v. Sanders*, Case No. 1:20-cr-143 (E.D. Va, August 20, 2020) (Order). On August 27, 2020, defendant, by counsel, simultaneously filed an eighty (80) page motion to suppress (Dkt. 75) and a motion for leave to exceed the thirty (30) page limit set by Local Criminal Rule 47(F)(3) (Dkt. 77). The latter motion was granted in part, allowing defendant to refile his motion within a forty (40) page limit. *See United States v. Sanders*, Case No. 1:20-cr-143 (E.D. Va, August 28, 2020) (Order). On September 2, 2020, defendant, by counsel, filed four separate motions to suppress, with memoranda in support totaling over ninety (90) pages (Dkt. 81, 83, 85, 90). Following oral argument, defendant's motions to suppress were denied. *See United States v. Sanders*, Case No. 1:20-cr-143 (E.D. Va, October 26, 2020) (Memorandum Opinion and Order).

On December 17, 2020, defendant filed, by counsel, the instant motion to suppress, his

fifth, one hundred and twelve (112) days after the deadline for pretrial motions (Dkt. 149).[1] Defendant also requested an evidentiary hearing. Defendant's fifth motion to suppress raises an argument not mentioned in his previous four motions, namely that defendant's statements in his interview with law enforcement should be suppressed because the interview was a custodial interrogation in which defendant was not given *Miranda* warnings. Given the tardiness of this fifth motion to suppress, an Order issued on December 18, 2020 requiring defendant to show cause as to why defendant filed his motion one hundred and twelve days after the deadline for pretrial motions. *See United States v. Sanders*, Case No. 1:20-cr-143 (E.D. Va, December 18, 2020) (Order).

## II.

Where, as here, a deadline has been set by the Court for filing pretrial motions, motions to suppress must be filed by that deadline. *See* Fed. R. Crim. P. 12(b)(3), 12(c). As the Fourth Circuit has made clear, "[a] defendant waives the right to file a suppression motion if he fails to file the motion prior to the time set by the district court, unless he can establish good cause for the waiver." *United States v. Lester*, 311 F. App'x 660, 660 (4th Cir. 2009). In determining whether a defendant has established good cause for filing an untimely motion to suppress, courts generally consider "(i) the extent of the untimeliness, (ii) the reason for late filing, (iii) prejudice to the other party, and (iv) whether the receipt of additional information after the filing deadline 'alerted defendant to facts on which a motion to suppress might be based.'" *United States v. Samuel*, Case No. 1:14-cr-351, 2015 WL 1442884, at *3 (E.D. Va. Mar. 26, 2015), aff'd, 674 F. App'x 322 (4th Cir. 2017) (quoting *United States v. Cross*, 256 F. App'x 623, 627 (4th Cir. 2007)). Here, each of the four

---

[1] Earlier, on November 27, 2020, defendant filed a renewed motion to compel. On December 18, 2020, the day after filing his tardy fifth motion to suppress, defendant filed three motions *in limine* with the Court.

3

factors point persuasively to the conclusion that defendant has failed to establish good cause for filing an untimely motion to suppress.

Defendant's fifth motion to suppress was filed more than three months after the deadline for pretrial motions. Although the motion to suppress was filed fifty-three (53) days before the current trial date, the motion, along with defendant's request for an evidentiary hearing, would be all but certain to delay the current trial date given the difficulties surrounding travel and courtroom procedures during the Covid-19 pandemic. Nor does defendant escape the weight of this factor by noting that defendant has recently tested positive for Covid-19, potentially necessitating a trial continuance in and of itself. Defendant's positive diagnosis would complicate the scheduling of any evidentiary hearing and manufacture further delay. In short, defendant's motion to suppress was not only filed over a hundred days late, but also is likely to delay the trial, which has already been continued on defendant's motion.

Additionally, defendant provides no adequate or persuasive reason for the more than three month late filing of his fifth motion to suppress. In this respect, defendant claims that he is filing his tardy fifth motion to suppress now because the government recently gave notice of its intent to use portions of defendant's taped statements at trial. This does not justify defendant's extraordinarily late filing. The inculpatory nature of the recording is apparent on its face, and it should have been clear to defense counsel that defendant's statements could be used at trial. In fact, the fact of defendant's interview with law enforcement and the substance of some of defendant's statements in that interview were included in the affidavit in support of the criminal complaint. *See* Aff. in Supp. of Crim. Compl., ¶ 11 (Dkt. 4). Moreover, the recording of the interview was provided to defense counsel in April 2020. Accordingly, long before the deadline for pretrial motions, defendant had the materials to know that the government had defendant's

4

**JA291**

recorded statements and could use them at trial. Indeed, it appears that defense counsel considered the possibility and made a strategic decision not to challenge the voluntariness of the interview. Defendant admits as much when he concedes in his reply brief that "the defense concluded that Mr. Sanders's statements were not admissions related to any of the charges filed in the indictment." Def. Reply, at 3 (Dkt. 174). This conclusion was clearly incorrect and unwarranted, particularly given the government's reliance on those statements in support of the criminal complaint. In other words, defense counsel made a judgment to focus on the validity of the search warrant—the focus of his four previous motions to suppress—rather than the voluntariness of defendant's taped statements. Defense counsel's strategic decision to forego challenging the voluntariness of the interview does not constitute good cause for extending the deadline for pretrial motions by one hundred and twelve days.[2]

Furthermore, defendant's untimely fifth motion to suppress appears likely to prejudice the government. Defendant filed his tardy fifth motion to suppress more than three months late, only one day before the deadline for motions *in limine* and fifty-three (53) days before the current trial date. Allowing defendant to proceed with his untimely motion is thus likely to prejudice the government, which is in the midst of responding to defendant's motions *in limine* and preparing for trial. Moreover, requiring the government to respond to defendant's tardy motion and prepare for an evidentiary hearing would require the government to arrange for the attendance of witnesses at the hearing, potentially including travel to and lodging in the Eastern District of Virginia during the pandemic. Moreover, denial of defendant's motion is unlikely seriously to prejudice defendant. Although defendant's statements to law enforcement will not be suppressed, this does not preclude

---

[2] *See United States v. Ruhe*, 191 F.3d 376, 386 (4th Cir. 1999) ("Defendants are subject to a due diligence standard. Even if the defendant did not know all of the information establishing the basis for a claim, the court will not excuse a forfeiture if the defendant, by due diligence, could have or should have discovered the basis for the claim.").

5

defendant from presenting evidence at trial about the allegedly coercive atmosphere of defendant's interview with law enforcement and the voluntariness of defendant's statements, nor does it preclude defendant from challenging the inclusion of defendant's statements under any applicable rule of evidence.[3]

Finally, defendant provides no plausible argument that he received new information that alerted him to facts on which the motion to suppress could be based. As discussed above, all of the information necessary for defendant's fifth motion to suppress was known to defendant prior to the government's notice that it intends to use portions of defendant's recorded statements at trial. Indeed, defendant's tardy motion to suppress rests on the recollections of defendant and his family members, who have been available to defense counsel at all times. Because defendant's statements were clearly inculpatory, defendant knew when he was originally provided with his statements in April 2020 that his statements could be used at trial. Although defense counsel may have found the likelihood of the government using defendant's recorded statements improbable and thus chose not to file the instant motion to suppress prior to the deadline for pretrial motions, defense counsel's judgment to forego raising the motion in a timely manner is not good cause for allowing defendant's untimely fifth motion to suppress to proceed.

In conclusion, defendant's motion to suppress must be denied as untimely.

---

[3] *See* 18 U.S.C. § 3501(a) ("If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances."). *See also Crane v. Kentucky*, 476 U.S. 683, 691 (1986) ("[E]vidence about the manner in which a confession [or otherwise inculpatory statement] was obtained is often highly relevant to its reliability and credibility.").

6

**JA293**

Accordingly.

It is hereby **ORDERED** that defendant's Motion to Suppress (Dkt. 149) is **DENIED AS**

**UNTIMELY**.

The Clerk is directed to provide a copy of this Order to all counsel of record.

Alexandria, Virginia
January 7, 2021

/s/

T. S. Ellis, III
United States District Judge

7

**JA294**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:20-CR-143 |
| v. | ) | |
| | ) | Honorable T.S. Ellis, III |
| ZACKARY ELLIS SANDERS, | ) | |
| | ) | Trial: February 9, 2021 |
| *Defendant.* | ) | |
| | ) | |

**UNITED STATES' RESPONSE TO THE DEFENDANT'S MOTION *IN LIMINE* IN
OPPOSITION TO NOTICE PURSUANT TO FEDERAL RULE OF EVIDENCE 414**

The United States of America, by and through the undersigned counsel, hereby files this

response to the defendant's motion and supporting memorandum opposing the government's

notice to present evidence pursuant to Federal Rule of Evidence 414. Dkt. Nos. 153 and 154. For

the reasons stated below and in the government's motion *in limine* for an order on the admissibility

of evidence pursuant to Federal Rules of Evidence 404(b) and 414, *see* Dkt. No. 165, the

government respectfully requests that the Court deny the defendant's motion.

**BACKGROUND**

The defendant has been charged in a 12-count indictment with production, receipt, and

possession of child pornography. Dkt. No. 29. On November 17, 2020, the government notified

the defendant of its intent to introduce certain evidence of the defendant's uncharged child

molestation offenses pursuant to Federal Rule of Evidence 414. Dkt. No. 133. The evidence is

statements the defendant made in a voluntary interview with law enforcement during the search of

his home regarding his prior acts of receiving child pornography using a mobile messaging

application, accessing websites on the dark web to view child pornography, and downloading and

storing child pornography from the internet. *Id.* at 4.

**JA295**

On December 18, 2020, the government filed a motion *in limine* to introduce certain evidence pursuant to Federal Rules of Evidence 404(b) and 414, namely the statements referenced in the Rule 414 Notice. Dkt. No. 165. In the motion, the government argues that the defendant's admissions to these other acts: (1) should be admitted as evidence that is intrinsic to the charged offense of possession of child pornography; (2) should be admitted as evidence under Rule 414 because they constitute other acts of child molestation that are relevant and similar to the charged conduct; and (3) should be admitted as evidence under Rule 404(b) because they are relevant, reliable, and not unfairly prejudicial. *Id.* at 2–15.

Also on December 18, 2020, the defendant filed a motion *in limine* and memorandum opposing the government's Rule 414 Notice. Dkt. Nos. 153 and 154. He seeks to exclude the evidence noticed in the government's Rule 414 Notice, arguing: (1) that the Rule 414 Notice does not specifically identify his statements the government may introduce; (2) that the other child molestation offenses are not sufficiently similar or close enough in time to the charged conduct, and that his own admissions are unreliable; (3) that his admissions do not prove the uncharged conduct by a preponderance of the evidence; and (4) that his admissions are unfairly prejudicial. Dkt. No. 154 at 2–6. For the reasons below and in the government's motion *in limine*, Dkt. No. 165, the defendant's motion should be denied.

## ARGUMENT

At trial, the government anticipates seeking to introduce evidence related to the statements and admissions the defendant made to law enforcement in a recorded interview during the search of his home. This evidence will come in the form of testimony from a special agent with the Federal Bureau of Investigation, as well as excerpts of the recorded interview. The testimony and excerpts will include portions of the interview in which the defendant: (1) admits that, as a teenager, he received child pornography images and "some Dropbox things" containing child

2

**JA296**

pornography over a mobile messaging application known as Kik, *see* Ex. 1; (2) admits to using the internet, via a dark web network known as The Onion Router or "Tor," to navigate to websites containing child pornography and downloading a file from a child pornography website containing "multiple files" to his computer, *see* Ex. 2; (3) admits that, about a month before the interview, he moved the child pornography files to a flash drive from his laptop, which had been retrieved for him during the interview to show law enforcement the websites he visited, *see* Ex. 3; and (4) admits that after receiving child pornography via Kik when he was younger, he decided to access websites on Tor because he was "curious" to see the child pornography available, *see* Ex. 4.[1]

## I.    The Evidence of the Defendant's Other Online Child Molestation Offenses Satisfies Rule 414's Prerequisites for Admission

The defendant does not appear to dispute that the proffered evidence satisfies the baseline prerequisites for admission under Rule 414, nor could he.  The defendant has been charged with child molestation offenses as defined by Federal Rule of Evidence 414(d)(2)(B), so the government may introduce evidence of the defendant's other child molestation offenses under Rule 414.  Further, the proffered Rule 414 evidence qualifies as other child molestation offenses because the defendant's prior instances of receiving and accessing child pornography online via Kik, accessing Tor websites in order to view child pornography, and downloading child pornography from Tor qualify as crimes under chapter 110 of Title 18 of the U.S. Code.  Fed. R. Evid. 414(d)(2)(B).

---

[1] While the defendant asserts that the government's Rule 414 Notice was too general to know what statements the government intends to introduce, he proceeds to argue in his motion why the specific statements he made regarding his use of a mobile messaging application to receive child pornography should not be admitted at trial.  Dkt. No. 154 at 2–4.  In any event, the government has now identified specific portions of the defendant's recorded interview it anticipates introducing at trial as Rule 414 evidence.

3

**JA297**

Finally, the proffered Rule 414 evidence is relevant because it provides context for how the defendant amassed the child pornography he possessed and demonstrates his long-standing interest in child pornography, which underscores that he is the one who produced, received, and possessed child pornography as charged in the indictment. Fed. R. Evid. 414(a) ("The evidence may be considered on any matter to which it is relevant."); Fed. R. Evid. 401 ("Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."). Indeed, the similarities between the charged conduct—using mobile messaging applications to coerce minors to produce child pornography, receiving that child pornography, and possessing child pornography—and the uncharged conduct from the Rule 414 Notice—receiving child pornography over a mobile messaging application and accessing and downloading child pornography from the internet—give rise to a presumption of admissibility. *See Johnson v. Elk Lake School Dist.*, 283 F.3d 138, 156 (3d Cir. 2002).

## II.    The Evidence of the Defendant's Other Online Child Molestation Offenses Satisfies the *Kelly* Factors

The defendant dedicates the bulk of his motion to arguing that the proffered Rule 414 evidence does not satisfy the Rule 403 balancing test set forth in *United States v. Kelly*, 510 F.3d 433 (4th Cir. 2007). Dkt. No. 154 at 3–5. As the government explained in its motion in *limine*, Dkt. No. 165 at 7–8, in the Fourth Circuit, courts are to engage in a specialized Rule 403 analysis of Rule 414 evidence by considering at least the following five factors: "(i) the similarity between the previous offense and the charged crime, (ii) the temporal proximity between the two crimes, (iii) the frequency of the prior acts, (iv) the presence or absence of any intervening acts, and (v) the reliability of the evidence of the past offense." *Kelly*, 510 F.3d at 437. Contrary to the

4

**JA298**

defendant's arguments, these factors overwhelmingly support admitting the evidence related to the defendant's other online child molestation offenses.

The defendant first argues that the other child molestation offenses are not sufficiently similar to the charged offenses because the two categories of offenses might involve different types of child pornography and because his charged conduct does not involve the use of Tor. Dkt. No. 154 at 3–4. As an initial matter, the proffered Rule 414 evidence involves admissions that the defendant received images depicting "sexual things happening" with "boys," which is, indeed, very similar to the child pornography at issue in the indictment. Moreover, the defendant's focus on Tor misses the point. At base, the uncharged child molestation offenses involve the defendant's use of the internet to access, receive, and possess child pornography. That is precisely what the defendant is charged with doing here. In fact, the only meaningful difference between the charged conduct and the prior conduct is that he is now actively soliciting child pornography from minors as opposed to seeking out pre-existing child pornography. Thus, "the similarity between the previous offense and the charged crime," *Kelly*, 510 F.3d at 437, weighs heavily in favor of admission, *see United States v. Rice*, 347 F. App'x 904, 906 (4th Cir. 2009) (holding that prior acts evidence was similar enough for admission in child pornography trial where prior acts involved "showing [a victim] child pornography, as well as taking pictures of [the victim's] genitalia"); *United States v. Majeroni*, 784 F.3d 72, 76–77 (1st Cir. 2015) ("The fact that the prior conduct was similar to the charged conduct enhanced its presumed probativeness.").

The defendant next argues that the temporal proximity between the charged conduct and the other child molestation offenses does not warrant admissibility. Dkt. No. 154 at 4. The relevant precedent shows that not to be the case. The defendant is charged with receiving child pornography on various dates from 2017 through 2020, and possessing child pornography in

5

**JA299**

February 2020. Dkt. 29, at 3–4. The defendant admitted in his interview that he received child pornography through mobile messaging applications when he was around 14 years' old, and that he had moved the child pornography he obtained from Tor on his laptop to an external drive as recently as a month before the interview, which was in February 2020. Thus, the uncharged Rule 414 conduct spans roughly twelve years, all the way through and including the charged timeframe. The Fourth Circuit and other courts have affirmed admitting Rule 414 evidence that occurred decades before the charged crimes. *See United States v. Mason*, 532 F. App'x 432, 437 (4th Cir. 2013) (admitting decades-old evidence of molestation in child pornography trial); *Kelly*, 510 F.3d at 437 (finding a 22 year intervening period did not render the prior acts inadmissible); *United States v. Emmert*, 825 F.3d 906, 909 (8th Cir. 2016) (finding a 20 year intervening period to be acceptable); *United States v. Carino*, 368 F. App'x 929, 929 (11th Cir. 2010) (admitting, in child pornography trial, decades-old evidence that the defendant molested his younger sister when he was 16); *United States v. Eiker*, 2:17-CR-72 (MSD) 2017 WL 6459510, at *3 (E.D. Va. Dec. 18, 2017) (noting that "the intervening period between alleged prior acts and the instant charges— somewhere between eleven and twenty-one years—does not render the prior acts inadmissible").

Third and fourth, "the frequency of the prior acts," and "the presence or absence of any intervening acts" cut in favor of admission. There is no evidence of intervening acts that would render this evidence less probative or reliable. And even if these were only occasional instances of prior conduct on the part of the defendant, that does not undercut the probity of the evidence.

The defendant last argues that the evidence of his prior online child molestation offenses is not reliable because there is no jury finding of guilt. Dkt. No. 154 at 6. As many courts have recognized, however, uncharged conduct is admissible under Rule 414. *See, e.g.*, *United States v. Lewis*, 318 F. App'x 1, 1 (D.C. Cir. 2009) (finding defendant's uncharged possession of child pornography admissible under Rule 414 in prosecution for attempted coercion and enticement of a

6

**JA300**

minor); *United States v. McHorse*, 179 F.3d 889, 898 (10th Cir. 1999) (noting that "clearly under Rule 414 the courts are to liberally admit evidence of prior uncharged sex offenses." (internal quotation marks omitted)).  Moreover, the defendant himself admitted to these acts.  In fact, as the evidence will make clear, the defendant asked for his laptop during his interview, showed law enforcement sites he accessed on Tor to view child pornography, and provided law enforcement with his credentials to log in to a child pornography site.  That the forensic examination established that the defendant did indeed have a collection of child pornography underscores the reliability of his admissions and proves that he engaged in this prior conduct by a preponderance of the evidence.

III.    **The Evidence of the Defendant's Other Online Child Molestation Offenses Is Not Unfairly Prejudicial**

The defendant last hypothesizes that the proffered Rule 414 evidence is unfairly prejudicial because the government may seek to introduce evidence about the kinds of "egregious content" on the child pornography websites he admitted to accessing.  As noted above, however, the government intends to introduce evidence that focuses on the defendant's admissions during the voluntary interview.  The government does not intend to introduce testimony about the many horrific depictions of child sexual abuse on the websites the defendant admitted to accessing. Moreover, while all Rule 414 evidence carries some inherent prejudice, courts have repeatedly held that it is the type of prejudice contemplated by Congress and thus should not be considered unfair prejudice under Rule 403.  *See Rice*, 347 F. App'x at 906 (noting that "past sexual abuse [evidence] was certainly prejudicial to Rice's defense, it was not *unfairly* prejudicial.  Instead, 'it was prejudicial for the same reason it is probative-' it tends to prove that Rice has a deviant sexual attraction towards children" (quoting *Kelly*, 510 F.3d at 438) (emphasis in original)).  Finally, where, as here, the Rule 414 evidence is so similar to the crimes charged, courts have found that the evidence adds little marginal prejudice.  *See Eiker*, 2017 WL 6459510, at *3 (noting that "while

7

**JA301**

the prior acts here are clearly disturbing, they do not have a strong danger of causing unfair prejudice because they concern similar types of sexual exploitation to those for which Defendant has been charged").

## CONCLUSION

For the reasons stated above, the United States respectfully requests that the Court deny the defendant's motion *in limine*.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:      _____/s/_____
William G. Clayman
Special Assistant United States Attorney (LT)
Jay V. Prabhu
Assistant United States Attorney
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: 703-299-3700
Fax: 703-299-3981
Email: william.g.clayman@usdoj.gov

8

**JA302**

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which automatically generated a Notice of Electronic Filing to the parties of record.

By: _____/s/_____

William G. Clayman
Special Assistant United States Attorney (LT)
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: 703-299-3700
Fax: 703-299-3981
Email: william.g.clayman@usdoj.gov

9

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 1:20-cr-00143 |
| | The Honorable Judge Ellis |
| v. | |
| | Pretrial Conference: April 9, 2021 |
| ZACKARY ELLIS SANDERS, | Trial Date: April 26, 201 |
| Defendant. | **EVIDENTIARY HEARING** |
| | **REQUESTED** |

**OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE
TO INTRODUCE EVIDENCE PURSUANT TO
<u>FEDERAL RULES OF EVIDENCE 404(B) AND 414</u>**

Zackary Ellis Sanders, by and through undersigned counsel, respectfully submits this Opposition to the Government's Motion in Limine to Introduce Certain Evidence Pursuant to Federal Rules of Evidence 404(b) and 414 (ECF No. 165).

On November 17, 2020, the Government filed an Amended Notice of Intent to Present Evidence Under Federal Rule of Evidence 414 (ECF No. 133) ("Amended Notice").[1] Specifically, the Government noticed its intent to introduce testimony regarding Mr. Sanders's recorded interview with law enforcement from February 12, 2020, the date agents executed a search warrant at the Sanders' family home. Though the taped portion of Mr. Sanders's statement was over three hours long, the Government has not identified which portions of the statement it intends to introduce at trial. In that Amended Notice, the Government noticed its intent to introduce

---

[1] In its Amended Notice, the Government withdrew its previous 414 Notice, filed on November 2, 2020. ECF No. 127.

testimony regarding Mr. Sanders's recorded interview with law enforcement from February 12, 2020, the date agents executed a search warrant at the Sanders' family home.

On December 18, 2020, the Government filed a Motion in Limine to Introduce Certain Evidence Pursuant to Federal Rules of Evidence 404(b) and 414. Specifically, the Government asked this Court to permit it to introduce testimony regarding and excerpts of Mr. Sanders's recorded interview with law enforcement on February 12, 2020. The Government incorporated by reference its Amended Notice. ECF No. 165 at 2. The Government failed to provide any additional details or notice regarding which portions of Mr. Sanders's hours-long interrogation it hopes to introduce at trial.

This Court should deny the Government's request because Mr. Sanders objects to his statements being introduced on constitutional grounds because law enforcement failed to give Mr. Sanders *Miranda* warnings, despite the custodial setting, and because his statement was involuntarily given. Further, the Government has not identified which portions of Mr. Sanders's statement it intends to introduce at trial and both the Government's Notice and Motion are far too general for this Court to assess the admissibility of the evidence. Finally, the evidence fails the Rule 403 balancing tests set out in *United States v. Kelly*, 510 F.3d 433 (4th Cir. 2007) (governing 414 evidence) and *United States v. Byers*, 649 F.3d 197, 206 (4th Cir. 2011) (governing 404(b) evidence) and is more prejudicial than probative.

Mr. Sanders incorporates by reference, as if stated fully herein, the arguments made in his Motion to Suppress Statements and accompanying memorandum (ECF Nos. 149, 150) and his Motion in Limine in Opposition to the Government's Amended Notice and accompanying memorandum (ECF Nos. 153 and 154).

## ARGUMENT

### I.   The Government's Motion should be denied on Constitutional and *Miranda* grounds.

In addition to the evidentiary reasons stated below, the Government's Motion to introduce evidence under Rules 404(b) and 414 should be denied on constitutional grounds.  Mr. Sanders hereby incorporates by reference, as if fully stated herein, his objections to the Government's introduction of his statements at trial for the reasons stated in his Motion to Suppress Statements and the Memorandum in support of that motion, as well as the attached exhibits (ECF Nos. 149, 150), and respectfully requests an evidentiary hearing on the same.  *See also* ECF No. 154 at 1 (Mr. Sanders's objection to the 414 evidence on constitutional grounds for the reasons stated in his Motion to Suppress Statements and accompanying Memorandum).  Specifically, as argued in more detail in his Memorandum (ECF No. 150), Mr. Sanders objects to the admission of his statements because law enforcement never gave him *Miranda* warnings, despite the fact that he was in custody.  Further, Mr. Sanders's statement to law enforcement was not voluntary.  For these reasons, the Government's Motion should be denied.

### II.   The Government's 404(b) and 414 requests should be denied because the Government fails to identify with specificity what evidence it intends to admit pursuant to Rules 404(b) and 414.

For the reasons set forth in ECF Nos. 153 and 154, the Government's requests should be denied because its notice fails to provide the defense or this Court with notice of what specific portions of Mr. Sanders's three-hour-and-eighteen-minute-long taped statement to law enforcement it intends to introduce.  Because the Government's vague notice and Motion does not allow this Court to make the type of assessment the Fourth Circuit requires, the evidence should be excluded.

**JA306**

**III.    The Government's 404(b) and 414 requests should be denied because they fail to meet the Rule 404(b) and 414 balancing tests under Rule 403.**

Under Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is *not* admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b) (emphasis added).  Such evidence, however, may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id*.  "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686 (1988); *see also United States v. Siegel*, 536 F.3d 306, 317–18 (4th Cir.2008) (similar).

Although the Fourth Circuit has described Rule 404(b) as a rule of "inclusion," it has emphasized the narrow scope of exceptions under Rule 404(b) and set forth a test that must be met in order for evidence to be admissible.  *United States v. Byers*, 649 F.3d at 206. The Government has failed to meet the requirements of *Byers* for admissibility.  First, based on the limited representations contained in the Amended Notice and the Motion, the Rule 404(b) material is not relevant to an issue other than character.  The Government notes its intent to introduce Mr. Sanders's statements about "(1) other prior instances in which he received child pornography using a mobile messaging application; (2) the process by which he found hidden services on Tor on which there was child pornography; and (3) other prior instances in which he downloaded and stored child pornography material from these hidden services."  ECF No. 133 at 4; ECF No. 165 at 2 (exact same).

As to "(1) other prior instances in which he received child pornography using a mobile messaging application," the instances that Mr. Sanders described to law enforcement were those in which he received unsolicited child pornography when he was a juvenile because he was a

4

**JA307**

member of various chat groups dedicated to LGBTQ issues (not groups that were dedicated to child pornography). This evidence is not evidence of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," Fed. R. Evid. 404(b), nor is it relevant to the offenses charged. The Government would only be introducing this as improper character evidence to incorrectly suggest to the jury that because Mr. Sanders had received child pornography when he was a juvenile, that makes it more likely that he knowingly received child pornography approximately ten years later.

As to (2) and (3), accessing the Tor network or "these hidden services" is not relevant to any issue the jury needs to decide and is not intrinsic evidence. The indictment does not allege, and the defense is aware of no evidence, that use of the Tor network has anything to do with the alleged charges. As the Government explained at the hearing on the Motion to Compel, evidence of Mr. Sanders's activity on Tor cannot be considered intrinsic evidence:

> [T]he search warrant is **unrelated** to anything he has been charged with. The evidence we found in the search warrant is what the basis for all the charges are. So **he hasn't been charged with accessing child sexual abuse material on this TOR site**. He has been charged with **entirely different conduct** related to chats that we uncovered with various minors in which he had them produce child pornography.

7/31/20 Tr. at 19 (emphases added).

Mr. Sanders is not alleged to have contacted or communicated with any of the various alleged minors through the Tor network, nor is there any evidence the defense is aware of to show that any particular material was obtained from any particular Tor sites. The Government would only be introducing this as improper character evidence to incorrectly suggest to the jury that someone who goes on Tor is the type of person who downloads, produces, and receives child pornography and that on this occasion Mr. Sanders acted in conformity with that character trait. This is impermissible under 404(b).

5

**JA308**

Second, based on the limited representations contained in the Amended Notice and Motion, the Rule 404 material is not "necessary to prove an element of the crime charged . . . or to prove context." *Byers,* 649 F.3d at 206 (citing *United States v. Queen,* 132 F.3d 991, 995 (4th Cir.1997)). The vague timeline Mr. Sanders gave in his statement is not of sufficiently close proximity to the time frames alleged in the indictment—and therefore cannot constitute intrinsic evidence. Additionally, Mr. Sanders told the agents at one point that he received material over Kik (a messaging application) when he was a juvenile—13 or 14 years old himself. This is surely not temporally proximate enough to the current charges to warrant admissibility. And to the extent to which this Court finds that the Rule 404 alleged acts are temporally close and are relevant, Mr. Sanders's statements would be cumulative of other non-Rule 404(b) evidence. *See, e.g., United States v. Lighty*, 616 F.3d 321, 354 (4th Cir. 2010) ("if the Rule 404(b) evidence is entirely cumulative to other non-Rule 404(b) evidence available to the government, the Rule 404(b) evidence may not meet the necessity prong").

Third, the evidence is not reliable, because any statements made by Mr. Sanders were involuntary and were made under circumstances that show they were not reliable, and there is no technological or forensic evidence demonstrating that someone with the Sanders' family's IP address did in fact visit Tor sites and download child pornography from such sites. Mr. Sanders's statements were made after twenty-six armed agents and officers arrived at Mr. Sanders's home at 6:05 a.m., banged on the door, pointed guns at his parents, yelled an obscenity and pointed a gun at Mr. Sanders (who was naked and sleeping when they arrived), separated Mr. Sanders from his parents, chose not to give him *Miranda* warnings (despite his repeated remarks about a lawyer and not wanting to talk to law enforcement), and interrogated him for at least three hours and eighteen minutes when he had slept for less than two hours, had no prior

experience with law enforcement, and had recently been treated with extremely powerful steroids that can interfere with cognition, behavior, and mood. *See* ECF No. 150 at 16-19 (detailing why Mr. Sanders's statements were not voluntary). The evidence shows that Mr. Sanders made such statements involuntarily and under coercion. Law enforcement threatened to take all of Mr. Sanders's and his parents' electronic devices—on which they all depended for work—if he did not answer their questions. They made clear that they would not leave the Sanders' family home until he did. These circumstances do not show that the statements were reliable. Indeed, the Government fails to identify any evidence, other than Mr. Sanders's statements themselves, that it intends to introduce to show that Mr. Sanders's statements are reliable.

<u>Fourth,</u> the probative value of the evidence is "substantially outweighed by its prejudicial effect." Fed. R. Evid. 403. The introduction of testimony regarding Tor and "these hidden services" is likely to confuse and inflame the jury. The defense is not aware of any forensic evidence in the Government's possession, custody, or control showing that Mr. Sanders visited, clicked on, or downloaded content from the target website or any particular Tor Onion Service website. Yet based on its Amended Notice and Motion, it appears the Government will try to introduce evidence of egregious content allegedly derived from such websites.

Taken together, analysis under the *Byers* facts shows that Mr. Sanders's alleged statements are not relevant to issues other than character, are not relevant to prove an element or context—but even if they were, they would be cumulative to other evidence, are not reliable, and are substantially more prejudicial than probative. For all the reasons discussed in ECF Nos. 153 and 154, the statements are not admissible under Rule 414.

**JA310**

## **CONCLUSION**

For the forgoing reasons, including those stated in ECF Nos. 149, 150, 153, and 154, Mr. Sanders respectfully requests that this Court deny the Government's request to introduce character evidence under Rule 404(b) and uncharged conduct under Rule 414(d)(2)(B).

Respectfully submitted,

_____*/s/*_____
Jonathan Jeffress (#42884)
Emily Voshell (#92997)
Jade Chong-Smith (admitted *pro hac vice*)
KaiserDillon PLLC
1099 Fourteenth St., N.W.; 8th Floor—West
Washington, D.C.  20005
Telephone: (202) 683-6150
Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: evoshell@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com

*Counsel for Defendant Zackary Ellis Sanders*

8

**JA311**

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to counsel of record.

*/s/ Emily Voshell*
Emily Voshell

**JA312**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

UNITED STATES OF AMERICA,

                Plaintiff,

     v.

ZACKARY ELLIS SANDERS,

                Defendant.

Case No. 1:20-cr-00143
Honorable T.S. Ellis, III

Pretrial conference: April 9, 2021
Trial: April 26, 2021

## DEFENDANT'S RENEWED MOTION FOR LEAVE FOR THIS COURT TO CONSIDER HIS MOTION TO SUPPRESS STATEMENTS AS TIMELY FILED

Mr. Zackary Ellis Sanders, by and through counsel, respectfully submits this Renewed Motion for Leave for this Court to Consider his Previously Filed Motion to Suppress Statements (ECF No. 149) as Timely Filed.

On January 7, 2021, the Court denied Mr. Sanders's Motion to Suppress (ECF No. 149) as untimely. ECF No. 196. In denying the Motion, the Court reasoned that "[a]lthough the motion to suppress was filed fifty-three (53) days before the current trial date, [February 9, 2021,] the motion, along with defendant's request for an evidentiary hearing, would be all but certain to delay the current trial given the difficulties surrounding travel and courtroom procedures during the Covid-19 pandemic." *Id.* at 4. The Court also reasoned that its consideration of the Motion would prejudice the Government because it was "in the midst of responding to defendant's motions *in limine* and preparing for trial [on February 9, 2021]." *Id.* at 5. The very next day, the Government submitted its responses to Mr. Sanders's motions *in limine* and the Court granted the Consent Motion to Continue (ECF No. 192) and rescheduled the trial from February 9, 2021, to April 26, 2021. Given the additional 76 days between February 9,

2021, and April 26, 2021, the Government has more than enough time to respond to the Motion
to Suppress and prepare for an evidentiary hearing. The defense does not believe that the
Government would need to arrange travel or lodging in the Eastern District of Virginia for
witnesses required for an evidentiary hearing on the Motion to Suppress, as all of the
Government's witnesses would be FBI or other law enforcement agents who work in or in close
proximity to the District. The Government therefore cannot plausibly claim prejudice.

"Although motions to suppress must be raised in a timely manner, an untimely motion
may be considered if the moving party shows good cause." *United States v. Samuel*, No. 1:14-
CR-351-TSE, 2015 WL 1442884, at *3 (E.D. Va. Mar. 26, 2015), *aff'd*, 674 F. App'x 322 (4th
Cir. 2017). A motion should be considered if, "[m]ost importantly, . . . no prejudice to the
government resulted from the late filing as it was filed well in advance of the scheduled trial."
*Id.* at 3. Here, where the Motion to Suppress was filed 130 days in advance of the currently
scheduled trial date, and there remain 127 days until trial, there is, "most importantly," no
prejudice to the Government and the Motion should be considered. *Id.* at 3; *compare United
States v. Long*, 803 F. Supp. 1086, 1089 (D.S.C. 1992) (finding motion to suppress untimely
when it was made "*only a few minutes before the trial* was scheduled to begin") (emphasis
added).

Furthermore, Mr. Sanders has shown good cause for the timing of his filing (in response
to the Government's Amended Notice and in advance of the motions *in limine* deadline).[1] The
statements themselves are not inculpatory as to any of the charged offenses, as evidenced by the
Government's attempt to introduce the statements as *uncharged* misconduct under Rule 414.
ECF No. 133. The Government seeks to describe as inculpatory statements that are not evidence

---

[1] Mr. Sanders incorporates by reference the arguments made in ECF Nos. 177 and 186.

**JA314**

of any illegal conduct or wrongdoing, including instances where Mr. Sanders was subjected to and exposed to sexual exploitation and abuse as a minor. *See, e.g.* ECF No. 201-1 (Mr. Sanders describing instances when he was "much younger," as in when he was 13 or 14 years old and in "middle school or . . . high school," and was sent what appeared to child pornography or other "sexual things" through Kik); ECF No. 202-2 (Mr. Sanders describing instances before he was 18 years old when he accidentally downloaded content); ECF No. 202-3 (Mr. Sanders describing instances when he was 13 or 14 years old); ECF No. 202-4 (Mr. Sanders denying that he had any physical contact with people underage, that he had intended to download particular content, or that he had ever uploaded or distributed illegal content).

Merely because the Government references a statement about purported uncharged misconduct in one paragraph of an affidavit in support of a criminal complaint, that does not provide sufficient notice that the Government will seek to introduce evidence of such "*unrelated*" and "*entirely different* conduct" at trial. July 31 Hearing Transcript, Ex. 20 to ECF No. 89, at 19 (Government counsel explaining that "the search warrant is *unrelated to anything he has been charged with* . . . he hasn't been charged with accessing child sexual abuse material on this TOR site. He has been charged with *entirely different conduct* related to chats that we uncovered . . ." (emphases added)). The conduct referenced in the affidavit in support of the criminal complaint, ECF No. 4 at ¶ 11, relates to Mr. Sanders's purported activity on Tor at an unspecified time (with no connection to the target website) and has nothing to do with the actual charges in this case.

Because the Government did not inform the defense of its intent to introduce the statements of unrelated, entirely different uncharged misconduct until November 2020, after the motions deadline, and because Mr. Sanders filed his Motion to Suppress in advance of the

motions *in limine* deadline, Mr. Sanders's motion to suppress should not be denied as untimely,

particularly given the additional 76 days the Government now has to prepare for trial. *See, e.g.,*

*United States v. Ruhe*, 191 F.3d 376, 386 (4th Cir. 1999) (permitting consideration of a motion to

suppress filed after the motions deadline because the Government had since given the defendant

a list of evidence it intended to introduce at trial, which gave the defendant the requisite notice to

challenge the evidence via a motion to suppress).

Given that the trial in this case has been rescheduled to April 26, 2021 and that Mr.

Sanders's Motion to Suppress would cause no prejudice to the Government, as well as the

circumstances under which Mr. Sanders learned of the Government's intent to use his

statements, Mr. Sanders respectfully moves for leave for the Court to consider his Motion to

Suppress Statements (ECF No. 149) as timely filed.

> Respectfully submitted,
> _____/s/_____
> Jonathan Jeffress (#42884)
> Emily Voshell (#92997)
> Jade Chong-Smith (admitted *pro hac vice*)
> KaiserDillon PLLC
> 1099 Fourteenth St., N.W.; 8th Floor—West
> Washington, D.C. 20005
> Telephone: (202) 683-6150
> Facsimile: (202) 280-1034
> Email: jjeffress@kaiserdillon.com
> Email: evoshell@kaiserdillon.com
> Email: jchong-smith@kaiserdillon.com
>
> *Counsel for Defendant Zackary Ellis Sanders*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 13, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to counsel of record.

<div align="right">

*/s/ Jonathan Jeffress*
Jonathan Jeffress

</div>

**JA317**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 1:20-cr-00143<br>Honorable T.S. Ellis, III |
| ZACKARY ELLIS SANDERS, | Pretrial conference: April 9, 2021<br>Trial: April 26, 2021 |
| Defendant. | |

**[PROPOSED] ORDER**

This matter is before the Court on Mr. Sanders's Motion for Leave for this Court to Consider his Previously Filed Motion to Suppress Statements (ECF No. 149) as Timely Filed. Based on the reasons stated therein, any Opposition thereto, and for good cause shown, the Motion is **GRANTED**; it is further **ORDERED** that Mr. Sanders's Motion to Suppress Statements (ECF No. 149) will be considered by this Court; and it is further **ORDERED** that the Government's Response is due _____, 2021.

_____

THE HONORABLE JUDGE ELLIS

UNITED STATES DISTRICT COURT JUDGE

Date: _____

6

**JA318**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA,          )
                                    )
          v.                        )     Criminal Action No. 1:20-cr-143
                                    )
ZACKARY ELLIS SANDERS,              )
                                    )
          Defendant.                )

## ORDER

This matter comes before the Court on Defendant Zackary Sanders's renewed motion for the Court to consider his previously filed motion to suppress statements as timely filed (Dkt. 213). Although defendant still fails to provide a persuasive reason for the failure to file his fifth motion to suppress in a timely manner, defendant's motion raises additional grounds alleging that good cause has been shown to consider his untimely motion.

Accordingly, to assist the Court in its consideration of defendant's motion,

It is hereby **ORDERED** that the government is **DIRECTED** to file a response brief on or before Friday, January 22, 2021 at 5:00 p.m.

It is further **ORDERED** that defendant may file a reply in support of his motion on or before Friday, January 29, 2021 at 5:00 p.m.

The Clerk of Court is directed to send a copy of this Order to all counsel of record.

Alexandria, VA
January 14, 2021

T. S. Ellis, III
United States District Judge

1

**JA319**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

UNITED STATES OF AMERICA,

      Plaintiff,

  v.

ZACKARY ELLIS SANDERS,

      Defendant.

Case No. 1:20-cr-00143
The Honorable Judge Ellis

Pretrial Conference: Apr. 9, 2021
Trial Date: Apr. 26, 2021

**REPLY TO GOVERNMENT'S RESPONSE**
**TO MR. SANDERS'S OPPOSITION TO 414 NOTICE**

   Mr. Zackary Ellis Sanders, by and through undersigned counsel, respectfully submits this

Reply to the Government's Response to his Motion *In Limine* Opposing the Government's 414

Notice (ECF No. 201).

   On November 17, 2020, the Government filed an Amended Notice of Intent to Present

Evidence Under Federal Rule of Evidence 414 (ECF No. 133) ("Amended Notice").[1] Specifically,

the Government noticed for the first time its intent to introduce testimony regarding Mr. Sanders's

recorded interview with law enforcement from February 12, 2020, the date agents executed a

search warrant at the Sanders' family home.  Mr. Sanders responded by seeking suppression of

---

[1] In its Amended Notice, the Government withdrew its previous 414 Notice, filed on November
2, 2020.  ECF No. 127.  The Government has never provided a plausible explanation of its
reason for doing so.  ECF No. 167.  It is clear that the Government did so in an effort to deny Mr.
Sanders discovery to which he is entitled, including exculpatory screenshots of the target website
and Special Agent Ford's contemporaneous understanding of the state of the Government's
evidence at the time he submitted the Affidavit in Support of Search Warrant.  ECF Nos. 137,
142, 176.  This Court has not yet ruled on Mr. Sanders's Motion to Compel the Government to
Produce Material, or, in the Alternative, to Submit Material for *In Camera* Inspection.  ECF Nos.
137, 142, 176.

**JA320**

Mr. Sanders's statements on constitutional grounds (ECF Nos. 149 and 150) and moving *in limine* to oppose the Government's Amended Notice (ECF Nos. 153 and 154) (objecting to the introduction of Mr. Sanders's statements on constitutional grounds, in addition to evidentiary ones, because law enforcement failed to give Mr. Sanders *Miranda* warnings despite the custodial setting and because his statements were involuntarily given).

On December 18, 2020, the Government filed a Motion *In Limine* to Introduce Certain Evidence Pursuant to Federal Rules of Evidence 404(b) and 414 (ECF No. 165). The Government incorporated by reference its Amended Notice. ECF No. 165 at 2. At that time, the Government failed to provide any additional details or notice regarding which portions of Mr. Sanders's hours-long interrogation it hopes to introduce at trial.

On January 8, 2021, the Government filed its Exhibit List (ECF No. 206), which indicated that it would seek to introduce a "bulk" "audio recording, interview of the defendant," as well as 4 clips, which it referred to as "audio recording, interview of the defendant." ECF No. 206 at 1.[2] The Government also filed its Response to Mr. Sanders's Motion *In Limine* Opposing the Government's 414 Notice (ECF No. 201). The Government attached four portions of a transcript of Mr. Sanders's custodial interrogation with law enforcement. ECF Nos. 201-1, 201-2, 201-3, and 201-4.[3]

Mr. Sanders incorporates by reference, as if stated fully herein, the facts and arguments stated in his Motion in Limine in Opposition to the Government's Amended Notice and accompanying memorandum (ECF Nos. 153 and 154), his Motion to Suppress Statements and

---

[2] On January 11, 2021, Mr. Sanders requested, but has not yet received, the specific audio clips the Government listed in its Exhibit List.

[3] It is unclear whether these transcripts are a complete and full reflection of the portions of the recorded interview that the Government is seeking to introduce at trial.

accompanying memorandum (ECF Nos. 149, 150), and his Opposition to the Government's Motion in Limine to Introduce Certain Evidence Pursuant to Federal Rules of Evidence 404(b) and 414 (ECF No. 207).

## ARGUMENT

**I.   Mr. Sanders's accidental receipt of child pornography when he was a child and membership in LGBT Kik groups do not constitute child molestation offenses.**

The Government's assertion that "the proffered Rule 414 evidence involves admission that the defendant received images depicting 'sexual things happening' with 'boys,'" primarily through Kik Messenger when he was 13 or 14 years old, ECF No. 201 at 5, suggests that the Government is attempting to introduce evidence of Mr. Sanders being a victim of a crime as a child as evidence of his guilt in this case.  That is not a permissible use of Rule 414 evidence.  Further, the Government appears to be implicitly relying on stereotypes that homosexuality is associated with criminal behavior in order to introduce a broad swathe of unreliable and irrelevant evidence.  The fact that Mr. Sanders belonged to LGBT Kik mobile messaging groups when he was 13 or 14, which then resulted in him accidentally and unknowingly receiving child pornography through Kik and other links shared through Kik, is not evidence of a child molestation offense.  Instead, it is evidence of Mr. Sanders's isolation as a young LGBT person, his use of online communication to avoid being bullied (including for his perceived sexual orientation), and his victimization as a result of crimes by others.  Such evidence is not admissible under Rule 404(b) or 414.

**II.   The Government has misleadingly characterized Mr. Sanders's involuntary statements from his hours-long custodial interrogation.**

The defense disputes the way the Government characterizes Mr. Sanders's statements in the four portions of the interview that it attached.  ECF Nos. 201, 201-1, 201-2, 201-3, and 201-4.  Additionally, the statements themselves are not reliable because they were made involuntarily and

under coercion after hours of interrogation.  Mr. Sanders only made such statements after law enforcement threatened to take all of his and his parents' electronic devices—which they all depended on for work—if he did not answer their questions (which they repeatedly implied required admitting to some type of wrongdoing).  They also made clear that they would not leave the Sanders' family home until he did.  Because of those circumstances, the statements cannot be considered reliable.  Mr. Sanders also objects to their admission on constitutional grounds, for the reasons stated in ECF Nos. 149 and 150.

The Government continues to insist that information about Mr. Sanders's access of the Tor network is relevant at trial, despite its previous representations that the charged conduct is "entirely different" from accessing child sexual abuse material on the Tor website.  *See* 7/31/20 Tr. at 19. However, not only is this irrelevant to the charged conduct, it is also unreliable.  Nearly a year since the execution of the search warrant, the Government has still failed to present the defense or the Court with any reliable, technological evidence that Mr. Sanders ever accessed child exploitation material using Tor.  The only evidence the Government hopes to introduce on this irrelevant (yet confusing and prejudicial) point are Mr. Sanders's own coerced statements, made during an unconstitutional interrogation.  This is not permissible.

The Government also cannot be permitted to suggest to the jury that because of Mr. Sanders's involuntary and reliable statements that he unknowingly and accidentally received child pornography when he was a child, that makes it more likely that he produced and knowingly received child pornography about a decade later.  In ECF No. 201-1, Mr. Sanders describes instances when he was much "younger," "years, years ago," as in when he was 13 or 14 years old and in "middle school or . . . high school," and was sent what appeared to be child pornography or

**JA323**

other "sexual things," including nude photos and "Dropbox things"[4] through Kik. ECF No. 201-1 at 2-4. Unknowingly receiving nude photos and sexual things when someone was just a child, and was subjected to child sexual exploitation himself, does not constitute a child molestation offense under Rule 414. In ECF No. 201-2, Mr. Sanders describes instances when he was around 14 years old when he accidentally clicked on and downloaded content. In ECF No. 201-3, Mr. Sanders describes instances when he was 13 or 14 years old, "many years ago," and explains that there was content he accidentally downloaded at that time, did not want on his computer, and did not want to look at. ECF No. 201-3 at 2-3. In ECF No. 202-4, Mr. Sanders denies that that he had intended to download particular content, that he has had any physical contact with people under 18, or that he has ever uploaded or distributed illegal content. ECF No. 201-4 at 2-8.

Without relying on impermissible stereotypes and ignoring the context of Mr. Sanders's involuntary and unreliable statements, this Court cannot find that there is sufficient similarity between Mr. Sanders's alleged acts as a child and the charged offenses. That Mr. Sanders himself was a victim of someone else's crimes 11 to 13 years ago, or that he accidentally downloaded content when he was a child, is not evidence of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," Fed. R. Evid. 404(b), nor is it relevant or sufficiently similar to the offenses charged under Rule 414.

## **CONCLUSION**

For the forgoing reasons, including those stated in ECF Nos. 149, 150, 153, 154, and 207, Mr. Sanders respectfully requests that this Court deny the Government's request to introduce character evidence under Rule 404(b) and uncharged conduct under Rule 414(d)(2)(B) on both

---

[4] There is no allegation that for any of the charged offenses Mr. Sanders possessed or received any child pornography through Dropbox. *See, e.g.,* ECF No. 29.

5

**JA324**

evidentiary and constitutional grounds, as stated, *inter alia*, in Mr. Sanders's Motion to Suppress

Statements.

Respectfully submitted,

_____/s/_____

Jonathan Jeffress (#42884)
Emily Voshell (#92997)
Jade Chong-Smith (admitted *pro hac vice*)
KaiserDillon PLLC
1099 Fourteenth St., N.W.; 8th Floor—West
Washington, D.C.  20005
Telephone: (202) 683-6150
Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: evoshell@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com

*Counsel for Defendant Zackary Ellis Sanders*

6

**JA325**

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2021, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will then send a notification of such filing to

counsel of record.

*/s/ Emily Voshell*
Emily Voshell

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:20-CR-143 |
| v. | ) | |
| | ) | Honorable T.S. Ellis, III |
| ZACKARY ELLIS SANDERS, | ) | |
| | ) | Trial: April 26, 2021 |
| *Defendant.* | ) | |
| | ) | |

**REPLY TO DEFENDANT'S RESPONSE TO THE UNITED STATES'
MOTION *IN LIMINE* TO ADMIT CERTAIN EVIDENCE
PURSUANT TO FEDERAL RULES OF EVIDENCE 404(B) AND 414**

On December 18, 2020, the government filed a motion *in limine* seeking a pre-trial ruling

on the admissibility of evidence pursuant to Federal Rules of Evidence 404(b) and 414—namely,

the defendant's admissions in a recorded, voluntary interview with law enforcement that he

previously received child pornography using a mobile messaging application and that he accessed

and downloaded child pornography using the internet.  Dkt. No. 165.  On January 8, 2021, the

defendant filed a response opposing the admission of these statements.  Dkt. No. 207.  The United

States, by and through undersigned counsel, hereby files this reply to the defendant's response.

The defendant first opposes the government's motion *in limine* because he believes the

interview was custodial and his statements were involuntary, citing his tardy motion to suppress

that the Court recently denied as untimely.  *See* Dkt. No. 207 at 3.  As the Court previously

explained, the defendant forfeited these suppression arguments when the defense made the

strategic decision to focus their pre-trial suppression motions on the validity of the search warrant,

*see* Dkt. No. 196 at 4–6, and the defendant should not be permitted to restyle his extraordinarily

untimely motion to suppress as a response to a motion *in limine*, *see United States v. McLean*, 150

**JA327**

F. App'x 249, 253 (4th Cir. 2005) (affirming denial of motion *in limine* to suppress evidence as untimely where the motion was filed months after the filing deadline for pre-trial suppression motions under Fed. R. Crim. P. 12).[1]  Indeed, a motion *in limine* is defined as "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial," typically based on the prejudicial nature of the evidence, *see* MOTION IN LIMINE, Black's Law Dictionary (11th ed. 2019), while a motion to suppress is generally defined as "[a] request that the court prohibit the introduction of illegally obtained evidence at a criminal trial," *see* MOTION TO SUPPRESS, Black's Law Dictionary (11th ed. 2019).  The defendant's argument that his statements in the recorded interview were obtained unlawfully therefore should have been raised in a pre-trial motion to suppress, not a response to the government's instant motion *in limine.*

The defendant next argues that the government's motion should be denied because it does not specify exactly which portions of his recorded interview the government may seek to introduce at trial.  Dkt. No. 207 at 3.  The government believes that its motion adequately advises the defendant and the Court of the nature of the admissions that it may seek to introduce and, indeed, the defendant has been able to identify these statements and has argued that they should not be

---

[1] *See also United States v. Trancheff*, 633 F.3d 696, 698 (8th Cir. 2011) ("The court also did not abuse its discretion by denying Trancheff's motion in limine as untimely on the ground that it was an untimely effort to preserve issues that could have been raised in a timely motion to suppress."); *United States v. Mangine*, 302 F.3d 819, 822 (8th Cir. 2002) (affirming admission of statements where defendant "appears to have disguised a late motion to suppress evidence . . . as a motion in limine."); *United States v. Figaro-Benjamin*, 392 F. Supp. 3d 280, 282 (D.P.R. 2019) (interpreting motion in *limine* to "preclude" statements as a motion to suppress and denying it as untimely); *United States v. Elcock*, 2019 WL 3577658, at *1 (D.V.I. Aug. 5, 2019) ("[A]lthough Defendant's filing was styled as a Motion in Limine, it was in reality a motion to suppress evidence that required an evidentiary hearing, and which should have been filed by the [] deadline for pretrial motions."); *United States v. Bundy*, 2017 WL 521629, at *2 (D. Nev. Feb. 7, 2017) ("While styled as a motion in limine, [defendant] in effect seeks a motion to suppress the seized evidence."); and *United States v. Edgerson*, 2006 WL 568376, at *1 (E.D. Mich. March 7, 2006) (denying as untimely motion in *limine* that was "really nothing more than another Motion to Suppress" and was filed months after the pre-trial motions deadline).

2

admitted. *Id.* at 4–5.  Nevertheless, the government has specified for the defense what portions of the defendant's recorded interview the government may seek to play at trial that fall within the scope of the government's motion *in limine*.  *See* Dkt. No. 201 at 2–3.  As made clear in the government's previous filings, these statements involve the defendant's admissions that he received child pornography and "Dropbox things" containing child pornography over a mobile messaging application, and that he accessed and downloaded child pornography from websites on the dark web.[2]  *Id.*; *see also* Dkt. Nos. 201-1, 201-2, 201-3, 201-4.

The defendant last argues that the government's motion *in limine* should be denied because his statements improperly go to his "character" under Federal Rule of Evidence 404(b), as opposed to proof of motive, opportunity, intent, preparation, knowledge, or identity.[3]  Dkt. No. 207 at 4–7. The defendant's argument simply misses the point.  The defendant admitted to receiving images of child pornography and "Dropbox things" containing child pornography while using a mobile messaging application.  Dkt. No. 201 at 2–3.  He also admitted to navigating to websites on the dark web dedicated to child pornography and downloading child pornography from these websites, and that he did so because he was "curious" to see the child pornography available on these websites after he previously received child pornography through a mobile messaging application. *Id.*  To the extent this evidence is not intrinsic to the charged conduct, it is highly relevant to prove,

---

[2] The defendant's claim that his receipt of child pornography over a mobile messaging application was "unsolicited," Dkt. No. 207 at 4, is inconsistent with his admission that he received child pornography via "some Dropbox things" over a mobile messaging application, Dkt. No. 201 at 2. In order to have received child pornography through a Dropbox link sent via a mobile messaging application, the defendant would likely need to take several affirmative steps of his own, including clicking on the link and downloading the content there.

[3] The defendant also argues that the statements are unreliable and prejudicial—arguments that the government has adequately addressed in other filings. *See* Dkt. No. 165 at 13–15; Dkt. No. 201; at 6–8.

among other things, the defendant's motive and lack of mistake with respect to the crimes charged by demonstrating that he has a long-standing interest in child pornography—an interest that the overwhelming majority of the population does not share—and sought it out before using the internet and mobile messaging applications.

## CONCLUSION

For the reasons stated above, in the government's motion *in limine*, Dkt. No. 165, and in the government's response to the defendant's motion *in limine*, Dkt. No. 201, the United States respectfully requests that the Court find that the proffered evidence is intrinsic to the charged conduct or, in the alternative, that the evidence is admissible under Federal Rule of Evidence 404(b) and 414.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:        /s/
William G. Clayman
Special Assistant United States Attorney (LT)
Jay V. Prabhu
Assistant United States Attorney
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: 703-299-3700
Fax: 703-299-3981
Email: william.g.clayman@usdoj.gov

4

**JA330**

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which automatically generated a Notice of Electronic Filing to the parties of record.

By:            /s/
               William G. Clayman
               Special Assistant United States Attorney (LT)
               U.S. Attorney's Office
               2100 Jamieson Avenue
               Alexandria, Virginia 22314
               Tel: 703-299-3700
               Fax: 703-299-3981
               Email: william.g.clayman@usdoj.gov

**JA331**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:20-CR-143 |
| v. | ) | |
| | ) | Honorable T.S. Ellis, III |
| ZACKARY ELLIS SANDERS, | ) | |
| | ) | Trial: April 26, 2021 |
| *Defendant.* | ) | |
| | ) | |

**REPLY TO DEFENDANT'S RESPONSE TO THE UNITED STATES'
MOTION *IN LIMINE* TO EXCLUDE AND LIMIT CERTAIN ARGUMENTS,
LINES OF QUESTIONING, AND EVIDENCE AT TRIAL**

On December 18, 2020, the government filed a motion *in limine* seeking a pre-trial Order

from the Court excluding certain arguments, lines of questioning, and evidence at trial related to a

number of topics that are irrelevant, unduly prejudicial, and routinely excluded in similar cases.

Dkt. No. 163. On January 8, 2021, the defendant filed a response, opposing the entirety of the

government's motion. Dkt. No. 209. The United States, by and through undersigned counsel,

hereby files this reply to the defendant's response.

As an initial matter, the defendant claims that the government's motion should be denied

as an improper attempt to force him to reveal his defense theory. *Id.* at 2–3. That is incorrect.

The government did not ask him to disclose his defense theory and, indeed, he filed a lengthy

response without doing so. The government is simply seeking a pre-trial ruling that certain

inadmissible and prejudicial evidence cannot be referred to or offered at trial. That is the purpose

of a motion *in limine*. *See* MOTION IN LIMINE, Black's Law Dictionary (11th ed. 2019)

(defining a motion *in limine* as "[a] pretrial request that certain inadmissible evidence not be

referred to or offered at trial"). Moreover, and for the reasons explained in the government's

motion, each of the categories of information the government has identified is irrelevant and unduly prejudicial, and should therefore be excluded at trial. Dkt. No. 163 at 5–14. To aid the Court in its decisional process, the government responds to the defendant's arguments with respect to three of these categories of information.

## I.   Alleged Consent or Voluntariness Evidence Related to the MINOR VICTIMS

The defendant asserts that he should be permitted to introduce evidence about the MINOR VICTIMS' alleged voluntary participation in the offense conduct because the production-of-child-pornography charges are based on online sexual conduct with minors—as opposed to in-person sexual contact with minors—and the allegedly voluntary nature of his sexual relationships with these minors is relevant to whether he had the requisite intent to violate 18 U.S.C. § 2251(a) based on *United States v. Palomino-Coronado*, 805 F.3d 127 (4th Cir. 2015).[1] Dkt. No. 209 at 4–7.

The defendant's two arguments make little sense together. As he correctly notes, the charges here are not based on videos of in-person sexual encounters with minors that he recorded during the acts, like in *United States v. McCauley*, Case No. 1:18-cr-330 (TSE) (E.D. Va.). Rather, they are based on sexually explicit chats in which he used, persuaded, induced, enticed, and coerced minors to engage in sexually explicit conduct and to record themselves doing so. Accordingly, the Fourth Circuit's decisions in *Palomino-Coronado* and, now, *McCauley* are not implicated here. He can make no plausible argument that his decision to record a minor engaged in sexual activity was spontaneously made during an in-person sexual encounter and was only incidental to him consummating his "amorous feelings" for the minor, as he suggests. Dkt. No.

---

[1] The Fourth Circuit recently expounded on what the government needs to prove to convict under 18 U.S.C. § 2251(a), explaining that the production of a visual depiction of a minor engaging in sexually explicit conduct must "be at the very least a significant purpose in the sexual conduct itself, not merely incidental." *United States v. McCauley*, --- F.3d ---, 2020 WL 7414398, at *4 (4th Cir. 2020).

2

**JA333**

209 at 7. In fact, the stated purpose of the defendant's decision to persuade these minors to engage in sexually explicit conduct was for them to produce a visual depiction of them doing so and send it to him. More to the point, that a defendant's unlawful conduct occurred online does not alter the fact that a minor's ultimate willingness to engage in sexual acts is irrelevant to the question of whether *the defendant* used, persuaded, induced, enticed, or coerced a minor for the purposes of 18 U.S.C. § 2251(a). *See* Dkt. No. 163 at 5 (citing cases). The relevant inquiry here is the defendant's state of mind, not the MINOR VICTIMS'.

## II.    Mistake-of-Age Evidence

The defendant next argues that he should be permitted to argue a mistake-of-age defense despite the abundance of caselaw holding that knowledge of the victim's age is not an element of the offense under 18 U.S.C. § 2251(a). Dkt. No. 209 at 8–13. The crux of his argument is that he used and persuaded minors to engage in sexually explicit conduct online, as opposed to in person, and that he should therefore be permitted to argue a mistake-of-age defense.[2] The defendant provides no legal authority for this claim and, indeed, other courts have rejected similar arguments in online production cases. *See United States v. Seibert*, No. 5:17-cr-00572, 2018 WL 4025429, at *2–3 (E.D. Pa. Aug. 23, 2018) (granting motion *in limine* to preclude a mistake-of-age defense over defendant's objections that *Malloy* is distinguishable because he had no in-person contact with minor victims).[3] The defendant also asserts that, in 1977, Congress could not have anticipated

---

[2] It is worth noting that contrary to the defendant's assertions that "no interaction and no sexual activity took place in person" here, Dkt. No. 209 at 9, the online chats and the MINOR VICTIMS' interviews—both of which have been provided to the defense—show that the defendant did in fact meet some of these minors in person. The charges in this case, however, are based on the defendant's conduct in the online chats with these minors.

[3] *See also United States v. Walker*, 917 F.3d 1004, 1011 n.3 (8th Cir. 2019) (approving refusal to instruct jury that knowledge of victim's age is an element of § 2251(a) in case based on online messages); *United States v. Tollefson*, 367 F. Supp. 3d 865, 870–78 (E.D. Wis. 2019) (rejecting

3

§ 2251(a) being applied to a defendant who, like him, relied on the internet to coerce minors to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct. Dkt. No. 209 at 10–13.  The defendant fails to note, however, that § 2251(a) has been amended multiple times since 1977, including in 2008, when Congress amended it to apply to live transmissions of child sexual abuse via web cams and other internet technology.  *See* Protect Our Children Act of 2008, Pub. L. No. 110-401, § 301, 122 Stat. 4242 (2008).  Congress did not, however, amend § 2251(a) to require proof that the defendant knew the age of the victim despite the proliferation of online child sexual abuse.  Finally, as the government noted in its motion, the online chats in this case will show that the defendant had ample opportunity to question whether the MINOR VICTIMS in this case were indeed minors and, in some cases, did so and received confirmation.  Dkt. No. 163 at 10 n.2.

**III.    The Foreign Law Enforcement Agency**

The defendant also asserts that he should be permitted to cross-examine government witnesses regarding the investigation of the foreign law enforcement agency described in the search warrant affidavit in this case. Dkt. No. 209 at 13–16.  In so doing, he recycles the arguments he has raised throughout this case, claiming without any evidence that the affidavit is false and misleading and that the government is concealing evidence to prove this theory.  *Id.*  The Court has already determined, however, that the affidavit does not contain any false or misleading statements in this regard, and the defendant should be precluded from seeking to re-litigate these

---

constitutional challenge to § 2251(a)'s strict liability with regard to victim's age where charge was based on online activity with minor); *United States v. McElroy*, 2014 WL 1155230, at *2 (D. Or. March 21, 2014) (rejecting defendant's similar challenge to the scienter requirement in § 2251 based on "advances in technology and the Internet"); and *United States v. McClelland*, Crim. No. 10-10173, 2011 WL 5025025, at *2 (D. Kan. Oct. 21, 2011) (rejecting constitutional challenge to § 2251(a)'s strict liability with regard to victim's age where charge was based on online activity with a minor).

4

prejudicial issues during trial. Any effort to do so will confuse the issues before the jury and inevitably result in a distracting mini-trial over irrelevant matters that the Court has already resolved.

## CONCLUSION

For the reasons stated, the United States respectfully requests the entry of an Order prohibiting the defendant from making any argument, soliciting any questions, or introducing any evidence at trial regarding the categories of information identified in the government's motion *in limine*. Dkt. No. 163 at 1.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:    _____/s/_____
       William G. Clayman
       Special Assistant United States Attorney (LT)
       Jay V. Prabhu
       Assistant United States Attorney
       U.S. Attorney's Office
       2100 Jamieson Avenue
       Alexandria, Virginia 22314
       Tel: 703-299-3700
       Fax: 703-299-3981
       Email: william.g.clayman@usdoj.gov

5

**JA336**

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2021, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, which automatically generated a Notice of Electronic Filing

to the parties of record.


By:    _____/s/_____

William G. Clayman
Special Assistant United States Attorney (LT)
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: 703-299-3700
Fax: 703-299-3981
Email: william.g.clayman@usdoj.gov

6

**JA337**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 1:20-cr-00143 |
| | Honorable T.S. Ellis, III |
| v. | |
| | Pretrial conference: April 9, 2021 |
| ZACKARY ELLIS SANDERS, | Trial: April 26, 2021 |
| Defendant. | |

**MR. ZACKARY ELLIS SANDERS'S NOTICE OF
SUPPLEMENTAL AUTHORITY IN SUPPORT OF HIS OPPOSITION TO
GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE AND LIMIT CERTAIN
ARGUMENTS, LINES OF QUESTIONING, AND EVIDNECE AT TRIAL**

Mr. Zackary Ellis Sanders, by and through undersigned counsel, respectfully submits the

attached supplemental authority in further support of his Opposition to Government's Motion *In*

*Limine* to Exclude and Limit Certain Arguments, Lines of Questioning, and Evidence at Trial

(ECF No. 209). *See United States v. McCauley*, No. 19-4318, 2020 WL 7414398 (4th Cir. Dec.

18, 2020), attached as Ex. 1.

The Government argued that any evidence of consent or voluntariness should be

excluded or limited was because of the opinion in *United States v. McCauley*, Case No. 1:18-cr-

330-TSE, ECF No. 77 ("McCauley Opinion"). ECF No. 163 at 6. The Government reasoned that

whether the minor consented to engaging in sexually explicit conduct or to "sending the

defendant the visual depictions of themselves engaging in sexually explicit conduct," *id*. at 6,

was irrelevant to whether "*at least one of the defendant's purposes* . . . was to produce a visual

depiction" of the sexually explicit conduct, *id*. at 6 (quoting McCauley Opinion at 5) (emphasis

added).

**JA338**

The Fourth Circuit's recent opinion vacating and remanding *McCauley* makes clear that 18 U.S.C. § 2251(a) "requires the government to prove that creating a visual depiction was 'the purpose' of an accused for engaging in sexual conduct, not merely 'a purpose' that may happen to arise at the same instant as the conduct." Ex. 1 at 5. The Court reasoned that there is a "fundamental difference" between "the purpose," which is the language of the statute and which suggests that "the accused's alleged purpose carries some predominant weight," and "a purpose," which is the language the Government has relied on and which suggests producing a visual depiction "was one among many, potentially much more significant purposes." *Id.* at 5. The Court emphasized that "[t]he minimum penalty under 18 U.S.C. § 2251," fifteen years in federal prison, "further underscores the requisite seriousness of intent" and "demonstrates that Congress meant what it said when it wrote that creating a visual depiction must be 'the purpose' in engaging in the sexual conduct." *Id.* at 5-6.

Because this is a sexting case—not a typical, in-person production case where a defendant films or photographs sexual activity they engaged in with a minor—where the purported minors are alleged instead to have taken any photos or videos when they were by themselves and then sent such photos or videos to Mr. Sanders via mobile messaging applications, the character of the purported interactions between Mr. Sanders and the alleged minors is probative of Mr. Sanders's intent, state of mind, and motive and whether the purpose of producing a visual depiction was the predominant purpose, or some other purpose.

Accordingly, Mr. Sanders should be able to present evidence regarding the nature of the alleged interactions that makes it more likely that the predominant purpose was not to produce a visual depiction.

2

**JA339**

Respectfully submitted,

_____/s/_____

Jonathan Jeffress (#42884)
Emily Voshell (#92997)
Jade Chong-Smith (admitted *pro hac vice*)
KaiserDillon PLLC
1099 Fourteenth St., N.W.; 8th Floor—West
Washington, D.C.  20005
Telephone: (202) 683-6150
Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: evoshell@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com

*Counsel for Defendant Zackary Ellis Sanders*

3

**JA340**

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to counsel of record.

/s/  Jonathan Jeffress
Jonathan Jeffress

**JA341**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Crim. No. 1:20-cr-00143 |
| | Honorable T.S. Ellis, III |
| v. | |
| | Pretrial Conference: Apr. 9, 2021 |
| ZACKARY ELLIS SANDERS, | Trial: Apr. 26, 2021 |
| Defendant. | |

## NOTICE OF CORRECTION

Mr. Zackary Ellis Sanders, by and through undersigned counsel, respectfully submits this Notice of Correction to rectify an error in his Reply to Government's Response to Mr. Sanders's Opposition to 414 Notice (ECF No. 216). On page 4, that Reply incorrectly states that Mr. Sanders made "involuntary and *reliable* statements that he unknowingly and accidentally received child pornography when he was a child," *id*. at 4 (emphasis added); instead, the Reply should state that Mr. Sanders made "involuntary and *unreliable* statements that he unknowingly and accidentally received child pornography when he was a child." *See id*. at 3-4 ("the statements themselves are not reliable because they were made involuntarily and under coercion after hours of interrogation . . . [T]he statements cannot be considered reliable").

**JA342**

Respectfully submitted,

_____/s/_____
Jonathan Jeffress (#42884)
Emily Voshell (#92997)
Jade Chong-Smith (admitted *pro hac vice*)
KaiserDillon PLLC
1099 Fourteenth St., N.W.; 8th Floor—West
Washington, D.C.  20005
Telephone: (202) 683-6150
Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: evoshell@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com

*Counsel for Defendant Zackary Ellis Sanders*

2

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of January 2021, the foregoing was served

electronically on the counsel of record through the U.S. District Court for the Eastern District of

Virginia Electronic Document Filing System (ECF) and the document is available on the ECF

system.

*/s/ Jonathan Jeffress*
Jonathan Jeffress

**JA344**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:20-CR-143 |
| v. | ) | |
| | ) | Honorable T.S. Ellis, III |
| ZACKARY ELLIS SANDERS, | ) | |
| | ) | Trial: April 26, 2021 |
| *Defendant.* | ) | |
| | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR LEAVE TO FILE
UNTIMELY FIFTH MOTION TO SUPPRESS**

The defendant has filed a motion for leave to file a fifth motion to suppress well over 100

days after the deadline for such motions. Dkt. No. 213. The Court has instructed the government

to file a response on or before January 22, 2021. Dkt. No. 214. Accordingly, the United States,

by and through undersigned counsel, hereby submits this response and respectfully requests that

the Court deny the defendant's attempt to file this extraordinarily untimely motion.

**BACKGROUND**

On December 17, 2020, the defendant filed an untimely motion to suppress—his fifth thus

far—seeking to suppress statements he made in a voluntary interview with law enforcement during

the February 2020 search of his home. Dkt. Nos. 149 and 150. He filed the motion over 100 days

after the pre-trial motions deadline, which the Court had already twice extended to accommodate

him.[1] Dkt. No. 196 at 1. After ordering the defendant to show cause for his late filing and

receiving full briefing, the Court denied his motion as untimely. *Id.* The Court explained that: (1)

---

[1] The Court first continued the pre-trial motions deadline at the defendant's request from August
20, 2020, to August 27, 2020. Dkt. No. 72. After the defendant improperly filed a motion that
exceeded the permitted page limit, the Court struck the defendant's motion and instructed the
defendant to re-file by September 2, 2020. Dkt. No. 80.

**JA345**

the motion and requested evidentiary hearing would likely delay the trial in this matter, which had already been continued at his request and was scheduled to begin on February 9, 2021; (2) he provided no plausible explanation for his extremely delayed filing since the defense received a copy of his recorded interview in April 2020 and had all the information needed to file the motion months prior to the pre-trial motions deadline; (3) the delayed filing would prejudice the government by requiring it to divert resources from the trial and prepare for an evidentiary hearing in the midst of a pandemic, while the denial of his motion was unlikely seriously to prejudice him; and (4) the defense's strategic decision to forego challenging the voluntariness of his interview "is not good cause for allowing [his] fifth motion to suppress to proceed." *Id.* at 4–6.

On January 6, 2021, the defendant filed a consent motion to continue the February 9, 2021, trial. Dkt. No. 192. Noting that the Alexandria Detention Center had suspended video calls and that he was in quarantine after testing positive for COVID-19, the defendant sought a continuance to allow for adequate time to prepare for trial. *Id.* The Court granted the defendant's motion on January 8, 2021, continuing the trial date to April 26, 2021, and resetting the pre-trial conference for April 9, 2021. Dkt. No. 204 at 2. Five days later, the defendant filed a motion for leave to re-file his untimely motion to suppress.[2] Dkt. No. 213. In his motion, he again argues that his extremely untimely filing is justified because he did not realize the government might use his incriminating statements to law enforcement at trial until the government filed its Notice under Federal Rule of Evidence 414 ("Rule 414 Notice") after the pre-trial motions deadline, and that the government will not be prejudiced by his untimely filing because the Court granted his request for a trial continuance due to complications caused by COVID-19. Dkt. No. 213 at 2–4.

---

[2] While styled as a "renewed" motion for leave, the defendant did not seek leave of the Court before filing his tardy motion to suppress on December 17, 2020. *See* Dkt. Nos. 149 and 150.

## ARGUMENT

As the Court noted, the defendant's latest motion "fails to provide a persuasive reason for the failure to file his fifth motion to suppress in a timely manner." Dkt. No. 214. He does not dispute that the affidavit in support of the criminal complaint described incriminating statements from his interview and that he received a copy of this interview in April 2020.[3] Nor does he dispute that he was required to exercise "due diligence" to determine whether there was a basis to move to suppress his statements before the pre-trial motions deadline, *United States v. Ruhe*, 191 F.3d 376, 386 (4th Cir. 1999), and that all the information supporting the arguments in his motion was available well before then. Instead, he attempts to justify his late filing by reemphasizing the implausible claim that he did not realize the government might use his recorded interview at trial until the government filed its Rule 414 Notice. Dkt. No. 213 at 2–4. That justification is not supported by the facts or the law, and the defendant's motion for leave to file his untimely motion should be denied.

As an initial matter, the defendant's suggestion that he did not make incriminating statements in his interview related to the charged offenses, Dkt. No. 213 at 2, is incorrect. For example, during the interview, he is asked about a thumb drive containing child pornography found in his bedroom and, after privately consulting with his mother, he states that he moved child pornography onto this thumb drive. He has now been charged with possession of child pornography based on child sexual abuse material found on this thumb drive. Dkt. No. 29 at 4. He is asked about how he obtained child pornography and, in response, he tells law enforcement he used The Onion Router ("Tor") network on this computer to find and download child pornography and asks for his laptop that was hidden under the mattress in his bedroom to show

---

[3] On July 7, 2020, the government also produced a written summary of this interview.

law enforcement. He has also been charged with possession of child pornography based on child sexual abuse material found on this laptop. Dkt. No. 29 at 4. He also tells law enforcement that he uses mobile messaging applications known as Kik and Telegram and that his display name on Telegram is "Sir Zack." As the defendant knows, *see* Dkt. No. 156 at 2–3, he has now been charged with production and receipt of child pornography based on sexually explicit chats with minor victims that law enforcement recovered from Kik and the "Sir Zack" Telegram account on his devices, Dkt. No. 29 at 1–3.

The defendant makes no attempt to address these admissions and, indeed, ignores that the government specifically highlighted in the affidavit in support of the criminal complaint his admission that he knowingly possessed child pornography, which is one of the charges in the indictment.[4] Nor does he dispute that he had all the information that forms the basis of his untimely motion to suppress well before the pre-trial motions deadline. In fact, in one of his four earlier motions to suppress, he acknowledges his admissions to law enforcement and summarizes the claims he now seeks to raise in his untimely motion. *See* Dkt. No. 82 at 3. He ultimately made the "strategic decision to forego challenging the voluntariness of the interview," however, and focused his pre-trial suppression motions on challenges to the validity of the warrant. Dkt. No. 196 at 5. Given that he has been charged with, among other crimes, possession of child

---

[4] *Compare* Dkt. No. 4, at ¶ 11 ("In this interview, SANDERS admitted to law enforcement that he accessed and received child pornography through websites on the Tor network. *SANDERS also stated that he transferred child-pornography material that he downloaded over the internet from his laptop to external media storage devices*." (emphasis added)) *with* Dkt. No. 213 at 3 ("The conduct referenced in the affidavit in support of the criminal complaint, ECF No. 4 at ¶ 11, relates to Mr. Sanders's purported activity on Tor . . . and has nothing to do with the actual charges in this case.").

pornography, the defendant offers no other plausible explanation for his failure to move to suppress his statement that he knew he possessed child pornography on a thumb drive found in his bedroom.

Moreover, the defendant's reliance on *Ruhe* to justify his untimely filing is unavailing. Dkt. No. 213 at 4. The appellant in *Ruhe* argued that he should be allowed to file an untimely motion to suppress because the basis for his claim—that the FBI asked his employee to provide evidence without a warrant—was revealed at trial. 191 F.3d at 386. Contrary to what the defendant claims, Dkt. No. 213 at 4, the Fourth Circuit rejected Ruhe's argument, explaining that he had a duty to investigate and move to suppress evidence as soon as he became aware of even a potential basis for that claim, which occurred before trial, *Ruhe*, 191 F.3d at 386. In other words, the relevant inquiry is whether a defendant has enough information to find a basis to suppress evidence through due diligence and not, as the defendant suggests, whether a defendant has received notice that this evidence may be used at trial. *Id.*; *see also United States v. Chavez*, 902 F.2d 259 (4th Cir. 1990) (permitting untimely motion where basis for suppression claim was revealed after deadline). Ruhe had enough information to learn whether there was a basis to suppress when the government filed an exhibit list suggesting that his employee acted at the government's direction. *Ruhe*, 191 F.3d at 386–87 ("Although the exhibit list was not one-hundred percent clear, the statement in the exhibit list was sufficient to alert Appellant that he needed to investigate further."). Here, the defense had enough information to know whether there was a basis to move to suppress at the outset of the case. And, to be sure, the defense was also notified that the government may use the defendant's incriminating statements through the affidavit in support of the criminal complaint, also at the outset of the case. The defendant's focus on the Rule 414 Notice is simply a distraction from what this Court already found: he could have filed a timely motion to suppress his statements but made the strategic choice not to, which does not constitute

5

good cause under Rule 12. Dkt. No. 196 at 5; *see also United States v. Abdi*, 827 F. App'x 499, 504 (6th Cir. 2020) ("Such a decision to wait and see how the court rules on an earlier motion before filing another one based on previously available evidence is not good cause for months of delay." (internal citations and quotation marks omitted)). Since he cannot show any cause—let alone good cause—for his untimely filing, his instant motion should be denied. *See United States v. Robinson*, 92 F. App'x 48, 48 (4th Cir. 2004) ("Counsel's decision not to file a pretrial motion to suppress did not constitute good cause to excuse the waiver.").[5]

The defendant focuses the remainder of his motion on the new trial date, claiming that he has shown good cause for his extraordinarily untimely filing because the trial was continued due to COVID-19. Dkt. No. 213 at 1–3. An unrelated trial continuance, however, is insufficient for a defendant to show good cause for his untimely filing, as required by Federal Rule of Criminal Procedure 12. *See United States v. Walden*, 625 F.3d 961, 965–66 (6th Cir. 2010) ("At a minimum, [good cause] requires the party seeking a waiver to articulate some legitimate explanation for the

---

[5] *See also United States v. Andres*, 960 F.3d 1310, 1316 (11th Cir. 2020) (rejecting untimely pretrial suppression motion because "no good cause exists if the defendant had all the information necessary to bring a Rule 12(b) motion before the date set for pretrial motions, but failed to file it by that date." (internal citations and quotations marks omitted)); *United States v. Boliaux*, 915 F.3d 493, 496 (7th Cir. 2019) (noting that counsel's conscious decision not to raise a suppression argument prior to the pre-trial motions deadline "is exactly the kind of strategy that Rule 12(b)(3) is designed to block")*; United States v. Pittman*, 816 F.3d 419, 424 (6th Cir. 2016) ("Parties generally cannot establish good cause for untimely filings when their tardiness results from a lawyer's conscious decision not to file a pre-trial motion before the deadline." (internal citations and quotation marks omitted)); *United States v. Yousef*, 327 F.3d 56, 125 (2d Cir. 2003) ("A strategic decision by counsel not to pursue a claim, inadvertence of one's attorney, and an attorney's failure to timely consult with his client are all insufficient to establish 'cause.'"); *United States v. Schulte*, 436 F. Supp. 3d 747, 750 n.6 (S.D.N.Y. 2020) ("Counsel neglecting to file a motion, despite ample opportunity to do so, with no reasonable excuse—does not establish good cause."); *United States v. Robinson*, 357 F. Supp. 3d 221, 223 (E.D.N.Y. 2019) ("Put another way, he made a strategic decision not to advance the Defendant's motion [to suppress], and now regrets not doing so because he is more confident in his chances than he was at the time. However, the law is clear that the strategic decisions of counsel cannot establish cause under Rule 12(c)(3).")

6

failure to timely file."); *United States v. Trobee*, 551 F.3d 835, 838 (8th Cir. 2009) ("Courts have a legitimate interest in the enforcement of scheduling deadlines, both to manage a pending case and to retain the credibility of these deadlines in future cases. . . . The possibility that other parties and the court could accommodate a late-filed motion does not mandate that the court grant an exception to the deadline where the movant fails to make an adequate showing of good cause.").

Further, as the Court already observed, the government is in the midst of preparing for trial. Dkt. No. 196 at 5. Both parties recognize that this case is a complex one given the number of minor victims, the amount of electronic and physical discovery, and the sensitive nature of the evidence. *See* Dkt. Nos. 129, 130. And while the trial was briefly continued two weeks ago, the defendant has, in the past five days alone, already submitted additional briefing related to the pending motions *in limine*, an amended witness list doubling the number of potential defense witnesses, and a motion to modify the Protective Order with the aim to fish for more immaterial information and re-litigate discovery and suppression arguments that this Court has already decided. *See* Dkt. Nos. 225, 226, 229, and 230. Requiring the government to divert resources from these filings and other ongoing trial preparation to litigate yet another motion to suppress and prepare for an evidentiary hearing that should have occurred months ago would therefore prejudice the government. This is particularly so given that the pandemic-related restrictions on traveling and gathering in person have already complicated trial preparation and would certainly complicate the government's ability to prepare for a last-minute evidentiary hearing likely requiring multiple witnesses, including law enforcement witnesses whose involvement with this case ended after the search a year ago.[6] More importantly, as the Court already explained, a "denial of defendant's

---

[6] Multiple law enforcement agents from the search continue to work in the Washington, D.C. area, although at least one has since retired. While the government would not need to arrange lodging for those witnesses, the defendant's untimely motion would nevertheless require the government

**JA351**

motion is unlikely seriously to prejudice the defendant" because he has other avenues to raise the claims in his motion. Dkt. No. 196 at 5–6. Accordingly, his motion for leave to file his untimely fifth motion to suppress should be denied.

## CONCLUSION

For the foregoing reasons, the government submits that the defendant has not demonstrated good cause for his failure to file his fifth motion to suppress before this Court's twice-continued pre-trial motions deadline. Accordingly, the government respectfully requests that the Court deny his motion for leave to submit this untimely filing. Dkt. No. 213.


Respectfully submitted,

Raj Parekh
Acting United States Attorney

By:          /s/
William G. Clayman
Special Assistant United States Attorney (LT)
Jay V. Prabhu
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703-299-3700
Fax: 703-299-3981
Email: william.g.clayman@usdoj.gov

---

to set aside trial preparation to, among other things, determine which of the potential witnesses are indeed available and work with them and other government employees to prepare for the suppression hearing—tasks that are complicated by the COVID-19-related restrictions described above. Had the defendant filed his motion on time, on the other hand, the government would be able to focus its resources at this time on preparing for the upcoming, multi-victim trial in these unprecedented circumstances, as was contemplated when the Court set the pre-trial motions deadline.

8

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which automatically generated a Notice of Electronic Filing to the parties of record.

By:    _____/s/_____

William G. Clayman
Special Assistant United States Attorney (LT)
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700
Email: william.g.clayman@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA,

                  Plaintiff,

    v.

ZACKARY ELLIS SANDERS,

                  Defendant.

Case No. 1:20-cr-00143
Honorable T.S. Ellis, III

Pretrial conference: April 9, 2021
Trial: April 26, 2021

**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO HIS
RENEWED MOTION FOR THIS COURT TO CONSIDER HIS
MOTION TO SUPPRESS STATEMENTS AS TIMELY FILED**

Mr. Zackary Ellis Sanders, by and through counsel, respectfully submits this Reply to the

Government's Opposition (ECF No. 235) to his Renewed Motion for this Court to Consider His

Previously Filed Motion to Suppress Statements as Timely Filed (ECF No. 213).

The Government does not dispute that a motion should be considered timely filed if,

"[m]ost importantly, . . . no prejudice to the government resulted from the late filing as it was

filed well in advance of the scheduled trial." *United States v. Samuel*, No. 1:14-CR-351-TSE,

2015 WL 1442884, at *3 (E.D. Va. Mar. 26, 2015), *aff'd*, 674 F. App'x 322 (4th Cir. 2017).  The

Government claims, however, that prejudice would result because it would be logistically

difficult to find any date between now and *April 26, 2021—three months from now*[1]—when law

enforcement witnesses would be free to testify at a suppression hearing, and because the

---

[1] As this Court is well aware, under the Speedy Trial Act, 70 days is typically the time between a
defendant's initial appearance and trial.  18 U.S.C. § 3161 (c)(1).

Government would need to prepare those witnesses to testify regarding the purported voluntariness of Mr. Sanders's statements.

This Court cannot plausibly find that there would be prejudice to the Government in responding to a motion to suppress (ECF No. 149) filed 130 days before the currently scheduled trial date, particularly when the testimony the Government would seek to elicit at a suppression hearing would overlap almost in its entirety with the same testimony, from the same witnesses, that the Government would seek to elicit at trial. *See e.g.,* ECF No. 159 at 17 (Government's proposed jury instructions stating that the burden is on the Government to prove beyond a reasonable doubt that Mr. Sanders's statements were voluntary); ECF No. 196 at 6 (Court acknowledging that Mr. Sanders can challenge "the allegedly coercive atmosphere of [his] interview with law enforcement and the voluntariness of [his] statements" at trial).

The Government notes that while "[m]ultiple law enforcement agents from the search [of the Sanders' family home] continue to work in the Washington D.C. area, although at least one [of the 26 agents who executed the search] has retired,"[2] it claims that determining the availability of the agents and preparing them for the suppression hearing would be logistically onerous. ECF No. 235 at 7-8 n. 6. In addition to the fact that three months is more than enough time to accomplish the task of preparing one or two witnesses to testify at a suppression hearing, the Government's argument is entirely unpersuasive for at least three other reasons.

---

[2] The Government does not say which one of the 26 agents has since retired. Nor does the Government say that the agent, as a result of his retirement, is unavailable. Even if the agent is truly unavailable, it is extremely doubtful that his testimony could not be presented in hearsay form through one of the agents the Government intends to call at trial. *See infra* at 3.

2

**JA355**

First, at trial, the Government needs to prove beyond a reasonable doubt the voluntariness of Mr. Sanders's statements:[3]  the Government therefore already needs to prepare its witnesses to testify to the circumstances of Mr. Sanders's interrogation. *Crane v. Kentucky*, 476 U.S. 683, 691 (1986) ("[E]vidence about the manner in which a confession [or otherwise inculpatory statement] was obtained is often highly relevant to its reliability and credibility.").  A suppression hearing therefore cannot create prejudice because the Government is already preparing its witnesses to testify to the circumstances and purported voluntariness of Mr. Sanders's statements and for cross-examination by the defense on the same issue.

Second, hearsay is admissible at a suppression hearing.  It is extremely doubtful, based on the discovery received to date, that the agents who were not named for trial would have testimony that could not be presented through the agents the Government intends to call at trial (assuming the agents who were not named for trial even have testimony that would be relevant to the suppression hearing, as discovery suggests they would not).  The witnesses the Government would call to testify at a suppression hearing therefore should overlap entirely with the witnesses the Government intends to call at trial.  More than half of the 13 witnesses the Government intends to call to testify at trial were agents who participated in the search of the Sanders' family home:  Seven of the Government's 13 trial witnesses executed the search warrant, and two of those seven, Special Agents Ford and Obie, were the agents who interrogated Mr. Sanders.

---

[3] The Government has asked that the jury be instructed that "[a]ll . . . [of Mr. Sanders's] alleged statements, confessions, admissions, acts, or omissions should be disregarded entirely unless the other evidence in the case convinces the jury beyond a reasonable doubt that the statement, confession, admission, act, or omission was made or done *knowingly and voluntarily*."  ECF No. 159 at 17 (emphasis added).  In making such a determination, the Government has asked that the jury be instructed to consider, *inter alia*, Mr. Sanders's "treatment *while in custody or under interrogation*" and "*all other circumstances in evidence surrounding the making of the alleged statement, confession, admission, act, or omission*." *Id.* at 17 (emphases added).

3

**JA356**

*Compare* Ex. 1 (Highlighted List of Agents Executing Search Warrant) *with* Ex. 2 (Highlighted List of Agents Testifying at Trial).

Third, the Government would not be required to arrange travel or lodging for any of its potential witnesses, including the two most relevant (and potentially only relevant) Government witnesses—Special Agents Ford and Obie. They presumably have not retired because they last accompanied Mr. Sanders to review evidence at the U.S. Attorney's Office less than two months ago, they intend to again accompany Mr. Sanders to review evidence on February 2, 2021, and they are named by the Government as witnesses for trial. Any COVID-19-related travel restrictions therefore should not impact the ability of law enforcement witnesses to testify at a suppression hearing.

The Government cannot point to Mr. Sanders's replies to the Government's response to his motions *in limine* or his amended witness list (amended in light of the Government's witness list and the Fourth Circuit's recent ruling in *United States v. McCauley*, No. 19-4318, 2020 WL 7414398 (4th Cir. Dec. 18, 2020)) as reasons the Government will not be able to prepare for a suppression hearing. The Government should know well that the local rules permit replies to responses, Local Criminal Rule 47(F),[4] and four of the five additional witnesses that Mr. Sanders included are four of the six alleged minor victims (as the Government is declining to call, in its case-in-chief, four of the six alleged minor victims, ECF No. 205). These are all witnesses who the Government has spoken with and who form the basis for the majority of the charges in the indictment.

---

[4] Notably, the Government filed its four replies to Mr. Sanders's responses to the Government's motions *in limine* after the required deadline under Local Rule 47(F). *See* ECF Nos. 221, 222, 223 and 224.

**JA357**

While the lack of prejudice to the Government is the "[m]ost important[]" factor to whether a motion should be considered timely, *Samuel*, No. 1:14-CR-351-TSE, 2015 WL 1442884, at *3, Mr. Sanders has previously shown good cause for the timing of his filing: because it was filed when Mr. Sanders learned of the Government's intent to introduce statements about unrelated, uncharged misconduct, in response to the Government's Amended Rule 414 Notice (ECF No. 133) and in advance of the motions *in limine* deadline. ECF No. 213 at 2-4; *see also* ECF Nos. 177 and 186 (incorporated by reference in ECF No. 213). The Government claims that Mr. Sanders "does not dispute that the affidavit in support of the criminal complaint described incriminating statements from his interview." ECF No. 235 at 3. That is incorrect. The conduct referenced in the affidavit in support of the criminal complaint, ECF No. 4 at ¶ 11, relates to Mr. Sanders's purported activity online at an unspecified time (with no connection to the target website), potentially when he was as young as 13 or 14, and has nothing to do with the actual charges in this case. As Mr. Sanders stated in his Motion, the "Government seeks to describe as inculpatory statements that are not evidence of any illegal conduct or wrongdoing, including instances where Mr. Sanders was subjected to and exposed to sexual exploitation and abuse as a minor." ECF No. 213 at 3. What Mr. Sanders experienced as a child, when he himself was a victim of sexual exploitation and abuse, is not inculpatory. The fact that Mr. Sanders did not want to look at, and later tried to get rid of, images he was exposed to as a middle school student, is also not inculpatory.

For all the reasons stated in ECF Nos. 177, 186, 213 and above, and because the trial in this case has been rescheduled by consent to April 26, 2021 and Mr. Sanders's Motion to Suppress would cause no prejudice to the Government, Mr. Sanders respectfully requests that this Court consider his Motion to Suppress Statements (ECF No. 149).

5

**JA358**

Respectfully submitted,

_____/s/_____

Jonathan Jeffress (#42884)
Emily Voshell (#92997)
Jade Chong-Smith (admitted *pro hac vice*)
KaiserDillon PLLC
1099 Fourteenth St., N.W.; 8th Floor—West
Washington, D.C.  20005
Telephone: (202) 683-6150
Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: evoshell@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com

*Counsel for Defendant Zackary Ellis Sanders*

6

**JA359**

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2021, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will then send a notification of such filing to

counsel of record.

*/s/ Emily Voshell*
Emily Voshell

7

**JA360**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:20-cr-143 |
| | ) | |
| ZACKARY ELLIS SANDERS, | ) | |
| Defendant. | ) | |

## ORDER

At issue pretrial in this twelve-count criminal prosecution for production, receipt, and possession of child pornography is whether the Court should reconsider its decision to dismiss Defendant Zackary Sanders's fifth motion to suppress as untimely. Because defendant continues to fail to show good cause for the extreme tardiness of his fifth motion to suppress, defendant's motion must be denied.

On January 7, 2021, an order issued denying defendant's fifth motion to suppress as untimely. *See United States v. Sanders*, Case No. 1:20-cr-143 (E.D. Va, January 7, 2021) (Order). On January 8, 2021, an order issued granting Defendant's Consent Motion to Continue and rescheduling the trial in this case from February 9, 2021 to April 26, 2021. *See United States v. Sanders*, Case No. 1:20-cr-143 (E.D. Va, January 8, 2021) (Order). Defendant, by counsel, then filed the present motion, arguing that the continuance granted on January 8, 2021 alleviates concern surrounding the timeliness of his fifth motion to suppress, and that his motion to suppress should therefore be considered timely.

The standard for considering untimely motions has been discussed previously,[1] but as a general matter, courts confronted with an untimely motion consider "(i) the extent of the untimeliness, (ii) the reason for late filing, (iii) prejudice to the other party, and (iv) whether the

---

[1] *See United States v. Sanders*, Case No. 1:20-cr-143 (E.D. Va, January 7, 2021) (Order).

1

receipt of additional information after the filing deadline 'alerted defendant to facts on which a motion to suppress might be based.'" *United States v. Samuel*, Case No. 1:14-cr-351, 2015 WL 1442884, at *3 (E.D. Va. Mar. 26, 2015), *aff'd*, 674 F. App'x 322 (4th Cir. 2017) (quoting *United States v. Cross*, 256 F. App'x 623, 627 (4th Cir. 2007)).

The continuance granted in this case in no way affects (ii) the reason for late filing or (iv) whether the receipt of additional information after the filing deadline alerted defendant to facts on which a motion to suppress might be based. Defendant has still not provided any adequate or persuasive reason for filing his fifth motion to suppress more than three months after the filing deadline. Moreover, it is clear from defendant's tardy fifth motion to suppress that defendant had access to all the evidence necessary for the motion long before the filing deadline, and defendant has provided no convincing reason that he could not have discovered the basis for the claim with due diligence.[2] There is thus no persuasive reason for defendant's failure to file his fifth motion to suppress on time when he filed his four previous motions to suppress.

The continuance granted in this case has the potential to impact the two other factors: (i) the extent of the untimeliness and (iii) prejudice to the other party. Although defendant's tardy fifth motion to suppress was filed one hundred and twelve (112) days after the deadline for pretrial motions, the continuance granted in this case increases the time before trial, potentially alleviating the consequences of defendant's untimeliness, including the prejudice to the government created by defendant's tardy filing. However, although the continuance lessens the prejudice to the government caused by defendant's tardy motion, the continuance does not eliminate it. Acceptance of defendant's tardy motion as timely would still force the government to divert resources from

---

[2] *See United States v. Ruhe*, 191 F.3d 376, 386 (4th Cir. 1999) ("Defendants are subject to a due diligence standard. Even if the defendant did not know all of the information establishing the basis for a claim, the court will not excuse a forfeiture if the defendant, by due diligence, could have or should have discovered the basis for the claim.").

2

preparing for trial to prepare for an evidentiary hearing on an issue that could have been raised months earlier. Furthermore, as stated previously, denial of defendant's tardy motion is unlikely seriously to prejudice defendant because defendant has other avenues to raise the claims in his motion.[3] In conclusion, because defendant has still failed to show good cause for the tardy filing of his fifth motion to suppress, defendant's motion must be denied.

Accordingly,

It is hereby **ORDERED** that defendant's Renewed Motion for Leave for this Court to Consider His Motion to Suppress Statements as Timely Filed (Dkt. 213) is **DENIED**.

The Clerk is directed to provide a copy of this Order to all counsel of record.

Alexandria, Virginia
February 4, 2021

/s/

T. S. Ellis, III
United States District Judge

---

[3] *See* 18 U.S.C. § 3501(a) ("If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances."). *See also Crane v. Kentucky,* 476 U.S. 683, 691 (1986) ("[E]vidence about the manner in which a confession [or otherwise inculpatory statement] was obtained is often highly relevant to its reliability and credibility.").

3

JA363

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ZACKARY ELLIS SANDERS,<br><br>    Defendant. | Case No. 1:20-cr-00143<br>The Honorable Judge Ellis<br><br>Trial: July 12, 2021 |

**DEFENDANT'S NOTICE OF OBJECTION TO RULE 404 AND 414 RULING**

Zackary Ellis Sanders, by and through counsel, respectfully submits this Notice of

Objection to the Court's bench ruling on Mr. Sanders's motion to exclude the government's

proposed Rule 404 and 414 evidence.  Counsel for Mr. Sanders was told he would be given the

opportunity to make the instant objection at Friday's hearing but the Court left the bench without

having provided counsel with the opportunity to do so.

As noted during the argument on the admission of Mr. Sanders's statement to law

enforcement under Rules 404 and 414, the defense timely objected to the admission of that

statement under those rules shortly after the government first noticed its intent to introduce such

statements and before the motions *in limine* deadline set by this Court.[1]  One basis for Mr.

Sanders's objection was that Mr. Sanders's statements were taken in violation of *Miranda* and

---

[1] The government first noticed such intent in an amended notice (ECF No, 133), which it filed on
November 17, 2020, after the pretrial motions deadline but well in advance of the motions *in
limine* deadline of December 18, 2020.  Prior to the government's filing of its amended notice,
the government had stated at a hearing on July 31, 2020 that "the search warrant is *unrelated* to
anything he has been charged with. . .  he hasn't been charged with accessing child sexual abuse
material on this TOR site."  July 31, 2020 Hearing Transcript at 19 (ECF No. 316-6).

were also involuntary, and therefore taken in violation of the United States Constitution. Indeed, the Fourth Circuit case *United States v. Hashime*, 734 F.3d 278, 285 (4ᵗʰ Cir. 2013), is directly on point and bars the admission of the statement as taken in violation of *Miranda*. *Hashime* Opinion, attached s Ex. 1. While the Court held on January 7, 2021 that Mr. Sanders's motion to suppress his statement was untimely under Rule 12, and that the government was prejudiced because there was insufficient time to conduct a motion to suppress (despite the fact that this case had been pending for well over a year, and *there are still* two months left until trial), the Court has never held that the statements were taken consistent with *Miranda*. Indeed, even given the extreme length of time this case has been pending, the Court has not addressed the merits of this important constitutional issue at all.

While the defense urged the Miranda and involuntariness argument upon the Court as a primary basis for denying the admission of Mr. Sanders's statement under Rule 404 and Rule 414 at Friday's hearing, and the Court acknowledged this argument and questioned the government about it, the Court did not address this issue in its bench opinion.

Mr. Sanders's statements should not be admitted at this trial. They were taken in violation of *Miranda* and the Constitution and this Court has not found to the contrary. Moreover, there has been more than enough time to conduct a hearing on Mr. Sanders's motion to suppress—the government's contrary argument, especially given how quickly criminal cases usually proceed in this District, is a pretextual basis for avoiding a hearing on the motion to suppress that would inevitably have led to suppression under the law. But even were the Court to maintain its incorrect view that Mr. Sanders's *motion to suppress* was untimely, and that having to hold a one-day, basic evidentiary hearing in the many months this case has been

**JA365**

pending (or in the two months before trial) is somehow unduly prejudicial to the government,[2]

there is no question that the defense timely made its objection to the government's Rule 404(b)

and Rule 414 notices based on, *inter alia*, the government's violation of *Miranda* and Mr.

Sanders's rights under the Constitution.  Indeed, this objection that was made *prior* to this Court

finding Mr. Sanders's motion to suppress untimely.  Mr. Sanders's accordingly objects to the

Court's failure to consider that argument in ruling on the admissibility of his statements under

Rule 404(b) and Rule 414.

<div style="margin-left: 40%;">

Respectfully submitted,

_____/s/_____
Jonathan Jeffress (#42884)
Jade Chong-Smith (admitted *pro hac vice*)
KaiserDillon PLLC
1099 Fourteenth St., N.W.; 8th Floor—West
Washington, D.C.  20005
Telephone: (202) 683-6150
Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com

_____/s/_____
Nina J. Ginsberg (#19472)
DiMuroGinsberg, P.C.
1101 King Street, Suite 610
Alexandria, VA  22314
Telephone: (703) 684-4333
Facsimile: (703) 548-3181
Email: nginsberg@dimuro.com

*Counsel for Defendant Zackary Ellis Sanders*

</div>

---

[2] The defense notes that two months is still ample time to hold an evidentiary hearing on Mr.
Sanders's motion to suppress statements and respectfully moves the Court to do so.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 10th day of May 2021, the foregoing was served electronically on the counsel of record through the U.S. District Court for the Eastern District of Virginia Electronic Document Filing System (ECF) and the document is available on the ECF system.

*/s/ Jonathan Jeffress*
Jonathan Jeffress

**JA367**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA )
         ) Case No. 1:20-CR-143
v. )
         ) Honorable T.S. Ellis, III
ZACKARY ELLIS SANDERS, )
         ) Trial: July 12, 2021
         *Defendant.* )
         )

**GOVERNMENT'S RESPONSE IN OPPOSITION TO THE DEFENDANT'S
FOURTH MOTION TO COMPEL**

On May 6, 2021, the defendant filed a motion to compel—his fourth—arguing that the

Court should order the government to produce a hypothetical "Title III warrant and/or Pen

Register/Trap and Trace order(s)." Dkt. Nos. 315, 316, & 335. The United States of America, by

and through undersigned counsel, hereby files this response in opposition. For the reasons set

forth below, his motion should be denied. Further, given the Court's familiarity with this case and

the baselessness of the defendant's claims, a hearing on his motion would not aid the Court's

decisional process and is therefore not necessary.

**BACKGROUND**

As the Court knows,[1] in 2019, the government received a tip from a reliable foreign law

enforcement agency ("FLA") that a specific Internet Protocol ("IP") address was used on May 23,

2019, to access child sexual abuse material on a hidden service on The Onion Router ("Tor")

dedicated to such content ("Target Website"). Dkt. No. 113 at 1–2. The IP address was assigned

to the defendant's mother at their home in the Eastern District of Virginia at the relevant time. *Id.*

---

[1] The Court thoroughly explained the relevant background in its memorandum opinions denying
the defendant's first motion to compel and his four motions to suppress. Dkt. Nos. 73 & 113.

**JA368**

at 2.  A special agent with the Federal Bureau of Investigation ("FBI") then obtained a warrant to search the home for child-pornography-related evidence.  *Id.* at 3.  During the search, the defendant admitted to accessing child sexual abuse material on Tor.  *Id.* at 4.  Based on evidence recovered from the home, a federal grand jury returned a twelve-count indictment charging the defendant with production, receipt, and possession of child pornography.  Dkt. No. 29.

## ARGUMENT

"Generally, criminal defendants do not have a constitutional right to discovery absent a statute, rule of criminal procedure, or some other entitlement." *United States v. Palacios*, 677 F.3d 234, 246 (4th Cir. 2012) (internal citations omitted).  The government is aware of its Rule 16, *Brady*, *Giglio*, and other disclosure obligations and has complied with and will continue to comply with those obligations.

Since the outset of this case, however, the defendant has concocted various theories about how the government's investigation as described in the extensive discovery produced thus far is false or misleading and has demanded that the government disprove his baseless speculation.  The defendant's aim is clear: he refuses to accept the conclusion of this Court and Magistrate Judge John F. Anderson that the affidavit in support of the search warrant established probable cause to search his home but he has no valid basis to challenge the warrant.  Having exhausted his challenges to the warrant, the defendant now claims that "the FBI must have applied for a Title III warrant and/or Pen Register/Trap and Trace order(s)" related to his IP address because (1) the government received information about other IP addresses and (2) he recognizes the name of an FBI Supervisory Special Agent in the discovery, and he has moved to compel the production of this hypothetical material.  Dkt. No. 335 at 2–3.  Neither fact provides a basis for his latest motion.  While the FLA provided the FBI with one tip related to the defendant's IP address, the government

2

**JA369**

has repeatedly made clear that its investigation extends beyond just his illegal activity on Tor.[2]

Moreover, that the defendant recognizes the name of a single FBI supervisor who may have been

involved with entirely different investigations based on entirely different circumstances has no

bearing on what happened here.   In fact, the defendant admits that he believes these other

investigations involved the FBI taking control of child pornography websites, which he knows did

not occur here.  *Id.* at 3 n.3.  In other words, this is more of the same "hopeful speculation" based

on irrelevant information that the Court has previously rejected.  Dkt. No. 73 at 13.

Setting aside the dubious justifications for the defendant's fourth motion to compel, his

argument as to the materiality of his request is without any merit.   The answer to the defendant's

"obvious question" of why the FBI obtained a warrant to search his home is equally obvious:

because the government received a reliable tip advising that someone using his IP address accessed

child sexual abuse material on a Tor hidden service.  Dkt. No. 335 at 3.  Moreover, the government

specifically advised that it has no material to produce in response to the defendant's request for a

---

[2] The defendant seeks to justify his motion by claiming that he did not realize the scope of the investigation until he received an administrative subpoena related to his and other, redacted IP addresses. Dkt. No. 335 at 3.  The suggestion that he did not know there were additional targets in this investigation is belied by the record, which makes clear that the investigation went beyond him.  That information is disclosed in: the search warrant affidavit, Dkt. No. 86, Ex. 5 at ¶ 6 n.1 ("Investigation into the users of the [Target Website] remains ongoing and disclosure of the name of the website would potentially alert active website users to the investigation, potentially provoking users to notify other users of law enforcement action, flee, and/or destroy evidence."), *see also id.* at ¶¶ 22, 26; the affidavit in support of the criminal complaint, Dkt. No. 4 at ¶ 9 ("The FBI, in conjunction with other law enforcement entities, is investigating websites on which visitors can access and view child sexual abuse material."); the government's response to the defendant's four motions to suppress, Dkt. No. 97 at 18 ("[T]he Affidavit specifically noted that the FLA provided tips about other IP addresses that led to the apprehension of child sex offenders . . .. "); and, perhaps most obviously, the FLA's tip, Dkt. No. 86, Ex. 2 ("The [FLA has] provided data to the United States Federal Bureau of Investigation in relation to Internet addresses (IPs), associated to individuals who have accessed online Child Sexual Abuse and Exploitation material[.]").  Indeed, the affidavit in support of the search warrant notes that the Target Website had hundreds of thousands of members, Dkt. No. 86, Ex. 5 at ¶ 16, and the defendant readily cites other years-old, multi-target investigations involving large child pornography websites as allegedly supporting his current claims, Dkt. No. 335 at 3 n.3.  Accordingly, the fact that the FBI's investigation extends beyond the defendant was known to him from the outset of the case.

3

**JA370**

"Tile III warrant and/or Pen Register/Trap and Trace order(s)" used in the investigation of his IP address. *Id.* at 4. Undeterred, the defendant parsed the government's words beyond any rational meaning to conclude that the government does, in fact, have such material and filed the instant motion. *Id.* at 4–5. The defendant's backwards approach to discovery, wherein he relies on suspicions and conclusory assertions to demand an "unqualified answer" from the government or an opportunity to fish for evidence to support his baseless theories, has been firmly rejected by this Court and others. Dkt. No. 73 ("To authorize discovery based on a defendant's mere speculation that the government possesses information that would be helpful to the defense would permit an impermissible fishing expedition." (citing *United States v. Maranzino*, 860 F.2d 981, 985 (10th Cir. 1988))); *United States v. Caro*, 597 F.3d 608, 621 (4th Cir. 2010) ("Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." (quoting *United States v. Mandel*, 914 F.3d 1215, 1219 (9th Cir. 1990))); *United States v. Darby*, Case No. 2:16-CR-36 (RGD), Dkt. No. 49 (E.D. Va. Aug. 12, 2016) (rejecting discovery request based on defendant's claim that the government is "lying to him about its operation").

More to the point, the defendant is wrong. As the government already explained prior to the defendant filing his latest motion, the FBI did not "obtain a Title III warrant and/or Pen Register/Trap and Trace order(s)" in connection with the investigation of his IP address. To the extent the defendant is asking the government to produce material related to other targets in other cases, that material is irrelevant. He is not charged in a conspiracy with any other targets and is not entitled to any discovery related to other cases. Accordingly, the defendant's fourth motion to compel should be denied. Further, given the baselessness of his claims and the Court's familiarity

4

**JA371**

with this case, the defendant's motion should be disposed of without an oral hearing pursuant to

Local Criminal Rule 47(J).

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court deny the

defendant's fourth motion to compel discovery.

Respectfully submitted,

Raj Parekh
Acting United States Attorney

By:        /s/

William G. Clayman
Special Assistant United States Attorney (LT)
Jay V. Prabhu
Seth M. Schlessinger
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703-299-3700
Fax: 703-299-3981
Email: william.g.clayman@usdoj.gov
Email: jay.prabhu@usdoj.gov
Email: seth.schlessinger@usdoj.gov

5

**JA372**

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2021, I filed the foregoing with the Clerk of Court and emailed an un-redacted copy of same to all counsel of record.

By:      /s/
William G. Clayman
Special Assistant United States Attorney (LT)
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700
Email: william.g.clayman@usdoj.gov

6

**JA373**

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | **Criminal No. 1:20-cr-143** |
| | ) | |
| ZACKARY ELLIS SANDERS, | ) | |
| Defendant. | ) | |

## ORDER

At issue in this prosecution for production, receipt, and possession of child pornography is whether Defendant Zackary Sanders is entitled to discovery regarding a hypothesized Title III warrant and/or pen register/trap and trace order that defendant claims the government obtained as part of its investigation into defendant's family's IP address. On May 6, 2021, more than eight months after the deadline for pretrial motions in this case, defendant filed the instant motion to compel. The matter has been fully briefed. Because the facts and legal contentions are clear from the record, oral argument is unnecessary and would not aid the decisional process. Accordingly, the matter is ripe for disposition. For the reasons that follow, even assuming that defendant's motion is timely, defendant's motion to compel must be denied.

### I.

The circumstances surrounding the charges in this case are well-established and need not be discussed at length here. However, the facts necessary for the disposition of defendant's motion will be summarized below:

On February 10, 2020, Federal Bureau of Investigation ("FBI") Special Agent Christopher Ford applied for a search warrant for defendant Zackary Ellis Sanders's residence. In connection with the warrant application, Special Agent Ford prepared a search warrant affidavit. The affidavit is based largely on a tip from a Foreign Law Enforcement Agency ("FLA") that defendant's

1

**JA374**

family's IP address accessed online child sexual abuse and exploitation material using The Onion Router ("Tor"), and makes no mention of any Title III warrant and/or pen register/trap and trace order. On February 10, 2020, Magistrate Judge John F. Anderson authorized a search warrant for the residence, and, on February 12, 2020, the FBI executed the search warrant. On June 24, 2020, a federal grand jury returned a twelve-count indictment charging defendant with five counts of production of child pornography in violation of 18 U.S.C. § 2251(a) and § 2251(e), six counts of receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) and § 2252(b)(1), and one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and § 2252(b)(2).

On July 13, 2020, defendant filed his first motion to compel, which sought discovery under Rule 16, Fed. R. Crim. P., *Brady v. Maryland*, and the Sixth Amendment related to (i) whether the government had actual evidence that the defendant's family's IP address "accessed online child sexual abuse and exploitation material via a website," Search Warrant Affidavit at ¶ 23, and (ii) whether Special Agent Ford knew whether the FLA had used an investigative method to interfere with, access, search, and/or seize data from a computer in the United States to generate its tip to the FBI. After extensive briefing and oral argument, a Memorandum Opinion and Order issued on August 21, 2020 denying defendant's motion to compel. *See United States v. Sanders*, Case No. 1:20-cr-143 (E.D. Va. Aug. 21, 2020) (Memorandum Opinion and Order). The Memorandum Opinion found that defendant sought to engage in a fishing expedition to support defendant's speculative theories that the search warrant affidavit contained intentional misrepresentations material to a finding of probable cause. Additionally, the Memorandum Opinion found that defendant could not satisfy Rule 16's materiality requirement in the absence of a specific factual showing that the government possessed information helpful to defendant.

2

**JA375**

On August 28, 2020, defendant filed a motion to suppress and to reconsider his motion to compel. That same day, defendant's motion was stricken without prejudice because it exceeded eighty pages and was filed without first receiving permission from the Court, in violation of Local Rule 47(F)(3). *See United States v. Sanders*, Case No. 1:20-cr-143 (E.D. Va. Aug. 28, 2020) (Order). On September 2, 2020, defendant filed a motion for reconsideration of his motion to compel, this time in compliance with the Local Rules. On September 10, 2020, an Order issued denying defendant's motion on the ground that defendant failed to meet the requirements of a motion to reconsider and, even if the Court exercised its discretion to grant reconsideration of defendant's motion to compel, defendant's request continued to fail to satisfy the materiality requirement of Rule 16, Fed. R. Crim. P. *See United States v. Sanders*, Case No. 1:20-cr-143 (E.D. Va. Sept. 10, 2020) (Order).

On November 27, 2020, defendant filed another motion to compel. Although labeled by defendant as a motion to compel, the motion was more accurately considered a renewed motion to reconsider defendant's motion to compel originally denied on August 21, 2020, as it again sought to compel the government to produce evidence reflecting how the government linked defendant to the Target Website and what the government understood regarding defendant's actions on the Target Website as reflected in Special Agent Christopher Ford's Affidavit in support of the Search Warrant. On January 26, 2021, defendant's motion to compel was denied. The denial was based on the conclusion that defendant's motion "present[ed] pure speculation in support of a groundless fishing expedition into the government's records." *United States v. Sanders*, Case No. 1:20-cr-143 (E.D. Va. Jan. 26, 2021) (Order).

On May 6, 2021, defendant filed the instant motion to compel, more than eight months after the deadline for pretrial motions in this case. Although defendant has not addressed the

3

**JA376**

untimeliness of his motion, it appears that defendant contends he has good cause for the delay based on defendant's claim that his newest motion to compel is based on "new evidence the government has just now produced"—specifically the subpoenas that the government relied on to obtain defendant's family's IP address from the internet service provider. *See* Def. Mot. to Compel, 1 (Dkt. 315). Such a claim is clearly false.

Defendant contends that the subpoenas newly produced by the government introduce "new" evidence that defendant did not actually "access child sexual abuse and exploitation material" on the Target Website and that the investigation into the Target Website included many IP addresses, not just that of defendant's family. In fact, neither of these assertions is new. The first assertion remains speculation on the part of defendant that is belied by the FLA Tip and that, even if true, by itself does not undermine the magistrate judge's authorization of the search warrant.[1] Importantly, this first assertion is far from "new," as it served as a central basis for defendant's earlier motions to suppress.

Next, defendant's second assertion—that the FBI's investigation into Target Website went beyond defendant alone—has been recognized as fact by defendant, the government, and the Court

---

[1] The repetitiveness of defendant's supposedly new argument and the validity of the Search Warrant are made clear in the January 26, 2021 Order denying defendant's previous motion to compel and in the October 26, 2020 Memorandum Opinion denying defendant's motions to suppress:

> [O]n its face, the FLA Tip states that the user of the target IP address "accessed online child sexual abuse and exploitation material," not that the user accessed only the Target Website's homepage. However, even if the FLA Tip were read to mean that the target IP address user visited only the Target Website's homepage, "the information in the Affidavit noting the steps the Target IP Address user was required to take to navigate to the [Target Website] warrants the inference that the Target IP Address user's arrival at the [Target Website] was purposeful, that is the Target IP Address user's purpose was to access the website and its illegal content." *United States v. Sanders*, Case No. 1:20-cr-143 (E.D. Va, October 26, 2020) (Memorandum Opinion). Furthermore, it is important to note that the mere fact that the website's homepage did not mention child pornography does not alter the conclusion, as indicated in the Affidavit and as evident from the screenshots of the website, that the website was dedicated to child pornography. Thus, the magistrate judge was in no way misled about the Target Website or its contents.

*United States v. Sanders*, Case No. 1:20-cr-143, at 2 n.1 (E.D. Va, Jan. 26, 2021) (Order).

4

from early in the proceedings. Indeed, the government has repeatedly emphasized the ongoing nature of the investigation into the Target Website as a rationale for keeping key elements of the case under seal. In other words, the contention that the newly produced subpoenas create a new basis for a motion to compel that requires urgent consideration by the Court is plainly false. Nonetheless, despite the fact that defendant's motion to compel is clearly untimely—and untimely without good cause, *see United States v. Samuel*, Case No. 1:14-cr-351, 2015 WL 1442884, at *3 (E.D. Va. Mar. 26, 2015), aff'd, 674 F. App'x 322 (4th Cir. 2017)—the Court will assume *arguendo* that the motion is timely and rule on the merits.

In defendant's instant motion to compel, defendant seeks to compel the government to produce any Title III warrant and/or pen register/trap and trace order that defendant claims the government must have obtained as part of its investigation into defendant's family's IP address. Defendant contends that he has a right to the production of these materials based on Rule 16, Fed. R. Crim. P., *Brady v. Maryland*, and the Fifth and Sixth Amendments.

## II.

The standard for materiality under Rule 16 was examined in depth in the Memorandum Opinion denying defendant's original motion to compel and in the subsequent Order denying defendant's motion later renewed motion to reconsider his motion to compel. See *United States v. Sanders*, Case No. 1:20-cr-143 (E.D. Va, August 21, 2020) (Memorandum Opinion and Order); *United States v. Sanders*, Case No. 1:20-cr-143 (E.D. Va, Jan. 26, 2021) (Order). Important here, in order to compel discovery under Rule 16(a)(1)(E),[2] a defendant must "present facts which would

---

[2] Rule 16(a)(1)(E), Fed. R. Crim. P. provides:

Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use

5

**JA378**

tend to show that the Government is in possession of information helpful to the defense." *United States v. Caro*, 597 F.3d 608, 621 (4th Cir. 2010) (quoting *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990)). In this respect, courts have held that "[n]either a general description of the information sought nor conclusory allegations of materiality suffice." *Id.* As with defendant's original motion to compel and his subsequent motions to reconsider his motion to compel, defendant's motion to compel fails because defendant offers only conclusory, conspiratorial speculation that the government possesses additional information that would aid defendant.

Seeking to avoid this conclusion, defendant argues (i) that the subpoena that the government used to obtain the subscriber information for defendant's family's IP address included a significant number of IP addresses under investigation; and therefore (ii) that the government necessarily must have applied for a Title III warrant and/or pen register/trap and trace order to narrow the investigation and to decide to apply for a search warrant for defendant's family's home.[3] This is pure conspiratorial conjecture.

To begin with, the government has stated in no uncertain terms that "the FBI did not 'obtain a Title III warrant and/or Pen Register/Trap and Trace order(s)' in connection with the investigation of [defendant's] IP address." Gov't Resp., at 4 (Dkt. 350). Moreover, even absent the government's statement that it does not have any material to produce in response to defendant's speculative, defendant has failed to give any "indication that the pretrial disclosure of the disputed evidence would [] enable[] the defendant significantly to alter the quantum of proof in his favor." *Caro*, 597 F.3d at 621 (quoting *United States v. Ross*, 511 F.2d 757, 763 (5th Cir. 1975)).[4] In other

---

the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant.

[3] In advancing defendant's theory, defendant does not explain why the government did not include any information beyond the FLA Tip in the Special Agent Ford's affidavit in support of the Search Warrant if the government did in fact apply for a Title III warrant and/or pen register/trap and trace order.

[4] The requirement that evidence be "material" is satisfied "as long as there is a strong indication that [the material

6

words, defendant has not "present[ed] facts which would tend to show that the Government is in possession of information helpful to the defense." *Id.* This is so because defendant merely speculates that the government applied for a Title III warrant and/or pen register/trap and trace order, and that the hypothetical warrant or order would prove helpful to the defense. Notably, defendant speculates as much despite the fact that (i) the government has stated that the FBI did not apply for such a warrant or order, and (ii) even if the government applied for such a warrant, it did not serve as the basis for the Search Warrant or any other evidence expected to be offered at trial. This speculation is insufficient to support a motion to compel under Rule 16.

Defendant's request for discovery pursuant to *Brady v. Maryland* and the Fifth Amendment also fails. The Due Process Clause requires the government to disclose "evidence favorable to an accused on request . . . where the evidence is material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Importantly, the Fourth Circuit has made clear that Rule 16 differs from *Brady* in that *Brady* "provides the minimum amount of pretrial discovery granted in criminal cases." *Caro*, 597 F.3d at 620 (citing *United States v. Baker*, 453 F.3d 419, 424 (7th Cir. 2006)). For the reasons described above, defendant has not put forward non-conclusory arguments as to how the requested discovery is material and helpful to the defense. Similarly, with respect to *Brady*, a narrower avenue of discovery than Rule 16, defendant has failed to show that the government possesses any potentially exculpatory evidence that the government has not provided to defense counsel.

Defendant's request for discovery pursuant to the Sixth Amendment must also be denied. The Sixth Amendment guarantees criminal defendants the effective assistance of counsel.

---

requested] will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Caro*, 597 F.3d at 621 (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)).

7

**JA380**

*Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). Defendant has not presented any authority or argument that supports the existence of a discovery obligation rooted in the Sixth Amendment. Thus, the Sixth Amendment does not provide an independent basis for obtaining discovery in this matter.

Additionally, defendant's request for *in camera* review fails. As the Fourth Circuit has made clear, *in camera* review is warranted only in "atypical" *Brady* cases in which the defendant cannot specifically prove the materiality of suppressed evidence because the government has not turned it over. *See United States v. King*, 628 F.3d 693, 702–03 (4th Cir. 2011). Importantly, in those cases, the defendant must make "'some plausible showing' that exculpatory material exists." *Id.* at 703 (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 58 n. 15 (1987)). Moreover, "[m]ere speculation that the information may be helpful is insufficient to justify an *in camera* review," *United States v. Savage*, 885 F.3d 212, 221 (4th Cir. 2018). Here, defendant has failed to make a plausible showing that the sought-after material would be helpful or that the material exists. Thus, defendant's request for *in camera* review fails.

In summary, defendant is not entitled to compel discovery here because defendant has not satisfied the materiality requirement under Rule 16, Fed. R. Crim. P. Defendant has again failed to provide facts—as opposed to conclusory speculation—that the government is in possession of information helpful to the defense. Nor has defendant shown that *Brady v. Maryland* or any other legal authority provides a basis for permitting either additional discovery or *in camera* review in this case.

Accordingly,

It is hereby **ORDERED** that defendant's Motion to Compel (Dkt. 315) is **DENIED**.

Alexandria, Virginia
May 26, 2021

/s/

T. S. Ellis, III
United States District Judge

8

**JA381**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 1:20-cr-00143 |
| | Honorable T.S. Ellis, III |
| v. | Trial: October 19, 2021 |
| ZACKARY ELLIS SANDERS, | **EVIDENTIARY HEARING** |
| Defendant. | **REQUESTED** |

### ZACKARY ELLIS SANDERS'S RENEWED MOTION TO SUPPRESS STATEMENTS TAKEN IN VIOLATION OF *MIRANDA V. ARIZONA*

Mr. Zackary Ellis Sanders, by and through counsel, respectfully submits this renewed motion to suppress statements taken in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966) (Dkt. 149, 150). This Motion is supported by a Memorandum in Support.

Respectfully submitted,
ZACKARY ELLIS SANDERS
By Counsel

Respectfully submitted,

_____/s/_____
Jonathan Jeffress (#42884)
Jade Chong-Smith (admitted *pro hac vice*)
KaiserDillon PLLC
1099 Fourteenth St., N.W.; 8th Floor—West
Washington, D.C.  20005
Telephone: (202) 683-6150
Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com

_____/s/_____
Nina J. Ginsberg (#19472)
Zachary Deubler (#90669)
DiMuroGinsberg, P.C.
1101 King Street, Suite 610
Alexandria, VA 22314
Telephone: (703) 684-4333
Facsimile: (703) 548-3181
Email: nginsberg@dimuro.com
Email: zdeubler@dimuro.com

_____/s/_____
Mark J. Mahoney (admitted *pro hac vice*)
Harrington & Mahoney
70 Niagara Street, 3rd Floor
Buffalo, New York 14202-3407
Telephone: 716-853-3700
Facsimile: 716-853-3710
Email: mjm@harringtonmahoney.com

_____/s/_____
H. Louis Sirkin (*pro hac vice* pending)
600 Vine Street, Suite 2700
Cincinnati, OH 45202
Telephone: (513) 721-4450
Facsimile: (513) 721-0109
Email: hls@santenhughes.com

*Counsel for Defendant Zackary Ellis Sanders*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was served this 19th day of August 2021, on all counsel of record.

*/s/ Jonathan Jeffress*
Jonathan Jeffress

2

**JA383**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA,

                           Plaintiff,

        v.

ZACKARY ELLIS SANDERS,

                           Defendant.

Case No. 1:20-cr-00143
Honorable T.S. Ellis, III
Trial: October 19, 2021

**[PROPOSED] ORDER**

This matter is before the Court on Mr. Sanders's renewed motion to suppress statements

taken in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966) (Dkt. 149, 150).  Based on the

reasons stated therein, any Opposition thereto, and for good cause shown, the Motion is

**GRANTED**; it is further **ORDERED** that Mr. Sanders's Motion to Suppress Statements (Dkt.

No. 149) will be considered by this Court.

_____

THE HONORABLE JUDGE ELLIS

UNITED STATES DISTRICT COURT JUDGE

Date: _____

**JA384**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br> v.<br><br>ZACKARY ELLIS SANDERS,<br><br>      Defendant. | Case No. 1:20-cr-00143<br>Honorable T.S. Ellis, III<br>Trial: October 19, 2021<br><br>**EVIDENTIARY HEARING<br>REQUESTED** |

**MEMORANDUM IN SUPPORT OF RENEWED MOTION TO SUPPRESS
STATEMENTS TAKEN IN VIOLATION OF *MIRANDA V. ARIZONA***

Mr. Zackary Ellis Sanders, by and through counsel, respectfully submits this renewed
motion to suppress statements taken in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966)
(Dkt. 149, 150).

Since the defense submitted Mr. Sanders's motion to suppress statements on December
17, 2020 (Dkt. 149, 150), and filed related motions *in limine* to exclude Mr. Sanders's statements
(Dkt. 153, 154, 207), trial has been continued to October 19, 2021 (Dkt. 418).

Given that trial has been continued until October 19, 2021, that there are now 61 days
until trial, that the law enforcement witnesses the government would call to testify at an
evidentiary hearing are likely the same agents who would testify at trial, and that there is no need
to arrange travel or lodging in the Eastern District of Virginia for such witnesses, the government
cannot plausibly claim any prejudice from having to participate in a hearing on Mr. Sanders's
motion.

**JA385**

**DISCUSSION**

The interests of justice weigh in favor of this Court ruling on the suppression issues

presented in Mr. Sanders's motion to suppress statements.  First, there would be no prejudice to

the government in fully litigating Mr. Sanders's motion to suppress statements, given that there

are now 61 days until trial, the government has resources to both prepare for trial and litigate

such a motion in the ensuing 61 days, and COVID-19 will no longer impose undue obstacles.

The reasons the Court previously relied on in refusing to consider Mr. Sanders's motion

to suppress statements carry little, if any, weight now that there are 61 days until trial and

COVID-19 is unlikely to cause any serious or undue burdens.  The same government witnesses

who will likely testify at trial would also be able to testify at an evidentiary hearing, and those

agents live or work nearby.  As a result, there should only be minimal, if any, additional burden

on the government to prepare for such a hearing, and there should be no need to make travel or

lodging arrangements that could be disrupted by COVID-19.

COVID-19 no longer poses the challenges it did in January 2021.  On April 18, 2021,

Virginia's COVID-19 vaccine eligibility opened to all Virginians age 16 and up.[1]  On May 14,

2021, Governor Northam lifted Virginia's mask mandate to align with guidance from the Centers

for Disease Control and Prevention, and announced that Virginia would end COVID-19

mitigation measures on May 28, 2021.[2]  On June 21, 2021, 70 percent of adult Virginians had

---

[1] *Virginia's COVID-19 Vaccine Eligibility Opens for All Adults on Sunday*,  Virginia Governor Ralph S. Northam, available from https://www.governor.virginia.gov/newsroom/all-releases/2021/april/headline-894469-en.html (last accessed August 17, 2021).

[2] *Governor Northam Lifts Mask Mandate to Align with CDC Guidance, Announces Virginia to End COVID-19 Mitigation Measures on May 28*, available from: https://www.governor.virginia.gov/newsroom/all-releases/2021/may/headline-895235-en.html (last accessed August 17, 2021).

**JA386**

received at least one COVID-19 vaccine dose.[3]  Thus, the Court's previous concerns about

COVID-19 delaying proceedings are no longer applicable.  Dkt. 196 at 4 ("Court reasoning that

"[a]lthough the motion to suppress was filed fifty-three (53) days before the current trial date,

[February 9, 2021,] the motion, along with defendant's request for an evidentiary hearing, would

be all but certain to delay the current trial given the difficulties surrounding travel and courtroom

procedures during the Covid-19 pandemic.").

      The Court previously reasoned that its consideration of the motion to suppress would

prejudice the government because it was "in the midst of responding to defendant's motions *in*

*limine* and preparing for trial [on February 9, 2021]."  *Id.* at 5.  The next day, the Court granted a

pending consent motion to continue (Dkt. 192) and rescheduled the trial from February 9, 2021,

to April 26, 2021 (Dkt. 204).  The government previously claimed that allowing Mr. Sanders to

litigate the motion to suppress "would prejudice the government by requiring it to divert

resources from the trial," which at that point was more than three months away, "and prepare for

an evidentiary hearing in the midst of a pandemic, while the denial of his motion was unlikely

seriously to prejudice him."  Dkt. 235 at 2.  At this point, given that the trial was again

continued, this time less than three weeks before it was previously scheduled to begin on July 12,

2021, the government cannot plausibly claim prejudice from being required to litigate the motion

to suppress statements this far in advance of trial.  Dkt. 418 at 2-3.

      Second, the suppression issue should be heard on the merits because this is a very serious

case for Mr. Sanders and his family.  Mr. Sanders is just 26 years old.  The government's current

plea offer involves a 15-year mandatory minimum, a sentence that would virtually guarantee that

---

[3] *Governor Northam Announces 70 Percent of Adult Virginians Have Received at Least One COVID-19 Vaccine Dose*, available from: https://www.governor.virginia.gov/newsroom/all-releases/2021/june/headline-897920-en.html (last accessed August 17, 2021).

**JA387**

Mr. Sanders would never again see his father (who is 83) except during prison visits, and could very well mean the same for his 63-year-old mother, who is recovering from breast cancer. Given the very serious consequences at stake here, the interests of justice weigh in favor of addressing the violation of Mr. Sanders's constitutional rights.

## **CONCLUSION**

For all of the above reasons, and any others appearing to the Court, the interests of justice and the efficient administration of the criminal legal system counsel in favor of litigating these issues in advance of trial, which will not cause any prejudice to the government. Accordingly, this Court should consider Mr. Sanders's motion to suppress statements taken in violation of *Miranda,* 384 U.S. 436.

<div align="right">

Respectfully submitted,

_____/s/_____
Jonathan Jeffress (#42884)
Jade Chong-Smith (admitted *pro hac vice*)
KaiserDillon PLLC
1099 Fourteenth St., N.W.; 8th Floor—West
Washington, D.C. 20005
Telephone: (202) 683-6150
Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com

</div>

4

**JA388**

            /s/
            Nina J. Ginsberg (#19472)
            Zachary Deubler (#90669)
            DiMuroGinsberg, P.C.
            1101 King Street, Suite 610
            Alexandria, VA 22314
            Telephone: (703) 684-4333
            Facsimile: (703) 548-3181
            Email: nginsberg@dimuro.com
            Email: zdeubler@dimuro.com

            /s/
            Mark J. Mahoney (admitted *pro hac vice*)
            Harrington & Mahoney
            70 Niagara Street, 3rd Floor
            Buffalo, New York 14202-3407
            Telephone: 716-853-3700
            Facsimile: 716-853-3710
            Email: mjm@harringtonmahoney.com

            /s/
            H. Louis Sirkin (*pro hac vice* pending)
            600 Vine Street, Suite 2700
            Cincinnati, OH 45202
            Telephone: (513) 721-4450
            Facsimile: (513) 721-0109
            Email: hls@santenhughes.com

            *Counsel for Defendant Zackary Ellis Sanders*

## CERTIFICATE OF SERVICE

    I hereby certify that a true and accurate copy of the foregoing was served this 19th day of August 2021, on all counsel of record.

            */s/ Jonathan Jeffress*
            Jonathan Jeffress

5

**JA389**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|                                  |   |                              |
|----------------------------------|---|------------------------------|
| UNITED STATES OF AMERICA         | ) |                              |
|                                  | ) | Case No. 1:20-CR-143         |
| v.                               | ) |                              |
|                                  | ) | Honorable T.S. Ellis, III    |
| ZACKARY ELLIS SANDERS,           | ) |                              |
|                                  | ) | Trial: October 19, 2021      |
|                      *Defendant.* | ) |                              |
|                                  | ) |                              |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
## SECOND RENEWED MOTION TO RECONSIDER HIS MOTION TO COMPEL

On August 5, 2021, the defendant filed a second renewed motion to reconsider his motion to compel—his fifth motion to compel thus far. Dkt. No. 422. The next day, he filed a supporting memorandum, arguing that the Court should revisit its prior rulings and order the government to produce some additional information about the Foreign Law Enforcement Agency's ("FLA") tip based on his speculative yet obstinate belief that the tip is partially false and that there was no probable cause to search his home. Dkt. No. 426. The United States of America, by and through undersigned counsel, files this response. For the reasons below, his motion should be denied. Further, given the Court's familiarity with this case and the baselessness of the defendant's recycled claims, a hearing on his motion would not aid the Court and is not necessary.

## BACKGROUND

The facts of this case are well known to the Court. In response to many rounds of motions, often accompanied by supplemental briefing and exhibits from the defense, the Court has issued multiple rulings with detailed factual findings. *See* Dkt. Nos. 73 (denying defendant's first motion to compel), 107 (denying motion to reconsider motion to compel), 113 (denying four motions to suppress), 196 (denying fifth motion to suppress), 237 (denying renewed motion to reconsider

**JA390**

motion to compel), 369 (denying motion to compel), 402 (deferring judgment on government's motion to exclude evidence related to defendant's untimely notice pursuant to Fed. R. Crim. P. 12.2(b)). Accordingly, the government will not repeat those facts here.

Despite the frequency and clarity of the Court's denials of his increasingly "conspiratorial" motions, Dkt. No. 369 at 6, the defendant has filed yet another motion to compel along with hundreds of pages of exhibits to "supplement the record" based on his counsel's latest theories, *see* Dkt. Nos. 422, 427-1-427-9. In his current motion, filed almost a year after the extended pretrial motions deadline, *see* Dkt. No. 72, the defendant argues that the Court must (1) alter its prior rulings based on his interpretation of the FLA's tip and (2) order the government to produce material that will confirm his enduring belief that the FLA's tip is only partially reliable[1] in the hopes of filing a seventh motion to suppress, which would itself be even further untimely, Dkt. No. 427 at 2–7; *see also* Dkt. No. 429 (defendant's untimely sixth motion to suppress). In support of his untimely motion, the defendant relies on a declaration from a private consultant with no clear experience in online child sexual abuse investigations who joined the defense team in approximately March 2021,[2] a criminal complaint filed in a different case in a different district in

---

[1] The defendant acknowledges that the FLA identified the user of his Internet Protocol ("IP") address accessing a child pornography hidden service ("Target Website") on The Onion Router ("Tor") but refuses to accept that it also identified the user of his IP address accessing child sexual and exploitation abuse material on the Target Website. To date, he has not explained why the statement in the tip that the user of his IP address accessed online child sexual abuse material on the Target Website can only be interpreted to mean the exact opposite.

[2] The defendant provided the government with a declaration from this consultant in March 2021. *See* Dkt. 427-1 at 2. This declaration, dated March 15, 2021, was attached to the defendant's initial supporting memorandum that has since been removed from the docket. The declaration attached to his current filing is dated July 30, 2021 but appears to largely repeat the claims in his original declaration. Dkt. No. 427-5 at 6. The declarations provide a complicated explanation of the consultant's understanding of the FBI's document serialization process—none of which has any bearing on whether the FBI was entitled to rely on the tip or whether the tip provided probable

March 2021, and a March 2021 phone call between recently added defense counsel and government counsel. Dkt. No. 427 at 7–16.

## ARGUMENT

The government is aware of its disclosure obligations and has complied with and will continue to comply with these obligations. In his latest motion, the defendant relies on tangential speculation to ask this Court to reconsider its discovery rulings and order the government to produce material that he believes will corroborate his unsupported theory about the FLA's tip and give him some basis to challenge the valid search warrant once again. A motion for reconsideration "can be successful in only three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Dkt. No. 237 at 3 (quoting *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007)). "A motion to reconsider will not be granted when the moving party seeks to have the Court rethink what the Court has already thought through—rightly or wrongly." *Id.* (internal quotations and citations omitted). Though the defendant ignores this standard, he appears to be asking the Court to reconsider its prior rulings based on "new evidence"—that is, the declaration, criminal complaint, and phone call referenced above.

None of this is new evidence. The consultant's declaration regurgitates the same assumptions he made about this case in March 2021, prior to the filing of the defendant's last motion to compel. *See* Dkt. Nos. 427-1 & 427-5. Moreover, the bases for his convoluted declaration—the FBI's case opening document, which notes the existence of the FBI "HQ file" that has become the desired site for the defense's next fishing expedition, *see* Dkt. No. 427-5 at

---

cause to search the defendant's home—before ultimately concluding with the consultant's opinion that the tip was insufficient to support probable cause. Dkt. No. 427-5 at 6.

3

13–16, and the three documents that form the FLA's tip—were made available to the defense in July 2020. The defendant is simply asking this Court to reconsider its prior rulings based on his bizarre spin of innocuous information about an FBI "HQ file" and the tip that the defense has been aware of since the outset of this case. The out-of-district complaint appears to have likewise come to the defendant's attention in March 2021. Dkt. No. 427 at 15. Undersigned counsel is not privy to the details of that case but, assuming it stems from the same larger investigation as this one, the single sentence he highlighted in no way suggests that the FLA's tip about his IP address is false, nor does it provide any new information. The parties have long known that the FBI's investigation extends to other targets in addition to the defendant charged here, Dkt. No. 369 at 4, and the suggestion that the government is prosecuting other individuals based on the execution of warrants related to this investigation only confirms what the government has repeatedly explained in this case and in the search warrant affidavit: the FLA is a reliable source of information and the FBI had no reason to doubt its tip that the defendant's IP address accessed child sexual abuse and exploitation material on the Target Website.

Finally, with respect to the five-month-old phone call, the government disagrees with defense counsel's characterization of that call. *See* Dkt. No. 427 at 7, 12, 17. The government has long advised that the three documents provided to the defense form the FLA's tip, which is accurately described in the search warrant affidavit here. The government has never conceded that the tip is somehow factually incomplete or inaccurate, and the defense has provided nothing more than rank speculation to suggest that there must be some other document that would support its theory that the tip is false or unreliable. As noted previously, the government has complied with its disclosure obligations. Put simply, the government is not aware of any information suggesting

4

**JA393**

that the tip is false or unreliable and defense counsel's misrepresentation of a March 2021 phone call does not constitute new evidence that warrants reconsideration of the Court's prior rulings.

But even if the defendant found new evidence not previously available, his motion still fails to provide a sufficient basis for his request. In short, for the Court to grant his motion, he must present facts—not conclusory allegations or speculation—that "would tend to show that the Government is in possession of information helpful to the defense." Dkt. No. 237 at 4 (internal citation omitted). Here, the defendant argues that there must be undisclosed, material information contradicting the tip because of a single sentence in a criminal complaint issued in another case in March 2021 and the March 2021 phone call referenced above.[3] Dkt. 427 at 16–17. The complaint, however, does not contradict the tip's suggestion that the user of his IP address accessed child sexual abuse and exploitation material on the Target Website or prove that the government is in possession of any such contradictory information. As noted above, the government's prosecution of other individuals based on information provided by the FLA would only confirm that the FBI believed the tip regarding his IP address to be accurate and reliable. And as also noted above, the defense's characterization of a five-month-old phone call is inaccurate. The government has never agreed that the tip is false or materially incomplete. Nor has the defendant provided any facts to substantiate this claim. Indeed, all he has presented is his "repeated incantation" that he only accessed the homepage of the Target Website based on a selective reading of the tip. Dkt. No. 73 at 11. It is, of course, unsurprising that the defendant refuses to acknowledge the plain meaning of

---

[3] He also argues that this hypothetical information must exist based on his strained reading of the search warrant affidavit and the FLA's tip documents, all of which have long been available to him. Dkt. No. 427 at 16–17. These arguments have already been raised and appropriately rejected by the Court as baseless conjecture. Neither of these arguments provides any proof that the FBI believes that the FLA's tip is false. The fact that the defendant has added to his legal team since the Court rejected these unfounded claims does not entitle him to have them reconsidered.

5

the tip's statement that he accessed child sexual abuse and exploitation material on the site, the majority of which is only available to members, because the only logical conclusion to draw from that statement is that the defendant was likely a member of the site who did far more than access its homepage.

The defendant also claims that the government has failed to comply with its obligations under *Kyles v. Whitley*, 514 U.S. 419 (1995), in essence because the government has not provided him with his requested access to the "FBI's HQ case file." Dkt. No. 427 at 18–19. This, too, is incorrect. The government has complied with its discovery obligations and has provided the defendant with material related to his IP address from that file. The defendant's wishful speculation that there must be some additional document or communication stating that the FLA's tip is false or misleading in this file does not make it so and is insufficient to support the requests in his instant motion. The government is aware of its discovery obligations, has consulted with the prosecution team, and will promptly produce exculpatory material if any becomes available.

Finally, the defendant mischaracterizes the relevant caselaw to argue that the Court must "clarify" its rulings to "create an accurate and complete record" that adopts his interpretation of the facts.[4]  Dkt. No. 427 at 3–5, 18. That is not a proper basis to ask this Court to reconsider its prior rulings, particularly considering that this is now the defendant's fifth motion to compel, and it is inappropriate for defense counsel to cast evident dissatisfaction with the Court's rulings as a lack of clarity. In any event, the Court's rulings are clear and consistent with controlling precedent. As the Court has accurately explained, the tip states "on its face" that the user of the defendant's

---

[4] While the defendant claims that he has "no other way" of obtaining the hypothetical material he needs to supplement the already voluminous record in this case than by filing his five motions to compel, Dkt. No. 427 at 18, he has also filed FOIA lawsuits in the United States District Courts for the District of Columbia and the District of Maryland to work around the Court's discovery rulings and obtain this hypothetical document contradicting the tip that he insists must exist.

6

**JA395**

IP address accessed child sexual abuse material on a hidden service dedicated to such content on the Tor anonymity network—as opposed to on the open internet, like many of the cases cited in the defendant's motion—which is sufficient to establish probable cause to search his residence. Dkt. No. 237 at 2 n.1; *see also* Dkt. No. 113 at 7–8 (citing *United States v. Bosyk*, 933 F.3d 319 (4th Cir. 2019)). The Court has also explained that the defendant has unnecessarily "spill[ed] much ink arguing" that he did not access child sexual abuse material on the Target Website because, even assuming *arguendo* that the defendant's atextual reading of the tip is somehow correct, that distinction is immaterial to the Court's probable cause determination. *Id.* The many affirmative steps that the user of the defendant's IP address would have to take to navigate to the Target Website on Tor supports the conclusion that the user did so intentionally to access the child sexual abuse material on the website, which is sufficient to establish probable cause to believe that evidence of a crime would be found at the defendant's home. Dkt. No. 237 at 2 n.1. In other words, there is nothing to clarify, and the defendant's request is simply designed to have this Court rethink what it has already thought through and clearly articulated on multiple occasions.

<u>**CONCLUSION**</u>

For the foregoing reasons, the government respectfully requests that the Court deny the defendant's second renewed motion to reconsider his motion to compel. Further, given the Court's familiarity with this case and the baselessness of the defendant's recycled claims, a hearing on his motion would not aid the Court and is not necessary.

Respectfully submitted,

Raj Parekh
Acting United States Attorney

By:          /s/
_____
William G. Clayman
Special Assistant United States Attorney (LT)

7

**JA396**

Jay V. Prabhu
Seth M. Schlessinger
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703-299-3700
Fax: 703-299-3981
Email: william.g.clayman@usdoj.gov
Email: jay.prabhu@usdoj.gov
Email: seth.schlessinger@usdoj.gov

8

**JA397**

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2021, I filed the foregoing with the Clerk of Court and

emailed an un-redacted copy of same to all counsel of record.


By:    _____/s/_____

William G. Clayman
Special Assistant United States Attorney (LT)
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700
Email: william.g.clayman@usdoj.gov

9

**JA398**

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | )    Criminal Action No. 1:20-cr-143 |
| | ) |
| ZACKARY ELLIS SANDERS, | ) |
| Defendant. | ) |

### ORDER

This matter comes before the Court on Defendant Zackary Sanders's Motion to Supplement the Record and Renew His Motion to Compel Exculpatory Material or, in the Alternative, to Submit Exculpatory Material for *In Camera* Review (Dkt. 422). Although labeled by defendant as a Motion to Compel, the motion is more accurately considered a second renewed motion to reconsider defendant's motion to compel originally denied on August 21, 2020. *See United States v. Sanders*, Case No. 1:20-cr-143 (E.D. Va, Aug. 21, 2020) (Memorandum Opinion and Order).[1] Because the matter has been fully briefed and because the facts and legal contentions are clear from the record, oral argument is unnecessary and would not aid the decisional process. The matter is therefore ripe for disposition.

### I.

The pertinent facts in this case have been reiterated many times in previous memorandum opinions and orders and need not be repeated here. *See, e.g.*, *United States v. Sanders*, Case No. 1:20-cr-143 (E.D. Va, October 26, 2020) (Dkt. 113-14) (Memorandum Opinion and Order).

As has been made clear in past Orders, a motion for reconsideration can be successful in

---

[1] On September 10, 2020, defendant's first motion to reconsider his motion to compel was denied. *See United States v. Sanders*, Case No. 1:20-cr-143 (E.D. Va, Sept. 10, 2020) (Dkt. 107) (Sealed Order). On January 26, 2021, defendants' renewed motion to reconsider his motion to compel was denied. *See United States v. Sanders*, Case No. 1:20-cr-143 (E.D. Va, Jan. 26, 2021) (Order).

1

only three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence; or (3) to correct a clear error of law or prevent manifest injustice. *See Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007). Despite the fact that this motion represents defendant's fourth attempt to litigate this issue and third attempt to have the Court "rethink what the Court ha[s] already thought through—rightly or wrongly,"[2] defendant fails to address the standard for a motion to reconsider. Nevertheless, it is apparent from defendant's memorandum in support of his motion and defendant's reply brief that defendant's central ground for reconsideration is new evidence that defendant claims was not previously available. Although defendant presents new evidence including the criminal complaint in *United States v. Corwin* and a second declaration from Anthony Ferrante, the evidence merely regurgitates the same failed arguments that have already been considered—and rejected—by the Court. Neither citations to *United States v. Corwin* nor Anthony Ferrante's second declaration alter the analysis or the result reached previously. Defendant's second renewed motion to reconsider his motion to compel must therefore be denied.

Accordingly,

It is hereby **ORDERED** that defendant's Second Renewed Motion to Reconsider his Motion to Compel (Dkt. 422) is **DENIED**.

It is further **ORDERED** that the hearing in this matter scheduled for August 27, 2021 is **CANCELLED**.

The Clerk is directed to provide a copy of this Order to all counsel of record.

Alexandria, Virginia
August 25, 2021

T. S. Ellis, III
United States District Judge

---

[2] *United States v. Dickerson*, 971 F. Supp. 1023, 1024 (E.D. Va. 1997) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)).

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:20-CR-143 |
| v. | ) | |
| | ) | Honorable T.S. Ellis, III |
| ZACKARY ELLIS SANDERS, | ) | |
| | ) | Trial: October 19, 2021 |
| *Defendant.* | ) | |
| | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S SECOND
RENEWED MOTION TO RECONSIDER THE COURT'S DENIAL OF DEFENDANT'S
FIFTH MOTION TO SUPPRESS AS UNTIMELY**

On August 19, 2021, the defendant filed a "Renewed Motion to Suppress Statements Taken

in Violation of *Miranda v. Arizona*," and a supporting memorandum. Dkt. Nos. 429 and 430. While

styled as a renewed motion to suppress, his latest filing is more accurately described as a second

renewed motion for this Court to reconsider its Order denying his fifth motion to suppress as

untimely. Dkt. No. 196. The United States of America, by and through undersigned counsel, files

this response. For the reasons below, his motion should be denied. Further, because the defendant

has again failed to show good cause for his extremely untimely filing, his request for an evidentiary

hearing on September 10, 2021, is premature and should be denied.

**BACKGROUND**

On July 10, 2020, the defendant appeared before this Court for his arraignment, at which

the Court set the deadline for pretrial motions as August 20, 2020.[1] Dkt. No. 34. On August 20,

---

[1] The facts of this case are well known to the Court and will not be repeated in full here. *See* Dkt.
Nos. 73 (denying defendant's first motion to compel), 107 (denying motion to reconsider motion
to compel), 113 (denying four motions to suppress), 196 (denying fifth motion to suppress), 237
(denying renewed motion to reconsider motion to compel), 369 (denying motion to compel), 402

2020, the Court granted in part the defendant's motion for an extension of the briefing schedule and reset the deadline for pretrial motions as August 27, 2020. Dkt. No. 72. On August 27, 2020, the defendant filed an eighty-page motion to suppress and a motion for leave to exceed the thirty-page limit for motions set by the Local Criminal Rules. Dkt. Nos. 75 and 77. The Court struck the motion to suppress for failing to comply with the required page limit and permitted the defendant to refile his motion within a forty-page limit by September 2, 2020. Dkt. No. 80. On September 2, 2020, the defendant filed four motions to suppress and a motion to reconsider his first motion to compel, which the Court had previously denied. Dkt. Nos. 81, 83, 85, 87, and 88. None of the defendant's motions to suppress sought to suppress the incriminatory statements he made to law enforcement regarding his possession of child sexual abuse material during the search of his home, which are detailed in the affidavit in support of the criminal complaint and have been known to defense counsel since the outset of this case.

Over one hundred days after the deadline for pretrial motions and without leave of the Court or any explanation at all, the defendant filed a motion to suppress these statements based on *Miranda v. Arizona*, 384 U.S. 436 (1966), and requested an evidentiary hearing. Dkt. No. 149. The following day, the Court issued an Order requiring the defendant to show cause as to why his motion was filed one hundred and twelve days late. Dkt. No. 152. After receiving briefing from both parties, the Court denied the defendant's motion as untimely, finding that: (1) his untimely motion would delay the trial date; (2) he provided no adequate or persuasive reason for the extreme untimeliness of his motion; (3) his untimely motion would likely prejudice the government; (4)

---

(deferring judgment on government's motion to exclude evidence related to defendant's untimely notice pursuant to Fed. R. Crim. P. 12.2(b)).

**JA402**

denial of his untimely motion would not prejudice him; and (5) he had not received any new information to justify his untimely filing. Dkt. No. 196.

On January 13, 2021, the defendant filed a renewed motion for leave for this Court to consider his untimely fifth motion to suppress, noting that the trial had been continued due to COVID-19. Dkt. No. 213. On February 4, 2021, the Court denied the defendant's renewed motion, explaining that the defendant still failed to provide an adequate reason for filing his fifth motion to suppress more than three months after the filing deadline, especially given that he had all the information needed to file the motion long before that deadline. Dkt. No. 245. The Court also noted that accepting the defendant's tardy motion would still prejudice the government and that he will not be prejudiced because he has other avenues to raise the claims in his motion. *Id*.

Two hundred and twenty-four days after the Court's Order denying his motion as untimely—and approximately two weeks before the government's deadline to respond to the defendant's similarly untimely notice of his intent to present expert evidence at trial relating to an alleged mental disease or defect bearing on his guilt, pursuant to Federal Rule of Criminal Procedure 12.2(b)—the defendant has "renewed" his fifth motion to suppress, implicitly asking the Court to reconsider its rulings on the untimeliness of his motion, and has requested that the Court set an evidentiary hearing on his denied motion to suppress. Dkt. Nos. 429 and 430.

## ARGUMENT

A motion for reconsideration "can be successful in only three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Dkt. No. 237 at 3 (quoting *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007)). The defendant's second renewed motion for reconsideration of this Court's Order denying his motion to suppress fails to

**JA403**

address the relevant standard for reconsideration. Instead, he simply states that the trial date has been continued—a continuance, it should be noted, that was necessitated by his extremely untimely notice pursuant to Federal Rule of Criminal Procedure 12.2(b) of his intent to present expert evidence related to a purported mental defect that bears on his guilt—and highlights the statutorily mandated sentence he faces. Dkt. No. 430. The defendant otherwise provides no explanation for the timing of his second renewed motion, which comes approximately two hundred days after the Court last denied his fifth motion to suppress as untimely, two months after the last trial continuance to allow for a mental health evaluation to be conducted for purposes of his untimely Rule 12.2(b) notice, and two weeks before the government's deadline to submit its opposition to the defendant's untimely notice. For the following reasons, the defendant's motion should be denied.

First, as this Court has explained, in determining whether to hear an untimely motion consistent with Federal Rule of Criminal Procedure 12(c)(3), "courts confronted with [such a] motion consider (i) the extent of the untimeliness, (ii) the reason for late filing, (iii) prejudice to the other party, and (iv) whether the receipt of additional information after the filing deadline alerted defendant to facts on which a motion to suppress might be based." Dkt. No. 245 at 1–2 (internal citations and quotation marks omitted). And as was the case when the defendant filed his first renewed motion for this Court to reconsider its denial of his motion as untimely, an unrelated trial continuance "in no way affects (ii) the reason for the late filing or (iv) whether the receipt of additional information after the filing deadline alerted defendant to facts on which a motion to suppress might be based." *Id.* at 2. This is particularly true considering that the most recent continuances were necessitated by the defendant's untimely, last-minute effort to inject into this case irrelevant and unreliable evidence in support of a legally dubious defense. Indeed, it is

4

**JA404**

undeniable that the defendant could have filed a timely motion to suppress his statements but made the strategic choice to focus on other suppression arguments. Having lost on those issues, the defendant now seeks to try his hand at suppressing his statements. Under these circumstances, he cannot establish good cause for his untimely filing as required by Rule 12. *See United States v. Robinson*, 92 F. App'x 48, 48 (4th Cir. 2004) ("Counsel's decision not to file a pretrial motion to suppress did not constitute good cause to excuse the waiver.").[2] Put simply, there is "no persuasive reason for the defendant's failure to file his fifth motion to suppress on time when he filed his four previous motions to suppress." Dkt. No. 245 at 2.

Second, as this Court has stated multiple times, "denial of defendant's tardy motion is unlikely seriously to prejudice defendant because defendant has other avenues to raise the claims in his motion." *Id.* at 3. The government, on the other hand, continues to be prejudiced by the constant stream of untimely motions and filings from the various members of his expanding

---

[2] *See also United States v. Abdi*, 827 F. App'x 499, 504 (6th Cir. 2020) ("Such a decision to wait and see how the court rules on an earlier motion before filing another one based on previously available evidence is not good cause for months of delay." (internal citations and quotation marks omitted)); *United States v. Andres*, 960 F.3d 1310, 1316 (11th Cir. 2020) (rejecting untimely pre-trial suppression motion because "no good cause exists if the defendant had all the information necessary to bring a Rule 12(b) motion before the date set for pretrial motions, but failed to file it by that date." (internal citations and quotations marks omitted)); *United States v. Boliaux*, 915 F.3d 493, 496 (7th Cir. 2019) (noting that counsel's conscious decision not to raise a suppression argument prior to the pre-trial motions deadline "is exactly the kind of strategy that Rule 12(b)(3) is designed to block")*; United States v. Pittman*, 816 F.3d 419, 424 (6th Cir. 2016) ("Parties generally cannot establish good cause for untimely filings when their tardiness results from a lawyer's conscious decision not to file a pre-trial motion before the deadline." (internal citations and quotation marks omitted)); *United States v. Yousef*, 327 F.3d 56, 125 (2d Cir. 2003) ("A strategic decision by counsel not to pursue a claim, inadvertence of one's attorney, and an attorney's failure to timely consult with his client are all insufficient to establish 'cause.'"); *United States v. Schulte*, 436 F. Supp. 3d 747, 750 n.6 (S.D.N.Y. 2020) ("Counsel neglecting to file a motion, despite ample opportunity to do so, with no reasonable excuse—does not establish good cause."); *United States v. Robinson*, 357 F. Supp. 3d 221, 223 (E.D.N.Y. 2019) ("Put another way, he made a strategic decision not to advance the Defendant's motion [to suppress], and now regrets not doing so because he is more confident in his chances than he was at the time. However, the law is clear that the strategic decisions of counsel cannot establish cause under Rule 12(c)(3).").

**JA405**

defense team—including, most recently, the instant motion, his recently denied fifth motion to compel, and his untimely notice pursuant to Rule 12.2(b), the last of which has required the government to retain a forensic psychologist to extensively evaluate the defendant and prepare briefing that addresses the validity of the defendant's untimely defense based on that evaluation. Indeed, the government's briefing in response to the defendant's untimely 12.2(b) notice is due on September 3, 2021, and the government has now had to divert time and resources away from addressing that issue to address his meritless fifth motion to compel and this meritless motion to reconsider the Court's denial of a motion that should have been filed a year ago.

In short, the defendant has yet again failed to provide good cause for this Court to consider his extremely untimely filing. *See United States v. Walden*, 625 F.3d 961, 965–66 (6th Cir. 2010) ("At a minimum, [good cause] requires the party seeking a waiver to articulate some legitimate explanation for the failure to timely file."); *United States v. Trobee*, 551 F.3d 835, 838 (8th Cir. 2009) ("Courts have a legitimate interest in the enforcement of scheduling deadlines, both to manage a pending case and to retain the credibility of these deadlines in future cases. . . . The possibility that other parties and the court could accommodate a late-filed motion does not mandate that the court grant an exception to the deadline where the movant fails to make an adequate showing of good cause."). Accordingly, his second renewed motion for this Court to reconsider its Order denying his initial motion as untimely should also be denied.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny the defendant's second renewed motion for this Court to reconsider its Order denying the defendant's fifth motion to suppress as untimely. Further, because the defendant has again failed to show good

6

**JA406**

cause for his extremely untimely motion, his request for an evidentiary hearing on September 10,

2021, is premature and should be denied.

Respectfully submitted,

Raj Parekh
Acting United States Attorney

By:  _____/s/_____
William G. Clayman
Special Assistant United States Attorney (LT)
Jay V. Prabhu
Seth M. Schlessinger
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703-299-3700
Fax: 703-299-3981
Email: william.g.clayman@usdoj.gov
Email: jay.prabhu@usdoj.gov
Email: seth.schlessinger@usdoj.gov

7

**JA407**

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2021, I filed the foregoing with the Clerk of Court and emailed an un-redacted copy of same to all counsel of record.

By: _____/s/_____
William G. Clayman
Special Assistant United States Attorney (LT)
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700
Email: william.g.clayman@usdoj.gov

8

**JA408**

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| v. | ) **Criminal Action No. 1:20-cr-143** |
| | ) |
| **ZACKARY ELLIS SANDERS,** | ) |
| **Defendant.** | ) |

**ORDER**

This twelve-count criminal prosecution for production, receipt, and possession of child pornography is set to come before the Court on September 10, 2021 for a hearing on Defendant's Motion to Suppress Statements Taken in Violation of *Miranda v. Arizona* (Dkt. 429). Defendant filed this motion on August 19, 2021, nearly one year after the motions deadline of August 27, 2020. The motion has been briefed and, for reasons stated *infra*, oral argument is unnecessary.

This is not the first time Defendant has sought suppression of statements that he made to law enforcement officers. Defendant filed his first motion to that effect on December 17, 2020 (Dkt. 149). Because that filing was submitted over one hundred days after the motions deadline, the Court ordered Defendant to show good cause for the motion's tardiness (Dkt. 152). Defendant failed to show good cause and Defendant's motion was denied as untimely (Dkt. 196).

Defendant filed a motion seeking reconsideration of that decision on January 13, 2021 (Dkt. 213). Defendant argued, in part, that because the trial date had been continued, holding a suppression hearing would not prejudice the Government. A subsequent Order concluded that Defendant—who offered no justification for waiting until months after the deadline to seek suppression of his statements—had again failed to show good cause. Defendant's motion was therefore denied. Dkt. 245.

1

**JA409**

In essence, Defendant's present Motion to Suppress rehashes the argument advanced in his January 13, 2021 motion: because the trial date has been continued, and some restrictions related to the COVID-19 pandemic have been relaxed, litigating the merits of Defendant's untimely suppression motion would not prejudice the Government. Again, Defendant's contention misses the heart of the good cause inquiry. In determining whether a defendant has established good cause for filing an untimely motion to suppress, courts consider: "(i) the extent of the untimeliness, (ii) the reason for late filing, (iii) prejudice to the other party, and (iv) whether the receipt of additional information after the filing deadline 'alerted defendant to facts on which a motion to suppress might be based.'" *United States v. Samuel*, Case No. 1:14-cr-351, 2015 WL 1442884, at *3 (E.D. Va. Mar. 26, 2015), aff'd, 674 F. App'x 322 (4th Cir. 2017) (quoting *United States v. Cross*, 256 F. App'x 623, 627 (4th Cir. 2007)). The first factor plainly weighs against Defendant: over a year has now elapsed since the motions deadline in this case. And Defendant presents no argument under factors (ii) or (iv) to explain the extreme tardiness of his motion.

For reasons stated herein—and in the Court's previous Orders—Defendant's Motion to Suppress (Dkt. 249) is denied.

Accordingly,

It is hereby **ORDERED** that defendant's Motion to Suppress Statements Taken in Violation of *Miranda v. Arizona* (Dkt. 429) is **DENIED AS UNTIMELY**.

It is further **ORDERED** that the hearing set for **Friday, September 10 at 9:00 a.m.** is **CANCELLED**.

The Clerk is directed to provide a copy of this Order to all counsel of record.

Alexandria, Virginia
September 8, 2021

T. S. Ellis, III
United States District Judge

2

**JA410**

# Exhibit 1

## FREDERICK S. BERLIN, M.D., Ph.D. - CURRICULUM VITAE

**DEMOGRAPHIC INFORMATION:**

**CURRENT APPOINTMENTS:**

<u>Associate Professor</u>, Department of Psychiatry and Behavioral Sciences, The Johns Hopkins University School of Medicine.

<u>Attending Physician</u>, Active Staff, The Johns Hopkins Hospital.

**PERSONAL DATA:**

| | |
|---|---|
| Johns Hopkins Medical Institutions | Director |
| Department of Psychiatry | National Institute for the |
| and Behavioral Sciences | Study, Prevention and |
| 4-181 Meyer Building | Treatment of Sexual Trauma |
| The Henry Phipps Psychiatric Service | 104 E. Biddle Street |
| 600 North Wolfe Street | Baltimore, Maryland 21202 |
| Baltimore, Maryland 21287-7409 | Telephone: (410) 539-1661 |
| Telephone: (410) 955-6292 | Fax: (410) 539-1664 |
| | e-mail: fredsberlinmd@comcast.net |

**EDUCATION:**

| | | | |
|---|---|---|---|
| B.S. | 1964 | University of Pittsburgh | Psychology |
| M.A. | 1966 | Fordham University | Psychology |
| Ph.D. | 1972 | Dalhousie University, Canada | Psychology |
| M.D. | 1974 | Dalhousie University, Canada | |

**TRAINING:**

Research Assistant, 1961 - 1964, University of Pittsburgh, Department of Psychology.

Research Assistant, 1965 - 1966, Fordham University, Department of Psychology.

Research Assistant, 1966 – 1967, Dalhousie University, Department of Psychology.

Teaching Assistant, 1967 – 1971, Dalhousie University, Department of Psychology.

Clinical Clerkship, 1973 – 1974, Victoria General Hospital, Halifax.

Medical Intern, 1974 – 1975, McGill University School of Medicine, Jewish General Hospital, Children's Hospital, Montreal, Canada.

Psychiatric Resident, 1975 – 1976, The Johns Hopkins Hospital, Baltimore, Maryland.

Exchange Resident, 1977, Maudsley Hospital, London, England.

### FREDERICK S. BERLIN, M.D., Ph.D. - CURRICULUM VITAE

Chief Resident, 1977-1978, Department of Psychiatry and Behavioral Sciences, The Johns Hopkins Hospital.

#### PROFESSIONAL EXPERIENCES:

Assistant Professor, 1978 – 1986, Department of Psychiatry and Behavioral Sciences, The Johns Hopkins University School of Medicine.

Associate Professor, 1986 - Present, Department of Psychiatry and Behavioral Sciences, The Johns Hopkins University School of Medicine.

Attending Physician, 1978 – Present, The Johns Hopkins Hospital.

Founder and Director, 1980 – 1992, The Johns Hopkins Sexual Disorders Clinic.

Founder and Director, 1992 – Present, National Institute for the Study, Prevention and Treatment of Sexual Trauma.

#### RESEARCH ACTIVITIES:

#### PUBLICATIONS (PEER REVIEWED):

Berlin F, Evaluating and Reducing Risk in Online Child Pornography Cases. J AM Acad Psychiatry Law, 48, 1, November 2019, 165-170.

Berlin F, Paraphilic Disorders: A Better Understanding. Current Psychiatry, 18, 4, April 2019, 22-28.

Berlin FS, Pedophilia, in P. Whelehan and Bolin (Eds.), The International Encyclopedia of Human Sexuality, pp, 882 – 776, Oxford: Wiley Blackwell, 2015.

Berlin F, Pedophilia From a Mental Health Perspective, Sex Offender Law Report, Bol. 16, No. 1, pp. 1 – 16, December/January 2015.

Berlin F, Mandatory Reporting of Suspected Child Abuse, Psychiatric Times, Vol. XXXI, No. 8, pp. 8-9, August 2014.

Berlin F, Sawyer D: Potential Consequences of Accessing Child Pornography Over the Internet and Who is Accessing It, Sexual Addiction and Compulsivity, 19, pp 30 – 40, 2012.

Berlin F: Pedophilia: Criminal Mindset or Mental Disorder? A Conceptual Review, American Journal of Forensic Psychiatry, Vol. 32, Issue 2, pp. 3 – 25, 2011.

Berlin F: Commentary on Pedophilia Diagnostic Criteria in DSM-5, The Journal of the American Academy of Psychiatry and the Law, Vol. 39, No.2, pp. 242 – 244, April 2011.

## *FREDERICK S. BERLIN, M.D., Ph.D. - CURRICULUM VITAE*

Berlin F: Commentary: Risk/Benefit Ratio of Androgen Deprivation Treatment for Sex Offenders, Journal of the American Academy of Psychiatry and the Law, Vol. 37, pp. 59 – 62, November 1, 2009.

Rao V, Handel S, Vaishnavi S, Keach S, Robbins B, Spiro J, Ward J, Berlin F: Psychiatric Sequelae of Traumatic Brain Injury: A Case Report, American Journal of Psychiatry, 164:5, pp. 728-735, May 2007.

Berlin FS: Commentary: The Impact of Surgical Castration on Sexual Recidivism Risk Among Civilly Committed Sexual Offenders, Journal of The American Academy of Psychiatry Law, Vol. 33, No. 1, pp. 37-41, March 2005.

Saleh F, Berlin FS: Sex Hormones, Neurotransmitters, and Psychopharmacological Treatments in Men with Paraphilic Disorders, Journal of Child Sexual Abuse, Vol. 12, No. 3/4, pp. 233-253, 2003.  Also published simultaneously in Identifying and Treating Sex Offenders: Current Approaches, Research, and Techniques, (ed: Robert Geffner, et al.), The Haworth Maltreatment & Trauma Press, New York, 2003, pp. 233-253.

Saleh F, Berlin FS: Sexual Deviancy: Diagnostic, Neurobiological, and Psychopharmacological Considerations and Sex Hormones, Neurotransmitters and Psychopharmacological Treatments in Men with Paraphilic Disorders, Journal of Child Sexual Abuse, Vol. 12, No. 3/4, pp. 53-74, 2003.  Also published simultaneously in Identifying and Treating Sex Offenders: Current Approaches, Research, and Techniques, (ed: Robert Geffner, et al.), The Haworth Maltreatment & Trauma Press, New York, 2003, pp. 53-74.

Berlin FS.  Sex Offender Treatment and Legislation, Journal of the American Academy of Psychiatry and the Law, Vol. 31, No. 4, pp.510-513, 2003

Berlin F. Galbreath N, Geary B, McGlone G.  The Use of Actuarials at Civil Commitment Hearings to Predict the Likelihood of Future Sexual Violence, Sexual Abuse: A Journal of Research and Treatment, Tucson, Arizona, Vol. 15, No. 4, pp. 377-382, October 2003.

Fagan PJ, Wise TN, Schmidt CW, Berlin FS.  Special Communication on Pedophilia, Journal of the American Medical Association, 288, 19, pp. 2458-2465, November 20, 2002.

Berlin FS.  Pedophilia: When is a Difference a Disorder?  Peer Commentaries on Green (2000) and Schmidt (2002),  Archives of Sexual Behavior. 31 (6): pp. 1-2, 2002

Berlin F, The Vanderbilt Symposium – In My Opinion, Sexual Addiction & Compulsivity, 8, pp. 187-189, 2001

Berlin FS, Malin HM, Lehne GK, Hunt, WP, Thomas, K, Fuhrmaneck, J.  The Eroticized Violent Crime: A Psychiatric Perspective with Six Clinical Examples.  Journal of Sexual Addiction and Compulsivity, 4, 1, 10-32, 1997.

Berlin FS.  Jeffrey Dahmer:  Was He Ill?  Was He Impaired?  Insanity Revisited.  American Journal of Forensic Psychiatry, 15, 1, pp. 5-29, 1994.

## FREDERICK S. BERLIN, M.D., Ph.D. - CURRICULUM VITAE

Federoff JP, Hanson A, McGuire M, Malin HM, Berlin FS. *Simulated Paraphilias: A Preliminary Study of Patients Who Imitate or Exaggerate Paraphilic Symptoms and Behaviors.* _Journal of Forensic Sciences, 37, 3, pp. 902-911, 1992._

Federoff JP, Wisner-Carlson R, Dean S, Berlin FS. *Medroxyprogesterone Acetate in the Treatment of Paraphilic Sexual Disorders.* _Journal of Offender Rehabilitation, 18, pp. 109-123, 1992._

Berlin FS, Hunt WP, Malin HM, Dyer A, Lehne GK, Dean S. *A Five-year Plus Follow-up Survey of Criminal Recidivism Within a Treated Cohort of 406 Pedophiles, 111 Exhibitionists and 109 Sexual Aggressives: Issues and Outcome.* _American Journal of Forensic Psychiatry, 12, 3, pp. 5-28, 1991._

Berlin FS, Malin HM. *Media Distortion of the Public's Perception of Recidivism and Psychiatric Rehabilitation.* _American Journal of Psychiatry, 148, 15, pp. 1572-1576, 1991._

DiGiovanni C, Berlin FS, Casterella P, Redfield R, Hiken M, Falck A, Malin HM, Gagliano S, Schaerf F. *Prevalence of HIV Antibody Among a Group of Paraphilic Sex Offenders.* _Journal of Acquired Immune Deficiency Syndromes, 4, pp. 633-637, 1991._

Berlin FS, Malin HM, Dean S. *Effects of Statutes Requiring Psychiatrists to Report Suspected Sexual Abuse of Children.* _American Journal of Psychiatry, 148, 4, pp. 449-453, 1991._

Berlin FS. *The Paraphilias and Depo-Provera: Some Medical, Ethical and Legal Considerations.* _The Bulletin of the American Academy of Psychiatry and the Law, 17, 3, pp. 233-239, 1989._

Berlin FS. *Issues in the Exploration of Biological Factors Contributing to the Etiology of the Sex Offender plus Some Ethical Considerations.* _Annals of the New York Academy of Sciences, 528, 528, pp. 183-192, 1988._

Chen JJS, Berlin FS, Margolis S. *Effect of Large Dose Progesterone on Plasma Levels of Lipids, Lipoproteins and Apolipoproteins in Males.* _Journal of Endocrinological Investigation, 9, 4, pp. 281-285, 1986._

Berlin FS. *Men Who Rape: Interviews with Five Rapists.* _American Journal of Forensic Psychiatry, 7, 4, pp. 11-41, 1986._

Berlin FS, Krout E. *Pedophilia: Diagnostic Concepts, Treatment and Ethical Considerations.* _American Journal of Forensic Psychiatry, 7, 1, pp. 13-30, 1986._

Chen JJS, Berlin FS, Margolis S. *Short Term Effects of High Dose Progesterone on Plasma Lipids, Lipoproteins and Apoproteins in Men.* _Clinical Research, 32, 3, p 704, 1984._

Gaffney GR, Berlin FS. *Is There a Hypothalmic-Pituitary-Gonadal Dysfunction in Pedophilia?* _British Journal of Psychiatry, 145, pp. 657-660, 1984._

Gaffney GR, Lurie SF, Berlin FS. *Is There Familial Transmission of Pedophilia?* _Journal of Nervous and Mental Disease, 172, 9, pp. 546-548, 1984._

## *FREDERICK S. BERLIN, M.D., Ph.D.  -  CURRICULUM VITAE*

Berlin FS, Bergy GK, Money J.  *Periodic Psychosis of Puberty:  A Case Report.  American Journal of Psychiatry, 139,* 1, pp. 119-120, 1982.

Berlin FS, Coyle GS.  Sexual Deviation Syndromes.  Psychiatric Clinics at The Johns Hopkins Hospital. (Tune LE, Ed.)  *The Johns Hopkins Medical Journal, 149,*  pp. 119-125, 1981.

Berlin FS, Meinecke CF.   Treatment of Sex Offenders with· Antiandrogenic Medication:  Conceptualization, Review of Treatment Modalities and Preliminary Findings.  *American Journal of Psychiatry, 138,* pp. 601-607, 1981.

Greist JH, Marks IM, Berlin FS, Gournay K, Noshirvani H.  Avoidance Versus Confrontation of Fear.  *Behavior Therapy,  11,* pp. 1-14, 1980.

Berlin FS, Bartlett R, Black J.  Acupuncture and Placebo:  Effects on Delaying the Terminating Response to a Painful Stimulus.  *Anesthesiology, 42 ,* 5, pp. 527-531, 1975.

### *PUBLICATIONS (NON-PEER REVIEWED) AND POSTER PRESENTATIONS:*

Kim C, Saleh F, Dwyer G, & Berlin F, A Female Patient with Multiple Paraphilias: A Case Study, Poster Presentation, *American Academy of Psychiatry and the Law 37th Annual Meeting,* Chicago, Illinois, October 27, 2006

Berlin F, Compulsive Sexual Behaviors.  *Proceedings of the 17th Biannual Catholic Bishops Workshop, Addiction and Compulsive Behaviors,* The National Catholic Bioethics Center, Boston, Massachusetts, pp. 71-83, 2000.

Murphy DL, Sims K, Eisenhofer G, Greenberg BD, George T, Berlin F, Zametkin A, Ernst M, Breakefield XO.  Are MAO-A Deficiency States in the General Population and in Putative High-Risk Populations Highly Uncommon? Presented at *The 6th Rappaport Symposium and 7th Amine Oxidase Workshop,* Haifa, Israel, June 1996.

Berlin FS.  Psychosexual Disorders:  Implications for the Impaired Physician. *Straight Forward, 5,* pp. 5-6, 1994.

Berlin FS: "Use of Chemically Castrating Medications." *River Cities' Reader.* 8, 1994.

Federoff JP, Berlin FS, Wisner-Carlson R, Dean S.  An Open Five Year Follow-up of Paraphilic Men Treated With Psychotherapy and Medroxyprogesterone Acetate.  Poster presentation, *International Academy of Sex Research,* Barrie, Ontario, August 1991.

DiGiovanni C, Berlin FS.  Control of Hypersexuality in HIV Carriers. *Proceedings of the Third International Conference on AIDS,* Washington, D.C., p. 43, June 5, 1987

Frost JJ, Mayberg HS, Berlin FS, et al.  Alteration in Brain Opiate Receptor Binding in Man Following Arousal Using C-11 Carfentinil and Positron Emission Tomography, Proceedings of the 33rd Annual Meeting of the Society of Nuclear Medicine. *Journal of Nuclear Medicine, 27,* 6, p.1027, 1986.

Berlin FS.  Pedophilia. *Medical Aspects of Human Sexuality, 19,* 2, pp. 8, 79, 82, 85, 88, 1985.

## *FREDERICK S. BERLIN, M.D., Ph.D.  -  CURRICULUM VITAE*

Berlin FS.  Treatment of Pedophilia.  *The Medical-Moral Newsletter, 21*, 6, pp. 21-24, 1984.

Berlin FS.  The Use of Waking and Hypnotic Suggestions to Change Behavior.  Copyrighted Ph.D. Thesis, available through *The National Library Scheme on Canadian Thesis*, 1972.

### *EDITORIALS:*

Berlin FS, Fagan PJ, Wise TN, Schmidt CW, Medical Research in Pedophilia, *Journal of the American Medical Association, 289*, 10, p. 1243, March 12, 2003 (letter).

Berlin FS, Treatments to Change Sexual Orientation, *The American Journal of Psychiatry, 157*, 5, p. 838, May 2000 (letter).

Berlin FS, Thomas K, Congress shouldn't judge value of scientific studies, *The Baltimore Sun* p. 9A, Letter to the Editor, 7/27/99.

Berlin, FS.  Unpaid Expert Witness.  *New England Journal of Medicine, 338*, 17, p 1233, 1998 (correspondence).

Berlin FS. "Chemical Castration" for Sex Offenders.  *The New England Journal of Medicine, 336*, 14, p 1030, 1997 (correspondence).

Berlin FS.  Laws on Mandatory Reporting of Suspected Child Sexual Abuse.  *American Journal of Psychiatry, 145*, p.8, 1988 (letter).

Berlin FS, Money J, Lehne GK.  Antiandrogens Plus Counseling in the Treatment of Paraphilias. *Journal of Sex Research, 19*, 2, pp. 201-202, 1983 (letter).

Berlin FS.  "Smoking Decreased After Hypnosis.  Factors Relevant to Outcome" *Archives of General Psychiatry, 37*, pp. 1200-1201, 1980 (letter to the editor).

### *BOOK CHAPTERS:*

Houts F, Taller I, Tucker D, Berlin F: Androgen Deprivation Treatment of Sexual Behavior, in (Balon R. Editor) *Sexual Dysfunction: Beyond the Brain-Body Connection.* Adv Psychosom Med. Basel, Karger, 2011, vol. 31. pp 149-163.

Berlin FS, Saleh FM, Malin HM: Mental Illness and Sex Offending, In (Saleh FM, Grudzinkas AJ, Bradford JM, Brodsky D, Editors) *Sex Offenders: Identification, Risk Assessment, Treatment and Legal Issues,* Oxford University Press, New York, New York, 2009.

Berlin F: Basic Science and Neurobiological Research: Potential Relevance to Sexual Compulsivity, In (Schwartz MF and Berlin F, Editors) *Psychiatric Clinics of North America – Sexually Compulsive Behavior: Hypersexuality* (Special Edition), Elsevier, Inc., Vol. 31, Issue 4, 2008, pps.623-642.

USCA4 Appeal: 22-4242    Doc: 14-1    Filed: 06/16/2022    Pg: 432 of 471  Total Pages:(432 of 471)

## *FREDERICK S. BERLIN, M.D., Ph.D. - CURRICULUM VITAE*

*Saleh FM, Berlin FS, Malin HM, Thomas KJ: Paraphilias and Paraphilia-Like Disorders, In (Gabbard GO, Editor) Treatments of Psychiatric Disorders, 4th Edition, American Psychiatric Publishing, Inc., Washington, DC, 671-682, 2007.*

*Fagan P, Lehne G., Strand J., Berlin FS:  Paraphilias in (Gabbard GO, Beck JS, Holmes J, Eds.) Oxford Textbook of Psychotherapy, Oxford University Press, Inc., New York, Chapter 17, pp. 213-225, 2005.*

*Berlin FS: Child Psychiatrist in (Spitzer RL, First MB, Gibbons M, Williams JBW, Eds.) Treatment Companion to the DSM-IV-TR Casebook, American Psychiatric Publishing, Inc., Arlington, Virginia, 2004, pp. 180-188.*

*Saleh FM, Berlin FS. Sex hormones, neurotransmitters and psychopharmacological treatments in men with paraphilic disorders. in (Geffner R, Franey K, Geffner T, Falconer R,, editors). Identifying and Treating Sex Offenders: Current Approaches, Research, and Techniques, New York City  The Haworth Maltreatment & Trauma Press, an imprint of The Haworth Press. Inc.; 2003. p. 53-76.*

*Saleh FM, Berlin FS. Sexual deviancy: diagnostic and neurobiological considerations. in (Geffner R Franey K, Geffner T, Falconer R editors). Identifying and Treating Sex Offenders: Current Approaches, Research, and Techniques. New York City  The Haworth Maltreatment & Trauma Press, an imprint of The Haworth Press. Inc.; 2003. p. 233-253.*

*Galbreath, NW, Berlin FS, Sawyer D, Paraphilias and the Internet. In (Cooper A., Ed)  Sex and the Internet: A Guidebook for Clinicians, Brunner-Routledge, Philadelphia, Pennsylvania, pp. 187-205, 2002.*

*Berlin FS. Compulsive Sexual Behaviors. In (Fulton EJ, McLoud-Dort V, Eds) Addiction and Compulsive Behaviors, The National Catholic Bioethics Center, Boston, Massachusetts, pp. 79-91, 2000.*

*Berlin FS: The Etiology and Treatment of Sexual Offending.  In (Fishbein DH., Ed.) The Science, Treatment and Prevention of Antisocial Behaviors: Applications to the Criminal Justice System, Civic Research Institute, Inc., Kingston, New Jersey, pp. 211-215, 2000.*

*Berlin FS.  How Many People Need to be Eaten in Milwaukee?  In (Whitman C., Zimmerman J., Miller T., Eds.), Frontiers of Justice, Volume 2: Coddling or Common Sense?, Biddle Publishing Co., Brunswick, Maine, pp. 302-307, 1998.*

*Berlin FS: Hal, Driven by an Invisible Force:  A Case of Pedophilia.  In (Haglin R., Krauss Whitbourne S., Eds.),   A Casebook in Abnormal Psychology, From the Files of Experts, Oxford University Press, pp. 114-126, 1998.*

*Berlin FS, Malin HM, Thomas K:  Treatment of the Nonpedophilic and Nontransvestic Paraphilias. In (Gabbard GEO, Ed.), Treatment of Psychiatric Disorders: The DSM-IV Edition. American Psychiatric Press,  pp. 1941-1958,  1996.*

*Berlin, FS:  New Theories of Physical Causes of Homosexuality and Moral Behavior.  In (Smith RE, Ed.),  Proceedings of the 1993 Bishops' Workshop entitled "Communicating the Catholic*

### *FREDERICK S. BERLIN, M.D., Ph.D. - CURRICULUM VITAE*

*Vision of Life"*, The Pope John XXIII Medical-Moral Research and Education Center, pp. 58-70, 1993.

Berlin FS: *"Perfect Relationship".* In (Spitzer RL, Gibbon M, Skodol AE, Williams JBW, First MB, Eds.), _DSM-III-R Case Book: A Learning Companion to the Diagnostic and Statistical Manual of Mental Disorders (3rd Edition, Revised).  American Psychiatric Press, Washington, D.C., pp. 116-117, 1989.

Berlin FS: *"Child Psychiatrist."* In (Spitzer RL, Gibbon M.Skodol AE, Williams JBW, First MB, Eds.), DSM-III-R Case Book: A Learning Companion to the Diagnostic and Statistical Manual of Mental Disorders (3rd Edition, Revised). American Psychiatric Press, Washington, D.C., pp 135-137, 1989.

Berlin FS: Special Considerations in the Psychiatric Evaluation of Sexual Offenders. In (Rosner R, Schwartz HI, Eds.), *Critical Issues in American Psychiatry and the Law.  volume 4* (Juvenile Psychiatry and the Law: Victims and Victimizers),  Plenum Press, New York, pp. 119-132, 1989.

Berlin FS, Shaerf FW:  Laboratory Assessment of the Paraphilias and Their Treatment with Antiandrogenic Medication.  In (Hall RCW, Beresford TP, Eds.),  *A Handbook of Psychiatric Diagnostic Procedures.*  New York, Spectrum Publications, pp. 273-305, 1985.

Berlin FS:  (1) Behavior Modification,  (2) Biological Therapies.  Two sections in (Meyer J, Schmidt CW, Wise TN, Eds.), *Clinical Management of Sexual Disorders.*  Williams and Wilkins, Baltimore, Maryland, 1983.

Berlin FS:  Sex Offenders:  A Biomedical Perspective and a Status Report on Biomedical Treatment.  In (Greer JB, Stuart IR, Eds.), *The Sexual Aggressor:  Current Perspectives on Treatment.* Van Nostrand Reinhold Co., New York, pp. 83-123, 1983.

### *INVITED REVIEWS AND EDITORIALS:*

Berlin F, Alabama castration bill won't fix the problem. *The Hill,* June 11, 2019 (invited commentary).

Lehne G, Thomas K, Berlin FS. Treatment of sexual paraphilias: a review of the 1999-2000 literature, *Current Opinion in Psychiatry,* 13, 569-573, 2000 (invited review requested of Dr. Berlin).

Berlin FS, Pornography and politics: A case for sane civility. *The Baltimore Sun,* p. 13F, 2/7/99 (invited editorial).

Berlin FS, If the Starr Report Were a Psychiatric Case Study, What Kind of Footprint Would It Leave? *The Baltimore Sun,* Arts & Society, p. 11G, 9/27/98 (invited editorial).

Berlin FS, Criminal or Patient? *Culturefront, 5,* 2, pp. 71-75, Summer 1998 (invited article).

Berlin FS. The Case for Castration, Part 2. *The Washington Monthly, 5,* pp. 28-29, May 1994 (invited editorial).

### *FREDERICK S. BERLIN, M.D., Ph.D. - CURRICULUM VITAE*

*Berlin FS, Malin HM, Dean S. Involuntary Intervention: Does the Benefit Exceed the Cost? <u>American Journal of Psychiatry, 149,</u> 3, 1992 (invited editorial response - letter).*

*Berlin FS, Malin HM. Laws on Reporting Sexual Abuse of Children, Dr. Berlin and associates reply. <u>American Journal of Psychiatry. 148,</u> 11, p. 1619, 1991. (invited editorial response - letter).*

*Berlin FS. Response to KJ Masters Commentary "Dahmer Case Trivialized by Forensic Psychiatrists". <u>Clinical Psychiatry News,</u> p. 4, February 1993 (invited editorial).*

*Berlin FS, Malin HM. Rape: A Presumption of Guilt? A Presumption of Severe Punishment if Guilty. <u>A Journal for the Expert Witness, The Trial Attorney and the Trial Judge,</u> 5, pp. 7-9, 1990 (invited article).*

*Berlin FS. Commentary on "Sexual Addiction and Compulsive Sexual Behaviors" by Eric Griffin-Shelley. <u>Medical-Moral Newsletter, 26,</u> pp. 8-9, 1989 (invited article).*

*Berlin FS. Ethical Use of Psychiatric Diagnoses. <u>Psychiatric Annals, 13,</u> pp. 321-331, 1983 (invited article).*

*Berlin FS. Ethical Use of Antiandrogenic Medications. <u>American Journal of Psychiatry, 138,</u> 11, p 1516, 1981 (invited editorial response – letter).*

*Berlin FS. In Defense of the Disease Model in Psychiatry. <u>Psychiatric Annals, 11,</u> p. 5 - 12, 1981 (invited article).*

*Berlin FS. Psychological Therapies for Anxiety. <u>Psychiatric Annals, 9,</u> pp. 41-55, 1974 (invited article).*

---

### *BOOK REVIEWS:*

*Sexual Deviation, Third Edition (Rosen I, Ed.), <u>The Journal of Nervous and Mental Disease, 186,</u> No. 4, pp 255-256, 4/98.*

*Text Book of Homosexuality and Mental Health (Cabaj RP and Stein TS, Eds.), <u>Journal of Nervous and Mental Disease, 185,</u> No. 11, 11/97. .*

*Handbook of Sexual Assault: Issues, Theories and Treatment of the Offender. (Marshall WL, Laws DR, Barbaree HE, Eds.), <u>Archives of Sexual Behavior, 21,</u> p. 4, 1992.*

*Treating Perpetrators of Sexual Abuse. (Ingersol SL, Patton S). <u>The Bulletin of the American Academy of Psychiatry and the Law, 18,</u> 4, pp. 429-430, 1990.*

---

### *OTHER PUBLISHED MATERIALS:*

*Berlin FS, "Pharmacological Interventions with Sex Offenders." To Be Included in the <u>Interpol Handbook.</u> 2010*

### *FREDERICK S. BERLIN, M.D., Ph.D. - CURRICULUM VITAE*

Berlin FS. An Interview by the Editor. *The Maryland Psychiatrist, 17,* pp. 5-7, 1990.

Berlin FS, National Conference of Catholic Bishops Interview, *National Conference of Catholic Bishops' Ad Hoc Committee on Sexual Abuse,* Published online at usccb.org, Baltimore, Maryland, 09/08/97

Berlin FS  Diagnosis and Treatment of Paraphilias. *Audio Digest Psychiatry, 17,* p. 17, September 5, 1988.

Berlin FS.  Treating Sexual Disorders with Medroxprogesterone Acetate:  An Interview with Fred S. Berlin. *Currents in Affective Illness, 6,* 7, pp. 5-15, 1987.

Berlin FS.  Psychiatry Meets the Sex Offender. *Audio-Digest Psychiatry, 16,* p. 13, July 13, 1987.

Berlin FS, Meinecke CF.  Treatment of Sex Offenders with Antiandrogenic Medications. *Audio Digest Psychiatry,* December 1981.  (Audio Cassette).

---

### *EXTRAMURAL SPONSORSHIP:*

### *GRANTS AND CONTRACTS:*

*The Harry Frank Guggenheim Foundation:*  The Assessment of Compulsive Rapists and Pedophiles for Hormonal, Chromosomal and Neurobiological Pathologies.  Grant awarded on July 15, 1985.

Berlin FS, Conner E, Rider M: Annotated Bibliographic Review of Literature on Etiology and Treatment of Sex Offenses and Sex Offenders.  Contracted and published by *The National Institute of Mental Health,* 1982.

---

### *EDUCATIONAL ACTIVITIES:*

### *TEACHING:*

Classroom Instruction – Yearly lecture, 2nd year medical students, The Johns Hopkins University School of Medicine.

Clinical Instruction – Bedside and didactic teaching, psychiatric residents and students, Meyer-5 ward (currently attending physician 3 months of the academic year), The Johns Hopkins Hospital.

(See also below – "Primary Service Responsibilities")

---

### *FREDERICK S. BERLIN, M.D., Ph.D. - CURRICULUM VITAE*

#### *CME INSTRUCTION:*

*Invited Participant, When Sex Offenders are Adolescents, Ministry of the Sick, The Johns Hopkins University School of Medicine Continuing Medical Education Course, Baltimore, Maryland, 4/29/96.*

*Invited Participant, Positron Emission Tomography and the Chemistry of Mental Illness: Changes in Brain Chemistry During Sexual Arousal, Nuclear Medicine Seminar, The Johns Hopkins University School of Medicine Continuing Medical Education Course, Baltimore, Maryland, 3/13/97.*

*Course Director, Pedophilia and Rape, 143rd Annual Meeting, American Psychiatric Association, New York, New York, 5/12/90 - 5/17/90.*

*Course Director, Diagnosis and Treatment of Pedophiles and Rapists, 142nd Annual Meeting, American Psychiatric Association, San Francisco, California, 5/6/89 - 5/11/89.*

*Course Director, Assessment and Treatment of Adult and Adolescent Sex Offenders, 141st Annual Meeting, American Psychiatric Association, Montreal, Canada, 5/9/88.*

*Course Director, Diagnosing and Treating Rapists and Pedophiles, 140th Annual Meeting, American Psychiatric Association, Chicago, Illinois, 5/13/87.*

*Invited Participant, Positron Emission Tomography: Changes in Opiate Receptor Activity on PET Scanning During Sexual Arousal, The Johns Hopkins University School of Medicine Continuing Education Course, Baltimore, Maryland, 4/19/86.*

*(See also below – "Conferences Organized")*

#### *MENTORING:*

*Member, Board of Student Advisors, The Johns Hopkins University School of Medicine, 1980-1983.*

*Member, Ph.D. Thesis Committee, for Dr. Kate Thomas and Dr. Kathy Pilero.*

*Clinical Supervisor for a Variety of Psychiatric Residents.*

*Supervisor of Elective Training to a Variety of Pre- and Post-doctoral Students.*

#### *EDITORIAL BOARD APPOINMENTS:*

*Guest Editor, Psychiatric Clinics of North America – Sexually Compulsive Behavior: Hypersexuality (Special Edition), Elsevier, Inc., Vol.31, Issue 4, 2008.*

*Member, Editorial Board, Family Violence and Sexual Assault Institute, 2003 – present*

*Member, Editorial Board, Journal of Sexual Addiction and Compulsivity, 2001 - present*

**JA422**

## *FREDERICK S. BERLIN, M.D., Ph.D.  -  CURRICULUM VITAE*

*Associate Editor, International Journal of Offender Therapy and Comparative Criminology, January 1997 – December 2002*

### *PEER REVIEW PERFORMED FOR THE FOLLOWING JOURNALS:*

*The American Journal of Bioethics - Neuroscience*
*The American Journal of Psychiatry*
*Behavioral Sciences and the Law*
*Journal of the American Medical Association (JAMA)*
*Journal of Child Sexual Abuse*
*The Journal of Nervous & Mental Disease*
*The Journal of Pediatrics*
*The Journal of the American Academy of Psychiatry and the Law*
*The American Journal of Clinical Hypnosis*
*The Archives of General Psychiatry*
*Archives of Sexual Behavior*
*Child Abuse and Neglect: The International Journal*
*The Journal of Consulting and Clinical Psychology*
*The Journal of Neuropsychiatry and Clinical Neurosciences*
*Psychosomatics*
*Social Psychiatry and Psychiatric Epidemiology*
*The Harvard Review of Psychiatry*

### *CLINICAL ACTIVITIES:*

### *LICENSURES:*

*Licensed Physician, State of Maryland, 1975 – Present, ID #D18703.*

### *CERTIFICATIONS AND FELLOWSHIPS:*

*Diplomat, National Board of Medical Examiners, ID #141770, 1975.*

*Board Certified in Psychiatry, American Board of Psychiatry and Neurology, ID #21208, 1980.*

*Distinguished Life Fellow, American Psychiatric Association, 2010.*

*Diplomat, The American Board of Forensic Examiners, ID #660, 1994.*

*Diplomat, The American Board of Sexology, ID #1760, 1995.*

*(have also provided questions for board certification examinations)*

*Board Certified in Forensic Psychiatry, American Board of Psychiatry and Neurology, ID #504, 1998 to 2008.*

**JA423**

## *FREDERICK S. BERLIN, M.D., Ph.D. - CURRICULUM VITAE*

*PRIMARY SERVICE RESPONSIBILITIES:*

*Attending Physician, Psychiatry, Meyer-5 Inpatient Service, Currently 2 months per year (previously as much as 12 months per year) – includes periodic weekends on-call*

*Periodic on-call physician for the Hopkins Access Line (HAL).*

*Director, Sexual Behaviors Consultation Unit, involves teaching and supervision of Johns Hopkins staff, psychiatric residents and medical students during their outpatient training.*

*ORGANIZATIONAL ACTIVITIES:*

*THE JOHNS HOPKINS MEDICAL INSTITUTIONS:*

*Member, Medical School Counsel, The Johns Hopkins University, 1982 – 1984.*

*Member, Gender Identity Committee, The Johns Hopkins Hospital, 1980 – 1981.*

*Member, Utilization Review Committee, The Johns Hopkins Hospital, 1977 – 1978.*

*Member, Advisory Committee, House Staff Council, The Johns Hopkins Hospital, 1977 – 1978.*

*Member, House Staff Council, The Johns Hopkins Hospital, 1976 – 1978.*

*PROFESSIONAL SOCIETIES:*

*ELECTED POSITIONS:*

*President, Chesapeake Bay Chapter, American Academy of Psychiatry and the Law, 4/95 - 4/98.*

*Treasurer, Chesapeake Bay Chapter, American Academy of Psychiatry and the Law, 1993-1995.*

*Elected Member of Council, Maryland Psychiatric Society, 1993-1996.*

*APPOINTED POSITIONS:*

*Appointed Member, Technical Advisory Committee, The Spurwink Institute, 1996.*

*Appointed Member, Board of Directors, Maryland Foundation for Psychiatry, 1995.*

*Appointed Member, Task Force on Examinations, Section on Sexological Research, The American Board of Sexology, 8/31/92.*

*Appointed Member, Legislative Committee, Maryland Psychiatric Society, 1989 - Present.*

**JA424**

## *FREDERICK S. BERLIN, M.D., Ph.D. - CURRICULUM VITAE*

*Appointed Member, Legislative Network, Mental Health Association of Metropolitan Baltimore, 1985.*

*Appointed Member (by the Governor of Maryland), The Board of Patuxent Institution, 1984 – 1989.*

### *MEMBERSHIPS:*

*American Academy of Psychiatry and the Law*
*American Association for the Advancement of Science*
*American Board of Forensic Examiners*
*American College of Forensic Psychiatry*
*American Medical Association*
*American Professional Society on the Abuse of Children*
*American Psychiatric Association*
*Association for the Treatment of Sexual Abusers*
*Eastern Psychological Association*
*Greater Baltimore Task Force on Sexual Offenders*
*Maryland Psychiatric Society*
*Mental Health Association of Maryland*
*National Adolescent Perpetrator Network*
*Society for Scientific Study of Sex*
*Society of Biological Psychiatry*
*Southern Medical Association*

### *CONFERENCES ORGANIZED:*

*Course Co-Director, The Third Annual Symposium Child Sexual Abuse: A Public Health Perspective, Victim/Offender: A Case Report, The Johns Hopkins Bloomberg School of Public Health, Baltimore, Maryland 04/17/15.*

*Course Co-Director, The Second Annual Symposium Child Sexual Abuse: A Public Health Perspective, The Johns Hopkins Bloomberg School of Public Health, Baltimore, Maryland, 04/11/14.*

*Course Co-Director, The First Annual Symposium Child Sexual Abuse: A Public Health Perspective, The Johns Hopkins Bloomberg School of Public Health, Baltimore, Maryland, 04/27/12.*

*Course Director, The Cycle of Sexual Trauma: Treating the Victim and Treating the Offender, The Johns Hopkins University School of Medicine Continuing Medical Education Course, Baltimore, Maryland, 2/10/94 - 2/12/94.*

*Course Director, Sex Offenders: Focus on Treatment, The Johns Hopkins University School of Medicine Continuing Medical Education Course, Baltimore, Maryland, 1/19/88.*

*Course Director, Sex Offenders: Criminals or Patients? The Johns Hopkins University School of Medicine Continuing Medical Education Course, Baltimore, Maryland, 1/19/87 - 2/21/87.*

## FREDERICK S. BERLIN, M.D., Ph.D.  -  CURRICULUM VITAE

*Course Director, The Sex Offender: Medical and Legal Issues, The Johns Hopkins University School of Medicine Continuing Medical Education Course, Baltimore, Maryland,  2/20/86 - 2/22/86.*

*Course Director, Diagnosis and Treatment of Sex Offenders, The Johns Hopkins University School of Medicine Continuing Medical Education Course, Baltimore, Maryland  2/21/85 - 2/22/85.*

*Course Director, Medical Assessment and Treatment of Sex Offenders, The Johns Hopkins University School of Medicine Continuing Medical Education Course, Baltimore, Maryland, 2/20/84.*

*Course Director, Medical Assessment and Treatment of Sex Offenders, The Johns Hopkins University School of Medicine Continuing Medical Education Course, Baltimore, Maryland, 2/16/83.*

### PEER REVIEW GROUPS:

*Member, Peer Review Committee (PSAAD Panel), 2019 Psychological Health/Traumatic Brain Injury Research Programs, in Support of the Department of defense Congressionally Directed Medical Research Programs, Sheraton Reston hotel, Reston, VA. December 8-10, 2019.*

*Member, National Institute of Mental Health Special Emphasis Panel, ZMH1 ERB – 1(01), Adult and Adolescent Interventions, 10/29/04.*

*National Institute of Mental Health Grant Review Panel, Bethesda, Maryland, 03/04/00.*

*Ad Hoc Member, National Institute of Mental Health Review Group, Violence and Traumatic Stress Research Review Committee, 1997.*

*External Peer Reviewer of the Psychiatry Program at Shodair Hospital, Helena, Montana, 1996.*

*Grant Reviews performed for the Mental Health Foundation, Ottawa, Canada, 1984–85, 1996.*

### CONSULTANTSHIPS:

*Consultation provided to the Ministry of Justice, Republic of Korea, August 30, 2010.*

*Consultation provided to Gerry Sutcliffe, MP, Under Secretary of State for Criminal Justice and Offender Management, United Kingdom, July 21, 2006.*

*Consultant, Prison Service Division, Correction Bureau, Ministry of Justice, Japan, September 15, 2005.*

*First Draft Technical Advisory Research Person, Entertainment Industries Council, 2002*

*Member, Cardinal's Commission for the Protection of Children, Archdiocese of Boston, 2002*

### *FREDERICK S. BERLIN, M.D., Ph.D. - CURRICULUM VITAE*

*Standing Ethics Committee Member, Association for the Treatment of Sexual Abusers (ATSA), Beaverton, Oregon, 7/2001 – Present.*

*Standing Advisory Member, Advisory Board, Association for the Treatment of Sexual Abusers (ATSA), Beaverton, Oregon, 12/00 – 12/08.*

*Standing Advisory Member, Ad Hoc Committee on Sexual Abuse, <u>National Conference of Catholic Bishops,</u> Washington, D.C., 11/13/93 – Present.*

*Ad Hoc Commentator, <u>The Forensic Psychiatry Echo</u>, New York, NY, 1996 – Present.*

*Consultant, Wisconsin Department of Corrections regarding the use of antiandrogens. July 2001.*

*Psychiatric Consultant, <u>State of Maryland Division of Corrections,</u> 1980 – 1994.*

*Psychiatric Consultant, <u>The Maryland Training School for Boys,</u> 1980 – 1988.*

*Consultation provided to <u>several state agencies</u> regarding establishment of treatment programs for sex offenders (e.g., Pennsylvania, Tennessee, Virginia, Oregon) 1984 – 1994.*

*Consultation provided to <u>European Parliament</u> regarding rehabilitation of sex offenders, 1984.*

*Numerous court appearances as an <u>expert witness</u> on the diagnosis and treatment of paraphilic disorders ( and on the insanity defense), 1980 – Present.*

---

### *RECOGNITION:*

### *AWARDS, HONORS:*

*Dr. Paul McHugh Teaching Award, Department of Psychiatry and Behavioral Sciences, The Johns Hopkins Hospital, 2019.*

| | |
|---|---|
| *<u>Distinguished Fellow,</u> The American Psychiatric Association* | *May 2003* |
| *National Institute for the Study, Prevention and Treatment of Sexual Trauma designated as a National "Resource Site" by the United States Department of Justice* | *1997* |
| *Listed in "The Best 2000 Doctors"* | *1996 - Present* |
| *Listed in "Who's Who in Medicine and Healthcare"* | *1996 - Present* |
| *<u>Presidential Citation,</u> City of Baltimore* | *December 1996* |
| *<u>Citation of Meritorious Achievement,</u> Dictionary of International Biography, Cambridge, England* | *May 1995* |
| *Listed in "The Best Doctors in America"* | *1994 - Present* |

## *FREDERICK S. BERLIN, M.D., Ph.D. - CURRICULUM VITAE*

*Listed in "Who's Who in America"*                                 *1990 – Present*

### INVITED TALKS:

### GRAND ROUNDS (VISITING SPEAKER):

*Invited Speaker, Sex and the Internet.* Psychiatry Grand Rounds, *The Johns Hopkins University School of Medicine, Baltimore, Maryland, 01/24/11*

*Invited Speaker, Sex Offenders: Criminals or Patients,* Psychiatry Grand Rounds, *George Washington University, Washington, DC, 03/11/10.*

*Invited Speaker, Sex Offenders: Criminals or Patients,* Psychiatry Grand Rounds, *Georgetown University Hospital, Washington, DC, 03/27/08.*

*Invited Speaker, Men Who Rape.* Psychiatry Grand Rounds, *The Johns Hopkins University School of Medicine, Baltimore, Maryland, 12/12/05.*

*Invited Speaker, Sex Offenders: Criminals or Patients?,* Psychiatry Grand Rounds, *University of Massachusetts, School of Medicine, Worcester, Massachusetts, 12/16/04.*

*Invited Presenter, The Paraphilias: Moral or Medical Problem?,* Psychiatry Grand Rounds, *Quillen College of Medicine, Johnson City, Tennessee, 08/27/04.*

*Invited Presenter, Clergy Sexual Abuse: The Crisis in the Catholic Church,* Grand Rounds, *St. Luke Institute, Silver Spring, Maryland, 11/21/02.*

*Invited Presenter, Evidence-based Treatment of Sex Offenders, Park Ridge Hospital, Rochester, New York, 10/2/03.*

*Invited Presenter, Psychiatry and the Law,* Charles E. Steinberg Grand Rounds Lecture, *University of Rochester Medical Center, Rochester, New York, 10/01/03.*

*Invited Presenter, Sex Offenders: Criminals or Patients?* Grand Rounds, *Springfield Hospital Center, Sykesville, Maryland, 04/15/12, 8/22/03.*

*Invited Presenter, The Crisis in the Catholic Church,* Mendelsohn Lecture Series, *The New England Medical Center, Boston, Massachusetts, 09/30/02.*

*Invited Presenter, Diagnosis and Treatment of Paraphilias,* Correctional Mental Health Grand Round Series, *Baltimore, Maryland, 11/17/00.*

*Invited Speaker, The Paraphilias,* Grand Rounds, Columbia University College of Physicians and Surgeons, The Psychiatric Institute, *New York, New York, 10/27/00.*

*Invited Speaker, Ethical Issues in the Care and Treatment of Sexual Predators,* Grand Rounds, Bronx Psychiatric Center, Albert Einstein College of Medicine, *Bronx, New York, 5/7/98.*

## *FREDERICK S. BERLIN, M.D., Ph.D.  -  CURRICULUM VITAE*

*Invited Speaker, Diagnosis and Treatment of Sexual Offenders, Grand Rounds, St. Luke Institute, Silver Spring, Maryland, 4/9/98.*

*Fifth Annual Speaker, Diagnosing and Treating Paraphilias, Paul Mendelsohn Memorial Grand Rounds on Psychiatry and the Law, New England Medical Center, Tufts University School of Medicine, Boston, Massachusetts, 4/28/95.*

*Invited Speaker, Psychiatric and Other Issues in Paraphilias, Grand Rounds, Springfield Hospital Center, Sykesville, Maryland, 2/18/94, 7/24/92, 4/26/91, 3/30/90.*

*Invited Speaker, The Insanity Plea and the Paraphilias, Grand Rounds, Sheppard Pratt Hospital, Baltimore, Maryland, 5/1/93.*

*Invited Speaker, The Paraphilias, Adolescent Psychiatry Grand Rounds, University of Maryland, Baltimore, Maryland, 2/23/93.*

*Invited Speaker, Treating Sexual Disorders, Grand Rounds, Crownsville Hospital Center, Baltimore, Maryland, 1/22/93.*

*Invited Speaker, Differential Diagnosis and Treatment Strategies in Sexual Perversions, Psychiatric Grand Rounds, West Virginia University School of Medicine, Morgantown, West Virginia, 4/1/92.*

*Invited Speaker, Interventions for the Paraphilic Patient, Psychiatric Grand Rounds, University of Maryland, Baltimore, Maryland, 3/26/92, 3/19/85.*

*Invited Speaker, The Paraphilias, Psychiatric Grand Rounds, Bethesda Naval Hospital, Bethesda, Maryland, 1/27/88, 5/20/87.*

*Invited Speaker, Treating the Paraphilias, Psychiatric Grand Rounds, University of Texas School of Medicine, Dallas, Texas, 10/27/87, 1/17/86.*

*Invited Speaker, Treating Sex Offenders, Psychiatric Grand Rounds, University of Virginia School of Medicine, Charlottesville, Virginia, 9/12/85.*

*Invited Speaker, Management of the Paraphilias, Psychiatric Grand Rounds, St. Elizabeth's Hospital, Washington, D.C., 5/23/84.*

*INVITED TALKS*
*AT GOVERNMENT SPONSORED ACTIVITIES:*

*(FEDERAL GOVERNMENT):*

*Invited Speaker, Viewers of Child Pornography: A Psychiatric Perspective, United States Sentencing Commission's Annual Seminar on Federal Sentencing Guidelines, New Orleans, Louisiana, 09/16/15 to 09/18/15.*

*Invited Participant, "Sexual Assault in the Military Part Three: Context and Causes," Subcommittee on National Security and Foreign Affairs, Committee on Oversight and*

### *FREDERICK S. BERLIN, M.D., Ph.D. - CURRICULUM VITAE*

*Government Reform, Congress of the United States, House of Representatives, Washington, DC, 06/25/09.*

*Invited Participant, Judicial Hearing Regarding Sex Offender Legislation, <u>Subcommittee on Crime, Terrorism, and Homeland Security</u>, United States Congress, Washington, DC, 6/9/05.*

*Invited Speaker, Sexual Addiction and the Fantasy Defense, <u>International Online Child Sexual Victimization Symposium</u>, United States Department of Justice, Federal Bureau of Investigation, Leesburg, Virginia, 06/06/04 – 06/11/04.*

*Invited Participant, <u>Online Sexual Victimization of Children Working Group</u>, Federal Bureau of Investigation, Quantico, Virginia, 02/04/04 – 02/05/04.*

*Invited Speaker, Understanding Sex Offenders, <u>Annual In-service Training, Crimes Against Children Unit</u>, Headquarters Federal Bureau of Investigation, Washington, DC, 03/20/2002.*

*Invited Participant, <u>Second National Summit</u>, Center for Sex Offender Management (CSOM), Office of Justice Programs, U. S. Department of Justice, Washington, D.C., 12/17/00 – 12/19/00.*

*Invited Member, Office of Justice Programs Planning Group Regarding Safe Management of Sex Offenders in the Community, Center for Effective Public Policy, Center for Sex Offender Management (CSOM), <u>U. S. Department of Justice</u>, Washington, D.C., 9/9/96 - 1998.*

*Invited Participant, <u>National Resource Group Meeting, Center for Sex Offender Management (CSOM)</u>, Office of Justice Programs, U. S. Department of Justice, Washington, DC, 10/2/00 – 10/3/00.*

*Invited Participant, <u>Third Meeting of the Center for Sex Offender Management's National Resource Sites</u>, Boston, Massachusetts, 7/26/99 – 7/31/99.*

*Invited Participant, Mental Health and the Criminal Justice System Forum, <u>U.S. Department of Justice, Office of Justice Programs and the Center for Mental Health Services</u>, Washington, DC, 7/22/99 – 7/23/99.*

*Invited Speaker, Safe Management of Sex Offenders in the Community. Center for Effective Public Policy, Office of Justice Programs Symposium, <u>U. S. Department of Justice</u>, Washington, D.C., 11/24/96 - 11/26/96.*

*Invited Speaker, Treatment of Sex Offenders, <u>United States Parole Commission</u> (Northeastern Region), Baltimore, Maryland, 6/27/89.*

*Invited Testimony, presented to members of <u>The Meese Commission on Pornography</u>, Baltimore, Maryland, 5/16/85.*

*Invited Participant, <u>NIMH Sponsored Conference</u>, Allocation of Grant Funding to Support Training on Research Related to Sex Offenses and Sexual Disorders, St. Louis, Missouri, 3/2/85 - 3/8/85.*

**JA430**

### *FREDERICK S. BERLIN, M.D., Ph.D. - CURRICULUM VITAE*

*Invited Speaker, Subcommittee on Juvenile Justice Hearings, United States Senate, Washington, D.C., 9/18/84.*

*Invited Participant, White House Conference on Child Sexual Abuse, Washington, D.C., 4/1/83.*

### *INVITED PRESENTATIONS:*

### *(STATE GOVERNMENT and STATE BAR ASSOCIATIONS):*

*Keynote Speaker, Sex Offenders: Criminals or Patients? Clinical Evaluation of Sex Offenders, Treatment of Sex Offenders, Legislative Issues, Civil Commitments and "Cyber-Sex," Massachusetts District Attorneys Association, Boston, Massachusetts, October 25, 2007.*

*Invited Speaker, Watching and Restricting Dangerous Offenders, Annual Meeting, National Conference of State Legislatures, Nashville, Tennessee, 08/16/06.*

*Invited Speaker, Treatment of Sexual Offenders, State House Judiciary Committee, Annapolis, Maryland, 10/18/04.*

*Invited Speaker, Treatment of Sexual Offenders, Specialized Treatment Committee, New Jersey Study Commission on Parole, Trenton, New Jersey, 4/22/96; 10/23/96.*

*Invited Speaker, Megan's Law: Community Notification. Justice Committee, New Jersey State Legislature, Trenton, New Jersey, 2/22/95.*

*Invited Participant, Assessing Dangerousness and Treatment Potential, Conference of the Superior Court of California, San Diego, California, 1/15/95 - 1/17/95.*

*Invited Speaker, Designing a Model Sex Offender Treatment Program for the State of Texas, 2nd Round House Conference, Child Abuse and Texas Families, Austin, Texas, 9/24/93.*

*Invited Speaker, Cause and Elements of Pedophilic Behavior, Child Abuse Seminar, The New Jersey Institute for Continuing Legal Education, The New Jersey State Bar Association, Fairfield, New Jersey, 4/25/92.*

*Invited Speaker, Sentencing Alternatives and the Developmentally Handicapped Sex Offender, Wisconsin State Public Defender Service, Milwaukee, Wisconsin, 11/14/91.*

*Invited Speaker, Treatment of Sex Offenders with Depo-Provera, Seminar for South Carolina Judges and Penal Officers, Columbia, South Carolina, 4/17/90.*

*Invited Speaker, Rapist and Sex Offender Rehabilitation, Subcommittee on Crime and Corrections, New York State Senate, Albany, New York, 6/15/89.*

*Invited Speaker, Men Who Rape: Profiles of Rapists, Criminal Law and Sentencing Institute Conference, Supreme Court of Wisconsin, Oshkosh, Wisconsin, 5/17/89.*

**JA431**

## *FREDERICK S. BERLIN, M.D., Ph.D.  -  CURRICULUM VITAE*

*Invited Speaker, The Sex Offender and the Criminal Justice System, <u>Cook County Circuit Court Judges Seminar</u>, Chicago, Illinois, 9/24/88.*

*Invited Speaker, Sentencing Alternatives, Judicial Education Conference, <u>District Court of Maryland</u>, Baltimore, Maryland, 10/5/88.*

*Invited Speaker, Sex Offender Treatment, Annual Meeting, <u>Pennsylvania State College of Judges</u>, Hershey, Pennsylvania, 7/25/87.*

*Invited Speaker, Treating the Incarcerated Sex Offender, Special Conference, <u>State of Maryland Division of Correction</u>, Baltimore, Maryland, 11/16/87*

*Invited Speaker, Paraphilic Disorders and the Criminal Justice System, Annual Conference, <u>Kansas State College of Judges</u>, 10/14/86 - 10/16/86.*

*Invited Speaker, Treatment of Sex Offenders, Annual Conference, <u>State of Utah Department of Corrections</u>, Salt Lake City, Utah, 9/28/86 - 9/30/86.*

*Invited Speaker, Sex Offenders:  Treatment and Sentencing Alternatives, Annual Meeting, <u>Vermont Judicial College</u>, Burlington, Vermont, 6/4/86 - 6/6/86.*

*Invited Speaker, Medical Assessment and Treatment of Sex Offenders, Annual Meeting, <u>Maryland States Attorneys Association</u>, Ocean City, Maryland 6/4/85.*

*Invited Speaker, Community Setting Programs for the Treatment of Sex Offenders, <u>South Carolina Department of Parole and Community Corrections</u>, Columbia, South Carolina, 5/10/85.*

*Invited Speaker, Issues in the Rehabilitation of Sex Offenders, <u>Maryland State Parole Board</u>, Baltimore, Maryland, 3/9/84.*

*Invited Speaker, Rape and Sexual Assault, <u>Governor of Maryland's Task Force on Rape and Sexual Violence</u>, Baltimore, Maryland, 10/4/83.*

*Invited Speaker, Rehabilitation of Sex Offenders, Somers Treatment Program, <u>State of Connecticut Department of Corrections</u>, Somers, Connecticut, 7/8/83.*

---

### *INVITED PRESENTATIONS:*

### *(LOCAL GOVERNMENTS and LOCAL BAR ASSOCIATIONS)*

*Invited Speaker, Sexual Abuse Allegations. Baltimore County Bar Association, Family Law Committee, March 21, 2019.*

*Invited Speaker, Mandatory Reporting of Child Sexual Abuse, Forum on Child Abuse and Confidentiality:  Privacy Protection and Accountability, <u>Association of the Bar of the City of New York</u>, Committees on Family Court and Family Law and Children and the Law, New York, New York, 10/13/92.*

### *FREDERICK S. BERLIN, M.D., Ph.D.  -  CURRICULUM VITAE*

---

#### *INVITED PRESENTATIONS TO NATIONAL CONFERENCES OF JUDGES:*

*Invited Speaker, Sexual Offenders and the Criminal Justice System, National Conference of Juvenile Court Judges, Burlington, Vermont, 8/20/85 - 8/21/85.*

*Invited Speaker (as a National Leader in Law and Health), National Symposium on the Child Victim of Sexual Abuse, National Counsel of Juvenile and Family Court Judges, Burlington, Vermont, 2/24/85 - 2/27/85.*

---

#### *INVITED PRESENTATIONS TO LAW ENFORCEMENT AGENCIES:*

*Invited Speaker, Sex Offenders: Criminals or Patients? Academy Training, Delaware State Police Department, June 5, 2014, August 28, 2015.*

*Invited Speaker, Evaluation and Treatment of Sex Offenders, Annual Child Sexual Exploitation Seminar, Baltimore County Police Academy, Baltimore County, Maryland, 10/14/98; 10/15/97; 8/30/96; 7/20/95; 7/16/93; 6/14/91; 8/23/90; 9/15/89; 7/15/88; 6/15/87, 10/6/99, 10/13/00, 10/10/01, 10/11/02, 10/15/04, 10/25/05, 10/27/06. 10/23/07.*

*Invited Speaker, Profiling the Rapist, Violent Crimes Task Force, Baltimore City Police Department, Baltimore, Maryland, 9/22/97*

*Invited Speaker, The Mind of the Sex Offender, Violent Crimes Task Force, Baltimore City Police Department, Baltimore, Maryland, 12/6/96.*

*Invited Speaker, Clinical Perspectives and Profiles of Sexual Offenders, Colorado Association of Sex Crimes Investigators, Lakewood, Colorado, 9/8/94 - 9/10/94.*

*Production of a Training Film, Psychosexual Disorders as They Relate to Law Enforcement, Maryland State Police, Baltimore, Maryland, 3/25/86.*

*Invited Speaker, Sex Offenders and the Law, Educational Seminar, Baltimore City Police Department, Baltimore, Maryland, 12/17/85.*

---

#### *PRESENTATIONS AT NATIONAL TREATMENT CONFERENCES:*

*Keynote Speaker, Diagnosis and Treatment of Sex Offenders, 2014 SAPEN Conference, Community Reintegration and Emerging Trends: The Next Steps, State College, Pennsylvania, 07/30/14.*

*Invited Lecturer, Diagnosis and Treatment of Paraphilias/Pedophilia, Society for Sex Therapy and Research (SSTAR) 2011: 36th Annual Meeting, Palm Beach, Florida, 04/02/11.*

*Invited Speaker, Pre-Conference Seminar, Differential Diagnosis of Rapists, Plus a Conceptual overview of the Paraphilias, Association for the Treatment of Sexual Abusers (ATSA) 29th Annual Research and Treatment Conference, Phoenix, Arizona, 10/20/10 – 10/23/10.*

### FREDERICK S. BERLIN, M.D., Ph.D.  -  CURRICULUM VITAE

*Invited Panelist, Confrontation, Compassion, and Forgiveness: A Triangle for Transformation, Association for the Treatment of Sexual Abusers (ATSA) 29th Annual Research and Treatment Conference, Phoenix, Arizona, 10/20/10 – 10/23/10.*

*Invited Participant, A Case of Auto-eroticism, 34th Annual Meeting, Society for Sex Therapy and Research (SSTAR), Arlington, Virginia, 04/04/09.*

*Keynote Speaker, 2008 National Conference of The Society for the Advancement of Sexual Health (SASH), Cambridge, Massachusetts, 09/19/08.*

*Invited Participant, Child Pornography Roundtable: Toward a Shared Understanding of the Problem & Prevention Strategies, National Center for Missing and Exploited Children, Alexandria, Virginia, 02/07/08.*

*Invited Speaker, The Assessment and Etiology of Paraphilias & The Rationale for Treatment, and Treating Paraphilias, ValueOptions Postgraduate Institute for Medicine, Behavioral Health Update 2006, Phoenix Arizona, 03/04/06.*

*Invited Speaker, Sex and the Nursing Home Resident: Pharmacological Enhancement of Sexual Control, American Association for Geriatric Psychiatry, 17th Annual Meeting, Baltimore, Maryland, 02/21/04 – 02/24/04.*

*Invited Speaker, Sex Offenders: Criminals or Patients? National Defense Investigators Association, Federal Public Defenders Office, National Training Conference, Ft. Lauderdale, Florida, 4/23/03 – 4/25/03.*

*Keynote Speaker, Sex Offenders: Criminals or Patients? Annual Meeting of the Minnesota Association for the Treatment of Sexual Abusers, Minneapolis, Minnesota, 3/21/03.*

*Invited Participant, Law and Disorder: SVP, Mock Trial, American Academy of Psychiatry and the Law Annual Meeting, Newport Beach, California, 10/24/02 – 10/27/02.*

*Keynote Speaker, Sex Offenders: Criminals or Patients? National Council on Sexual Addiction and Compulsivity (NCSAC) Conference, Nashville, Tennessee, 10/6/02 – 10/8/02.*

*Invited Speaker, The Diagnosis and Treatment of Sex Offenders, SAPEN Conference, Pittsburgh, Pennsylvania, 9/6/01.*

*Invited Keynote Speaker, Sex Offenders: Criminals or Patients (and also The Use of Actuarials at Civil Commitment Hearings), Association for the Treatment of Sexual Abusers (ATSA), San Diego, California, 11/1/00 – 11/4/00.*

*Invited Speaker, Diagnosis and Treatment of Sexual Disorders, Sexual Abuse Prevention and Education Network (S.A.P.E.N.) Annual Conference, Harrisburg, Pennsylvania, 10/10/00.*

*Invited Speaker, Diagnosis and Treatment of Sex Offenders, American Academy of Psychiatry and the Law (AAPL) Annual Meeting, Baltimore, Maryland, 10/15/99.*

**JA434**

## *FREDERICK S. BERLIN, M.D., Ph.D.  -  CURRICULUM VITAE*

*Invited Participant, Diagnosing and Treating Sexual Offenders From a Medical Perspective, Association for the Treatment of Sexual Abusers (ATSA) 18th Annual Research and Treatment Conference, Lake Buena Vista, Florida, 9/22/99 – 9/25/99.*

*Invited Speaker, Diagnosis and Treatment of Sex Offenders, Specialized Training Services – Assessing and Treating Sex Offenders, Chicago, Illinois, July 8, 1999.*

*Keynote Speaker, Sex Offenders: Criminal or Patient?  The National Council on Sex Addiction and Compulsivity 1999 National Conference, St. Louis, Missouri, 4/9/99.*

*Invited Panelist, Toward a Whole Systems Approach to Sex Abuse, 22nd Annual Family Therapy Network Symposium, Washington, D.C., 3/20/99.*
*Invited Speaker, Sex Offender Evaluation and Treatment, Forensic Psychiatry Fellowship Lecture, Office of the Medical Examiner, Circuit Court for Baltimore City, Baltimore, MD; 4/01/16.*

*Invited Panelist, The Missing Face in Sex Abuse Prevention, The International Society for Traumatic Stress Studies and The Dartmouth-Hitchcock Medical Center XIV Annual Meeting, Washington, D.C., 11/22/98.*

*Invited Panelist, A Serial Murderer:  From Competency to Sentencing,  American Academy of Psychiatry and the Law, New Orleans, Louisiana, October 23, 1998.*

*Invited Speaker, Sex Offenders: Criminals or Patients?  National Council on Sexual Addiction and Compulsivity, Louisville, Kentucky, 3/26/98 - 3/28/98.*

*Invited Panelist, Sex Offenders:  Criminals or Patients?   150th Annual Meeting, American Psychiatric Association, San Diego, California, 5/20/97.*

*Invited Speaker, Forensic Evaluation of the Accused Sexual Offender:  Can He Be Treated? 12th Annual Symposium, American College of Forensic Psychiatry, Montreal, Canada  5/8/94 - 5/15/94.*

*Invited Speaker, Jeffrey Dahmer: Was He Ill?  Was He Impaired?  11th Annual Symposium, American College of Forensic Psychiatry, Santa Fe, New Mexico, 4/23/93.*

*Invited Panelist, Jeffrey Dahmer: A Case Study, Annual Meeting, American Academy of Psychiatry and the Law, San Antonio, Texas, 10/15/92 - 10/18/92.*

*Invited Panelist, Diagnosis and Treatment of Sex Offenders, Annual Meeting, American Academy of Psychiatry and the Law, Washington, D.C., 10/19/89 - 10/20/89.*

*Invited Speaker, Evaluating and Treating Sex Offenders, 3rd Annual Meeting, American College of Forensic Psychiatry, Newport Beach, California, 4/18/85 - 4/21/85.*

*Invited Speaker., Behavioral Medicine Seminar, Medical Evaluation and Treatment of the Paraphilias, 136th Annual Meeting, American Psychiatric Association, 5/18/83.*

### *ADDITIONAL SIGNIFICANT LECTURES:*

**JA435**

*FREDERICK S. BERLIN, M.D., Ph.D. - CURRICULUM VITAE*

Keynote Speaker, Psychiatric Sexual Disorders, <u>Forensic Science Conference: The Brain</u>, The Public Defender Service for the District of Columbia, Washington, DC, 06/13/15.

Invited Speaker, The Paraphilias; with an Emphasis on Pedophilia and Viewers of Child Pornography, <u>Gilvary Symposium 2015</u>, University of Dayton School of Law, Dayton, Ohio 03/20/15.

Invited Speaker, Psychological Consideration of Penile Transplantation, <u>Intimacy After Injury Conference</u>, Bob Woodruff Foundation, Helping Heroes on the Homefront, Johns Hopkins Military Veterans Health institute, Wake Forest School of Medicine, Washington, DC, 12/12/14.

Invited Speaker, Paraphilia, <u>Brain, Mind, Behavior Series</u>, The Johns Hopkins University, Department of Psychiatry, Baltimore, Maryland, April 15, 2014.

Invited Speaker, Mandatory Reporting, <u>Second Annual Symposium Child Sexual Abuse: A Public Health Perspective</u>, The Johns Hopkins Bloomberg School of Public Health, Baltimore, Maryland, April 11, 2014.

Invited Speaker, Understanding Pedophilia and Other Paraphilias from a Psychiatric Perspective, <u>Sexual Citizenship and Human Rights Conference</u>, The University of Texas at Austin, Austin, Texas, November 22, 2013 – November 24, 2013.

Invited Speaker, Evaluation and Treatment of Persons with Sexual Disorders, <u>31st Annual Medical Staff Education Day</u>, Chambersburg Hospital, Chambersburg, Pennsylvania, October 11, 2013.

Invited Participant (via teleconference), "Chemical Castration" and its limits for crime recidivism prevention, <u>International Conference on the Treatment of Sexual Offenders, International Academy of Forensic Sciences</u>, Rome, Italy, October 1, 2009.

Invited Participant, Mentally Ill/Problematic Sexual Behavior Summit Conference, <u>University of Massachusetts Medical School</u>, Beechwood Hotel, Worcester, Massachusetts, November 17, 2006

Invited Speaker, Sexual Offense and Sexual Offenders: An Overview, <u>Reading Specialists Offender Treatment Services, The Delaware County Association of Criminal Defense Lawyers, and The Criminal Legal Education Committee of the Delaware County Bar Association</u>, Sexual Offenders & the Law: Issues and Process in Treatment, Defense & Prosecution of Sexual Offenders, Reading, Pennsylvania, October 4, 2006

Invited Speaker, Sexually Violent Predators: Medical Issues and Trends, <u>National Association of State Mental Health Program Directors</u>, Alexandria, Virginia, 08/07/06.

Invited Presenter, Understanding Paraphilias: The Place for Research Findings, <u>Topics in Psychiatry</u>, Sixth Annual Course, Johns Hopkins Continuing Medical Education, Department of Psychiatry and Behavioral Sciences, Baltimore, Maryland, November 18, 2005.

**JA436**

*FREDERICK S. BERLIN, M.D., Ph.D. - CURRICULUM VITAE*

*Invited Speaker, Sex Offender Treatment, <u>Massachusetts Psychiatric Society</u>, Third Annual Genetics Update and Fall Seminar, Newton, Massachusetts, October 29, 2005.*

*Invited Speaker, Sexually Dangerous Persons: Issues and Controversies, <u>Forensic Health Services</u>, Boston, Massachusetts, June 24, 2005.*

*Invited Speaker, Sex Offenders: Criminals or Patients?, <u>Massachusetts Psychiatric Society</u>, Worcester, Massachusetts, 12/16/04.*

*Panel Member, The Need for a New Sexual Disorders Diagnosis in <u>DSM-V, Annual Conference, The Society for the Advancement of Sexual Health (NCSAC / SASH)</u>, Washington, DC, 10/07/04.*

*Invited Speaker, Sex: Victims and Victimizers, <u>Tristate American Academy of Psychiatry and the Law</u>, Annual Meeting, New York University School of Medicine, New York, New York, 01/24/04.*

*Invited Speaker, Rehabilitation of Sex Offenders, <u>Maryland Mensa</u>, Baltimore, Maryland, 10/17/03.*

*Invited Speaker, Evaluating and Treating Sexual Disorders, <u>Judicial Process Commission</u>, Rochester, New York, 02/17/03.*

*Invited Speaker, Sexual Disorders and The Catholic Church Crisis, <u>Diocese of Rochester</u>, Rochester, New York, 2/17/03.*

*Invited Speaker, Sex Offenders: Criminals or Patients, <u>Criminal Justice Seminar, Rochester Institute of Technology</u>, Rochester, New York, 2/17/03.*

*Invited Speaker (full day), Diagnosing and Treating Sexual Offenders, <u>Colorado Association for the Treatment of Sexual Abusers</u>, Denver, Colorado, 2/23/01.*

*Invited Presenter, Diagnosis and Treatment of Sex Offenders, <u>Association of Paroling Authorities International, 15th Annual Training Conference</u>, Biloxi, Mississippi, 4/19/99.*

*Invited Speaker, Diagnosis and Treatment of "Sexually Violent Predators", <u>Atascadero State Hospital</u>, Atascadero, California, 2/26/99.*

*Invited Speaker, Sex Offenders: Criminals or Patients?, <u>Tristate AAPL Annual Conference</u>, New York, NY, 1/23/99.*

*Invited Speaker, Treatment of Sex Offenders, <u>Center for Sex Offender Management Conference</u>, Washington, D.C., 12/8/98*

*Invited Speaker, The Diagnosis and Treatment of Sex Offenders, <u>Arizona State Hospital, Arizona Community Protection and Treatment Center</u>, Phoenix, Arizona, 11/17/98.*
*Invited Speaker, Understanding Deviant Sexual Behavior, <u>Effective Sex Offender Management Conference, Sponsored by the Arizona Supreme Court and the Center for Sex Offender Management</u>, Phoenix, Arizona, 11/16/98.*

## *FREDERICK S. BERLIN, M.D., Ph.D.  -  CURRICULUM VITAE*

*Invited Speaker, Assessing and Treating Sex Offenders, <u>Specialized Training Services and The National Association for the Development of Work With Sex Offenders (NOTA),</u> London, England, 7/3/98.*

*Invited Speaker, Sexual Aggression: Treatment or Punishment, <u>2nd Biennial Meeting, American Psychiatric Association - French Federation of Psychiatry,</u> Carre' des Sciences, Paris, France, 6/10/98.*

*Invited Speaker, Diagnosis and Treatment of Sex Offenders, <u>First Annual Conference on Violence and Aggression, Centre de Richerche Phillippe Pinel de Montreal,</u> Montreal, Canada, 11/1/96.*

*Distinguished Lecturer, The Evaluation and Treatment of Sex Offenders, <u>Distinguished Lecturer Series, Poplar Springs Hospital,</u> Petersburg, Virginia, 9/27/96.*

*Distinguished Lecturer, Differential Diagnosis and Treatment of Sexual Offenders, <u>The Spurwink Foundation Distinguished Lecture Series,</u> Nashua, New Hampshire, Portland, Maine, 3/15/95; 3/17/95.*

*Invited Panelist, Understanding Paraphilias and Sexual Offenders, <u>29th American Society of Hospital Pharmacists Annual Mid-year Meeting,</u> Miami, Florida, 10/5/94.*

*Invited Lecturer, Understanding and Treating Sexual Trauma in Children and Adolescents, <u>Devereux Glenholme Professional Resource Center,</u> Windsor Locks, Connecticut, 10/31/94 - 11/2/94.*

*Visiting Professor, A Forensic Perspective on the Jeffrey Dahmer Case and Overview of the Paraphilias, <u>Visiting Professor Seminar, Pennsylvania Hospital,</u> Philadelphia, Pennsylvania, 7/29/93.*

*Invited Speaker, Reassignment of Priest Pedophiles, <u>Cardinal's Commission on Sex Abuse,</u> Archdiocese of Chicago, Chicago, Illinois, 4/30/93.*

*Invited Speaker, Theories on the Physical Causality of Homosexuality, <u>Annual Meeting, Bishops of North America, Central America and the Caribbean,</u> Dallas, Texas, 2/5/93.*

*Invited Speaker, Sexual Addiction, Research Seminar, <u>National Institute on Alcohol and Drug Abuse,</u> Rockville, Maryland 1/12/93.*

*Invited Lecturer, Treatment of the Paraphilias, <u>4th Annual Forensic Psychiatry Symposium on Sexual Misconduct in the Military,</u> Walter Reed Army Hospital, Washington, D.C., 11/23/92.*

*Distinguished Lecturer, Jeffrey Dahmer and Other Sexual Offenders:  Diagnosis and Treatment, <u>Distinguished Lecturer Series, Poplar Springs Hospital,</u> Petersburg, Virginia, 7/15/92.*

*Invited Speaker, Rehabilitation and Reassignment for the Errant in the Clergy, <u>Annual Meeting, National Conference of Catholic Bishops,</u> University of Notre Dame, West Bend, Indiana, 6/20/92.*

### *FREDERICK S. BERLIN, M.D., Ph.D.  -  CURRICULUM VITAE*

*Invited Speaker, How to Deal With Priest Pedophiles, <u>Cardinal Bernardin's Commission on Sexual Misconduct,</u> Archdiocese of Chicago, Chicago, Illinois, 3/19/92.*

*Invited Lecturer, Diagnosis and Treatment of the Paraphilias, <u>Tenth Annual Columbia Hospital Psychiatry Conference, Medical College of Wisconsin,</u> Milwaukee, Wisconsin, 3/10/92.*

*Invited Speaker, Paraphilia, Personality and Sex Offending Behavior, <u>Annual Meeting, Society for Sex Therapy and Research,</u> Baltimore, Maryland,  3/17/90.*

*Invited Panelist, Sexual Abuse:  Research and Solutions, <u>Child Help U.S.A. Forum, Capital Hill,</u> Washington, D.C., 11/9/89.*

*Invited Panelist, Human Sexual Aggression and Dominance:  Biological Clues, Differential Diagnosis and Pharmacological Treatment of Sex Offenders, <u>Annual Meeting, American Association for the Advancement of Science,</u> San Francisco, California, 1/14/89 - 1/19/89.*

*Invited Speaker, Diagnosis and Treatment of the Paraphilias, <u>Northeast Ohio Psychiatric Association,</u> Columbus, Ohio, 1/11/89.*

*Invited Lecturer, Diagnosis and Treatment of Paraphilic Disorders, <u>Continuing Medical Education Program, Eastern State Hospital,</u> Williamsburg, Virginia, 11/14/88.*

*Invited Speaker, Diagnosis and Treatment of Sex Offenders, <u>Midwest Conference on Child Sexual Abuse and Incest,</u> Madison, Wisconsin, 9/26/88 - 9/27/88.*

*Invited Lecturer, Diagnosing and Treating Sex Offenders, Education Program in Psychiatry, <u>The Institute of Living, University of Connecticut Health Center Consortium,</u> Hartford, Connecticut, 11/12/87 - 11/13/87.*

*Invited Panelist, Etiology and Treatment of Sexual Disorders, <u>Conference on the Management of Sex Offenders, University of Illinois College of Medicine,</u> Peoria, Illinois, 10/30/87.*

*Keynote Speaker, The Paraphilias, <u>Annual Meeting, Scientific Society for the Study of Sex.</u> Philadelphia, Pennsylvania, 4/3/87 - 4/5/87.*

*Invited Panelist, Evaluation and Treatment of Paraphilic Disorders, <u>Annual Conference, National Association of Forensic Social Workers,</u> Charleston, South Carolina, 3/26/87.*

*Invited Panelist, Issues in the Exploration of Biological Factors Contributing to the Etiology of the Sex Offender, Plus Some Ethical Considerations, <u>Human Sexual Aggression Conference, New York Academy of Sciences,</u> 1/7/87 -1/9/87.*

*Invited Speaker, Coordinating Treatment for Sex Offenders With Parole and Probation, <u>Annual Conference, National Association of Parole and Probation,</u> Baltimore, Maryland, 8/5/86.*

*Invited Speaker, Paraphilic Coercive Disorder, <u>Board of Trustees, American Psychiatric Association,</u> Washington, D.C., 6/24/86.*

*Invited Speaker, The Paraphilias:  Forensic Issues, <u>The Ohio Forensic Society,</u> 6/7/86.*

**JA439**

### *FREDERICK S. BERLIN, M.D., Ph.D.  -  CURRICULUM VITAE*

*Invited Speaker, Inclusion of Paraphilic Coercive Disorder as a DSM-III-R Diagnosis, <u>Hearing on Rapism, American Psychiatric Association</u>, Washington, D.C., 10/4/85.*

*Invited NIMH Panelist, Rehabilitating Sex Offenders, <u>37th Annual Meeting, American Society of Criminology</u>, San Diego, California, 11/13/85 - 11/17/85.*

*Invited Speaker, Assessment and Treatment of Incarcerated Sex Offenders, <u>Annual Meeting, National Association of Prison Administrators</u>, Philadelphia, Pennsylvania, 11/14/85.*

*Invited Speaker, The Paraphilic Disorders, <u>Annual Meeting, Kansas Mental Health Association</u>, Kansas City, Kansas, 8/17/85.*

*Invited Speaker, Changes to be Made in DSM-III-R Related to the Paraphilic Disorders, Educational Seminar, <u>New York Division, American Academy of Psychiatry and the Law</u>, New York, New York, 1/19/85.*

*Invited Speaker, Sex Offenders: Differential Diagnoses and Treatment, <u>Centrocare Symposium, Sex Offender Treatment in Canada</u>, St. John, New Brunswick, 10/17/84 - 10/18/84.*
*Invited Speaker, Treating Sex Offenders in the Community, <u>Annual Meeting, National Association of Parole and Probation</u>, Boston, Massachusetts, 8/24/84 - 8/27/84.*

*Invited Speaker, Treating Rapists, <u>District of Columbia Conference on Rape and Sexual Violence</u>, Washington, D.C., 5/8/84.*

*Invited Speaker, Diagnosing and Treating Incest, <u>Third National Conference, Sexual Victimization of Children</u>, Arlington, Virginia, 4/26/84.*

*Invited NIMH Panelist, Biological Factors Related to Rape, <u>35th Annual Meeting, American Society of Criminology</u>, Denver, Colorado, 11/9/83 - 11/13/83.*

*Invited Speaker, Medical-Legal Issues in the Treatment of Sex Offenders, <u>Georgetown University Law School Symposium</u>, Washington, D.C., 1/20/83.*

*Invited Speaker, Pharmacological Treatment of Sexual Deviation, <u>Psychiatric Symposia Series, Taylor Manor Hospital</u>, Ellicott City, Maryland, 3/25/92, 3/21/86, 5/19/82.*

*Invited Speaker, Antiandrogenic Medication in the Treatment of Sex Offenders, <u>Third National Conference, Evaluation and Treatment of Sexual Aggressives</u>, Avila Beach, California, 3/15/81 - 3/18/81.*

*Invited Speaker, Victims Turned Victimizers, <u>First World Congress of Victimology</u>, Washington, D.C., 8/20/80 - 8/24/80.*

---

### *OTHER TALKS AND PRESENTATIONS:*

*Invited Speaker, The Paraphilias, <u>Child and Adolescent Psychiatry</u>, The Johns Hopkins Hospital, March 13, 2019.*

**JA440**

## *FREDERICK S. BERLIN, M.D., Ph.D.  -  CURRICULUM VITAE*

*Invited Speaker, Pedophilia: Criminal Mindset or Mental Disorder, Creative Alternatives, Baltimore, Maryland, March 19, 2013.*

*Invited Speaker, Diagnosing Sexual Disorders and Pharmacological Treatment, Nevada Psychiatric Association 18th Annual Psychopharmacology Update, Las Vegas, Nevada, February 13 – 17, 2013.*

*Invited Speaker, Addressing Pedophilia and Other Sexual Disorders. Urology Nursing Society, Inc. Baltimore, Maryland, October 4, 2012.*

*Invited Speaker, Evaluating and Treating Sexually-Disordered Patients, St. Luke Institute, Washington, DC, July 26, 2012.*

*Invited Speaker, Sex Offenders: Evaluation and Treatment, Discover Hopkins class, National Institute for the Study, Prevention and Treatment of Sexual Trauma, Baltimore, Maryland, July 11, 2012, July 17, 2014, July 8, 2015.*

*Keynote Speaker, Understanding Pedophilia and Other Paraphilias from a Psychiatric Perspective, B4U-ACT Symposium, Pedophilia, Minor-Attracted Persons, and the DSM: Issues and Controversies, BWI Airport, Maryland, August 17, 2011.*

*Invited Speaker, Sex Offenders: Evaluation and Treatment.  Abnormal Psychology and Forensic Cases, The Johns Hopkins University, Baltimore, Maryland, July 11, 2011.*

*Invited Speaker, Sex Offenders: Evaluation and Treatment, Forensic Fellowship Lecture, University of Maryland School of Medicine, Courthouse East, Baltimore, Maryland, March 19, 2010, June 3, 2011, June 1, 2012, June 14, 2013, April 18, 2014, February 13, 2015.*

*Keynote Speaker, Sex Offenders: Criminals or Patients?   Undergraduate Research Symposium, The Johns Hopkins University, Baltimore, Maryland, April 5, 2010.*

*Invited Speaker, A Critical Appraisal of Proposed DSM-V Paraphilic Diagnoses (panel), 40th Annual Meeting, American Academy of Psychiatry and the Law, Baltimore, Maryland, October 29, 2009.*

*Invited Speaker, Provided Full-Day Statewide Training Session on Chronic Mentally Ill Patients with Comorbid Problematic Sexual Behaviors, University of Massachusetts Medical School, Worcester, Massachusetts, 06/20/08.*

*Invited Panelist, Contemporary Perspectives on Sexual Paraphilias, American Association of Sexuality Educators, Counselors and Therapists (AASECT), Baltimore, Maryland, 05/18/08.*

*Invited Speaker, Sex Offenders:  Criminals or Patient?  University of Maryland Baltimore, Department of Psychiatry, Series on Forensic Psychiatry, Baltimore, Maryland, 04/19/07, 02/14/08, 02/29/09, 02/04/10, 01/13/11, 01/19/12, 01/03/13, 02/27/14, 12/11/14, 10/08/15.*
*Invited Speaker, Sex Offenders: Criminals or Patients?  Roland Park Place Men's Club, Baltimore, Maryland, 01/08/07.*

### *FREDERICK S. BERLIN, M.D., Ph.D.  -  CURRICULUM VITAE*

*Invited Speaker, Using Actuarial Tables, New Perspectives on Youth Sexual Behavior, Sponsored by the Maryland Association of Resources for Families and Youth, Linthicum Heights, Maryland, 05/05/06.*

*Invited Speaker, Evaluating and Treating Paraphilic Disorders, <u>Baltimore/DC Cluster of the Fielding Graduate University,</u> Baltimore, Maryland, 01/07/06.*

*Invited Speaker, Evaluating and Treating Paraphilic Disorders, <u>Baltimore County Department of Social Services,</u> Towson, Maryland, 06/07/05.*

*Invited Speaker, Diagnosis and Treatment of Sexual Disorders, <u>Topics in Psychiatry,</u> The Johns Hopkins University, Department of Psychiatry and Behavioral Sciences, Baltimore, Maryland 11/05/04 – 11/06/04.*

*Invited Speaker, Sexuality Facts vs. Religious Responses, <u>United Religious Initiative,</u> Episcopal Cathedral, Baltimore, Maryland, 02/17/04.*

*Invited Speaker, Sexual Relations Between Adults and Children, Social and Community Psychiatry Seminar, <u>The Johns Hopkins Hospital,</u> Baltimore, Maryland 09/24/03.*

*Invited Speaker, Evaluating and Treating Paraphilic Disorders, <u>Baltimore County Department of Social Services,</u> Baltimore, Maryland, 04/15/03.*

*Invited Speaker, Sex Offenders: Criminals or Patients, <u>Third Annual Henry L. Hartman Forensic Psychiatry Conference, Medical College of Ohio,</u> Toledo, Ohio, 11/8/02.*

*Invited Speaker, The Crisis in the Catholic Church, <u>Adult Night at St. John the Evangelist Catholic Church,</u> Phoenix, Maryland, June 2, 2002.*

*Invited Chair, Vanderbilt Symposium on "Sexual Addiction," <u>American Foundation for Addiction Research,</u> Vanderbilt University, Nashville, Tennessee, 3/22/01 – 3/23/01.*

*Invited Speaker, Treatment of Adolescent Sex Offenders, <u>Reading Specialists,</u> Reading, Pennsylvania, 05/05/00.*

*Invited Lecturer, Sexuality Issues/Disorders Training, <u>Maryland Department of Health and Mental Hygiene – Sponsored by DDA Central Regional Office,</u> The Community College of Baltimore County – Catonsville Campus, Catonsville, Maryland, 03/24/00.*

*Invited Participant, The Neurobiology of Compulsive Sexual Behavior and Sexual Addiction – A Planning Meeting, <u>Sponsored by Vanderbilt Addiction Center and The American Foundation for Addiction Research,</u> Vanderbilt University Medical Center, Nashville, Tennessee, 2/3/00 – 2/4/00*

*Invited Speaker, Diagnosis and Treatment of Sexual Disorders, <u>Regional Training Seminar Worcester County Department of Social Services,</u> Salisbury State College, Salisbury, Maryland, 1/28/00*
*Invited Lecturer, Sex Offenders and the Law, <u>course on Law and Psychiatry,</u> University of Baltimore School of Law, Baltimore, Maryland, 11/1/99, 10/23/00.*

## *FREDERICK S. BERLIN, M.D., Ph.D.  -  CURRICULUM VITAE*

Guest Lecturer, Diagnosis and Treatment of Sexual Disorders, Villa Julie College, Baltimore, Maryland, 7/14/99.

Invited Speaker, Evaluations and Etiology of Sex Offenders, Charter Psychosexual Rehabilitation and Education Program, Understanding, Assessing and Treating Male Adolescent Sex Offenders, Pittsburgh, Pennsylvania, 7/9/99.

Invited Speaker, Sex Offenders: Criminals or Patients, Chesapeake Bay Chapter of AAPL, Bethesda, Maryland, 6/30/99.

Invited Speaker, Diagnosis and Treatment of Sex Offenders, Allegany County Health Department, Cumberland, Maryland, 6/1/99.

Invited Lecturer, Sex Offenders: Criminals or Patients, Course on Psychiatry and the Law, University of Baltimore School of Law, Baltimore, Maryland, 3/17/99.

Invited Participant, The Use of Triptorelin in Paraphilia Management, DebioPharm S.A. Developpements Biologiques et Pharmaceutiques, Lausanne, Switzerland, 2/8/99.

Invited Speaker, Sexual Compulsivity, The National Catholic Bioethics Center, Dallas, Texas, 2/4/99.

Invited Participant, Mixing of Sex Offenders in Custodial Drug Treatment Therapeutic Community Units: Problems and Potential Solutions, A Gathering of Leading Experts, University of California, San Diego, School of Medicine, San Diego, California, 1/19/99 - 1/20/99.

Invited Presenter, Sexual Misconduct by Clergy, Case Conference at St. Luke Institute, Silver Spring, Maryland, 11/5/98.

Invited Speaker, Rape and Child Sexual Abuse, University of Baltimore, Baltimore, Maryland, 9/17/98.

Invited Speaker, Sexual Offenders:  Criminal or Patients?, Loudon County Mental Health Center, Loudon County, Virginia, 9/15/98.

Invited Speaker, Sexual Offenders - Registration Statutes and Treatment Alternatives, Maryland Criminal Defense Attorney's Association Annual Meeting, Baltimore, Maryland, 6/6/98.

Invited Speaker, Treating the Paraphilias with Depo-Lupron, Maryland Health Administration, State-wide Pharmacy and Therapeutics Committee, Spring Grove Hospital, Baltimore, Maryland  5/29/98.

Invited Speaker, Diagnosis and Treatment of Sex Offenders, Utah Correctional Association Conference, St. George, Utah, 3/30/98 - 4/2/98.

Invited Speaker, Paraphilias in the Developmentally Disabled, The Kennedy-Krieger School, Baltimore, Maryland 12/10/97.
Invited Speaker, The Paraphilias, Sexual Offender Assessment, Risk Management and Treatment, Continuing Education Seminar, Psychiatry Department, The University of California School of Medicine, San Diego, California, 8/20/97 - 8/22/97.

**JA443**

## *FREDERICK S. BERLIN, M.D., Ph.D.  -  CURRICULUM VITAE*

*Invited Speaker, Diagnosis and Treatment of Sex Offenders, Conference, Sexual Abuse Prevention and Education Network, New Cumberland, Pennsylvania, 8/6/97 - 8/8/97.*

*Invited Speaker, Evaluation, Etiology and Treatment of the Sex Offender, Educational Seminar, Forensic Hospital, Trenton, New Jersey, 6/23/95.*

*Invited Speaker, Reporting Sexual Abuse of Adult Survivors, Educational Seminar, Central Maryland Sexual Abuse Treatment Task Force, Baltimore, Maryland, 11/18/94.*

*Invited Speaker, The Etiology of Sexual Disorders:  The Damaged Child Grows Up, Clinical Seminar Series on Infancy, University of Maryland School of Medicine, Baltimore, Maryland, 11/16/94.*

*"Guest Professor", Rape and Pedophilia, Course on Psychology of Criminal Behavior, Georgetown University, 11/14/94, 10/25/93, 2/2/93, 11/12/90, 4/2/90, 4/24/89, 4/9/87, 3/24/87.*

*Invited Speaker, Child Sexual Abuse, Conference on Domestic Violence:  Sexual Trauma, Elder Abuse, Child Abuse, Doyelstown, Pennsylvania, 10/14/94.*

*Invited Speaker, Rape and Pedophilia, Forensic Mental Health Associates, Salt Lake City, Utah, 8/24/94; St. Petersburg, Florida, 7/1/94; Denver, Colorado, 8/31/88 - 9/1/88; Chicago, Illinois, 5/11/88 - 5/12/88; Boston, Massachusetts, 10/1/87 - 10/2/87; Denver, Colorado, 8/31/87 - 9/1/87; Fargo, South Dakota, 7/16/87 - 7/17/97; Chicago, Illinois, 5/11/87 - 5/12/87; Orange County, California, 1/21/87 - 1/23/87; Phoenix, Arizona, 10/30/86 - 10/31/86; Detroit, Michigan, 9/11/86 - 9/12/86; Cleveland, Ohio, 7/31/86 - 8/1/86; Dallas, Texas, 3/27/86 - 3/28/86; Lake Buena Vista, Florida, 8/29/85 - 8/30/85; San Francisco, California, 3/21/85 - 3/22/85; Dallas, Texas, 10/11/84 - 10/12/84.*

*Invited Speaker, Sentencing Sex Offenders, Annual Meeting, National Association of Sentencing Advocates, Baltimore, Maryland, 6/9/94 - 6/11/94.*

*Invited Lecturer, The Paraphilias, Criminal Justice Class, The American University, The Johns Hopkins Center, Baltimore, Maryland, 4/22/94.*

*Invited Speaker, Paraphilic Development and Treatment, Educational Seminar, National Center on Institutions and Alternatives, Alexandria, Virginia, 10/15/93.*

*Invited Speaker, Treatment of Sexual Disorders and Sexual Trauma, Annual Symposium, Virginia Correctional Counseling Association, Charlottesville, Virginia, 6/2/93.*

*Invited Speaker, Rehabilitation and Reassignment for the Errant in the Clergy, Catholic Bishops of Indiana, Fort Wayne, Indiana, 9/3/92.*

*Invited Speaker, Treatment of Sex Offenders, Maryland Association of Private Practice Psychiatrists, Baltimore, Maryland, 4/23/92.*

*Invited Speaker, Issues of Pedophilia in the Developmentally Handicapped, Rosewood Hospital Center, Baltimore, Maryland, 12/18/91, 05/09/97.*

### *FREDERICK S. BERLIN, M.D., Ph.D. - CURRICULUM VITAE*

*Invited Speaker, Pharmacological Treatment of Juvenile Sex Offenders, Mathom House Residential Facility for Adolescents, Philadelphia, Pennsylvania, 9/20/91.*

*Invited Speaker, Diagnosis and Treatment of Sex Offenders, Community Mental Health Conference, Howard County Health Department, Columbia, Maryland, 9/17/91.*

*Invited Speaker, Paraphilias: Evaluation and Treatment, Psychiatric Staff Meeting, St. Joseph's Hospital, Towson, Maryland, 5/21/91.*

*Invited Speaker, Sexual Psychopath Laws, Medical Service, Circuit Court for Baltimore City, Baltimore, Maryland, 12/19/90.*

*Invited Speaker, Aspects of the Diagnosis and Treatment of Sexual Disorders, Educational Seminar, University of Maryland, College Park, Maryland, 11/16/90.*

*Invited Speaker, Diagnosis and Treatment of Paraphilias, Educational Meeting, Suburban Maryland Psychiatric Society, Greenbelt, Maryland, 10/11/90.*

*Invited Speaker, Working with Paraphilic Individuals, Educational Seminar, Counseling Associates, Hollywood, Florida, 10/5/90.*

*Invited Speaker, Forensic Issues of the Sex Offender, University of Maryland Forensic Fellowship Program, Baltimore, Maryland, 12/13/89.*

*Invited Speaker, Adolescent Sex Offenders, Conference on the Treatment of Adolescent Sex Offenders, Regional Institute for Children and Adolescents (RICA), Rockville, Maryland, 12/6/89.*

*Invited Speaker, Managing the Sex Offender on Probation, Annual Conference, Middle Atlantic States Correctional Association, Atlantic City, New Jersey, 5/22/88 - 5/25/88.*

*Invited Speaker, Treatment of the Sex Offender, Child Sexual Abuse - Adult Substance Abuse Connection Conference, St. Elizabeth's Hospital, Washington, D.C., (Rape Crises Center and Drug Abuse Center), 2/17/88.*

*Invited Speaker, Treating the Adolescent Sex Offender, State-wide Clinicians Network of Services for Adolescent Sex Offenders, Ellicott City, Maryland, 1/29/88.*

*Invited Speaker, Mandated Reporting of Child Sexual Abuse, People Against Child Abuse (PACA) Conference, Anne Arundel Community College, Anne Arundel, Maryland, 11/7/87.*

*Invited Speaker, Treating Sex Offenders in the Community, Annual Meeting, Allegheny County Health Department, Hagerstown, Maryland, 10/2/86.*

*Invited Speaker, Treating Incarcerated and Paroled Sex Offenders, Special Symposium, South Carolina Association for the Treatment of Sexual Aggressives, Columbia, South Carolina, 4/24/86 - 4/25/86.*
*Invited Speaker, The Paraphilias, Maryland Association of Private Practice Psychiatrists, Baltimore, Maryland, 1/23/86.*

### *FREDERICK S. BERLIN, M.D., Ph.D. - CURRICULUM VITAE*

*Invited Speaker, Victims and Victimizers, Maryland Conference on Child Victimization, Baltimore, Maryland, 1/6/86.*

*Invited Speaker, Sexual Offenders: Treatment Issues for the Social Worker, University of Maryland School of Social Work, Baltimore, Maryland, 9/17/85, 9/10/85.*

*Invited Speaker, Paraphilic Disorders and the Clergy, St. Luke's Institute, Suitland, Maryland, 8/23/85.*

*Invited Speaker, Protecting Children from Sexual Abuse, Annual Meeting, Montessori Society of Central Maryland, Baltimore, Maryland, 5/13/85.*

*Invited Speaker, Forensic Issues in Evaluation Sex Offenders, Clifton T. Perkins Hospital, Baltimore, Maryland, 1/14/85.*

*Invited Speaker, Differential Diagnosis of Sex Offenders, Annual Conference, Psychiatric Associates, Virginia Beach, Virginia, 11/9/84.*

*Invited Speaker, Use of Antiandrogenic Medications, Patuxent Institution, Baltimore, Maryland, 10/25/84, 5/29/84, 1/20/83.*

*Invited Speaker, Treating the Abuser, Community Seminar on Child Sexual Abuse, Carroll County, Maryland, 10/23/84.*

*Invited Speaker, Treatment of Sex Offenders, Symposium, Howard County General Hospital, Howard County, Maryland, 5/15/84.*

### *OTHER PROFESSIONAL ACCOMPLISHMENTS:*

*Appointed Member, Subcommittee on the Paraphilias, American Psychiatric Association Committee to Review the 3rd Edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-III-R), 1984-1989.*

*President, Board of Directors, National Institute for the Study, Prevention and Treatment of Sexual Trauma*

*Chairman, Board of Directors, Foundation for the Study, Prevention and Treatment of Sexual Trauma (a nonprofit foundation supporting clinical care, teaching and research)*

### *MAJOR NATIONAL MEDIA INTERVIEWS (PARTIAL LIST):*

*Face the Nation*

**JA446**

### FREDERICK S. BERLIN, M.D., Ph.D. - CURRICULUM VITAE

*Sixty Minutes*
*Nightline*
*Larry King Show*
*Anderson Cooper Show*
*Dianne Rehm Show (National Public Radio)*
*Emmy Winning Group W Documentary (Child Molesters:  Please Make Them Stop)*
*Good Morning America*
*Today Show*
*20/20*
*48 Hours*
*NBC Dateline*
*Johnnie Cochran Show (Court TV)*
*Alan Dershowitz Show (Court TV)*

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. 1:20-CR-143 |
| v. | ) |
| | ) Honorable T.S. Ellis, III |
| ZACKARY ELLIS SANDERS, | ) |
| | ) Trial: October 19, 2021 |
| *Defendant.* | ) |
| | ) |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO RECONSIDER HIS MOTION TO SUPPRESS**

On September 24, 2021, over a year past the already-extended pre-trial motions deadline,

the defendant filed a "Renewed Motion to Suppress Based on Warrantless Use of a Network

Investigative Technique and False Material Information in Affidavit Paragraph 25." Dkt. Nos.

471 and 476. On October 6, 2021, the defendant filed a supplement to his supplemental motion.

Dkt. No. 485. The United States of America, by and through undersigned counsel, files this

response. For the reasons below, the defendant's motion should be denied.

**BACKGROUND**

On July 10, 2020, the defendant appeared for his arraignment, at which time the Court set

the deadline for pre-trial motions as August 20, 2020.[1] Dkt. No. 34. On August 20, 2020, the Court

granted in part the defendant's motion for an extension of the briefing schedule and reset the

deadline for pre-trial motions as August 27, 2020. Dkt. No. 72. On August 27, 2020, the defendant

filed an eighty-page motion to suppress and a motion for leave to exceed the thirty-page limit for

motions set by the Local Criminal Rules. Dkt. Nos. 75 and 77. The Court struck the motion for

---

[1] The facts of this case are well documented and will not be repeated in full here. *See* Dkt. Nos.
73, 107, 113, 196, 237, 369, and 402.

**JA448**

failing to comply with the required page limit and permitted the defendant to refile his motion with

a forty-page limit by September 2, 2020. Dkt. No. 80. On September 2, 2020, the defendant filed

four motions to suppress. Dkt. Nos. 81, 83, 85, and 87. After receiving full briefing, the Court

heard oral argument. Dkt. No. 108. Following oral argument, the defendant filed a "Notice of

Supplemental Authority," in which he raised additional arguments in support of his motions to

suppress. Dkt. No. 112. On October 26, 2020, the Court denied the defendant's motions to suppress

in a comprehensive Memorandum Opinion and Order. Dkt. Nos. 113 and 114.

Since the deadline to file pre-trial motions has elapsed, the defendant has submitted over a

dozen untimely motions and supplemental filings and exhibits related to his motions, often without

seeking leave of the Court.[2] In the past few months alone, the defendant has filed hundreds of

pages of briefing and exhibits to "supplement the record" based on his baseless theories about this

investigation and what the foreign law enforcement agency's ("FLA") tip might mean, *see* Dkt.

Nos. 422, 464 at 2, 476. And he continues to do submit these untimely filings despite clear rulings

from this Court that his "conspiratorial" motions are based on nothing more than a "wishful

---

[2] *See* Dkt. No. 112, Notice of Supplemental Authority in Support of His Motions to Suppress No.
1 and No. 3; Dkt. No. 135, Motion to Compel or in the Alternative for *In Camera* Inspection; Dkt.
No. 138, Supplemental Memorandum to Motion to Compel or in the Alternative for *In Camera*
Inspection; Dkt. No. 149, Motion to Suppress Statements; Dkt. No. 213, Motion for Leave to File
Motion to Suppress Statements, Motion to Suppress; Dkt. No. 238, Supplemental Memorandum
to Motion to Compel or in the Alternative for *In Camera* Inspection; Dkt. No. 299, Motion for
Leave to File Rule 12.2(b) Notice of Expert Evidence of a Mental Condition Bearing on Lack of
Guilt; Dkt. No. 315, Motion to Compel Production of Warrant; Dkt. No. 329, Notice of
Supplement to Motion for Leave to File Rule 12.2(b) Notice of Expert Evidence of a Mental
Condition Bearing on Lack of Guilt; Dkt. No. 344, Supplement to Motion *in Limine* and Response
in Opposition to Government's Motion *in Limine*; Dkt. No. 422, Motion to Compel Exculpatory
Material or, in the Alternative, to Submit Exculpatory Material for *In Camera* Review; Dkt. No.
429, Motion to Suppress Statements Taken in Violation of *Miranda v. Arizona*; Dkt. No. 463,
Motion to Suppress (Renewed) Based on Lack of Probable Cause and False and Misleading
Statements and for a *Franks* Hearing; Dkt. No. 471, Motion to Suppress (Renewed) Based on
Warrantless Use of a Network Investigative Technique and False Material Information in Affidavit
Paragraph 25; Dkt. No. 485, Notice of Filing to Supplement the Record.

2

**JA449**

misreading" of the evidence, *see* Dkt. Nos. 113 at 9 and 369 at 6, and findings from other courts that similar theories are based on "a stack of hypotheticals," *United States v. Bateman*, 1:20-cr-10012-IT, 2021 WL 3055014, at *3 (D. Mass. July 20, 2021).

In his latest motion, the defendant elaborates on arguments he made previously—namely, that the FLA used a Network Investigative Technique ("NIT") that required a warrant to identify his Internet Protocol ("IP") address, that he is entitled to a *Franks* hearing based on the accurate language in paragraph 25 of the search warrant affidavit, and that the warrant lacked probable cause because he does not believe the FLA's tip is reliable—and asserts for the first time that the FLA and the Federal Bureau of Investigation ("FBI") were engaged in a "joint venture."[3] Dkt. No. 476 at 1–3. And while he also asserts that his instant motion "incorporates new evidence uncovered after the filing" of his original motions to suppress, he does not explain what that evidence is or why it was previously unavailable. *Id.* at 2.

## ARGUMENT

The defendant is grasping at straws. Having submitted hundreds—if not thousands—of pages of briefing and exhibits as part of his ongoing effort to suppress the evidence of his sexual abuse of children, he now asks this Court to rethink its denial of his suppression motions almost a year later and shortly before trial. Seeking to justify this request, the defendant argues that the Court must consider his "renewed" motion "on a more complete" record to correct a clear error of law and prevent manifest injustice. Dkt. No. 467 at 2.

---

[3] The phrase "joint venture" appears nowhere in the defendant's prior suppression motions. In fact, in one of his initial motions to suppress, he acknowledged that there was no evidence to support a claim that the FBI and FLA were working together to identify his IP address and made no claim that the FLA's investigation "shocks the conscience." Dkt. No. 91 at 17–20. Accordingly, the defendant made the strategic decision to focus his voluminous suppression motions on other arguments that he believed to be more meritorious.

**JA450**

The defendant is incorrect. As an initial matter, he did not assert a joint-venture theory or cite any associated caselaw in his previous motions to suppress, meaning that he has waived this argument pursuant to Federal Rule of Criminal Procedure 12(c)(3). Further, because the defendant has failed to present any new evidence that would justify his request to reconsider his other arguments and is instead simply asking the Court to rethink issues it has already decided, the defendant's last-minute effort to "supplement the record" with revised versions of his failed arguments should be denied.[4] *Id.* at 1. Finally, the Court did not err when it found that the defendant had failed to present anything beyond "rank speculation" to support his claim that the FBI knew or should have known that the FLA interfered with his computer to identify his IP address. Dkt. No. 113 at 14. Nor did the Court err when it rejected the defendant's suggestion—floated through an untimely motion to compel—that the FBI was somehow a "party to an imagined Fourth Amendment violation alluded to in defendant's previous motions to suppress." Dkt. No. 236 at 6. This claim is nothing more than "unsupported speculation." *Id.* Indeed, the defendant's exact arguments appear to have been advanced by at least one other defendant, and the court in that case appropriately rejected that defendant's joint-venture theory as a "stack of hypotheticals." *Bateman*, 2021 WL 3055014, at *3. Put simply, the defendant has presented no evidence beyond his own wishful speculation to establish that the FBI did or should have doubted the reliability of the FLA's tip or that the FBI participated in the FLA's investigation beyond what is described in the discovery in this case. Accordingly, his renewed motion to suppress and for a *Franks* hearing should be denied.

---

[4] The defendant has repeatedly now sought to justify his untimely filings as necessary to "supplement the record" for this Court and an eventual appeal. *See* Dkt. No. 422, Dkt. No. 464 at 2. He cites no authority in support of this litigation tactic, in which a defendant can simply ignore all briefing deadlines and continue submitting versions of his failed motion until he prevails. This last-minute abuse of process should be denied on this basis alone.

4

**JA451**

**I.       The Defendant Has Waived His Untimely Joint-Venture Claim**

"Under Fed. R. of Crim. P. 12, motions to suppress must be filed prior to trial or by the deadline established by the court." *United States v. Lester*, 311 F. App'x 660, 660 (4th Cir. 2009) (unpublished per curiam). "A defendant waives the right to file a suppression motion if he fails to file the motion prior to the time set by the district court, unless he can establish good cause for the waiver." *Lester*, 311 F. App'x at 600 (citing Fed. R. Crim. P. 12(e)). Factors that courts have considered in determining whether a defendant has shown good cause for filing an untimely motion to suppress include "the extent of the untimeliness," "the reason for the late filing," the prejudice caused by the late filing, and whether information after the filing deadline alerted the defendant to facts on which a motion to suppress might be based. *United States v. Samuels*, 1:14-cr-351 (E.D. Va.), 2015 WL 1442884, at *3 (E.D. Va. March 26, 2015) (citing *United States v. Cross*, 265 F. App'x 623, 627 (4th Cir. 2007)). Importantly, however, "[e]ven if the defendant did not know all of the information establishing the basis for a claim, the court will not excuse a forfeiture if the defendant, by due diligence, could have or should have discovered the basis for the claim." *United States v. Ruhe*, 191 F.3d 376, 386 (4th Cir. 1999).

In his instant motion, the defendant glosses over that he never moved for suppression on the grounds that the FBI and FLA engaged in a "joint venture" and that the FLA's investigation "shocks the conscience." Dkt. No. 476 at 20–25. In fact, the defendant first approached the government with his baseless joint-venture theory in February 2021, after he expanded his defense team to include multiple additional attorneys and well after the deadline for pre-trial motions. At that time, the defendant's theory was based on his misreading of long-produced discovery in this case. And now, despite his best efforts over the course of many months, he has failed to identify a single piece of evidence establishing that the FBI was engaged in a joint venture with the FLA.

5

**JA452**

Instead, he has now asked the Court to suppress evidence based on the same misreading of the evidence and caselaw involving different, older investigations.[5] Because the defendant has not provided any explanation for his exceedingly untimely motion—let alone a good one—the Court should deny the motion as waived.

## II.  The Defendant Has Not Satisfied his Burden for Reconsideration of his Failed Arguments

Further, to the extent the defendant is asking this Court to reconsider arguments that were actually raised in his initial motions to suppress, he has failed to satisfy his burden for this Court to reconsider these prior motions. A motion for reconsideration "can be successful in only three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Dkt. No. 237 at 3 (quoting *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007)). "A motion to reconsider will not be granted," however "when the moving party seeks to have the Court 'rethink what the Court ha[s] already through through—rightly or wrongly.'" Dkt. No. 107 at 4 (quoting *United States v. Dickerson,* 971 F. Supp. 1023, 1024 (E.D. Va. 1997)). Citing no intervening change in controlling precedent, the defendant files his latest untimely motion under the guise of presenting the Court with new, unspecified evidence and permitting it to correct a clear error of law in its ruling. Dkt. No. 476 at 2.

---

[5] Seeking to cure this deficiency, the defendant has now submitted a supplemental filing that attaches as an exhibit a heavily redacted criminal complaint from another district that he said was previously unavailable. Dkt. No. 485. The defendant suspects that this case stems from the same investigation as his and then concludes with no explanation or factual basis that the redactions must contain information supporting the many baseless claims he has advanced in this case. *Id.* at 2 n.1. The defendant is once again engaged in hopeful speculation untethered from any evidence, and the Court should disregard this supplemental filing in its entirety.

6

**JA453**

With respect to his claim that the FBI knew or should have known that the FLA's tip was misleading and that it used a NIT to identify his IP address, however, the defendant cites no information that was previously unavailable to him. Instead, he relies on the same inconclusive declarations prepared by the various members of his defense team, none of whom have opined that the FLA could not have identified the defendant's IP address without interfering with his computer. Dkt. No. 276 at 10; *see, e.g.*, Dkt. No. 464-2 at 8 (acknowledging at least two methods by which a Tor user can be de-anonymized, one of which would not interfere with the user's computer). His arguments that he is entitled to a *Franks* hearing based on alleged misrepresentations in paragraph 25 of the search warrant affidavit and that the warrant lacked probable cause similarly rely upon old caselaw and inconclusive affidavits from members of the defense team—both of which could have been used in his previous motions to suppress. *See* Dkt. No. 467 at 28–30. In other words, the defendant is simply asking this Court to rethink what it has already thought through[6] based on material that has always been available to him.

---

[6] *See* Dkt. No. 113 at 8 ("As the Affidavit established, the FLA is a law enforcement agency that is well-known by the FBI and that has a long history of sharing reliable information with the United States. It is well-established that proven, reliable information generally and law enforcement agencies in particular are entitled to considerable credence."); *id.* at 14 ("Defendant speculates that the FLA must have used a technique that interferes with a computer in the United States in order to obtain defendant's IP address and therefore that the FLA's—and the Affidavit's—statement to the contrary is false. This claim is rank speculation, as is defendant's contention that Special Agent Ford knew—or should have known—that the FLA must have interfered with a computer in the United States."); *id.* at 14–15 ("There is no persuasive reason to doubt the veracity of the FLA's statement that it did not interfere with a computer in the United States, nor is there any persuasive reason to think that Special Agent Ford should have disbelieved the FLA's statement. Defendant's speculation to the contrary does not amount to the substantial preliminary showing required by *Franks*. In sum, defendant's argument with respect to paragraph 25 falls well short of demonstrating, as required by *Franks*, that Special Agent Ford intentionally or recklessly made a materially false statement in his Affidavit."); Dkt. No. 236 at 6 ("In essence, defendant contends that the FBI was intimately involved in [the FLA's investigation] and was therefore party to an imagined Fourth Amendment violation alluded to in defendant's previous motions to suppress. This contention amounts to unsupported speculation. Defendant's allegation relies on nothing more than general statements from the FBI and the FLA that the agencies collaborate with

7

**JA454**

In fact, this Court now no longer appears to be the only one to have thought through these issues. In *Bateman*—relied upon by the defendant for the proposition that the government is prosecuting other individuals based on information provided by the FLA, Dkt. No. 467 at 6—the defendant moved to compel the production of material that he claimed would prove that a warrant affidavit was misleading in its description of the "collaboration between the United States and the FLA" and that the FLA violated his Fourth Amendment rights when it obtained his IP address. 2021 WL 3055014, at *2. In denying the defendant's motion, the court described the claim as "a stack of hypotheticals," with no evidentiary basis: (1) "the FLA may have misrepresented its lack of interference with a computer in the United States;" (2) the affiant "may have misrepresented the working relationship between the United States and the FLA;" and then (3) "a NIT may have been used in a joint venture to obtain Bateman's IP address." *Id.* at *4. So, too, is the defendant's instant motion. Accordingly, his motion should be denied.

<div align="center">

**<u>CONCLUSION</u>**

</div>

For the reasons stated, the government respectfully requests that the Court deny the defendant's "Renewed Motion to Suppress Based on Warrantless Use of a Network Investigative Technique and False Material Information in Affidavit Paragraph 25." Dkt. Nos. 471 and 476.

Respectfully submitted,

Raj Parekh
Acting United States Attorney

By:    /s/
William G. Clayman
Special Assistant United States Attorney (LT)
Seth M. Schlessinger

---

international partners in their efforts to combat online child sexual abuse and exploitation. Defendant's allegation that such collaboration is deeper than the information sharing apparent from this case is pure speculation.").

<div align="center">

8

**JA455**

</div>

Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703-299-3700
Fax: 703-299-3981
Email: william.g.clayman@usdoj.gov
Email: seth.schlessinger@usdoj.gov

9

**JA456**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 8, 2021, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, which automatically generated a Notice of Electronic Filing

to the parties of record.

By:     _____/s/_____
        William G. Clayman
        Special Assistant United States Attorney (LT)
        United States Attorney's Office
        Eastern District of Virginia
        2100 Jamieson Avenue
        Alexandria, Virginia 22314
        (703) 299-3700
        Email: william.g.clayman@usdoj.gov

10

**JA457**