IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 22-4242

———————————

UNITED STATES OF AMERICA,

*Appellee*,

v.

ZACKARY ELLIS SANDERS,

*Appellant*.

———————————

Appeal from the United States District Court
for the Eastern District of Virginia
at Alexandria
*The Honorable T.S. Ellis III, District Judge*

———————————

BRIEF OF THE UNITED STATES

———————————

Jessica D. Aber
United States Attorney

William G. Clayman
Special Assistant United States
Attorney

Jay V. Prabhu
Seth M. Schlessinger
Aidan Taft Grano-Mickelsen
Assistant United States Attorneys
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700

*Attorneys for the United States of America*

# Table of Contents

Page

Table of Authorities ........................................................................... iv

Introduction ......................................................................................1

Issues Presented ...............................................................................2

Statement of the Case.......................................................................3

    A.    The FBI receives a tip about Sanders's computer and searches his home. ....................................................................................3

    B.    Sanders is charged with producing, receiving, and possessing child pornography.................................................................6

    C.    Sanders is convicted at trial................................................9

Summary of Argument ...................................................................10

Argument........................................................................................11

I.    The affidavit accurately described the tip and provided probable cause to search Sanders's home. ...........................................................11

    A.    The affidavit established probable cause that Sanders had accessed CSAM on a hidden site intentionally. ...................12

    B.    Sanders is not entitled to a *Franks* hearing. ........................20

        1.   The affidavit did not contain false statements. .............................21

        2.   Assuming the affidavit contained incorrect information, Sanders has not shown the requisite intent. ..................................22

        3.   Probable cause supports the warrant even in the absence of the challenged statement.....................................................................23

i

C.    The district court did not abuse its discretion in denying Sanders's discovery motions. ........................................................24

II.    The district court properly admitted Sanders's statements to the FBI. .........28

A.    Sanders failed to show good cause for his untimely motions. ............28

B.    Suppression is unwarranted because the statements were voluntary. ..............................................................................30

C.    Overwhelming evidence supports Sanders's conviction for possession of child pornography. ........................................................33

III.    The district court properly excluded evidence of the minors' alleged consent. ..............................................................................35

A.    Courts have unanimously rejected Sanders's claim that he needed to "overcome the will" of a minor. .........................................36

B.    The district court properly excluded certain proffered evidence of the minors' alleged consent. ...........................................39

C.    The district court properly excluded Dr. Berlin's proffered testimony. ..............................................................................40

IV.    The district court properly instructed the jury. ..............................42

A.    The district court properly instructed the jury on § 2251(a)'s intent requirement. .............................................................45

B.    The district court properly instructed the jury that a minor cannot consent to the production of CSAM. ..................................48

C.    The district court properly instructed the jury on "lascivious exhibition" under 18 U.S.C. § 2256(2)(a)(v). .....................................49

Conclusion ..............................................................................54

Statement Regarding Oral Argument ......................................................55

Certificate of Compliance ...............................................................55

# Table of Authorities

Page

## Cases

*Bailey v. United States*, 516 U.S. 137 (1995) ...........................................................37

*Franks v. Delaware*, 438 U.S. 154 (1978)...................................................... passim

*Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307 (4th Cir. 2017)........................30

*Illinois v. Gates*, 462 U.S. 213 (1983) ............................................................. 12, 13

*Noel v. Arston*, 641 F.3d 580 (4th Cir. 2011) .........................................................46

*Ortiz-Graulau v. United States*, 756 F.3d 12 (1st Cir. 2014) ........................... 37, 38

*United States ex rel. Ubl v. IIF Data Solutions*, 650 F.3d 445 (4th Cir. 2011) ........................................................................................................30

*United States v. Amirault*, 173 F.3d 28 (1st Cir. 1999) .........................................50

*United States v. Armstrong*, 517 U.S. 456 (1996) .................................................27

*United States v. Bartko*, 728 F.3d 327 (4th Cir. 2013) ..........................................47

*United States v. Bateman*, 1:20-cr-10012-IT, 2021 WL 3055014 (D. Mass. July 20, 2021)..............................................................................27

*United States v. Bateman*, 1:20-cr-10012-IT, 2022 WL 980075 (D. Mass. March 31, 2022) ..............................................................................16

*United States v. Blauvelt*, 638 F.3d 281 (4th Cir. 2011)........................................34

*United States v. Bosyk*, 933 F.3d 319 (4th Cir. 2019) .................................... passim

*United States v. Braxton*, 112 F.3d 777 (4th Cir. 1997) ................................. 31, 33

*United States v. Brown*, 579 F.3d 672 (6th Cir. 2009) ..........................................50

*United States v. Caro*, 597 F.3d 608 (4th Cir. 2010)...................................... 12, 25

*United States v. Cloud*, 680 F.3d 396 (4th Cir. 2012) ...........................................40

*United States v. Courtade*, 929 F.3d 186 (4th Cir. 2019).................... 50, 51, 52, 53

*United States v. Cowden*, 882 F.3d 464 (4th Cir. 2018).........................................43

*United States v. Davis*, 313 F. App'x 672 (4th Cir. 2009) .....................................13

*United States v. DeFoggi*, 839 F.3d 701 (8th Cir. 2016)........................................17

*United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986)............................... 44, 49

iv

*United States v. Doyle*, 650 F.3d 460 (4th Cir. 2011) ...........................................20

*United States v. Engle*, 676 F.3d 405 (4th Cir. 2012)...................................... 36, 38

*United States v. Fadl*, 498 F.3d 862 (8th Cir. 2007) ...........................................37

*United States v. Fifer*, 863 F.3d 759 (7th Cir. 2017) ...........................................39

*United States v. Giddins*, 858 F.3d 870 (4th Cir. 2017) .................................. 33, 34

*United States v. Gondres-Medrano*, 3 F.4th 708 (4th Cir. 2021) ...........................35

*United States v. Hardin*, 998 F.3d 582 (4th Cir. 2021) ...........................................38

*United States v. Hargrove*, 625 F.3d 170 (4th Cir. 2010) ...................................30

*United States v. Harris*, 890 F.3d 480 (4th Cir. 2018) ...........................................43

*United States v. Helton*, 944 F.3d 198 (4th Cir. 2019) ...........................................38

*United States v. Hillie*, — F.4th — , 2022 WL 2333936 (D.C. Cir. 2022) ................................................................ 37, 49, 50, 52

*United States v. Hillie*, 14 F.4th 677 (D.C. Cir. 2021) ................................... 11, 44

*United States v. Hite*, 769 F.3d 1154 (D.C. Cir. 2014)................................... 37, 42

*United States v. Holmes*, 670 F.3d 586 (4th Cir. 2012)...........................................32

*United States v. Isabella*, 918 F.3d 816 (10th Cir. 2019) ...........................................50

*United States v. Johnson*, 617 F.3d 286 (4th Cir. 2010)................................... 35, 42

*United States v. Kiejzo*, Crim. No. 4:20-40036-TSH, 2022 WL 1078214 (D. Mass. April 11, 2022)...........................................22

*United States v. Kienast*, 907 F.3d 522 (7th Cir. 2018)...........................................17

*United States v. Knox*, 32 F.3d 733 (3d Cir. 1994)...........................................52

*United States v. Laursen*, 847 F.3d 1026 (9th Cir. 2017)...........................................37

*United States v. Leon*, 468 U.S. 897 (1984) ...........................................19

*United States v. Leshek*, 65 F.3d 1105 (4th Cir. 1995)................................... 30, 32

*United States v. Malloy*, 568 F.3d 166 (4th Cir. 2009)...........................................38

*United States v. Mathis*, 932 F.3d 242 (4th Cir. 2019)...........................................28

*United States v. Mayer*, 674 F.3d 942 (8th Cir. 2012)...........................................40

*United States v. McCauley*, 983 F.3d 690 (4th Cir. 2020)............................ passim

*United States v. McCloud*, 590 F.3d 560 (8th Cir. 2009) ...........................................36

*United States v. McLamb*, 880 F.3d 685 (4th Cir. 2018)..............................3

*United States v. Messalas*, — F. Supp. 3d — , 2020 WL 1666162
    (E.D.N.Y. 2020)..............................25

*United States v. Moody*, 931 F.3d 366 (4th Cir. 2019)..............................22

*United States v. Morehouse*, 34 F.4th 381 (4th Cir. 2022)..............................1

*United States v. Nicolaou*, 180 F.3d 565 (4th Cir. 1999) ..............................45

*United States v. Norton*, 17 F. App'x 98 (4th Cir. 2001) ..............................48

*United States v. Pelton*, 835 F.2d 1067 (4th Cir. 1987)..............................33

*United States v. Perkins*, 850 F.3d 1109 (9th Cir. 2017)..............................50

*United States v. Petroske*, 928 F.3d 767 (8th Cir. 2019) ..............................50

*United States v. Price*, 775 F.3d 828 (7th Cir. 2014) ..............................50

*United States v. Pulley*, 987 F.3d 370 (4th Cir. 2021)..............................12, 23, 28

*United States v. Raplinger*, 555 F.3d 687 (8th Cir. 2009)..............................38

*United States v. Raza*, 876 F.3d 604 (4th Cir. 2017) ..............................43, 48

*United States v. Rivera*, 546 F.3d 245 (2d Cir. 2008) ..............................50

*United States v. Robinson*, 627 F.3d 941 (4th Cir. 2010)..............................43

*United States v. Ruhe*, 191 F.3d 376 (4th Cir. 1999)..............................29

*United States v. Sibley*, 681 F. App'x 457 (6th Cir. 2017)..............................38

*United States v. Sirois*, 87 F.3d 34 (2d Cir. 1996)..............................37, 48

*United States v. Steen*, 634 F.3d 822 (5th Cir. 2011) ..............................50

*United States v. Stevenson*, 396 F.3d 538 (4th Cir. 2005)..............................23, 26

*United States v. Street*, 531 F.3d 703 (8th Cir. 2008)..............................39

*United States v. Stuart*, 21-CR-87-LJV-JJM, 2022 WL 1055151
    (W.D.N.Y. April 7, 2022)..............................16

*United States v. Sweat*, 573 F. App'x 292 (4th Cir. 2014) ..............................28

*United States v. Tagg*, 886 F.3d 579 (6th Cir. 2018)..............................17

*United States v. Taylor*, 935 F.3d 1279 (11th Cir. 2019) ..............................17

*United States v. Thompson*, 807 F. App'x 251 (4th Cir. 2020)..............................46

*United States v. Uzenski*, 434 F.3d 690 (4th Cir. 2006) ..............................32

*United States v. Villard*, 885 F.3d 117 (3d Cir. 1989)..............................................50

*United States v. Walker*, 32 F.4th 377 (4th Cir. 2022) ...........................................36

*United States v. Waqar*, 997 F.3d 481 (2d Cir. 2021). .............................................48

*United States v. Wells*, 843 F.3d 1251 (10th Cir. 2016) ................................... 38, 48

*United States v. White*, 3:21-cr-155-DJH, 2022 WL 711130 (W.D.
    Ky. March 9, 2022).............................................................................................16

*United States v. White*, 850 F.3d 667 (4th Cir. 2017)...................................... 20, 21

*United States v. Whorley*, 550 F.3d 326 (4th Cir. 2008) .........................................27

*United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987).......................................51

*United States v. Wilson*, 484 F.3d 267 (4th Cir. 2007).............................................35

*United States v. Wilson*, 895 F.2d 168 (4th Cir. 1990) ............................................29

*United States v. Wright*, 774 F.3d 1085 (6th Cir. 2014)..........................................37

*Westberry v. Gislaved Gummi AB*, 189 F.3d 257 (4th Cir. 1999) ...........................41

*Williams v. Zahradnick*, 632 F.2d 353 (4th Cir. 1980)............................................34

**Statutes**

18 U.S.C. § 2242(b) ...................................................................................................37

18 U.S.C. § 2251(a) ............................................................................................ passim

18 U.S.C. § 2252 ..................................................................................................6, 23

18 U.S.C. § 2256 ................................................................................................ passim

28 U.S.C. § 2255 .......................................................................................................51

**Rules**

Fed. R. App. P. 28(a)(8).............................................................................................30

Fed. R. Crim. P. 12(c)(3) ..........................................................................................28

Fed. R. Crim. P. 16................................................................................. 24, 25, 26, 27

Fed. R. Crim. P. 30(d).......................................................................................... 43, 45

Fed. R. Evid. 403 ................................................................................................. 35, 41

Fed. R. Evid. 412 ................................................................................................. 39, 40

Fed. R. Evid. 702(a).................................................................................................41

Fed. R. Evid. 704(b)..................................................................................42

**Legislative History**

H.R. Rep. 98-536 (1984)..........................................................................51

**Introduction**

Based on a tip from a reliable foreign law enforcement agency, the Federal Bureau of Investigation (FBI) traced a computer that had accessed child sexual abuse and exploitation material to Zackary Sanders's home and obtained a search warrant for the premises. Once there, the FBI found a stash of child sexual abuse material (CSAM)[1] on devices hidden throughout Sanders's bedroom. After a non-custodial interview and privately consulting with his mother, Sanders admitted to downloading this CSAM from the so-called "dark web." The FBI also found chats in which he ordered at least five minors to record and send him depictions of themselves engaging in sexually explicit conduct—most often a form of sexualized self-harm Sanders calls ███████████████ but also ███████████████ ███████████.

Sanders was charged with production, receipt, and possession of child pornography. After filing a litany of duplicative and untimely motions, he proceeded to trial, where he acknowledged ordering minors to record and send him this CSAM. Relying on *United States v. McCauley*, 983 F.3d 690 (4th Cir. 2020), however, he claimed his broader motives were pure, regardless of his explicit demands. He was

---

[1] While federal statutes use the term "child pornography," "child sexual abuse material" better reflects its content and is used here when not referring to statutory text. *See United States v. Morehouse*, 34 F.4th 381, 384 n.1 (4th Cir. 2022).

merely introducing these children to bondage, discipline, domination, submission, and sadomasochism, or "BDSM," he said, and his goal in producing this material was to ensure they were following along. The jury found him guilty of all charges.

Sanders now claims the court erred in denying his motions to suppress, admitting his statements to the FBI, excluding evidence of the victims' alleged consent, and fashioning its jury instructions. He is wrong on all fronts: his claims about the warrant misread the tip and improperly demand the FBI rule out implausible explanations for his crimes; the court admitted his statements because he failed to timely move to suppress them; the arguments he sought to inject into the trial regarding the minors' alleged consent were indeed irrelevant; and the court correctly rejected his attempts to shoehorn the facts of this case into the holdings of *McCauley* and inapposite cases. Accordingly, this Court should affirm.

## Issues Presented

1.      Did the district court err in denying Sanders's challenge to the warrant's probable cause and his request for a *Franks* hearing?

2.      Did the district court err by admitting Sanders's statements after he failed to move to suppress them in a timely manner?

3.      Did the district court err by excluding evidence of the minors' allegedly voluntary participation in Sanders's sexual exploitation of them?

**4.** Did the district court correctly instruct the jury on (a) the intent required under 18 U.S.C. § 2251(a) and (b) "lascivious exhibition" under 18 U.S.C. § 2256(2)(A)(v)?

## Statement of the Case

### A. The FBI receives a tip about Sanders's computer and searches his home.

In August 2019, a foreign law enforcement agency informed the FBI that a specific Internet Protocol (IP) address had accessed online child sexual abuse and exploitation material on May 23, 2019.[2] JA1406. In addition, the foreign agency reported that it obtained this data lawfully without searching any U.S. computer and that the material was on a specific website (the "target website"), which operated on an encrypted internet network known as The Onion Router ("Tor").[3] JA1408, 1441. Given the foreign agency's history of providing reliable information, ████████ ████████████████████████████ (JA1447-48), the FBI investigated and connected the IP address to Sanders's home, prompting the FBI to apply for a

---

[2] Some filings below were submitted both under seal and with redactions because they contain sensitive information, including ████████████████████████ ████████. JA1678-83. The court also sealed other filings, including almost all the trial transcripts, at the defendant's request. JA52 (Dkt. 572). The government will accordingly redact its brief consistent with what is public below.

[3] Tor is one of several encrypted online networks that make up the dark web. *United States v. McLamb*, 880 F.3d 685, 688 (4th Cir. 2018).

warrant to search the residence. JA1432-67.

The search warrant affidavit explained that Tor is an online network designed to mask a user's identifiable IP address. JA1441. By downloading the Tor browser, a user can visit Tor-only websites known as "hidden services," in addition to sites on the open internet. JA1443. Unlike open-internet websites, hidden services have web addresses that consist of 16 or 56 algorithm-generated characters followed by ".onion." JA1443. Given Tor's anonymity, hidden services provide a haven for criminal activity generally and the sexual exploitation of children specifically. JA1592-93.

The target website was one such hidden service. It was a large, active forum dedicated to sharing CSAM—████████████████████████—for several years until a ████████████████████ June 2019. JA1443-44. Because the target website was only accessible via Tor, users had to take multiple affirmative steps to access it. JA1448-49. First, users had to install the Tor browser and then find the site's lengthy, algorithm-generated web address. JA1448. Because search engines do not index hidden services nearly as comprehensively as open-internet sites, it is significantly more difficult to search for one. JA1448. Tor users interested in CSAM therefore maintain directory sites compiling hidden services containing CSAM. JA1448-49. The target website was on at least one such directory site. JA1449. After locating the site, users had to register an account to access most

material. JA1447; *cf.* JA1406. ████████████████████████████

████████████████████████████████████████████

████. JA1449. Accordingly, the affidavit explained that whoever accessed material

on the target website as described in the tip likely needed to register and thus acted

intentionally, inferring from these facts that there would likely be evidence of CSAM

at Sanders's home. JA1440-50.

A magistrate judge issued the warrant on February 10, 2020, and the FBI

executed it two days later. JA3427. ████████████████████████

████████████████████████████. JA3428-29. ████████

████████████████████████ they searched the room and found electronic

devices hidden under his mattress and throughout his room. JA1337-71. ████████

████████████████████████. JA3440.

Agents then informed Sanders that ████████████████████████

████████████████ Sanders responded that ████████████████

████████████████████████ to which the agents responded

it was ████████████████████████JA3431; *cf.* JA3438. After thirty

minutes, the agents referenced his thumb drive, prompting Sanders to insist on

speaking with his mother. JA3439-41. The agents stopped the interview, got his

mother, and left so Sanders and his mother could speak privately, after which

Sanders continued the interview. JA3441-42. He then said he downloaded CSAM

from Tor and found it by "clicking around links" on a "Tor Wiki page." JA1318-20,

1884. The FBI completed the search and left without making any arrests. JA3448.

>   **B.    Sanders is charged with producing, receiving, and possessing child**
>          **pornography.**

On June 24, 2020, Sanders was charged by indictment with production

(Counts One through Five), receipt (Counts Six through Eleven), and possession

(Count Twelve) of child pornography, in violation of 18 U.S.C. §§ 2251(a), 2252.

JA86-91. These counts are predicated on the following conduct, found during

examination of Sanders' devices.

In November 2019, he sent these messages to a fourteen-year-old:

- You are to record a video. You will show me your entire body, state your full name, and tell me both why you want to become a slave and why you feel you would be a good slave.

- So you just turned 14 then? … Oh you are young. Okay. I want you to shave your entire body, except for your head.

- Now you're going to shave, and then we'll discuss you[r] punishment for not doing what I said the first few times I told you.

- I'm sure you can get a little more. … Okay, now send me a full body pic[.]

JA66-70.

After the minor shaved his pubic hair and sent nude images of himself,

Sanders sent the following: "Good boy. Now for your punishment. You're going to

slap yourself on your balls as hard as you can 40 times. You will record yourself

doing this and then send me the video." JA71. The minor then recorded and sent a

video of himself, still nude, engaging in that conduct. JA71. This chat serves as the

basis for Counts Two and Eight in the indictment.

    To another fourteen-year-old, Sanders sent these messages:



JA2817-22, 2979. This chat serves as the basis for Counts One and Seven.

    In another chat, Sanders learned he was communicating with



JA2820.

 JA3007-10. This chat serves as the basis for Counts Four and Ten.

Sanders told yet another minor:

- ;

- 

-  and

- 

JA3102-14. This chat serves as the basis for Counts Three and Nine.

Finally, Sanders sent the following to a fifth minor:

- 

-  and

- ████████████████████████████████████.[5]

---

[5] ████████████████████████████████████████. JA3081.

JA3075-81. This chat serves as the basis for Counts Five and Eleven.[6]

Count Twelve is based on CSAM found by the FBI on Sanders' devices with ██████████████████████████████████ titles indicative of their illegality, including "Little_Boy_Bondage_11Yo_And_men.wmv" and "Young 9yo Boy Sucks Dads Cock He Cums in His Mouth.flv." JA3162-84, 542-44. These files depict infants and children being sexually abused. JA3641-47. One video, for example, is twenty minutes long and depicts a bound-and-gagged prepubescent minor being whipped and orally and anally raped by multiple men. JA72.

### C.    Sanders is convicted at trial.

After multiple delays, the trial began on October 19, 2021. JA7-45. Two victims testified in the government's case. JA2809, 3664. ███████████████ ████████████████████████████████████████████████████. *E.g.,* JA2840, 3378-79. ████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████. JA3285-88.

Sanders testified as well. JA3540-3714. He described his interest in BDSM "power exchange relationships," ████████████████████████████ ████████████████████████████████████████████████████

---

[6] Sanders received CSAM from a sixth minor, which forms the basis of Count Six. JA3137-39.

JA3546-47. 

*E.g.*, JA3653-59. He also testified that

JA3590. He claimed that his

in ordering the minors to do this was to

and his     in having them record it was

JA3590.

The jury found Sanders guilty of all charges, and he was sentenced to 216 months' imprisonment. JA47, 51-57.

This appeal followed.

## Summary of Argument

1.    The affidavit accurately conveyed the tip that Sanders's IP address was used to access online child sexual abuse and exploitation material on the target website in May 2019. Given the characteristics of the target website and the need for registration prior to accessing such material, the affidavit established a substantial probability that the user did so intentionally and that evidence of that crime would be found at Sanders's home. Sanders's speculative and subjective alternate interpretation of the tip is insufficient to obtain a *Franks* hearing or further discovery.

**2.** Sanders does not contest that he failed to move to suppress his statements in a timely manner. Even assuming he could establish good cause for his untimeliness, his interview was non-custodial, his statements were voluntary, and the jury would have reached the same verdict without their admission.

**3.** Courts have unanimously rejected the contention that a defendant must overcome the will of a minor to violate 18 U.S.C. § 2251(a). The court therefore correctly precluded Sanders from introducing evidence designed to show the minors' alleged consent. The court also correctly prevented Sanders from laundering this evidence through an unqualified expert's cumulative testimony on ▮▮▮▮

**4.** The court adhered to *McCauley*, 983 F.3d at 697, when instructing the jury that producing CSAM had to be a "significant or motivating purpose" in Sanders's sexual exploitation of minors, and correctly rejected his request to instruct the jury to consider the minors' alleged consent. The court also correctly rejected Sanders's request to instruct the jury on "lascivious exhibition" using the erroneous interpretation adopted by *United States v. Hillie*, 14 F.4th 677 (D.C. Cir. 2021).

## Argument

### I. The affidavit accurately described the tip and provided probable cause to search Sanders's home.

Sanders first argues that the affidavit supporting the warrant to search his home had stale and materially false or misleading information. Alternatively, he argues he should be given discovery to investigate his *Franks* claims. All arguments

are unavailing.

Discovery rulings are reviewed for abuse of discretion. *United States v. Caro*, 597 F.3d 608, 616 (4th Cir. 2010). When reviewing suppression motions, this Court reviews a district court's "legal conclusions *de novo* and factual findings for clear error." *United States v. Pulley*, 987 F.3d 370, 376 (4th Cir. 2021).[7]

### A.   The affidavit established probable cause that Sanders had accessed CSAM on a hidden site intentionally.

Sanders claims that the affidavit lacked adequate probable cause that the user had intentionally accessed CSAM and, therefore, the less-than-nine-month period between his unlawful activity on the target website and the issuance of the warrant rendered the warrant stale. Def. Br. 12-17. In assessing staleness, this Court does not review the probable cause determination *de novo* but applies a "deferential and pragmatic standard to determine whether the judge 'had a substantial basis for concluding that a search would uncover evidence of wrongdoing.'" *United States v. Bosyk*, 933 F.3d 319, 325 (4th Cir. 2019) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). Here, because the affidavit provided ample evidence of intent, because

---

[7] In the district court, Sanders filed numerous motions to compel, suppression motions, and motions for other relief, many of them well after the deadlines had passed. *See, e.g.*, JA16-55 (showing Dkts. 135, 138, 192, 213, 241, 259, 299, 315, 321, 329, 356, 422, 429, 451, 463, 471, 521, 585, 591, 599, 617). At various points, the court denied these motions as ███████ "meritless," "conspiratorial," and "plagued" by "serious issues of timeliness." JA377-79, 501, 514, 1835.

"information a year old is not stale as a matter of law in child pornography cases," *United States v. Davis*, 313 F. App'x 672, 674 (4th Cir. 2009), and because the good-faith exception would apply in any event, this Court should affirm.[8]

"Before searching a home, the government generally must obtain a warrant, supported by probable cause." *Bosyk*, 933 F.3d at 324-25. The probable-cause inquiry entails "a practical, common-sense" evaluation of the facts recited in the affidavit to determine whether there is a "fair probability that contraband or evidence of a crime will be found." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Courts assess whether the facts are sufficiently close in time to a warrant's issuance to support probable cause by considering "all the facts and circumstances of the case, including the nature of the unlawful activity and the nature of the property to be seized." *Bosyk*, 933 F.3d at 330.

*Bosyk* is instructive here. There, the Court found probable cause existed based on a five-month-old "single click" to an open-internet site containing an encrypted file of CSAM advertised on a dark-web forum. 933 F.3d at 322-23. Though there was no allegation that the user accessed the link from the forum or downloaded CSAM, this Court found it reasonably probable that the user clicked the link after

---

[8] When a case presents both probable cause and good-faith issues, the Court may proceed directly to the good-faith issue. *United States v. Legg*, 18 F.3d 240, 243 (4th Cir. 1994).

seeing it on the forum, which made it reasonably probable that the user did so intentionally to download CSAM. *Id.* at 322, 325-26. The Court emphasized both the timing of the access—that the user likely accessed the link shortly after it was advertised on the forum—and the low probability that the user accidentally accessed it, given online CSAM's secretive nature. *Id.* at 325-28. Because the user's conduct was likely "willful[] and deliberate[]," the Court found it equally reasonable to infer that the user was a "collector" of CSAM and hoarded CSAM in his home. *Id.* at 331-32.

The affidavit here readily supported all the same inferences and more, particularly because of the need for the user to register an account to access CSAM on the website. Specifically, the affidavit reported that, according to a known and reliable foreign law enforcement agency, Sanders's IP address was used nine months prior to access child sexual abuse and exploitation material on the target website. JA1447. The affidavit also explained that: the target website ███████████████ ████████████████████████████████ (JA1448); the target website had an unintelligible multicharacter web address (JA1448) that would generally require an interested user to find that address on a directory site advertising child-exploitation content, which often explicitly described the type of available CSAM ████████ ██████████ (JA1448-1449); and the target website had been listed on at least one such directory site (JA1449).

14

Critically, the affidavit averred that to actually access child-exploitation material on the target website—as the tip had reported—a user would have to complete a registration. JA1447; *cf.* JA1406 (tip noting account creation was required "to access the majority of the material"). In addition, the affidavit demonstrated that the target website announced the material it contained. For example, one ▮▮▮▮▮▮ message titled ▮▮▮▮▮▮▮▮▮▮▮▮▮ stated:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ JA1444. The affidavit then stated that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ showed

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮ as might be expected of an accidental accessor, making it vanishingly unlikely that anyone who completed the acts of registering and accessing CSAM was truly an accidental passer-by. JA1449.

In short, because the foreign agency had reported that this user had accessed "online child sexual abuse and exploitation material" (JA1406) and because the affiant's own review indicated that any person who had accessed such material would have had to not only (a) find the address of the hidden-services website and (b) navigate to it but also (c) register an account on a site where a ▮▮▮▮▮▮ ▮▮▮▮▮▮ message explicitly described the CSAM material contained within, the

15

affiant concluded that the probabilities of accidental access were "extremely unlikely." JA1449-50. Based on the probable inferences of intentionality, the affiant drew on his extensive training and expertise to conclude that whoever accessed this material likely collected and hoarded CSAM in his home, evidence of which is recoverable for years. JA1451-63.

Having been presented with all these facts, the magistrate judge agreed. Under this Court's "deferential and pragmatic standard," that determination amply meets the required "substantial basis for concluding that a search would uncover evidence of wrongdoing." *Bosyk*, 933 F.3d at 325. Indeed, every court to consider nearly identical tips has concluded that the warrants were not stale. *United States v. White*, 3:21-cr-155-DJH, 2022 WL 711130, at *4-5 (W.D. Ky. March 9, 2022) (rejecting challenge to 22-month gap); *United States v. Stuart*, 21-CR-87-LJV-JJM, 2022 WL 1055151, at *4-5 (W.D.N.Y. April 7, 2022) (rejecting challenge to 17-month gap); *United States v. Bateman*, 1:20-cr-10012-IT, 2022 WL 980075, at *4 (D. Mass. March 31, 2022) (rejecting challenge to seven-month gap). The reason is plain: cases involving online CSAM present a unique combination of (1) offenders who "rarely if ever dispose" of their contraband and (2) evidence that, by its nature, is recoverable for years. *Bosyk*, 933 F.3d at 330-31.

Seeking to avoid this result, Sanders claims the affidavit does not establish he was a collector and cites inapposite cases involving offenders who accessed websites

on the open internet. Def. Br. 12-16. Sanders's argument downplays a critical factor animating the probable-cause analysis: the unique characteristics of CSAM hidden services warrant inferences that may not be supported by activity on the open internet, including that someone who visits these sites does so purposefully and with the intent to access their content. *See United States v. Tagg*, 886 F.3d 579, 587-88 (6th Cir. 2018); *United States v. Kienast*, 907 F.3d 522, 529 (7th Cir. 2018); *United States v. DeFoggi*, 839 F.3d 701, 706-07 (8th Cir. 2016); *United States v. Taylor*, 935 F.3d 1279, 1283 (11th Cir. 2019). These inferences are especially warranted here, where the target website was ███████████████████████████ ██████████████████████████████████████, including being listed on at least one directory of sites with such material. JA1443-49.

Sanders's attempts to undermine these inferences with farfetched explanations miss the mark. Def. Br. 14-15. An affidavit does not need to preemptively rule out every innocent explanation a defendant might later conjure up. *Bosyk*, 933 F.3d at 327-29. But the affidavit here did, explaining that hidden services are far less searchable than open-internet sites and that it is therefore exceedingly unlikely someone accidentally accessed the target website through a hidden-service search. *Supra* 4-5. And while Sanders claims he has proven otherwise (Def. Br. 15 n.10), he has done just the opposite. One of his declarants, for example, conducted a search of hidden services to show that "users can easily stumble onto sites like [the

target website] by searching for lawful content … using a Tor search engine[.]" Def. Br. 15 n.10. ███████████████████████████. JA2021. ████████

██████████████████████████████████████████████

█████████████████████████████. JA1739. Nor are these five hidden-service results "lacking any indicia of their content." Def. Br. 15 n.10. To the contrary, █████████████████████████████████████ JA2021. This is precisely what the affidavit conveyed: that it is very unlikely a user would navigate Tor using its meager hidden-service search function, particularly if searching for legal content ██████████████████████ (Def. Br. 16) that could be found using Google on Tor, and equally unlikely that a user would be unaware of the nature of a Tor site he visits. *Cf. Bosyk*, 933 F.3d at 328 (noting "these many possible alternative paths aren't of equal *probability*; rather, the likelier avenues incriminate [defendant]").

Sanders's related suggestion that the target website might have been falsely advertised somewhere is pure conjecture. Def. Br. 14-15. No facts in the affidavit (or anywhere else) even suggest such a thing, and it defies logic that someone would falsely advertise a site as large, well-known, and illegal as the target website to draw in users. *See Bosyk*, 933 F.3d at 327-28. And unlike in *Bosyk*, where the accessed link was an open-internet site, *id.* at 334-43, the target website was a hidden service. A user could only access it if he was accessing Tor, where there would be no reason

to conceal its illegality. If a user somehow found the site on an open-internet browser, he would be unable to access it through a single click and would have no way to do so unless he understood the significance of the ".onion" suffix. And even the user who ultimately navigates to the website's homepage through the Tor browser would still have had to register an account—on a site explicitly declaring its CSAM material ██████████████████—to actually access the kind of material that the foreign agency reported was accessed.

Under these circumstances, the magistrate judge would well be "skeptical about possible innocent explanations" as imagined by Sanders, and the less-than-nine-month gap thus falls well within the timeframe to survive a staleness challenge. *Bosyk*, 933 F.3d at 327, 331.

Finally, even assuming the court erred in its staleness analysis, suppression is unwarranted because the court correctly found that the good-faith exception applies. JA1677. Under *United States v. Leon*, 468 U.S. 897, 920 (1984), "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope," suppression is unwarranted even if "the magistrate's probable-cause determination" is later deemed to be deficient. The good-faith exception is inapplicable in only four circumstances: (1) "if the magistrate ... was misled by information in an affidavit that the affiant knew was false"; (2) if the magistrate judge "wholly abandoned his judicial role"; (3) if the

affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) if the warrant is so facially deficient "that the executing officers cannot reasonably presume it to be valid." *United States v. Doyle*, 650 F.3d 460, 467 (4th Cir. 2011). As explained below, the affidavit was not false or misleading and contained sufficient information to support its issuance, just as similar warrants based on nearly identical information have issued. JA892-1196. Sanders's reliance on *Doyle*, 650 F.3d at 472-74 (Def. Br. 17), is misplaced, as that case considered a warrant that authorized a search for CSAM but failed to articulate any actual CSAM offense. Because, as described *supra* pp. 12-19, the affidavit here does far more than the warrant in *Doyle*—and does not meet any of the other circumstances undermining good faith—the good-faith exception applies.

## B.    Sanders is not entitled to a *Franks* hearing.

A *Franks* hearing provides a "narrow exception to the general rule prohibiting a defendant from attacking a facially valid warrant." *United States v. White*, 850 F.3d 667, 672-73 (4th Cir. 2017). To obtain one, a defendant must make a "substantial preliminary showing" that: (1) law enforcement made "a false statement"; (2) the false statement was made "knowingly and intentionally, or with reckless disregard for the truth"; and (3) the false statement was "necessary to the finding of probable cause." *Id.* at 673. Sanders failed to meet any of the three required showings, and the

court correctly denied his motion. This Court reviews the district court's legal conclusions *de novo* and its factual determinations for clear error. *Id.* at 672.

### 1. The affidavit did not contain false statements.

Sanders cannot show clear error in the district court's determination that the affidavit contained no false statement. The court correctly found that the affidavit "repeats, essentially verbatim," the tip that Sanders's IP address was used to access online child sexual abuse and exploitation material via a website. JA1576-78, 1671-72. Sanders argues that the "via a website" language alters the tip's meaning. Def. Br. 19. Not so, the court found: "via a website" is the only way to access the material as described in the tip. JA1671. He also claims the tip means that he only accessed the target website, and perhaps only its homepage. Def. Br. 18-19. Again, not so, the court found: the affidavit accurately tracks the tip, which makes no mention of a homepage. JA1832. Nor does it make sense for the foreign agency to describe accessing "the site" as accessing "material" when it freely used the word "site" elsewhere in the tip and used "material" to refer to "images, links and videos." JA1406, 1544.

Sanders's focus on the homepage is a red herring, the court concluded, based on his "wishful misreading" of the evidence. JA1578, 1668-72, 1834. Sanders still insists that "any competent agent" would agree with his "common-sense" interpretation. Def. Br. 18-19. Yet in his motion for a new trial, Sanders submitted

seven other search warrants based on nearly identical tips, all interpreting the tip in the same way as this affidavit. JA931, 1001, 1036, 1080, 1139, 1208, 1285. And at least one other court in a case with a nearly identical tip adopted a similar reading. *See United States v. Kiejzo*, Crim. No. 4:20-40036-TSH, 2022 WL 1078214, at *4-5 (D. Mass. April 11, 2022).

At most, Sanders has advanced a "purely subjective disagreement with how the affidavit characterizes the facts"—one that has been roundly rejected—and the court's finding is not clearly erroneous. *United States v. Moody*, 931 F.3d 366, 370 (4th Cir. 2019).

> ### 2. Assuming the affidavit contained incorrect information, Sanders has not shown the requisite intent.

Likewise, Sanders cannot show clear error in the district court's finding that the affiant lacked the requisite intent: that a false statement was included "knowingly and intentionally, or with reckless disregard for the truth." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). He appears to argue that the affidavit was intentionally erroneous (Def. Br. 21-22), highlighting a report in which the affiant described Sanders's IP address as accessing the target website. This report does not contradict the affidavit or support Sanders's misinterpretation. JA1577-78. "[E]very description of the [foreign agency's] tip is consistent," the court found, and the affidavit "is not intentionally or recklessly misleading in any respect." JA1577, 1671.

This is plainly correct. Accessing material via a website, as described in the tip, requires accessing that website, as described in the report, and the tip explicitly characterizes the access as being of "child sexual abuse and exploitation material," as described in the affidavit. Sanders's manufactured conflict aside, that the affiant did not transcribe the tip as completely in a report as he did in a sworn affidavit—when completeness was most critical—certainly demonstrates none of the requisite bad intent. Again, Sanders's subjective disagreement is insufficient to show clear error. *See United States v. Stevenson*, 396 F.3d 538, 542-43 (4th Cir. 2005); *Pulley*, 987 F.3d at 376-77 (articulating standard).

### 3. Probable cause supports the warrant even in the absence of the challenged statement.

Finally, even assuming Sanders satisfied the first two *Franks* prongs, he cannot show the court clearly erred by finding that his misreading of the tip would not have vitiated probable cause. JA1665-72 1834. While Sanders has "spill[ed] much ink" (JA1834) arguing that the government ████████████ and misled the court (Def. Br. 19-20), that is incorrect. The court understood the scope of the affidavit—which articulates probable cause to conclude that someone accessed the target website with the intent to view child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) (JA1440-50, 1733)—and found that probable cause existed even under Sanders's misinterpretation of the tip. JA1834.

The court's reasoning is correct, and nothing about the probable-cause analysis above changes if the affidavit conveys that his IP address was used to access "the site," as Sanders suggests it should. Given the secretive nature of online CSAM and the site's presence on at least one directory site for CSAM, the magistrate judge could make all the same common-sense inferences to conclude that the user of Sanders's IP address navigated to the site purposefully to view CSAM, which would still support probable cause to believe he was a collector. Accordingly, the court did not err in denying his request for a *Franks* hearing.

### C.     The district court did not abuse its discretion in denying Sanders's discovery motions.

Because the affidavit accurately described the foreign agency's tip, the court did not err in denying Sanders's motion to compel the production of material reflecting the affiant's contemporaneous understanding of the tip.[9]

Under Federal Rule of Criminal Procedure 16(a)(1)(E)(i), a defendant has a right to discovery if it "is within the government's possession" and "material to preparing the defense." Sanders bears the burden of establishing materiality by presenting facts—not just "a general description of the information" or "conclusory allegations of materiality"—showing that the requested information would help his

---

[9] The court denied Sander's first motion to compel on the merits (JA1568-81), and his subsequent motions to reconsider on various grounds (JA374-81, 399-400, 1628-59, 1833-40, 4026-37).

24

defense by "significantly … alter[ing] the quantum of proof in his favor."[10] *Caro*, 597 F.3d at 621 (citation omitted). Sanders's sole argument below as to materiality was that the requested information would allow him to canvass for evidence to support a *Franks* challenge. JA1372-92.

Because, as explained *supra* pp. 20-24, the affidavit accurately described the tip and there is no *Franks* challenge to bring, the court did not abuse its discretion in denying Sanders's motion for discovery with respect to the description of the tip in paragraph 23. JA1576-78. Sanders points now to a ████████████████████ ████████████████████████████ Def. Br. 28; *cf.* JA2543-48. Unsurprisingly, the declarant provides only a general description of what might exist and no description of its materiality. Sanders also claims the court erred because he proved in a post-trial motion that ████████████████████████ ████████████████████████. Def. Br. 28-29. He proved nothing of the sort; he cannot point to a single instance where the FBI, or any law

---

[10] Sanders seeks a more lenient standard (Def. Br. 27-28), but the authority he cites addresses *Brady*, not Rule 16. In fact, when a defendant makes a Rule 16 request to mount a *Franks* challenge, as Sanders does, such requests "should be denied where a defendant has failed to make the preliminary showing necessary for a *Franks* hearing." *United States v. Messalas*, — F. Supp. 3d — , 2020 WL 1666162 (E.D.N.Y. 2020). Sanders's claims fail under either the Rule 16 or *Franks* standard.

enforcement agency, did that.[11] JA3932. At any rate, the district court reviewed these claims and found them untimely and unpersuasive. JA399-400, 4028-37. They do not provide a basis to conclude that the court erred, much less clearly so, when it determined that the affiant accurately described the tip.

With respect to the foreign agency's assurance that it did not search a computer in the United States to obtain Sanders's IP address, the court did not commit clear error in concluding the affidavit accurately described that portion of the tip as well. JA1578-79. And under this Court's deferential standard, Sanders cannot relitigate the court's reasonable conclusion after receiving various declarations on this issue. Def. Br. 29-30; *see Stevenson*, 396 F.3d at 543.

Sanders now claims that his requested information would support a suppression motion based on a theory that the United States was in a "joint venture" with a country that violated his Fourth Amendment rights. Def. Br. 30-31. But Sanders never moved for Rule 16 discovery on that basis and it is therefore unavailable on appeal.[12] *See United States v. Whorley*, 550 F.3d 326, 337 (4th Cir.

---

[11] Contrary to Sanders's claim (Def. Br. 19), the government did not acknowledge that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. JA3938.

[12] Sanders first raised a joint-venture claim in a motion to suppress that the court correctly denied as untimely. JA452-53, 2667-69.

2008). In any event, the claim is meritless. His suggestion that the FBI was engaged in a joint venture is pure speculation informed by a misinterpretation of a heavily redacted, unsourced report that is unrelated to this investigation and makes no mention of the target website. Def. Br. 30; *cf.* JA1261, 3971-4003. ██████████████ ███████████████████████ (JA4035), as has at least one other court resolving similar challenges over a nearly identical tip, *United States v. Bateman*, 1:20-cr-10012-IT, 2021 WL 3055014, at \*3-4 (D. Mass. July 20, 2021) (rejecting joint-venture theory as "a stack of hypotheticals").

As a final ploy, Sanders faults the government for not acquiescing to his onslaught of discovery motions. Def. Br. 31. Sanders has it backwards. Rule 16 provides defendants with a "shield," not a "sword" to conduct speculative field trips into the government's affairs. *United States v. Armstrong*, 517 U.S. 456, 462 (1996). He cannot speculate that a presumptively true statement in the affidavit might be false and then use Rule 16 to forage for information to impeach that very statement. At any rate, the government advised that it was not aware of any information suggesting that the tip was false, and the affiant submitted a declaration stating as much. JA2081, 1545-50. Because the court correctly discerned that Sanders was attempting to "engage in a fishing expedition for evidence that would support [his] speculative theories" (JA1580), this Court should affirm.

27

II.    **The district court properly admitted Sanders's statements to the FBI.**

Sanders argues that his statements made to FBI agents at his residence should be suppressed as involuntary. Def. Br. 50-54. But he fails to even address the district court's finding that he lacked good cause for his untimely motions to suppress these statements. Moreover, the court correctly concluded as a matter of fact that the interview was non-custodial and voluntary, rendering suppression unwarranted. Finally, Sanders's statements were ultimately miniscule evidence of guilt compared to the overwhelming concrete forensic evidence of CSAM found on his devices and admitted before the jury.

This Court reviews a district court's "finding of lack of good cause [under Rule 12(c)(3)] for abuse of discretion." *United States v. Mathis*, 932 F.3d 242, 256 (4th Cir. 2019); *see also United States v. Sweat*, 573 F. App'x 292, 295 (4th Cir. 2014) ("[W]e rarely grant relief from the denial of an untimely suppression motion."). On the merits of denied suppression motions, this Court reviews legal conclusions *de novo* and factual findings for clear error, while considering "the evidence in the light most favorable to the Government." *Pulley*, 987 F.3d at 376.

A.    **Sanders failed to show good cause for his untimely motions.**

Over 100 days after the filing deadline, Sanders first moved to suppress his statements to the FBI. JA127-47. The court ordered him to show good cause for his

untimeliness, found he had none, and denied his motion.[13] JA205-06, 288-94. Sanders does not contest—or even address—the court's good-cause finding. Nor could he. In rejecting his claim that he did not realize his statements would be used against him, the court noted that the government relied on them in the criminal complaint and gave him a recording of the inculpatory interview. JA291-92. He made the "strategic decision to forego challenging the voluntariness of his interview," the court concluded, and only sought to do so after his other motions failed (JA288-94), which is insufficient to show good cause. This Court has held that defendants are held to a due-diligence notice standard for making motions to suppress, and use of the statements in the charging instrument—coupled with defendant's personal knowledge of the circumstances of his interview—certainly put him on notice about these statements from the case's inception. *See United States v. Ruhe*, 191 F.3d 376, 386 (4th Cir. 1999).

Sanders does not claim the court abused its discretion or ask this Court to disturb that finding. Accordingly, he not only "waived his right to a more searching resolution" below, *United States v. Wilson*, 895 F.2d 168, 173 (4th Cir. 1990), but

---

[13] The court later denied a motion for leave to file an untimely suppression motion and another motion to suppress, finding Sanders "had access to all the evidence necessary for the motion[s] long before the filing deadline" and provided "no justification for waiting until months after the deadline to seek suppression[.]" JA361-63, 409-10.

he also waived appellate review of this issue altogether, *see* Fed. R. App. P. 28(a)(8); *United States ex rel. Ubl v. IIF Data Solutions*, 650 F.3d 445, 456 (4th Cir. 2011) ("Because Ubl does not challenge the alternate bases for the district court's ruling … , Ubl has waived his challenge …."); *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument.").

### B.    Suppression is unwarranted because the statements were voluntary.

Even apart from Sanders's untimely filing, ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮ In a sealed order deferring

ruling on another motion, ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ JA2480-81. And in another sealed opinion, ▮▮▮▮▮

▮▮▮▮▮▮ JA2726.



When determining whether an interview is custodial, courts ask whether "a suspect's freedom of action was curtailed to a degree associated with formal arrest," using an objective standard of whether "a reasonable man in the suspect's position would have understood his situation to be one of custody." *United States v. Hargrove*, 625 F.3d 170, 178 (4th Cir. 2010); *cf. United States v. Leshek*, 65 F.3d 1105, 1109 (4th Cir. 1995) (noting that even investigatory detentions under *Terry* where an individual is not wholly free to leave do not necessarily constitute custody for *Miranda* purposes). Similarly, when assessing a statement's voluntariness, courts

evaluate whether a defendant's will was "overborne" or their "capacity for self-determination critically impaired," also based on a "totality of the circumstances." *United States v. Braxton*, 112 F.3d 777, 781 (4th Cir. 1997).

Applying these standards here, ████████████████████████████ were plainly correct. At the time, Sanders was a college graduate who was running his own business. JA2711. ██████████████████████████████████████

████████████████████ █ ████████████████████████████████

████████████████ █ ██████████████████████████████. JA3428-29, 3462-63. Instead, he was ████████████████████████████████████

████████████████████████████████████ JA3430. ████████

████████████████████████████████. JA3439, 3497.

Sanders never invoked his right to counsel, nor was he told he had to speak to the agents.[14] JA3497. To the contrary, they ████████████████████████████

██████████████████. JA3438. And he did, in fact, end the interview after about thirty minutes, insisting he speak with his mother when ██████████████

████████████ JA2481, 3440-41. The agents stopped, brought in his mother, and left the room so Sanders could privately consult with his mother. JA3441-42. After

_____

[14] While he contends otherwise (Def. Br. 52 n.30), the incomplete transcript he submitted reveals that he said he felt like he should consult a lawyer before answering any incriminating questions and then invited the agents to ask questions to gauge his comfort level. JA169-71.

fifteen minutes, the agents reentered, and they picked up where they left off. JA3442. Sanders then gave the agents information about his Tor activity while downplaying his conduct with minors. JA2725-26. This Court has noted that "it is the compulsive aspect of custodial interrogation, and not the strength or content of the government's suspicions" that determines custody, such that "a custodial interrogation does not result merely because the individual is the focus of an investigation." *United States v. Uzenski*, 434 F.3d 690, 704 (4th Cir. 2006). Far more restrictive conditions have been imposed on individuals—including "drawing weapons, handcuffing a suspect, placing a suspect in a patrol car for questioning, or using or threatening to use force"—without creating a custodial arrest for *Miranda* purposes. *Leshek*, 65 F.3d at 1109-10.

The totality of the circumstances shows that Sanders's interview was non-custodial and his statements were made voluntarily and with significant consideration. *See Hargrove*, 625 F.3d at 178-82 (finding two-hour interview non-custodial after initial sweep with weapons drawn). And while Sanders complains that the interviewers cautioned that they had to take devices they could not "clear" for CSAM on-scene (Def. Br. 52-53), that accurate description of what the warrant authorized was not a "threat" designed to extract a confession. *See, e.g.*, *United States v. Holmes*, 670 F.3d 586, 592-93 (4th Cir. 2012) (noting "numerous cases" reiterating that "statements by law enforcement officers that are merely

'uncomfortable' or create a 'predicament' for a defendant are not ipso facto coercive" and concluding officers may make truthful statements about consequences of a defendant's decision to cooperate or not); *cf. United States v. Giddins*, 858 F.3d 870, 882-83 (4th Cir. 2017) (finding coercion where "the interview took place in a police station under false pretenses that [defendant] was required to submit to questioning in order to have his vehicle returned to him"). It was also separate from the agents' questions about his online activity, and a truthful explanation that Sanders could assist the process by providing access to his devices. *See United States v. Pelton*, 835 F.2d 1067, 1072-73 (4th Cir. 1987); *Braxton*, 112 F.3d at 782 (holding "truthful statements about the defendant's predicament are not the type of coercion that threatens to render a statement involuntary" (cleaned up)). Accordingly, even if Sanders had timely moved to suppress his statements, suppression was unwarranted.

## C.    Overwhelming evidence supports Sanders's conviction for possession of child pornography.

Finally, even assuming the challenged evidence was suppressed, Sanders's statements were of minimal significance given the body of evidence demonstrating his guilt, and any error in their admission was therefore harmless.

The admission of an otherwise inadmissible statement is harmless when the court, "after assessing the record as a whole to determine the probable impact of the improper evidence on the jury, can conclude beyond a reasonable doubt that the error did not influence the jury's verdict." *Williams v. Zahradnick*, 632 F.2d 353, 360 (4th

Cir. 1980); *Giddins*, 858 F.3d at 886 (listing factors to consider).

At trial, the court admitted five short clips of Sanders's interview in which he claimed he: was "clicking around links" on the "Tor Wiki page" when a zip file was "downloaded" to his computer; moved CSAM from his computer to a thumb drive; and was curious about CSAM but found some of it "disgusting." JA1309-36. Sanders introduced evidence regarding the circumstances of his interview and argued that his statements were involuntary. JA3450-96. The court then instructed the jury to disregard the statements if the evidence did not prove beyond a reasonable doubt that they were voluntary. JA565.

Here, the clips of Sanders's interview were of little consequence given the overwhelming forensic evidence establishing that, *inter alia*, he had stored CSAM on devices hidden throughout his bedroom for years and the CSAM had titles that made plain their illegality. *Supra* 9; *see United States v. Blauvelt*, 638 F.3d 281, 290 (4th Cir. 2011) (finding admission of statement harmless given "overwhelming evidence of [defendant's] illegal activity, much of which was discovered through a subsequent forensic examination of [defendant's] computer"). If anything, the statements bolstered his defense by reinforcing his trial claims that he downloaded CSAM but did so unintentionally or that the minors had initiated their own sexual exploitation. JA1328-29, 3634-35. Any error in their admission was therefore harmless.

**III.    The district court properly excluded evidence of the minors' alleged consent.**

Sanders claims that the district court erred by excluding his argument that § 2551(a) requires the government to prove he overcame the unwilling minors' resistance and purported "expert testimony" to attack his mens rea. But Sanders's arguments have no basis in the statutory elements, and the court acted appropriately to exclude this irrelevant, unduly confusing, and prejudicial material from the jury. This Court reviews evidentiary rulings for abuse of discretion. *United States v. Johnson*, 617 F.3d 286, 292 (4th Cir. 2010). When a district court's ruling is based in Federal Rule of Evidence 403, that review becomes "highly deferential" such that this Court will not reverse "except under the most extraordinary circumstances where that discretion has been plainly abused." *United States v. Gondres-Medrano*, 3 F.4th 708, 719 (4th Cir. 2021). Likewise, when a district court makes a determination on whether to qualify a witness as an expert, it "must have considerable leeway" in determining "reliability in light of the particular facts and circumstances of the particular case." *United States v. Wilson*, 484 F.3d 267, 273 (4th Cir. 2007).

Before trial but after the court had already ███████████████████ ████████ (JA2714-2726), Sanders noticed his intent to call Dr. Frederick Berlin, who he proffered would testify about ████████████████████████ ██████████████████████. JA2730-37. After hearing some of the trial

35

evidence, the court ████████████████. JA2757-61, 3607-14.

### A. Courts have unanimously rejected Sanders's claim that he needed to "overcome the will" of a minor.

Sanders challenges the court's exclusion of certain evidence related to the charges brought under § 2251(a) as irrelevant. Def. Br. 32-40, 43-47. Relevancy is determined by reference to the offense elements and any applicable affirmative defense. *See United States v. Walker*, 32 F.4th 377, 388 (4th Cir. 2022). Here, the statute required the government to prove that Sanders employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct. 18 U.S.C. § 2251(a).

Nothing in the statutory text contains an explicit "overcoming the will" element. While Sanders argues it is implied by cherry-picked connotations of the statutory verbs, this Court has found those verbs are "words of common usage" and that the plain meaning of "using" a minor includes simply "photograph[ing] the minor engaging in sexually explicit conduct to create a visual depiction of such conduct." *United States v. Engle*, 676 F.3d 405, 411 n.3, 418 n.9 (4th Cir. 2012) (quoting *United States v. McCloud*, 590 F.3d 560, 566 (8th Cir. 2009)). This common-sense understanding of the term "use" is shared by at least seven other circuits, which have similarly held that a minor is "used" if photographed to create CSAM, regardless of any allegedly consensual or non-exploitative relationship between the defendant and minor. *See Ortiz-Graulau v. United States*, 756 F.3d 12,

17-19 (1st Cir. 2014); *United States v. Sirois*, 87 F.3d 34, 41 (2d Cir. 1996); *United States v. Wright*, 774 F.3d 1085, 1090-91 (6th Cir. 2014); *United States v. Fadl*, 498 F.3d 862, 866 (8th Cir. 2007); *United States v. Laursen*, 847 F.3d 1026, 1032-33 (9th Cir. 2017); *United States v. Theis*, 853 F.3d 1178, 1181-82 (10th Cir. 2017); *United States v. Hillie*, — F.4th — , 2022 WL 2333936, *11 (D.C. Cir. 2022).

Courts thus interpret "use" commonsensically to mean "convert to one's service," "employ," "avail oneself of," or "carry out a purpose or actions by means of" (*Bailey v. United States*, 516 U.S. 137, 145 (1995)), and its inclusion in § 2251(a) reflects "Congress' intent to reach as broad as possible a range of ways that a defendant might actively be involved in the production of sexually explicit depictions of minors."[15] *Ortiz-Graulau*, 756 F.3d at 19. The doctrine of *noscitur a sociis*—that a word is known by the company it keeps—"confirms the plain meaning of the term 'use'" because it is similar to the meaning of the term "employ" and consistent in scope with the other broadly defined verbs in § 2551(a). *Laursen*, 847 F.3d at 1032. Nor does defining "use" broadly "render the other terms superfluous" because, unlike the other verbs, "use" permits conviction where "the interpersonal dynamics" between a defendant and minor are unknown. *Ortiz-Graulau*, 756 F.3d

---

[15] Given the range of conduct prohibited by § 2251(a), Sanders's reliance on the interpretation of the narrower set of verbs in § 2242(b) in *United States v. Hite*, 769 F.3d 1154 (D.C. Cir. 2014), is unavailing. Def. Br. 33-34.

at 19. In this manner and contrary to Sanders's suggestion, Congress's use of several broadly sweeping verbs in the statutory text "without limiting or defining them" confirms its choice to encompass a wide range of offenses against children. *E.g., United States v. Helton*, 944 F.3d 198, 208 (4th Cir. 2019).

Accordingly, courts have consistently held that the consent of a minor is irrelevant under § 2251(a). *See United States v. Wells*, 843 F.3d 1251, 1255 (10th Cir. 2016); *United States v. Raplinger*, 555 F.3d 687, 692 (8th Cir. 2009); *United States v. Sibley*, 681 F. App'x 457, 461 (6th Cir. 2017). It is a fundamental characteristic of sexual offenses against minors that minors are legally incapable of consenting to such conduct. *See, e.g.*, *United States v. Hardin*, 998 F.3d 582, 589 (4th Cir. 2021) ("[S]uch a result seems inconsistent with the entire premise behind statutory rape—that regardless of circumstances, it is wrong to have sex with someone, a child, under a proscribed age because they are legally incapable of consent"). This remains the case even in the increasingly common scenario of an offender exploiting a minor over the internet, often through the more subtle but no less malicious process of reducing a minor's inhibitions by exploiting the child's real-life inexperience. *See Engle*, 676 F.3d at 412, 418-19; *United States v. Malloy*, 568 F.3d 166, 175 (4th Cir. 2009).

**B.     The district court properly excluded certain proffered evidence of the minors' alleged consent.**

Against this backdrop, Sanders's arguments fail. In particular, he claims the court improperly precluded him from: (1) confronting a minor with what he proffered were █████████████████████████████████████████ █████████████████████████████████████████ ███████████████ (JA2791-92, 2829-37, 3423); and (2) admitting his chats with another minor in which ██████████████████████████████ ██████████████████████████████████████████ ███████████ (JA3283, 3285-88). Def. Br. 39. The court deemed this evidence irrelevant, misleading, and inadmissible under Federal Rule of Evidence 412. JA2831-34, 3285-88, 3423.

The court's assessment was correct. As explained above, a defendant need not overcome a minor's will to violate § 2251(a). It is irrelevant that a minor ██████ ███████████████████████████████████████████. *See United States v. Street*, 531 F.3d 703, 708 (8th Cir. 2008); *United States v. Fifer*, 863 F.3d 759, 768 (7th Cir. 2017). Such evidence certainly is not admissible to attack a minor as being something other than an ████████████ Rule 412 exists precisely to

make clear that attempts to avoid criminal liability by humiliating victims are unacceptable.[16] *See* Fed. R. Evid. 412, advisory committee note.

At any rate, the court permitted Sanders to ask the minors ██████████ ████████████████████████████████ JA2837. It also admitted, as ██████████████████████████████████████████████████████ ████████████ JA3285-88. This evidence goes to the heart of the "core defense" Sanders now claims he was precluded from making. Def. Br. 37. That the court did not permit him to go further in support of this irrelevant defense is not error, much less an abuse of discretion. And any error here would be harmless given the strength of the government's case and Sanders's ability to elicit testimony—including his own—addressing whether he coerced the minors. *See United States v. Cloud*, 680 F.3d 396, 401 (4th Cir. 2012) (articulating standard); *see also United States v. Mayer*, 674 F.3d 942, 945-46 (8th Cir. 2012) (finding evidence sufficient where defendant requested videos from minor who "voluntarily participated").

### C.    The district court properly excluded Dr. Berlin's proffered testimony.

Equally meritless is Sanders's claim that the court erred by excluding Berlin's proffered testimony ██████████ JA2757-61; *cf.* Def. Br. 43-47. Neither Sanders's

---

[16] Much of the "critical evidence" Sanders describes (Def. Br. 39) was intended for this purpose. *E.g.*, JA2864 (asking if minor was ████████████████████), 3381 (seeking to ask if victim ████████████████████).

notice nor Berlin's curriculum vitae established his expertise ███████. JA412-47, 2699-2703. As the court noted, Berlin purports to be ████████████████ ████████ and, as Sanders conceded, ████████████████████████. JA2758. The court therefore did not err in excluding the proffered testimony under Federal Rule of Evidence 702(a). JA2758.

Assuming Berlin could opine ██████, the crux of his proffered testimony and the defense it supported—that Sanders never sought to overcome his victims' will—are legally irrelevant. Whether Sanders believed he was ████████████ ██████████ is irrelevant to whether he used minors for the purpose of producing CSAM. Further, as the court noted, █████████████████████ █████████████████████████████████████████████████████ ██████████████████████████ JA2758.

Assuming his proffered testimony had some probative value, it was still properly excluded under Rule 403. It was cumulative of Sanders's extensive testimony about ████████████ and, to the extent relevant, unfairly prejudicial because it would allow Sanders to put an expert gloss on his own self-serving hearsay that the victims consented to his exploitation. *See Westberry v. Gislaved Gummi AB*, 189 F.3d 257, 261 (4th Cir. 1999) ("[G]iven the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded."). To the extent that Berlin's testimony was

41

designed to address Sanders's "knowledge or intent" (Def. Br. 44), such testimony is also improper under Federal Rule of Evidence 704(b).[17] *See Hite*, 769 F.3d at 1170 (finding Berlin "may not testify that Hite lacked the requisite intent"). Finally, assuming this Court finds that Berlin's testimony should have been admitted, any error in excluding it did not "substantially sway[]" the verdict and was therefore harmless given Sanders's extensive testimony in support of his defense and the government's abundant evidence of his guilty intent. *Johnson*, 617 F.3d at 292.

## IV.    The district court properly instructed the jury.

Sanders argues next that the district court erred in instructing the jury about § 2251's purpose requirement. But he did not actually lodge a contemporaneous objection to the district court's proposed purpose instruction, and he cannot show any error, let alone plain error, in the instruction.

This Court reviews whether a jury instruction correctly states the law *de novo* and the decision to give an instruction for abuse of discretion. *McCauley*, 983 F.3d at 694. The decision to not give an instruction is error only if the proposed

---

[17] Sanders argues that Berlin's testimony was relevant to prove ███████████
███████████. Def. Br. 43-44. He did not argue this below and does not provide any authority showing what level of knowledge § 2251(a) requires here (*see* JA2699-2703, 2739-43), but such testimony is inadmissible under Rule 704(b). Its exclusion was also harmless given ███████████
███████████ JA3546-49, 3590, 3651-52.

instruction: "(1) was correct, (2) was not substantially covered by the charge that the district court actually gave to the jury, and (3) involved some point so important that the failure to give the instruction seriously impaired the defendant's defense," *United States v. Raza*, 876 F.3d 604, 614 (4th Cir. 2017).

A defendant must object contemporaneously to a given instruction and clearly state the grounds for the objection before the jury retires to deliberate. *See* Fed. R. Crim. P. 30(d); *see also United States v. Cowden*, 882 F.3d 464, 475 (4th Cir. 2018). A defendant who fails to do so "face[s] plain error review." *United States v. Robinson*, 627 F.3d 941, 953 (4th Cir. 2010). On plain-error review, this Court will only correct an "unpreserved error if (1) an error was made; (2) the error is plain; (3) the error affects substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Harris*, 890 F.3d 480, 491 (4th Cir. 2018).

In supplemental proposed jury instructions, Sanders requested the court instruct that: producing CSAM "must be, at the very least, a significant purpose in the sexual conduct itself, not merely incidental," and it is sufficient if "he had a dominant motivating purpose of producing" CSAM; "the word 'used' is meant to be consistent with" the other verbs in § 2251(a); and "lascivious exhibition" in § 2256(2)(A)(v) means "depictions showing a minor engaged in 'hard core' sexual

conduct," based on the since-amended decision in *Hillie*, 14 F.4th 677. JA474-75, 483.

In the middle of trial, Sanders submitted a written objection to any instruction that producing CSAM must be only a "motivating purpose" under § 2251(a). JA529-32. He noted this Court approved the phrase "a significant or motivating purpose," and said that the court should instruct that producing CSAM had to be, "at the very least, a significant purpose in the sexual conduct itself, not merely incidental," and "carr[y] some predominant weight." JA529-32.

At the charge conference the next day, the court provided its intended jury instructions and advised that any objections not asserted then were waived. JA3716-56. Sanders requested the court instruct the jury to ███████████████████ ████████████████████████████████████ and ██████████ ████████████████████████████████████████████████████ ████████████████████████████████████████ JA3731-32, 3735-40. The court denied those requests. ███████████████████████████████████ ██████████████████████████████████████████████. JA3728-40, 2772, 2876-77, 3260-61.

The court then instructed the jury that:

- "[t]he production of a visual depiction of sexually explicit conduct must have been a significant or motivating purpose of [Sanders], and not merely incidental to engaging in the sexually explicit conduct."

- "a minor cannot consent to the production of child pornography," and "any argument regarding a minor's consent to the production of child pornography is irrelevant in reaching your verdict."

- determining whether a visual depiction is lascivious "requires a consideration of the overall context of the material," and the jury "may consider" any of the *Dost* factors in making this determination, but it must "decide the weight or lack of weight to be given to any of these factors" and "determine whether the visual depiction is lascivious based on its overall content."

JA573-77, 584-85.

## A. The district court properly instructed the jury on § 2251(a)'s intent requirement.

Sanders claims that the court erred in instructing the jury on the "purpose" element of § 2251(a). Def. Br. 47-50. This claim is reviewed for plain error because he failed to properly object to the district court's proposed instruction pursuant to Rule 30(d). To be sure, he submitted proposed instructions, but he did not contemporaneously object to the "significant or motivating purpose" instruction at the charge conference when called for by the court, despite objecting on several other instructions.[18] JA3716-56. His failure to object leaves him facing plain-error review. *See United States v. Nicolaou*, 180 F.3d 565, 569 (4th Cir. 1999) (applying plain

---

[18] Sanders claims otherwise, but the portion of the transcript he cites reveals no objection. Def. Br. 47. He cites ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ JA3518-19. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ JA3716.

error where defendant did not object "[a]fter reviewing the court's intended instructions").

Sanders maintains the court's instruction misconstrued § 2251(a) by using the word "motivating" instead of "predominant." Def. Br. 47-49. But Sanders cannot show that the challenged instruction is erroneous at all, let alone plainly so.

This Court has never "demand[ed]" that producing CSAM be a "predominant" purpose (Def. Br. 48), nor has it insisted that it be more than a "motivating" purpose. *See United States v. Thompson*, 807 F. App'x 251, 252 (4th Cir. 2020). Indeed, *McCauley* itself offered "the dominant purpose" and "a motivating purpose" as "equivalent variation[s]." 983 F.3d at 697. Yet Sanders argues that "motivating purpose" is nonsensical and redundant. Def. Br. 48.[19] His claim misses the forest for the trees. The instruction placed "motivating purpose" in contraposition to a "merely incidental" production. The distinction between "motivating" and "incidental" purposes is precisely the one drawn by *McCauley*, 983 F.3d at 696-98, and it was adequately conveyed here. Sanders's argument thus boils down to "pick[ing] at words … in a charge," while "overlook[ing] the fact that the charge in its totality was what the jury heard." *Noel v. Arston*, 641 F.3d 580, 586 (4th Cir. 2011).

---

[19] Sanders conceded that the term "significant purpose" included in the final instruction suffices. JA474, 529-32,

Lastly, even assuming the instruction were erroneous, Sanders cannot plausibly claim this instruction affected his substantial rights or resulted in a miscarriage of justice. By excluding "merely incidental" productions, the instruction permitted him to argue that producing CSAM was incidental to his interest in ███████████████████████████████. *E.g.*, JA3819-20. And in any event, the record contains overwhelming evidence that memorializing his exploitation of these minors through the creation of visual depictions was his primary (and likely sole) purpose here, including: ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████ and a plain reading of his chats and the nature of online interactions. *Supra* 6-8. Whatever overarching motivations he claims he had, the evidence makes overwhelmingly clear that producing visual depictions was, at a minimum, a motivating, significant, dominant, and predominant purpose in his conduct. *See United States v. Bartko*, 728 F.3d 327, 343 (4th Cir. 2013) ("[F]ailure to give the defendant's requested instruction is not reversible error unless the defendant can show that the record as a whole demonstrates prejudice.").

47

**B.      The district court properly instructed the jury that a minor cannot consent to the production of CSAM.**

Sanders also argues that the court erred when it instructed that a minor's alleged consent to producing CSAM is irrelevant. Def. Br. 32-39. He is mistaken. That instruction is a straight-forward description of the law set forth above.

Sanders's request to instruct the jury to ███████████████████ ████████████████████████████████████ on the other hand, was legally infirm. Def. Br. 38. The relevant inquiry is what Sanders thought, not the minors. *Wells*, 843 F.3d at 1255. A minor's views on engaging in sexually explicit conduct is irrelevant to whether a defendant intends to use, employ, persuade, induce, entice, or coerce that minor to do so. *See United States v. Waqar*, 997 F.3d 481, 486 (2d Cir. 2021). The court thus correctly rejected Sanders's instruction.

Nor did the exclusion of this instruction "seriously impair[]" the defense such that reversal is warranted. *Raza*, 876 F.3d at 614. The verbs in § 2251(a) are words of common usage, and the court did not need to further define or clarify them. *Sirois*, 87 F.3d at 41; *see also United States v. Norton*, 17 F. App'x 98, 102 (4th Cir. 2001). The given instruction still permitted Sanders to articulate his defense. He testified unequivocally that ████████████████████████████████ ████. JA3602-03. He explained that he ██████████████████ ████████████████████████████████████████ JAJ3557. He also explained that ███████████████████

████████ JA3562; *cf.* JA3590. In closing, he argued that ████████

████████████████████████████████████████████████████████

████████ (JA3787-89) and even went so far as to argue that ████████

████████ (JA3788-89, 3792-93). In short, nothing about the court's instruction

prevented Sanders from advancing his defense, however legally irrelevant, that he

could not exploit these minors because they wanted it. JA3794-96.

### C. The district court properly instructed the jury on "lascivious exhibition" under 18 U.S.C. § 2256(2)(a)(v).

Finally, Sanders argues that the court erred when it rejected his proposed

instruction on the meaning of "lascivious exhibition" that adopted the D.C. Circuit's

rejection of the *Dost* factors in *Hillie*, 2022 WL 2333936, at *7-8. *See* Def. Br. 40-

43. Because Sanders's instruction misstated the controlling law, this Court should

affirm.

The indictment charges Sanders with crimes involving visual depictions of

minors engaged in sexually explicit conduct. JA86-91. The phrase "sexually explicit

conduct" is defined to include the "lascivious exhibition of the anus, genitals or

pubic area of any person." 18 U.S.C. § 2256(2)(A)(v). In determining whether a

depiction is lascivious, courts have considered six factors enumerated in *Dost*, 636

F. Supp. at 832, which generally consider the characteristics of the depiction and

whether it appears designed to be sexually suggestive or explicit. Seven courts of

appeals have followed the *Dost* factors in determining whether an exhibition is

lascivious. *See United States v. Rivera*, 546 F.3d 245, 252-53 (2d Cir. 2008); *United States v. Villard*, 885 F.3d 117, 122 (3d Cir. 1989); *United States v. Steen*, 634 F.3d 822, 827-28 (5th Cir. 2011); *United States v. Brown*, 579 F.3d 672, 680 (6th Cir. 2009); *United States v. Petroske*, 928 F.3d 767, 774 (8th Cir. 2019); *United States v. Perkins*, 850 F.3d 1109, 1121 (9th Cir. 2017); *United States v. Isabella*, 918 F.3d 816, 831 (10th Cir. 2019). Two others have upheld consideration of these factors depending on the facts of a particular case. *See United States v. Price*, 775 F.3d 828, 839-40 (7th Cir. 2014); *United States v. Amirault*, 173 F.3d 28, 31-32 (1st Cir. 1999). This Court, while recognizing the widespread use of the factors, has neither expressly adopted nor rejected *Dost*'s interpretation of "lascivious exhibition." *See United States v. Courtade*, 929 F.3d 186, 192 (4th Cir. 2019).

The D.C. Circuit recently rejected the *Dost* factors, holding instead that the "lascivious exhibition of the anus, genitals, or pubic area of any person" means that "the minor displayed his or her anus, genitalia, or pubic area in a manner connoting that the minor, or any person or thing appearing with the minor in the image, exhibits sexual desire or an inclination to engage in *any* type of sexual activity." *Hillie*, 2022 WL 2333936, at *7-9. *Hillie*'s analysis is flawed. It misconstrued passing references to "hard core" material in Supreme Court precedent on obscenity laws and state statute as somehow grafting the same standard onto the term lascivious in federal child-pornography law, ignored Congress's intent to expand the scope of child-

pornography law by replacing the term "lewd" with "lascivious," *see* H.R. Rep. 98-536, at 2 (1984) (concluding "few prosecutions under [child-pornography statute] indicate that [it] requires some modification"), and mistakenly assumed that *Dost* calls for something other than an objective examination of a visual depiction, *see, e.g.*, *United States v. Wiegand*, 812 F.2d 1239, 1245 (9th Cir. 1987) (affirming the convictions of Dost's codefendant and noting, with regard to the meaning of "lascivious," that "[p]rivate fantasies are not within the statute's ambit").

Setting aside the defects in *Hillie*'s reasoning, the court did not err because an instruction based on *Hillie* would be inconsistent with this Court's decision in *Courtade*. There, a defendant moved to vacate his CSAM conviction under 28 U.S.C. § 2255 based on actual innocence, arguing that the video at issue did not "show a minor engaging in 'sexually explicit conduct' as defined in 18 U.S.C. § 2256(2)(A)." *Courtade*, 929 F.3d at 189. The video depicts a minor undressing, entering a shower, and closing the shower curtain behind her. *Id.* at 188. The defendant then hands her the camera and instructs her to put it on the shower floor, under the ruse that this was necessary "to see if the camera was waterproof." *Id.* The minor complies and then hands the camera back to the defendant, who places the camera on the bathroom counter. *Id.* The camera then captures the minor exiting the shower, spotting the camera, and crawling out of view below the countertop. *Id.* The resulting video displayed the minor's breasts and genitals "at various points." *Id.*

51

This Court readily determined that this video was lascivious under § 2256(2)(A), explaining that "[t]he plain meaning of 'lascivious exhibition' require[d] that [it] ask whether the video depict[ed the minor's] genitals or pubic area 'in order to excite lustfulness or sexual stimulation in the viewer.'" *Id.* at 192-94 (quoting *United States v. Knox*, 32 F.3d 733, 745 (3d Cir. 1994)). The Court acknowledged that "[m]any courts" have considered the *Dost* factors but determined it "need not venture into the thicket surrounding" them because it could "dispose of this case based on the objective characteristics of the video alone." *Id.* The Court concluded that the video "objectively depict[ed] a 'lascivious exhibition' because the images and audio—revealing deceit, manipulation, and the careful directing and filming of a young girl resulting in footage of her breasts and genitals—ma[d]e clear that the video's purpose was to excite lust or arouse sexual desire in the viewer." *Id.* at 193.

Sanders offers no way to reconcile *Hillie* with *Courtade*. The videos at issue in both cases depict substantially similar conduct in substantially similar circumstances. In *Hillie*, which involved surreptitiously recorded videos of minors in the bathroom, the court reasoned that the videos were not lascivious because the minor "never engages in any sexual conduct whatsoever, or any activity connoting a sex act." 2022 WL 2333936, at *7. In *Courtade*, too, the video did not depict the minor engaging in "sexual conduct" or "activity connoting a sex act." Yet this Court

52

concluded that the video was lascivious because, "[f]ar from depicting merely a girl showering, drying off, and getting dressed, the video contain[ed] extensive nudity— including shots of her breasts and genitals—that [was] entirely the product of an adult man's deceit, manipulation, and direction." *Courtade*, 929 F.3d at 192.

It is impossible to reconcile the video this Court determined to be lascivious in *Courtade* with the videos the *Hillie* court concluded were not. The Court's reasoning in *Courtade* necessarily means that *Hillie* is not the law of this Circuit, and the court did not err in denying Sanders's request to instruct the jury in accordance with *Hillie*.

That is particularly true here, where the government focused in closing on ███ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████ JA2999-3009, 3771-72 (distinguishing video from ████████████████████████████████████████████). ████████████████████████████████████████████ ████████████████████████████████████████████.

JA3007-09. It is equally if not more lascivious than the video in *Courtade*, and it necessarily follows that it is lascivious under this Court's precedent such that

reversal is unwarranted.

## Conclusion

For the foregoing reasons, this Court should affirm Sanders's convictions.

Respectfully submitted,

Jessica D. Aber
United States Attorney


/s/

William G. Clayman
Special Assistant U.S. Attorney

54

**Statement Regarding Oral Argument**

The United States respectfully suggests that oral argument is not necessary in this case. The legal issues are not novel, and oral argument likely would not aid the Court in reaching its decision.

**Certificate of Compliance**

I certify that this brief was written using 14-point Times New Roman typeface and Microsoft Word 2016.

I further certify that this brief does not exceed 13,000 words (and is specifically 12,945 words) as counted by Microsoft Word, excluding the table of contents, table of authorities, statement regarding oral argument, this certificate, the certificate of service, and any addendum.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.

_____/s/_____
William G. Clayman
Special Assistant U.S. Attorney

55