No. 22-4242

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

### ZACKARY ELLIS SANDERS,

*Defendant-Appellant*,

v.

### UNITED STATES OF AMERICA,

*Plaintiff-Appellee.*

Appeal from the United States District Court
for the Eastern District of Virginia (No. 1:20-cr-00143-TSE)

## REPLY BRIEF FOR APPELLANT

Lawrence S. Robbins
Brandon L. Arnold
KRAMER LEVIN ROBBINS RUSSELL
2000 K Street NW, 4th Floor
Washington, D.C. 20006
Telephone: (202) 775-4500
Facsimile: (202) 775-4510
lrobbins@kramerlevin.com

*Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

ARGUMENT ..........................................................................................2

I.    Appellant's Convictions Should Be Reversed Or, At Minimum, Remanded On Fourth Amendment Grounds ..................................2

     A.    The affidavit was stale.........................................................2

     B.    The affidavit misrepresented the information known to the affiant, in violation of *Franks v. Delaware* ..........................6

     C.    The good-faith exception cannot save the government here..............10

     D.    At a bare minimum, the Court should remand for discovery in aid of a *Franks* hearing.....................................................11

II.   Appellant's Convictions Should Be Reversed Because The District Court Improperly Instructed The Jury And Excluded Highly Relevant Evidence, Including Expert Testimony .......................................13

     A.    The district court misconceived what it means to "use" a minor under the relevant statutes, and as a result mis-instructed the jury and erroneously excluded highly relevant evidence ..........................13

     B.    The district court mis-defined "sexually explicit conduct" ...............16

     C.    The district court erroneously excluded expert testimony.................18

III.   Appellant's Production Convictions Should Be Reversed Because Of The Erroneous "Motivating Purpose" Instruction.........................................21

IV.   Appellant's Possession Conviction Should Be Reversed Because It Was Based On His Involuntary Statements...................................................24

CONCLUSION .....................................................................................28

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*House v. Bell*,
    547 U.S. 518 (2006) ................................................................... 17

*United States v. Barber*,
    80 F.3d 964 (4th Cir. 1996) ....................................................... 19

*United States v. Bosyk*,
    933 F.3d 319 (4th Cir. 2019) ............................................... 1, 3, 4, 5

*United States v. Braxton*,
    112 F.3d 777 (4th Cir. 1997) ...................................................... 27

*United States v. Courtade*,
    929 F.3d 186 (4th Cir. 2019) ................................................. 16, 17

*United States v. Davis*,
    313 F. App'x 672 (4th Cir. 2009) ............................................... 1, 2

*United States v. Dost*,
    636 F. Supp. 828 (S.D. Cal. 1986) ......................................... 16, 17

*United States v. Doyle*,
    650 F.3d 460 (4th Cir. 2011) ...................................................... 10

*United States v. Engle*,
    676 F.3d 405 (4th Cir. 2012) ................................................. 14, 15

*United States v. Gatherum*,
    338 F. App'x 271 (4th Cir. 2009) ............................................... 10

*United States v. Gonzalez*,
    736 F.2d 981 (4th Cir. 1984) ...................................................... 24

*United States v. Hashime*,
    734 F.3d 278 (4th Cir. 2013) ...................................................... 25

*United States v. Hillie*,
    38 F.4th 235 (D.C. Cir. 2022) .................................................... 17

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*United States v. Hillie*,
    39 F.4th 674 (D.C. Cir. 2022) ................................................................17

*United States v. Hite*,
    769 F.3d 1154 (D.C. Cir. 2014) ....................................................14, 19

*United States v. Holmes*,
    670 F.3d 586 (4th Cir. 2012) ................................................................27

*United States v. Howard*,
    968 F.3d 717 (7th Cir. 2020) ......................................................13, 15

*United States v. Leon*,
    468 U.S. 897 (1984) ................................................................................10

*United States v. McCauley*,
    983 F.3d 690 (4th Cir. 2020) ......................................................21, 23

*United States v. Morris*,
    576 F.3d 661 (7th Cir. 2009) ................................................................19

*United States v. Nicolaou*,
    180 F.3d 565 (4th Cir. 1999) ................................................................22

*United States v. Offill*,
    666 F.3d 168 (4th Cir. 2011) ................................................................19

*United States v. Pavulak*,
    700 F.3d 651 (3d Cir. 2012) ................................................................10

*United States v. Pelton*,
    835 F.2d 1067 (4th Cir. 1987) ................................................................27

*United States v. Safavian*,
    528 F.3d 957 (D.C. Cir. 2008) ................................................................20

*Ysleta del Sur Pueblo v. Texas*,
    142 S. Ct. 1929 (2022) ................................................................13

**TABLE OF AUTHORITIES—Continued**

**Page(s)**

**Statutes & Rules**

18 U.S.C. § 2251 ....................................................................13, 14, 21, 23

18 U.S.C. § 2252 ....................................................................16

18 U.S.C. § 2256 ....................................................................16, 20

18 U.S.C. § 3501 ....................................................................24

Fed. R. Crim. P. 30 ................................................................22

Fed. R. Evid. 702 ..................................................................19

Fed. R. Evid. 704 ..................................................................18

**Other Authorities**

Brief for United States, *United States v. Bosyk*, 2018 WL 4897257
    (Oct. 4, 2018) ....................................................................4

iv

## INTRODUCTION

The "swooshing" noise you hear is the sound of the government sweeping all the difficult issues under the rug:

- _Staleness_: The government audaciously misrepresents this Court's decisions in _United States v. Davis_, 313 F. App'x 672 (4th Cir. 2009), and _United States v. Bosyk_, 933 F.3d 319 (4th Cir. 2019), and falsely suggests that Sanders "registered" on the ▮▮▮▮▮ website, when the search warrant affidavit alleged no such thing;

- _Franks_: Reading the government's brief, one would think that the "tip" consisted of a single tip document that matched, "verbatim," Agent Ford's assertions in Paragraph 23 of the affidavit. In fact, as the government repeatedly represented below, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, which, read together, make surpassingly clear that Paragraph 23—the central allegation of probable cause—was knowingly false;

- _The Erroneous Instructions_: The government offers a smorgasbord of distractions, of which the most blatant is the demonstrably false claim that Sanders never objected to the erroneous "motivating purpose" instruction. In fact, Sanders objected so often that Judge Ellis ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮;

- _The Involuntary Statements_: The government's account of Sanders's interrogation is an utter fiction. Most troubling is its claim that agents ▮▮▮▮▮▮, only because Sanders ▮▮▮▮▮▮▮. In reality, _Sanders himself_ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮.

Every defendant, no matter how disturbing his case, is entitled to a fair trial. Zackary Sanders didn't get one.

## ARGUMENT

## I.   APPELLANT'S CONVICTIONS SHOULD BE REVERSED OR, AT MINIMUM, REMANDED ON FOURTH AMENDMENT GROUNDS

### A.   The affidavit was stale.

Paragraph 23 of the affidavit alleged that ████████████████████



████████████████.   5-SJA-1914.   As we show in Section I.B, that allegation was

knowingly false: At the time of the search, the government knew only that ████████

████████████████████████████████████████████████████████████

████████████████████████.

But even if Paragraph 23's allegation were true (which we assume for this point only), it was hopelessly stale and could not supply probable cause for this pre-dawn raid on a private home.   Although the government invokes the narrow "collector" exception, the affidavit came nowhere close to showing that Sanders was a "collector."

1. Relying on the unpublished decision in *Davis*, 313 F. App'x at 674, the government first tells the Court (at 13) that "information a year old is not stale as a matter of law in child pornography cases."   That is a bald misrepresentation of the case.   All *Davis* decided was that year-old information is not *invariably* stale.   *Id.* (citing *United States v. Newsom*, 402 F.3d 780, 783 (7th Cir. 2005) ("Information a

2

year old is not *necessarily* stale as a matter of law.")).[1]  It did *not* hold that anything

within a year automatically passes muster.  If that were the law, *Bosyk*—where the

allegation was only *five months* old—would have been decided in an uncontroversial

one-line order.  933 F.3d at 330.  Neither the *Bosyk* majority, nor the dissent, thought

that was right.  To the contrary, *Bosyk* expressly held that the collector exception

applies only where an affidavit alleges specific facts showing that a suspect had a

"preexisting predilection" for child pornography or "willfully and deliberately"

sought it out.  *Id.* at 331 & n.9.

2. The affidavit here makes no such showing.  It makes just one

Sanders-specific allegation: that ███████████████████████████████████████

███████.  But as this Court and others have emphasized, the collector exception

requires "additional facts . . . over and above the single click of a URL."  Def. Br.

14 (quoting *Bosyk*, 933 F.3d at 330).

*Bosyk*, on which the government relies (at 13-14), offers cold comfort.  This

Court held in *Bosyk* that it was insufficient that someone clicked a link "that provides

for download of child pornography."  933 F.3d at 330.  Nor was it enough that the

link was "on a website whose purpose was to advertise and distribute child

pornography."  *Id*. at 325.  Or that the link was on a "dark web forum, accessible

---

[1]  All emphasis is added.

only through [Tor]." *Id.* at 323 n.1. Rather, the "critical" fact—which split the panel and decided the case—was that "whoever clicked" on the link containing child pornography "did so on the *same day* that the link was advertised in a closed forum dedicated to child pornography." *Id.* at 328. That same-day timing made all the difference—indeed, the *Bosyk* majority pointedly would not say whether probable cause existed in another case where a different user clicked that link on the same "dark web forum" only *two days* after it was posted. *Id.* at 329. There is nothing remotely similar here.

In fact, the affidavit nowhere alleges that Sanders *downloaded* anything at all—much less that he clicked a download link the "same day" that it went up. *See* 5-SJA-1913-19. Nor*, contra* the government's misleading suggestion (at 15), does the affidavit state that Sanders ever registered, logged into an account, or ███████ ████████████████████████████. That silence speaks volumes because, as the government admitted in *Bosyk*: "It is obvious that if law enforcement had [such] evidence . . . , the agent would have affirmatively stated such in the affidavit." Brief for United States, *Bosyk*, 2018 WL 4897257, at *29-30 (Oct. 4, 2018).

The government next tells the Court (at 18) that, because it's so darn hard to locate the ███████ website, only a "collector" could have gone to such trouble. According to the government, ███████ had "an unintelligible multicharacter web address," and so Appellant must have deliberately sought it out through "a directory

site advertising child-exploitation content." Gov't Br. 14. But that account ignores the affidavit's allegation that ████████████████████████████████ ████████████████████, so finding them would be no easier than finding ████████ itself. 5-SJA-1916. Far from alleging anything like the "close timing" in *Bosyk*, there is not a scrap of evidence—none—showing that Appellant ever accessed *any one* of those hard-to-find directory sites, much less one that linked to ████████. So, it is the government's account, not ours, that offers "pure conjecture." Gov't Br. 18. By contrast, as Sanders's uncontroverted expert declarations show, ████████ ████████████████████████████████████████████████ ████████████████████████████████. *See* 5-SJA-2021-22.[2]

Left with no Sanders-specific allegations to invoke, the government says that simply using Tor suffices to infer "collector" status. *E.g.*, Gov't Br. 4, 17. This Court's precedents show otherwise. Take *Bosyk.* That case also had ties to Tor, 933 F.3d at 323 n.1, yet neither the majority nor the dissent thought that Tor settled the issue. Nor should it: ████████████████████████ ████████████████████████████████████████████████

---

[2] In a blatant effort to cherry-pick its way out of the problem, the government tries (at 17-18) to leverage one search example to imply that Tor search engines invariably return only a handful of hits. The full record shows otherwise. *See, e.g.*, 6-SJA-2650-51 (dozens of hits).

Def. Br. 15 (citing record).  Such straightforward, pedestrian actions are nowhere near enough to support a "collector" inference.

**B.    The affidavit misrepresented the information known to the affiant, in violation of *Franks v. Delaware*.**

1.  The government contends (at 21) that Paragraph 23 of the search warrant affidavit ███████████████████████████████████████████████████ ████████████████.  That document, says the government, asserted that ████████ ███████████████████████████████████████████████████████████████ ████████████████████  5-SJA-1914.  It follows, the government tells us, that Paragraph 23 was true.

Reading the government's brief, however, one would never learn that ████████ ███████████████████████████████████████████████████████████████ ██████.  *See* 4-SJA-1564  n.1 ████████████████████████████████ ███████████████████); *see also* 4-SJA-1413 n.4; 4-SJA-1524; 4-SJA-1583; 4-SJA-1594; 5-SJA-2073-74.  When those three documents are read *together*, as they must be, they leave little doubt that ████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████████.  Def. Br. 18-19.

Indeed, even the first tip document, standing alone, should have alerted Ford that his assertion in Paragraph 23 was false.  That document reported ████████ ███████████████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████ 5-SJA-1994.  It added: ███████████████████

███████████████████████████████████ *Id.*  There

is only one sensible way to understand that document: It reported ██████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████.  Nor can a single image have an ███████████

███████████████████████████████.  The first tip document alone shows

the affidavit's misrepresentation.

   But adding the third tip document to the mix—a document the government

does not even *advert to* in its brief—removes any lingering doubt.  It stated:



5-SJA-1998; Def. Br. 18-19.  The third document, therefore, confirmed—████████

███████████████████████████████████████████████

███████████████████████████████████.  Thus, read together, the tip

documents reported only that ███████████████████████████████

████████████████████████. Def. Br. 19.[3]

As if that weren't enough, the very next paragraph of the affidavit (Paragraph

24) expressly acknowledged that ████████████████████████████████

████████████████████████████████████████████ and an

████████████████████████████. 5-SJA-1914. The government never

reckons with that paragraph at all.

2. Nor does the government seriously confront the evidence establishing that,

in affirming Paragraph 23, Agent Ford acted knowingly or recklessly. Def. Br.

21-22. For example, Agent Ford ██████████████████████████

█████████████████████████████████████ *Id.* at 21. ███

████████████████████████████████████████████

██████ *Id.* at 21 n.13. The sworn criminal complaint said the same thing. *Id.*

One statement to this effect might be excusable as an oversight (Gov't Br. 23), but

three are more than enough to show intent.

---

[3] The government says (at 21) that the Court should pay that
misrepresentation no heed because ██████████████████████ But
████████████████████████████████████████████████
██████████. So, the most likely—indeed, the only natural inference—is that
the user accessed the homepage. *See* Gov't Br. 18 (arguing that the Court must
assess the "likelier" alternative).

And then there is the misleading way in which Agent Ford gerrymandered █

███████████ Recall that he ████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████. This

craftsmanship could not have been accidental; after all, this was a "sworn affidavit—

when completeness was most critical." Gov't Br. 23. The government has nothing

to say about any of this.

3. Absent Paragraph 23's misrepresentation, the affidavit comes nowhere

close to establishing probable cause. All that's left is a single Sanders-specific

allegation: that ████████████████████████████████████████████

███████████████████████████████████████████████████████████

Def. Br. 22.

The government appears to concede as much. It asserts, however, that this

allegation—coupled with the "secretive nature" of online child pornography and

██████████████████████████████████████████—is enough to

support probable cause for the search. But the affidavit does not allege that

Appellant visited a child-pornography directory; nor does it allege prior criminal

history.

The affidavit certainly nowhere identifies *any* images that Sanders allegedly viewed—nor does it provide a "sufficiently detailed description" that would have allowed the magistrate judge to assess "whether the contents of [those] alleged images meet the legal definition of child pornography." *United States v. Pavulak*, 700 F.3d 651, 661 (3d Cir. 2012); *see also United States v. Gatherum*, 338 F. App'x 271, 275 (4th Cir. 2009). All it alleges is mere access to a website—without any other defendant-specific allegations. Under case law from this Circuit and others, that is never enough. Def. Br. 23-25.

**C.     The good-faith exception cannot save the government here.**

As a last gasp, the government (at 19) invokes the rule in *Leon*. But, as its name suggests, the good-faith exception applies only when the affiant is "acting with *objective good faith*." *United States v. Leon*, 468 U.S. 897, 920 (1984). It does not apply when "information in an affidavit that the affiant knew was false" misleads the magistrate judge. *United States v. Doyle*, 650 F.3d 460, 467 (4th Cir. 2011). Nor does it apply where, as here, the affidavit "was completely devoid of indicia that the probable cause was not stale." *Id.* at 475. Here, Paragraph 23 misled, and the affidavit was utterly devoid of facts that could sustain a collector inference. Thus, *Leon* does not apply.

**D.    At a bare minimum, the Court should remand for discovery in aid of a *Franks* hearing.**

Appellant sought discovery on two aspects of the affidavit: (1) the tip's meaning (Paragraph 23), and (2) the representation that  (Paragraph 25). Def. Br. 26-31.[4]  The district court denied those requests, reasoning that

. *Id*. at 27.  But "certainty" has never been the test for discovery.

The government has never—and still does not—deny that it has documents responsive to those requests.  *See* Gov't Br. 27.  Instead, it runs from the district court's reasoning and recasts the dispute as one over materiality.  *Id*.  It cites (at 27) a declaration from Agent Ford stating that

.  The government nowhere explains why that self-serving declaration should settle the issue.  If a trust-me declaration could defeat discovery in aid of a *Franks* hearing, then discovery would seldom, if ever, be granted.  In any event, Appellant has more than met his burden to show that the government possesses materials bearing on the affidavit's bona fides.

---

[4]  The government claims (at 26 & n.12) that Sanders only raised the joint-venture issue in a September 2021 suppression motion and "never moved for Rule 16 discovery on that basis."  False again.  4-SJA-1540 (motion to compel discovery on                    ).

*Paragraph 23*.   The government argues (at 24-25) that Paragraph 23 ███████████████████████, and so Appellant was not entitled to discovery about the tip's meaning.   But that argument is both wrong—as we have shown—and circular—it decides the very question (the tip's meaning) that discovery would illuminate.

The government dismisses (at 25) a ██████████████████████████ ████████████████████ as from someone "with no relevant experience."  The government nowhere explains, however, why ███████████████████████ ████████████████.  And tellingly, the government cannot dispute that ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████ 6-SJA-2545-46.

*Paragraph 25*.   Although the government does not expressly defend the district court's "certainty" standard for discovery, it essentially requires nothing less. It dismisses (at 27) one document as "unsourced," without ever disputing the facts that Appellant asserted—namely, that ████████████████████████████ ████████████████████████████████.  And it fails even to address Appellant's mountain of other evidence and declarations showing that,

contrary to Paragraph 25, ███████████████████████████████

████████████████████████████████. *See* Def. Br. 29.

If that detailed evidentiary record does not suffice to obtain discovery, it is

hard to imagine what would.

## II. APPELLANT'S CONVICTIONS SHOULD BE REVERSED BECAUSE THE DISTRICT COURT IMPROPERLY INSTRUCTED THE JURY AND EXCLUDED HIGHLY RELEVANT EVIDENCE, INCLUDING EXPERT TESTIMONY

### A. The district court misconceived what it means to "use" a minor under the relevant statutes, and as a result mis-instructed the jury and erroneously excluded highly relevant evidence.

Section 2251 makes it a crime to "employ[], use[], persuade[], induce[],

entice[], or coerce[] any minor to engage in . . . any sexually explicit conduct for the

purpose of producing any visual depiction of such conduct."  While the verb "use"

is "broad in the abstract," courts must avoid interpreting it "so broad[ly] that it is

inconsistent with its accompanying words."  *United States v. Howard*, 968 F.3d 717,

722 (7th Cir. 2020).  Nor may courts "ascrib[e]" to the term a "meaning so broad"

that it subsumes the other verbs or renders them "dead letters."  *Ysleta del Sur Pueblo*

*v. Texas*, 142 S. Ct. 1929, 1939 (2022).

Because the remaining verbs each describe means of achieving "a minor's

assent," "use" should have a similar meaning.  Def. Br. 33 (quoting *United States v.*

13

*Engle*, 676 F.3d 405, 411 n.3 (4th Cir. 2012)).[5]  Indeed, the government concedes as much.  "Use," the government tells us (at 37), must be "consistent in scope" with the other statutory verbs and must not render those other verbs "superfluous."  That concession is dispositive: This Court and others have held that the remaining verbs all convey "the idea" of "one person leading or moving another by persuasion or influence."  *Engle*, 676 F.3d at 411 n.3;[6] *see also United States v. Hite*, 769 F.3d 1154, 1161 (D.C. Cir. 2014) (interpreting four of those verbs as requiring action to "transform or overcome the will of a minor").

A minor's willingness to participate is obviously relevant to whether Appellant acted to "transform or overcome" that minor's will.  *Hite*, 769 F.3d at 1161.[7]  Nevertheless, the district court ██████████████████████████████

---

[5]  That narrower conception of "use" also accords with federalism principles, the statute's draconian penalties, and the rule of lenity.  *See* Def. Br. 35 n.23 & 36-37.

[6]  The government suggests (at 36) that *Engle* held, in a footnote (676 F.3d at 411 n.3), that a defendant "uses" a minor merely by "photographing" him.  Nonsense.  That dicta arose in the context of a venue challenge where the "specific definitions" of the statutory verbs were "not at issue."  *Id.*  Nor could this point have made any difference because *Engle* found ample evidence of actual enticement.  *Id.* at 423.  To be sure, taking a photograph can violate the statute where the defendant uses enticements, lies, tricks, or other means of overcoming (or bypassing) the minor's will—like a hidden camera—but the mere fact of a photograph does not *always* suffice.

[7]  The government dismisses (at 37 n.15) *Hite* as irrelevant because that case interpreted only "persuades, induces, entices, or coerces," whereas § 2251 includes two additional verbs ("uses" and "employs").  But, as the government concedes (at 37), *noscitur* requires that those two verbs be interpreted "consistent in scope" with

█████████████████████████ 2-JA-577; 6-SJA-2861.  On the same premise, the trial

court ██████████████████████████████████████████████████████

████████████████████████████████████████.  *See* Def. Br.

39 (citing record).  Those rulings misread the statute and eviscerated Appellant's

defense.  Def. Br. 37, 40.  If "use" is as broad as the district court supposed, it would

swallow the rest of the statute.  No prosecutor would ever bother to prove

"enticement" or "persuasion" (much less "coercion") if all she had to show was that

a minor was "used" in the broadest sense of the word.  *See, e.g.*, *Howard*, 968 F.3d

at 722.

    True, minors cannot "consent" to participate in child-pornography charges,

but Appellant has never contended otherwise.  Rather, Sanders maintains that

evidence of voluntary (even enthusiastic) participation bears on an *element of the*

*offense*—whether he acted to transform or overcome the will of a minor by

supervisory or financial control ("employs"), exploitation or deceit ("uses"), reason

("persuades"), threats ("coerces"), rewards ("entices"), or influence ("induces").

*See, e.g.*, 2-JA-518-23; *see also* 8-SJA-3731-32 (████████████████████████

the other four.  *See also Engle*, 676 F.3d at 411 & n.3 (interpreting sections together
because they "proscribe related conduct" and many of the same verbs "appear in
both statutes").

██████████████████████████████████

████████████████).[8]

B.    **The district court mis-defined "sexually explicit conduct**."

Every charge in this case required the jury to find that the materials depicted "sexually explicit conduct," which 18 U.S.C. § 2256(2)(A) defines to include a "lascivious exhibition" of the genitals. Using the factors identified in *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), the district court instructed the jury that it could find a lascivious exhibition based on nothing but simple nudity or a finding that the material was intended to elicit a sexual response in the viewer. Def. Br. 41. That cannot be correct. The plain text requires a "*lascivious* exhibition of the . . . genitals"; merely displaying nude genitals cannot suffice. Nor does the statute permit conviction based on an image's *subjective* effect on the viewer; as this Court has held, it is an image's "*objective* characteristics" that make it "lascivious." *United States v. Courtade*, 929 F.3d 186, 192 (4th Cir. 2019).

The government responds by counting noses in an admitted circuit split. It notes (at 49-50) that other courts have used the *Dost* factors and invites this Court to follow suit. It should not do so. As the Court has previously recognized, *Dost*'s atextual factors have faced withering "criticism over the years." *Courtade*, 929 F.3d

---

[8]  The trial court's misconstruction of "use" also invalidates the receipt and possession convictions under 18 U.S.C. § 2252. Def. Br. 35. The government does not dispute that point.

at 192.  The drumbeat against *Dost* has only accelerated in recent years because it "encourages both judges and juries to improperly consider a non-statutory element," *United States v. Hillie*, 39 F.4th 674, 689 (D.C. Cir. 2022), and "cannot be reconciled with the governing statutory text," *Hillie*, 38 F.4th 235, 238 (D.C. Cir. 2022) (Katsas, J., concurring in denial of rehearing *en banc*).  Indeed, even before those most recent excoriations, this Court declined similar invitations to make *Dost* the law of this Circuit.  *Courtade*, 929 F.3d at 192.

The government insists (at 51-53) that it's "impossible to reconcile" the D.C. Circuit's ruling in *Hillie* with this Court's *Courtade* decision.  Not so.  *Courtade* considered whether a habeas petitioner satisfied the "actual innocence exception to procedural default."  929 F.3d at 190.  That standard is so "demanding" that claims are "rarely successful."  *House v. Bell*, 547 U.S. 518, 538 (2006).  *Hillie*, by contrast, considered the meaning of "lascivious exhibition" on direct appeal where the issue had been properly preserved.  *See* 39 F.4th at 679.  So too here.

Finally, the government suggests (at 53) that, as to two of the twelve counts, the district court's "lascivious exhibition" instruction was harmless because the jury might have convicted based on a video that the government regards as plainly lascivious.  That contention, of course, has no bearing on the remaining ten counts. As for the two counts themselves, the government omits that ███████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

8-SJA-3741-42 (request); 8-SJA-3747-48 (opposition); 8-SJA-3751-52 (denial).

Thus, it is impossible to know whether, even as to those two counts, the district court's erroneous instruction misled the jury. In any event, that the video in question shows ████████████████████████████████████████████ ████████████████████ (Gov't Br. 53) is insufficient to show lascivious exhibition of the genitals.

### C.    The district court erroneously excluded expert testimony.

Each of the charges required the government to prove that the Appellant *knew* that the videos in question depicted "sexually explicit conduct." Def. Br. 43-44. Appellant asserted that ████████████████████, and he ███████████████████ ████████████████████████████████████████████ ███████████████████. *Id*. (quoting 6-SJA-2700). The district court ███████ ████████████████████████████████. *See* 6-SJA-2757-61.

The government first contends (at 42 n.17) that ███████ testimony would have violated Federal Rule of Evidence 704(b), which prohibits an expert from opining on whether a "defendant did or did not have a mental state." But ██████ was not proffered to opine on that ultimate issue. Rather, ███████ testimony would have provided the jurors with information about ████████████████████████████

18

███████████████████████████████████████████████████████

███████████████████████████████████████████. *See*

6-SJA-2700-02 (proposed testimony); 6-SJA-2742-43 (defense); *see also United*

*States v. Barber*, 80 F.3d 964, 970-71 (4th Cir. 1996); *United States v. Offill*, 666

F.3d 168, 177 (4th Cir. 2011) (no bar to expert testimony about conduct that

"mirrored the defendant's conduct" absent express testimony about intent); *accord*

*United States v. Morris*, 576 F.3d 661, 674-75 (7th Cir. 2009) (Rule does not prevent

a witness from "identifying an inference that might be drawn").[9]

Nor is it true, as the government misleadingly claims (at 41), that the district

court excluded ████████ as unqualified under Federal Rule of Evidence 702(a). To

the contrary, the trial judge ████████████████████████████████████

████████████████████████████ 8-SJA-3608. That's no surprise, given that ████████

is one of the nation's foremost experts in online fantasy roleplaying and has been

repeatedly qualified to provide expert testimony in federal court. *See, e.g.*, *Hite*, 769

F.3d at 1168-70 (reversing convictions due to exclusion of ████████ testimony on

such topics).

---

[9] In passing, the government claims (at 42 n.17) that Sanders never asserted
that ████████ testimony was relevant to scienter. Yet, the very record excerpts the
government cites ████████████████████████████████████████████████████████
████████████ 6-SJA-2740-41; *see also* 6-SJA-2735-36 (government motion to
exclude ████████████████████████████████████).

On the merits, the government has little to say.  It largely parrots (at 41) the

district court's ruling that ██████████████████████████████████████

████████████████████████ But as we have noted (Def. Br. 46), there is

more need—not less—for expert testimony when "common" terms are used in an

uncommon context.  *See United States v. Safavian*, 528 F.3d 957, 966 (D.C. Cir.

2008).  As Appellant explained (Def. Br. 45), ██████████████████████

████████████████████████████████████████████████

████████████████████████████████████. ██████ would

have made that clear.[10]  While the government now pooh-poohs that point as

insubstantial (at 42), it ████████████████████████████████

██████████████████████████████ 8-SJA-3839.[11]

---

[10] The government notes (at 42) that Sanders himself covered this point.  But
at trial, the government denigrated Sanders's testimony as baseless.  8-SJA-3768-69.
"The expert's testimony would have supplied crucial context and support for
[Sanders's] proposed meaning" of these terms and his own intent.  *Safavian*, 528
F.3d at 967.  Its exclusion "thus was not harmless."  *Id.*

[11] The government also contends (at 42 n.17) that excluding ██████ was
harmless because ████████████████████████████████████████
██████████  The Court will search the government's citations in vain to find any such
concession.  In any event, Section 2256(2)(A)(iv) defines sexually explicit conduct
to include "sadistic or masochistic *abuse*," not "sadomasochistic *conduct*."

## III. APPELLANT'S PRODUCTION CONVICTIONS SHOULD BE REVERSED BECAUSE OF THE ERRONEOUS "MOTIVATING PURPOSE" INSTRUCTION

Section 2251 requires the government to prove that the accused caused the minor to engage in sexually explicit conduct for "*the* purpose of producing any visual depiction of such conduct." In *United States v. McCauley*, 983 F.3d 690, 695 (4th Cir. 2020), this Court held that the jury must therefore find that producing the visual depiction was defendant's "*predominan[t]*" purpose. An instruction permitting the jury to find that production was only "a purpose" "fundamentally misconstrue[s] the statute." *Id*.

The district judge made the same error in this case as he did in *McCauley*. The court told the jury that it could convict so long as production was "a" "motivating purpose." 2-JA-573. But "motivating purpose" is just another way to say "a purpose" because *all* purposes are motivating—that is what "purpose" means. Def. Br. 48. Because that instruction went to the "absolute heart" of the defense, *id*. at 49, even the district court ███████████████████████████████

███████████████████████████████████████████████

8-SJA-3518-19.[12]

---

[12] To be sure, the words "motivating purpose" make a brief cameo in *McCauley*. 983 F.3d at 697 (dicta). But *in the same sentence*, the Court held that *any* future instruction must "require[] something more than 'a purpose.'" *Id*. Because "motivating" adds nothing to "purpose," it flunks that test.

The government claims (at 45 n.18) that Sanders never objected to this erroneous instruction, but that is demonstrably false. Indeed, Sanders *repeatedly* objected to a "motivating purpose" instruction below, arguing that the law ███████ ███████████████ *E.g.*, 6-SJA-2771-72. Not only did the district court reject that argument, it made unmistakably clear that ██████████████████████ ████████████████████████████████████ 6-SJA-2746-47 (emphasis in original); *see also, e.g.*, 7-SJA-3261 (same); 8-SJA-3519 (same). And true to its word, the district court ████████████████████████████ █████████████████████ 7-SJA-3225 ███████████████); 7-SJA-3274-75 (same).

Even so, says the government, Sanders had to reiterate that objection, yet again, "at the charge conference." Gov't Br. 45. But Federal Rule of Criminal Procedure 30(d) provides only that the defendant must "inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate." Sanders repeatedly checked that box, objecting to the midtrial instructions. *E.g.*, 7-SJA-3263-64. And there is no doubt that the district court was "apprised adequately of the disputed matter." *United States v. Nicolaou*, 180 F.3d 565, 569 (4th Cir. 1999). Indeed, Judge Ellis eventually ████████████████ ██████████████████████████████████████ 7-SJA-3381;

8-SJA-3588.   Instead, the district court ████████████████████████████

████████ 7-SJA-3272; *see also* 7-SJA-3261; 7-SJA-3377.

The government contends (at 46), finally, that the district court at least told the jury to distinguish between "motivating" and "'incidental' purposes."  But that sets the bar way too low.  Section 2251 requires that a defendant's desire to produce a video be his "important," "dominant," or "predominant" purpose.  *McCauley*, 983 F.3d at 695.   Merely requiring that purpose be "non-incidental" is plainly insufficient, particularly given that the district court *also* told the jury that the government need ***not*** prove "primary purpose."  2-JA-573.

The "motivating purpose" instruction all but foreclosed a major line of defense.   Appellant testified at length that ████████████████████████████

████████████████████████████████████████████████████████████████

████████ 8-SJA-3590.  Indeed, he testified—without contradiction—that ████████

████████████████████████████████████████████████████████████████

████████████████████████ 8-SJA-3589-91.  The district court's instruction invited the jury to disregard that testimony if it found that production was still "a purpose," even a distinctly second-rate one.

## IV.   APPELLANT'S POSSESSION CONVICTION SHOULD BE REVERSED BECAUSE IT WAS BASED ON HIS INVOLUNTARY STATEMENTS

The district court erroneously admitted incriminating statements that FBI agents extracted from Appellant during an hours-long, unwarned, and highly coercive interrogation.  The government used those statements as the bedrock of the possession charge and to undermine the defense.

1. The government first contends (at 28-29) that Appellant forfeited this voluntariness challenge because he did not move to suppress the statements until the government served notice of its intent to offer them at trial.  Under 18 U.S.C. § 3501, however, the trial court was *required* to "determine any issue as to voluntariness" before admitting the defendant's statements at trial.  *See United States v. Gonzalez*, 736 F.2d 981, 983 (4th Cir. 1984).  That legal duty doubtless explains why, notwithstanding its remarks about waiver, the district court ███████████████ ██████████████████████████████ 6-SJA-2726 n.13.

Here, Sanders challenged voluntariness nearly two months before the then-scheduled trial date.  1-JA-127.  He renewed the motion, repeatedly, after the trial was delayed, allowing even more time for full consideration.   1-JA-313-16, 1-JA-385-88.  Appellant also raised the issue in a timely motion *in limine*.  1-JA-207 n.2.

2. On the merits, this is simply not a close case. Indeed, as Appellant explained, this Court found a clear violation based on virtually identical facts in *United States v. Hashime*, 734 F.3d 278, 285 (4th Cir. 2013). Def. Br. 51-52.[13] Perhaps that is why the government's rendition of the interrogation is so utterly misleading. According to the government, Sanders ███████████████

████████████████████████████████████████████████████████

███████████████████ Gov't Br. 31. In fact, as even the most cursory reading of the record discloses, ████████████████

████████████████████████████████████████████████████████

1-JA-167-68; 7-SJA-3462-63. Sanders ███████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

7-JA-3463. Indeed, one of the interviewing agents *commended* Appellant for telling them that "there was a knife in [his] pants." 1-JA-168.

But the government's fabulism is just getting started. It next tells the Court (at 31) that Sanders was ████████████████████████████

█████████████████████ But as Appellant testified *without contradiction*, ████████

████████████████████████████████████████████████████████

---

[13] Tellingly, the government never once mentions *Hashime*.

████████████████████████████████████ 8-SJA-3706-07.  And that

████████████████████████████████████████

████████████████████████████████████████

8-SJA-3706-08.  The agents ███████████████████████████████

████████████████████████████████████████

████████████████████████████████████ *See*

7-SJA-3482-85.  There is no question that the agents controlled every aspect of the

interrogation.

And it gets worse.  The government next claims (at 31 n.14) that, after asking

for a lawyer, it was Sanders who "invited the agents to ask questions to gauge his

comfort level."  In reality, Sanders clearly stated that he wanted to have a "lawyer

with [him]" and wanted "the advice of a lawyer."  1-JA-169.  Rather than ending the

interview, the agents actively sought to persuade him to keep going, claiming that

they have "had people in [Appellant's] position where they are completely oblivious

to what's going on.  And after conversations, it makes sense to them.  And then

clear—everything's clear and then we—we roll out."  1-JA-170-71.  Only after the

agents dangled that prize in front of him did Sanders agree to resume questioning.

1-JA-171.

When it isn't misstating the record outright, the government is minimizing the

impact of the agents' conduct.  Any time that Sanders hesitated to answer their

26

questions, the agents repeated their threats to seize the devices that Sanders, his mother, and his father relied on for their livelihoods. Def. Br. 52-53. The government responds (at 32-33) that those statements were "accurate description[s] of what the warrant authorized," and that "truthful statements" are not "ipso facto coercive." But even truthful statements are coercive when they exceed an "acceptable ambit." *United States v. Holmes*, 670 F.3d 586, 593 (4th Cir. 2012). Threats to the family livelihood are worlds apart from the humdrum statements in the cases the government cites. *See United States v. Braxton*, 112 F.3d 777, 782 (4th Cir. 1997) (penalty for false statements); *Holmes*, 670 F.3d at 592 (confession would avoid ordeal of trial); *United States v. Pelton*, 835 F.2d 1067, 1072 (4th Cir. 1987) (no classified discussion with uncleared attorney). And unlike here, the defendants in those cases either received *Miranda* warnings or voluntarily invited the agents to meet them. Here, the agents' failure to *Mirandize* Sanders made their threats only more coercive.

3. The government argues harmlessness (at 33-34) but comes nowhere near establishing it. While the government now contends that the statements "were of little consequence," it ██████████████████████████████████████████ ██████████████████████, *see* 2-JA-703; 7-SJA-3432-33, 3446, and ████████████ ██████, *e.g.*, 8-SJA-3782-83. Even more strangely, the government argues (at 34) that those statements somehow "bolstered [Sanders's] defense." But if that were

true, then it's hard to understand why the government fought so hard to admit them and played numerous clips of them during trial. To the contrary, the government argued in closing that ███████████████████████████████████

████████████████████████████████████████████████████

8-SJA-3779-80. The prejudice is clear.

## CONCLUSION

The Court should reverse the judgment below or, at a minimum, vacate Appellant's conviction and sentence and remand for a new trial.

Dated: August 22, 2022                Respectfully submitted,

                                      /s/ Lawrence S. Robbins

                                      Lawrence S. Robbins
                                      Brandon L. Arnold
                                      KRAMER LEVIN ROBBINS RUSSELL
                                      2000 K Street NW, 4th Floor
                                      Washington, D.C. 20006
                                      Telephone: (202) 775-4500
                                      Facsimile: (202) 775-4510
                                      lrobbins@kramerlevin.com

                                      *Counsel for Defendant-Appellant*
                                      *Zackary Ellis Sanders*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that, pursuant to Fed. R. App. P. 32(g)(1), this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii).

1.     Exclusive of the portions of the brief exempted by Fed. R. App. P. 32(f), this brief contains 6,499 words.

2.     This brief has been prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.  I have relied upon the word count feature of this word processing system in preparing this certificate.

Dated: August 22, 2022                    /s/ Brandon L. Arnold
                                          Brandon L. Arnold

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2022, I will electronically file the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system. I will also serve a copy of the unsealed brief on counsel for Appellee via email at the following:

William G. Clayman
United States Attorney's Office for the
     Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
william.clayman@usdoj.gov


Dated: August 22, 2022                    /s/ Brandon L. Arnold
                                          Brandon L. Arnold