**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————

**No. 22-4322**

————————

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

   v.

MICHAEL SCOTT HOOVER,

        Defendant – Appellant.

————————

Appeal from the United States District Court for the Western District of North Carolina, at Statesville.  Kenneth D. Bell, District Judge.  (5:20-cr-00088-KDB-DSC-1)

————————

Argued:  January 24, 2024                    Decided:  March 12, 2024

————————

Before WILKINSON, Circuit Judge, MOTZ, Senior Circuit Judge, and John A. GIBNEY, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

————————

Affirmed by published opinion.  Senior Judge Motz wrote the opinion, in which Judge Wilkinson and Senior Judge Gibney joined.

————————

**ARGUED:** David Q. Burgess, DAVID BURGESS LAW, Charlotte, North Carolina, for Appellant.  Anthony J. Enright, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee **ON BRIEF:** Dena J. King, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

————————

DIANA GRIBBON MOTZ, Senior Circuit Judge:

Michael Scott Hoover challenges his conviction and sentence for crimes related to his production and possession of child pornography. He argues the trial court erred in several evidentiary rulings, in denying his Rule 29 motion for judgment of acquittal, and in instructing the jury on the elements of child pornography production. He also maintains that the district court procedurally erred in sentencing him to 840 months' imprisonment. We have carefully considered these arguments and concluded that none are meritorious. Accordingly, we affirm.

I.

In August 2019, law enforcement authorities arrested Hoover for multiple counts of indecent liberties with a minor in violation of North Carolina law. Following his arrest, his employer, Wells Fargo, searched his work-issued iPhone and discovered a video of a minor boy masturbating. A North Carolina forensic investigator then searched that phone pursuant to a search warrant and discovered three more videos and multiple pictures of another minor boy masturbating. The investigation also uncovered web searches on Hoover's phone for "selfies boy masterbating [sic]," "NAMBLA [North American Man/Boy Love Association]," and other web-search queries indicating sexual interest in minor boys.

Investigators identified the two minors depicted in the illicit content found on Hoover's phone as Victim One and Victim Two, both relatives of Hoover. In June and September 2018, when Hoover recorded the videos of Victim One, the boy was 17 years

2

old.  In August 2019, when Hoover recorded the video of Victim Two, the boy was 12 years old.  Victim Two caught Hoover recording him and asked him to delete the video, but Hoover did not do so.  Victim One did not know he was being recorded on either occasion.

Both Victim One and Victim Two reported a long period of inappropriate comments and sexual abuse by Hoover in the time leading up to the creation of the videos.  Each victim said that Hoover had isolated him at Hoover's home or while on trips, and then pressured the minor to masturbate in front of Hoover, despite the minor not wanting to do so.  Six other victims also came forward, reporting to investigators that Hoover had sexually abused them as minor boys prior to or around the same time as Hoover's sexual abuse of Victim One and Victim Two.

In October 2020, the Government indicted Hoover in the Western District of North Carolina for two counts of production of child pornography, in violation of 18 U.S.C. § 2251(a) — one charge for his conduct involving Victim One, and another for his conduct involving Victim Two — and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), for the illicit content of Victim One and Victim Two found on the phone.  In April 2021, the district court held a one-day jury trial.  The Government presented testimony from several witnesses, including Victim One, Victim Two, and the North Carolina forensic examiner who searched Hoover's phone.  The prosecution also offered evidence of the sexually explicit materials and web searches discovered on Hoover's phone.  After the Government's presentation of its evidence, Hoover moved for judgment of acquittal pursuant to Rule 29, asserting a lack of sufficient evidence.  The

district court denied the motion.  Hoover did not present any evidence in his defense.  The jury deliberated for less than 30 minutes and found Hoover guilty on all three counts.

The presentence report calculated Hoover's recommended sentence under the U.S. Sentencing Guidelines ("the Guidelines") to be 840 months, or 70 years.  The district court adopted the report with minor modifications and sentenced Hoover to 70 years' imprisonment.  Hoover then timely filed this appeal.

## II.

We first consider Hoover's evidentiary challenges to the admission of (1) the web searches discovered on his phone and (2) the testimony of Victim One and Victim Two.

## A.

Hoover maintains that Federal Rule of Evidence 404(b) bars admission of the web searches on his phone.  He claims that the web searches are propensity evidence not "intrinsic" to the charged conduct involving Victim One and Victim Two.  *See United States v. Bush*, 944 F.3d 189, 195–96 (4th Cir. 2019).

Hoover did not make this argument at trial.  Instead, he merely objected to the admission of the web searches on the ground that they were irrelevant and unduly prejudicial under Federal Rule of Evidence 403.  We therefore review his appellate challenge for plain error.  *See United States v. Zayyad*, 741 F.3d 452, 458-59 (4th Cir. 2014).  To obtain relief, Hoover must show (1) "an error" (2) that is "plain," (3) that "affect[ed] substantial rights," and (4) that "had a serious effect on the fairness, integrity,

4

or public reputation of judicial proceedings." *Greer v. United States*, 593 U.S. 503, 507–08 (2021) (cleaned up).

Rule 404(b) bars the admission of "[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). The Rule bars *extrinsic* evidence, that is, evidence "separate from or unrelated to the charged offenses." *Bush*, 944 F.3d at 195 (cleaned up). But Rule 404(b)(1)'s limitation on propensity evidence does not apply to *intrinsic* evidence. Thus, it does not bar evidence that "is inextricably intertwined with the evidence regarding the charged offense [because] it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted," or "serves to complete the story of the crime on trial." *Id.* at 196.

The district court did not err in holding the web searches were intrinsic to Hoover's production and possession offenses. The web-search queries found on Hoover's phone included "selfies boy oh boy," "selfies boy," "NAMBLA," and "selfies boy masterbating." The forensic examiner discovered these web searches on the same phone that Hoover used to make and store videos and pictures of the victims masturbating. These web searches reveal Hoover's interest in depictions of minor boys masturbating, "the same sort of conduct" underlying the charged offenses. *See United States v. Ebert*, 61 F.4th 394, 403 (4th Cir. 2023) (cleaned up).

Hoover also made the web searches around the same time as his criminal conduct. Although most of the web searches were undated, they could not have been made any

earlier than March 2017, when the iPhone was imported from China.[1]  Hoover's abhorrent behavior toward Victim One and Victim Two had begun by or before 2017 — a pattern of abuse the trial court also properly found intrinsic to the charged offenses.  *Infra* II.B.

This might be a closer question had law enforcement authorities discovered the web searches on a different device than the phone Hoover used to record and store child pornography.  But here the web searches "complete the story of the crime" by helping explain to the jury how Hoover used his phone:  as a tool to discover, view, create, and store depictions of minor boys masturbating.  *See Bush*, 944 F.3d at 196 (cleaned up).  Omitting evidence of the web searches would have risked providing the jury "an incomplete or inaccurate view of other evidence" discovered on Hoover's phone, and of his intent to produce illicit content.  *See United States v. Brizeula*, 962 F.3d 784, 795 (4th Cir. 2020).

Hoover argues in the alternative that the trial court erred in failing to instruct the jury that it could not consider the web searches as evidence of the possession charge.  He did not ask for such an instruction at trial, and the district court did not plainly err in failing to give such an instruction *sua sponte*.  *See United States v. Johnson*, 945 F.3d 174, 177–78 (4th Cir. 2019).  The possession charge involved the same sexually explicit depictions

---

[1] Hoover attempts to bolster his contrary argument with speculation that the web searches could have been made as long ago as 2013 (when Hoover may have first received a smartphone from Wells Fargo), and later retrieved through the cloud.  But he presented no evidence in support of this theory, and, in any event, forfeited it by failing to raise it in his opening brief.  *United States v. Fernandez Sanchez*, 46 F.4th 211, 219 (4th Cir. 2022).

6

of Victim One and Victim Two that underlay the production charges, making the web searches intrinsic to all three offenses.

## B.

Hoover next maintains that the district court violated the Federal Rules of Evidence in admitting, pursuant to Rule 414, Victim One's testimony regarding Hoover's long-running sexual abuse of Victim One. That is so, he claims, because Rule 414 governs the admission of evidence of "other child molestation" against defendants accused of "child molestation" offenses, and Victim One was not a "child" for purposes of the Rule. *See* Fed. R. Evid. 414(a), (d)(1).

But the court did not admit Victim One's testimony as evidence of "other child molestation" under Rule 414, but instead on the basis that Victim One's testimony was "intrinsic" to the charges involving Victim One. And Victim One's testimony clearly was intrinsic to those charges: Victim One detailed a long period in which Hoover isolated Victim One, gave him alcohol, showed him pornography, and pressured him to masturbate in front of Hoover. Hoover's predatory behavior toward Victim One thus formed an "integral and natural part of the witness's account[] of the circumstances surrounding the [charged] offenses." *See Bush*, 944 F.3d at 196 (cleaned up).

Hoover also contends that the trial court erred in failing to instruct the jury that it could not consider Victim Two's testimony when reaching a verdict on the production charge involving Victim One. Because Hoover did not request this instruction at trial, we again review for plain error. *See Johnson*, 945 F.3d at 178.

7

We see no error here.  The trial court admitted Victim Two's testimony as "intrinsic" evidence with respect to the charges involving Victim Two, and as Rule 414 evidence with respect to the production charge involving Victim One.  Rule 414 permits courts to "admit evidence that the defendant committed any other child molestation" when the "defendant is accused of child molestation," so long as such evidence is relevant.  Fed. R. Evid. 414(a).  The Rule further defines "child molestation" to include "a crime under federal law . . . involving any conduct prohibited by 18 U.S.C. chapter 110."  Fed. R. Evid. 414(d)(2)(B).  All three counts — the production offense involving Victim One, the production offense involving Victim Two, and the possession offense involving both Victim One and Victim Two — "involv[e] . . . conduct prohibited by 18 U.S.C. chapter 110."  *Id.*  All three offenses thus are "child molestation" for purposes of Rule 414.  *See United States v. Arce*, 49 F.4th 382, 394 (4th Cir. 2022).  Accordingly, the district court did not err in admitting Victim Two's testimony regarding Hoover's "child molestation" conduct involving Victim Two as Rule 414 evidence of the  "child molestation" charge involving Victim One.  *See* Fed. R. Evid. 414(d)(2)(B).[2]

Hoover resists this conclusion, arguing that Rule 414 covers only child molestation offenses involving victims younger than 14, and that Victim One was 17 at the time Hoover made the videos.  Rule 414 does separately define "child" as "a person below the age of 14."  Fed. R. Evid. 414(d)(1).  But Hoover errs in maintaining that this restriction applies

---

[2] Hoover does not seem to dispute that his offense conduct involving Victim Two was "relevant" to the offense involving Victim One.  *See* Fed. R. Evid. 414(a).  Nor could he.  "The similarity between the two offenses was striking," and they occurred during the same timeframe.  *See United States v. Kelly*, 510 F.3d 433, 437 (4th Cir. 2007).

to the definition of "child molestation" in Rule 414(d)(2)(B), which defines "child molestation" simply to include "*any* conduct prohibited by 18 U.S.C. chapter 110." *Arce*, 49 F.4th at 394 (quoting Fed. R. Evid. 414(d)(2)(B) (emphasis added)).  As our sister circuits have recognized, the definition of "child" in Rule 414(d)(1) does not limit the definition of "child molestation" in Rule 414(d)(2)(B). *United States v. Foley*, 740 F.3d 1079, 1087 n.3 (7th Cir. 2014); *United States v. Sturm*, 673 F.3d 1274, 1284 (10th Cir. 2012).  Moreover, because the jury could consider Victim Two's testimony when reaching a verdict on the production charge involving Victim One, the district court need not have severed the counts — as Hoover argues in passing for the first time on appeal.

III.

Hoover next challenges the sufficiency of the evidence supporting his child pornography production convictions.  He argues that the Government failed to prove the specific-intent and interstate-nexus elements of those offenses.  He faces a "heavy burden" on appeal because "reversal for insufficient evidence is reserved for the rare case where the prosecution's failure is clear." *United States v. Davis*, 75 F.4th 428, 437 (4th Cir. 2023) (cleaned up).  We will "sustain a guilty verdict if — viewing the evidence in the light most favorable to the prosecution — the verdict is supported by substantial evidence." *Id.* (cleaned up).  Substantial evidence is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Id.* (cleaned up).  "We consider circumstantial as well as direct

evidence" in this review. *United States v. Hicks*, 64 F.4th 546, 550 (4th Cir. 2023) (cleaned up).

### A.

We start with the Government's evidence of specific intent. Child pornography production under 18 U.S.C. § 2251(a) requires proof that "the defendant used, employed, persuaded, induced, enticed, or coerced the minor to take part in sexually explicit conduct *for the purpose* of providing a visual depiction of that conduct." *United States v. McCauley*, 983 F.3d 690, 695 n.3 (4th Cir. 2020) (cleaned up). "[A] defendant must engage in the sexual activity with the specific intent to produce a visual depiction; it is not sufficient simply to prove that the defendant purposefully took a picture." *United States v. Palomino-Coronado*, 805 F.3d 127, 131 (4th Cir. 2015).

Hoover argues that the Government failed to present "direct evidence or statements indicating" that Hoover specifically intended to produce sexually explicit videos of Victim One and Victim Two when he pressured the victims to masturbate. *See* Def. Br. 34. But the Government did not need to present *direct* evidence when proving Hoover's intent as to the § 2251(a) production charges. "More often . . . courts are presented only with circumstantial evidence to show that a defendant acted with purpose." *Palomino-Coronado*, 805 F.3d at 131. And we have expressly "recognize[d] that the jury may infer intent from circumstantial evidence" when deliberating on § 2251(a) offenses. *See United States v. Engle*, 676 F.3d 405, 418 & n.9 (4th Cir. 2012). The Government presented abundant evidence that Hoover's decisions to record both victims were not "spontaneous,"

10

but rather "a motivating purpose" when he pressured them to engage in sexual activity. *See McCauley*, 983 F.3d at 696–97 (cleaned up).

As to the § 2251(a) production offense involving Victim Two, the jury could consider Hoover's web searches indicating his interest in depictions of minor males masturbating, as well as Victim Two's testimony regarding Hoover's severe sexual abuse of Victim Two in the time leading up to Hoover making the video. Victim Two also testified that, during the offense itself, Hoover secretly followed Victim Two into the woods and repeatedly pressured Victim Two to masturbate, despite the minor telling Hoover that he did not want to. Hoover "actively concealed from the minor the fact that he was videotaping" him. *See Palomino-Coronado*, 805 F.3d at 131 (cleaned up). He also manipulated the video by recording Victim Two in slow motion. *See id.* ("zoom[ing] the camera in and out" can indicate specific intent (quoting *United States v. Morales de Jesus*, 372 F.3d 6, 21–22 (1st Cir. 2004)). And instead of deleting the video as Victim Two asked, Hoover saved it to a secret app on his phone where he hid what he called his "bad pictures."

And as to Hoover's intent with respect to § 2251(a) offense involving Victim One, the jury could consider the web searches, Victim Two's testimony, and Victim One's own testimony regarding Hoover's pattern of predatory behavior toward Victim One. The jury could also consider the fact that Hoover secretly recorded Victim One masturbating twice, and that the June 2018 video zoomed in on Victim One's genitals. *See id.* ("The number of sexually explicit recordings or depictions [can be] indicative of purpose.")

The jury thus could reasonably find that Hoover had the specific intent necessary to convict him of both § 2251(a) production offenses.

11

B.

Conviction of child pornography production under § 2251(a) also requires proof of an interstate-nexus element: that the "visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer." 18 U.S.C. § 2251(a); *McCauley*, 983 F.3d at 695 n.3. Hoover asserts that his iPhone cannot be a "material" under § 2251(a), arguing that "material" refers only to the actual substance or data that the illicit images are made of. Hoover did not move for acquittal on this basis at trial, and so we review this claim only for plain error. *See United States v. Duroseau*, 26 F.4th 674, 678 & n.2 (4th Cir. 2022); *Zayyad*, 741 F.3d at 458-59.

There was no error here, let alone plain error. In *United States v. Malloy*, we held that § 2251(a) prohibits the entirely intrastate "production of child pornography with a video camera and videotape that had traveled in foreign commerce" — there, from Japan and Mexico. 568 F.3d 166, 170, 180 (4th Cir. 2009). It follows that § 2251(a) also prohibits Hoover's production of child pornography in North Carolina using an iPhone imported from China.

This conclusion accords with the interstate-nexus analysis of other child pornography offenses prohibited under 18 U.S.C. chapter 110. The Government can prove the interstate-nexus element for receipt of child pornography and possession of child pornography by showing that the defendant had downloaded or stored the images using a computer that had previously moved "through interstate or foreign commerce." *United States v. Miltier*, 882 F.3d 81, 92 (4th Cir. 2018). And both the receipt and possession

12

offenses use the same term of art to describe their interstate-nexus requirement — "affecting interstate or foreign commerce by any means." 18 U.S.C. §§ 2252A(a)(2)(A), (a)(5)(B). That language "expresses an intent by Congress to exercise its full power under the Commerce Clause." *Miltier*, 882 F.3d at 91 (quoting *Russell v. United States*, 471 U.S. 858, 859 (1985)).

The crime of child pornography production, 18 U.S.C. § 2251(a), also uses this term to define its interstate-nexus requirement. *Id.* (covering materials "affecting interstate or foreign commerce by any means"). We therefore must conclude that § 2251(a) also "unambiguously allows the interstate nexus to be satisfied based on the movement of a computer" used in the crime. *See Miltier*, 882 F.3d at 91. That includes smartphones, which, after all, are "minicomputers that also happen to have the capacity to be used as a telephone." *See Riley v. California*, 573 U.S. 373, 393 (2014). The Government thus provided sufficient evidence of the interstate-nexus element of § 2251(a) by presenting testimony showing that Hoover's iPhone was imported from China.

IV.

Hoover additionally contends that the district court erred in instructing the jury on the specific-intent requirement of the child pornography production charges, maintaining that the court wrongly departed from our "approved language in *Palomino-Coronado*." Def. Br. 36. We review this issue de novo. *McCauley*, 983 F.3d at 694.

Hoover does not explain what he means by *Palomino-Coronado*'s "approved language." But we understand him to be referring to that case's *explanation* that production

of child pornography under § 2251(a) requires proof of specific intent: "a defendant must engage in the sexual activity with the specific intent to produce a visual depiction; it is not sufficient simply to prove that the defendant purposefully took a picture." *Palomino-Coronado*, 805 F.3d at 131. *Palomino-Coronado* thus explains the meaning of the specific-intent requirement in § 2251(a), but it does not dictate use of particular language when explaining that element to the jury.

In the case at hand, the district court satisfactorily explained this specific-intent requirement to the jury, instructing that to convict Hoover under § 2251(a):

> [T]he government must prove that the minor engaged in the sexual activity and that the defendant had the specific intent to produce a visual depiction. It is not sufficient simply to prove that the defendant purposefully took the picture. The government must prove that producing a visual depiction of the sexually explicit conduct was one of the defendant's purposes for using, employing, persuading, enticing, or coercing the victim to engage in sexually explicit conduct and that it was a significant or motivating purpose and was not merely incidental to the sexually explicit conduct.

The court thus "adequately informed the jury of the controlling legal principles" governing the § 2251(a) offenses. *See McCauley*, 983 F.3d at 694 (cleaned up). "Whether an instruction reads 'the purpose,' 'the dominant purpose,' 'a motivating purpose' — or some other equivalent variation — may not be crucial, but [§ 2251(a)] plainly requires something more than 'a purpose.'" *Id.* at 697. The trial court made that fact clear.

V.

Finally, Hoover challenges the procedural reasonableness of his 840-month sentence on several grounds: six challenges to the district court's calculation of his

14

recommended sentence under the Guidelines, and an additional challenge to how the court weighed the § 3553(a) factors before imposing sentence. We review these claims for abuse of discretion. *See United States v. Morehouse*, 34 F.4th 381, 387 (4th Cir. 2022). We first summarize the disputed aspects of the calculation of Hoover's recommended sentence under the Guidelines, and then explain why Hoover's sentencing challenges fail.

A.

The district court adopted the Guidelines calculations in the presentence report. In doing so, it followed the grouping rules to put Count 2 and Count 3 (the production offense involving Victim Two and the possession offense) into one group, and Count 1 (the production offense involving Victim One) into a second group. *See* U.S.S.G. §§ 3D1.2(b), 2G2.1 cmt. n.7. The court then applied several offense-level adjustments to the production offenses, including a two-level increase under § 2G2.1(b)(2)(A) because the crimes involved sexual contact, and a two-level increase under § 2G2.1(b)(5) because Hoover was a relative and caregiver of both victims.

The court also applied several adjustments to the *initial* offense level for Hoover's possession offense, including a five-level increase under § 2G2.2(b)(5) because Hoover had engaged in a pattern of sexual exploitation of minors. The district court, however, did not ultimately use the initial offense level calculated under § 2G2.2. Instead, the court applied the § 2G2.1 guidelines because Hoover's possession offense "involved causing . . . a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction," and applying the § 2G2.1 guidelines would result in a greater offense level. *See* U.S.S.G. § 2G2.2(c)(1).

15

The court concluded that Hoover's combined adjusted offense level was 40, after applying another two-level adjustment for multiple offenses under § 3D1.4. Finally, the district court added a five-level enhancement under § 4B1.5(b)(1) because Hoover had "engaged in a pattern of activity involving prohibited sexual conduct." Hoover's total offense level thus was 45, which the district court lowered to 43, the highest level the Guidelines recognize. U.S.S.G. ch. 5, pt. A cmt. n.2. The Guidelines generally recommend a life sentence when the total offense level is 43. U.S.S.G. ch.5, pt. A (table Zone D). The district court accordingly calculated Hoover's Guidelines-recommended sentence to be 840 months, or 70 years, the statutory maximum penalty for his child pornography production and possession offenses. *See* 18 U.S.C. §§ 2251(e), 2252A(b)(2).

## B.

All of Hoover's challenges to the district court's Guidelines calculations fail.

## 1.

Hoover first challenges the two-level enhancement under § 2G2.1(b)(5), which applies when the defendant is a relative of the victim. Hoover's presentence report stated that Hoover was related to Victim One and Victim Two. Hoover objected to that finding, but only in passing and via a conclusory assertion that he had pled not guilty to the offenses. He did not elaborate on this objection at the sentencing hearing. Hoover thus failed "to make a showing that the information in the presentence report [was] unreliable, and articulate the reasons why the facts contained therein [were] untrue or inaccurate." *See United States v. Fowler*, 58 F.4th 142, 151 (4th Cir. 2023) (cleaned up). Accordingly, the district court could and did properly "adopt the findings of the presentence report without

16

more specific inquiry or explanation," including that Hoover was a relative of Victim One and Victim Two.  *See id.* (cleaned up).

2.

Hoover next challenges the district court's application of the cross-reference instruction at § 2G2.2(c)(1) when calculating the offense level for the possession offense, arguing that this cross-reference provision applies only to advertising child pornography. But the purposeful *production* of child pornography can also trigger the cross-reference at § 2G2.2(c)(1).  *See United States v. Cox*, 744 F.3d 305, 309–10 (4th Cir. 2014).  The district court thus did not err in following the §2G2.2(c)(1) cross-reference to calculate the offense level for Hoover's possession offense under the guidelines at § 2G2.1.

3.

Hoover's third challenge is to the court's application of a five-level pattern-of-behavior adjustment under § 2G2.2(b)(5) when calculating the initial offense level for his possession offense.  But, as explained above, the court ultimately did not use the guidelines at § 2G2.2 to calculate the offense level for the possession offense.  Instead the district court followed the cross-reference provision at § 2G2.2(c)(1) and applied the guidelines at § 2G2.1.  Any error in the court's initial application of § 2G2.2(b)(5) thus would be harmless.  *See Morehouse*, 34 F.4th at 387.  The court, however, did not err in any event. As stated in the presentence report, Hoover had sexually abused Victim One, Victim Two, and several other minors multiple times.  *See* U.S.S.G. § 2G2.2 cmt. n.1.

4.

Hoover also challenges the district court's application of a two-level adjustment under § 3D1.4, which it applied because Hoover had committed multiple offenses against different minors under the grouping rules at § 3D1.2.   The Guidelines instruct courts to group together "counts involving substantially the same harm,"  U.S.S.G. § 3D1.2(c), and to group separately "multiple counts involving the exploitation of different minors," *id.* § 2G2.1 cmt. n.7.  Accordingly, the district court placed Count 1 (the production offense involving Victim One) into one group and Counts 2 and 3 (the production offense involving Victim Two and the possession offense) into another group.

Hoover maintains that the court nonetheless should have grouped all three counts together.  He notes that § 3D1.2(c) instructs sentencing courts to group together counts where "one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guidelines applicable to another of the counts."  Hoover next points to § 2G2.2(b)(5), which assigns a five-level adjustment to a possession count when "the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor."  He concludes that, because his production offenses "embod[y]" the conduct resulting in the initial five-level adjustment under § 2G2.2(b)(5) to his possession offense, the district court should have grouped all three counts together.  *See* U.S.S.G. § 3D1.2(c).

This argument fails because the district court did not find the pattern-of-behavior enhancement at § 2G2.2(b)(5) ultimately "applicable" to Hoover's possession offense.  *See* U.S.S.G. § 3D1.2(c).  Instead, following the cross-reference provision at § 2G2.2, the court

18

applied the § 2G2.1 guidelines to calculate the offense level of his possession count. Hoover's argument also conflicts with the purpose of the grouping rule at § 3D1.2(c): "prevent[ing] 'double counting' of offense behavior." *See* U.S.S.G. § 3D1.2 cmt. n.5. Grouping the production offenses separately did not result in double counting because those offenses concerned the separate harms Hoover inflicted on Victim One and Victim Two.

5.

Hoover further challenges the district court's application of a five-level pattern-of-behavior adjustment under § 4B1.5(b)(1) to his combined adjusted offense level. Specifically, he argues that applying this § 4B1.5(b)(1) pattern-of-behavior adjustment resulted in "impermissible double counting." Def. Br. 41. In doing so, Hoover is seemingly referring again to the court's provisional application of the § 2G2.2(b)(5) pattern-of-behavior adjustment to the possession offense. But, as we have explained, the court ultimately did not apply the § 2G2.2 guidelines when calculating the offense level of the possession conviction. And even if the court had done so, our precedent instructs that applying the adjustments established in § 2G2.2(b)(5) and § 4B1.5(b)(1) for the same conduct does not result in "impermissible double-counting" because those adjustments serve different penological goals. *United States v. Dowell*, 771 F.3d 162, 170–71 (4th Cir. 2014).

6.

Hoover's last Guidelines challenge also fails. Hoover maintains that the district court's erred in applying a two-level adjustment for "sexual contact" under

19

§ 2G2.1(b)(2)(A).  But any such error would be harmless.  *See Morehouse*, 34 F.4th at 387.

The court calculated Hoover's offense level at 45, two levels higher than 43, the highest

level recognized under the Guidelines.  U.S.S.G. ch. 5 pt. A cmt. n.2. Even if the court had

erred in applying the two-level sexual-contact adjustment to Hoover's offenses, his total

offense level still would have been 43.  Hoover conceded this point at oral argument before

us.  Oral Argument at 5:15–5:50.

C.

Hoover's final sentencing claim is that the district court procedurally erred in

weighing the sentencing factors in 18 U.S.C. § 3553(a) when imposing the Guidelines-

recommended sentence of 840 months.  He argues that the court failed to consider his

argument that the Guidelines recommendations were overly harsh to Hoover as a child

pornography offender.  We review for abuse of discretion.  *Fowler*, 58 F.4th at 153.

After calculating the Guidelines range, a sentencing court must consider the

§ 3553(a) sentencing factors, "conduct an individualized assessment based on the facts

before the court, and explain adequately the sentence imposed to allow for meaningful

appellate review and to promote the perception of fair sentencing."  *Id.*  The § 3553(a)

sentencing factors include the nature of the offense, the characteristics of the defendant,

the Guidelines recommendation, and the need for deterrence, public safety, and

rehabilitation.  *See* 18 U.S.C. § 3553(a)(1)–(7).  The court must also "consider all non-

frivolous reasons" the defendant has given for "a different sentence and explain why it has

rejected those arguments."  *Fowler*, 58 F.4th at 153 (cleaned up).  The court's explanation

must "fully address[] the defendant's central thesis."  *Id.* (cleaned up).  But "where the

20

district court imposes a within-Guidelines sentence" — as it did here — "the explanation need not be elaborate or lengthy." *Id.* (cleaned up).

We see no procedural error here. The district court considered the presentence report and victim impact statements, and concluded that Hoover was a "child predator" with eight victims over many years. The court acknowledged several potential mitigating factors, including Hoover's good employment record, military service, and possible PTSD. But the district court also noted that a forensic psychologist had found that Hoover exhibited medium risk of recidivism, and concluded that medium risk was "significant." The court accordingly deemed it appropriate to "impose a sentence that [it] would be confident would be for the rest of [Hoover's] life," and thus imposed the Guidelines-recommended sentence of 840 months. Given the court's assessment of Hoover's characteristics, history, and crimes, the court adequately explained its conclusion that the Guidelines-recommended sentence of 840 months was not unfairly harsh for Hoover.[3]

VI.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

---

[3] Hoover asserts on appeal that the district court did not consider possible unwarranted sentencing disparities, but he did not make that argument at sentencing. "The district court is only required to address non-frivolous arguments a defendant actually presents." *United States v. Odum*, 65 F.4th 714, 725 n.5 (4th Cir. 2023) (cleaned up).

21